UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-21079-Bloom

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

    Defendants.
_____/

**PLAINTIFF'S MOTION FOR ALTERNATE SERVICE OF PROCESS, OR, IN THE ALTERNATIVE, FOR A 90-DAY EXTENSION OF TIME TO EFFECTUATE SERVICE**

    Plaintiff Securities and Exchange Commission (the "Commission"), pursuant to Rules 4(e)(1) and 4(h)(1) of the Federal Rules of Civil Procedure, moves the Court for an order approving alternate service of process on Defendants Guy Gentile, a/k/a Guy Gentile Nigro ("Gentile") and Mintbroker International, Ltd., f/k/a Swiss America Securities Ltd. and d/b/a SureTrader ("SureTrader"), or in the alternative, for an additional 90-day extension of time to effectuate service. As grounds for this Motion, the Commission states:

    **I.    INTRODUCTION**

    From the very day that this case was filed, Defendants Gentile and SureTrader had actual notice of its existence, as evidenced by their counsel's quoted statements to a national publication about the lawsuit. Yet Defendants have repeatedly refused to accept or waive service of process, avoiding service of process at an address in Puerto Rico Gentile himself disclosed on EDGAR and in court filings, and that is listed in Puerto Rican real property records as owned by Gentile. The Commission has repeatedly, diligently, and in good faith attempted service of process on Gentile and SureTrader since the lawsuit was initiated. Gentile and SureTrader should not be permitted to delay this case any further, and the Commission should be granted leave to effectuate service through alternate means. For Gentile, the Commission seeks to serve by publication and e-mail;

1

for SureTrader, the Commission seeks an order from this Court directing the clerk to send the Complaint and Summons by mail (such as FedEx) with signed receipt pursuant to Fed. R. Civ. P. 4(f)(2)(C)(ii). In the alternative, with respect to Gentile, the Commission requests that the Court (a) provide the Commission an additional 90 days to effectuate service, (b) direct service by the U.S. Marshall pursuant Fed. R. Civ. P. 4(c)(3), and (c) allow limited discovery on Gentile's whereabouts. With respect to SureTrader, we seek an order allowing for service under the Hague Convention.

## II.     BACKGROUND

1.     On March 22, 2021, the Complaint was filed against Defendants, and the Summonses were issued for Gentile and SureTrader.

2.     On March 22, 2021, Law360.com published an article regarding this newly filed lawsuit, and Adam Ford, Esq., who served as counsel for Gentile in prior litigation and with whom the Commission previously had communicated about the instant litigation, was identified as "an attorney representing Gentile" and quoted in the story. A true and correct copy of the Law360.com article is attached as **Exhibit A**.

3.     On March 31, 2021, counsel for the Commission emailed Ford to inquire whether Gentile would accept service of the Complaint on behalf of himself and SureTrader. Ford did not respond to the March 31, 2021, request. *See* Declaration of Alice Sum, Trial Counsel for the Commission, at ¶¶ 3-4, a true and correct copy of which is attached as **Exhibit B**.

4.     On April 5, 2021, the Commission engaged APEX Surveillance and Investigations ("ASI"), a private investigative firm located in St. Petersburg, Florida for assistance in serving Gentile and SureTrader with process. *Id.* at ¶ 5.

5.     On April 10, 2021, ASI conducted extensive research and investigation to locate potential addresses for the Defendants. In conjunction with the information provided by the Commission, ASI determined that Gentile was likely located in Puerto Rico, and the plan was to serve Gentile in both his personal capacity and as owner, director, and CEO of SureTrader. *See* Declaration of Thiry "Ty" Larkin dated September 17, 2021 at ¶5-8, a true and correct copy of which is attached as **Exhibit C**.

6.     On April 16, 2021, ASI hired a process server located in Puerto Rico, CIG LLC ("CIG"), for assistance to confirm residency of Gentile and serve Defendants. *Id.* at ¶ 7.

7.     Between ASI and CIG's research, along with information from the Commission, CIG proceeded with service of process at 105 Ave. De Diego, Apt. S-2202, San Juan, PR 00911.

