# EXHIBIT N

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-21079-Bloom

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

    Defendants.
_____/

## DECLARATION OF JESSICA WEISSMAN

Pursuant to 28 U.S.C. § 1746, the undersigned states as follows:

1. My name is Jessica Weissman, and I am over twenty-one years of age. I have personal knowledge of the matters set forth herein based on the investigation I conducted into Defendants, am familiar with the evidence supporting the below facts, and believe that the Commission has a meritorious and valid claim against Defendants.

2. I am employed with the Securities and Exchange Commission as an Assistant Regional Director in the Miami Regional Office.

3. From no later than March 2016 until at least November 2019 (the "Relevant Period"), Defendants MintBroker International, Ltd., f/k/a Swiss America Securities Ltd., d/b/a SureTrader) ("SureTrader" or the "Company") and its founder, owner, and chief executive officer Guy Gentile (a/k/a Guy Gentile Nigro) ("Gentile") operated an offshore broker-dealer in the

1

Bahamas designed to help day traders in the United States circumvent the U.S. rules that regulate pattern day trading.

4. SureTrader was in the business of being a broker-dealer from no later than December 2011 until at least November 2019, when SureTrader's clearing firm changed its services to SureTrader. During the Relevant Period, SureTrader's principal place of business was the Bahamas.

5. In 2008, Gentile incorporated Swiss America Securities Ltd. in the Bahamas. In 2017, Gentile changed the name of the Company from Swiss America Securities Ltd. to MintBroker International, Ltd. Gentile marketed the Company as SureTrader and it was commonly known as SureTrader, including through its website www.suretrader.com.

6. In 2011, Gentile registered SureTrader with the Securities Commission of the Bahamas ("SCB") as a broker-dealer. In July 2018, SureTrader and Gentile entered into a settlement with the SCB concerning violations of Bahamian securities laws, pursuant to which SureTrader and Gentile paid a $120,000 monetary penalty. In September 2019, the SCB suspended SureTrader's broker-dealer registration for five days based on, among other things, concerns regarding whether SureTrader customers' orders were entered into the market as represented and for failing to disclose the existence of Canadian and UK subsidiaries. In March 2020, the SCB filed with the Supreme Court of the Bahamas a "winding up petition," seeking a court-supervised winding up of SureTrader and the appointment of a joint provisional liquidator to take possession of SureTrader's books and records. The litigation is ongoing.

7. According to its website, SureTrader's business changed in January 2021 and it is currently in the business of providing day traders use of its proprietary trading platform.

8. SureTrader has never been registered with the Commission in any capacity.

9. SureTrader acted as a broker-dealer within the definition of Sections 3(a)(4) and 3(a)(5) of the Exchange Act but outside the exceptions or exemptions provided for by Rule 15a-6 of the Exchange Act by actively making efforts to induce a single transaction and engaging in an ongoing securities business relationship with U.S. customers.

10. Gentile currently resides in San Juan, Puerto Rico. During the Relevant Period, he lived in Miami, Florida, the Bahamas, New York, and Puerto Rico. He is the founder, owner, director, and CEO of SureTrader.

11. During the Relevant Period, Gentile owned, controlled, and had sole decision-making authority for all aspects of SureTrader's operations, and was responsible for all matters related to SureTrader's compliance with U.S. laws and regulations.

12. Gentile was the sole signatory for SureTrader on the clearing agreement with SureTrader's clearing firm that allowed SureTrader to execute trades.

13. By early 2012, SureTrader had only about 100 customers. Gentile decided to begin soliciting U.S. customers in order to increase SureTrader's customer base and improve its business prospects.

14. During the Relevant Period, SureTrader marketed itself to potential customers worldwide, including in the United States.

15. SureTrader offered broker-dealer services through which day traders could have their trades executed.

16. SureTrader did not require customers to meet any of the requirements set forth in the U.S. Pattern Day Trader Rules. For example, SureTrader offered customers the ability to open an account and trade with as little as $500 and did not require any margin account balances or place any other restriction required under the Rules.

17. SureTrader solicited U.S. customers through the SureTrader website and e-mail messages, as well as through third party websites focused on day trading and coupon websites.

18. During the Relevant Period, SureTrader solicited customers through its website, www.suretrader.com, the content on which Gentile controlled.

19. Through its website, SureTrader lured U.S. customers by offering SureTrader's offshore broker-dealer services as a means for circumventing the Rules.

20. For example, in at least October 2017, the SureTrader website stated it would "Allow You to Avoid the Nasty PDT [Pattern Day Trader] Rule."

21. In at least October 2017, the SureTrader website asked potential customers if they "are up for circumventing the rules and getting what you want."

22. The website targeted U.S. customers.

23. By promoting these services on its website and charging a monthly, recurring fee for access, SureTrader solicited U.S. customers through its efforts to develop an ongoing securities business relationship.

