**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:21-cv-21079-BB**

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
And d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

    Defendants.
_____/

**DEFENDANT GUY GENTILE'S MEMORANDUM OF LAW IN SUPPOT OF HIS MOTION TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................... 1

STATEMENT OF FACTS .................................................................................................................. 4

ARGUMENT ....................................................................................................................................... 9

   I.   Legal Standard ......................................................................................................................... 9

   II.   The Court Lacks Personal Jurisdiction Over Gentile ........................................................... 10

CONCLUSION ................................................................................................................................. 12

## TABLE OF AUTHORITIES

*Associated Transport Line v. Productos Fito Sanitarios Proficol el Carmen, S.A.*,
   197 F.3d 1070 (11th Cir. 1999) ............................................................................................. 12

*Consolidated Dev. Corp. v. Sherritt, Inc.*,
   216 F.3d 1286 (11th Cir. 2000) ............................................................................................. 10

*FrancoSteel Corp. v. M/V Charm*,
   19 F.3d 624 (11th Cir. 1994) ................................................................................................. 12

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ............................................................................................................... 10

*RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*,
   362 F. Supp. 3d 1226 (M.D. Fla. 2019) ................................................................................... 2

*Schuster v. Carnival Corp.*,
   2011 WL 541580 (S.D. Fla. Feb. 8, 2011) ............................................................................ 10

*Snyder v. McLeod,*
   971 So.2d 166 (Fla. App. 2007) ............................................................................................... 9

*Wendt v. Horowitz*,
   822 So.2d 1252 (Fla. 2002) ...................................................................................................... 9

*United States v. Gentile*,
   235 F. Supp. 3d 649 (D.N.J. 2017) .......................................................................................... 5

Statutes and Rules:

Rule 12(b)(2) ................................................................................................................................. 1

Fla. Stat. § 48.193 ......................................................................................................................... 1

15 U.S.C. § 78(a)(1) ...................................................................................................................... 5

Defendant Guy Gentile ("Gentile") respectfully submits the following memorandum of law in support of his motion to dismiss the Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) and Fla. Stat. § 48.193.

## PRELIMINARY STATEMENT

Guy Gentile generally denies the allegations in the complaint and has much to say about the Securities and Exchange Commission's ("SEC") conduct leading up to this Complaint, which makes clear it should never have been brought.  By way of limited example, the SEC and FINRA had previously informed Gentile that the conduct alleged in the Complaint did not violate the securities laws.  When Gentile tried to sell MintBroker International Ltd. ("SureTrader") during the time of his cooperation with the Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), and SEC, he was told he must keep SureTrader running in the same exact manner that he had been operating it because the DOJ was using it to catch securities laws violators—they called SureTrader their "honey pot."  But those facts are not the focus of this memorandum of law, which is solely to explain why this Court lacks personal jurisdiction over Gentile and to request the Court dismiss the Complaint for that reason.[1]  The face of the Complaint as well as irrefutable extrinsic evidence confirm that this Court lacks personal jurisdiction over Gentile: the allegations in the SEC's complaint fail to satisfy the Constitution's "minimum contacts" requirements as well as Florida's more exacting long-arm statute as it

---

[1] As this court is aware, Gentile currently has a pending motion for contempt filed against the SEC in the United States District Court for the District of New Jersey, which seeks a finding of contempt against the SEC for filing a Complaint here making the same allegations that were alleged and litigated in New Jersey but were dismissed with prejudice.  Gentile also has a ripe, pending motion to stay before this Court. Because the stay has not yet been ruled on, and this Court set today as the deadline for a responsive pleading, Gentile files this motion (which is limited to the question of personal jurisdiction) while reserving his rights to assert that this Court should not rule on this motion, and this case should be stayed pending resolution of the New Jersey Court's decision on the contempt motion.


relates to Gentile.[2] While the Complaint purports to connect Gentile to Florida, Gentile's fleeting relationship to Florida does not confer either general or specific personal jurisdiction on this Court. Rather, the Complaint relies on a demonstrably incorrect inference to suggest that the Court has personal jurisdiction over Gentile, which Gentile refutes herein through substantial documentary evidence and an affidavit attached hereto.

