**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:21-CV-21079-Bloom**

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

      Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT GUY GENTILE'S MOTION TO DISMISS**
**THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

Plaintiff Securities and Exchange Commission (the "Commission") responds to Defendant

Guy Gentile's a/k/a Guy Gentile Nigro ("Gentile") Motion to Dismiss the Complaint for Lack of

Personal Jurisdiction ("Motion to Dismiss") as follows:

**I.     INTRODUCTION**

Gentile's Motion to Dismiss must be denied because Gentile applies the wrong legal

standard and ignores Eleventh Circuit precedent on personal jurisdiction.  Gentile incorrectly

argues that this Court's determination of personal jurisdiction hinges on his contacts with the State

of Florida under Florida's long-arm statute.  Instead, where the Court's personal jurisdiction is

invoked based on a federal statute authorizing nationwide or worldwide service of process – here,

the Securities Exchange Act of 1934 ("Exchange Act") – the applicable forum for minimum

contacts purposes is the United States.  The exercise of personal jurisdiction over Gentile by this

Court comports with due process because he has purposefully established minimum contacts with the United States. Gentile is a U.S. citizen, who admittedly resided in the U.S. during the relevant time period in the Complaint, and purposely and repeatedly directed activities at the U.S. directly and through Mintbroker International, Ltd., f/k/a Swiss America Securities Ltd. and d/b/a SureTrader ("SureTrader") and other entities. Gentile fails to raise any compelling case or to demonstrate a constitutionally significant inconvenience that would infringe his liberty interests to support a finding that this Court's exercise of personal jurisdiction does not comport with fair play and substantial justice.

## II.    FACTS SUPPORTING PERSONAL JURISDICTION[1]

1.      Gentile is a U.S. citizen. *See* Schedule 13G filed on EDGAR by Gentile dated May 4, 2021, wherein Gentile certified that he is a U.S. citizen, a true and correct copy of which is attached as **Exhibit A.**

2.      Gentile resided in the U.S., including in New York, Florida, and Puerto Rico, from at least March 2016 until November 2019, the "Relevant Period" identified in the Complaint. Complaint, ECF No. 1 at ¶ 16; Declaration of Jessica Weissman, ECF No. 8-14, at ¶ 10.

3.      Gentile currently resides in Puerto Rico. *See* Exhibit A; Affidavit of Guy Gentile in Support of his Motion to Dismiss, ECF No. 58-1 at 20, 23; Gentile letter dated September 29, 2021, ECF No. 23.

4.      Gentile purposely directed activities at the U.S. during the Relevant Period through the following:

---

[1] As with his prior filings, Gentile includes numerous irrelevant and incorrect facts concerning the Commission and its investigation of him and SureTrader. The Commission denies Gentile's claim that it approved of his illegal conduct in any way and his characterizations of his prior dealings with the Commission, and will address these allegations on the merits if and when appropriate.

a.      Gentile owned, controlled, and had sole decision-making authority for all aspects of SureTrader's operations, and was responsible for all matters related to SureTrader's compliance with U.S. laws and regulations.  Complaint at ¶ 28; Weissman Declaration at ¶ 11.

b.      Gentile was the sole signatory for SureTrader on the clearing agreement with SureTrader's clearing firm that allowed SureTrader to execute trades.  Complaint at ¶ 29; Weissman Declaration at ¶ 12.

c.      SureTrader solicited U.S. customers through the SureTrader website and e-mail messages, as well as through third party websites focused on day trading and coupon websites. Complaint at ¶ 46; Weissman Declaration at ¶ 17.

d.      Through its website Suretrader.com, SureTrader targeted and lured U.S. customers by offering SureTrader's offshore broker-dealer services as a means for circumventing U.S. pattern day trading rules.  Complaint at ¶¶ 47-51; Weissman Declaration at ¶¶ 18-22.

e.      As of October 25, 2017, Suretrader.com attracted over 5,759 visitors per day and as of December 14, 2017, approximately 56% of the traffic to SureTrader.com for the prior three months was from the United States, with the next highest concentration of traffic coming from Italy with 4.2%.  Complaint at ¶ 52.

f.      According to a sample of IP addresses, from about 2016 until about 2017, more than 50% of trades placed by SureTrader were for U.S. customers.  Complaint at ¶ 55; Weissman Declaration at ¶ 24.

