**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:21-cv-21079-BB**

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
And d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

      Defendants.

v.

ERNST AND YOUNG, IGAL WIZMAN, and
ELEANOR FISHER,

      Third Party Defendants.

---

**<u>DEFENDANT GUY GENTILE'S ANSWER AND THIRD-PARTY COMPLAINT</u>**

Defendant Guy Gentile ("Gentile"), by and thought his counsel, hereby answers

Plaintiff's Complaint, and sets forth his affirmative defenses and third-party claims as follows.

Except as otherwise affirmatively stated below, Gentile denies all allegations in the Complaint.

To the extent any headings or subheadings may be read to include allegations, each such

allegation contained in the heading or subheading is denied in its entirety.

## I. INTRODUCTION

1.     To the extent the allegations in paragraph 1 state a legal conclusion or otherwise

purport to summarize the actions and intent of Gentile no responsive pleading is required. To the

1

extent a responsive pleading is required, Gentile denies the allegations contained in paragraph 1 except he admits that Defendant MintBroker International, Ltd. ("SureTrader") operated a broker-dealer in the Bahamas, that Gentile was a founder SureTrader, and that Gentile was an owner and chief executive officer of SureTrader from February 2017 until November 2019.

2.    Gentile denies the allegations in paragraph 2 in their entirety.

3.    Gentile denies the allegations in paragraph 3 in their entirety.

4.    Gentile denies the allegations in paragraph 4 in their entirety and lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

5.    Gentile lacks knowledge or information to form a belief about the truth of the allegations contained in paragraph 5 except Gentile specifically denies the allegation that "Gentile's plan worked" and admits that SureTrader expanded from having 3 employees to 75.

6.    Gentile denies the allegations contained in paragraph 6.

7.     To the extent the allegations in paragraph 7 state a legal conclusion or otherwise purport to summarize the actions and intent of SureTrader no responsive pleading is required. To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 7 and avers that the "federal securities laws" speak for themselves.

8.    To the extent the allegations in paragraph 8 state a legal conclusion or otherwise purport to summarize the actions and intent of SureTrader or Gentile no responsive pleading is required.  To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 8 and avers that the "federal securities laws" speak for themselves.

9.    To the extent the allegations in paragraph 9 state a legal conclusion no responsive pleading is required.  To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 9.

10.     To the extent the allegations in paragraph 10 state a legal conclusion or otherwise purport to summarize the actions and intent of SureTrader no responsive pleading is required. To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 10.

## II.     DEFENDANTS

11.     As to the allegations in paragraph 11, Gentile admits only that "SureTrader was in the business of being a broker-dealer from no later than December 2011 until at least November 2019, when SureTrader's clearing firm changed its services to SureTrader" and that "SureTrader's principal place of business was the Bahamas" and denies the remaining allegations in paragraph 11 for lack of knowledge or information sufficient to form a belief about their truth.

12.     Gentile admits the allegations in paragraph 12.

13.     Gentile admits the allegations in paragraph 13 except denies that Gentile paid any monetary penalty.

14.     Gentile denies the allegations set forth in paragraph 14.

15.     Gentile admits the allegations in paragraph 15.

16.     Gentile admits the allegations in paragraph 16 except denies that he lived in New York and denies that at all relevant times he was the owner, director, and CEO of SureTrader.

17.     Gentile admits the allegations in paragraph 17.

18.     Gentile admits the allegations in paragraph 18 except denies that "In November 2016, Gentile directed the formation of a Delaware-based entity called Mint Custody Limited, and in January 2017 Gentile directed the formation of West Palm Beach Florida based entity MinTrade Technologies, LLC, both of which were created for the purpose of facilitating and concealing the movement of U.S.-based customer funds to SureTrader."

19.     Gentile admits the allegations in paragraph 19.

20.     Gentile denies the allegation in paragraph 20 that "Gentile is the sole director and member of Mint Bank International, LLC ("Mint Bank")" and that any such entity exists, but otherwise admits the allegations in paragraph 20.

21.     Gentile denies the allegations in paragraph 21 except admits only that he has a website www.guygentile.com and avers that the website previously provided trader education via video and live chat room, never provided securities recommendations, and no longer provides any services.

