# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:21-cv-21079-BB

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

      Defendants.

## DEFENDANT GUY GENTILE'S MOTION FOR
## SANCTIONS AND MEMORANDUM OF LAW IN SUPPORT

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ........................................................................................................................ 1

FACTUAL BACKGROUND ....................................................................................................... 2

LEGAL STANDARD ................................................................................................................. 11

ARGUMENT .............................................................................................................................. 12

I.    THERE IS A CLEAR RECORD OF WILLFUL DISCOVERY ABUSE BY THE SEC
      SUPPORTING DISMISSAL OF THE ACTION AS A SANCTION. ............................ 12

      A.   The SEC's Conduct Flagrantly Disregarded the Federal Rules and the Discovery
           Process. ................................................................................................................... 13

      B.   The SEC's Conduct Contravenes the Agency's Own Guidance on Requesting
           Information from Witnesses Located Abroad. ........................................................ 16

      C.   The SEC Induced a Former Employee of SureTrader to Breach His Contractual
           Obligations to the Company and to Violate Bahamian Law. .................................. 17

II.   LESSER SANCTIONS SHORT OF DISMISSAL WOULD BE INADEQUATE. ........ 19

CONCLUSION ........................................................................................................................... 20

REQUEST FOR HEARING OF MOTION ............................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Aztec Steel Co. v. Fla. Steel Corp.*,
    691 F.2d 480 (11th Cir. 1982) ............................................................................... 11, 12

*Brown v. Braddick*,
    595 F.2d 961 (5th Cir. 1979) ....................................................................................... 15

*Goforth v. Owens*,
    766 F.2d 1533 (11th Cir. 1985) .................................................................................... 19

*Gratton v. Great Am. Commc'ns*,
    178 F.3d 1373 (11th Cir. 1999) ........................................................................ 11, 12, 19

*In re Zantac (Ranitidine) Prod. Liab. Litig.*,
    No. 20-MD-2924, 2021 WL 5105028 (S.D. Fla. Oct. 27, 2021) ............................... 14

*Lehman v. Kornblau*,
    206 F.R.D. 345 (E.D.N.Y. 2001) ................................................................................. 13

*Link v. Wabash R.R.*,
    370 U.S. 626 (1962) .................................................................................................... 12

*Lyons v. O'Quinn*,
    746 F. App'x 898 (11th Cir. 2018) (*per curiam*) ....................................................... 20

*Milne v. Slesinger, Inc.*,
    No. 202CV08508FMCPLAX, 2009 WL 10672764 (C.D. Cal. May 19, 2009) ................ 19, 20

*Myers v. Andzel*,
    No. 06 CIV. 14420 (RWS), 2007 WL 3256879 (S.D.N.Y. Oct. 15, 2007) ............................. 13

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
    427 U.S. 639 (1976) ............................................................................................. 12, 20

*Phipps v. Blakeney*,
    8 F.3d 788 (11th Cir. 1993) ............................................................................ 11, 12, 20

*Searock v. Stripling*,
    736 F.2d 650 (11th Cir. 1984) ..................................................................................... 20

*Speckman v. Minnesota Min. & Mfg. Co.*,
    7 F. Supp. 2d 1030 (D. Neb. 1997) .............................................................................. 16

*Thompson v. Gonzales*,
    No. 1:15-CV-301-LJO-EPG, 2016 WL 5404436 (E.D. Cal. Sept. 27, 2016) ........................ 13

*Yellow Pages Photos, Inc. v. Ziplocal, LP,*
    795 F.3d 1255 (11th Cir. 2015)................................................................14

*Zocaras v. Castro,*
    465 F.3d 479 (11th Cir. 2006)..........................................................12, 19

**Rules:**

Local Rule 26.1(i)....................................................................................13

Fed. R. Civ. P. 5(a)..................................................................................13

Fed. R. Civ. P. 26(a)(1)(A)........................................................................4

Fed. R. Civ. P. 34.........................................................................7, 13, 14

Fed. R. Civ. P. 37..........................................................................1, 11, 12

Fed. R. Civ. P. 41..............................................................................1, 12

Fed. R. Civ. P. 45..............................................................................*passim*

22 C.F.R. § 92.54.......................................................................................11

**Treatises:**

Fed. Prac. & Proc. Civ. § 2459 (3d ed.) ..................................................15

**Provisions of Bahamian Law:**

Computer Misuse Act, 2003 ................................................................9, 19

Data Protection (Privacy of Personal Information) Act, 2003 ............8, 9, 18

## **INTRODUCTION**

Defendant Guy Gentile respectfully seeks dismissal of this action under Rules 37 and 41 of the Federal Rules of Civil Procedure ("the Federal Rules" or "the Rules"), as well as pursuant to this Court's inherent authority, as a sanction for Plaintiff Securities and Exchange Commission's ("the SEC" or "the Agency") blatant disregard of the Federal Rules, concomitant abuse of the discovery process, and violation of Bahamian law.

