UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-21079-Bloom

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

    Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT GUY GENTILE'S MOTION FOR SANCTIONS**

Plaintiff Securities and Exchange Commission (the "Commission" or "SEC") responds to Defendant Guy Gentile's a/k/a Guy Gentile Nigro ("Gentile") Motion for Sanctions as follows:

**I.     INTRODUCTION**

Gentile's Motion must be denied because it is without merit and merely his latest attempt to thwart producing documents to the SEC and to delay this litigation. As a threshold matter, Gentile's Motion is procedurally defective. In his haste to seek dismissal of this case, Gentile failed to meet and confer with the SEC prior to filing the Motion, as required by Local Rule 7.1(a)(3); notably, Gentile's Motion lacks such a certification. He also improperly fast-forwarded to filing the Motion pursuant to Fed. R. Civ. P. 37(b)(2), even though there is no underlying discovery order that the SEC failed to obey. When faced with the possibility that former SureTrader employees would produce evidence of his and SureTrader's violations, Gentile

immediately employed the sharp tactics of seeking sanctions against the SEC and discrediting non-parties by improperly accusing them of theft and violations of the law.

Even had Gentile actually complied with the Federal Rules of Civil Procedure and the Local Rules, Gentile has no standing to object to the production of documents from former SureTrader employees. The Supreme Court of The Bahamas has stripped Gentile of his powers and control of SureTrader and appointed Joint Official Liquidators ("JOLs") to wind-up and make decisions for the company. The persons who have standing to take a position regarding production of documents from former SureTrader employees – the JOLs – have taken the position that they have no objection to said production and Gentile has no standing to object.

Furthermore, even if Gentile had standing to object, the SEC has done nothing improper in accepting voluntary production of documents from former SureTrader employees because the Federal Rules of Civil Procedure do not prohibit the voluntary production of documents from non-parties. On the contrary, Gentile has manufactured a legal position and conflated the use of Rule 45 subpoenas to compel production of documents with voluntary production.

Additionally, Gentile has made baseless accusations against the two former SureTrader employees in an attempt to threaten and scare them. Neither employee "stole" SureTrader documents or violated any laws in voluntarily providing information to the SEC. Instead, SureTrader was fully aware that they had possession of SureTrader records upon their separation from the company and never instructed them to delete or remove SureTrader records from their computers. Indeed, both former employees voluntarily reached out to the SEC because of their significant concerns about how Gentile and SureTrader may have violated U.S. securities law. To be clear, these former employees reached out to the SEC, a regulatory agency, to provide

information related to potentially illegal activity, as they are protected under law to do; they did not share the information with private entities or persons for personal benefit or gain.

Finally, Gentile's arguments that the SEC improperly used information from former SureTrader employees to formulate discovery requests and subpoenas and that this case should be dismissed are without merit. Indeed, the requests in the SEC's Request for Production to Gentile either track specific allegations in the Complaint, Gentile's Affirmative Defenses, or mimic requests in the SEC's investigative subpoena to Gentile, which he failed to comply with; and the five subpoenas were issued to non-parties identified in the Complaint. Accordingly, Gentile's baseless Motion should be denied.

## II.   BACKGROUND

As he has done in the past, Gentile mischaracterizes the background and facts concerning past litigation between the parties, which is not relevant to the instant Motion. The SEC will provide the salient facts and correct the record to the extent needed for this Court to decide the Motion.

**A.   The Discovery Timeline**

The SEC filed its Complaint on March 22, 2021, alleging SureTrader violated U.S. securities laws by acting as an unregistered securities broker-dealer and Gentile is liable for SureTrader's violations as a control person. After evading service for six months, SureTrader and Gentile were finally served with process in October 2021. Because SureTrader did not file a response to the Complaint, the SEC sought, and obtained, a Clerk's Default against SureTrader. After the Default was entered against SureTrader, it has not attempted to defend against the allegations in the Complaint.

