# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-21079-Bloom

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

    Defendants.
_____/

## DECLARATION OF PHILIP A. DORSETT

Pursuant to 28 U.S.C. § 1746, the undersigned states as follows:

1. My name is Philip A. Dorsett and I am over twenty-one years of age and have personal knowledge of the matters set forth herein.

2. I received a Bachelor of Science in finance from the University of South Florida in August 2003. I received a Master of Business Administration from Nova Southeastern University in March 2013.

3. I am currently employed by LCG Capital Markets Limited ("LCG"), a broker-dealer registered with the Securities Commission of the Bahamas. I have served as LCG's Chief Compliance Officer ("CCO") and Money Laundering & Reporting Officer since April 1, 2018.

4. From November 2011 until August 2017, I was registered with the Bahamian securities regulators as the CCO at Swiss America Securities, Ltd, also known as SureTrader, and most recently known as Mint Broker International Ltd., a broker-dealer registered with the

Securities Commission of the Bahamas (hereinafter "SureTrader"). My duties were focused on ensuring SureTrader's compliance with Bahamian securities laws and regulations and approving new customer accounts.

5. SureTrader opened in the Bahamas in November 2011. The only employees of SureTrader at that time were me and Guy Gentile ("Gentile"), and a clerical staff person joined a short time later.

6. At the beginning when SureTrader was formed, two company laptops were acquired by SureTrader; one laptop for me and one laptop for Gentile. I also owned a personal laptop, which Gentile saw that I had with me every day.

7. Very early on during the company's infancy, Gentile had a concern about loss of data for SureTrader. Gentile asked me to provide my personal laptop, I gave it to him, and he made backups of SureTrader's data to my personal laptop. Gentile told me that he wanted the backups to be separate from SureTrader's two work laptops. I was not aware of what specific technical work Gentile did to back up SureTrader's data to my personal laptop.

8. I occasionally performed work on my personal laptop, which Gentile was fully aware of, and he never told me that I could not work on my personal laptop.

9. I would often have both my personal and work laptops open and work on them in plain view of Gentile because he sat less than 10 feet behind me and his desk was positioned to see that. The company had a small office with an open floor plan.

9. I later learned that SureTrader emails were backed up to my personal Gmail account.

10. When I separated from SureTrader in August 2017, I do not recall being provided with any instructions regarding the SureTrader materials that were backed up to my personal

laptop. I was not instructed to destroy or otherwise remove SureTrader data or work from my personal laptop.

11. I became uncomfortable with how Gentile ran SureTrader and in particular his risky disposition toward US authorities, and was concerned that Gentile was putting SureTrader and its officers, including me, at risk. After I brought my concerns to Gentile about these risks and did not receive a satisfactory answer and Gentile continued with the same behavior, I felt that I had no choice but to contact the U.S. Securities and Exchange Commission ("SEC"), and I voluntarily provided information and documents to the SEC.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th day of June, 2022.

_____
Philip A. Dorsett