**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:21-cv-21079-BB**

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

    Defendants.

**DEFENDANT GUY GENTILE'S REPLY MEMORANDUM**
**IN FURTHER SUPPORT OF MOTION FOR SANCTIONS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ..........................................................................................................1

ARGUMENT ..................................................................................................................2

I.   THE SEC'S "PROCEDURAL" ARGUMENTS IGNORE AND CONTRADICT THIS COURT'S LOCAL RULES, THE FEDERAL RULES OF CIVIL PROCEDURE, AND WELL-SETTLED CASE LAW. ...................................................................2

   A.  Local Rule 7.1(a)(3) Does Not Apply to Gentile's Motion Seeking Involuntary Dismissal as a Sanction for Discovery Abuse. .....................................................3

   B.  The Court Should Reject the SEC's Argument that It Has Not Violated a Specific Discovery "Order" and Thus Cannot Be Sanctioned for Discovery Abuse. ...........4

II.  THE SEC'S "SUBSTANTIVE" ARGUMENTS FAIL TO JUSTIFY THE AGENCY'S MISCONDUCT AND USE OF STOLEN DOCUMENTS IN THIS LITIGATION. ..............................................................................................................5

   A.  Additional Factual Material Filed by the SEC with Its Opposition Confirms a Clear Record of Willful Discovery Abuse by the Agency. ....................................5

   B.  Purported New York Counsel for the JOL Cannot Consent to Violation of Bahamian Statutory Law or the Bahamian Court Order that Instructed the JOL to "forthwith take possession of, collect, and protect the property and assets of the said Company and its clients, *but not to distribute or part with the same until further order*." ......................................................................................................7

   C.  Gentile Has Standing to Contest the Use of Stolen SureTrader Documents in This Proceeding. ...........................................................................................................9

CONCLUSION .............................................................................................................10

# TABLE OF AUTHORITIES

**Cases:**

*1550 Brickell Assocs. v. QBE Ins. Corp.*,
 No. 07-22283-CIV, 2008 WL 11333630 (S.D. Fla. May 5, 2008) ............................................ 4

*Alhassid v. Nationstar Mortgage, LLC*,
 No. 14-CV-20484, 2018 WL 745956 (S.D. Fla. Feb. 7, 2018) ................................................. 3

*Contour Prods., Inc. v. Albecker*,
 No. 08-60575-CIV, 2009 WL 10667527 (S.D. Fla. Feb. 3, 2009) ............................................ 9

*El-Ad Nob Hill Condo. Ass'n, Inc. v. Mt. Hawley Ins. Co.*,
 No. 11-61301-CIV, 2011 WL 13217574 (S.D. Fla. Sept. 29, 2011) ...................................... 10

*Engelhardt v. Svensk Mgmt., Inc.*,
 No. 08-62063-CIV, 2009 WL 10667463 (S.D. Fla. June 9, 2009) .......................................... 9

*Hunter's Ridge Golf Co. v. Georgia-Pac. Corp.*,
 No. 3:02-CV-602-J-25MCR, 2006 WL 8439110 (M.D. Fla. Feb. 8, 2006) ....................... 9, 10

*Jeld-Wen, Inc. v. Nebula Glasslam Int'l, Inc.*,
 No. 07-22326-CIV, 2008 WL 11333258 (S.D. Fla. Mar. 3, 2008) ......................................... 10

*Kleiman v. Wright*,
 No. 18-CV-80176, 2020 WL 113396 (S.D. Fla. Jan. 10, 2020) ............................................... 4

*Konefal v. GFC Crane Consultants, Inc.*,
 No. 05-60760-CIV, 2006 WL 8431628 (S.D. Fla. June 20, 2006) ........................................... 3

*Koppey v. Liberty Mut. Fire Ins. Co.*,
 No. 20-23581-CIV, 2020 WL 13389220 (S.D. Fla. Dec. 31, 2020) ......................................... 4

