



May 20, 2022

**Via ECF**
Honorable Robert W. Lehrburger
Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *Avalon Holdings Corporation v. Gentile,* 1:18-cv-07291-VSB-RWL *and New Concept Energy v. Gentile,* 1:18-cv-08896-VSB-RWL

Dear Judge Lehrburger:

As you know, we represent Defendant Guy Gentile in the above referenced matters, which have been referred to Your Honor for an inquest on damages following the Court's grant of summary judgment on behalf of Plaintiffs.[1]  We write this letter motion seeking leave to introduce newly obtained evidence not previously available to Defendants at the upcoming inquest on damages hearing—specifically trading records from Mintbroker reflecting more detailed information regarding trades in AWX and GBR during the relevant time period.  Indeed, we do not believe any inquest into damages can move forward without the introduction of these critical documents which go directly to the issue of the amount of "short swing" profits that Your Honor will determine. To the extent the introduction of these trading records (which we are producing to the Plaintiffs today) results in Plaintiffs seeking to conduct and exchange limited discovery relating to the damages, we do not oppose.  Moreover, given these recently obtained trading records, we also request to extend the briefing schedule, and to request a plenary hearing of at least one full day be set for the damages inquest.  Prior to filing the letter motion, Gentile's counsel communicated with counsel for Plaintiffs who do not consent to the relief sought herein.

As Your Honor may recall, during the pendency of this action, including during discovery, Defendant MintBroker International Ltd. ("MintBroker") voluntarily ceased operations in conjunction with the Securities Commission of the Bahamas ("SCB") commencing liquidation proceedings (similar to receivership in the United States) in the Bahamas.  (Ex. A, Cooper Aff. ¶ 3).  As a result of the liquidation court proceedings, MintBroker has been unable

---

[1] In granting Plaintiffs' motions for summary judgment, the Court reasoned, "As the parties still dispute the amount of profits Defendants earned, including the exact period of time that Defendants were more-than-10% beneficial owners, as well as the calculation of damages, I will refer this case to Judge Lehrburger for an inquest on damages."  [Dkt. 86]

1

to fully defend itself in this action and Gentile was unable to obtain critical documents related to his defense.

By way of example, during the pendency of the Bahamian liquidation court proceedings, Gentile was entirely removed from any control over MintBroker, instructed not to contact his former staff or seek documents from the entity, and compelled to refrain from taking any action related to MintBroker's assets or its operation until resolution of the liquidation proceedings. (Ex. B, Gentile Aff. ¶ 7). Thus, at the time of Gentile's deposition, February 24, 2020, Gentile lacked access to trading records reflecting the percentage of trades in AWX and GBR placed in MintBroker's proprietary account versus those placed on behalf of clients, that is, those for which MintBroker was not a beneficial owner. (*Id.* ¶¶ 9–12). The amount of shares that traded in MintBroker's proprietary account (beneficially owned shares) and those traded on behalf of clients (non-beneficially owned shares) directly informs the short swing profit calculations at issue in the inquest.

During his deposition in this matter, Gentile testified repeatedly that *at least some* of the trades at issue were client trades and not MintBroker trades, thus impacting the potential damages amount at issue. (Ex. B, Gentile Aff. Ex. C Gentile Depo pgs. 56, 57, 87, 101). Gentile, during the deposition, also provided counsel for Plaintiffs with the names of multiple individuals from whom relevant documents could be subpoenaed. Plaintiffs opted not to seek these documents from these non-parties. (*Id.* pgs. 47, 135, 186).

In December 2021, nearly a year and a half after Plaintiffs moved for summary judgment, the determination was made to liquidate MintBroker in the Bahamian proceedings. (Ex. C, Miller Aff. ¶¶ 6–8). As a practical matter, the liquidation ruling finally permitted Gentile the opportunity to obtain Mintbroker records related to the AWX and GBR trades without violating the Receivership and Liquidation orders in the Bahamian courts. (*Id.*) Shortly after the liquidation determination in the Bahamas, the Court here issued its decision granting summary judgment on behalf of Plaintiffs, finding MintBroker and Gentile strictly liable under section 16(a). (Dkts. 97, 98). Because the parties disputed the amount of profits at issue, the Court ordered an inquest on damages to determine the amount of "short swing" profits required to be disgorged. (Dkts. 99).

After the Bahamas court ruled in the liquidation proceeding, and in preparation for the inquest and with the possibility of now accessing documents, Gentile again sought permission to obtain records related to the AWX and GBR trades placed on behalf of clients, and successfully obtained records. (Ex. A, Cooper Aff. ¶ 4; Ex. D, Darville, Aff. ¶¶ 4–6). His counsel then contacted counsel for Plaintiffs, on May 9, 2022, to inform them of the evidence, so that they could have the opportunity to review the records and conduct discovery related to them prior to making any filing pursuant to the inquest. Plaintiffs' counsel declined and subsequently filed a brief setting forth their damage calculations without differentiating between MintBroker trades and client trades. (Ex. B.)