8. CIG made multiple attempts of service of the Complaint as follows:

a. The first attempt occurred on April 23, 2021, 9:52 a.m. The Process Server ("PS") went to the address provided (105 Ave. De Diego Apt. S-2202, San Juan, PR 00911) in order to serve Gentile and SureTrader. Once in location, the PS realized the address should have been 103 Ave. De Diego, which is the private condominium called Gallery Plaza next door. The condominium building is well guarded with much security. The PS gained access to the building and went to the elevators. Once inside, the PS saw that the elevator only went to the 5th floor which is an office floor, garage, and basement. The PS returned to the lobby where she found a sign that indicated where other elevators are located. These elevators give access to Gallery Plaza residences. On her way to the elevators, the PS could not get through because there is a locked door. The door has no intercom to ask for access to the residences. There was no security guard at this door. The PS waited outside the door for a few minutes to see if somebody came out and she could gain access to the residences, but nobody did. Without further information, the PS filled out the report and left the area afterwards. *See* Affidavits of Non-Service of Arlin Molina at ¶ 1, true and correct copies of which are attached as **Exhibit D**.

b. The second attempt occurred on April 30, 2021, 7:30 a.m. The PS went to 103 Ave. De Diego Apt. S-2202, San Juan, PR 00911 in order to serve Gentile and SureTrader. Once in location, the PS canvassed the area, but she did not see Gentile. The PS confirmed it is a very exclusive place and entrance is not allowed unless you are resident or have an authorization of the resident. (According to Horizontal Property Regulation in Puerto Rico, no visitor is allowed to enter unless there is a special permit or the resident authorizes him/her. In condominiums, regulations are stricter and the entrance can be prohibited, even though the person has a legal document to deliver.) The PS searched in the lobby, but there was no sign of Gentile. The PS searched in the Starbucks area but here was no sign of Gentile. The PS entered Starbucks and there was no presence of Gentile. No security guard was in the area, and the PS could not gain access to the apartments since there is a door that separates the lobby from the elevators. Access to the elevator requires a magnetic key. Without further information, the PS filled out the report and left the area afterwards. *See* Affidavits of Non-Service of Jesinette Breton at ¶ 1, true and correct copies of which are attached as **Exhibit E.**

c. A third attempt occurred on May 7, 2021, 7:20 a.m. The PS went to 103 Ave. De Diego Apt. S-2202, San Juan, PR 00911 in order to serve Gentile and SureTrader. Once in location, the PS canvassed the area and found another entrance to the apartments, which was

3

closed and had an intercom and a sensor to slide a magnetic card-key. The PS pressed the intercom but it went blank and nobody talked back to the PS. Then, the PS went to the fifth floor where the gym and spa are located. At the time, the spa was closed and the gym was opened so the PS proceeded to go to the gym. Once in the gym, the PS canvassed the area, but did not see Gentile. Then, the PS returned to the lobby where she attempted to gain access to the apartments' elevators but again the door was locked, so the PS sat in front of Starbucks to see if she could spot Gentile, but during all the time that she stood outside the Starbucks there was no activity of Gentile. Before leaving, the PS canvassed the area unsuccessfully for a security guard. The PS waited a few minutes outside the door to see if anybody came out and in that way gain access to the building, however nobody came out. Without further information, the PS filled out the report and left the area afterwards. *Id.* at ¶ 2.

9. Because these attempts to serve Defendants were unsuccessful, CIG suspended further attempts pending additional research and investigation to determine alternate addresses. Larkin Declaration at ¶ 10.

10. Both ASI and CIG performed further research and investigative methods to locate Gentile including, but not limited to, searching public records, social media, various databases, the internet, and motor vehicle records. Declaration of Fernando Fernandez at ¶¶ 8, a true and correct copy of which is attached as **Exhibit F.**

11. On May 4, 2021, Gentile filed a Schedule 13G/A (beneficial ownership report) on the Commission's Electronic Data Gathering, Analysis, and Retrieval system ("EDGAR") identifying his "Address of Principal Business Office or, if none, Residence" as "103 Ave. De Deigo [sic], San Juan, Puerto Rico 00911." A true and correct copy of the Schedule 13G/A is attached as **Exhibit G**.

12. The Schedule 13G/A filed by Gentile contains two notable certifications:
   a. After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.
   b. **Attention: Intentional misstatements or omissions of fact constitute Federal criminal violations (See 18 U.S.C. 1001) [bold in original]**

13. A search of Puerto Rico's real property records reflects that Gentile is the owner of 103 Ave. De Diego Apt. S-2202. Larkin Declaration at ¶ 19.

14. On May 19, 2021, counsel for the Commission again emailed Ford to inquire whether he was authorized to accept service of the Complaint for Gentile and SureTrader and

provided a Notice of Lawsuit and Waiver of Summons forms for Gentile and SureTrader. Declaration of Sum at ¶ 6.

15. On May 20, 2021, Ford responded by email and stated, "I am not authorized to accept service." *Id.* at ¶ 7.

16. On May 28, 2021, counsel for the Commission directly sent Gentile and SureTrader separately Notices of Lawsuit and Waiver of Summons forms via UPS. *Id.* at ¶ 8.

17. On June 1, 2021, the UPS packages to Gentile and SureTrader were delivered. *Id.* at ¶ 9.

18. As of the date of this Motion, Gentile and SureTrader have not returned the Waiver of Summons forms to Commission counsel. *Id.* at ¶ 10.