24. According to a sample of IP addresses, from about 2016 until about 2017, more than 50% of trades placed by SureTrader were for U.S. customers.

25. From no later than April 2016 until at least February 2017, SureTrader solicited thousands of customers, including U.S. customers, by sending e-mail messages. These emails, once opened, directed U.S. customers to SureTrader's website.

26. During the Relevant Period, SureTrader and Gentile solicited U.S. customers through advertisements on seven U.S.-based day trading websites SureTrader referred to internally as "affiliates." These Affiliates offered day trading schools, courses, and advice through on-demand videos and chatrooms.

27. The Affiliates provided SureTrader with an ideal venue for the solicitation of U.S. customers and offered the novice day trader the opportunity to put their newly acquired skills to use, at a discount, by opening an account with SureTrader.

28. The Affiliates prominently advertised SureTrader's brokerage services on their websites and also offered their "students" incentives to open an account with SureTrader. Those incentives included free trades, reduced commissions, rebates, and trading discounts. In exchange for their advertising services, SureTrader gave its Affiliates, for example, free access to its trading platform and, with respect to at least one Affiliate, monthly cash payments.

29. Gentile, who controlled SureTrader, knew about SureTrader's arrangements with the Affiliates and directed SureTrader's communications with them.

30. In October 2016, SureTrader entered into a Marketing Services Agreement with Warrior Trading (www.warriortrading.com), a Vermont-based website for day trading. Pursuant to this agreement, Warrior Trading advertised SureTrader on its website as a preferred broker and SureTrader offered a trading commission rebate. While the Marketing Services Agreement stated the rebate would only apply to non-U.S. customers, SureTrader gave the rebate to U.S. customers.

31. Individuals residing in the U.S. opened accounts at SureTrader after learning about it from Warrior Trading.

32. Similarly, SureTrader entered into a Marketing Services Agreement signed in August 2016 with New York-based Day Trading Radio, Inc. (www.DayTradingRadio.com), pursuant to which SureTrader paid Day Trading Radio $1,000 a month in exchange for running SureTrader's banner advertisements on the Day Trading Radio website.

33. All of the customers who opened trading accounts with SureTrader after learning about SureTrader through Day Trading Radio were based in the U.S.

34. SureTrader solicited U.S. customers through another five Affiliates in substantively the same way it did with respect to Warrior Trading and Day Trading Radio.

35. During the Relevant Period, the vast majority of U.S. customers at SureTrader were referred to SureTrader by the Affiliates.

36. SureTrader and Gentile took deliberate steps to create the false appearance that they were not soliciting U.S. customers.

37. For example, during the Relevant Period, SureTrader's website claimed that SureTrader would only open a trading account for "Persons outside the U.S.," "Trusts outside the U.S.," or "Companies outside the U.S. such as a U.K. company."

38. However, SureTrader routinely accepted U.S. customers and actively endeavored to conceal this fact.

39. SureTrader and Gentile's efforts to solicit U.S.-based customers resulted in a steady increase in new accounts, with hundreds of accounts being opened each month.

40. During the Relevant Period, U.S. customers comprised at least 50% and, at times 80%, of SureTrader's customer base.

41. SureTrader ballooned from a three-man shop to become a broker-dealer employing about 75 employees, with more than 40,000 customer accounts and assets of more than $10 million.

42. According to SureTrader, it has effected transactions "in excess of $1 billion on behalf of its customers."

43. The Defendants profited from their conduct. During the Relevant Period, SureTrader received millions of dollars in transaction-based compensation in the form of commissions and other related fees on the U.S.-based customer accounts.

44. The Defendants' securities law violations were recurrent and spanned years, from no later than 2016 through at least 2019. The violations were substantial and involved soliciting U.S. residents without registering with the Commission, thereby allowing the Defendants to avoid certain regulatory obligations for broker-dealers that govern their conduct in the marketplace, including submitting to regulatory inspections and oversight, following financial responsibility rules, and maintaining books and records. Further, the Defendants' violations involved circumventing the Pattern Day Trader Rules designed to protect investors in pattern day trading, which is a risky form of trading and which can result in substantial losses. On top of that, the Defendants took steps to conceal their solicitation of U.S. customers and their violations of the federal securities laws governing the registration of broker-dealers. SureTrader and Gentile have regulatory histories, and Gentile has consistently worked in the securities industry since at least 1999 and continues to work in the securities industry. Not only has Gentile failed to take responsibility for the violations at issue in this Complaint, but also he attempted to thwart the Commission's investigation by, among things, refusing to appear for investigative testimony pursuant to a subpoena absent a Court Order compelling his appearance. The Defendants profited from their conduct to the tune of millions.

I declare under penalty of perjury that the foregoing is true, correct, and made in good faith.

Executed on this 20th day of September 2021.

*Jessica M Weissman*
JESSICA M. WEISSMAN