In addition to the Constitution's minimum contact requirements, Florida's long-arm statute, Fla. Stat. § 48.193, sets forth the applicable standard in determining whether a court within the state may subject a person to its jurisdiction. Specifically, courts identify two types of personal jurisdiction: general and specific. Specific jurisdiction "refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum." *RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1235 (M.D. Fla. 2019). Pursuant to general jurisdiction, "A defendant who is engaged in substantial and not isolated activity within [Florida], whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of [Florida], whether or not the claim arises from that activity." Fla. Stat. § 48.193(2).

To understand why no personal jurisdiction exists, the Court must first look to the allegations in the Complaint. As its fundamental premise, the Complaint purports to set forth allegations of wrongdoing by Gentile from March 2016 to November 2019. It concedes that Gentile currently resides in Puerto Rico, but further alleges that during the relevant period, Gentile resided in multiple places, including Puerto Rico, the Bahamas, New York, and Miami, Florida. (Cmplt. ¶ 16). The Complaint also alleges that SureTrader violated securities laws and

---

[2] The corporate defendant, SureTrader, has defaulted. But this default was caused by the SEC itself, which has been working with the Securities Commission of the Bahamas, and has put SureTrader into receivership, taking full legal control of the entity. The Receiver has been made aware of this lawsuit, but because the Receiver is aligned with the SEC, it has purposefully caused SureTrader not to respond to the Complaint, causing SureTrader to default.

seeks to impute this purported wrongdoing to Gentile by alleging that Gentile "directly, or indirectly" controlled SureTrader. (Cmplt. ¶ 1, 16, 100–108). The Complaint, accordingly, presumes personal jurisdiction over Gentile based on the inference that Gentile, acting directly or indirectly as a control person of SureTrader while living in Miami, Florida, committed the alleged securities law violations and/or caused SureTrader to allegedly violate the securities laws. On this inference, personal jurisdiction seems self-evident.

The problem with this inference is that indisputable, demonstrable facts *completely* negate it. Gentile does not deny that he stayed in Miami, Florida from approximately March 2016 until September 2016, a brief period of about six months. (Gentile Aff., December 1, 2021, ¶ 19). What Gentile puts forth below, however, is irrefutable evidence that from March 2016 to September 2016, while in Miami, Florida, he lacked any authority, and in fact did not control, whether directly or indirectly, nor take any actions on behalf of SureTrader.

Specifically, and as the SEC is aware, following years of cooperation with the DOJ, FBI, and SEC, Gentile decided to cease cooperating based on the significant toll his nearly full-time assistance in prosecuting securities violators was taking on him. In response, the FBI and SEC both threatened to take action against him. Gentile in anticipation of a pending indictment, resigned from his position as president and director at SureTrader and his shares were cancelled **in December 2015**, three months prior to his brief stay in Miami (imposed as a probationary condition) and prior to the allegations in the Complaint. Until the indictment was dismissed on January 30, 2017, Gentile had no connection to or involvement in SureTrader whatsoever. He had no employment role, no ownership: no nothing. In other words, to the extent the Court credits allegations of wrongdoing by Gentile in his role as "control person" of SureTrader, these allegations can only possibly refer to alleged actions by Gentile when he was not a resident of

Florida and not during the time of his brief, temporary stay there from March 2016 until September 2016. Notably, the Complaint itself admits, Gentile's "beneficial ownership" of a "group of financial institutions" that included SureTrader began "in 2017." (Cmplt. ¶ 18).

Beyond this allegation, the Complaint makes no allegations that Gentile had any "substantial and not isolated activity within the state" nor that he engaged in any individual acts that would subject him to Florida's jurisdiction. Indeed, the Complaint contains only a single allegation connecting Gentile to Florida: namely, it alleges that he "directed the formation of [non-party] MinTrade Technologies" in "January 2017," a purported "West Palm Beach, Florida based entity." (Cmplt. ¶¶ 18, 89). This is false. Gentile did not "direct the formation of MinTrade Technologies, an entity not a defendant in this action nor that otherwise has anything to do with any allegation in the Complaint. The Complaint contains no other references to this entity nor does it explain how Gentile's act of "directing the formation" of this entity even if true—which it is not—would subject him to Florida's long-arm jurisdiction.[3] No other allegations exist in the Complaint connecting Gentile to Florida. As such, the Court lacks personal jurisdiction over Gentile and the Complaint against him must be dismissed with prejudice pursuant to Rule 12(b)(2) and Fla. Stat. § 48.193.