g.      SureTrader and Gentile solicited U.S. customers through advertisements on seven U.S.-based day trading websites SureTrader referred to internally as "affiliates."  These Affiliates offered day trading schools, courses, and advice through on-demand videos and chatrooms.  Complaint at ¶ 59; Weissman Declaration at ¶ 26.

h.      Gentile,   who   controlled   SureTrader,   knew   about   SureTrader's arrangements with the Affiliates and directed SureTrader's communications with them.  Complaint at ¶ 62; Weissman Declaration at ¶ 29.

i.      During the Relevant Period, the vast majority of U.S. customers at SureTrader were referred to SureTrader by the Affiliates.   Complaint at ¶ 72; Weissman Declaration at ¶ 35.

j.      During the Relevant Period, U.S. customers comprised at least 50% and, at times, 80%, of SureTrader's customer base.  Complaint at ¶ 92; Weissman Declaration at ¶ 40.

5.      Gentile is the sole director and member of Mint Bank International, LLC ("Mint Bank").  He has been seeking to organize Mint Bank as an international financial entity under the laws of Puerto Rico since 2017, when he filed a permit application with the Office of the Commissioner of Financial Institutions of Puerto Rico ("OCIF").  OCIF denied the application, concluding Gentile lacked the "commercial integrity" to organize and operate an international financial entity in Puerto Rico and that Mint Bank omitted from its application a Commission lawsuit pending at that time against Gentile for stock manipulation.  Mint Bank and Gentile filed an administrative appeal before OCIF and in June 2018, OCIF issued a final order denying the application.  Gentile then filed a civil rights action under 42 U.S.C. § 1983 against OCIF and its Commissioners seeking, among other things, an order compelling OCIF to issue Mint/Gentile the international financial entity they seek.  *Gentile, et al. v. OCIF,* 18-cv-01441 (D.P.R. 2018).  On March 19, 2021, Gentile filed a notice with the Court that he has reached a tentative settlement with OCIF concerning his claims.  Complaint at ¶ 20.

6.      The Commission has sued Gentile for violations of the Exchange Act, alleging that SureTrader violated Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1), and that Gentile

is liable under (a) Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), as a control person for

SureTrader's violations, and (b) Section 20(b) of the Exchange Act, 15 U.S.C. § 78t(b), for

violating Section 15(a)(1), through or by means of SureTrader.  *Id.* at ¶ 9.

7.        The Commission alleged jurisdiction in the Complaint pursuant to Sections 21(d),

21(e), and 27(a) of the Exchange Act, 15 U.S.C. §§ 78u(d), (e) and 78aa(a).  *Id.* at ¶ 22.

### III.  MEMORANDUM OF LAW

As a threshold matter, Gentile's Motion to Dismiss erroneously cites the Court to Florida's

long-arm statute and case law applying same, and Gentile's Affidavit[2] in Support of the Motion to

Dismiss contains irrelevant "facts" about Gentile's contacts (or lack thereof) with the State of

Florida.  Gentile conspicuously fails to cite the Eleventh Circuit's decision in a case concerning

the underlying investigation to this action, which specifically addressed the standard for personal

jurisdiction.  *SEC v. Marin*, 982 F.3d 1341, 1345 (11th Cir. 2020).  When the correct standard for

determining personal jurisdiction is analyzed, it is clear that none of Gentile's arguments about

when he resided in Miami and whether he took action on behalf of SureTrader while he lived in

Miami are relevant.

In analyzing whether a court has personal jurisdiction, the first question is "whether the

applicable statute potentially confers jurisdiction over the defendant," and the second is "whether

the exercise of jurisdiction comports with due process."  *Id.* at 1349 (citing *Republic of Panama v.*

---

[2]   Gentile's Affidavit appears to be defective on its face.  On page 5, his signature appears below
"San Juan, Puerto Rico," which indicates that Gentile was in Puerto Rico at the time he signed,
but the Affidavit was notarized by a Notary Public from the State of New York.  Although the
Governor of New York signed an Executive Order at the beginning of the COVID-19 pandemic
to temporarily allow for remote notary services, that Executive Order expired on June 24, 2021.
*See* https://dos.ny.gov/notary-public.  Even when the Executive Order was in effect, one of the
requirements for remote notarization was that the signatory must affirmatively represent that they
are physically situated in the State of New York, which did not occur here.
https://www.sro.nysed.gov/common/sro/files/dos_covid19_remotenotaryguidance.pdf

*BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997)).  As to the statutory basis

for personal jurisdiction, "[w]hen a federal statute provides for nationwide service of process, it

becomes the statutory basis for personal jurisdiction" over a person served according to the statute.