22.      To the extent the allegations in paragraph 22 state a legal conclusion no responsive pleading is required. To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 22.

23.     To the extent the allegations in paragraph 23 state a legal conclusion no responsive pleading is required.  To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 23 and further objects that this Court lacks jurisdiction and that the proper venue for this action is New Jersey.

24.      To the extent the allegations in paragraph 24 state a legal conclusion no responsive pleading is required.  To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 24.

25.     Gentile admits the allegations in paragraph 25.

26.     To the extent the allegations in paragraph 26 state a legal conclusion no responsive pleading is required.  To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 26 except admits only that "During the Relevant Period, SureTrader was not registered as a broker-dealer with the Commission."

27.     Gentile admits the allegations in paragraph 27.

28.     Gentile denies the allegations in paragraph 28.

29.     Gentile denies the allegations in paragraph 29 and further avers that any authority was removed in January 2016 and never reinstated.

30.     Gentile denies the allegations in paragraph 30.

31.     Gentile admits the allegations in paragraph 31.

32.     Gentile denies the allegations in paragraph 32.

33.     To the extent the allegations in paragraph 33 state a legal conclusion no responsive pleading is required.  To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 33.

34.     To the extent the allegations in paragraph 34 state a legal conclusion no responsive pleading is required.  To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 34.

35.     To the extent the allegations in paragraph 35 state a legal conclusion no responsive pleading is required.  To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 35.

36.     To the extent the allegations in paragraph 36 purport to interpret FINRA rules, the rules speak for themselves.  Gentile otherwise admits the allegations in paragraph 36.

37.     To the extent the allegations in paragraph 37 purport to interpret FINRA rules, the rules speak for themselves. Gentile otherwise admits the allegations in paragraph 37.

38.     To the extent the allegations in paragraph 38 purport to interpret FINRA rules, the rules speak for themselves. Gentile otherwise admits the allegations in paragraph 38.

39.     To the extent the allegations in paragraph 39 purport to interpret FINRA rules, the rules speak for themselves. Gentile otherwise admits the allegations in paragraph 39.

40.     To the extent the allegations in paragraph 40 purport to interpret FINRA rules, the rules speak for themselves. Gentile otherwise admits the allegations in paragraph 40.

41.     To the extent the allegations in paragraph 41 purport to interpret FINRA rules, the rules speak for themselves. Gentile otherwise denies the allegations in paragraph 41 and disagrees with the SEC's purported description of the rules.

42.     To the extent the allegations in paragraph 42 purport to interpret FINRA rules, the rules speak for themselves. Gentile otherwise denies the allegations in paragraph 42.

43.     Gentile denies the allegations in paragraph 43.

44.     Gentile admits the allegations in paragraph 44.

45.     Gentile admits the allegations set forth in paragraph 45.

46.     Gentile denies the allegations in paragraph 46.

47.     Gentile denies the allegations in paragraph 47.

48.     Gentile denies the allegations in paragraph 48.

49.     Gentile denies the allegations in paragraph 49 and otherwise lacks knowledge or information to form a belief as to their truth.

50.      Gentile denies the allegations in paragraph 50 and otherwise lacks knowledge or information to form a belief as to their truth.

51.     Gentile denies the allegations in paragraph 51 and denies any suggestion that SureTrader's website "targeted U.S. customers" or any of the acts or actions listed in paragraph 51 were intended to target U.S customers.

52.      Gentile denies the allegations in paragraph 52 and otherwise lacks knowledge or information to form a belief as to their truth.

53.      As to the allegations in paragraph 53, Gentile lacks knowledge or information to form a belief as to their truth and otherwise denies the allegations.

54.      Gentile denies the allegations set forth in paragraph 54.

55.      As to the allegations in paragraph 55, Gentile lacks knowledge or information to form a belief as to their truth and otherwise denies the allegations.

56.      Gentile denies the allegations set forth in paragraph 56 and further avers that only individuals who requested to receive emails would receive them and that a pop up blocker on each page of SureTrader's website would prevent any individual with a U.S. IP address from accessing SureTrader's website without first agreeing to the contents of the pop block and affirming that he or she had not been solicited by SureTrader, including any individuals who requested and received an email with a link to SureTrader's website.