On May 9, 2022, counsel for Gentile learned that—since the SEC served its Initial Disclosures in December 2021—the Agency has been actively working with and directing individuals who stole documents from Defendant SureTrader (or "the Company"), in violation of the terms of their employment and Bahamian law.  It is not just that the SEC is effectively conducting shadow discovery from nonparties outside the purview of Defendants and this Court in violation of the Federal Rules, but that the Agency has now obtained, reviewed, and used stolen documents to assist it in developing its litigation strategy.  Such conduct requires the stiffest sanctions.

More specifically, unbeknownst to Defendants, the SEC sought, received, and reviewed certain records of SureTrader obtained from at least one former employee of the Company, Philip Dorsett, which Dorsett stole from SureTrader and later turned over to the SEC at its request.  It is unclear at this time what subtle or implicit threats (or promises) the SEC may have made against (or to) Dorsett that resulted in his decision to knowingly violate Bahamian law to assist the SEC in this litigation.  The SEC has also sought—again by way of "informal" request—stolen Company documents from Yaniv Frantz, another former employee.  What is so stunning about this conduct is that the SEC has issued no formal document requests to Defendant

SureTrader nor subpoenas to Dorsett or Frantz, and had not otherwise sought Company records through any formal channel until after receiving the stolen Company records.

The SEC's improper request, receipt, and use of documents from nonparties outside the scope of the Federal Rules has tainted this entire litigation.  In April 2022, the SEC served five nonparty subpoenas on various entities, subpoenas that appear to have been informed by the Agency's review of documents from Dorsett.  A month later, the Agency propounded forty-eight separate Requests for Production to Gentile (the "Requests for Production"), informed by the Agency's review of the stolen documents received from Dorsett.  Now, the SEC indicates that it plans to seek letters rogatory for discovery from various other nonparty witnesses, which again appear to be informed by the Agency's review of the stolen SureTrader documents received from Dorsett.

Simply excluding use of the illicitly obtained documents will not un-ring the bell.  Furthermore, the SEC's position is that its conduct here—seeking and obtaining documents from nonparties during litigation outside the bounds of the Federal Rules and without regard to the implications of such a practice under foreign law—is something the Agency does "routinely." Failing to sanction the SEC for such *routine*, unlawful conduct would undermine the rule of law and discovery process.  This is an extreme case that warrants dismissal to remedy the SEC's misconduct as well as to deter the SEC and other parties from engaging in such misconduct in other cases.

## FACTUAL BACKGROUND

The SEC commenced this action against Defendants SureTrader and Gentile on March 22, 2021.  This comes eight years after the start of the investigation, two years after SureTrader closed its doors, four years after the SEC declined to depose Gentile in connection with its

investigations, and six years after FINRA told Gentile that the conduct of which he now finds himself accused was not a violation of the U.S. securities laws.  The Complaint came five years after Gentile told the SEC about the FINRA investigation and SureTrader's compliance with anti-solicitation laws.

The Complaint was also filed almost five years to the day after the SEC sued Gentile in the United States District Court for the District of New Jersey, an action that was ultimately dismissed with prejudice on October 21, 2020 ("the New Jersey proceedings"), *SEC v. Gentile*, No. 2:16 Civ. 01619 (BRM)(ESK) (D.N.J.).[1]  Meanwhile, the SEC and the Bahamian Securities Commission have been working together in connection with various investigations into Gentile for at least the past five years.  In early 2020, the Bahamian Securities Commission placed Defendant SureTrader into receivership in the Bahamas.  The receiver, who reports to the Bahamian Securities Commission, intentionally refused to appear in this action, even after requests from Gentile.

On November 15, 2021, the SEC moved the Clerk for entry of default against SureTrader.  ECF No. 45.  In support, Enforcement Counsel stated that she "was recently contacted by counsel for the Joint Provisional Liquidator (JPL) who was appointed in connection with a Winding Up Petition (Petition) filed by the Securities Commission of The Bahamas against SureTrader."  *Id.* ¶ 8.  According to Enforcement Counsel, "[t]he JPL's counsel advised that the JPL is aware of the respective deadlines for SureTrader's response and the Commission

---

1.  The SEC maintains that the investigation leading to this action was separate from the investigation that led to the New Jersey proceedings and that Gentile has been aware of the investigation leading to this action since at least August 2015.

to file this Motion.  The Commission and the JPL have engaged in discussions regarding a

potential resolution of the Commission's claims against SureTrader . . ." *Id.*[2]

On December 29, 2021, the SEC served its Initial Disclosures pursuant to Rule

26(a)(1)(A) of the Federal Rules of Civil Procedure.  Ford Decl., Ex. A.  The SEC identified

"[i]ndividuals likely to have discoverable information," including "[Defendant] MintBroker

International, Ltd. f/k/a Swiss America Securities Ltd. and d/b/a SureTrader c/o Igal Wizman,"

"Philip Dorsett," and "Yaniv Frantz." *Id.*  Dorsett and Frantz are former employees of

Defendant SureTrader.  Cooper Aff., ¶¶ 8, 10.  The SEC continued: "formal discovery in this

case has only just begun, and [the SEC] reserves the right to amend and/or add to this list if

additional witnesses with discoverable information on which the Commission intends to rely

become known to us."  Ford Decl., Ex. A at 3.  The SEC also listed documents that it already had

in its possession; that list omits any mention of Defendant SureTrader, former employee Dorsett,

or former employee Frantz.