The SEC served its Initial Disclosures on December 29, 2021, and produced the documents identified therein subsequently. Gentile served his Initial Disclosures on December 29, 2021, and has yet to produce the documents identified therein. On February 15, 2022, Gentile served his First Request for Production, and the SEC served its responses and objections and produced its first tranche of documents on March 24, 2022,[1] and informed Gentile's counsel that a second tranche of documents remained to be produced. On April 7, 2022, the SEC served notice of five non-party subpoenas to the "affiliates" identified in the Complaint, seeking documents related to specific allegations in the Complaint.

On May 5, 2022, SEC counsel advised Gentile that the remaining second tranche of responsive documents were ready for production, but due to the sensitive nature of some of the documents they needed to discuss entering into a stipulated confidentiality order before producing. (DE 86-1 at p. 58). On May 6, 2022, the SEC served its First Request for Production on Gentile. (DE 86-1 at pp. 60-72). Each request relates to specific allegations in the Complaint or Gentile's Affirmative Defenses, or mimics requests in the SEC's investigative subpoena to Gentile dated December 22, 2017, a true and correct copy of which is attached hereto as **Exhibit A**, to which Gentile never produced documents.

When counsel met on May 9, 2022, to discuss the confidentiality order and the discovery schedule, undersigned counsel also raised the issue of emails and documents that the SEC had received (but not reviewed yet) or was about to receive voluntarily from two former SureTrader

---

[1] In his Motion, Gentile baselessly asserts that the documents produced on March 24th show that the SEC has not conducted any serious investigation since 2016. The SEC disputes this claim. Gentile disengenuously conflates the timeframe of the underlying conduct that forms the basis of the charges against him with the time frame that the SEC conducted its investigation – well after 2016. Additionally, this is irrelevant to the instant Motion.

4

employees, Philip Dorsett and Yaniv Frantz.[2] The SEC raised this issue and disclosed the productions in an abundance of caution to address the possibility of privileged materials. The SEC does not know definitively whether there are privileged materials in the documents from the former employees – because it has not reviewed them – but wanted to meet and confer with Gentile's counsel to discuss the process for conducting a privilege review, including the possibility of a filter team from the SEC or a third-party review.

In response, Gentile's counsel demanded that the SEC not produce the documents and stated they wanted time to consider how to proceed. Instead of agreeing to a confidentiality order or requesting a conference on how production could occur, Gentile filed the instant baseless Motion.

**B.    Documents In Possession Of Former SureTrader Employees**

SureTrader's former Chief Compliance Officer, Philip Dorsett, and former Chief Operating Officer, Yaniv Frantz, both have SureTrader documents and emails in their possession and volunteered to provide them to the SEC. Dorsett has explained that at the beginning when SureTrader was formed, two company laptops were acquired by SureTrader; one laptop for him and one laptop for Gentile. *See* Declaration of Philip Dorsett at ¶ 6, which is attached hereto as **Exhibit B**. Dorsett also owned a personal laptop, a fact of which Gentile was aware. *Id*. During the company's infancy, Gentile had a concern about loss of data for SureTrader. *Id*. at ¶ 7. Gentile

---

[2] On April 20 and 22, 2022, Philip Dorsett sent documents and emails to the SEC via an online upload. These documents and emails were received by the SEC, uploaded into its discovery management system, but have not been made accessible to any attorneys or paralegals at the SEC. To be clear, only the IT professionals at the SEC have accessed the link to the documents and emails transmitted by Mr. Dorsett on April 20 and 22, 2022, in order to download them into the discovery management system. Both Dorsett and Frantz communicated with the SEC prior to the filing of this lawsuit and produced documents that were already scheduled to be and will be part of the second tranche of discovery, and will be designated as "Confidential" pursuant to a Confidentiality and Protective Order.