*Mamani v. Sanchez Bustamante*,
 968 F.3d 1216 (11th Cir. 2020) ............................................................................................... 9

*Richardson v. State of Fla.*,
 137 F.R.D. 401 (M.D. Fla. 1991) .......................................................................................... 10

*Tarasewicz v. Royal Caribbean Cruises Ltd.*,
 No. 14-CIV-60885, 2016 WL 3944176 (S.D. Fla. Feb. 9, 2016),
 *report and recommendation adopted*,
 No. 14-CIV-60885, 2016 WL 3944178 (S.D. Fla. Mar. 17, 2016) ...................................... 4, 5

*Turner v. Ramo, LLC*,
 No. 09-81609-CIV, 2011 WL 13077935 (S.D. Fla. Jan. 6, 2011) ............................................ 3

*Zocaras v. Castro*,
    465 F.3d 479 (11th Cir. 2006) .................................................................................................. 5

**Rules:**

Local Rule 7.1(a)(3) ........................................................................................................................ 3

Fed. R. Civ. P. 37 ....................................................................................................................... 3, 4

Fed. R. Civ. P. 41 .................................................................................................................... 3, 4, 5

Fed. R. Civ. P. 45 .................................................................................................................. 5, 9, 10

## **INTRODUCTION**

Confronted with evidence that it has violated federal discovery rules and engaged in conduct warranting dismissal of its case by coordinating with two individuals who stole or illicitly retained approximately 44,000 documents from SureTrader in violation of Bahamian law, the SEC's primary defense is two purported procedural defects in Gentile's filing: (1) that he failed to include a statement certifying a "meet and confer" before filing; and (2) that this Court lacks authority to impose sanctions for discovery abuse absent violation of a specific court order. Both lack merit. As to the first, the SEC misreads this Court's Local Rules and downplays the hour-long meet and confer on May 9, 2022, the details of which were memorialized in an email exchange dated May 10–11, 2022, and attached to Gentile's Motion. Ford Decl., Ex. H [ECF 86-1 at 74–77]. As to the second, the SEC ignores the bases for Gentile's Motion and well-settled case law in this Circuit.

The SEC's substantive response fares no better. Distilled to its essence, the SEC argues: (1) that a heretofore-unknown purported lawyer for the Joint Official Liquidators ("JOL") overseeing the wind-up of SureTrader in the Bahamas has retroactively acquiesced to the theft of 44,000 SureTrader documents by former employees and their transmittal to the SEC; and (2) that Gentile lacks standing to challenge the use of such documents taken from his company, including any potential privileged communications with the undersigned law firm.

On June 13, 2022, the SEC—with Gentile's consent—requested additional time to respond to Gentile's Motion. The SEC then embarked on two misadventures. First, it procured false declarations from two former SureTrader employees who were fired four to five years ago and stole or illicitly retained Company records in violation of their employment agreements and Bahamian law, and then transmitted (or prepared to transmit) those documents to the SEC.

Second, and as troubling, the SEC solicited an opinion from a New York attorney who has not appeared in this litigation, is not licensed to practice in the Bahamas, and has not appeared on behalf of the JOL in the Bahamas. According to his opinion, the JOL have no objection to former employees of the Company providing SureTrader's stolen business records to a foreign regulatory agency without the Company's review and without limitations on date and topic area, including privileged communications. Critically, the attorney fails to explain how SureTrader can countenance its 44,000 stolen records being transmitted to third parties in violation of the order entered by the Supreme Court of the Bahamas in March 2020 instructing the then-Joint Provisional Liquidators to "forthwith take possession of, collect, and protect the property and assets of the said Company and its clients, *but not to distribute or part with the same until further order*" of the Bahamian Court. *See* Opp., Ex. D (emphasis added) [ECF 89-4 at 155–56]. Nor does he explain why the JOL do not object to the transmission of these documents in violation of Bahamian statutory law, which prevents the disclosure of certain protected personal information of SureTrader's clients, or how Gentile lacks standing to contest their disclosure, especially since said attorney does not know what the 44,000 documents contain as he has not seen or reviewed them.