The calculations set forth in Plaintiffs' damages inquest submissions rest on the erroneous assumption that all trades through Interactive Brokers were proprietary trades which would be part of the short swing profit calculations rather than client trades which must be excluded. This erroneous assumption has substantial implications for damages calculations: the recently obtained evidence by Gentile shows that only 42% of the total amount of AWX trades made through IB were proprietary trades with a significantly lesser percentage for GBR. Because MintBroker cannot be made to disgorge client profits from trades I did not beneficially own and did not profit from, these trade records are critical for the damages inquest hearing.

For these reasons, Gentile respectfully submits to Your Honor that paper briefing without consideration of this recently obtained evidence will not be adequate to determine whether Plaintiffs have proven damages with reasonable certainty as required under the law. Given Gentile's request to introduce these newly obtained documents, as set forth more fully below, Gentile respectfully requests Your Honor allow the documents being produced to Plaintiff today, as well as the exhibits attached here to be part of the record for the damages inquest, and permit limited discovery for 45 days related to the issue of MintBroker client trading in AWX and GBR, set a new pre-hearing briefing schedule, and order a plenary hearing on damages, with testimony prior to making any determination as to the damages. In short, given that Plaintiffs are seeking over $14 million in damages, Mr. Gentile is entitled to a full trial to determine the actual amount of damages in this case.

***Gentile's Inability to Obtain Relevant Records During Discovery***

On August 13, 2018, Plaintiffs commenced a related action against MintBroker, Gentile, and John Does 1–10, subsequently filing amended complaints on September 28, 2018 that removed John Does 1–10. (Dkts. 1, 19). On December 16, 2019, the Court issued a case management plan, ordering that "[a]ll fact discovery is to be completed no later than April 20, 2020," "[d]epositions shall be completed by April 2020," and "all discovery shall be completed no later than June 22, 2020." (Dkt. 42).

Shortly after MintBroker and Gentile first filed responses and objections to Plaintiffs' first document requests, in December 2019, MintBroker voluntarily ceased operations under Bahamian law. (Ex. A, Cooper Aff. ¶ 3). The SCB shortly thereafter commenced an action to formally wind down MintBroker, placing it into provisional liquidation. (Ex. C, Miller Aff. ¶¶ 6–8; Ex. B, Gentile Aff. ¶¶ 3–4). On March 5, 2020, the SCB succeeded in obtaining a Bahamian court order placing MintBroker into provisional liquidation. (Ex. C, Miller Aff. ¶ 5).

As explained by MintBroker's Bahamian corporate counsel Michael C. Miller of Kensington Chambers, "[w]hen [MintBroker] closed in late 2019, we retained all the corporate records of the Company," but "[u]nder the law of The Bahamas, when a company is placed into provisional liquidation, the Directors lose total control of the company, and the provisional liquidators take over immediately." (Ex. C, Miller Aff. ¶¶ 1–5). "During the time of the

3

provisional liquidation, Mr. Gentile was completely stripped of his powers at MintBroker from March 5, 2020 to December 14, 2021" when the Bahamian Supreme Court ordered MintBroker to be liquidated by its receiver. (*Id.* ¶¶ 6–7). In other words, both MintBroker and Gentile were blocked during nearly the entirety of discovery from attempting to obtain relevant documents directly from the company, which was now under control of the liquidator.

Expert and FINRA Registered Principal Joseph Leo Ely III has further affirmed that non-U.S. broker-dealer accounts typically have a "non-disclosed account," meaning that the U.S. broker and clearing firm would not know who the clients of the international non-U.S. broker-dealers are and their records would not reflect "the beneficial owner of each trade transaction." (Ex. E, Ely Aff. ¶¶ 7–8). As Ely further affirms, clearing firms typically require clients, such as MintBroker, to file SEC forms 13G and 13D if an account goes over 5% ownership in any company regardless of whom the beneficials owners are. (*Id.* ¶¶ 12). As such, both Form 13Ds for AWX and GBR located on the SEC website *contain client trades*. Collie, himself has affirmed, "Each filing also contained client transactions, as I was advised by MintBroker counsel" and "MintBroker was not the beneficial owner of all the transactions reported on Forms 3 or 4 and 13D for New Concept Energy (GBR) and Avalon Holdings (AWX)." (Ex. F, Collie, Aff. ¶¶ 3–4). Client trades must be excluded from any damages calculation at the damages inquest.