19. Additionally, ASI is also investigating and researching whether Gentile may be located in the Bahamas, New York, or Miami, but to date, ASI has not uncovered information that places him in those locations as of the date of this Declaration. Larkin Declaration at ¶ 12.

20. CIG located a secondary residence possibly being rented by Gentile at Condominium San Geronimo Ave. Ashford 860, Apt. 9B, San Juan, PR ("Secondary Residence"). Puerto Rico real property records do not reflect the possible secondary residence as owned by Gentile, however. Fernandez Declaration at ¶ 12.

21. A fourth attempt at service occurred on June 11, 2021, 1:00 p.m. at the Secondary Residence. The PS surveilled the parking and entrance area for several hours to look for Gentile and his motor vehicle(s) but did not see him. *See* Affidavit of Non-Service of Xenya Rivera at ¶ 1, true and correct copies of which are attached as **Exhibit H.**

22. A fifth attempt occurred on June 16, 2021, 7:00 p.m. at the Secondary Residence. The PS again surveilled the parking and entrance area for several hours to look for Gentile and his motor vehicle(s) but did not see him. *Id.* at ¶ 2.

23. A sixth attempt occurred on June 17, 2021, 6:00 p.m. at the Secondary Residence. The PS again surveilled the parking and entrance area for several hours to look for Gentile and his motor vehicle(s) but did not see him. *Id.* at ¶ 3.

24. On June 18, 2021, the Commission filed a Motion for a 90-Day Extension of Time to Effectuate Service of Process [DE 6], which this Court granted [DE 7], and the current deadline for service is September 20, 2021.

25. CIG and ASI thereafter resumed their attempts to locate and serve Defendants in Puerto Rico.

26.  ASI and CIG continued to research and investigate additional information to locate Gentile for service of process on Defendants.  Larkin Declaration at ¶ 10; Fernandez Declaration at ¶ 16.

27.  During their additional research and investigation, CIG and ASI determined that Agatha Gonzalez Piferrer Diaz was the girlfriend or wife of Gentile and had children with him, and they decided to also look for Diaz to locate Gentile.  Larkin Declaration at ¶ 11.

28.  Diaz sells clothing on https://poshmark.com/, and an item of clothing was purchased from her in early July 2021.  On July 9, 2021, Diaz mailed the item out and used the return address of "103 Ave de Diego Apt 2202, South Tower Gallery Plaza, San Juan PR 00911-3524."  *Id.* at ¶ 14.

29.  On July 23, 2021, CIG conducted surveillance from 6:00 a.m. until 2:00 p.m. at the Secondary Residence, but neither Gentile nor Diaz were observed.  Rivera Affidavit at ¶ 4.

30.  Given the difficulties locating and serving Gentile to date, the process server went to several police authorities in order to seek assistance with accessing Gentile's building and serving him.  The process server went to the San Juan Municipal Police, the San Juan State Police, the Tourist State Police of San Juan, and the Municipal Tourist Police of San Juan on July 27, 28, 29, and 30, 2021, respectively, but all four indicated that they are not allowed to intervene and could not help with service of process.  Molina Affidavit at ¶ 2.

31.  The Commission then decided to use a second process server to attempt service at the Secondary Residence given the difficulties experienced by CIG.  The second process server attempted service on August 5, 2021, at the Secondary Residence.  When she identified herself and asked for Gentile, the security guard advised that "he cannot offer information whether the person lives at the location" and was "rude, did not want to allow [her] access."  On August 6, 2021, the second process server attempted to speak with the administrator for the Secondary Residence condominium building, whom she saw arrive at the building.  However, when the process server asked to speak with the administrator, the security guard denied that the administrator was on site, and did not allow the process server access to the building.  *See* Affidavit of Non-Service of Juana Guerra at ¶¶ 1-2, true and correct copies of which are of which is attached as **Exhibit I.**

32.  Thereafter, CIG resumed its service attempts.

33.  The process server went to the Secondary Residence on August 14, 2021, and asked for access to Apt. 9B to see Gentile, but the security guard denied access.  Breton Affidavit at ¶ 3.

34. The process server went to the 103 Ave. de Diego address on August 15, 2021, and asked to see Guy Gentile. The security guards told the process server that Gentile has rented the apartment to a family and denied access to the apartment. *Id.* at ¶ 4.

35. The process server went to the Secondary Residence on August 16, 2021, and interviewed the administrator named Vivian, asking questions about Gentile and his wife/girlfriend Agatha Diaz. Vivian advised the process server that she could not give access because she could lose her job. The process server spoke with a security guard, who confirmed that Gentile is renting the apartment. However, the process server was denied access. *Id.* at ¶ 5.