## STATEMENT OF FACTS

According to the SEC, from March 2016 until November 2019, SureTrader and Gentile, "its founder, owner, and chief executive officer . . . operated an offshore broker-dealer in the Bahamas designed to help day traders in the United States circumvent the U.S. rules that regulate pattern day trading." (Cmplt. ¶ 1). It further alleges that "[t]hrough these activities" SureTrader

---

[3] While the Complaint alleges that SureTrader "solicited U.S. customers" through a website called www.mojodaytrading.com "based in Florida," it does not allege Gentile had any involvement in that website. (Cmplt. ¶ 71). Indeed, as confirmed in his affidavit, Gentile has no knowledge of and had no involvement in www.mojodaytrading.com. (Gentile Aff., December 1, 2021, ¶ 28).

4

"violated Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78(a)(1), by acting as an unregistered securities broker-dealer" and that "Gentile is liable for SureTrader's violations as a control person." (Cmplt. ¶ 9).

SureTrader is a Bahamian entity, registered with the Securities Commission of the Bahamas ("SCB"). (Cmplt. ¶ 11–13). According to the Complaint, "Gentile currently resides in San Juan, Puerto Rico. During the Relevant Period, he lived in Miami, Florida, the Bahamas, New York, and Puerto Rico." (Cmplt. ¶ 16).

As this Court is aware, the SEC's investigation of and interest in Gentile dates to 2012 when Gentile was arrested by the FBI based on allegations that he had participated in two schemes in 2007 and 2008 related to the sale of RVNG and KYUS stock, allegations which Gentile vigorously denies. *See United States v. Gentile*, 235 F. Supp. 3d 649, 650–51 (D.N.J. 2017) (indictment dismissed). Following his arrest but without admitting guilt, Gentile offered and agreed to cooperate with the DOJ (the DOJ immediately withdrew its criminal compliant), the FBI, and the SEC by assisting them in detecting and prosecuting financial crimes and securities law violations. *Id.* at 651. And Gentile did just that. Over the next nearly four years, Gentile cooperated against people unknown to Gentile but targets of the FBI or SEC, on a nearly full-time basis, assisting these agencies in prosecuting several high-profile criminal and securities fraud cases. *See Id.* at 651–53. This assistance resulted in service of substantial jail time for, civil monetary fines against, and millions of dollars in disgorgement against securities law violators. (Ex. I, Gentile Aff. II, July 14, 2016, ¶¶ 67–73).

Yet after nearly four years of full-time cooperation taking a significant toll on his family and personal life, Gentile informed the agencies that he no longer wished to cooperate. (Ex. 1, Gentile Aff. II, July 14, 2016, ¶¶ 61, 71–73). Still in need of his assistance on several pending

5

investigations, the FBI and SEC lashed out at Gentile, filing contemporaneous *time-barred* criminal and civil complaints in the United States District Court for the District of New Jersey. (Ex. C, NJ Indict.; Ex. D, NJ Cmplt.).

In anticipation of these charges, Gentile ceased acting as President and Director of SureTrader or acting on its behalf in any capacity, and otherwise removed himself from the securities industry.  (Gentile Aff., December 1, 2021, ¶ 6). On December 29, 2015, Gentile submitted a letter to SureTrader, stating "Dear Sir, I hereby tender my resignation as the President and Director of **SWISS AMERICA SECURITIES, LTD**., which resignation is to take effect immediately." (Id. at ¶ 7, Ex. A). According to SureTrader meeting minutes, on December 29, 2015, "On motion duly made, seconded and carried it was **RESOLVED**: []**THAT** the resignation of Mr. Guy Gentile as President and Director of the Company is hereby accepted as of December 29, 2015." (Id. at ¶¶ 9-10, Ex. B).  During the meeting, subject to regulatory approval, SureTrader held an Extraordinary General Meeting of the Shareholders and resolved that Gentile's resignation was accepted, that Mr. Wade Matsumoto would be and was thereby appointed as Director, that Ms. Janay Pyfrom was appointed as CEO of the company, and that Mr. Antonio Collie was appointed President of the company. (Id. at ¶ 9, Ex. B).