*Id.*; *see also SEC v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997) ("[S]ervice of process

constitutes the vehicle by which the court obtains jurisdiction.").[3]   Here, the Commission's

Complaint charges Gentile with violating the Exchange Act, which provides for nationwide service

of process in 15 U.S.C. § 78aa(a): "process in  . . . cases [to enforce any liability or duty created

by or to enjoin any violation of the Exchange Act] may be served in any other district of which the

defendant is an inhabitant or wherever the defendant may be found."  After multiple unsuccessful

attempts to serve Gentile at an address in Puerto Rico he has used for notice purposes for litigation

in the U.S. and in filings on EDGAR, Gentile was served by publication in Puerto Rico.  The

nationwide service of process provision in the Exchange Act provides a basis for personal

jurisdiction over Gentile.

　　　　As to due process, "when, as here, a federal statute provides the basis for jurisdiction, the

constitutional limits of due process derive from the Fifth, rather than the Fourteenth, Amendment."

*BCCI Holdings*, 119 F.3d at 942.  "The exercise of personal jurisdiction comports with due process

when (1) the nonresident defendant has purposefully established minimum contacts with the forum

and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial

justice."  *Carrillo*, 115 F.3d at 1542.  The Fifth Amendment's Due Process Clause, like the

Fourteenth's, is "designed to protect individuals by providing them with fair notice that their

---

[3] Courts have reasoned that "a federal statute which permits the service of process beyond the
boundaries of the forum state [via a nationwide or worldwide service provision] broadens the
authorized scope of personal jurisdiction.  Under such a statute, the question becomes whether the
party has sufficient contacts with the United States, not any particular state."  *Carrillo*, 115 F.3d
at 1542 (citing *Go–Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1414-16 (9th Cir.1989)).

activities will render them liable to suit in a particular forum." *BCCI Holdings*, 119 F.3d at 945.

"This fair warning requirement is satisfied if the defendant has purposefully directed his activities

at residents of the forum." *Id.*  To determine whether a person has purposefully directed activities

at the forum, the court examines whether the individual has sufficient "minimum contacts" with

the forum. *See, e.g., Marin*, 982 F.3d at 1349-50; *Carrillo*, 115 F.3d at 1542.  Where, as here, the

Fifth Amendment applies because personal jurisdiction is based on a federal statute authorizing

nationwide service of process, "the applicable forum for minimum contacts purposes is the United

States," not the state in which the district court sits.  *Carillo*, 115 F.3d at 1544; *BCCI Holdings*,

119 F.3d at 945 n.16, 946-47, 946 n.21 ("Because minimum contacts with the United States – the

relevant sovereign – satisfy the 'purposeful availment' prong in federal question cases, contacts

with the forum state are not constitutionally required."); *Presser v. Union Security Insurance Co.*,

No. 17-cv-61184-Bloom/Valle, 2017 WL 4476333, *4 (S.D. Fla. Oct. 6, 2017) (under ERISA's

nationwide service of process provision, jurisdiction was proper because defendant "has sufficient

contacts with the United States as a whole – his purported lack of contacts with Florida

notwithstanding").  Thus, a United States resident or business, which necessarily has "directed …

activities at the United States" "through [her] choice of residence or incorporation," satisfies the

purposeful availment component of Fifth Amendment due process analysis.  *Marin*, 982 F.3d at

1350 (citing *BCCI Holdings*, 119 F.3d at 945 n.16).

     Gentile is a U.S. citizen.  Gentile resided in the U.S., including in New York, Florida, and

Puerto Rico, during the Relevant Period in the Complaint.  Gentile currently resides in Puerto Rico.

Gentile purposely directed activities at the U.S. during the Relevant Period.  Gentile owned,

controlled, and had sole decision-making authority for all aspects of SureTrader's operations, and

was responsible for all matters related to SureTrader's compliance with U.S. laws and regulations.