57.      Gentile denies the allegations set forth in paragraph 57 and further avers that only individuals who requested to receive emails would receive them and that a pop up blocker on each page of SureTrader's website would prevent any individual with a U.S. IP address from accessing SureTrader's website without first agreeing to the contents of the pop block and affirming that he or she had not been solicited by SureTrader, including any individuals who requested and received an email with a link to SureTrader's website.

58.      Gentile denies the allegations in paragraph 58 and otherwise lacks knowledge or information sufficient to form a belief as to their truth.

59.      Gentile denies the allegations in paragraph 60.

60.      Gentile denies the allegations in paragraph 61.

61.     Gentile denies the allegations in paragraph 62 and further avers the program described in paragraph 61 was for non U.S. clients.

62.     Gentile denies the allegations in paragraph 62.

63.     Gentile denies the allegations in paragraph 63.

64.     Gentile denies the allegations in paragraph 64.

65.     Gentile denies the allegations in paragraph 65.

66.     Gentile denies the allegations in paragraph 66.

67.     To the extent the SEC mischaracterizes the nature of the advertisement and the marketing services agreement, Gentile denies the allegations in paragraph 67 while admitting only that that there was an advertisement that stated specifically SureTrader was only for non-U.S. clients and that there was a Marketing Services Agreement but that agreement is for Day Trading Radio to refer only non-U.S. clients.

68.     As to the allegations in paragraph 68, Gentile admits only that the agreement with Day Trading Radio was for referral of non-U.S. clients, denies all remaining allegations in paragraph 68, and further avers that SureTrader only accepted non-solicited U.S. clients except.

69.     Gentile denies the allegations in paragraph 69.

70.     Gentile denies the allegations in paragraph 70.

71.     Gentile denies the allegations in paragraph 71.

72.     Gentile denies the allegations in paragraph 72.

73.     Gentile denies the allegations in paragraph 73.

74.     Gentile denies the allegations in paragraph 74.

75.     Gentile denies the allegations in paragraph 75.

76.     Gentile denies the allegations in paragraph 76.

77.     Gentile denies the allegations in paragraph 77.

78.     Gentile admits the allegations in 78 except he specifically denies the allegation

and mischaracterization that "Thus, in essence, SureTrader told potential customers on its

website that the potential customers might have to certify that they had never been to that same

website."

79.     Gentile denies the allegations in paragraph 79.

80.     Gentile denies the allegations in paragraph 80.

81.     Gentile denies the allegations in paragraph 81.

82.     Gentile denies the allegations in paragraph 82.

83.     Gentile admits the allegations in paragraph 83 except he further avers that a pop

up blocker existed on SureTrader's website prior to October 2017.

84.     Gentile admits the allegations in paragraph 84.

85.     Gentile denies the allegations in paragraph 85.

86.     Gentile denies the allegations in paragraph 86.

87.     Gentile denies the allegations in paragraph 87.

88.     Gentile denies the allegations in paragraph 88.

89.     Gentile denies the allegations in paragraph 89.

90.     Gentile denies the allegations in paragraph 90.

91.     Gentile denies the allegations in paragraph 91.

92.     Gentile denies the allegations in paragraph 92.

93.     Gentile admits the allegations in paragraph 93.

94.     Gentile admits the allegations in paragraph 94.

95.     Gentile denies the allegations in paragraph 95.

96.     Gentile denies the allegations in paragraph 96.

97.     To the extent the allegations in paragraph 97 state a legal conclusion or otherwise purport to summarize the actions and intent of SureTrader no responsive pleading is required. To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 97.

98.     To the extent the allegations in paragraph 98 state a legal conclusion or otherwise purport to summarize the actions and intent of SureTrader no responsive pleading is required. To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 98.

99.     To the extent the allegations in paragraph 99 state a legal conclusion or otherwise purport to summarize the actions and intent of SureTrader no responsive pleading is required. To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 99.

100.    To the extent the allegations in paragraph 100 state a legal conclusion or otherwise purport to summarize the actions and intent of Gentile no responsive pleading is required.  To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 100.