On February 15, 2022, Gentile served his First Request for Production of Documents on

the SEC.  The SEC responded in writing on March 24, 2022, indicating in part that it would

produce any nonprivileged documents responsive to certain of Gentile's Requests.  The same

day, Enforcement Counsel provided the "first tranche" of the SEC's production.  Ford Decl., Ex.

B.  The documents produced make clear that the SEC did not conduct any serious investigation

---

2.   On November 17, 2021, the Court entered an order directing the SEC to follow certain
procedures in pursuit of its motion for default judgment against Defendant SureTrader,
indicating that if the SEC took the position that "there [were] multiple Defendants and
allegations of joint and several liability," then "[o]nce liability is resolved as to all Defendants,
[the SEC] may move for the entry of default final judgment [against SureTrader]."  ECF No. 47
at 1–2.  The SEC filed its "Notice of Joint Liability" on November 30, 2021.  ECF No. 54.
Liability has not been resolved as to all Defendants, and no entry of default has been entered
against Defendant SureTrader, which remains a party to the action.

into Gentile since at least 2016 and that the investigation into him at that time was nearly

identical to the investigation conducted by FINRA, which resulted in neither the SEC nor

FINRA taking any action against Gentile.  This was the same investigation that Gentile notified

both the U.S. Attorney's Office and the SEC about as part of his cooperation agreement.  Indeed,

the records indicate that the only two individuals the SEC deposed as part of their investigation

into Gentile's alleged solicitation of U.S. customers were two individuals that the FBI had

explicitly instructed Gentile to solicit.

On April 7, 2022, the SEC served notice of *five* separate nonparty subpoenas for

production of documents "pursuant to the Federal Rule of Civil Procedure."  Ford Decl., Ex. C.

All five subpoenas seek highly specific information, including "[d]ocuments identifying all

Persons referred by [the subpoena recipient] to open an account with or execute trades through

Swiss America [d/b/a SureTrader], and any and all Documents Concerning each such Person,"

and "Documents identifying any and all payments received directly or indirectly from Swiss

America Securities Ltd . . . dba Suretrader and/or Guy Gentile aka Guy [Gentile] Nigro."  Ford

Decl., Ex. D at 4.  On April 25, 2022, counsel for Gentile—having received no further

documents from the SEC in response to Gentile's Request for Production for over a month—

contacted Enforcement Counsel to inquire about the "next tranche" of documents.  Ford Decl.

Ex. E at 1.  Receiving no response, counsel for Gentile wrote the SEC again on April 29, 2022,

seeking an update about further productions.  *Id*.

On May 5, 2022, Enforcement Counsel—having produced no further documents—

requested a call to discuss, among other things, the SEC's upcoming document production and

"the handling of additional documents that the Commission recently received but has not

processed yet, as well as some documents we anticipate receiving."  Ford Decl., Ex. F.  The next

day, May 6, 2022, the SEC served its First Request for Production to Defendant Guy Gentile, propounding 48 separate Document Requests.  Ford Decl., Ex. G.  The Requests seek reams of highly specific and sensitive information, including—for example—detailed account and contact information for all of SureTrader's users going back to January 1, 2015; internal Company operating procedures for the same period; and company-to-company agreements and transfers for the same period.  *See id.* at 6–11.  The level of detail in these requests made it appear that the SEC had already obtained specific company information that Gentile's counsel could not understand how it could have obtained.

On May 9, 2022, three days after the SEC had served its discovery requests on Gentile, Enforcement Counsel and counsel for Gentile conferred by videoconference.  As relevant here, the SEC disclosed for the first time that it had obtained email and other documents concerning Defendant SureTrader from SureTrader's former employee, nonparty Dorsett, a resident of the Bahamas.  Enforcement Counsel did not specify when exactly they received the documents but admitted that they had already reviewed some of the materials.

According to Enforcement Counsel, Dorsett "voluntarily" provided the Agency with approximately 11,000 SureTrader emails as well as other non-email documents upon the SEC's request, claiming that Dorsett had backed up to his personal Gmail account before leaving SureTrader.  Enforcement Counsel stated that they had not asked Dorsett to run any search terms across the SureTrader documents or to limit his collection in any other way so as to only obtain documents relevant to this case, but rather requested and obtained all SureTrader documents they could, including privileged documents.  Enforcement Counsel indicated that they had already reviewed certain of the non-email documents received from Dorsett and that they intended to produce such documents to Gentile in the coming days.  Enforcement Counsel maintained that

while they had already received approximately 11,000 SureTrader emails from Dorsett, such files were still being processed and had not yet been reviewed.

Enforcement Counsel also confirmed during the May 9, 2022 conference that they had not issued a subpoena to nonparty Dorsett pursuant Rule 45 of the Federal Rules (or utilized any other formal discovery process), nor had they attempted to contact Defendant SureTrader or its counsel to request the production of Company documents or to notify SureTrader of the SEC's request to one of SureTrader's former employees.  (The SEC has not served a request for production of documents on Defendant SureTrader pursuant to Rule 34.)  Enforcement Counsel indicated at the May 9, 2022 conference that non-attorney Dorsett was not represented by counsel and that he had conducted his own "privilege" review of SureTrader documents before turning them over.  Enforcement Counsel also indicated that the approximately 11,000 SureTrader emails received from Dorsett may include privileged and/or confidential information and raised the possibility of an SEC "taint" team or independent third-party review of the emails.