asked Dorsett to provide his personal laptop, which he gave to Gentile, and Gentile made backups of SureTrader's data to Dorsett's personal laptop. *Id*. Gentile told Dorsett that Gentile wanted the backups to be separate from SureTrader's two work laptops. *Id*. Dorsett was not aware of what specific technical work Gentile did to back up SureTrader's data to his personal laptop. *Id*. Dorsett occasionally performed work on his personal laptop, which Gentile was fully aware of, and Gentile never told Dorsett that he could not work on his personal laptop. *Id*. at ¶ 8. Dorsett would often have both his personal and work laptops open and work on them in plain view of Gentile. *Id*. at ¶ 9. Dorsett later learned that SureTrader emails were backed up to his personal Gmail account. *Id*. at ¶ 9 [sic]. When Dorsett separated from SureTrader in August 2017, he was not provided with any instructions from Gentile or any other SureTrader employee regarding the SureTrader materials that were backed up to his personal laptop. *Id*. at ¶ 10. Dorsett was not instructed to destroy or otherwise remove SureTrader data or work from his personal laptop. *Id*. Dorsett became uncomfortable with how Gentile ran SureTrader and was concerned that Gentile was putting SureTrader and its officers, including Dorsett, at risk. *Id*. at ¶ 11. After Dorsett brought his concerns to Gentile about these risks and did not receive a satisfactory answer and Gentile continued with the same behavior, Dorsett contacted the SEC and voluntarily provided information and documents to the SEC. *Id*.

Similarly, when Frantz began his employment at SureTrader, he was issued a work laptop. *See* Declaration of Yaniv Frantz at ¶ 5, which is attached hereto as **Exhibit C**. When his employment with SureTrader ended in March 2018, Frantz spoke with only the Chief Financial Officer, Antonio Collie, and the head of Human Resources, Justin Ritchie, regarding the separation process. *Id*. at ¶ 6. SureTrader gave Frantz a document that set forth the amount to be paid/owed to him. *Id*. It included a calculation of payment for unused vacation time. *Id*. It also included a

debit of $1,340.00 for the work laptop Frantz had previously been issued and used, even though there was no discussion of the disposition of the work laptop, including whether Frantz would be returning it to SureTrader or purchasing it.  *Id*.  The amount Frantz received from SureTrader as part of his separation was the same that was calculated in the document.  *Id*.  When Frantz separated from SureTrader, he was not provided with any instructions regarding the contents of his work laptop.  *Id*. at ¶ 8.  Frantz was not instructed to delete or otherwise remove SureTrader data or work from his work laptop or to cease using the laptop.  *Id*.  Frantz does not recall receiving a copy of a Code of Ethics from SureTrader.  *Id*. at ¶ 8.  Frantz contacted the SEC and voluntarily provided information and documents to the SEC because he was concerned with how Gentile ran SureTrader and that Gentile's conduct may violate U.S. securities laws.  *Id*. at ¶ 9.

**C.**     **The Bahamian Windup Proceedings and Appointment of Joint Official Liquidators**

On March 17, 2020, the Supreme Court of the Bahamas entered its Order appointing Joint Provisional Liquidators based upon a Petition filed by the Securities Commission of The Bahamas alleging numerous violations of Bahamian laws by SureTrader and Gentile.  A true and correct copy of the Order (at pp. 154-157), as well as the underlying Petition and Affidavits, are attached as Composite **Exhibit D**.  On December 15, 2021, the Supreme Court of The Bahamas entered its Winding Up Order converting the Joint Provisional Liquidators to Joint Official Liquidators.  A true and correct copy of the Winding Up Order is attached as **Exhibit E**.  Among other things, the Winding Up Order provides:

> 3.     The said Joint Provisional Liquidators, Mr. lgal Wizman and Ms. Eleanor Fisher, of EY, aforesaid, be appointed herein as the Joint Official Liquidators ("JOLs") of the Company, pursuant to section 200 of the Companies (Winding Up Amendment) Act, 2011.
>
> 4.     The JOLs have the authority to exercise their powers jointly or separately in the performance of their duties, pursuant to section 201 of the Companies (Winding Up Amendment) Act, 2011.