The procurement of false declarations and the soliciting of a lawyer to purportedly authorize the SEC's wrongful conduct confirms the Agency's pattern of willful discovery abuse in this case and that any sanction short of dismissal would be inadequate.

## **ARGUMENT**

I. **THE SEC'S "PROCEDURAL" ARGUMENTS IGNORE AND CONTRADICT THIS COURT'S LOCAL RULES, THE FEDERAL RULES OF CIVIL PROCEDURE, AND WELL-SETTLED CASE LAW.**

In its Opposition, the SEC's raises two "procedural" arguments that it claims warrant denial of Gentile's Motion. Neither argument is correct.

**A. Local Rule 7.1(a)(3) Does Not Apply to Gentile's Motion Seeking Involuntary Dismissal as a Sanction for Discovery Abuse.**

Without quoting any language from Local Rule 7.1(a)(3) or citing a single case, the SEC asks the Court to deny Gentile's Motion outright for failure to include a certification under that Rule. By its plain terms, however, Local Rule 7.1(a)(3) does not apply to "a motion . . . to involuntarily dismiss an action." Rule 41(b), titled "Involuntary Dismissal; Effect," provides: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."[1] Here, as indicated in the first sentence of Gentile's Motion, he "seeks dismissal of this action under Rules 37 and 41 of the Federal Rules of Civil Procedure . . . , as well as pursuant to this Court's inherent authority." Mot. 1; *see also id.* at 12 (quoting Rule 41(b)). Accordingly, certification is not required under Local Rule 7.1(a)(3) and the SEC's request that the Motion be denied on that procedural basis lacks merit.

Even assuming Local Rule 7.1(a)(3) applies, Gentile "has more than complied with the spirit of the rule." *See Alhassid v. Nationstar Mortgage, LLC*, No. 14-CV-20484, 2018 WL 745956, at *3 (S.D. Fla. Feb. 7, 2018) (Bloom, J.) (declining to deny motion on basis of Local Rule 7.1(a)(3) (citation omitted)). As the parties acknowledge, counsel for Gentile and Enforcement Counsel met and conferred on May 9, 2022, about the issue central to Gentile's Motion. In an email the following day, May 10, 2022, counsel for Gentile wrote to Enforcement Counsel, confirming in part: "We [Gentile's counsel] . . . expressed our preliminary concern that these documents were taken in violation of the law, and that the transmittal of them to your agency may also constitute a violation of law, specifically the Bahamian Secrecy Law. . . . You

---

1. *See Konefal v. GFC Crane Consultants, Inc.*, No. 05-60760-CIV, 2006 WL 8431628, at *3 (S.D. Fla. June 20, 2006) ("As Plaintiff's Motion to Remand is construed as a motion that seeks to 'involuntarily dismiss an action,' it is an enumerated exception to Local Rule 7.1(A)(3)."); *see also Turner v. Ramo, LLC*, No. 09-81609-CIV, 2011 WL 13077935, at *3 n.3 (S.D. Fla. Jan. 6, 2011) (motion for sanctions under Rule 37(b)).

3

[Enforcement Counsel] agreed that this issue needed to be put in front of the judge and agreed that all documents obtained by these two men would be segregated in a separate folder . . . . until the judge provided guidance." *See* Ford Decl., Ex. H [ECF 86-1 at 75–76].