Thus, although MintBroker filed Form 13Ds for Avalon and New Concepts, neither the filings nor records obtained by Plaintiffs in discovery indicate the actual beneficial ownership, rendering Plaintiffs' evidence insufficient as a matter of law to prove damages with reasonable certainty. Gentile lacked the ability to obtain these records during the course of discovery. (Ex. B, Gentile Aff. ¶ 7). Gentile, however, (a) repeatedly explained during his deposition that the 13D filings could have included client trades and that MintBroker was not a beneficial owner of these shares, which would impact the calculation of any potential short-swing profit disgorgement, and (b) provided names of non-parties from whom counsel for Plaintiffs could obtain documents indicating the client trades. (Ex. B, Gentile Depo).[2]

---

[2] *See, e.g.*, pgs. 47, 56, 57, 87, 101, 135, 186 ["Q: All right. So you're saying that these 13D lists might include some client trades? A: Yes."; "Well, he would have logged in to the MintBroker International database, I believe, and pull down every trade, but that would, again, include the client's trades."; "Q. Okay, so isn't it the case that any order that was sent to Interactive would have been a MintBroker proprietary trade? A. Not necessarily because, like I said, if there was two clients trading, and there was not an offsetting trade between clients, then an order could be sent to the street."; "There might be a process where you have to go through court there to get that information. Which client, you know, traded it . . ."; "Well, MintBroker or a client. Like I said, we don't know for sure."; "But I have no access to that information. Mr. Lopez: Do you have an accountant, or does MintBroker have an accountant. The Witness: It had an accountant. Mr. Lopez: And who is he; can you identify him. The Witness: Antonio Collie." ].

4

After the Court's April 2022 order granting summary judgment, Gentile again attempted to obtain these documents. (Ex. B, Gentile Aff. ¶ 9). As MintBroker's Chief Compliance Officer, Edward Cooper, has affirmed, after MintBroker was placed in provisional liquidation:

> On December 27, 2019, I instructed Stephen Darville, MintBroker's IT professional to maintain a copy of records of MintBroker and make a copy of its records for five years and deliver a copy to its attorneys, Kensington Law and Davis & Co. in Nassua, Bahamas. Mr. Darville reported to me that this was accomplished on December 31, 2019.
>
> In April 2022, Mr. Guy Gentile contacted me asking if I had knowledge as to where he may be able to get copies of the firms trading records. I told him the attorneys or to ask Stephen Darville if he still had the records.

(Ex. A, Cooper Aff. ¶¶ 3–4).

Darville has confirmed this account, adding:

> On April 20, 2022, Mr. Guy Gentile asked me if I still had access to MintBroker's trading records and he then asked if I can send a copy to forensic auditors. On April 27, 2022 I was able to provide remote access to the MintBroker trade records to the forensic accountants Mr. Beresford and Mr. Christian. Additionally, I provided them two files with records for all MintBroker's and its customer trades for the symbols AWX and GBR for the dates range of June 29, 2018 through August 3, 2018 . . . I have attached the records described herein as **Exhibit A** (AWX) and **Exhibit B** (GBR) to this affidavit.

(Ex. D, Darville Aff. ¶ 6). Darville has affirmed that these exhibits "are the type of records I have been maintaining on beha[lf] of MintBroker and such records were relied upon by MintBroker in the ordinary course of business." (*Id.* ¶¶ 7–8).

### *Evidence Recently Obtained By Gentile*

The evidence obtained by Gentile is relevant to the inquest for damages and each party should be permitted to conduct limited discovery in anticipation of the damages hearing. Specifically, newly obtained evidence Gentile intends to introduce at the hearing includes:

- Approximately, 1,700 pages of authenticated MintBroker trading records related to AWX and GBR, showing 700 MintBroker clients trading in AWX and 921 in GBR which include Account Numbers, Dates, Buy or Sell, Symbols, Shares, Prices, Times, and

Exchange (without client identifying information) are being produced today to Plaintiffs. These documents establish which trades were proprietary (and thus which shares MintBroker beneficially owned) and which trades were client trades (and thus were not beneficially owned by MintBroker) (Darville Aff.);

- Affidavits of former MintBroker employees Stephen Darville, Edward Cooper, Antonio Collie, Michael Miller, and Gentile (Exs. A, B, C, D, E, F);

- Affidavit of expert Joseph Ely (Ex. E);

- Affidavit, forensic accounting report, analysis data, and analysis spreadsheets of CPA Robert Christian (Ex. G); and

### *Damages Calculations of Short Swing Profits*

Plaintiffs correctly identify in their memoranda of law that "the Second Circuit has long applied the rule of 'lowest price in, highest price out,' with the goal of ensuring recovery of "all possible profits." *See* Pl. Mem, Dkt. 90, pg. 8. But as the cases cited by Plaintiffs also make clear, 16(b) reaches only beneficial owners, as defined under Rule 13d-3, which would result in exclusion of client trades of AWX and GBR placed by MintBroker. *See, e.g., Chechele v. Standard General L.P.*, 2021 WL 2853438, at *5–6 ("beneficial ownership" inquiry "focuses on any relationship that, *as a factual matter*, confers on a person a significant ability to affect how voting power or investment power will be exercised").

Because evidence related to percentage of client trades was previously unavailable to the parties, including Gentile, Gentile respectfully requests:

(1) That the documents and evidence attached to this letter motion (including the trade records being sent to Plaintiffs today) be entered into the record for the purpose of calculating damages at the damages inquest hearing,
(2) that the parties be permitted limited discovery on damages for 45 days,
(3) a new briefing schedule set,
(4) and a hearing permitting a full trial on the issue of damages be set.

Respectfully Submitted,

cc: all counsel of record (via ECF)