36. Later that same day, the process server saw Agatha Diaz entering the Secondary Residence condominium building. The process server parked her vehicle and walked towards the building but was stopped by a police officer. The process server showed the police officer the court papers and said she was there because of a service of process that she needed to execute. The police officer said that the process server needed to move her vehicle because she was not allowed to be parked in the area. When the process server asked for assistance from the police officer, they said they could not help. Because Diaz had already entered the building and security would not provide access, the process server was not able to execute service. *Id.* at ¶ 6.

37. On August 30, 2021, the process server went to the Secondary Residence, identified herself to the security guard, and asked to go to Apt. 9B to see Gentile. The security guard said he did not know who Gentile was. Then, the process server asked the guard to call Apt. 9B. The guard advised the process server that the "lady on the phone did not know who the [process server] was" and "she would not allow the entrance." The guard told the process server that "not even the FBI could enter without authorization." *See* Affidavits of Non-Service of Ingrid Figueroa at ¶ 1, true and correct copies of which are attached as **Exhibit J.**

38. After this happened, the process server went to the police station to ask an officer to accompany her to the Secondary Residence. The process server and the officer encountered a different security guard who refused to identify himself. The officer told the guard that the process server needed to see Gentile to deliver court documents. The guard said he needed to talk to his supervisor because he could not allow the process server to enter without authorization. After speaking with his supervisor, the guard told the process server and the officer that "they were not authorized to pass unless the resident authorizes the entrance." The officer told the guard to call the resident; the guard called the resident and told the "lady on the phone" that Puerto Rico police were at the lobby and wanted to talk to her and deliver some documents to Gentile. The "lady on

the phone" responded that she was not coming down or interested in taking the document, and then she hung up the phone. As such, the guard told the process server and the officer that they were not allowed to enter. The officer then instructed the guard to call back. When the guard called back, the person on the phone said "she did not know any Guy Gentile." The process server asked if the guard spoke with Agatha Diaz, but the guard kept silent and did not confirm or deny with whom he was talking. The demeanor of the guard indicated that he knew the person/lady on the phone and that it was, in fact, Agatha Diaz. After this occurred, the officer told the process server that because the documents were not "an order of the Puerto Rico Court, he could not put any more pressure on the person." *Id.* at ¶ 2.

39. Further research was conducted to determine if, in fact, Gentile resides at the 103 Ave. de Diego address or the Secondary residence. In addition to Gentile identifying the 103 Ave. de Diego address in his EDGAR filings, he has also designated it as a service address in active litigation in California, case styled *Marc Cohodes v. Guy Gentile*, California 1st Appellate District, Case No. A161721. In addition, Gentile designated an email address for service, guygentile@me.com on April 30, 2021 (after the Complaint in this case was filed), and the California appellate court has communicated with Gentile at this email address. Indeed, Gentile included the 103 Ave. de Diego address, the guygentile@me.com email address and his phone number in a letter he sent to the court (the information was in the letterhead) and the appellate court has communicated with Gentile at this same email. *See* attached **Composite Exhibit K**, containing filings from the California appellate case: Notice of Appearance by Gentile, a letter from Gentile to the court, and an email from the court to Gentile.

40. With respect to SureTrader, research and investigation was conducted to determine the status of the last known address, officers, and agents for the company.

41. A search of the Bahamas official corporate records reflects that SureTrader (registered in the Bahamas as MintBroker International, Ltd.) is still an active company (last licensed year was 2020), and the designated agent and registered office address is Michael C. Miller, P.O. Box EE-17971, Nassau, Bahamas. *See* attached **Composite Exhibit L**, containing search results for MintBroker International, Ltd. from https://www.bahamas.gov.bs/.

42. A search of the Securities Commission of the Bahamas Registrant Licensee Status at https://www.scb.gov.bs/registrant-licensee-search/ reflects that Swiss America Securities, Ltd. is an active registrant as of July 31, 2021, with Gentile listed as the contact person, an address at Suite #17, Elizabeth on Bay Plaza, Elizabeth Ave. & Bay St., and an email address for Gentile at

guy@suretrader.com.  *See* p. 19 of the attached **Exhibit M**, a list of the Bahamas SIA (Securities Industry Act, 2011) as of July 31, 2021.

43. Because service of process could not be effectuated on Gentile individually and as director and CEO of SureTrader, the Commission began the process of serving SureTrader through the Hague Convention through the Bahamas Central Authority.  *See* Declaration of Sum at ¶ 11.