Following Gentile's resignation, the Securities Commission of the Bahamas recognized that Gentile had stepped down and that Antonio Collie was approved as the Director and President of SureTrader, pursuant to Regulation 37 of the Securities Industry Regulations 2012. (Id. at ¶ 11, Ex. C).  A revised authorization form signed by Antonio Collie as acting president of SureTrader removing Gentile's authority to act on behalf of the SureTrader was circulated. (Id. at ¶ 14, Ex. D).  As of December 29, 2015, Gentile tendered back all of his shares in SureTrader.  From that day until after the New Jersey indictment was dismissed, on January 30,

2017, Gentile had no involvement whatsoever with the operation of SureTrader. (Id. at ¶ 13). From December 29, 2015 until January 31, 2017, Gentile had no access to any Suretrader systems or software, had no substantive discussions with any SureTrader officer, director, or employee about the business, and did not have any insight into decisions being made by the corporate officers at that time. (Id. at ¶ 26).

On February 26, 2016, the SCB sent a letter to SureTrader stating, "Please be advised that effective 25 February 2016 the Securities Commission of the Bahamas has approved Antonio Samuel Collie as a Director of Swiss America Securities, Ltd. [SureTrader] Pursuant to Regulation 37 of the Securities Industry Regulations, 2012." (Id. at ¶¶ 11-12, Ex. C). A follow up letter was sent by the SBC to Philip Dorsett, SpeedTrader Chief Compliance Officer, advising, among other things, that "Mr. Guy Gentile resigned as President and Director of the Company effective 29 December 2015." (Ex. C).

Most troubling about the SEC's attempt to imply that Gentile was involved with SureTrader between March 2016 and February 2017 is that the SEC was aware that Gentile had nothing to do with the company during that year. On March 1, 2016, SEC staff attorney Sajjad Martin sent an email to Gentile's counsel related to an outstanding subpoena stating, "Thank you again for the documents regarding Mr. Gentile's recent departure from Swiss America [SureTrader] . . . ."[4] (Id. at ¶ 17, Ex. E). After resigning from SureTrader, Gentile personally notified another SureTrader clearing firm that he had exited the industry, that all communications

---

[4] Although outside the scope of this motion, it is notable that in this same correspondence Gentile's counsel informed the SEC's Miami Office that "Furthermore, the SEC in New York was already informed about this matter and specifically advised that it did not see a violation." (Gentile Aff., December 1, 2021, ¶ 17-18). In other words, during the period of Gentile's active cooperation through the SEC's New York office he was instructed by the DOJ, FBI, and SEC to operate his business in this manner and was assured by the SEC's New York office that it did not violate any securities laws. (Id. at ¶ 18). To be sure, the SEC's Miami Office, in violation of a previous New Jersey federal court order and without personal jurisdiction over Gentile, has filed a baseless lawsuit against Gentile.

7

must go through Mr. Collie, and that he intended to completely exit the securities industry and get into the banking industry. (Id. at ¶ 24).

Following his resignation from SureTrader in December 2015 and the (subsequently dismissed) indictment against him on March 23, 2016, Gentile agreed to and was required to temporarily stay in Florida pursuant to his probationary terms. (Id. at ¶ 19). Gentile maintained his residence in the Bahamas during this time in and considered himself a resident of the Bahamas. (Id. at ¶ 19). He remained in Florida (although frequently traveling to the Bahamas) until approximately September 2016 at which point he disconnected his cable/internet, transferred his vehicles from Florida, and established residence in Puerto Rico. (Id. at ¶¶ 20-23, Ex. F, G, H).[5] At no time during Gentile's brief stay in Florida did he take a single action on behalf of SureTrader nor could he have. (Id. at ¶ 19). Significantly, not a single allegation in the Complaint against Gentile refers to any actions he took during this time.