Gentile was the sole signatory for SureTrader on the clearing agreement with SureTrader's clearing firm that allowed SureTrader to execute trades.  Gentile is the sole director and member of Mint Bank, which he has been seeking to organize as an international financial entity under the laws of Puerto Rico since 2017, when he filed a permit application with the OCIF of Puerto Rico.  After OCIF denied his application, Gentile filed an administrative appeal before OCIF and a civil rights action in the District of Puerto Rico.  Based on these facts, it is clear that Gentile purposely directed activities at the U.S., and Gentile's contacts with the U.S. easily satisfy the purposeful availment requirement of the Fifth Amendment due process analysis.  *Marin*, 982 F.3d at 1350 (finding that the contacts of a U.S. citizen who lives in New York and purposely directed activities at the U.S. to easily satisfy the purposeful availment requirement).[4]

The next step is to determine if the assertion of personal jurisdiction would comport with fair play and substantial justice.  *BCCI Holdings,* 119 F.3d at 945 n.16 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 476 (1985)).  "In order to apply these considerations in the Fifth Amendment context, we ask first whether the party challenging jurisdiction has 'presented a compelling case' that the exercise of jurisdiction would be so unreasonable that the party's 'liberty interests have actually been infringed.'"  *Id.*  If, and only if, the challenging party has made this showing, the court proceeds to "balance the burdens imposed on the individual defendant against the federal interest involved in the litigation."  *Id.*  "[I]it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern."  *Id.*  "The burden is on the defendant to demonstrate that the assertion of jurisdiction in the forum will make litigation so gravely

---

[4]  The Eleventh Circuit noted that "SureTrader and Gentile transferred U.S. customer funds from overseas to Mint Custody's U.S. bank account."  *Marin*, 982 F.3d at 1350.

difficult and inconvenient that [she] unfairly is at a severe disadvantage in comparison to [her] opponent." *Id*. at 948.

Gentile fails to present any case, let alone a compelling case, that the exercise of jurisdiction in the Southern District of Florida would be so unreasonable or so gravely difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to the Commission. His Motion to Dismiss focuses only on the purported lack of contacts with the State of Florida and never raises any "constitutionally significant inconvenience" that would infringe on his liberty interests. Even if Gentile raised these issues, they would have fallen short just as the arguments did in *Marin*. For example, Marin argued that she has no contacts with the State of Florida and lives 1,300 miles from Miami. In rejecting Marin's arguments, the Eleventh Circuit noted that the purported lack of contacts with the State of Florida plays "no magical role in the Fifth Amendment analysis" and there is "nothing inherently burdensome about crossing a state line" due to modern means of communication and transportation. *Marin*, 982 F.3d at 1350-51. In fact, the approximate flight distance (airport to airport) from Miami to San Juan, Puerto Rico is 1045 miles (https://www.airmilescalculator.com/distance/sju-to-mia/); whereas the flight distance from Miami to New York City is 1090 miles (https://www.airmilescalculator.com/distance/mia-to-jfk/).

Like in *Marin*, because Gentile has not presented any evidence, much less a compelling case that litigating in the Southern District of Florida would present a "constitutionally significant inconvenience," the Court need not balance any burden on Gentile against the Commission's interest in proceeding in the Southern District of Florida. The Eleventh Circuit did note, however, that the Commission's decision to proceed in the Southern District of Florida "was hardly 'unreasonable' or 'arbitrary'" and that this district is a "logical place to center the investigation" because the "SEC has conducted the Traders Café investigation out of its Miami office, where it

is investigating the United States activities of a Bahamian entity (SureTrader) and its owner and CEO [Gentile], a resident of Puerto Rico. The investigation also extends to entities based in Tampa and West Palm Beach (Traders Café and MinTrade)." *Marin*, 982 F.3d at 1351. Nothing has changed about the Commission's investigation into Gentile and SureTrader, and this Court should reach the same conclusion – that it has personal jurisdiction over Gentile – as the Eleventh Circuit did in *Marin*.

### IV.    CONCLUSION

For the foregoing reasons, Gentile's Motion to Dismiss should be denied.

December 15, 2021                              Respectfully submitted,


Alice K. Sum
Alice K. Sum, Esq.
Trial Counsel
Fla. Bar No. 354510
Direct Dial: (305) 416-6293
Email: sumal@sec.gov

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone:    (305) 982-6300
Facsimile:    (305) 536-4154

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 15th day

of December 2021 via CM-ECF on all defense counsel in this case or other interested parties in the

manner denoted below.

Via UPS
MintBroker International, Ltd.
c/o Michael C. Miller, Registered Agent
Winthrop Heights
10 Lookout Hill
Nassau, Bahama

Via Email
Warren Gluck, Esq.
Jessica Magee, Esq.
Holland and Knight LLP
Email: Warren.Gluck@hklaw.com
Email: Jessica.Magee@hklaw.com
Counsel for Igal Wizman of Ernst & Young,
Joint Provisional Liquidators

Alice K. Sum
Alice K. Sum