101.    To the extent the allegations in paragraph 101 state a legal conclusion or otherwise purport to summarize the actions and intent of SureTrader no responsive pleading is required.  To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 101.

102.    To the extent the allegations in paragraph 102 state a legal conclusion or otherwise purport to summarize the actions and intent of SureTrader and Gentile no responsive pleading is required.  To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 102.

103.    To the extent the allegations in paragraph 103 state a legal conclusion or otherwise purport to summarize the actions and intent of SureTrader and Gentile no responsive pleading is required.  To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 103.

104.    To the extent the allegations in paragraph 104 state a legal conclusion or otherwise purport to summarize the actions and intent of Gentile no responsive pleading is required.  To the extent a responsive pleading is required, Gentile denies the allegations in paragraph 104.

## AFFIRMATIVE DEFENSES

Gentile denies any and all allegations contained in the Complaint not specifically admitted herein, including allegations in any headings, prayers for relief, or wherefore clauses.

## <u>FIRST AFFIRMATIVE DEFENSE</u>

The SEC is barred from recovery under the doctrine of unclean hands. Among other reasons, during Gentile's active cooperation with the DOJ, FBI, and SEC, the FBI instructed Gentile to solicit certain U.S. individuals who were targets of investigations related to potential securities fraud violations and market manipulation schemes.  In addition to instructing Gentile to solicit U.S. individuals, the DOJ, FBI, and SEC used SureTrader to ensnare securities violators, had unfettered access to SureTrader's records, and were aware of SureTrader's policies for accepting non-solicited U.S. clients. These policies included use of a pop-up blocker and attestation of non-solicitation.  When FINRA began an investigation into SureTrader, the SEC, FBI, and then acting assistant United States attorney Gurbir Grewal assured FINRA and Gentile that SureTrader's acceptance of non-solicited U.S. clients and the use of the pop-up blocker and attestation of non-solicitation conformed with U.S. securities laws.  After assuring Gentile that

SureTrader's policies conformed with the U.S. securities laws, Gentile was explicitly instructed by the FBI "to continue operating SureTrader in the same way" and to solicit certain U.S. individuals subject to investigation.  The SEC was aware of and actively involved in these instructions and even assisted Gentile in drafting letters containing false information intended to assist Gentile in exiting "conspiracies" without arousing suspicion.  Any SureTrader policies related to solicitation or non-solicitation of U.S. clients was done at the express instruction and with knowledge and approval of the DOJ, FBI, SEC, and USAO and therefore may not form the basis of a finding that SureTrader or Gentile violated the U.S. securities laws anti-solicitation provisions.

## SECOND AFFIRMATIVE DEFENSE

The SEC has failed to state claim for relief, as they have no valid, legal claim against Gentile.

## THIRD AFFIRMATIVE DEFENSE

The SEC is barred from recovery under the doctrine of laches. Among other reasons, during Gentile's active cooperation with the DOJ, FBI, and SEC, the FBI instructed Gentile to solicit certain U.S. individuals who were targets of investigations related to potential securities fraud violations and market manipulation schemes.  In addition to instructing Gentile to solicit U.S. individuals, the DOJ, FBI, and SEC used SureTrader to ensnare securities violators, had unfettered access to SureTrader's records, and were aware of SureTrader's policies for accepting non-solicited U.S. clients. These policies included use of a pop-up blocker and attestation of non-solicitation.  When FINRA began an investigation into SureTrader, the SEC, FBI, and then acting assistant United States attorney Gurbir Grewal assured FINRA and Gentile that SureTrader's acceptance of non-solicited U.S. clients and the use of the pop-up blocker and

attestation of non-solicitation conformed with U.S. securities laws.  After assuring Gentile that SureTrader's policies conformed with the U.S. securities laws, Gentile was explicitly instructed by the FBI "to continue operating SureTrader in the same way" and to solicit certain U.S. individuals subject to investigation.  The SEC was aware of and actively involved in these instructions and even assisted Gentile in drafting letters containing false information intended to assist Gentile in exiting "conspiracies" without arousing suspicion.  The DOJ, FBI, SEC, and USAO were aware in 2014 of these policies and no later than 2012 and approved of any SureTrader policies related to solicitation or non-solicitation of U.S. clients during that same time.  The SEC's delay in bringing this action for nearly 10 years constitutes unreasonable delay.