In addition to the SureTrader documents the SEC has already received from nonparty Dorsett, Enforcement Counsel also indicated that it expected to receive approximately 33,000 email and other non-email SureTrader documents from nonparty Frantz, another former employee of SureTrader.  As with Dorsett, the SEC indicated that it has not served a subpoena on Frantz under Rule 45, utilized some other type of formal discovery process, or contacted Defendant SureTrader or its counsel about requesting and receiving Company documents from a former employee.

Upon learning of the foregoing at the May 9, 2022 conference, counsel for Gentile advised that they believed Enforcement Counsel had, among other things, circumvented the Federal Rules and potentially exposed former employees of SureTrader to criminal liability

under Bahamian law for transmitting SureTrader's company records to the SEC without the Company's consent.  Counsel for Gentile requested that the SEC cease any further processing or collection efforts from Dorsett and Frantz and that the SEC not produce to Gentile any documents obtained from either of the foregoing former employees of SureTrader.

On May 10, 2022, counsel for Gentile wrote Enforcement Counsel to memorialize the substance of the May 9, 2022 videoconference.  Ford Decl., Ex. H.  The SEC responded on May 11, 2022, and took the position that it "routinely receives documents from third-parties either through its investigation process or in litigation, with or without subpoena, formally and informally."  *Id.* at 1–2.  "Under the Rules of Civil Procedure," according to the SEC, "there are specific times and situations when we are obligated to notify the other side and produce documents, which we have done and will continue to do."  *Id.*  In its May 11, 2022 response, the SEC did not outline a specific position on the question of whether Dorsett was entitled to turn over the SureTrader documents or whether his transmittal of them to the SEC without SureTrader's notice or consent may have violated either Dorsett's contractual obligations to SureTrader and/or Bahamian law.

Pursuant to Rule 44.1 of the Federal Rules, Gentile filed with this Motion an affidavit from Michael Miller, a Principal at Kensington Chambers in Nassau, The Bahamas ("Miller Aff.").  Mr. Miller has been admitted to practice law in the Bahamas since 1995 and his practice focuses on corporate law.  Miller Aff. ¶ 2.  As referenced in the Miller Affidavit, the Data Protection (Privacy of Personal Information) Act, 2003 ("Data Protection Act") of the Statute Law of the Bahamas provides:

**23.**  (1) A person who —

(a)  obtains access to personal data, or obtains any information constituting such data, without the prior authority of the data controller or data processor by whom the data are kept; and

(b)  discloses the data or information to another person, shall be guilty of an offence .

.        .        .

**29.**  (1) A person guilty of an offence under this Act shall be liable —

(a)  on summary conviction, to a fine not exceeding two thousand dollars; or

(b)  on conviction on information, to a fine not exceeding one hundred thousand dollars.

(2) Where a person is convicted of an offence under this Act, the court may order any data material which appears to the court to be connected with the commission of the offence to be forfeited or destroyed and any relevant data to be erased.

Miller Aff. ¶ 6; *id.*, Att.

On a related note, the Computer Misuse Act, 2003, of the Statute Law of the Bahamas

provides:

**3.** . . . [A]ny person who, without authority, knowingly causes a computer to perform any function for the purpose of securing access to any program or data held in any computer shall be guilty of an offence and shall be liable on summary conviction to a fine not exceeding five thousand dollars or to imprisonment for a term not exceeding six months or to both such fine and imprisonment . . . .

.        .        .

**10.** (1) Any person who incites, solicits or abets the commission of or who attempts to commit or does any act preparatory to or in furtherance of the commission of any offence under this Act shall be guilty of that offence and shall be liable on summary conviction to the punishment provided for the full offence. . . .

Computer Misuse Act, 2003.[3]  The Computer Misuse Act applies extraterritorially.  *Id.* § 11.

---

3.  http://laws.bahamas.gov.bs/cms/images/LEGISLATION/PRINCIPAL/2003/2003-0002/ComputerMisuseAct_1.pdf (last accessed June 3, 2022).

Apart from express provisions of Bahamian law, both Dorsett and Frantz were aware of the strict privacy and confidentiality standards, grounded in such law, to which SureTrader held its employees as conditions of employment.  More specifically, Dorsett received a copy of SureTrader's Code of Ethics via email on October 19, 2015, as explained in the affidavit of then-Compliance Officer Edward Cooper ("Cooper Aff.").  Cooper Aff. ¶ 11.  (Frantz received the same or a substantially similar Code of Ethics after beginning his employment with SureTrader in 2016.  *Id.* ¶ 14.)  The Code of Ethics informed employees:

31.1   The Laws of The Commonwealth of The Bahamas prohibit all Financial Institution employees from divulging any information whatsoever concerning the affairs of [SureTrader], its subsidiaries or associated companies or their customers to any third party, unless disclosure of such information is ordered by The Supreme Court of The Bahamas, or with the express written consent of the customer concerned.

31.2   [SureTrader's] very existence is dependent on the Firm's confidentiality and no infringement of the rules and regulations will be tolerated.