>   6.      The JOLs may exercise any and all of the powers set forth in Section 205 of the Companies (Winding Up Amendment) Act, 2011 without further leave of the court, and are hereby authorized accordingly.

On June 23, 2022, undersigned counsel wrote to counsel for the JOLs, Warren Gluck at Holland & Knight, to ascertain the JOLs' position on Gentile's objection to the production of SureTrader documents by the former employees. On June 25, 2022, Mr. Gluck responded as follows:

> We have communicated with the Joint Official Liquidators ("JOLs") regarding this matter. First, the JOLs and the Company do not object to the voluntary production of the documents and emails by Dorsett and Frantz to the SEC, and the JOLs respectfully request copies of the same documentation for their files. Regarding the authority of Gentile, the JOLs believe and understand that based upon the Bahamas Companies Legislation and their appointment by the Bahamas Court as JOLs, Mr. Gentile has no further powers or rights in respect of the Company whatsoever, and in the JOLs view would not have standing to object to the disclosure of Company documents at this time.

A true and correct copy of the email exchange between undersigned counsel and Mr. Gluck is attached as **Exhibit F**.

Thus, the parties appointed by the Supreme Court of The Bahamas to legally speak for SureTrader have not objected to the production of which Gentile complains and have informed the SEC that Mr. Gentile lacks standing to object to same.

### III.  MEMORANDUM OF LAW

**A.     Gentile's Motion Is Procedurally Defective**

As a starting point, Gentile's Motion is procedurally defective. As this Court is well aware, Local Rule 7.1(a)(3) requires that the moving party confer in good faith in an attempt to resolve the dispute prior to filing a motion. Gentile failed to meet and confer with the SEC prior to filing his Motion. During the teleconference on May 9, 2022, and in the subsequent email exchange (DE 86-1 at pp. 74-77), Gentile's counsel never raised the prospect of filing a motion seeking sanctions.

The subsequent email exchange reflects that Gentile's counsel only sought to confirm details of the conversation, which undersigned counsel clarified, and never raised the issue of sanctions. Indeed, Gentile's Motion lacks a conferral certificate as required by Local Rule 7.1(a)(3). For this reason alone, Gentile's Motion should be denied.[3]

Additionally, Gentile seeks sanctions pursuant to Fed. R. Civ. P. 37(b)(2), which only applies when a party fails to obey a discovery order or to produce a person for examination. Neither of these scenarios are present. "The severe sanctions permitted by Rule 37(b) are usually only imposed by district courts upon a finding '(1) that *the party's failure to comply with the order* was willful or a result of bad faith, (2) the party seeking sanctions was prejudiced by the violation, and (3) a lesser sanction would fail to adequately punish and be inadequate to ensure compliance with court orders.'" *Kleiman v. Wright*, 2020 WL 113396, at *7 (S.D. Fla. Jan. 10, 2020) (quoting *Dude v. Cong. Plaza, LLC*, 2018 WL 4203888, at *5 (S.D. Fla. July 20, 2018)) (emphasis added). Put simply, there is no discovery order that Gentile is accusing the SEC of not obeying – because there is no discovery order, period. Instead, Gentile leapfrogged to a sanctions motion before seeking a protective order or some other discovery ruling related to the production of documents from the former SureTrader employees.

Accordingly, Gentile's Motion must be denied summarily.

**B.     Gentile Lacks Standing to Object to Production from Former SureTrader Employees**

Even if Gentile's Motion was not facially defective, he lacks standing to object to the production from former SureTrader employees. Generally, a party does not have standing to challenge a subpoena served on another, unless that individual has a personal right or privilege

---

[3] Had Gentile complied with the Local Rule he would have learned many of the assertions he makes in the Motion are demonstrably false and not wasted the parties' and the Court's time.

with respect to the subject matter of the subpoena.[4]  *Subair Systems, LLC v. Precisionaire Systems, Inc.*, 2008 WL 1914876, at *2 (S.D. Fla. April 26, 2008) (citing *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir.1979)); *Barrington v. Mortgage IT, Inc.*, 2007 WL 4370647, at *1 (S.D. Fla. Dec.10, 2007); *Estate of Yaron Ungar v. Palestinian Authority*, 400 F. Supp. 2d 541, 554 (S.D.N.Y.2005)).