In short, the SEC was plainly aware that counsel for Gentile intended to seek judicial intervention to address the issue. The SEC obviously opposes the Motion and would not have consented to dismissal or any sanction, rendering further conferral futile. *See 1550 Brickell Assocs. v. QBE Ins. Corp.*, No. 07-22283-CIV, 2008 WL 11333630, at *1 (S.D. Fla. May 5, 2008) (explaining that Local Rule did not apply to motion for default because that motion "carries the same consequences as any other motion for involuntary dismissal, and adverse parties are never going to agree on it").[2]

    **B. The Court Should Reject the SEC's Argument that It Has Not Violated a Specific Discovery "Order" and Thus Cannot Be Sanctioned for Discovery Abuse.**

The SEC ignores that Gentile seeks relief pursuant to Rule 37, Rule 41, and the Court's inherent authority, and that a party can be sanctioned for discovery abuse even without violating a specific discovery order. Tellingly, the SEC does not reference Rule 41 or the Court's inherent authority anywhere in its Opposition. Rather, the SEC's focuses narrowly on Rule 37, citing a single case *in which this Court in fact ordered sanctions for discovery abuse*. *Kleiman v. Wright*, No. 18-CV-80176, 2020 WL 113396, at *6 (S.D. Fla. Jan. 10, 2020).

Notably, *Kleiman* itself highlights that "[t]he Court has the 'inherent power to regulate litigation and sanction the parties . . . for abusive practices.'" *Id.* (citing *Tarasewicz v. Royal Caribbean Cruises Ltd.*, No. 14-CIV-60885, 2016 WL 3944176, at *1 (S.D. Fla. Feb. 9, 2016), *report and recommendation adopted*, No. 14-CIV-60885, 2016 WL 3944178 (S.D. Fla. Mar. 17,

---

2. *See also Koppey v. Liberty Mut. Fire Ins. Co.*, No. 20-23581-CIV, 2020 WL 13389220, at *2 (S.D. Fla. Dec. 31, 2020) ("conferral would not have resolved the issues presented in the Motion").

4

2016)). In further support of Gentile's argument—and fatal to the SEC's position—*Tarasewicz* in turn cites both "Federal Rule of Civil Procedure 41(b)[] and the Court's inherent authority" as bases for the Court's authority to order sanctions for discovery-related abuse. *See* 2016 WL 3944176, at *1. Accordingly, the SEC's contention that it cannot be sanctioned for discovery abuse absent noncompliance with a specific court order finds no support in this Court's cases— or in binding precedent. *See, e.g.*, *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006).

II. **THE SEC'S "SUBSTANTIVE" ARGUMENTS FAIL TO JUSTIFY THE AGENCY'S MISCONDUCT AND USE OF STOLEN DOCUMENTS IN THIS LITIGATION.**

To be clear about what has occurred here, the SEC has sought and obtained approximately 44,000 stolen records of a foreign company from two former employees. Those records most likely contain, among other things, sensitive personal data of the Company's clients, rendering the former employees' illicit retention and subsequent disclosure of those documents to the SEC a violation of Bahamian law. Additionally, these records undoubtedly contain documents irrelevant to this litigation. And they also likely contain documents protected by attorney–client privilege. The SEC has secured these documents outside the formal discovery process, having failed to issue a subpoena under Rule 45 or a letter rogatory approved by this Court. The Agency's actions in this case reflect flagrant disregard of the Federal Rules, the Agency's own policies, and Bahamian law.

A. **Additional Factual Material Filed by the SEC with Its Opposition Confirms a Clear Record of Willful Discovery Abuse by the Agency.**

In a post-hoc effort to rectify its misconduct, the SEC relies on two declarations dated June 27, 2022, from former SureTrader employees Dorsett and Frantz that do not withstand even modest scrutiny. The declarations are both premised on materially false statements. At their core, both declarations assert that, without specifying any dates, each man voluntarily contacted

5

the SEC and offered to voluntarily turn over documents to the Agency in the spring of this year. *See* Opp., Ex. B ¶ 11 ("Dorsett Decl.") [ECF 89-2]; Opp., Ex. C ¶ 9 ("Frantz Decl.") [ECF 89-3].[3]  These declarations fail the smell test.

The actual timeline demonstrates that something is very amiss with these declarations: Dorsett was terminated from SureTrader almost five years ago, in 2017, *see* Cooper Aff. ¶ 8; Dorsett Decl. ¶ 10, and Frantz was terminated over four years ago, in 2018, *see* Cooper Aff. ¶ 10; Frantz Decl. ¶ 6.  Gentile was cooperating and acting at the direction of the FBI and SEC from July 2012 to March 2016, and the conduct that apparently gave Dorsett concern was conduct that was being directed by the U.S. government.