44. The Commission filed the Complaint in this case on March 22, 2021.  The Commission alleges that from no later than March 2016 until at least November 2019, Defendants Gentile and SureTrader operated an offshore broker-dealer in the Bahamas designed to help day traders in the United States circumvent the U.S. rules that regulate pattern day trading.  While SureTrader worked to help U.S. customers circumvent these rules, SureTrader itself was failing to comply with the mandatory broker-dealer registration requirements of the U.S. securities laws – namely, the federal securities laws that prohibit unregistered foreign broker-dealers from soliciting U.S. customers.  By failing to comply with the broker-dealer registration requirements, SureTrader and Gentile avoided certain regulatory obligations for broker-dealers that govern their conduct in the marketplace, including submitting to regulatory inspections and oversight, following financial responsibility rules, and maintaining books and records.  Through these activities, SureTrader violated Section 15(a)(1) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(a)(1), by acting as an unregistered securities broker-dealer.  Gentile is liable for SureTrader's violations as a control person under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), and for violating Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1), through or by means of SureTrader in violation of Section 20(b) of the Exchange Act, 15 U.S.C. § 78t(b).  *See* Declaration of Jessica Weissman, a true and correct copy of which is attached as **Exhibit N.**

### III.  MEMORANDUM OF LAW

**A.     Rules and Statutes Governing Service of Process**

In this case, Gentile is a resident of Puerto Rico, based on his own admissions and filings, and SureTrader is a limited liability company registered in The Bahamas.  Rule 4(e) of the Federal Rules of Civil Procedure governs the methods by which service of process may be effected on an individual.  Rule 4(e) provides:

> (e)     SERVING AN INDIVIDUAL WITHIN A JUDICIAL DISTRICT OF THE UNITED STATES.  Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:

  (1)  following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

  (2)  doing any of the following:

    (A)  delivering a copy of the summons and of the complaint to the individual personally;

    (B)  leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

    (C)  delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

  Rule 4(h)(2) of the Federal Rules of Civil procedure governs the methods by which service of process may be effected on a limited liability company:

  (h)  SERVING A CORPORATION, PARTNERSHIP, OR ASSOCIATION. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:

    (2)  at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

Fed. R. Civ. P. 4(h)(2).

  Rule 4(f) of the Federal Rules of Civil Procedure provides:

  (f)  Serving an Individual in a Foreign Country. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

    (1)  by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

    (2)  if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

>     (A)   as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
>     (B)   as the foreign authority directs in response to a letter rogatory or letter of request; or
>
>     (C)   unless prohibited by the foreign country's law, by:
>
>         (i)   delivering a copy of the summons and of the complaint to the individual personally; or
>
>         (ii)  using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3)   by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Rule 4(m) of the Federal Rules of Civil Procedure governs the time limit for service of process.

> (m) Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A).

Fed. R. Civ. P. 4(m).

Puerto Rican Rules of Civil Procedure Rule for the General Court of Justice Rule 4.5 (T. 32 Ap. I, § 4.5), titled "Service by edicts and publication thereof" provides in relevant part:

> (a) The court shall issue an order providing for a summons by publication when the person to be served is outside of Puerto Rico or if in Puerto Rico, cannot be located although pertinent attempts have been made to locate him/her, or when the person goes into hiding to avoid being served, or if it is a foreign corporation with no resident agent, and it is proved to the satisfaction of the court through an affidavit stating the steps taken, and said statement or sworn complaint filed states that justifies the granting of some relief against the person to be served or that said person is the proper party in the suit action.
>
> The return of process, unexecuted, shall not be a prerequisite for an order for service by publication.

Courts have discretion to determine the appropriate means of service in a given case. *U.S. Commodity Futures Trading Com'n v. Aliaga,* 272 F.R.D. 617, 619 (S.D. Fla. 2011). In exercising this discretion, the court must ensure that the alternate service comports with due process requirements. *Chanel, Inc. v. Lin*, 2009 WL 1034627, at *1 (S.D. Fla. Apr. 16, 2009). This means that the alternative method of service must provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Aliaga*, 272 F.R.D. at 619 (citing, inter alia, *Chanel, Inc. v. Zhixian*, 2010 WL 1740695, at *4 (S.D. Fla. Apr. 29, 2010)).

### B. The Commission Has Diligently Attempted Service on Defendants

Immediately after the Commission this lawsuit, it attempted in good faith to effectuate service of a Complaint that Defendants were on actual notice of the day of the filing. Gentile's counsel took the time to speak with Law360.com to provide quotes for an article about the lawsuit, yet failed to respond to the Commission's counsel requesting that Defendants consent to accept service of process. Nevertheless, the Commission diligently attempted to serve Defendants using an address (for an apartment in a condominium building) that Gentile himself provided in an EDGAR filing and is reflected in Puerto Rico's real property records.[1] The declarations filed with the Motion for Extension of Time detailed the multiple service attempts and additional investigation and research performed to locate Gentile. After several unsuccessful attempts at service, when the Commission again reached out to Gentile's counsel about waiving service of the summons, Gentile's counsel responded "I am not authorized to accept service." After the Court granted a 90-day extension to serve Defendants, the Commission continued its diligent efforts, including further service attempts at both the 103 Ave. De Diego address and the Secondary Residence (both condominium buildings), conducting surveillance on Gentile, asking for Puerto Rican police officials to assist with service because the security at both condominiums refused to allow the process servers access to Gentile's residences, and continuing investigation and research into Gentile's whereabouts. The Affidavits of Non-Service and Declarations attached to this Motion reflect a total of 19 separate attempts at service and surveillance performed by the process servers, in addition to extensive research and investigation performed to locate Gentile's