According to the Complaint, while residing in Puerto Rico, "in January 2017, Gentile directed the formation of the West Palm Beach, Florida-based entity MinTrade Technologies, LLC, [] which [was] created for the purpose of facilitating and concealing the movement of U.S.-based customer funds to SureTrader." (Cmplt. 18, 89). MinTrade Technologies is not a party to this action and the Complaint does not allege any involvement by Gentile in MinTrade Technologies beyond "directing" its formation. Gentile, however, did not direct anyone to form MinTrade Technologies. (Id. at ¶ 27). The Complaint contains no other allegations connecting Gentile to Florida—at any time between March 2016 and November 2019.

---

[5] Gentile did obtain a Florida license and gun permit during this time, but both were promptly cancelled around the time of his departure.

**ARGUMENT**

**I.     Legal Standard**

Under Rule 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction. "A Florida court only has personal jurisdiction over a non-resident defendant if the plaintiff establishes: (1) sufficient jurisdictional facts to bring the action within the ambit of Florida's long-arm statute . . . and (2) that the exercise of jurisdiction is consistent with due process." *Snyder v. McLeod*, 971 So.2d 166, 170 (Fla. App. 2007). "A plaintiff has the initial burden to allege sufficient facts in his or her complaint to demonstrate the basis for a court's jurisdiction, including facts to establish both statutory and constitutional long-arm jurisdiction over a non-resident defendant." *Id.* at 168. As one Florida court explained:

> If the plaintiff sufficiently pleads jurisdiction, the burden shifts to the defendant to file an affidavit or other sworn proof contesting the plaintiff's jurisdictional pleadings. The defendant's affidavit must contain factual allegations, which, *if taken as true,* show that the defendant's conduct does not subject him to jurisdiction. If the defendant's affidavit fully disputes the plaintiff's jurisdictional allegations, the burden shifts back to the plaintiff to submit affidavits or other sworn proof establishing a basis for jurisdiction. If the plaintiff fails to do so, the defendant's motion to dismiss must be granted.

*Id.* (internal quotation marks and citations omitted). In other words, where a defendant moves for dismissal under Rule 12(b)(2), the court must "derive the facts from the affidavits in support of the motion to dismiss, and the transcripts and records submitted in opposition to the motion to dismiss." *Wendt v. Horowitz*, 822 So.2d 1252, 1254 (Fla. 2002).

As the *Snyder* court has further illuminated:

> With respect to the first part of this test, section 48.193 provides two ways to establish long-arm jurisdiction. First, jurisdiction may be established if a person "does any of the acts enumerated in" section 48.193(1), including committing a tortious act in Florida, operating a business in Florida, insuring a person in Florida, and other enumerated acts. […]

9

> Second, jurisdiction may be established under section 48.193(2), which states: "A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." […] Substantial activity has been defined as "continuous and systematic general business contacts" with Florida.

*Id.* at 170 (citations omitted). The long-arm statute "must be strictly construed, and any doubts about applicability of the statutes [must] be resolved in favor of the defendant and against a conclusion that personal jurisdiction exists . . . ." *Schuster v. Carnival Corp.*, 2011 WL 541580, at *3 (S.D. Fla. Feb. 8, 2011).

If a court determines a basis exists for assertion of personal jurisdiction under the state statute, it must "next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional motions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant.