## FOURTH AFFIRMATIVE DEFENSE

The SEC is barred from recovery by 28 U.S.C. 2462's five-year statute of limitations. Among other reasons, during Gentile's active cooperation with the DOJ, FBI, and SEC, the FBI instructed Gentile to solicit certain U.S. individuals who were targets of investigations related to potential securities fraud violations and market manipulation schemes.  In addition to instructing Gentile to solicit U.S. individuals, the DOJ, FBI, and SEC used SureTrader to ensnare securities violators, had unfettered access to SureTrader's records, and were aware of SureTrader's policies for accepting non-solicited U.S. clients. These policies included use of a pop-up blocker and attestation of non-solicitation.  When FINRA began an investigation into SureTrader, the SEC, FBI, and then acting assistant United States attorney Gurbir Grewal assured FINRA and Gentile that SureTrader's acceptance of non-solicited U.S. clients and the use of the pop-up blocker and attestation of non-solicitation conformed with U.S. securities laws.  After assuring Gentile that SureTrader's policies conformed with the U.S. securities laws, Gentile was explicitly instructed by the FBI "to continue operating SureTrader in the same way" and to solicit certain U.S.

individuals subject to investigation.  The SEC was aware of and actively involved in these instructions and even assisted Gentile in drafting letters containing false information intended to assist Gentile in exiting "conspiracies" without arousing suspicion.  The DOJ, FBI, SEC, and USAO were aware in 2014 of these policies and no later than 2012 and approved of any SureTrader policies related to solicitation or non-solicitation of U.S. clients during that same time.  Because the relevant decisions and actions fall outside the statutory time-period, the claims against Gentile are barred by the statute of limitations.

## FIFTH AFFIRMATIVE DEFENSE

The claims against Gentile are barred by the doctrine of res judicata.  Claims against Gentile based on his alleged conduct in the Bahamas have already been dismissed in the case *SEC v. Gentile*, No. 2:16-cv-01619 (D.N.J. March 2016).

## ADDITIONAL AFFIRMATIVE DEFENSES

The SEC claims are further barred by the United States constitution, the SEC's own conduct as well as the conduct of its staff, equitable estoppel, duress, fraud, illegality, waiver, in pari delicto, failure to mitigate damages, lack of standing, improper service, failure to serve, unconscionability, adhesion, as contrary to public policy, improper venue, justification, necessity, and spoliation of evidence.

## THIRD-PARTY COMPLAINT

Guy Gentile, by and through his counsel, alleges as follows against third-party defendants Ernst and Young, Igal Wizman ("Wizman"), and Eleanor Fisher ("Fisher").

## INTRODUCTION AND FACTUAL BACKGROUND

105.    Gentile brings this third-party claim to seek redress against SureTrader's receiver, Ernst and Young, Igal Wizman, and Eleanor Fisher (collectively the "Third-Party

Defendants," "Joint Provisional Liquidator," or "JPL") for acting in bad faith by failing to answer the complaint against SureTrader in this action and thus harming SureTrader's shareholders, including Gentile.

106.    The JPL committed this breach of its duty to act honestly and in good faith, its duty of care, and its duty to act in a commercially feasible manner intentionally and in bad faith.

107.    Indeed, it appears the SEC was directly involved in the Bahamian Securities Commission ("SCB")'s investigation of Gentile and that the SCB acted in concert with the SEC in forcing the entity into receivership and then causing the entity to default in this action.

108.    Five months after dismissal of the SEC's action against Gentile in the District of New Jersey, the SEC filed the instant action in the Southern District of Florida, alleging securities violations against Gentile and SureTrader for conduct that the SEC *admittedly* knew about for *nine years* at the time of its filing.