31.3   All employees must sign a Confidentiality Clause as a condition of employment.

31.4   Employees may well come into possession of secret, confidential or sensitive information while looking after a customer's or [SureTrader's] affairs.  No member of staff may use such information directly or indirectly for his / her personal gain or benefit.

.          .          .

33.5   All employees are reminded that the Confidentiality provisions of the terms of employment impose a continuing obligation of confidentiality surviving employment with [SureTrader].

Cooper Aff., Ex. 1.

Additional evidence demonstrates that Dorsett was plainly aware of the Company's obligations under Bahamian law even before receiving the October 19, 2015 copy of the Code of Ethics.  In March 2015, Defendant Gentile—then-President of SureTrader—wrote Dorsett asking that the Company release certain client information to the SEC in response to a subpoena, Dorsett wrote back:

> It's not as simple as that.  Even as the President you cannot authorize me to do something that we haven't established as being legal.  I understand the seriousness of receiving the subpoena [from the SEC], and I also know that there tends to be a deadline for these type requests.  However in our haste to fulfil US law we must be cautious not to break Bahamian law.

Ford Decl., Ex. I.  Dorsett was terminated from the Company in the summer of 2017.  Cooper Aff. ¶ 8.  Nothing in SureTrader's policies would have permitted Dorsett to retain Company records after his separation or otherwise permit him to transmit such records to any third party.

Apart from Dorsett and Frantz, Enforcement Counsel also indicated during the May 9, 2022 conference that they were in the process of seeking letters rogatory for other witnesses located abroad.  Indeed, as noted in the recently filed Joint Motion for Extension of Court Deadlines, "The Bahamas is not a member of the Hague Evidence Convention.  Thus, in order to obtain discovery and take witnesses' testimony that are located in the Bahamas, the parties must proceed by a Letters Rogatory process."  ECF No. 81 ¶ 3.  A letter rogatory seeking a foreign court's assistance in these proceedings requires an order from this Court.  *See* 22 C.F.R. § 92.54.

## LEGAL STANDARD

Rule 37 of the Federal Rules authorizes district courts to impose sanctions on a party when it flouts its discovery obligations.  *See* Fed. R. Civ. P. 37(b)(2).  Available sanctions under Rule 37 include, among others: "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence" and "dismissing the action or proceeding in whole or in part."  *Id.*  Put differently, district courts have "broad authority under Rule 37 to control discovery, including dismissal as the most severe sanction."  *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999) (citing Fed. R. Civ. P. 37(b); *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993)).  "When a party demonstrates a flagrant disregard for the court and the discovery process . . . , dismissal is not an

abuse of discretion."  *Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 481 (11th Cir. 1982)

(citation omitted).  Similarly, Rule 41 authorizes district courts to dismiss an action when the

plaintiff "fails . . . to comply with [the Federal Rules] or a court order."  Fed. R. Civ. P. 41(b).

The Eleventh Circuit has "articulated a two-part analysis for determining when an action

should be dismissed as a sanction [under Rule 37].  There must be both a clear record of willful

conduct and a finding that lesser sanctions are inadequate."  *Zocaras v. Castro*, 465 F.3d 479,

483 (11th Cir. 2006) (citation omitted); *see also Gratton*, 178 F.3d at 1374 (same standard under

Rule 41(b)).  According to the Supreme Court, "the most severe in the spectrum of sanctions

provided by statute or rule must be available to the district court in appropriate cases, not merely

to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those

who might be tempted to such conduct in the absence of such a deterrent."  *Nat'l Hockey League

v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (interpreting analogous language in

earlier version of Rule 37).

In addition to authority under Rules 37 and 41, a district court "also has the inherent

ability to dismiss a claim in light of its authority to enforce its orders and provide for the efficient

disposition of litigation."  *Zocaras*, 465 F.3d at 483 (citing *Link v. Wabash R.R.*, 370 U.S. 626,

630–31 (1962)).

## ARGUMENT

## I.    THERE IS A CLEAR RECORD OF WILLFUL DISCOVERY ABUSE BY THE SEC SUPPORTING DISMISSAL OF THE ACTION AS A SANCTION.

The SEC's conduct here contravenes the Federal Rules, the Agency's own policies and

procedures, and Bahamian law.  Such disdain for so many sources of authority meant to govern

the SEC's conduct evinces a clear record of willful discovery abuse.

### A. The SEC's Conduct Flagrantly Disregarded the Federal Rules and the Discovery Process.

Rule 34 of the Federal Rules allows a party to "serve on any other party a request within the scope of Rule 26(b)," including a request for production of documents. Fed. R. Civ. P. 34(a). A request for documents pursuant to Rule 34 must be served on every other party to the action. Fed. R. Civ. P. 5(a)(1)(C). Rule 34 also notes: "As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection." Fed. R. Civ. P. 34(c). Rule 45 expressly provides that, before a nonparty is served with a subpoena for documents, the party issuing the subpoena must provide "each party" with "a notice and a copy of the subpoena." Fed. R. Civ. P. 45(a)(1).