Here, Gentile lacks standing for two reasons.  First, SureTrader is controlled by the JOLs appointed by the Supreme Court of The Bahamas pursuant to the Winding Up Order.  Gentile does not control and cannot control what position SureTrader takes on this or any other issue.  Because Gentile raised an objection, the SEC reached out to counsel for the JOLs in an abundance of caution to ascertain their position on Gentile's objection, and counsel for the JOLs advised that they do not object to the production of documents and emails by the former employees.  *See* Exhibit F.  Second, Gentile has not specifically set forth the personal right or privilege that he has with respect to the SureTrader documents and emails in possession of the two former SureTrader employees.  Gentile's objection is also meritless because SureTrader has been liquidated and closed pursuant to order of The Bahamas Supreme Court.

## C.     There Is Nothing Improper About The SEC Receiving Voluntary Production From A Non-Party

Gentile has incorrectly relied upon Federal Rules of Civil Procedure 34 and 45 for the proposition that the SEC *must* issue formal discovery requests or subpoenas to obtain production from a non-party.  Rules 34 and 45 provide a formal process for obtaining documents and information from parties and non-parties, respectively.  These Rules do not address *voluntary* production of documents.  Nothing in these Rules or the Federal Rules of Civil Procedure prevent a party from receiving documents or information voluntarily provided by a non-party.

---

[4] The SEC will address in subsection C. why it is allowed to receive documents from a non-party without a subpoena.

Moreover, the cases to which Gentile cites are inapposite. They each stand for the proposition that formal requests for documents pursuant to Rule 34 or subpoenas pursuant to Rule 45 are required to compel compliance and force production of documents. Notably, Gentile misapplies the ruling and attempts to take advantage of an incomplete quote in *Myers v. Andzel*, 2007 WL 3256879, at *1 (S.D.N.Y. Oct. 15, 2007), which fails to quote the underlying case, *Lehman v. Kornblau*, 206 F.R.D. 345 (E.D.N.Y. 2001), completely: "Discovery of non-parties must be conducted by subpoena pursuant to Fed. R. Civ. P. 45, <u>not the rules governing discovery of parties</u>." (emphasis added.) In *Myers*, the plaintiff filed a motion for leave to take oral depositions of three non-parties, and the court denied the motion but said that plaintiff may serve subpoenas upon these non-parties for other forms of discovery under Fed. R. Civ. P. 45. 2007 WL 3256879, at *1. In *Lehman*, the *pro se* plaintiff served a first set of interrogatories and request for production of records on some former defendants, and the court ruled that "any interrogatories or requests for production of documents served on non-parties are a nullity. Discovery of non-parties must be conducted by subpoena pursuant to Fed. R. Civ. P. 45, not the rules governing discovery of parties." 206 F.R.D. at 346.

The SEC stands by the position it articulated to Gentile's counsel that the SEC can receive discovery informally and voluntarily from a non-party, without a formal request or subpoena, before and after litigation commences. Here, the SEC received (but did not review) documents and emails from Dorsett in April 2022 and anticipated receiving documents and emails from Frantz, and promptly notified Gentile's counsel and attempted to address the process for reviewing the documents. There simply is no authority for Gentile's position that the SEC must subpoena a non-party for documents. In fact, Gentile does not comply with his own arguments. In two cases currently pending in the Southern District of New York – *Avalon Holdings Corporation v. Gentile*,

11

1:18-cv-07291-VSB-RWL and *New Concept Energy v. Gentile*, 1:18-cv-08896-VSB-RWL – Gentile sought and obtained documents from SureTrader without serving a request for production of documents.  *See* a true and correct copy of Gentile's Letter Motion attached as **Exhibit G** (excluding exhibits thereto) at pp. 5-6, wherein Gentile admits to directly contacting Stephen Darville, SureTrader's IT professional, on April 22, 2022, to obtain certain trading records without serving a request for production on co-defendant SureTrader.