Nor can it be true that Dorsett provided the SEC with documents prior to December 29, 2021.  For avoidance of doubt, neither Dorsett nor Frantz is listed in the SEC's Initial Disclosures (served December 29, 2021) as a custodian who previously provided documents that are in the SEC's possession.  Ford Decl., Ex. A [ECF 86-1 at 9].  Instead, both are listed in the Initial Disclosures under "Individuals likely to have discoverable information." *Id.*[4]  As such, if the Dorsett and Frantz Declarations are taken at face value, their story is that four and five years after being terminated, six years after the SEC commenced action against Gentile, and two years

---

3. The Dorsett and Frantz Declarations ignore the uncontroverted facts that both former employees received a copy of the Company's Code of Ethics—which prohibits dissemination of Company records, in accordance with Bahamian law—and that the employees would have signed other agreements to similar effect in connection with their employment at SureTrader.  *See* Cooper Aff. ¶¶ 12–17 [ECF 86-2].  The Dorsett Declaration also ignores a March 2015 email in which Dorsett wrote to Gentile: "Even as the President you cannot authorize me to do something that we haven't established as being legal.  I understand the seriousness of receiving the subpoena [from the SEC], and I also know that there tends to be a deadline for these type requests.  However in our haste to fulfil US law we must be cautious not to break Bahamian law."  Ford Decl., Ex. I [ECF 86-1 at 79–80].

4. The SEC now maintains that "[b]oth Dorsett and Frantz communicated with the SEC prior to the filing of this lawsuit and produced documents that were already scheduled to be and will be part of the second tranche of discovery," Opp. 5 n.2, but that statement contradicts the SEC's Initial Disclosures, which to date have not been amended.  The SEC also now claims it has not reviewed *any* Dorsett documents, which contradicts the SEC acknowledging during the May 9, 2022 meet and confer that the Agency *had* reviewed some of his documents.  *See* Ford Decl., Ex. H [ECF 86-1 at 74–77].  Notably, the SEC admitted that Dorsett—a nonlawyer—was permitted to conduct his own "privilege" review of SureTrader documents before transmitting them to the Agency.

after SureTrader went into receivership, these two former employees decided on their own accord to reach out to the SEC in the spring of 2022 to turn over documents they stole four and five years earlier because they just became concerned about Gentile's conduct. Obviously, this sequence of events makes no sense and suggests further obfuscation of the underlying circumstances surrounding the SEC's communication with these individuals and plans to receive SureTrader documents outside of formal discovery.

> **B. Purported New York Counsel for the JOL Cannot Consent to Violation of Bahamian Statutory Law or the Bahamian Court Order that Instructed the JOL to "forthwith take possession of, collect, and protect the property and assets of the said Company and its clients, *but not to distribute or part with the same until further order.*"**

The SEC includes with its Opposition a June 23–25, 2022 email exchange between Enforcement Counsel and Warren Gluck, a New York attorney who purports to represent SureTrader and the JOL in the Bahamas. According to his website bio, Mr. Gluck is not licensed to practice law in the Bahamas and his name appears nowhere in Exhibits D or E to the SEC's Opposition, which concern SureTrader's court-supervised liquidation proceedings in the Bahamas. There is no evidence that Mr. Gluck has appeared in those proceedings, and it is not clear when he began his representation of the JOL on behalf of SureTrader.