---

[1] The Commission started with service on Gentile in his individual capacity as well as director and CEO for SureTrader at his address in Puerto Rico. The reasoning at that time was that service on Gentile individually would be necessary regardless, and thus the Commission held off on starting service under the Hague Convention, which can be lengthy and costly.

whereabouts. Because Gentile could not be served in his individual capacity or as director and CEO of SureTrader, the Commission commenced service of process on SureTrader via the Hague Convention, but this process is expected to take at least 60 days.

Defendants have unreasonably delayed this case and should not be able to continue to avoid service of process and impede the progress of this case. Defendants are fully aware of the existence of this lawsuit, and the Commission proposes alternate service methods that are authorized by law and comport with due process concerns for the Court's consideration.

### C. Alternate Means of Service of Process Are Warranted

1. <u>Gentile</u>

    a. *Service by Publication is Authorized by Puerto Rican Statute.*

Based on the information contained in Gentile's filings with EDGAR, Puerto Rican real property records, and Gentile's filings with the California 1st District Court of Appeal, the Commission continues to believe that Gentile is currently located in Puerto Rico, and thus, the Commission has repeatedly attempted to effectuate service of process on Defendants within the District of Puerto Rico as permitted under Fed. Rule Civ. P. 4(e)(1). Because the attempts to date have been unsuccessful, the Commission seeks to serve Gentile (individually) by publication as allowed under Puerto Rican Rules of Civil Procedure Rule for the General Court of Justice Rule 4.5 (T. 32 Ap. I, § 4.5).

Rule 4.5 provides:

> (a) The court shall issue an order providing for a summons by publication when the person to be served is outside of Puerto Rico or if in Puerto Rico, cannot be located although pertinent attempts have been made to locate him/her, or when the person goes into hiding to avoid being served, or if it is a foreign corporation with no resident agent, and it is proved to the satisfaction of the court through an affidavit stating the steps taken, and said statement or sworn complaint filed states that justifies the granting of some relief against the person to be served or that said person is the proper party in the suit action.

"The affidavit must set forth specific probative facts showing that due diligence has been employed to locate defendants, and said statement, or the verified complaint, must properly show that plaintiff has a good cause of action." *Union De Periodistas, Artes Graficas y Rama Anexas v. The San Juan Star Co.*, No. Civ. 10–1679(SEC), 2011 WL 280850, *1 (D.P.R. Jan. 25, 2011) (citing *Senior Loíza Corp. v. Vento Dev. Corp.*, 760 F.2d 20, 24 (1st Cir. 1985)). Rule 4.5 requires that plaintiff's "affidavit . . . or the verified complaint filed states a claim justifying the granting of

13

some relief against the person to be served or that the person to be served is a proper party to the action." *Senior Loíza*, 760 F.2d at 24. This requirement, is interpreted to mean the party must put the court in a position "to ascertain reliably that plaintiff has a good cause of action." *Id.*

The Commission has more than satisfied both affidavit requirements under Rule 4.5. First, the Commission has set forth specific probative facts that "due diligence has been employed to located defendants." The Affidavits of the process servers detail the 19 attempts to serve Gentile and the extensive investigation, research, and surveillance they performed. Notably, the attempts were not merely cursory or perfunctory; in fact, despite security denying entrance to both condominium buildings where Gentile is believed to be residing, the process servers returned again and again, employing different methods and individuals to gain access.[2] The Commission believes that it has located Gentile, but it has been unable to serve him because he is in hiding. Unfortunately, despite these efforts, the process servers were not able to gain access to both the 103 Ave. de Diego and Secondary Residence condominium buildings because security denied access repeatedly, and the investigator and process servers did not locate any other locations where they believe Gentile to be located.