**II.     The Court Lacks Personal Jurisdiction Over Gentile**

The Court lacks personal jurisdiction over Gentile. As an initial matter, no general personal jurisdiction exists because the Complaint fails to allege any "continuous and systematic general business contacts" by Gentile with Florida. Nor does the Complaint allege specific personal jurisdiction as it fails to allege any of the enumerated acts under Florida's long-arm statute. Rather, the Complaint makes only a single reference to Gentile's alleged conduct relating to Florida, alleging that he directed the formation of a non-party Florida based entity that purportedly provided services for Defendant SureTrader. Yet, it fails to make any allegation as to any conduct of or involvement by Gentile aside from "directing its formation." The

Complaint itself, therefore, is deficient. But more critically, Gentile did not direct the formation of MinTrade Technologies as set forth in his affidavit. (Gentile Aff., December 1, 2021, ¶ 28). The sole remaining allegation against Gentile is that he stayed in Florida for a few months five years ago, although none of the conduct alleged in the Complaint occurred during this time. This fact does not give the Court personal jurisdiction over Gentile, since Gentile was not acting as a control person of SureTrader during the time he lived in Florida nor was he conducting any other business, committing any tort, or taking any actions alleged to have violated the securities laws. Any *relevant* alleged acts occurred while Gentile lived outside of Florida and the Complaint does not tie any of these alleged acts to Florida *at all*.

The SEC cannot meet its burden of establishing personal jurisdiction as Gentile had no "continuous and systematic general busines contacts" with the State of Florida. During the time period alleged in the complaint, Gentile did not conduct, operate, or carry on any business with SureTrader in Florida; Gentile did not engage in any business on behalf of nor was he in anyway involved in SureTrader from March 2016 until January 30, 2017 after the indictment was dismissed; Gentile had no access to SureTrader systems or software; Gentile had no discussions with any SureTrader officer, director, or employee about the business or anyone from MinTrade Technologies; and Gentile did not have any insight into decisions being made by the corporate officers at that time.

Moreover, no specific jurisdiction may be exercised over Gentile either, since the events described in the Complaint as alleged violations of the securities laws in 2016 did not arise out of Gentile's contact with the State of Florida. Courts in Florida are clear that the requisite minimum contacts for specific jurisdiction only exist where (1) the defendant's contacts with the forum *relate* to the plaintiff's cause of action; (2) the defendant's contacts with the forum state

involve some act by which the defendant has purposefully availed itself of the privilege of conducting business activities in the forum; and (3) the defendant's contacts with the forum are such that the defendant should reasonably anticipate being hailed into court there. *Consolidated Dev.*, 216 F.3d at 1291; *Associated Transport Line v. Productos Fito Sanitarios Proficol el Carmen, S.A.*, 197 F.3d 1070, 1074 (11th Cir. 1999); *FrancoSteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994). The SEC fails to allege Gentile maintains or maintained contacts with the State of Florida relating to any violations of the securities laws. Gentile's affidavit and accompanying exhibits refute the single, isolated reference to an act in Florida by Gentile. Because the SEC possesses no evidence that would contradict Gentile's affidavit, which rebuts allegations of securities laws violations relating to his contacts with Florida, the Complaint must be dismissed with prejudice for lack of personal jurisdiction. *See Snyder,* 971 So.2d at 170.; *Wendt*, 822 So.2d at 1254.

## CONCLUSION

For the reasons set forth herein, Gentile respectfully requests that the Court dismiss the Complaint with prejudice pursuant to 12(b)(2) and Fl. Stat. § 48.193 for lack of personal jurisdiction and grant any other relief deemed just and proper.

Dated: December 1, 2021
       Miami, FL

/s/Dayliset Rielo
Dayliset Rielo, Esq.
Fla Bar No.: 85321
The Rielo Law Firm, LLC
8180 N.W. 36th Street
Suite 220
Miami, FL 33166
Office: (786) 454-9873
Fax: (786) 454-8900
Email: dayliset@rielolaw.com

        FORD O'BRIEN, LLP
        Adam C. Ford, Esq. (PHV granted)
        Matthew A. Ford, Esq. (PHV granted)
        575 Fifth Ave, Floor 17
        New York, NY 10017
        Tel: (212) 858-0040
        Email: aford@fordobrien.com
        Email: mford@fordobrien.com

*Attorneys for Defendant Guy Gentile*

## CERTIFICATE OF SERVICE

    I hereby certify that I caused the foregoing memorandum with accompanying motion and exhibits to be served on Plaintiff by filing via PACER, with notice to Plaintiff's counsel, this 1st day of December 2021.

         */s/Dayliset Rielo*
        Dayliset Rielo, Esq.