109.    Indeed, the SEC not only knew about SureTrader's solicitation of U.S. customers, the SEC, along with the DOJ, FBI, and then assistant U.S. attorney Gurbir Grewal ("AUSA Grewal"), were actively involved in directing Gentile to solicit U.S. customers as part of a cooperation agreement he had entered.  The SEC's involvement extended beyond soliciting U.S. individuals targeted as potential securities violators.  The SEC also knew of SureTrader's policies, including its use of a pop-up blocker and requirement that potential U.S. clients sign an attestation of non-solicitation without which SureTrader would not permit any U.S. individuals to open an account with SureTrader.

110.    As of 2012, FINRA opened an investigation into SureTrader's acceptance of non-solicited U.S. clients, only to stand down after Gentile's counsel provided a *Wells* submission detailing how SureTrader's practices of using a pop-up blocker and requiring attestation of non-

solicitation satisfied U.S. securities laws.  The DOJ, FBI, and SEC all agreed and then-AUSA Grewal intervened to ensure FINRA that SureTrader (and Gentile's) conduct was lawful and to request that FINRA step down from its investigation.

111.    The FBI then expressly instructed Gentile to continue operating SureTrader in the same fashion, including its anti-solicitation policies, while continuing to instruct Gentile to solicit certain U.S. individuals targeted by law enforcement as potential securities law violators. In fact, during this time, the FBI actively used SureTrader in its sting operations, frequently visiting SureTrader's Bahamian offices and exercising its complete, unfettered access to SureTrader and Gentile's computers, files, and electronic devices.

112.    At no point did the FBI suggest SureTrader's practices concerning acceptance of U.S. customers violated any securities laws and such allegations were noticeably absent from the dismissed criminal and SEC complaints in New Jersey, although the alleged conduct attributed to SureTrader and Gentile in the instant action overlaps in time by four years with those claims.

113.    To make it clearer, the FBI and SEC *indisputably knew* about SureTrader's practices related to acceptance of U.S. clients between 2012 to 2016, yet the dismissed indictment filed against Gentile fails to make any allegations concerning this conduct.

114.    More critically, the dismissed SEC New Jersey complaint also fails to expressly mention this conduct.  (Instead, the SEC sought to litigate these issues by serving document requests, interrogatories, and requests for admission related to SureTrader's purported solicitation of U.S. clients on Gentile, arguing that such requests were proper because they supported the same injunction sought in this case).

115.    Notably, when former District of New Jersey Chief Judge Linares, presiding over the dismissed criminal matter, asked assistant United States Attorney Nicholas Grippo whether

he was aware of any misconduct *after* 2008 by Gentile, Grippo answered "no".  Neither at the time, not at any time afterwards, did the SEC attorneys in the courtroom correct the AUSA—with whom the SEC had jointly investigated Gentile.

116.    Judge Linares, as well as superseding Judge Martinotti, asked the same question during the SEC's civil suit against Gentile, demanding the SEC come forth with any allegations of wrongdoing after June 2008 to support the SEC's requested injunctive relief.  The SEC repeatedly asserted to the Court that it was not aware of any wrongful conduct by Gentile after June 2008, resulting in repeated dismissals of its complaint.

117.    Notwithstanding this relationship, following the dismissal of its New Jersey action against Gentile (for the third time), the SEC reworked its complaint and refiled against SureTrader and Gentile alleging violations based on conduct the SEC had known about for nine years, conceded was lawful as early as 2014, and failed to mention as a basis for obtaining an injunction in its earlier action when specifically *directed* to include such allegations.

118.    The SEC, having successfully forum shopped, set the works in motion to guarantee its success by obtaining a fraudulent default judgment against SureTrader, whose canned finding of liability through default it hopes to impute to Gentile.

119.    Specifically, the SEC in late 2015 began working with the SCB to shut down SureTrader.  It did so successfully.

120.    In March 2020, the SCB forced SureTrader into receivership and liquidation, completely taking control of the entity and appointing the JPL to conduct SureTrader's business and dispose of its assets.

121.     With SureTrader in receivership, the SEC filed its reworked New Jersey complaint, but now amending to include SureTrader, secure in its knowledge that SureTrader would default.

122.     After all, the SEC remained in direct communication with the SCB and the JPL about SureTrader.

123.     Immediately after Gentile received notice of the action through publication in a Puerto Rican newspaper, Gentile's counsel in the Bahamas immediately notified the SCB and the JPL about the complaint and urged the filing of an answer.  Specifically, on October 25, 2021, Gentile's counsel wrote: "attached is a complaint from SEC against Mintbroker which the JPL need to reply to urgently."