Put simply, once litigation commences, the Federal Rules require formal discovery of documents from parties under Rule 34 and from nonparties under Rule 45, with notice provided to all other parties so that motions to quash may be made and objections may be raised before documents change hands. Nothing in the Federal Rules contemplates request and receipt of documents from nonparties during litigation outside the formal discovery process. *See, e.g.*, *Thompson v. Gonzales*, No. 1:15-CV-301-LJO-EPG, 2016 WL 5404436, at \*4 (E.D. Cal. Sept. 27, 2016) ("[B]ecause Rule 45 is the only discovery-related Rule that pertains to non-parties, numerous courts have held explicitly that a Rule 45 subpoena is required to obtain discovery from a non-party."); *id.* at \*4 n.7 (collecting cases); *Myers v. Andzel*, No. 06 CIV. 14420 (RWS), 2007 WL 3256879, at \*1 (S.D.N.Y. Oct. 15, 2007) ("Discovery of non-parties must be conducted by subpoena pursuant to Fed. R. Civ. P. 45." (quoting *Lehman v. Kornblau*, 206 F.R.D. 345, 346 (E.D.N.Y. 2001)); *see also* Local Rule 26.1(i) ("Whenever a party, before trial, receives . . . documents . . . or other things from a non-party *in response to a subpoena*, the party receiving same shall promptly notify all other parties of such receipt . . . ." (emphasis added)).

13

Where the evidence sought is from a nonparty located abroad, the appropriate mechanism is the letter rogatory process.  Magistrate Judge Reinhart of this Court recently observed that the "same principles" regarding nonparty discovery under Rule 45 "apply to a request for letters rogatory." *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2021 WL 5105028, at *1 (S.D. Fla. Oct. 27, 2021) ("A letter rogatory is a procedural vehicle to obtain discovery from a third party outside the United States.  It is the functional equivalent of a Rule 45 subpoena."); *see also Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1273 (11th Cir. 2015) ("Letters rogatory are the means by which a court in one country requests a court of another country to assist in the production of evidence located in the foreign country." (citation omitted)).

Here, after commencing this action, the SEC sought and obtained documents from nonparty and Bahamian resident Philip Dorsett without following any of the foregoing Rules applicable to the discovery process during litigation.  The SEC served no document requests under Rule 34 on Defendant SureTrader—even though many if not all the documents the SEC already sought and obtained are SureTrader documents—nor did the SEC otherwise notify SureTrader or its representatives that the SEC had requested and received records of the Company.

According to the SEC's own filing in this Court, the Agency was aware as of November 2021 that Defendant SureTrader was represented by counsel for the JPL appointed as part of the Bahamian proceedings, and it had previously sought a resolution of the SEC's claims against SureTrader through discussions with counsel for the JPL.  Apart from counsel for the JPL, the SEC's Initial Disclosures also identified Igal Wizman, a partner at Ernst & Young in the

14

Bahamas,[4] as another contact for Defendant SureTrader, but the SEC failed to contact Wizman prior to seeking and receiving SureTrader documents from a former employee of the Company.

Additionally, the SEC did not serve a subpoena on Dorsett under Rule 45 that either SureTrader or Gentile may have sought to quash or modify before Dorsett disclosed Company documents.  Certainly, SureTrader would have had an interest in moving to quash or modify a subpoena to a former employee for company records.  *See* 9A Wright, Miller & Spencer, *Subpoena for the Production of Documents and Things—Quashing or Modifying a Subpoena*, Fed. Prac. & Proc. Civ. § 2459 & n.7 (3d ed.) (collecting cases).  Furthermore, under circuit precedent, Gentile would also have had standing to challenge a subpoena to nonparty Dorsett to the extent Gentile possessed "any personal right or privilege with respect to the material subpoenaed."  *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979) (citations omitted).[5]

The SEC similarly did not move this Court for issuance of a letter rogatory to permit discovery from Dorsett, notwithstanding the SEC's recent acknowledgment that "[t]he Bahamas is not a member of the Hague Evidence Convention.  Thus, *in order to obtain discovery and take witnesses' testimony that are located in the Bahamas, the parties must proceed by a Letters Rogatory process*."  ECF No. 81 ¶ 3 (emphasis added).  The SEC's failure to serve a subpoena under Rule 45 or move the Court for issuance of a letter rogatory has deprived Defendants of any notice of the particular SureTrader documents sought from former employees and any opportunity to contest their disclosure.[6]

---

4.  Ernst & Young, *Igal Wizman*, https://www.ey.com/en_us/people/igal-wizman (last accessed June 3, 2022).

5.  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

6.  Even assuming *arguendo* that Gentile would have lacked standing to move to quash a subpoena to nonparty Dorsett, Gentile still would have been able to move for a protective order

The SEC's promise of a "taint" team to review SureTrader documents for privilege does not remedy a failure to seek discovery in the proper manner.  Apart from reviewing for attorney–client and other applicable privileges, the SEC's proposed "taint" team would also not be well positioned to redact, withhold, and/or designate "confidential" as appropriate other documents that include sensitive client information, trade secrets, or other proprietary information.