Indeed, federal discovery rules merely require that documents received from a non-party be disclosed to the opposing party and produced upon request.  In accordance with the Federal Rules of Civil Procedure, the SEC disclosed the existence and substance of the discovery and was attempting to confer with Gentile as to how they could be produced when Gentile filed his Motion.

**D. The Former Employees Did Not "Steal" Documents From SureTrader And There Was Nothing Improper About Them Providing Information To The SEC**

Gentile's Motion also falsely accuses Dorsett and Frantz of "stealing" SureTrader documents and violating Bahamian laws.  Fundamentally, Gentile fails to understand that these two former employees were concerned about SureTrader and Gentile's conduct and potential violations of U.S. securities laws, and that is why they reached out to the SEC with their concerns and provided information and documents.

As explained in the Background section *supra*, SureTrader was aware of both Dorsett and Frantz having SureTrader documents and emails on their laptops and departing SureTrader with that information.  *See* Dorsett Declaration at ¶¶ 7-10 and Frantz Declaration at ¶¶ 5-7.  SureTrader also did not give instructions to either of them to delete or otherwise remove the data upon their separation from the company.  *See* Dorsett Declaration at ¶10 and Frantz Declaration at ¶ 7.  As such, Dorsett and Frantz did not "steal" SureTrader records.

Moreover, Gentile's protests about the information being provided to the SEC as violating Bahamian law and the company's policies lack support.[5] First, the JOLs – the persons who have authority and standing to complain – have advised they do not object to the production. Second, Dorsett and Frantz are providing the documents to the SEC because of their concerns that SureTrader and Gentile violated securities laws, and not to a private third-party (such as a competitor) for personal gain. In fact, the SEC reached out to Gentile's counsel in an effort to negotiate a stipulated confidentiality order, and any concerns about trade secrets or other private information can easily be addressed by designating such information "confidential."

Finally, the Court should also reject Gentile's false, baseless, and inflammatory speculation about "subtle or implicit threats (or promises) the SEC may have made" to "induce" the former employees to provide information to the SEC.[6] Rather, it is Gentile who is unlawfully threatening his former employees who have engaged in protected behavior under the Securities Exchange Act of 1934.

**E.  The SEC's Discovery Requests To Gentile And Subpoenas To Non-Parties Are Directly Related To The Allegations In The Complaint**

Gentile's attempt to connect the subpoenas the SEC issued to non-parties and the SEC's First Request for Production to the SEC's receipt (but not review) of documents from Dorsett is

---

[5] In fact, Gentile's successful efforts to obtain SureTrader documents in the two other litigations bely his claim that there is something improper or against Bahamian law. Given that the company, and not Gentile, owns the documents and information, Gentile's efforts to get that information as an individual and former employee would also violate Bahamian law.

[6] Moreover, Gentile's arguments about the SEC's Enforcement Manual are irrelevant and typical of his baseless assumptions. As even Gentile admits, the SEC's internal enforcement manual has no relevance to the Court's decision in the instant Motion. Moreover, Gentile has no knowledge of the internal discussions within departments of the SEC and is in no position to make assertions as to whether undersigned counsel is complying with internal guidance as stated in the Enforcement Manual.

similarly baseless. Gentile's accusation is both factually and logically incorrect. Each of the requests in the subpoenas and First Request for Production are directly related to allegations in the Complaint, Gentile's Affirmative Defenses, and/or seek documents that are relevant or would prove the allegations. There is no merit to the accusation that the SEC used improperly obtained information to craft their discovery requests and that, therefore the discovery process has been "tainted" or "at least improperly informed." (Motion at p. 23).