In any event, Mr. Gluck's June 25, 2022 email—that the JOL "do not object to the voluntary production of the documents and emails by Dorsett and Frantz to the SEC," Opp., Ex. F [ECF 89-6]—does not help the SEC's position here, and in fact raises more issues regarding the SEC's conduct. For one, although Mr. Gluck purports to represent the JOL, his statement contravenes the March 2020 order from the Supreme Court of the Bahamas authorizing the then-Joint Provisional Liquidators to "forthwith take possession of, collect, and protect the property and assets of the said Company and its clients, *but not to distribute or part with the same until further order*" and to "do all other things necessary to preserve the assets and estate of the

Company and its clients." *See* Opp., Ex. D (emphasis added) [ECF 89-4 at 155–56].  In other words, the order makes clear that allowing former employees of SureTrader to turn over sensitive Company records that most likely include personal information of Company clients, as well as privileged communications, to a foreign regulator—without any review by the Company, including for legal privilege—exceeds the scope of the JOLs' authority.  No such documents can be turned over without a court order.  Given the instruction in the March 2020 order from the Supreme Court of the Bahamas, which presumably Mr. Gluck is aware of, it is difficult to conceive how he can "not object" to former employees providing stolen SureTrader documents to the SEC.  His failure to object appears to be a violation of the Bahamian court order, which—if he is counsel to the JOL—he would be bound by.  Because Mr. Gluck failed to obtain court authorization, his failure to object to dissemination of SureTrader documents, and his purported approval of the release of the same in violation of the March 2020 order, is entitled to no weight.

      Relatedly, Mr. Gluck does not have the authority to bless a violation of Bahamian statutory law or to otherwise absolve a violation of it.  That both Dorsett and Frantz have violated Bahamian law by stealing SureTrader documents and sending them to the SEC has gone unrebutted here.  In an affidavit attached to Gentile's Motion, Michael C. Miller, a Principal at Kensington Chambers who has been licensed to practice law in the Bahamas since 1995 and focuses on corporate law, provided a legal opinion that "under the Data Protection (Privacy of Personal Information) Act, 2003 (the 'DPA'), a person who obtains access to personal data, or obtains any information constituting such data, without the prior authority of the data controller . . . and discloses the data or information to another person, shall be guilty of an offence.  In the circumstances, the disclosure of information to the SEC in the absence of a court order, was in breach of the aforesaid legislation."  Miller Aff., ¶ 6 [ECF 86-3].

The SEC does not address the Miller Affidavit or the underlying Bahamian statute that protects the personal data of SureTrader's clients from unlawful disclosure. And the Eleventh Circuit has made clear that "[a]n un-rebutted affidavit from an attorney on foreign law [is] sufficient to establish the substance of that law." *Mamani v. Sanchez Bustamante*, 968 F.3d 1216, 1245–46 (11th Cir. 2020) (second alteration in original) (citation omitted).[5]

### C. Gentile Has Standing to Contest the Use of Stolen SureTrader Documents in This Proceeding.

The SEC's arguments on standing are similarly contrived. Of course, a party has standing to object to the use of documents stolen from his company and procured outside the bounds of any formal process. That is why the SEC arranged for a call with the undersigned to disclose that the Agency had obtained (and was planning to obtain) SureTrader documents from former employees and then agreed not to do anything with them until after the Court weighed in. If the SEC truly believed Gentile had no standing, i.e., no "personal right or privilege with respect to the information sought," it would have acted accordingly. *See Contour Prods., Inc. v. Albecker*, No. 08-60575-CIV, 2009 WL 10667527, at *3 (S.D. Fla. Feb. 3, 2009).[6]

Had the SEC issued subpoenas under Rule 45 or sought Court approval for letters rogatory to obtain specific, enumerated categories of SureTrader documents from former employees Dorsett and Frantz, Gentile would have had the opportunity to raise his objections in the ordinary course, as contemplated by the Federal Rules.[7] As the SEC has disclosed, the

---

5. The SEC's only apparent response is that even if the Agency or former SureTrader employees Dorsett and Frantz have violated Bahamian law, then so has Gentile because he produced certain documents in another litigation. Besides the fact that the documents at issue in the other litigation were not obtained or disbursed in violation of Bahamian law (nor has the SEC even attempted to argue this, because it has no such evidence), this appears to be a "two wrongs make a right" argument—a striking position for the U.S. government to embrace.