Second, the Declaration of Jessica Weissman, Assistant Regional Director and the investigating attorney for the Commission for this case, lays out the evidence demonstrating that the Commission has a good cause of action against Gentile for violations of U.S. securities laws. Under the Securities Exchange Act of 1934, a broker – "any person engaged in the business of effecting transactions in securities for the account of others" – must be registered with the Commission. 15 U.S.C. §§ 78c(a)(4)(A), 78o(a)(1). The Declaration details the specific facts showing that SureTrader is effecting transactions in securities for its customers and that it is not registered with the Commission. As the person controlling SureTrader, Gentile is liable for its violations. 15 U.S.C. § 78t(a). While it would ultimately be Defendants' burden to prove the existence of an exemption from registration, *UBS Asset Management (New York) Inc. v. Wood Gundy Corp.*, 914 F. Supp. 66, 79 (S.D.N.Y. 1996), the Declaration nevertheless demonstrates that

---

[2] The process server confirmed that the 103 Ave. de Diego address is "a very exclusive place and entrance is not allowed unless you are resident or have an authorization of the resident." The process server explained in her Affidavits that according to "Horizontal Property Regulation in Puerto Rico, no visitor is allowed to enter unless there is a special permit or the resident authorizes him/her. In condominiums, regulations are stricter and the entrance can be prohibited, even though the person has a legal document to deliver." *See* Breton Affidavit at ¶ 1.

14

the exemption for certain foreign brokers is inapplicable in light of SureTrader's solicitation of U.S. customers.

The Commission notes that one of the concerns that may generally weigh against granting service by publication – that a defendant does not actually learn of the existence of the lawsuit and a plaintiff proceeds to obtain a default judgment – does not apply in the instant case. Gentile has known about the existence of this case since the day it was filed, as evidenced by his counsel's quotes in the Law360.com article published the same day the lawsuit was filed and the Commission's two requests to Gentile's counsel inquiring as to whether he would accept service on Defendants' behalf. Put simply, Gentile is fully on notice of this lawsuit, and there is no risk to his due process rights. Accordingly, the Court should grant service of process on Gentile by publication as permitted under Rule 4.5.

> b. *Alternate Service of Process by Electronic Mail and Mail is Authorized by the Federal Rules of Civil Procedure*

In addition to service by publication, to avoid any question as to whether Gentile receives the documents, the Commission proposes serving Gentile by electronic mail at the address he recently used to correspond with the California Court of Appeals and by mail with a receipt (such as FedEx) to his counsel, Adam Ford. Federal courts have held that service by email and by service upon counsel satisfies due process where a plaintiff demonstrates that the proposed service is likely to notify a defendant of the action. *See, e.g., Chanel, Inc. v. Zhixian*, No. 10–60585, 2010 WL 1740695, at *4 (S.D. Fla. Apr. 29, 2010) (authorizing service via e-mail and public announcement); *TracFone Wireless, Inc. v. Distelec Distribuciones Electronicas, S.A.*, 268 F.R.D. 687, 690 (S.D. Fla. 2010) (permitting plaintiff to serve defendant via FedEx and hand-delivery to defendant's U.S. attorney); *Brookshire Bros. Ltd. v. Chiquita Brands, Int'l*, No. 05–21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007) (authorizing service on foreign defendants through local counsel); *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1016 (9th Cir. 2002) (affirming district court decision to permit service by e-mail and by regular mail to the defendant's U.S. subsidiary and U.S. attorney).

Effectively, the Commission suggests a belt and suspenders approach: Gentile is served by publication pursuant to Rule 4.5, by e-mail to the address that he identified in his Notice of Appearance to the California 1st District Court of Appeal and which that court has used to communicate with him (guygentile@me.com), and by mail to his counsel, Adam Ford, with whom the Commission communicated during the investigation of this case. Service on Gentile by email

15

and by mail to his counsel in addition to publication will more than satisfy due process concerns by apprising Gentile of the action by all known means (even though he already knows) and giving him the opportunity to answer the Commission's claims.

    2.   <u>SureTrader - By the Clerk Via Mail/Postal Channels (Such as FedEx) with Receipt</u>

The Federal Rules of Civil Procedure provide several methods for serving a defendant in a foreign country, including "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague [Service] Convention" and, "unless prohibited by the foreign country's law, by using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt." Fed. R. Civ. P. 4(f)(1), (f)(2)(C)(ii). In turn, Article 3 of the Hague Service Convention provides for service of process "through the Central Authority of each [destination] country" and "Article 10(a) of the Hague Service Convention provides that, if the State of destination does not object, the Hague Convention does not change the freedom to send judicial documents, by postal channels, directly to persons abroad." *TracFone Wireless, Inc. v. Sunstrike Intern., Ltd.*, 273 F.R.D. 697, 699 (S.D. Fla. 2011) (Judge Martinez) (citing *TracFone Wireless, Inc. v. Bequator Corp.*, Ltd., 717 F. Supp.2d 1307, 1309 (S.D. Fla. 2010) (Judge Hoeveler)); *Barriere v. Juluca,* No. 12–23510–CIV, 2014 WL 652831, at *2–3 (S.D. Fla. Feb. 19, 2014) (Judge Moreno); *Forth v. Carnival Corporation,* No. 12–23770–CIV, 2013 WL 1840373 (S.D. Fla. 2013) (Judge Seitz); *TracFone Wireless, Inc. v. Unlimited PCS, Inc.,* 279 F.R.D. 626, 630-31 (S.D. Fla. 2012) (Judge Ungaro); *cf.*, *Kleiman v. Wright,* 2020 WL 5632654 at * (S.D. Fla. Sept. 21, 2020) (Judge Bloom) (holding that service was not perfected under the Hague Service Convention because there is no support for serving a domestic defendant by mail under Rule 4(f) and there was no return or signed receipt of the "Notice of Listing" document).