124.     The SCB responded the following day, stating, "Just acknowledging receipt as we already spoke on the subject, and thanks very much.  Just to recap, the Commission was prior informed that the JPLs are aware of this particular SEC action/complaint . . . ."

125.     Despite knowing about the lawsuit, the SCB and JPL, following the SEC's lead, failed to file an answer, intentionally causing SureTrader to default.

126.     Immediately after the time had expired for the JPL to file an answer on SureTrader's behalf, the SEC moved for a default judgment, which the Court granted.  Having obtained the default judgment, the SEC then filed a notice with the Court indicating its intent to seek liability jointly and severely between SureTrader and Gentile.  The SEC is intending to seek joint and several liability against an entity who's default the SEC procured and then impose liability on Gentile.

127.     As a result of this conduct and the JPL's failure to answer the complaint, SureTrader as well as its shareholders were injured by the creation of a liability for SureTrader,

which could have been avoided by either filing an answer or attempting to settle the matter, or even offering to give Gentile authority to defend. The JPL, acting in bad faith and in the interest of the SEC rather than SureTrader, failed to do either.

### THIRD-PARTY CLAIMS

### COUNT I
**Breach of Fiduciary Duty, Bahamian Companies Law § 146 - Derivatively**
(Against Ernst and Young, Wizman, and Fisher)

128.    Gentile repeats and alleges the allegations set forth in paragraphs 1 through 127.

129.    Bahamian Companies Law § 146 imposes a duty of care on the JPL as a receiver or receiver manager of SureTrader.  Pursuant to this duty of care, the JPL was required to act honestly and in good faith and to deal with any property of the company in a commercially feasible manner.

130.    By intentionally causing SureTrader to default, the JPL did not act honestly nor in good faith and did not deal with SureTrader's property in a commercially feasible manner.

131.    As a result of these breaches, SureTrader as well as Gentile as a shareholder of SureTrader suffered damages.

132.    Gentile did not make a demand on SureTrader to file this claim because any demand would have been futile.  SureTrader has been commandeered by the SBC, SEC, and the JPL, who intentionally caused SureTrader to default.

### COUNT II
**Breach of Fiduciary Duty, Common Law - Derivatively**
(Against Ernst and Young, Wizman, and Fisher)

133.    Gentile repeats and alleges the allegations set forth in paragraphs 1 through 132

134.    In its role as the JPL of SureTrader, the JPL accepted certain fiduciary duties imposed by Bahamian common law.

135.   By causing SureTrader to default, the JPL breached these duties.

136.   As a result of these breaches, SureTrader as well as Gentile as a shareholder of SureTrader suffered damages.

137.   Gentile did not make a demand on SureTrader to file this claim because any demand would have been futile.  SureTrader has been commandeered by the SBC, SEC, and the JPL, who intentionally caused SureTrader to default.

**WHEREFORE**,

Gentile respectfully requests damages in an amount to be determined at trial and any other relief deemed just and proper.

Dated:  January 21, 2022

                   *Dayliset Rielo*
                   Dayliset Rielo, Esq.
                 The Rielo Law Firm, LLC
                  8180 N.W. 36th Street
                  Suite 200
                  Miami, FL 33166
                  786-454-9873
                  dayliset@rielolaw.com

                  *Counsel for Defendant Guy Gentile*

                  FORD O'BRIEN, LLP
                  Adam C. Ford, Esq. (PHV granted)
                  Matthew A. Ford, Esq. (PHV granted)
                  575 Fifth Ave, Floor 17
                  New York, NY 10017
                  Tel: (212) 858-0040
                  aford@fordobrien.com
                  mford@fordobrien.com

                  *Counsel for Defendant Guy Gentile*

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Answer for Defendant Guy Gentile executed January 21, 2022, to be served on Plaintiff by filing via PACER, with notice to Plaintiff's counsel, this 21st day of January 2022.

_Dayliset Rielo_
Dayliset Rielo, Esq.