The SEC's conduct here has short-circuited the entire discovery process laid out in the Federal Rules and robbed Defendants SureTrader and Gentile of their rights to notice and an opportunity to be heard before nonparty and Bahamian resident Dorsett disclosed Company documents to the SEC, some of which the Agency has already reviewed and analyzed. "Circumventing the discovery process is not to be taken lightly; in fact, such actions have resulted in serious sanctions . . . ."  *Speckman v. Minnesota Min. & Mfg. Co.*, 7 F. Supp. 2d 1030, 1032 (D. Neb. 1997) (collecting cases).  As explained below, the SEC points to no authority that elevates the Agency above the specific Federal Rules and discovery process discussed above that apply to all participants in civil litigation.

### B.  The SEC's Conduct Contravenes the Agency's Own Guidance on Requesting Information from Witnesses Located Abroad.

Not only does the SEC's position that it "routinely" receives documents informally from nonparties during litigation—without serving a subpoena under Rule 45 or notifying the parties in advance—contravene the Federal Rules, it also finds no support in the Agency's own policies and procedures.  *See generally* Sec. & Exch. Comm., *Enforcement Manual* (Nov. 28, 2017)

---

under Rule 26(c) before Dorsett transmitted documents to the SEC.  *See, e.g.*, *Bounds v. Cap. Area Fam. Violence Intervention Ctr., Inc.*, 314 F.R.D. 214, 218 (M.D. La. 2016).  The SEC's Complaint in this action focuses on narrow questions regarding alleged solicitation of U.S. customers.  But Enforcement Counsel have conceded that they imposed no limitations on the documents sought from Dorsett, other than that the documents were related to Defendant SureTrader.

("*Enforcement Manual*" or "*Manual*").[7]   Indeed, by its own terms the *Enforcement Manual* does not displace requirements found in the Federal Rules: the *Manual* states at the outset that "[i]t is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal."  *Id.* § 1.1.

To the extent the Agency's *Enforcement Manual* is relevant at all to proceedings in active litigation and not just investigations prior to litigation—a point Gentile does not concede—the SEC has neglected its own best practices.  More specifically, the *Enforcement Manual* states:

> Depending on the jurisdiction, it may be possible to request information directly from persons located abroad on a voluntary basis.  *However, in some countries such efforts may violate local statutes and laws.*  In still other jurisdictions, advance notice to the local regulator and relevant authorities may be required.  Division staff should consult [the SEC's Office of International Affairs] even where the staff seeks only voluntary cooperation from a witness.  Where seeking voluntary cooperation, the staff should stress the voluntary nature of the inquiry.

*Id.* § 3.3.6.2 ("Contacting Witnesses Residing Overseas") (emphasis added).

Enforcement Counsel did not indicate at the May 9, 2022 conference with Gentile's counsel that the SEC had assessed whether transmittal of SureTrader documents (a Bahamian company) to the Agency by a former employee located in the Bahamas would contravene local statutes and laws.  Nor did Enforcement Counsel state that they conferred with the SEC's Office of International Affairs prior to contacting Dorsett or asking that he transmit documents to the Agency.

### C.  The SEC Induced a Former Employee of SureTrader to Breach His Contractual Obligations to the Company and to Violate Bahamian Law.

Perhaps worst, the SEC has already induced one former employee of SureTrader to breach his contractual obligations to the Company and to violate the laws of the Bahamas.  More

---

7.   https://www.sec.gov/divisions/enforce/enforcementmanual.pdf (last accessed June 3, 2022).

specifically, SureTrader's Code of Ethics provided to all SureTrader staff (including Dorsett) in October 2015 expressly prohibited employees from disclosing information about the Company or its clients to "to any third party, unless disclosure of such information is ordered by The Supreme Court of The Bahamas, or with the express written consent of the customer concerned." Cooper Aff., Ex. 1 ¶ 31.1.  The Code of Ethics also stated: "No member of staff may use [secret, confidential, or sensitive] information [regarding the Company or its clients] directly or indirectly for his / her personal gain or benefit," *id.* ¶ 31.4, and "All employees are reminded that the Confidentiality provisions of the terms of employment impose a continuing obligation of confidentiality surviving employment with [SureTrader]," *id.* ¶ 33.5.  Dorsett's theft of Company documents from SureTrader and his subsequent transmittal of them to the SEC without the consent of the Company—or its customers, in the highly likely event the documents include information about customers—plainly violated the terms of his employment with the Company.[8]

Apart from Dorsett breaching his contractual obligations to SureTrader, he also violated one or more provisions of Bahamian law as a result of the SEC's requests for Company records outside the formal discovery process.  Given the near certainty that records Dorsett stole from SureTrader include "personal data" of SureTrader clients, Dorsett violated the Data Protection Act by obtaining such data illicitly and disclosing the data to a third party, namely, the SEC, without the consent of the Company or its clients.  *See* Miller Aff., ¶ 6 ("[T]he disclosure of information to the SEC in the absence of a court order, was in breach of the aforesaid legislation.").  Additionally, it is unclear when Dorsett obtained the SureTrader documents he

---

[8].  Prior to receiving the Code of Ethics in October 2015, Dorsett in March 2015 cautioned Gentile about turning over SureTrader documents in response to a request from the SEC without assessing the implications under local law, explaining that "in our haste to fulfil US law we must be cautious not to break Bahamian law."  Ford Decl., Ex. I.

has turned over to the SEC, but by stealing records from the Company's computer systems "without authority," Dorsett violated the Computer Misuse Act, § 3.  By requesting the stolen documents, the SEC may have exposed itself to liability under the same Act, which applies extraterritorially and punishes "[a]ny person who incites, solicits or abets the commission of or who attempts to commit or does any act preparatory to or in furtherance of the commission of any offence under [the] Act."  *Id.* § 10.  The Court should not countenance the SEC's facilitation of—and profit from—violations of Bahamian law.