The SEC has accused SureTrader of violating U.S. securities laws by acting as an unregistered securities broker-dealer and Gentile of being liable for SureTrader's violations as a control person. No surprise, the SEC has issued subpoenas to five entities SureTrader affiliated with to promote its trading platform in the U.S. and through which it solicited U.S. investors, as alleged in the Complaint. Similarly, the Commission's Requests for Production of Documents asked for agreements with the "affiliates" identified in the Complaint, the company's operating procedures, and contact information for SureTrader's customers because all of these requests address the ultimate issue of acting as an unregistered securities broker-dealer and soliciting U.S. based customers in violation of Sections 15(a)(1) and Section 20(a) of the Securities Exchange Act of 1934. Moreover, the SEC's desire to depose other former employees of SureTrader who reside in The Bahamas via letters rogatory (and were identified in its Initial Disclosures as persons who may have knowledge) is reasonable and to be expected.

**F.    There Is No Basis For Sanctions Or Dismissal Of This Case**

Gentile's Motion is nothing more than a transparent attempt to avoid liability for his and SureTrader's actions, to further delay this case, and to scare the former employees from further communication with the SEC. Gentile has avoided production of documents dating back to an investigative subpoena issued by the SEC in 2017. Now that he is faced with the prospect of

14

former employees producing company records, Gentile has asked this Court to dismiss the SEC's case altogether – an extreme sanction appropriate only in cases of serious discovery abuses or other misconduct. The SEC has not taken any action that undermines the rule of law or discovery process. Nor have the two former employees who have voluntarily provided information to the SEC in its investigation and during this litigation engaged in any misconduct. To the contrary, the SEC properly disclosed its receipt of documents and, once the SEC determined that there was a possibility of a privilege issue, it reached out to counsel to discuss the process for addressing it. This Court should reject Gentile's manufactured discovery standard that attempts to prevent a party from receiving voluntary production of documents without a subpoena.

The SEC does not waiver from its position that routinely receives information and documents on a voluntary basis. The SEC issued an investor bulletin on October 22, 2014, which provides:

> Enforcement receives information about possible violations from many sources, including market surveillance activities, investor tips and complaints, whistleblower submissions, other divisions and offices of the SEC, self-regulatory organizations and other securities industry sources, and media reports. If Enforcement opens an investigation, it may request documents and interview witnesses on a voluntary basis. If authorized with a formal order of investigation, Enforcement can issue subpoenas requiring the production of documents and witness testimony. Enforcement develops the facts in an SEC investigation primarily through interviewing witnesses under oath and analyzing documents and data (e.g., emails, brokerage records, and trading data).

*See Investor Bulletin: SEC Investigations* at https://www.sec.gov/oiea/investor-alerts-bulletins/ib_investigations#.YroQGhsGGNg.mailto. To the point, there is nothing out of the ordinary about the SEC receiving information and documents on a voluntary basis from a witness, whether before or during litigation, and Gentile's request for dismissal of this lawsuit as a sanction should be rejected.

## IV. CONCLUSION

For the foregoing reasons, Gentile's Motion should be denied.

June 27, 2022                                    Respectfully submitted,

                                             Alice K. Sum
                                             Alice K. Sum, Esq.
                                             Trial Counsel
                                             Fla. Bar No. 354510
                                             Direct Dial: (305) 416-6293
                                             Email: sumal@sec.gov

                                             Alise Johnson, Esq.
                                             Senior Trial Counsel
                                             Fla. Bar No. 0003270
                                             Direct Dial: (305) 982-6385
                                             Email: johnsonali@sec.gov

                                             Attorneys for Plaintiff
                                             **SECURITIES AND EXCHANGE COMMISSION**
                                             801 Brickell Avenue, Suite 1950
                                             Miami, Florida 33131
                                             Telephone:   (305) 982-6300
                                             Facsimile:    (305) 536-4154

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 27th day of June 2022 via CM-ECF on all counsel.

                                             Alice K. Sum
                                             Alice K. Sum