6. *See also Engelhardt v. Svensk Mgmt., Inc.*, No. 08-62063-CIV, 2009 WL 10667463, at *3 (S.D. Fla. June 9, 2009) ("It appears to be the general rule of the federal courts that a party has standing to challenge a subpoena when he alleges a personal right or privilege with respect to the materials subpoenaed.").

7. *See, e.g.*, *Hunter's Ridge Golf Co. v. Georgia-Pac. Corp.*, No. 3:02-CV-602-J-25MCR, 2006 WL 8439110, at *3 (M.D. Fla. Feb. 8, 2006) ("In part, the purpose of the Rule 45 notice requirement is to ensure fairness to opposing

Agency has obtained (or is prepared to obtain) every SureTrader document that Dorsett or Frantz illicitly possesses (about 44,000 documents total), without regard to any specific topic area, date range, or review for privilege by a capable attorney for the custodian of the documents. Plainly, this cache contains irrelevant and privileged documents, which—at minimum—would have rendered the SEC's solicitation of these 44,000 documents ripe for a protective order. *See, e.g.*, *Jeld-Wen, Inc. v. Nebula Glasslam Int'l, Inc.*, No. 07-22326-CIV, 2008 WL 11333258, at *2 (S.D. Fla. Mar. 3, 2008) (A party's "interest in pursuing a Protective Order [for a nonparty subpoena] lies in reviewing the responsive documents in preparing for trial, and making appropriate motions *in limine* to preclude potentially irrelevant or unduly prejudicial information . . . . Thus, Reichhold has standing here, where it moves for a protective order on the grounds that the [nonparty] subpoenas . . . seek irrelevant information.").[8]

## **CONCLUSION**

The SEC's pattern of abusive discovery practice confirms that any sanction short of dismissal would be inadequate. Apart from the above, the SEC observes blithely that its "internal enforcement manual has no relevance to the Court's decision," Opp. 13 n.6, implicitly conceding that the Agency failed to follow its own policies in requesting and receiving documents from Dorsett and Frantz. For all the foregoing reasons, Defendant Gentile respectfully requests that the Court sanction the SEC and enter an order dismissing the action.

---

counsel by allowing an opportunity to object to production . . . ."); *Richardson v. State of Fla.*, 137 F.R.D. 401, 404 (M.D. Fla. 1991) (interpreting earlier version of Rule: "it is inherent in Rule 45 that notice be given to another party when documents are to be obtained from a person who is not a party to the action"); *id.* (characterizing "*ex parte* discovery subpoenas in a civil adversarial proceeding" as "contrary to the basic premise of the Federal Rules").

8. *See also El-Ad Nob Hill Condo. Ass'n, Inc. v. Mt. Hawley Ins. Co.*, No. 11-61301-CIV, 2011 WL 13217574, at *3 (S.D. Fla. Sept. 29, 2011) ("[C]ourts in the Eleventh Circuit have repeatedly held that a party may challenge a subpoena directed at a nonparty if the subpoena requests irrelevant information." (collecting cases)).

Dated:   July 13, 2022

    /s/ *Dayliset Rielo*
Dayliset Rielo, Esq.
The Rielo Law Firm, LLC
8180 N.W. 36th Street, Suite 220
Doral, FL 33166
Tel: (786) 454-9873
dayliset@rielolaw.com

Adam C. Ford, Esq. (PHV granted)
Matthew A. Ford, Esq. (PHV granted)
Stephen R. Halpin III, Esq. (PHV granted)
FORD O'BRIEN LANDY LLP
275 Madison Avenue, 24th Floor
New York, NY 10016
Tel: (212) 858-0040 (main)
aford@fordobrien.com
mford@fordobrien.com
shalpin@fordobrien.com

*Counsel for Defendant Guy Gentile*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 13th day of July 2022 via CM-ECF on all counsel.

                                                           */s/ Dayliset Rielo*
                                                         Dayliset Rielo, Esq.