Where there are multiple independent bases for international service under Fed. R. Civ. P. 4, the Court may use its discretion to decide the proper basis for the chosen method of international service. Service pursuant to Fed. R. Civ. P. 4(f) does not include a hierarchy of methods of service, such that Fed. R. Civ. P. 4(f)(3) is equally acceptable to service under Fed. R. Civ. P. 4(f)'s other subsections, and it includes "no qualifiers or limitations which indicate its availability only after attempting service of process by other means." *Brookshire Bros., Ltd. v. Chiquita Brands Intern., Inc.*, No. 05–CIV–21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007) (citing *Rio Props*, 284 F.3d at 1015).

The Bahamas is a party to the Hague Service Convention and does not object to service of judicial documents by postal channels. *See* https://www.hcch.net/en/states/authorities/details3/?aid=282. As mentioned previously, the Commission started with plans to serve Gentile both in his individual capacity as well as director and CEO of SureTrader. After the numerous diligent attempts to serve Gentile, in an abundance of caution, the Commission commenced the process of serving SureTrader under the Hague Service Convention through a request to the Bahamas Central Authority, but that process is expected to take at least 60 days. The Commission thus seeks an order allowing service on SureTrader by mail pursuant to Fed. R. Civ. P. 4(f)(1), (f)(2)(C)(ii), specifically that the Court enter an order directing that (1) the Commission provide international mail shipping labels (with return/signed receipt) and packaging and two copies of the Complaint and Summons to the Clerk of the Court and (2) the Clerk send out the package(s).

### D. In the Alternative, the Commission Requests an Additional 90-day Extension of Time to Effectuate Service, Service by U.S. Marshal, and Limited Discovery

If the Court declines to grant the request for alternate service upon Gentile, then the Commission respectfully requests a 90-day extension of time to make service of process,[3] up to and including December 20, 2021. As required by Rule 4(m), the Commission has demonstrated good cause for the failure to effectuate service to date, and the Court must extend the time for service for an appropriate period. The extension of time would allow for further investigation into Gentile's whereabouts.

In addition to the extension of time, the Commission requests that the Court issue an order (1) directing service by the U.S. Marshal's Service for the District of Puerto Rico pursuant to Fed. R. Civ. P. 4(c)(3); and (2) allowing limited discovery to ascertain additional information as to Gentile's whereabouts. In the absence of alternate service, the Commission would need these additional tools in order to effectuate service upon Gentile. Although the process servers used by the Commission did seek assistance from Puerto Rico law enforcement officials, and did obtain assistance in one instance but was unsuccessful, the Commission believes that a U.S. Marshal attempting service at both the 103 Ave. de Diego address and the Secondary Address may be beneficial to obtaining access to the condominium buildings. *See* Advisory Committee Notes to Rule 4 ("If a law enforcement presence appears to be necessary or advisable to keep the peace, the

---

[3] With respect to SureTrader, Rule 4(m)'s ninety-day time limit does not apply to service in a foreign country.

court should appoint a marshal or deputy or other official person to make the service."). With leave to conduct limited discovery, the Commission hopes to be able to ascertain with finality where Gentile currently resides and additional information that will assist in serving him personally.

## IV. CONCLUSION

The Commission's request should be granted because (1) the Commission has made multiple, diligent attempts to locate and serve Defendants despite Gentile avoiding service by using an address where public access is not permitted; and (2) the alternate service methods comport with due process requirements and are permitted under both Puerto Rican and U.S. law. In the alternative, the Commission's request for an additional 90-day extension of time to effect service should be granted.

September 20, 2021                                                  Respectfully submitted,


                                                                    Alice K. Sum
                                                                    Alice K. Sum, Esq.
                                                                    Trial Counsel
                                                                    Fla. Bar No. 354510
                                                                    Direct Dial: (305) 416-6293
                                                                    Email: sumal@sec.gov

                                                                    Attorneys for Plaintiff
                                                                    **SECURITIES AND EXCHANGE COMMISSION**
                                                                    801 Brickell Avenue, Suite 1950
                                                                    Miami, Florida 33131
                                                                    Telephone:   (305) 982-6300
                                                                    Facsimile:   (305) 536-4154