## II.    LESSER SANCTIONS SHORT OF DISMISSAL WOULD BE INADEQUATE.

Gentile recognizes that dismissal as a sanction would be severe and he does not make the request lightly, but dismissal is warranted "in extreme circumstances."  *See, e.g.*, *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006) (quoting *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985)); *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999).  Here, the SEC's receipt and review of SureTrader documents from Dorsett obtained outside the formal discovery process appears to have tainted, or at least improperly informed, the Agency's later-served Requests for Production of Documents to Gentile, dated May 6, 2022, and its broader litigation strategy—including *five* separate nonparty subpoenas the SEC served in April 2022. The SEC's review of such documents also appears to have informed its plans to request letters rogatory as to other witnesses whom it would not have sought to contact otherwise.

Simply ordering the SEC to return or destroy the SureTrader documents it has already obtained and reviewed outside the formal discovery process cannot undo the fact that Enforcement Counsel have already reviewed and analyzed many such documents and subsequently issued and/or formulated additional discovery requests.  *See Milne v. Slesinger, Inc.*, No. 202CV08508FMCPLAX, 2009 WL 10672764, at *2 (C.D. Cal. May 19, 2009) ("No power the Court possesses can purge SSI's knowledge [obtained from stolen documents]. . . .

No power the Court possesses short of termination can fully guard against the conscious or subconscious application of SSI's knowledge in shaping the future course of the litigation and its outcome." (citation omitted)).  As a result, if this action is not dismissed, Gentile's "preparation for trial" will likely be "substantially prejudiced."  *See Lyons v. O'Quinn*, 746 F. App'x 898, 902 (11th Cir. 2018) (*per curiam*) (quoting *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984)). Dismissal as a sanction is appropriate in the specific circumstances of this case.

At a fundamental level, moreover, the SEC's position that it "routinely" engages in this type of conduct—that is, seeking documentary evidence from nonparties during litigation outside the formal discovery process—should cause the Court and the public concern.  The SEC's conduct here falls outside the bounds of the Federal Rules and the Agency's own *Enforcement Manual*.  What, then, governs its conduct?  Under what standards is the Agency operating when it seeks documents from nonparty witnesses during litigation?  Is it up to the discretion of individual Enforcement Counsel in particular cases to inform (or not inform) the other parties of discovery obtained from nonparty witnesses as that individual counsel deems appropriate?

Dismissal of this action is warranted not just to address the specific misconduct here but to deter such discovery abuse by the Agency—and others—more broadly.  *See Phipps*, 8 F.3d at 790 n.5 ("[D]istrict courts must have available such severe sanctions for use in appropriate cases 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such deterrent.'" (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

## **CONCLUSION**

For all the foregoing reasons, Defendant Gentile respectfully requests that the Court enter an order dismissing the action and grant any other relief deemed just and proper.

## **<u>REQUEST FOR HEARING OF MOTION</u>**

Pursuant to Local Rule 7.1(b), Defendant Gentile respectfully requests a hearing on the

instant motion.  Gentile alleges that Plaintiff SEC has blatantly disregarded the Federal Rules

and discovery process—as well as its own internal procedures and Bahamian law—and upon that

basis seeks to have the action dismissed in its entirety with prejudice.

Gentile estimates that one hour total would be sufficient for the hearing, unless the Court

is inclined to hear testimony from witnesses, in which case more time would be required.


Dated:    June 3, 2022

*/s/ Dayliset Rielo*
Dayliset Rielo, Esq.
The Rielo Law Firm, LLC
8180 N.W. 36th Street, Suite 220
Doral, FL 33166
Tel: (786) 454-9873
dayliset@rielolaw.com

Adam C. Ford, Esq. (PHV granted)
Matthew A. Ford, Esq. (PHV granted)
Stephen R. Halpin III, Esq. (PHV granted)
FORD O'BRIEN LANDY LLP
275 Madison Avenue, 24th Floor
New York, NY 10016
Tel: (212) 858-0040 (main)
aford@fordobrien.com
mford@fordobrien.com
shalpin@fordobrien.com

*Counsel for Defendant Guy Gentile*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I caused the foregoing Defendant Guy Gentile's Memorandum of

Law in Support of Motion for Dismissal and Sanctions, dated June 3, 2022, to be served via

email on the following counsel for Plaintiff:

> Alice Sum
> U.S. Securities and Exchange Commission
> 801 Brickell Avenue, Suite 1950
> Miami, FL 33131
> (305) 982-6300
> sumal@sec.gov
>
> Alise Meredith Johnson
> U.S. Securities and Exchange Commission
> 801 Brickell Avenue, Suite 1800
> Miami, FL 33131
> (305) 982-6385
> johnsonali@sec.gov

 */s/ Dayliset Rielo*
Dayliset Rielo, Esq.