```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2
                         CASE NO. 21-CV-21079-BB
 3
      SECURITIES AND EXCHANGE
 4    COMMISSION,

 5                                      Miami, Florida
                      Plaintiff(s),
 6                                      August 1, 2022
                vs.
 7
      MINTBROKER INTERNATIONAL,
 8    LTD., et al.,

 9
                      Defendant(s).      Pages 1 - 54
10    ------------------------------------------------------------

11                         MOTION HEARING
                TRANSCRIBED FROM DIGITAL AUDIO RECORDING
12           BEFORE THE HONORABLE ALICIA M. OTAZO-REYES
                   UNITED STATES MAGISTRATE JUDGE
13


14
      APPEARANCES:
15
      FOR THE PLAINTIFF(S):  ALICE SUM, ESQ.
16                           TERESA VERGES, ESQ.
                             SECURITIES AND EXCHANGE COMMISSION
17                           801 Brickell Avenue
                             Miami, FL 33131
18                           305-982-6300
                             sumal@sec.gov
19                           vergest@sec.gov

20

21

22

23

24

25
```

```
 1    APPEARANCES (CONT'D)

 2


 3
      FOR THE DEFENDANT(S):   ADAM C. FORD, ESQ.
 4    Guy Gentile                MATTHEW A. FORD, ESQ.
                                 STEPHEN R. HALPIN, III, ESQ.
 5                               FORD O'BRIEN LANDY, LLP
                                 275 Madison Avenue
 6                               New York, NY 10016
                                 212-858-0040
 7                               aford@fordobrien.com
                                 mford@fordobrien.com
 8                               shalpin@fordobrien.com

 9


10


11    TRANSCRIBED BY:          Joanne Mancari, RPR, CRR, CSR
                               Court Reporter
12                             jemancari@gmail.com

13


14


15


16


17


18


19


20


21


22


23


24


25
```

1    Thereupon,

2    the following proceedings were held via Zoom videoconference:

3            THE DEPUTY CLERK:  Securities and Exchange Commission

4    v. MintBroker International, Ltd., *et al.*, case No. 21 21079,

5    civil, Bloom.

6            Counsel, please state your appearances for the record.

7            MS. SUM:  Good morning, your Honor.  Alice Sum on

8    behalf of the Securities and Exchange Commission.

9            MS. VERGES:  Good morning, Judge.  Teresa Verges on

10   behalf of the Securities and Exchange Commission.

11           MR. A. FORD:  Good morning, your Honor.  It is Adam

12   Ford on behalf of defendant Guy Gentile, and with me are my

13   colleagues Stephen Halpin and Matthew Ford.

14           THE COURT:  All right.  Who is it that will be

15   speaking for defendant?

16           MR. A. FORD:  I'm sorry, Judge.  For defendant, Adam

17   Ford, myself, will be speaking.

18           THE COURT:  All right.  So we are here -- let me see

19   before I start that.

20           Ms. Bolado, you sought permission to observe.  You

21   have observed before.  You are familiar with the court rules.

22   No recording, no transmitting of the Zoom proceedings.

23           Would you please acknowledge that?

24           MS. BOLADO:  Yes, I understand.

25           THE COURT:  Thank you very much.

```
 1              MS. SUM:  Thank you, Judge.

 2              THE COURT:  Ms. Bolado is a reporter for Law360.

 3              Am I correct, Ms. Bolado?

 4              MS. BOLADO:  Yes.  That's correct.

 5              THE COURT:  All right.  OK.  Thank you.

 6              All right.  So we are here on the defendants' motion

 7    for sanctions pursuant to Rule 37, which is a discovery

 8    sanctions rule, and Rule 41, which is the dismissal rule.

 9              Let me hear briefly from the defendants' counsel your

10    grounds and then I will hear from the SEC counsel.

11              MR. A. FORD:  Thank you, your Honor.  Good morning.

12              Let me start off by acknowledging that the sanctions

13    that we're seeking here, which is dismissal of this case, we

14    understand how serious and severe those sanctions are and we

15    don't make such requests lightly or flippantly.  It is very

16    rare, and I can't remember another time that I have done it.  I

17    can't remember another time in my career where I have witnessed

18    what I have in this case.  Let me be clear about what has

19    occurred here.

20              On May 9th the SEC reached out to us.  We had been

21    asking for our discovery, our documents, for at least several

22    weeks.  They were behind at that time.  The SEC only then for

23    the first time gets on the phone with us and tells us --

24              THE COURT:  I'm sorry.  I'm sorry.  I hate to

25    interrupt you.
```

```
1              MR. A. FORD:  Sure.

2              THE COURT:  Somehow your microphone doesn't seem to be

3    close enough to you and you are speaking very fast.  So to

4    protect the record, can you slow down and speak louder.  Thank

5    you.  My apologies for the interruption.

6              MR. A. FORD:  No problem, your Honor.

7              Let me, Judge, if I could just stop my video for one

8    second.  I am going to try to move to just arrange something.

9    It will take three seconds and I will be right back on.

10   Hopefully that will help.

11             THE COURT:  Do that.

12             (Pause)

13             MR. A. FORD:  Judge, I just have to fix my camera

14   right now to try and see if that works.

15             Judge, are you able to hear me any better --

16             THE COURT:  Much better.

17             MR. A. FORD:  -- from this position in the room?

18             THE COURT:  Definitely.  Much better, Mr. Ford.  Thank

19   you very much, sir.

20             MR. A. FORD:  Absolutely.

21             THE COURT:  Just start again, if you like.

22             MR. A. FORD:  I apologize, Judge.

23             THE COURT:  Just go ahead and start over.

24             MR. A. FORD:  OK.  I will try not to repeat too much.

25             I think the point I was making was the severity of the
```

1    misconduct that I think the SEC has engaged in in this case.

2    Let me just describe what we now know.

3         At some point in time -- we think, I guess, this

4    spring -- the SEC comes into possession, OK, of I guess 11,000

5    emails from a party in this case.  Then a party defaults it,

6    for reasons we can go into, I guess, but a party, which was a

7    corporation, and it had two, frankly, disgruntled employees.  I

8    will call them employees.  They appear to have, absolutely

9    wrongfully, downloaded and maintained corporate records.  One

10   individual has 11,000.  The other individual has 33,000, for a

11   total of 44,000 documents.

12        Now, there is no doubt that MintBroker, the party to

13   this action, has, like every other company in the world, an

14   employee handbook and corporate guidelines that are clear as

15   day that when you leave employment, all corporate records must

16   be returned to the company or destroyed.

17        Now, this is obviously not a novel concept.  In fact,

18   I don't think there is a corporation on earth that does not

19   have the same exact policy, and there is not an employee on

20   earth that doesn't know that when you leave a job, you must

21   destroy or return all corporate documents.  We all know this.

22   The SEC knows this.

23        Now, notwithstanding the SEC knowing that these two

24   individuals were in possession of stolen records, they

25   apparently asked these individuals to turn them over

1    voluntarily.

2            Now, again, the SEC knows that these are party

3    records.  They are MintBroker records.  We now know that

4    because they just submitted an affidavit on Friday night from

5    the joint liquidator acknowledging, hey, these are our records,

6    we'd like a copy of them.

7            The SEC, they don't then immediately tell us that they

8    have gotten these stolen documents.  No.  They start to review

9    them.

10           I guess the SEC is now denying that they have reviewed

11   some of these records, but on May 9th, and I have three

12   witnesses -- my two colleagues here today and myself -- who

13   would all state under oath, in no uncertain terms, that the SEC

14   acknowledged reviewing some of these.  In fact, on May 10th,

15   the next day, I wrote an email and I said, You guys acknowledge

16   that you started reviewing them, and they never said we didn't

17   say that.

18           They review these documents and then they use these

19   documents to conduct further discovery, because it is after

20   they review these documents that they send our client a list of

21   48 document demands and additional nonparty subpoenas.

22           So we know that the SEC used the stolen documents that

23   they obtained outside all discovery protocols and used them in

24   this litigation.

25           Now, Judge, I don't want to get into the merits of

1    this case, but I think it is really important for your Honor to

2    realize that this case, as your Honor may know from reading

3    lots of court filings and newspaper articles, Mr. Gentile and

4    the SEC have been in litigation for over ten years, a full

5    decade.  We now know from documents produced by FINRA and the

6    SEC in this case that this particular investigation has been

7    going on for eight years.

8         So the SEC, notwithstanding eight years, they are

9    still trying to get documents.  They don't have the documents.

10   That is sort of the main point of this.  They don't have any

11   documents to prove their case.  Now they are engaging in really

12   bad faith conduct to try and find anything.

13        Now let me make a point about the 44,000 stolen

14   documents that the SEC has used in this case and it wants to

15   produce.  We don't know what's in them.  The SEC knows what is

16   in some of them because they have reviewed some of them.  We

17   don't know anything.  But we can imagine, because these

18   documents were just downloaded wholesale from these two

19   individuals' computers.  OK.

20        So the documents that the SEC has obtained are not

21   restricted as to date; they are not restricted as to subject

22   matter.  OK.  They are not documents that are just relevant to

23   this litigation.  They are just all documents in these

24   individuals' possession.  Most importantly, we presume that

25   there are privileged documents in there.  We suspect that there

1   are privileged documents in there involving communications

2   between Mr. Gentile and myself and this law firm.  In fact, the

3   SEC has acknowledged this because they told us that their idea

4   was to create a taint team within the SEC to review for

5   privilege.  But, your Honor, that is clearly insufficient.

6          So what is the court to do in a situation like this,

7   where a party goes outside of (inaudible).  OK.  Before making

8   that decision I guess your Honor should consider how the SEC

9   responded, right, to our allegations.

10         The SEC comes in -- and putting aside the procedural

11  arguments, which I don't think are worth discussing orally

12  unless your Honor has questions about it -- they basically say,

13  look, judge, this is OK because we do this all the time.  That

14  was really their argument.  Now, we know that is not a very

15  good legal argument.  Presumably Ted Bundy could have used it

16  if that was the case.

17         You can't just say we commit wrongdoing all the time

18  and therefore it is OK.  But that is what the SEC is saying.

19  They are saying we go and get these documents all the time.

20  But that doesn't address head on what we are talking about,

21  which is you have grabbed stolen documents from a party and

22  you're trying to use them.

23         Now, in fairness, they also put in these affidavits

24  from the two employees, Frantz and Dorsett, and they purport to

25  claim that -- I think they said they didn't know that there was

1    any sort of policy or they were never asked to return the

2    documents, but that is, besides defying common sense and what

3    we all know, directly refuted by the Cooper affidavit.

4         Mr. Cooper, the former compliance officer, says, in no

5    uncertain terms, these gentlemen received the employee

6    handbook, they knew that you can't keep corporate documents

7    after you're terminated, they know they had to be returned,

8    they know this is wrongful.

9         Even more stunning, quite coincidentally, without,

10   frankly, my remembering, when we went and did a search, when

11   Guy went and did a search for documents, we actually found an

12   email from Dorsett, I think from 2015, where he actually

13   acknowledged that you cannot just turn over documents to the

14   SEC upon request because it is a violation of Bahamian law,

15   which brings me to the Miller affidavit which we submitted,

16   which the SEC did not refute at all.

17        What that affidavit said, what Miller said, we went

18   and we found Bahamian counsel, because Bahamian law is at

19   issue, and he explained in his affidavit that these men's

20   conduct violates, or he maybe said may violate, the data, the

21   Bahamian Data Protection Act and the Bahamian Computer Misuse

22   Act, which are similar to laws that are in the United States,

23   which basically says that if you steal company records and

24   disclose them, right, and that is a violation of law in the

25   Bahamas -- with their Secrecy Act it is actually a little bit

1   stronger -- you can't turn over any financial information or

2   any customer information without a court order or it is a

3   violation of basically the Data Privacy Act.

4          Again, I don't know what is in these records, but

5   presumably there is client information in there.  In fact, I

6   think client information would be the only types of documents

7   that could possibly be relevant here.

8          The SEC does not acknowledge the Miller affidavit.

9   They don't dispute that this conduct was in violation of

10  Bahamian law.  They don't at all.  What they do do, in an act

11  that I just can't understand to this day, is they find a lawyer

12  in New York, Warren Gluck, who submits an affidavit and he

13  says, I've been hired by the joint liquidators -- we don't know

14  when -- and I think it is OK if these men turn over the stolen

15  documents.

16         Now, I don't know Mr. Gluck.  He has not appeared in

17  this case.  He hasn't appeared in the Bahamian case.  He

18  certainly did not respond or put in another affidavit when we

19  noted in our reply that the concept that this lawyer today

20  could bless a prior theft of MintBroker documents when the

21  court in the Bahamas has ordered the liquidator to take control

22  of all documents and not turn them over without court to me was

23  stunning.  Absolutely stunning.

24         The last thing that the SEC did in response to all of

25  this was on Friday they submit an affidavit from the joint

1   liquidators in the Bahamas who say, among other things, we're

2   the joint liquidators, we have control of the company,

3   Mr. Gentile has no control over the company, and we've asked

4   the SEC to turn over the stolen documents to us on a voluntary

5   basis.

6        Again, this affidavit is troubling because there are

7   only two things that could be going on.

8        One, if these documents are in fact part of discovery

9   in this case, which the SEC alleges that they are, they are

10  protected by the confidentiality order between us and the SEC

11  which this court has ordered, and yet the SEC appears to be

12  suggesting that it can turn these documents over voluntarily to

13  someone who has requested them.

14       Now, I don't think you can do that.  If that is the

15  case, if we are allowed to just start turning over documents

16  despite a confidentiality order, I guess we will all do it, but

17  that would sort of break down the system, so I prefer that we

18  don't.

19       The other alternative is that the SEC doesn't think

20  these documents are bound by the protective order and that they

21  got them as part of their investigation or some other

22  investigation.  But if that is the case, the SEC seems to be

23  suggesting that they are just going to turn over investigatory

24  files to another party, another entity that requests it, again,

25  going against everything that we know about how the SEC

1    conducts its investigations.

2           So the SEC doesn't really come before this court with

3    any good response for its misconduct here.

4           We do think that because the SEC has used these

5    documents in this case that at this point Mr. Gentile is so

6    prejudiced that the only adequate remedy is dismissal of the

7    case.  We directed your Honor to a couple of Eleventh Circuit

8    cases which demonstrate that you obviously have the authority

9    to do that to control your docket.  We pointed to a Ninth

10   Circuit or California case where the court, in a case similar

11   to this, found that once a party so breaches their discovery

12   obligations and uses stolen documents, nothing the court can do

13   can fix it.

14          So we think this is a serious issue.  We think

15   Mr. Gentile's rights have been violated.  We think that,

16   frankly, this court should be offended by what happened and

17   should act to not just sanction the SEC for its conduct here

18   but really to deter others.  There is a reason that there are

19   the Federal Rules of Civil Procedure.  We are certainly bound

20   by them and we'd expect the SEC to be as well.

21          I will just note one final thing.

22          Your Honor, I had kicked around how I was going to

23   start today and at one point I thought I might lead by saying

24   that I have an announcement, that over the weekend a former

25   employee from the SEC, someone in the technology department,

1    reached out to our law firm and he disclosed that he had 33,000

2    SEC emails, most of which involved Mr. Gentile, many of which

3    include Ms. Sum, and that he turned these documents over to us

4    on a voluntary basis and that we're prepared to turn these

5    documents over to the SEC and we'd like to do that right now.

6             I imagine that if I said that not only would there be

7    an objection but the SEC, and maybe this court, would come

8    after my law license, and yet that is exactly the situation

9    that Mr. Gentile found himself in on May 9th.

10            We understand that the request we are seeking is

11   serious and severe, but this misconduct cannot simply be

12   condoned by this court.  So unless the court has any further

13   questions, we will rest on the papers and my comments today.

14            THE COURT:  I do have a couple of questions.  You just

15   said a date, May 9th.  Is May 9th the date when your client was

16   informed of the existence of these documents?  What is the

17   significance of May 9th?

18            MR. A. FORD:  I'm sorry.  Yes, your Honor.  If I have

19   my dates right, that was the date that the SEC called and

20   disclosed to us that they had received these documents.  Then

21   on May 9th I was sent an email -- I'm sorry.  May 9th was the

22   telephone call where the SEC first disclosed to us this issue.

23   On May 10th we sent an email basically memorializing the

24   conversation as we understood it, inviting the SEC to note if

25   there was anything that we had misheard or that was different.

1   The SEC did respond with some corrections.  The totality of

2   those discussions were attached as an exhibit to our papers.

3          THE COURT:  All right.

4          MR. A. FORD:  It is Exhibit H.

5          THE COURT:  OK.  All right.  Then you said you are

6   traveling under Rule 37.  Rule 37, the title of that rule is

7   Failure to Make Disclosures or to Cooperate in Discovery:

8   Sanctions.

9          Generally when people come to me with Rule 37

10  sanctions it is for failure to produce, to show up for

11  depositions, and so on.

12         Can you tell me how this factual scenario that you

13  have described fits into Rule 37.

14         MR. A. FORD:  Your Honor is absolutely right about

15  Rule 37 and those generally being the situations that apply,

16  but we really direct your Honor, in addition to Rule 37, to

17  Rule 41, which deals with --

18         THE COURT:  Wait, wait.  In addition to Rule 37.  You

19  still haven't told me how Rule 37 fits.

20         MR. A. FORD:  Well, Rule 37 is for violation of

21  discovery obligation.

22         THE COURT:  Right.

23         MR. A. FORD:  So what we submit is that the violation

24  was the failure by the SEC to obtain this discovery through the

25  proper channels, right.  They didn't issue any Rule 45

1    subpoena.  They never went to -- again, these are MintBroker's

2    documents.  MintBroker is a party to this action.  It's

3    defaulted.  The joint liquidators have intentionally defaulted

4    the company, for whatever reason, but it is still a party.

5         They did not seek these documents from a party, they

6    did not seek them through a subpoena, and instead they received

7    them through the means that I discussed.  So that would be how

8    it comes in under 37.

9         Again, it is sort of combined with the court's

10   inherent authority under Rule 41.

11        THE COURT:  As you are speaking I am actually perusing

12   Rule 37 and I am looking to the various sections of it.  I

13   don't see anything, unless you can tell me something or tell me

14   about a case, where this factual scenario as you describe it,

15   and of course, I'm sure the SEC will have their version, but

16   taking your description, they received materials from former

17   employees of the defaulted corporate defendant, and your

18   client, Mr. Gentile, who is a separate entity, is seeking

19   discovery sanctions for the SEC's acquiescence in receiving

20   these documents.  I mean, you are telling me that they

21   disclosed it to you.  Maybe your objection is they took too

22   long to disclose it.  I'm still trying to put my finger on Rule

23   37.

24        Now you're saying in addition the court's inherent

25   powers.  If you are going that route, then we can just skip the

1    discussion on Rule 37.  But if you are proceeding under Rule

2    37, you need to point me to some section of that rule or some

3    case that applies the rule to this factual scenario to really

4    support your argument.

5           MR. A. FORD:  So thank you, your Honor.  Let me see if

6    I can do a better job this time.

7           So our understanding is that both Rule 37 and Rule 41

8    basically have sort of the same standards, the same elements.

9           We are not complaining, specifically with respect to

10   Rule 37, which is your Honor's question, we are not complaining

11   that the SEC took too long to tell us about receiving these

12   documents, right.  What we're complaining about is that --

13   well, I guess it is a little bit that they took too long, but

14   it is really what they did in between, which is that they went

15   and used them, and they knowingly used stolen documents from a

16   party.  That is the heart of our complaint.

17          Again, we understand that the parties can engage in

18   informal discovery, right, but there is, of course, a point

19   where you have to turn that over to the other side.  Of course,

20   the SEC has already said, well, on May 9th we called and we

21   disclosed it.  OK.  Now I actually don't know when they first

22   received these documents also, so I should say we might be --

23   we actually might be lodging an argument regarding how long it

24   took to disclose, because it is not clear if the SEC had these

25   documents before their initial disclosures or after.  So I

1    actually should caveat to the court that because I don't know

2    when they first received it, I actually don't want to say that

3    I am not complaining about how long it took.

4          Even assuming it was shortly in time, the real concern

5    is that they used stolen documents to formulate their discovery

6    strategy, and that, I think, comes within -- we think that

7    comes within the confines, certainly the spirit, if not the

8    exact letter, of Rule 37, and certainly to the extent not 37,

9    then Rule 41 with the court's inherent authority.

10          Obviously the court doesn't want the parties using

11   stolen materials in discovery.  They want the parties to be

12   following the Federal Rules of Civil Procedure with respect to

13   how they gather documents.

14          THE COURT:  All right.  OK.  So let's put Rule 37 with

15   your explanations, and I am sure the SEC will respond to those.

16          Now you are also hanging your hat on Rule 41.  Rule 41

17   is Dismissal of Actions; voluntary dismissal.  I don't think

18   that applies.  Honestly, it sounds to me like you are going

19   under inherent authority, and I just don't see these rule

20   citations really just sort of like not fitting, and I don't

21   mean to be nitpicky, but we need to know where we're going --

22          MR. A. FORD:  Judge --

23          THE COURT:  -- before we proceed.

24          Now let me ask you this.  You have some allusion to

25   initial disclosures.  Are you saying it is a violation, if in

1    fact -- let's say a hypothetical, that you were kind of

2    alluding to, if they had these materials before their initial

3    disclosures, are you saying that their initial disclosures were

4    insufficient and so you want dismissal on that basis?

5            MR. A. FORD:  Well, yes, your Honor.  Absolutely.  So

6    the initial disclosures by the SEC, I believe they were filed

7    on December 29, 2021.  OK.  They absolutely do not list in

8    those disclosures as having received any documents from Dorsett

9    or Frantz, the two employees.  So for that reason we -- we

10   assume that those are truthful, right.  So I assume that they

11   received these documents at some point after December 29, 2021.

12           If it turns out that they did -- the Dorsett affidavit

13   is very unclear.  He seems to suggest that he reached out to

14   the government much earlier, which is why we're not certain.

15   If it turns out that the SEC did have these documents before

16   the initial disclosures and did not disclose them, that would

17   be more of an issue, that would sort of compound the issues

18   that we have highlighted here.

19           Judge, if I could just very quickly, I was reminded

20   that we cited to an Eleventh Circuit case in, I believe it was

21   our reply brief, which was Aztec Steel, 691 F.2d 480 (11th

22   Cir.), where the Eleventh Circuit ruled:  When a party

23   demonstrates a flagrant disregard for the court and the

24   discovery process, dismissal is not an abuse of discretion.

25           So while we were talking about Rule 37 and the idea of

1    is there sort of an exact match in terms of what was wrong,

2    what the Eleventh Circuit clearly says is that if there is a

3    flagrant disregard for the discovery process, then dismissal is

4    not an abuse of discretion.

5              That is exactly what we have here, which is an abuse

6    of discovery process.  It is doing an end run around the

7    Federal Rules of Civil Procedure and getting stolen documents

8    from former employees of a party.

9              THE COURT:  I see.  Which case is that that you're

10   relying on?

11             MR. A. FORD:  That was Aztec Steel Company v. Florida

12   Steel Corporation, 691 F.2d 480.  That is a 1982 Eleventh

13   Circuit case.

14             THE COURT:  I see it in your brief, at pages 11 and

15   12.

16             MR. A. FORD:  Yes.

17             THE COURT:  And you're saying -- I haven't looked at

18   the case -- that that case stands for the proposition that of

19   the various options that a court has to impose sanctions, and

20   it is sort of like a laundry list, you can find facts

21   established, striking of pleadings, dismissal of action, you're

22   saying that that case says if there is a flagrant violation of

23   discovery dismissal is appropriate.  Did I interpret that

24   correctly?

25             MR. A. FORD:  Yes, your Honor.  I could not have said

 1   that any better myself.

 2              THE COURT:  All right.  OK.  Thank you.

 3              Anything else that you want to add?  And of course, I

 4   will give you an opportunity to rebut.

 5              MR. A. FORD:  Unless the court has any other

 6   questions, I think we have addressed everything, as long as I

 7   do have a few minutes to just respond to anything that Ms. Sum

 8   may say.

 9              THE COURT:  All right.

10              Ms. Sum.

11              MS. SUM:  Thank you, your Honor.

12              May I inquire if you can hear me clearly?

13              THE COURT:  I certainly can.  Thank you.

14              MS. SUM:  Thank you, your Honor.

15              All right.  So let me start with stating a few rather

16   basic facts but based on counsel's arguments I think are

17   absolutely necessary for this court to consider in processing

18   this motion for sanctions.

19              First, the Securities and Exchange Commission is a

20   regulatory agency.  It regularly receives information and

21   documents from insiders, including current and former

22   employees, about acts, misconduct, and potential violations of

23   securities laws.  That is undisputed.

24              Second, the emails and the records that are the topic

25   of this motion for sanctions were not in possession of the SEC

1    prior to the initial disclosures in December of 2021.  These

2    emails became the topic -- first of all, the possibility of

3    emails in possession of two former employees came to light well

4    after the initial disclosures were sent over to counsel.

5          The rough time frame when we learned about the

6    specific number -- 11,000 emails from one former employee and

7    33,000 from the second former employee -- was approximately in

8    late March we started talking about how those emails might be

9    transmitted and those records might be transmitted to the SEC.

10         What happened was the first former employee

11   transmitted, via like a file share, approximately 11,000

12   records, and those, the best that someone as non-technically

13   savvy as myself can say is it goes into the ether in D.C. for

14   processing.  As I sit here and before the court today we have

15   not reviewed those 11,000 records from employee number one, and

16   we stated that during the May 9th meet-and-confer discussion

17   with Mr. Ford.

18         As to the other 33,000 from the second employee, those

19   have not even been transmitted to the SEC for even the

20   beginning of processing.

21         So to be absolutely clear, the attorneys at the SEC

22   certainly, and we are speaking about folks here on the Miami

23   team, none of us have access.  I have not reviewed them.  We

24   have not, even though we dispute the concept that we have

25   somehow misused these allegedly improperly taken documents, it

1    is simply not true, and I will go into detail as far as why

2    every factual statement made thus far has missed the mark,

3    unfortunately.

4           So the unlikely genesis for this dispute is when the

5    SEC said to Mr. Gentile's counsel, we want to enter into a

6    confidentiality and protective order to cover forthcoming

7    production that was responsive to their request for production.

8    We also noted in the email that we wanted to discuss the

9    potential handling of these emails and records that I have just

10   referenced, what we will call generically the 11,000 and the

11   33,000 documents, your Honor.

12          When we had the phone call, in addition to discussing

13   the confidentiality order, we disclosed that these emails

14   existed, as we were advised by these former employees, and that

15   one set had been processed in terms of uploading to Washington

16   but not yet reviewed and the other 33,000 had not been sent

17   yet.

18          We said we are not sure what is in these documents,

19   but in an abundance of caution what the SEC did was disclose

20   the existence of these emails and then try to formulate a

21   process that it could propose to Mr. Gentile's counsel as to

22   how to handle them.

23          We don't know definitively whether there are

24   privileged or not privileged documents, but we didn't want to

25   take the chance that there might be and cause following

1   problems.  That is why we wanted to discuss with counsel
2   perhaps there could be a filter team, a taint team, or
3   something like that.  We said if that isn't satisfactory, we
4   can consider going to the court and coming up with a
5   third-party type of review.
6        Where we ended that conversation was they were going
7   to process the information and we would hear back from them.
8        Instead of hearing back from them what we received was
9   a motion for sanctions, claiming an assortment of improper acts
10  by the SEC and lobbying really incendiary comments against
11  these former employees.
12       I think it is important when we go back in time to
13  look at what actually happened and where we are today, put
14  simply, this motion for sanctions is an overreaction to a
15  nonevent.  Counsel is asking this court to sanction the SEC for
16  not reviewing documents that it in part received and not
17  reviewing documents it has yet to receive.
18       OK.  We could not and did not use these emails to
19  formulate our requests for production.  As argued in our
20  response, your Honor, we noted that these are pretty darn
21  obvious requests for production when one looks at the
22  allegations in the complaint, when one looks at the affirmative
23  defenses, and when one looks at the subpoena that was
24  previously issued to Mr. Gentile, which, by the way, to which
25  he never produced documents.

1          So let's actually take that last fact because I think

2     it is important that sets the sequence of events in play.

3          There are liquidation proceedings that were commenced

4     in the Bahamas.  Joint, at the time, provisional liquidators

5     were appointed, and now these are official liquidators that

6     were formally and finally appointed by the Bahamian court in

7     January of '22.  Part of the problem was that the joint

8     liquidators didn't have the documents.  Mr. Gentile didn't

9     produce documents during the course of the investigative

10    subpoena.

11         What happened was the SEC, as it does with numerous

12    situations, receives tips, complaints, and referrals.  It is

13    what we generally call TCRs.  These two former employees

14    reached out to the SEC, TCRs, to advise of their concerns of

15    potential securities violations, violations of U.S. law, to

16    bring that to the SEC's attention.

17         This is not a situation where these folks have stolen

18    records.  We are a regulatory agency and we receive information

19    all the time.  The use of the phrase "all the time" is not an

20    exaggeration.  This is par for the course.  It is not something

21    that is unique.  It is not something that anyone here on this

22    call has never heard of.  That is just part and parcel to the

23    function of the agency.

24         So when we say the SEC routinely receives information

25    and documents outside of the Federal Rules of Civil Procedure,

1    that is because information is often sent.  For example, there

2    are many times when individuals, current employees, under

3    protection of the Dodd-Frank Act send in information to the

4    SEC.  In that regard we really must frame exactly who these two

5    former employees are, what they were doing when they reached

6    out to the SEC in 2017 and 2018.

7        Now, I will go more deeply into now as far as the

8    various arguments advanced by Mr. Gentile's counsel.

9        First, there is a conflation of the concept of, for

10   example, the request for production rule as well as Rule 45,

11   issuing of subpoenas.  Those rules govern the ability of a

12   party to compel compliance with either a request for production

13   of documents or to respond to a subpoena.

14       There is absolutely nothing in the Federal Rules of

15   Civil Procedure that prevents the SEC from receiving

16   information voluntarily.  I want to again note that what the

17   SEC did correctly was notify Mr. Gentile's counsel of these

18   records in a true attempt to meet and confer to try to find a

19   solution that did not require court intervention.  So at a very

20   beginning starting point, there is absolutely nothing that

21   triggers Rule 37 or Rule 41 dismissal.

22       As your Honor knows in dealing with many discovery

23   disputes, most typically and in the vast majority of cases, if

24   not 99 percent of cases, there is an underlying order that's

25   been violated, that that's what triggers a court to even begin

1    considering sanctions, let alone the ultimate sanction of an

2    involuntary dismissal of a case.  That is just simply not

3    present here.  We noted even in our response that the basic

4    requirement of the local Rule 7.1 of meet and confer didn't

5    even occur here.

6         Now, Mr. Gentile's counsel has transformed what was a

7    phone call regarding a confidentiality order and a discussion

8    of how to handle these emails and documents into, oh, well,

9    that was a meet and confer, etc., and that's it, that is all he

10   had to do.  But there was no discussion of sanctions, there was

11   certainly no discussion of an involuntary dismissal as the

12   ultimate remedy in this case.  So there are clearly procedural

13   defects.

14        Putting aside all of that, and I have gone on some

15   time, let me go back to one of the most important points that

16   we make in our response, which is Mr. Gentile lacks standing to

17   make these objections.  Ultimately, because of the appointment

18   of these joint liquidators in the Bahamas, the only persons who

19   have standing to take any position with respect to these

20   documents are the liquidators.

21        We have both an email from Mr. Gluck, who is counsel

22   to the liquidators, as well as an affidavit -- declaration,

23   excuse me, by Igal Wizman, that we filed on Friday, stating,

24   first, who the JOL is, actually acknowledging that they are in

25   fact the liquidators appointed by the Bahamian courts, what

1    their rights are, which are expansive and cover making

2    decisions for the company and marshaling the records for the

3    company, and, more importantly, noting that from the

4    liquidators' perspective Mr. Gentile has zero standing

5    whatsoever to assert these objections.

6          Now, if the court even gets past that one single fact,

7    even if, let's say, there was some discussion about having

8    standing, not having standing, these issues are before the

9    court.  What really should have happened, what the rules

10   require is that Mr. Gentile use the Rules of Civil Procedure to

11   file objections or a motion for protective order to address

12   exactly how these documents were to be processed.  But that

13   didn't occur here.

14         It is the equivalent of Monopoly -- didn't pass go,

15   didn't collect $200, went straight ahead and decided to go

16   forward with the motion for sanctions.  That simply is an

17   untenable response to what frankly was an attempt to be as

18   transparent as possible in notifying the other side of the

19   existence of these documents.

20         Now, I want to now speak to these former employees.

21   They have been lambasted and accused of stealing information

22   and documents from the company.  To be clear, these are

23   employees that had laptops on which they worked on SureTrader

24   matters, and it was fully known to Mr. Gentile that they were

25   working on SureTrader matters, and this information was

1   retained on their laptops after their separation.  Again,

2   SureTrader was fully cognizant of the retention of those

3   laptops and never instructed either of these individuals to

4   delete or destroy or otherwise get rid of these emails and

5   documents.  Even in one case, with respect to former employee

6   number two, he actually was charged over $1300 for that laptop

7   during his separation process from the company.

8          So this concept of stolen documents is just absolutely

9   meritless, and to paint these individuals and to call them

10  names is improper.  What they did was to advise the SEC of

11  their concerns that there were violations of U.S. securities

12  laws.  There is absolutely nothing wrong with them doing that.

13         Now, as far as using -- I briefly covered before the

14  fact that the real trigger apparently for the request for the

15  sanctions is the idea that the SEC improperly used this,

16  quote-unquote, stolen information to formulate its discovery,

17  and that is just simply not true.  I don't know what is in

18  those documents.  I haven't looked at those documents.

19         The fact that these requests may in fact go and ask

20  for information that Mr. Gentile doesn't want to turn over

21  because they may address these violations that we're accusing

22  him of, which is operating as a broker-dealer improperly, that

23  is on Mr. Gentile ultimately.  These are records that are

24  absolutely relevant to the case.  The JOLs have not asserted

25  any objection and, in fact, have given us notice that they'd

1    like copies of the records because in fact they don't have

2    these records, which is unfortunately not a surprise given the

3    history of the SEC's prior attempts to obtain information about

4    the company and its activities.

5           Notably, even when I suggested, well, if there is such

6    a significant concern about client information and privacy

7    issues, then let's redact the client name.  We'll redact any

8    identifying information and just leave their addresses.

9    Because what we're accusing the defendants of doing is

10   soliciting U.S. customers improperly in violation of U.S.

11   securities laws, and even that wasn't acceptable.

12          So nothing is acceptable because this is information

13   that Mr. Gentile doesn't want the SEC to have, never wanted the

14   SEC to have, etc.  This is a long history of avoiding

15   production of relevant information to the Commission in order

16   for it to prosecute its case.

17          So taken as a whole, and we're talking about the lack

18   of a basis for sanctions, we're dealing with factually that the

19   Commission hasn't looked at these documents could not even have

20   tried to formulate, as they've alleged, these requests for

21   production.  So that concept, what they haven't called it but

22   it swims in the moat of the concept of fruit of the poisonous

23   tree, it just doesn't exist here.  This did not occur.

24          So factually there is no basis for the motion, and

25   legally there is also no basis for the motion because there is

1   no underlying order that's been entered that the SEC has

2   violated, and in fact, the exact opposite has occurred --

3   transparency from the SEC.

4          We have some documents we haven't reviewed yet.  We

5   have some documents that may be forthcoming.  Work with us,

6   please, to try to figure out the best route to process this

7   information.

8          So the issues regarding Bahamian privacy law and the

9   employee code of ethics, those are, frankly, red herrings here

10  because at the end of the day these are former employees who

11  provided information to the SEC regarding potential securities

12  violations.  These have protections in the United States under

13  the Dodd-Frank Act.

14         This is a normal occurrence.  These are not stolen

15  documents.  These employees have done nothing illegal.  It,

16  frankly, isn't really before the court today to make a

17  determination whether there has been a violation of Bahamian

18  laws or privacy laws or any code of ethics or employee manual.

19         Again, Mr. Gentile is not the one to be making those

20  arguments.  He doesn't have control of the companies because

21  the Bahamian authorities and the Bahamian Supreme Court

22  determined that he should not be in charge.  The court and the

23  Securities Commission in the Bahamas determined that there were

24  rampant problems, and ultimately the company had to be

25  liquidated, and that is why there are even liquidators to begin

1    with right now.

2            So when we look at both the facts, the law, looking at

3    whether this court is here to make those determinations, if the

4    liquidators decide that there has been a violation or a breach

5    of the employee manual or a code of ethics, then that is for

6    the liquidators to take up.

7            If in fact there have been, which we adamantly deny,

8    any violations of privacy laws or data protection laws, then

9    that is up to the Bahamian authorities.  All that is before the

10   court is really we have 11,000 emails and documents from one

11   former employee, 33,000 from a second one, and how do we handle

12   them.  I think the most productive way for us to move forward

13   isn't for there to be sensational discussion of violations and

14   terrible actions by the SEC, but how do we move forward in

15   discovery, how do we process this information.

16           So with that, your Honor, I'm happy to answer any

17   questions or address any points that you may want me to

18   address.

19           THE COURT:  So as I -- I'm sorry?  I'm hearing some

20   feedback.

21           MS. SUM:  I will turn my --

22           THE COURT:  Yes.  OK.  Good.

23           So as I hear your argument, Ms. Sum, you seem to have

24   sort of done something along the lines of what I discussed with

25   Mr. Ford, look through Rule 37 sanctions, which it does address

1   what is the predicate for those sanctions.  Violation of an

2   order.  There hasn't been any order.

3        Then I think Mr. Ford said some Aztec case from the

4   Eleventh Circuit, flagrant violation of discovery merits

5   dismissal.  Again, I haven't read the Aztec order, but it would

6   seem to me that the thrust of that was of the panoply of

7   sanctions it is OK to take dismissal as the option because

8   flagrant violations of discovery fit the bill.

9        Again, I'm just here putting two and two together

10  because I haven't really read the order, but to me -- and as

11  you said, it is true, discovery is bread and butter for

12  magistrate judges in this district.  I do a lot of discovery.

13  When people come to me for sanctions, it's because there's been

14  a violation of a prior order.  Sometimes people get a second

15  chance, sometimes, to get things straight.

16       I don't see an order here that's been violated so I

17  wanted to hear from you.  I wanted you to confirm that that is

18  your argument.  Then you also have the factual argument where

19  you're saying there is nothing here because you haven't

20  reviewed the documents, which apparently is the predicate for

21  the motion.  But then sort of as a fallback they seem to be

22  arguing inherent authority, and that was a little bit

23  amorphous.  So if there is any points you want to make

24  regarding that before I turn it over to Mr. Ford, I'd like to

25  hear from you on that.

1          I think your other argument about saying this employee

2    stole this stuff is not really an argument for Mr. Gentile to

3    make, but to the extent that he is saying -- I think you said

4    something about poisonous tree or something.  Do you want to

5    clarify your arguments about Dodd-Frank and if there is

6    protections by Dodd-Frank under U.S. law that make disclosures

7    not a steal?  You want to round out the record in that sense.

8          MS. SUM:  Yes.  Thank you, your Honor.

9          What I will start with is I don't think anybody

10   disputes that courts have inherent authority to provide relief,

11   and we certainly don't dispute the general concept that with

12   respect to discovery the court has inherent authority.

13         What we do dispute is that there is no underlying

14   order and that this is a case where we have not even passed

15   step one because what the SEC did was disclose the existence of

16   documents and not review them and wait for a hopeful or

17   eventual resolution of whatever process will be used to

18   actually review for potential privilege.

19         So in this case inherent authority, that that is the

20   standard, it just doesn't even apply.  So we are not

21   necessarily disputing what a case may say or not say.  It is

22   that, yes, there is inherent authority, but nothing even

23   remotely triggers the court to even start thinking about was

24   there any kind of discovery violation.

25         I mean, so really what it starts with is, is there a

1    violation, and then, second, what is the relief for the

2    violation.

3            Typically the way the rules are set up is to file a

4    motion to compel, perhaps there is going to be an order

5    requiring X, and then ultimately if there was a violation of

6    that order, then that is what triggers further consideration of

7    relief, such as sanctions, whatever form they may take, the

8    laundry list that the court has available to it.  So here,

9    because the facts absolutely don't trigger it, we just simply

10   never get there.

11           As far as protections under Dodd-Frank, there is no

12   question that when employees see that there is conduct of

13   concern for potential violations of U.S. laws that they are

14   protected under Dodd-Frank to make these disclosures.

15           Now, what matters with respect to protections under

16   Dodd-Frank is that it talks about in terms of retaliation or

17   their ability to go ahead and provide this information.

18   Ultimately in that space it is possible that the information

19   may be protected, but I want to emphasize, this information

20   isn't being sent to a third party that is a private party.  We

21   are the government.  We are a regulatory agency charged with

22   the obligation of investigating and prosecuting securities

23   violations.

24           Put more simply, this isn't a situation where the Coke

25   formula is being sent to Pepsi.  This information -- and it

1    doesn't amount to that level, to be clear -- concerns potential

2    violations of the U.S. securities laws and SureTrader operating

3    illegally as a foreign broker-dealer.

4          Ultimately what we believe the court should do is look

5    into the issue of how these records should be processed.  We

6    also have a request from the joint liquidators that they want

7    copies of these records, and I failed to address that earlier,

8    this idea of the confidentiality order somehow prohibiting the

9    transmission of the information to the liquidators.

10         The liquidators are the company.  They have been

11   charged with that obligation by the Bahamian court.  These

12   documents should be transmitted to the liquidators for them to

13   do their job.  That is another slice of the piece of the puzzle

14   that we wish for the court to be aware of.  Although I know

15   formally it is not before the court on a motion for sanctions,

16   really I think what this court wants to do is to address the

17   motion but also to push the parties forward on a path to move

18   discovery in this case.

19         THE COURT:  All right.  Mr. Ford, I will give you a

20   brief (inaudible).

21         MR. A. FORD:  I'm sorry, your Honor.  You just broke

22   up.  You said I could say something in reply?

23         THE COURT:  Your turn, yes.

24         MR. A. FORD:  Thank you, Judge.  I'm sorry.  It just

25   crackled while you were speaking.

1          Judge, here is sort of the problem from my

2    perspective.  Ms. Sum just spent a lot of time arguing that she

3    did not review any of the documents.  I think she intended to

4    imply that neither she nor anyone else from the SEC has

5    reviewed any of the documents.

6          Now, I don't know -- here's what I can say about that,

7    right, because I trust that a lawyer is telling the truth,

8    right, but here is the problem.  If I were in person, Judge,

9    the way we are supposed to be doing this, I would ask if I

10   could approach, but I can't so I am just going to have to do it

11   remotely.  If I can share my screen, I could do that.  If not,

12   let me just try and describe what I am looking at.

13          THE COURT:  Mr. Ford.

14          MR. A. FORD:  Yes.

15          THE COURT:  Feel free to share your screen.

16          MR. A. FORD:  Wonderful.  Terrific.  Share content.

17          THE COURT:  I mean, remember, we have someone from the

18   press.  Unless it is something that is confidential.

19          MR. A. FORD:  That is OK.  Hopefully it is not all my

20   emails.  You know what -- Judge, I think it's going to work.

21   It is loading.  Maybe not.  You know what -- well, my colleague

22   is going to see -- let me just explain to your Honor what I

23   am -- perfect.  That is exactly what I want.  Great.  Thank

24   you.

25          Judge, what I have up on the screen is, this is the

1    email.  So what happened, if you remember, was on May 9th we

2    have a conversation.  During that conversation it was my

3    understanding, as well as that of Mr. Halpin and Mr. Ford, both

4    present here today, we took notes as things were being said,

5    and afterwards, the next day, on May 10th, we wrote an email to

6    the SEC saying, hey, this is what we think was said.  If you

7    look at the very last line on this email, it says:  Please let

8    me know if you believe any of the above is inaccurate or

9    diverges from what you believe was said during our call

10   yesterday.  So clearly what I'm trying to do is accurately

11   reflect, in a neutral way, what was said.  That's what I was

12   trying to do.

13         Now the next day -- that was on May 10th.  So the call

14   is on the 9th.  I email what I think was said on the 10th.

15   Then the SEC responds, as I invited them to do.  So if you look

16   at this email, you will see that it is my email and then

17   underlined is where the SEC thought that something I said was,

18   at least in part, inaccurate or could be clarified.  OK.

19         You will see in the first paragraph, the second

20   paragraph, the third paragraph, the fourth paragraph, they all

21   thought that something that I had said was not entirely

22   accurate.  OK.  So, fine.  The parties could misremember what

23   was said.  That's fine.  Everyone is trying to act in good

24   faith here I assume, right.

25         Now, if you look at the final sort of multi-line

1    paragraph, and we say:  You agreed that this issue needed to be

2    put in front of the judge -- so that was sort of meet and

3    confer; we are not going to figure this out ourselves -- and

4    agreed that all documents obtained by these two men would be

5    segregated in a separate folder, not produced to us, and not

6    read by anyone at the SEC until we receive guidance from the

7    judge.

8         Now, this is the important line, Judge:  You

9    acknowledged that you or your colleagues have already reviewed

10   the non-email Dorsett documents that he provided you and were

11   prepared to turn them over.

12        What I am saying there, and what my colleagues recall,

13   is that this is what was said, that they told us that they

14   reviewed the non-email Dorsett documents and they were going to

15   immediately turn them over because they said, hey, those we

16   have reviewed.  The documents we haven't reviewed we're going

17   to hold onto, but since we have already reviewed them, we are

18   going to give them to you.

19        Then I say, we asked that they not be turned over

20   because we did not believe they were appropriately obtained.

21   You agreed not to turn them over at this time and until the

22   judge provided guidance.

23        So, your Honor, I just heard Ms. Sum speak for about a

24   half hour where she says 50 times I never looked at the

25   documents, they couldn't have possibly been involved in

1    discovery.  I don't know what to say about that other than back

2    in May I said to Ms. Sum, right -- she is the one emailing

3    me -- I said to her:  I heard you say that you reviewed the

4    non-Dorsett documents.  Please tell me if that's wrong, if I

5    misheard you.  She knew she had to tell me that she misheard me

6    because she did it on the four prior occasions.

7         So, yes, I filed the motion that I did.

8         Your Honor, respectfully, if Ms. Sum had said we

9    haven't reviewed any documents, I don't know if I would have

10   filed this motion.  I may have tried to work it out.  It is

11   what I heard.  I won't say what she said, but I will tell you

12   what I heard, I will tell you what two of my colleagues heard,

13   I can tell you that we told her we heard this, and she never

14   corrected us.  So I filed this motion.

15        I think the judge now is well within your Honor's

16   right to decide that maybe the SEC did review some of these

17   documents.  Maybe they did.  So, again, I don't know what to do

18   with that because I reacted to something that the SEC said.

19        Now let me talk about the two employees for a minute.

20        The SEC seems to be suggesting -- they clarified their

21   position of, we do this all the time, and they say, look,

22   whistleblowers can come in and take company documents, if they

23   think this is a violation of law, they can take company

24   documents, and they can come to us; we're a regulatory agency.

25   I don't disagree with that nor do I necessarily want to argue

1    that that's an improper practice.  I think that's fair, but

2    that is absolutely not what happened here, and here's how I

3    know.

4            First off, they are claiming that Mr. Frantz and

5    Dorsett are to be protected by Dodd-Frank.  One, let's put to

6    the side whether non-U.S. citizens who take documents from

7    non-U.S. entities are entitled to Dodd-Frank.  Put it to the

8    side.  We have gotten discovery from the SEC and they have not

9    provided any whistleblower reports filed by Mr. Dorsett or

10   Mr. Frantz.

11           Now, if in fact these men are acting as whistleblowers

12   which would grant them the protection, then I expect to see

13   these whistleblower reports in the next discovery production.

14   I'm surprised I haven't already seen them.  But we will grant

15   the SEC the opportunity to promptly produce the whistleblower

16   reports that these men are acting under.  Because if in fact

17   they are operating under Dodd-Frank, which, again, I didn't

18   know, I didn't know that they had filed a formal whistleblower

19   report and that they were protected under this law because the

20   SEC has told me, but I am going to wait for that.  But, your

21   Honor, if in fact it turns out that these men did not file

22   whistleblower reports and the SEC is arguing that they are SEC

23   whistleblowers when in fact they never came in under that, we

24   will address that at that time.

25           Now, here's the other point with these two men, that

1   they're whistleblowers.  Your Honor, Mr. Dorsett was fired in

2   2017.  Mr. Frantz was fired in 2018.  That was five and four

3   years ago.  OK.  Ms. Sum just told your Honor -- again, I

4   believe her -- that they had not received these documents

5   before December 29, 2021 when they made the initial

6   disclosures.  So the initial disclosures were accurate when

7   filed.

8          It was after that, it was this year that these men

9   come to the SEC voluntarily to act as whistleblowers.  Now I

10  just want to go through the time line of what this would mean.

11         This would mean that these men, who were fired five

12  years ago and four years ago, respectfully, who worked for a

13  company that has been shut down since 2019, for the last three

14  years, decided to come to the SEC voluntarily, and without any

15  outreach by the SEC, I guess as a whistleblower, and turn over

16  documents because they were concerned that Mr. Gentile was

17  violating the securities laws five years ago.

18         Your Honor, I respectfully submit that cannot possibly

19  have been what happened because I have never heard of a

20  whistleblower coming forward five years later, and the reason

21  why is because under the SEC Whistleblower Act (inaudible),

22  you need to provide timely information.

23         The SEC doesn't -- because five years ago is the

24  statute of limitations.  So if you are an employee and you come

25  to the SEC and you say, I'm concerned of a securities law

1    violation but you can't do anything about it because it was

2    five years ago and it was beyond the statute of limitations,

3    the SEC can't do anything.  So it has to be timely.

4         So there is zero chance that the story that

5    Mr. Dorsett and Mr. Frantz are telling or that the SEC -- we

6    don't know what happened.  Your Honor, I will tell you, as soon

7    as we got these affidavits we believed them to be perjurious.

8    Again, I don't say that lightly.  I don't come to court

9    accusing people of perjury very often.  We saw these, we knew

10   it.

11        So we went to the SEC and we said, Ms. Sum, can we

12   have the contact information for these two men.  Nothing.

13   Another email.  Could we have the contact -- this went on for

14   11 days.  Eventually we got their phone numbers, one phone

15   number for one and the lawyer email for the other.

16        We reached out to these men.  The one who was

17   represented, we reached out to him.  No response.  We'll not

18   talk to you.  We asked the SEC, if given the fact that your

19   entire argument hinges on these affidavits of these two men,

20   these two employees, these critical whistleblowers that you

21   rely on, will you please make them available so we can examine

22   them about their affidavits, so we can test the veracity.  The

23   SEC refused.  They would not make them available.  The men

24   refused.  They would not voluntarily appear.  So I'm left to

25   try and make sense of it without the ability to test the

1    veracity of it.  But based on just what I know this story about

2    how these men didn't do anything wrong, that they're

3    whistleblowers, it simply can't be true.

4            OK.  Let me just try and maybe get us to a resolution.

5            I do think your Honor under 41 has the inherent

6    authority for the ultimate sanction here, and we still believe

7    that that's appropriate.  If your Honor, however, is not

8    convinced of that, and to Ms. Sum's point and even your Honor's

9    point of, OK, well, what else do we do, if I may respond to

10   that.

11           The documents, I think, and this would be my request,

12   and we can submit a short one-page letter if your Honor would

13   like, but our request is that if your Honor does not dismiss

14   the case there still should be some other, I'll call it a

15   sanction right or response for this discovery dispute.  We do

16   not believe that the documents that are in the possession of

17   the SEC should be retained.  We think that they should be

18   ordered to destroy them.

19           As for the documents themselves, that are currently in

20   the possession of Mr. Frantz and Mr. Dorsett, the 44,000

21   documents that we're talking about, if we are all in agreement

22   that those documents rightfully belong to the joint

23   liquidators, we believe that this court should issue an order

24   instructing Mr. Dorsett and Mr. Frantz to not take any further

25   action with respect to these documents until instructed by the

1    Bahamian court, and here's why I request that.

2              What we really were saying to the SEC when they came

3    to us with this issue, what we really have always said is we

4    just think that discovery needs to go through the normal course

5    so that way Mr. Gentile is entitled to all of the protections

6    that the Federal Rules of Civil Procedure grant him.

7              What that means is, what we wanted the SEC to do is to

8    acknowledge that these are the documents of the company.  If

9    the joint liquidators are in control of the documents, fine,

10   but the SEC should go through the normal course.  They should

11   issue the letters rogatory.  We should have an opportunity to

12   review the requests that they're making and to make appropriate

13   objections and for the court to rule on it.

14             So, for example, out of these 44,000 documents, which

15   we're all saying we don't know what's in them, the idea that

16   just all of those should come into litigation here really

17   doesn't seem fair because we really don't know.  There might be

18   privilege, there might be irrelevant documents.  To the extent

19   those documents include categories that the parties and the

20   court agree is relevant to this litigation and they're in the

21   possession of the joint liquidators and the joint liquidators

22   are then instructed by the Bahamian court to turn them over,

23   then that's OK.  That is appropriate.

24             So what we're really asking for is that the SEC just

25   be held to the same standards of civil discovery.  So we are

1    OK, as Ms. Sum suggested, working out how to process these

2    documents, but what is really important to us -- I mean, we

3    want the ultimate sanction, of course, but if your Honor is not

4    going to grant that, what we really want is to make sure that

5    Mr. Gentile has an opportunity to object to irrelevant

6    documents, because he definitely has standing for that.

7         I heard Ms. Sum say there was a standing issue.

8    Undoubtedly, a party can object to a non-party subpoena that

9    calls for irrelevant documents.  Since this is just an entire

10   cache of emails and non-emails -- we don't know what they

11   are -- we can certainly object.  We have standing on that.  We

12   believe we have more standing, but just very limited.

13        So we would request an order from your Honor, if your

14   Honor is not going to dismiss the case, again, Mr. Frantz and

15   Mr. Dorsett do not do anything to the documents, sit and hold

16   tight.  If they belong to the joint liquidator, the joint

17   liquidator should seek them from those men, not the SEC.  We do

18   not agree the SEC can turn over documents in this litigation to

19   anyone else.  That would be our fallback position if the court,

20   if your Honor is not inclined to grant our primary requested

21   relief.

22        THE COURT:  All right.

23        MS. SUM:  Your Honor, may I address a couple of the

24   facts that were stated, because I think they are salient to

25   this discussion?

1           THE COURT:  Well, it seems that Mr. Ford is saying

2     that there is an inconsistency between the email that he shared

3     the screen on and your statement that the SEC has not reviewed

4     the documents.

5           MS. SUM:  Your Honor, I'll provide this information.

6     What we call the TCRs that were submitted by the two former

7     employees, for the first one, Mr. Dorsett, was in August of

8     2017, and for the second, Mr. Frantz, was submitted in March of

9     2018.  These documents have been produced with the

10    confidentiality stamp to Mr. Gentile's counsel.

11          In answering Mr. Ford's question, we have not reviewed

12    the 11,000 and the 33,000, but in answering him truthfully, we

13    do have the TCRs.  So the answer addresses the fact that we

14    have information from these two former employees, but it

15    predates and has nothing to do with the overall 44,000 emails

16    that we are talking about.  So there is no inconsistency, there

17    was a truthful answer, because I was not going to split hairs

18    in answering the question.

19          We did not review the 44,000, but we did previously

20    review information provided by these two individuals through

21    the TCR program, and these TCRs have been produced under

22    confidentiality stamp.

23          THE COURT:  I'm sorry.  I'm sorry.  I mean, this is

24    getting in the weeds and I want to make sure on something as

25    serious as a disputation of the truthfulness of your statement

1    to the court, I want to make sure that the record is clear,

2    Ms. Sum.

3        You're saying that that statement that Mr. Ford

4    highlighted in your email, where you were talking about

5    documents that were non-email that you had reviewed and were

6    produced, that had nothing to do with these 44,000 documents,

7    that that was something you received earlier and does not

8    really play a role in this dispute?  Am I hearing that

9    correctly?

10        MS. SUM:  Yes.  Yes, your Honor, that is absolutely

11   correct.

12        To be clear, what Rule 26 requires disclosure of and

13   production of are documents that we would use to support our

14   case.  The SEC doesn't use its TCRs or TCRs received, excuse

15   me, for these cases.  Now, at the same time, because the

16   request for production was propounded, we have produced the

17   TCRs for these individuals.

18        THE COURT:  Remind me again, TCR, what the acronym

19   stands for and what their purpose is.

20        MS. SUM:  Your Honor, it stands for tips, complaints,

21   and referrals.  These forms essentially provide blanks in terms

22   of providing the person who is filling in the TCR, their

23   contact information, etc., and then it contains blanks for who

24   they are complaining about or providing a tip about, and then

25   it contains another section for the filer to say, this is what

1    I think the problem is and provide the background information

2    for that.

3            So both of these individuals submitted TCRs.  As I

4    stated, the first one in August of 2017, Mr. Dorsett, and

5    Mr. Frantz in March of 2018.

6            So a lot of the colloquy regarding that these men are

7    not to be believed because it is years later that it happened,

8    that is simply not the case.  Although I don't think that is

9    the subject of this hearing, I just did not want that to go

10   unaddressed.

11           THE COURT:  So the statement in your email referred to

12   those TCRs and they have been produced.

13           MS. SUM:  Yes.

14           THE COURT:  So you're saying that to the side that has

15   nothing to do with what we're here for today.

16           MS. SUM:  Yes.

17           THE COURT:  Am I understanding your point of view

18   correctly?

19           MS. SUM:  Yes.  That is correct, your Honor.  What I

20   want to clarify is during the meet and confer, the question was

21   had we reviewed documents from Mr. Dorsett and Mr. Frantz.  So

22   I was answering that question that in fact we had, which

23   covered the documents that were previously provided, the TCRs,

24   by these two individuals.

25           THE COURT:  OK.

1          MS. SUM:  The subject of this dispute, the 11,000 and

2     33,000, totaling the 44,000, absolutely unequivocally nobody at

3     the SEC has reviewed any of that production.

4          As I stated, the 11,000 that was transmitted

5     essentially has been parked in our eDiscovery management

6     system, and I do not even have access to those materials.  When

7     I say "I," meaning our team does not even have access.  They

8     have not been processed for review.

9          The other 33,000 from Mr. Frantz have not been

10     transmitted to the SEC, so it would be even impossible in that

11     case for us to have reviewed them.

12          THE COURT:  All right.  Let me ask Mr. Ford.  Sir, you

13     stated if you knew for certain that the SEC had not reviewed

14     those 11,000 plus 33,000 documents you would not have brought

15     the motion.  I think I heard that right.  If I am mistaken, you

16     can correct me.

17          Are you now satisfied with the explanation that

18     Ms. Sum has given regarding that statement in the email that

19     made you question the veracity of her statements to the court?

20          MR. A. FORD:  Your Honor, again, thank you for the

21     question.  As I hope my prior presentation made clear, I was

22     really trying to avoid suggesting Ms. Sum sort of made any

23     untruthful statements.  I never said that.  It had to do with

24     what we heard and what we articulated.

25          That being said, I still, to be honest -- I feel like

1    we are really getting in the weeds for why I don't understand

2    what is going on.  I am not convinced that I understand

3    everything just yet because Ms. Sum, in the email, Ms. Sum says

4    we reviewed other non-email documents that Dorsett gave us.

5    Maybe Dorsett gave her the TCR, the whistleblower complaint, as

6    opposed to the SEC -- it would have been in the SEC's system.

7    It certainly was not our impression -- let me put it this way.

8         When we were having the discussion, my impression was

9    that there were non -- she used the word non-email documents.

10   So what we thought that meant was non-email company documents.

11   Not a document that Dorsett (inaudible).

12        Now the other thing that is just a little strange

13   about Ms. Sum's statement is she says that, well, we provided

14   the TCR.  Now, I apologize to your Honor.  We must have missed

15   them.  If they are in the production, I didn't see them,

16   obviously, when I said we didn't have them.  If they have been

17   produced -- there are two things that are a little strange

18   about what Ms. Sum said.  Because in the email we agree that

19   there will be no production of either the email or the

20   non-email Dorsett documents.

21        THE COURT:  Right.

22        MR. A. FORD:  So, again, it's not making sense, but I

23   don't want to dwell on that, your Honor.

24        THE COURT:  All right.  Mr. Ford.

25        MR. A. FORD:  Yes.

1           THE COURT:  I appreciate your confusion.  I appreciate

2    Ms. Sum's explanation.  It may just be a little bit like ships

3    passing in the night.  They thought they were communicating

4    something and received a different signal.

5           I don't think we have grounds for sanctions here, to

6    be perfectly honest, either under Rule 37 or Rule 41 or

7    inherent power or anything else, particularly given what just

8    transpired regarding interpretation of communications and so

9    on.

10          I don't know that any further action from this court

11   is proper at this point in time absent some request, some

12   discovery dispute, something along those lines.

13          I will deny the motion for sanctions.  I will deny it

14   without prejudice due to the fluidity of the situation at this

15   point in time.  But, again, a sanction of dismissal is such

16   a -- which is what you are seeking.  There needs to be a very

17   clear record to support that, and I don't see such a record

18   before me.  So I will dismiss it without prejudice.

19          I will encourage the parties -- and I note Mr. Gluck

20   has been observing.  I think he is the joint liquidators'

21   counsel.  I would encourage Mr. Gluck, Mr. Ford, Ms. Sum to

22   work together to figure out how to proceed on these documents

23   that are sort of sitting in limbo right now, that some guidance

24   is sought from the court, but until such time as all interested

25   parties come before the court with their views on that issue

1    and their versions of relief after meeting and conferring, as

2    required by our local rules, I would be sort of putting the

3    cart before the horse if I issued any such ruling at this point

4    in time.

5           So I will issue a brief order just basically denying

6    the motion without prejudice and I will verbally encourage

7    Mr. Gluck, Ms. Sum, Mr. Ford to meet and confer regarding any

8    guidance that they need from the court, any resolution that you

9    can achieve on your own, any potentially agreed order, if that

10   is what you can get to, or maybe partially agreed and then you

11   need rulings on my part.  So that is where I am at right now.

12          I would just say I will issue no orders, no directives

13   at this time.  I would recommend that everybody act in a very

14   circumspect fashion until such time as you reach some kind of

15   accommodation or you are ready to bring a dispute before the

16   court so that there is no missteps taken between now and that

17   point in time.

18          Am I making myself clear?  Does anybody have any

19   questions?

20          MS. SUM:  It is clear.  No questions.

21          MR. A. FORD:  Very clear to defense, your Honor.  No

22   questions.  Thank you very much for your time and

23   thoughtfulness today.  We appreciate it.

24          THE COURT:  All right.  I did address Mr. Gluck

25   indirectly.  I don't see him coming on.  I think I see him now.

1        Mr. Gluck.

2        MR. GLUCK:  Your Honor, we have heard the court

3   clearly.  We have appeared today as a member of the public

4   without waiving any jurisdictional or discovery-related

5   objections or the stay that is in place in the Bahamas for our

6   company in wind down.  However, we have the court's direction

7   and, in fact, likely intend to reach out to both parties to get

8   what appear to be the documents of the liquidators, and that is

9   why we have requested them.

10        THE COURT:  All right.  Like I said, you all proceed

11   cautiously.  Make sure that any existing orders are complied

12   with and make sure that you don't jump the gun on anything here

13   in this proceeding.

14        Thank you very much.

15        You will get a brief written order denying the motion

16   without prejudice.

17        MS. SUM:  Thank you, your Honor.

18        MR. A. FORD:  Thank you, your Honor.  Have a good

19   afternoon, everyone.

20        THE COURT:  You too.

21        THE DEPUTY CLERK:  Court's adjourned.

22        (Adjourned)

23

24

25

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate
transcription to the best of my ability of the digital audio
recording in the above-entitled matter.


August 8, 2022            s/ Joanne Mancari
                          Joanne Mancari, RPR, CRR, CSR
                          Court Reporter
                          jemancari@gmail.com

MR. A. FORD: [32]  3/11 3/16 4/11 5/1
 5/6 5/13 5/17 5/20 5/22 5/24 14/18 15/4
 15/14 15/20 15/23 17/5 18/22 19/5 20/11
 20/16 20/25 21/5 36/21 36/24 37/14
 37/16 37/19 50/20 51/22 51/25 53/21
 54/18
MR. GLUCK: [1]  54/2
MS. BOLADO: [2]  3/24 4/4
MS. SUM: [16]  3/7 4/1 21/11 21/14
 32/21 34/8 46/23 47/5 48/10 48/20 49/13
 49/16 49/19 50/1 53/20 54/17
MS. VERGES: [1]  3/9
THE COURT: [48]  3/14 3/18 3/25 4/2
 4/5 4/24 5/2 5/11 5/16 5/18 5/21 5/23
 14/14 15/3 15/5 15/18 15/22 16/11 18/14
 18/23 20/9 20/14 20/17 21/2 21/9 21/13
 32/19 32/22 36/19 36/23 37/13 37/15
 37/17 46/22 47/1 47/23 48/18 49/11
 49/14 49/17 49/25 50/12 51/21 51/24
 52/1 53/24 54/10 54/20
THE DEPUTY CLERK: [2]  3/3 54/21

## $

$1300 [1]  29/6
$200 [1]  28/15

## ,

'22 [1]  25/7

## 0

0040 [1]  2/6

## 1

10016 [1]  2/6
10th [5]  7/14 14/23 38/5 38/13 38/14
 11 [2]  20/14 43/14
11,000 [11]  6/4 6/10 22/6 22/11 22/15
 23/10 32/10 47/12 50/1 50/4 50/14
11th [1]  19/21
12 [1]  20/15
1982 [1]  20/12

## 2

2015 [1]  10/12
2017 [4]  26/6 42/2 47/8 49/4
2018 [4]  26/6 42/2 47/9 49/5
2019 [1]  42/13
2021 [4]  19/7 19/11 22/1 42/5
2022 [2]  1/6 55/8
21 [1]  3/4
21-CV-21079-BB [1]  1/2
21079 [1]  3/4
212-858-0040 [1]  2/6
26 [1]  48/12
275 [1]  2/5
29 [3]  19/7 19/11 42/5

## 3

305-982-6300 [1]  1/18
33,000 [11]  6/10 14/1 22/7 22/18 23/11
 23/16 32/11 47/12 50/2 50/9 50/14
33131 [1]  1/17
37 [24]  4/7 15/6 15/6 15/9 15/13 15/15
 15/16 15/19 15/19 15/20 16/8 16/12
 16/23 17/1 17/2 17/7 17/10 18/8 18/8
 18/14 19/25 26/21 32/25 52/6

## 4

41 [10]  4/8 15/17 16/10 17/7 18/9 18/16

18/16 26/21 44/5 52/6
44,000 [8]  6/11 8/13 49/20 45/14 47/15
 47/19 48/6 50/2
45 [2]  15/25 26/10
48 [1]  7/21
480 [2]  19/21 20/12

## 5

50 [1]  39/24
54 [1]  1/9

## 6

6300 [1]  1/18
691 [2]  19/21 20/12

## 7

7.1 [1]  27/4

## 8

801 [1]  1/17

## 9

99 [1]  26/24
9th [12]  4/20 7/11 14/9 14/15 14/15
 14/17 14/21 14/21 17/20 22/16 38/1
 38/14

## A

ability [4]  26/11 35/17 43/25 55/5
able [1]  5/15
about [38]  4/18 8/13 9/12 9/20 12/25
 15/14 16/14 17/11 17/12 18/3 19/25
 21/22 22/5 22/8 22/22 28/7 30/3 30/6
 30/17 34/1 34/4 34/5 34/23 35/16 37/6
 39/23 40/1 40/19 43/1 43/22 44/1 44/21
 47/16 48/4 48/24 48/24 51/13 51/18
above [2]  38/8 55/6
above-entitled [1]  55/6
absent [2]  52/11
absolutely [17]  5/20 6/8 11/23 15/14
 19/5 19/7 21/17 22/21 26/14 26/20 29/8
 29/12 29/24 35/9 41/2 48/10 50/2
abundance [1]  23/19
abuse [3]  19/24 20/4 20/5
acceptable [2]  30/11 30/12
access [3]  22/23 50/6 50/7
accommodation [1]  53/15
accurate [3]  38/22 42/6 55/4
accurately [1]  38/10
accused [1]  28/21
accusing [3]  29/21 30/9 43/9
achieve [1]  53/9
acknowledge [4]  3/23 7/15 11/8 45/8
acknowledged [4]  7/14 9/3 10/13 39/9
acknowledging [3]  4/12 7/5 27/24
acquiescence [1]  16/19
acronym [1]  48/18
act [12]  10/21 10/22 10/25 11/3 11/10
 13/17 26/3 31/13 38/23 42/9 42/21 53/13
acting [2]  41/11 41/16
action [5]  6/13 16/2 20/21 44/25 52/10
actions [2]  18/17 32/14
activities [1]  30/4
acts [2]  21/22 24/9
actually [13]  10/11 10/12 10/25 16/11
 17/21 17/23 18/1 18/2 24/13 25/1 27/24
 29/6 34/18
ADAM [3]  2/3 3/11 3/16
adamantly [1]  32/7
add [1]  21/3

addition [4]  15/16 15/18 16/24 23/12
 additional [1]  7/21
address [11]  9/20 28/11 29/21 32/17
 32/18 32/25 36/7 36/16 41/24 46/23
 53/24
addressed [1]  21/6
addresses [2]  30/8 47/13
adequate [1]  13/6
adjourned [2]  54/21 54/22
advanced [1]  26/8
advise [2]  25/14 29/10
advised [1]  23/14
affidavit [12]  7/4 10/3 10/15 10/17 10/19
 11/8 11/12 11/18 11/25 12/6 19/12 27/22
affidavits [4]  9/23 43/7 43/19 43/22
affirmative [1]  24/22
aford [1]  2/7
after [9]  7/19 10/7 14/8 17/25 19/11 22/4
 29/1 42/8 53/1
afternoon [1]  54/19
afterwards [1]  38/5
again [22]  5/21 7/2 11/4 12/6 12/24 16/1
 16/9 17/17 26/16 29/1 31/19 33/5 33/9
 40/17 41/17 42/3 43/8 46/14 48/18 50/20
 51/22 52/15
against [2]  12/25 24/10
agency [5]  21/20 25/18 25/23 35/21
 40/24
ago [6]  42/3 42/12 42/12 42/17 42/23
 43/2
agree [3]  45/20 46/18 51/18
agreed [5]  39/1 39/4 39/21 53/9 53/10
agreement [1]  44/21
ahead [3]  5/23 28/15 35/17
al [2]  1/8 3/4
ALICE [2]  1/15 3/7
ALICIA [1]  1/12
all [47]  3/14 3/18 4/5 4/6 6/15 6/21 6/21
 7/13 7/23 8/23 9/13 9/17 9/19 10/3
 10/16 11/10 11/22 11/24 12/16 15/3 15/5
 18/14 21/2 21/9 21/15 22/2 25/19 25/19
 27/9 27/14 32/9 36/19 37/19 38/20 39/4
 40/21 44/21 45/5 45/15 45/16 46/22
 50/12 51/24 52/24 53/24 54/10 54/10
allegations [2]  9/9 24/22
alleged [1]  30/20
allegedly [1]  22/25
alleges [1]  12/9
allowed [1]  12/15
alluding [1]  29/2
allusion [1]  18/24
alone [1]  27/1
along [2]  32/24 52/12
already [4]  17/20 39/9 39/17 41/14
also [8]  9/23 17/22 18/16 23/8 30/25
 33/18 36/6 36/17
alternative [1]  12/19
Although [2]  36/14 49/8
always [1]  45/3
am [17]  4/3 5/8 6/11 16/12 18/3 18/15
 37/10 37/12 37/23 39/12 41/20 48/8
 49/17 50/15 51/2 53/11 53/18
among [1]  12/1
amorphous [1]  33/23
amount [1]  36/1
announcement [1]  13/24
another [4]  4/16 4/17 11/18 12/24 12/24
 36/13 43/13 48/25
answer [3]  32/16 47/13 47/17
answering [5]  47/11 47/12 47/18 49/22

**A**

any [38]  5/15 8/10 8/10 10/1 11/1 11/2 13/3 14/12 15/25 19/8 21/1 21/5 27/19 29/25 30/7 31/18 32/8 32/16 32/17 33/2 33/23 34/24 37/3 37/5 38/8 40/9 41/9 42/14 44/24 50/3 50/22 52/10 53/3 53/7 53/8 53/9 53/18 54/4 54/11
anybody [2]  34/9 53/18
anyone [4]  25/21 37/4 39/6 46/19
anything [12]  8/12 8/17 14/25 16/13 21/3 21/7 43/1 43/3 44/2 46/15 52/7 54/12
apologies [1]  5/5
apologize [1]  5/22 51/14
apparently [3]  6/25 29/14 33/20
appear [3]  6/8 43/24 54/8
appearances [3]  1/14 1/20 3/6
appeared [3]  11/16 11/17 54/3
appears [1]  12/11
applies [2]  17/3 18/18
apply [2]  15/15 34/20
appointed [3]  25/5 25/6 27/25
appointment [1]  27/17
appreciate [3]  52/1 52/1 53/23
approach [1]  37/10
appropriate [4]  20/23 44/7 45/12 45/23
appropriately [1]  39/20
approximately [2]  22/7 22/11
are [113]
argue [1]  40/25
argued [1]  24/19
arguing [3]  33/22 37/2 41/22
argument [10]  9/14 9/15 17/4 17/23 32/23 33/18 33/18 34/1 34/2 43/19
arguments [5]  9/11 21/16 26/8 31/20 34/5
around [2]  13/22 20/6
arrange [1]  5/8
articles [1]  8/3
articulated [1]  50/24
as [68]
aside [2]  9/10 27/14
ask [4]  18/24 29/19 37/9 50/12
asked [5]  6/25 10/1 12/3 39/19 43/18
asking [3]  4/21 24/15 45/24
assert [1]  28/5
asserted [1]  29/24
assortment [1]  24/9
assume [3]  19/10 19/10 38/24
assuming [1]  18/4
at [39]  4/21 4/22 6/3 10/16 10/18 11/10 13/5 13/23 19/11 20/14 20/17 22/21 24/13 24/21 24/22 24/23 25/4 26/19 29/18 30/19 31/10 32/2 32/2 37/12 38/7 38/16 38/18 38/25 39/6 39/21 39/24 41/24 48/15 50/2 52/11 52/14 53/3 53/11 53/13
attached [1]  15/2
attempt [2]  26/18 28/17
attempts [1]  30/3
attention [1]  25/16
attorneys [1]  22/21
audio [2]  1/11 55/5
August [4]  1/6 47/7 49/4 55/8
authorities [2]  31/21 32/9
authority [10]  13/8 16/10 18/9 18/19 33/22 34/10 34/12 34/19 34/22 44/6
available [3]  35/8 43/21 43/23
Avenue [2]  1/17 2/5
avoid [1]  50/22
avoiding [1]  30/14

**B**

aware [1]  36/14
Aztec [4]  15/21 20/11 35/3 35/5

**B**

back [6]  5/9 24/7 24/8 24/12 27/15 40/1
background [1]  49/1
bad [1]  8/12
Bahamas [7]  10/25 11/21 12/1 25/4 27/18 31/23 54/5
Bahamian [17]  10/14 10/18 10/18 10/21 10/21 11/10 11/17 25/6 27/25 31/8 31/17 31/21 31/21 32/9 36/11 45/1 45/22
based [2]  21/16 44/1
basic [2]  21/16 27/3
basically [6]  9/12 10/23 11/3 14/23 17/8 53/5
basis [6]  12/5 14/4 19/4 30/18 30/24 30/25
BB [1]  1/2
became [2]  22/2
because [48]  7/4 7/19 8/16 8/17 9/3 9/13 10/14 10/18 12/6 13/4 17/24 18/1 25/1 26/1 27/17 29/21 30/1 30/9 30/12 30/25 31/10 31/20 33/7 33/10 33/13 33/19 34/15 35/5 37/7 37/25 39/20 40/6 40/18 41/16 41/19 42/16 42/19 42/21 42/23 43/1 45/17 46/6 46/24 47/17 48/15 49/7 51/3 51/18
been [30]  4/20 8/4 8/6 11/13 13/15 22/19 23/15 23/16 26/25 28/21 31/1 31/17 32/4 32/7 33/2 33/13 33/16 36/10 39/25 42/13 42/19 47/9 47/21 49/12 50/5 50/8 50/9 51/6 51/16 52/20
before [21]  1/12 3/19 3/21 9/7 13/2 17/25 18/23 19/2 19/15 22/14 28/8 29/13 31/16 32/9 33/24 36/15 42/5 52/18 52/25 53/3 53/15
begin [2]  26/25 31/25
beginning [2]  22/20 26/20
behalf [3]  3/8 3/10 3/12
behind [1]  4/22
being [5]  15/15 35/20 35/25 38/4 50/25
believe [11]  19/6 19/20 36/4 38/8 38/9 39/20 42/4 44/6 44/16 44/23 46/12
believed [2]  43/7 49/7
belong [2]  44/22 46/16
besides [1]  10/2
best [3]  22/12 31/6 55/5
better [5]  5/15 5/16 5/18 17/6 21/1
between [5]  9/2 12/10 17/14 47/2 53/16
beyond [1]  43/2
bill [1]  33/8
bit [4]  10/25 17/13 33/22 52/2
blanks [2]  48/21 48/23
bless [1]  11/20
Bloom [1]  3/5
Bolado [3]  3/20 4/2 4/3
both [6]  17/7 27/21 32/2 38/3 49/3 54/7
bound [2]  12/20 13/19
breach [1]  32/4
breaches [1]  13/11
bread [1]  33/11
break [1]  12/17
Brickell [1]  1/17
brief [5]  19/21 20/14 36/20 53/5 54/15
briefly [2]  4/9 29/13
bring [2]  25/16 53/15
brings [1]  10/15
broke [1]  33/11

**B**

broker [2]  29/22 36/3
broker-dealer [2]  29/22 36/3
brought [1]  50/14
Bundy [1]  9/15
but [57]
butter [1]  33/11

**C**

cache [1]  46/10
California [1]  13/10
call [12]  6/8 14/22 23/10 23/12 25/13 25/22 27/7 29/9 38/9 38/13 44/14 47/6
called [3]  14/19 17/20 30/21
calls [1]  46/9
came [3]  22/3 41/23 45/2
camera [1]  5/13
can [33]  5/4 6/6 8/17 12/12 12/14 13/12 13/13 15/12 16/13 16/25 17/6 17/17 20/20 21/12 21/13 22/13 24/4 37/6 37/11 40/13 40/22 40/23 40/24 43/11 43/21 43/22 44/12 46/8 46/11 46/18 50/16 53/9 53/10
can't [10]  4/16 4/17 9/17 10/6 11/1 11/11 37/10 43/1 43/3 44/3
cannot [3]  10/13 14/11 42/18
career [1]  4/17
cart [1]  53/3
case [44]  1/2 3/4 4/13 4/18 6/1 6/5 8/1 8/2 8/6 8/11 8/14 9/16 11/17 11/17 12/9 12/15 12/22 13/5 13/7 13/10 13/10 16/14 17/3 19/20 20/9 20/13 20/18 20/18 20/22 27/2 27/12 29/5 29/24 30/16 33/3 34/14 34/19 34/21 36/18 44/14 46/14 48/14 49/8 50/11
cases [4]  13/8 26/23 26/24 48/15
categories [1]  45/19
cause [1]  23/25
caution [1]  23/19
cautiously [1]  54/11
caveat [1]  18/1
certain [2]  19/14 50/13
certainly [10]  11/18 13/19 18/7 18/8 21/13 22/22 27/11 34/11 46/11 51/7
certify [1]  55/4
chance [3]  23/25 33/15 43/4
channels [1]  15/25
charge [1]  31/22
charged [3]  29/6 35/21 36/11
Cir [1]  19/22
Circuit [7]  13/7 13/10 19/20 19/22 20/2 20/13 33/4
circumspect [1]  53/14
citations [1]  18/20
cited [1]  19/20
citizens [1]  41/6
civil [9]  3/5 13/19 18/12 20/7 25/25 26/15 28/10 45/6 45/25
claim [1]  9/25
claiming [2]  24/9 41/4
clarified [2]  38/18 40/20
clarify [2]  34/5 49/20
clear [13]  4/18 6/14 17/24 22/21 28/22 36/1 48/1 48/12 50/21 52/17 53/18 53/20 53/21
clearly [6]  9/5 20/2 21/12 27/12 38/10 54/3
client [7]  7/20 11/5 11/6 14/15 16/18 30/6 30/7
close [1]  5/3
code [2]  31/9 31/18 32/5

## C

cognizant [1] 29/2
coincidentally [1] 10/9
Coke [1] 35/24
colleague [1] 37/21
colleagues [5] 3/13 7/12 39/9 39/12
40/12
collect [1] 28/15
colloquy [1] 49/6
combined [1] 16/9
come [12] 13/2 14/7 15/9 33/13 40/22
40/24 42/9 42/14 42/24 43/8 45/16 52/25
comes [5] 6/4 9/10 16/8 18/6 18/7
coming [3] 24/4 42/20 53/25
commenced [1] 25/3
comments [2] 14/13 24/10
COMMISSION [9] 1/4 1/16 3/3 3/8 3/10
21/19 30/15 30/19 31/23
commit [1] 9/17
common [1] 10/2
communicating [1] 52/3
communications [2] 9/1 52/8
companies [1] 31/20
company [20] 6/13 6/16 10/23 12/2 12/3
16/4 20/11 28/2 28/3 28/22 29/7 30/4
31/24 36/10 40/22 40/23 42/13 45/8
51/10 54/6
compel [2] 26/12 35/4
complaining [5] 17/9 17/10 17/12 18/3
48/24
complaint [3] 17/16 24/22 51/5
complaints [2] 25/12 48/20
compliance [2] 10/4 26/12
complied [1] 54/11
compound [1] 19/17
Computer [1] 10/21
computers [1] 8/19
concept [8] 6/17 11/19 22/24 26/9 29/8
30/21 30/22 34/11
concern [3] 18/4 30/6 35/13
concerned [2] 42/16 42/25
concerns [3] 25/14 29/11 36/1
condoned [1] 14/12
conduct [6] 7/19 8/12 10/20 11/9 13/17
35/12
conducts [1] 13/1
confer [7] 22/16 26/18 27/4 27/9 39/3
49/20 53/7
conferring [1] 53/1
confidential [1] 37/18
confidentiality [8] 12/10 12/16 23/6 23/13
27/7 36/8 47/10 47/22
confines [1] 18/7
confirm [1] 33/17
conflation [1] 26/9
confusion [1] 52/1
consider [3] 9/8 21/17 24/4
consideration [1] 35/6
considering [1] 27/1
CONT'D [1] 2/1
contact [3] 43/12 43/13 48/23
contains [2] 48/23 48/25
content [1] 37/16
control [6] 11/21 12/2 12/3 13/9 31/20
45/9
conversation [4] 14/24 24/6 38/2 38/2
convinced [1] 44/8 51/2
Cooper [2] 10/3 10/4
Cooperate [1] 15/7
copies [2] 30/1 36/7

## D

copy [1] 7/6
corporate [6] 6/8 6/14 8/15 8/21 10/6
16/17
corporation [3] 6/7 6/18 20/12
correct [5] 4/3 4/4 48/11 49/19 50/16
corrected [1] 40/14
corrections [1] 15/1
correctly [4] 20/24 26/17 48/9 49/18
could [17] 5/7 9/15 11/7 11/20 12/7
19/19 20/25 23/21 24/2 24/18 30/19
36/22 37/10 37/11 38/18 38/22 43/13
couldn't [1] 39/25
counsel [15] 3/6 4/9 4/10 10/18 22/4
23/5 23/21 24/1 24/15 26/8 26/17 27/6
27/21 47/10 52/21
counsel's [1] 21/16
couple [1] 13/7 14/14 46/23
course [9] 16/15 17/18 17/19 21/3 25/9
25/20 45/4 45/10 46/3
court [59]
court's [5] 16/9 16/24 18/9 54/6 54/21
courts [2] 27/25 34/10
cover [2] 23/6 28/1
covered [2] 23/6 49/23
crackled [1] 36/25
create [1] 9/4
critical [1] 43/20
CRR [2] 2/11 55/8
CSR [2] 2/11 55/8
current [2] 21/21 26/2
currently [1] 44/19
customer [1] 11/2
customers [1] 30/10
CV [1] 1/2

## D

D.C [1] 22/13
darn [1] 24/20
data [4] 10/20 10/21 11/3 32/8
date [4] 8/21 14/15 14/15 14/19
dates [1] 14/19
day [6] 6/15 7/15 11/11 31/10 38/5 38/13
days [1] 43/14
dealer [2] 29/22 36/3
dealing [2] 26/22 30/18
deals [1] 15/17
decade [1] 8/5
December [4] 19/7 19/11 22/1 42/5
decide [2] 32/4 40/16
decided [2] 28/15 42/14
decision [1] 9/8
decisions [1] 28/2
declaration [1] 27/22
deeply [1] 26/7
defaulted [3] 16/3 16/3 16/17
defaults [1] 6/5
defects [1] 27/13
defendant [6] 1/9 2/3 3/12 3/15 3/16
16/17
defendants [1] 30/9
defendants' [2] 4/6 4/9
defense [1] 53/21
defenses [1] 24/23
definitely [2] 5/18 46/6
definitively [1] 23/23
defying [1] 10/2
delete [1] 29/4
demands [1] 7/21
demonstrate [1] 13/8
demonstrates [1] 19/23

## D

deny [3] 32/7 52/13 52/13
denying [3] 7/16 53/5 54/15
department [1] 13/25
depositions [1] 15/11
describe [3] 6/2 16/14 37/12
described [1] 15/13
description [1] 16/16
despite [1] 12/16
destroy [3] 6/21 29/4 44/18
destroyed [1] 6/16
detail [1] 23/1
deter [1] 13/18
determination [1] 31/17
determinations [1] 32/3
determined [2] 31/22 31/23
did [31] 10/10 10/11 10/16 11/18 11/24
15/1 16/5 16/6 17/14 19/12 19/15 19/16
20/23 23/19 24/18 26/17 26/19 29/10
30/23 34/15 37/3 39/20 40/6 40/7 40/16
40/17 41/21 47/19 47/19 49/9 53/24
didn't [15] 7/16 9/25 15/25 23/24 25/8
25/8 27/4 28/13 28/14 28/15 41/17 41/18
44/2 51/15 51/16
different [2] 14/25 52/4
digital [2] 1/11 55/5
direct [1] 15/16
directed [1] 13/7
direction [1] 54/6
directives [1] 53/12
directly [1] 10/3
disagree [2] 40/25
disclose [6] 10/24 16/22 17/24 19/16
23/19 34/15
disclosed [6] 14/1 14/20 14/22 16/21
17/21 23/13
disclosure [1] 48/12
disclosures [14] 15/7 17/25 18/25 19/3
19/3 19/6 19/8 19/16 22/1 22/4 34/6
35/14 42/6 42/6
discovery [35] 4/7 4/21 7/19 7/23 12/8
13/11 15/7 15/21 15/24 16/19 17/18 18/5
18/11 19/24 20/3 20/6 20/23 26/22 29/16
32/15 33/4 33/8 33/11 33/12 34/12 34/24
36/18 40/1 41/8 41/13 44/15 45/4 45/25
52/12 54/4
discovery-related [1] 54/4
discretion [2] 19/24 20/4
discuss [2] 23/8 24/1
discussed [2] 16/7 32/24
discussing [2] 9/11 23/12
discussion [9] 17/1 22/16 27/7 27/10
27/11 28/7 32/13 46/25 51/8
discussions [1] 15/2
disgruntled [1] 6/7
dismiss [3] 44/13 46/14 52/18
dismissal [16] 4/8 4/13 13/6 18/17 18/17
19/4 19/24 20/3 20/21 20/23 26/21 27/2
27/11 33/5 33/7 52/15
disputation [1] 47/25
dispute [10] 11/9 22/24 23/4 34/11 34/13
44/15 48/8 50/1 52/12 53/15
disputes [2] 26/23 34/10
disputing [1] 34/21
disregard [2] 19/23 20/3
district [3] 1/1 1/1 33/12
diverges [1] 38/9
do [50] 5/11 9/6 9/13 11/10 11/10 12/14
12/16 13/4 13/9 13/12 14/5 14/14 17/6
19/7 21/7 27/10 32/11 32/14 32/15 33/12
34/4 34/14 34/18 36/4 36/13 36/16 37/10 37/11

do... [23]  38/10 38/12 38/15 40/17 40/21
40/25 43/1 43/3 44/2 44/5 44/9 44/9
44/15 45/7 46/15 46/15 46/17 47/13
47/15 48/6 49/15 50/6 50/23
docket [1]  13/9
document [2]  7/21 51/11
documents [1]  14/7
Dodd [10]  26/3 31/13 34/5 34/6 35/11
35/14 35/16 41/5 41/7 41/17
Dodd-Frank [10]  26/3 31/13 34/5 34/6
35/11 35/14 35/16 41/5 41/7 41/17
does [8]  6/18 11/8 25/11 32/25 44/13
48/7 50/7 53/18
doesn't [15]  5/2 6/20 9/20 12/19 13/2
18/10 29/20 30/13 30/23 31/20 34/20
36/1 42/23 45/17 48/14
doing [5]  20/6 26/5 29/12 30/9 37/9
don't [49]  4/15 6/18 7/7 7/25 8/9 8/10
8/15 8/17 9/11 11/4 11/9 11/10 11/13
11/16 12/14 12/18 16/13 17/21 18/1 18/2
18/17 18/19 18/20 23/23 29/17 30/1
33/16 34/9 34/11 35/9 37/6 40/1 40/9
40/17 40/25 43/6 43/8 43/8 45/15 45/17
46/10 49/8 51/1 51/23 52/5 52/10 52/17
53/25 54/12
done [3]  4/16 31/15 32/24
Dorsett [21]  9/24 10/12 19/8 19/12 39/10
39/14 40/4 41/5 41/9 42/1 43/5 44/20
44/24 46/15 47/7 49/4 49/21 51/4 51/5
51/11 51/20
doubt [1]  6/12
down [4]  5/4 12/17 42/13 54/6
downloaded [2]  6/9 8/18
due [1]  52/14
during [6]  22/16 25/9 29/7 38/2 38/9
49/20
dwell [1]  51/23

**E**
earlier [3]  19/14 36/7 48/7
earth [2]  6/18 6/20
eDiscovery [1]  50/5
eight [2]  8/7 8/8
either [4]  26/12 29/3 51/19 52/6
elements [1]  17/8
Eleventh [6]  13/7 19/20 19/22 20/2
20/12 33/4
else [5]  21/3 37/4 44/9 46/19 52/7
email [28]  7/15 10/12 14/21 14/23 23/8
27/21 38/1 38/5 38/7 38/14 38/16 38/16
39/10 39/14 43/13 43/15 47/2 48/4 48/5
49/11 50/18 51/3 51/4 51/9 51/10 51/18
51/19 51/20
emailing [1]  40/2
emails [18]  6/5 14/2 21/24 22/2 22/3
22/6 22/8 23/9 23/13 23/20 24/18 27/8
29/4 32/10 37/20 46/10 46/10 47/15
emphasize [1]  35/19
employee [16]  6/14 6/19 10/5 13/25 22/6
22/7 22/10 22/15 22/18 29/5 31/9 31/18
32/5 32/11 34/1 42/24
employees [22]  6/7 6/8 9/24 16/17 19/9
20/8 21/22 22/3 23/14 24/11 25/13 26/2
26/5 28/20 28/23 31/10 31/15 35/12
40/19 43/20 47/7 47/14
employment [1]  6/15
encourage [2]  52/19 52/21 53/6
end [2]  20/6 31/10
ended [1]  24/6

engage [1]  17/17
engaged [1]  6/6
engaging [1]  8/11
enough [1]  5/3
enter [1]  23/5
entered [1]  31/1
entire [2]  43/19 46/9
entirely [1]  38/21
entities [1]  41/7
entitled [4]  41/7 45/5 55/6
entity [2]  12/24 16/18
equivalent [1]  28/14
ESQ [5]  1/15 1/16 2/3 2/4 2/4
essentially [2]  48/21 50/5
established [1]  20/21
et [2]  1/8 3/4
etc [3]  27/9 30/14 48/23
ether [1]  22/13
ethics [3]  31/9 31/18 32/5
even [23]  10/9 18/4 22/19 22/19 22/24
26/25 27/3 27/5 28/6 28/7 29/5 30/5
30/11 30/19 31/25 34/14 34/20 34/22
34/23 44/8 50/6 50/7 50/10
events [1]  25/2
eventual [1]  34/17
Eventually [1]  43/14
every [2]  6/13 23/2
everybody [1]  53/13
everyone [2]  38/23 54/19
everything [3]  12/25 21/6 51/3
exact [2]  6/19 18/8 20/1 31/2
exactly [5]  14/8 20/5 26/4 28/12 37/23
exaggeration [1]  25/20
examine [1]  43/21
example [3]  26/1 26/10 45/14
EXCHANGE [6]  1/3 1/16 3/3 3/8 3/10
21/19
excuse [2]  27/23 48/14
exhibit [2]  15/2 15/4
exist [1]  30/23
existed [1]  23/14
existence [4]  14/16 23/20 28/19 34/15
existing [1]  54/11
expansive [1]  28/1
expect [2]  13/20 41/12
explain [1]  37/22
explained [1]  10/19
explanation [2]  50/17 52/2
explanations [1]  18/15
extent [3]  18/8 34/3 45/18

**F**
F.2d [2]  19/21 20/12
fact [24]  6/17 7/14 9/2 11/5 12/8 19/1
25/1 27/25 28/6 29/14 29/19 29/19 29/25
30/1 31/2 32/7 41/11 41/16 41/21 41/23
43/18 47/13 49/22 54/7
facts [5]  20/20 21/16 32/2 35/9 46/24
factual [5]  15/12 16/14 17/3 23/2 33/18
factually [2]  30/18 30/24
failed [1]  36/7
failure [3]  15/7 15/10 15/24
fair [2]  41/1 45/17
fairness [1]  9/23
faith [2]  8/12 38/24
fallback [1]  33/21 46/19
familiar [1]  3/21
far [5]  23/1 23/2 26/7 29/13 35/11
fashion [1]  53/14
fast [1]  5/3

Federal [6]  13/19 18/12 20/7 25/25
26/14 45/2
feedback [1]  32/20
feel [2]  37/15 50/25
few [2]  21/7 21/15
figure [3]  31/6 39/3 52/22
file [4]  22/11 28/11 35/3 41/21
filed [8]  19/6 27/23 40/7 40/10 40/14
41/9 41/18 42/7
filer [1]  48/25
files [1]  12/24
filings [1]  8/3
filling [1]  48/22
filter [1]  24/2
final [2]  13/21 38/25
finally [1]  25/6
financial [1]  11/1
find [4]  8/12 11/11 20/20 26/18
fine [3]  38/22 38/23 45/9
finger [1]  16/22
FINRA [1]  8/5
fired [3]  42/1 42/2 42/11
firm [2]  9/2 14/1
first [13]  4/23 14/22 17/21 18/2 21/19
22/2 22/10 26/9 27/24 38/19 41/4 47/7
49/4
fit [1]  33/8
fits [2]  15/13 15/19
fitting [1]  18/20
five [6]  42/2 42/11 42/17 42/20 42/23
43/2
fix [2]  5/13 13/13
FL [1]  1/17
flagrant [5]  19/23 20/3 20/22 33/4 33/8
flippantly [1]  4/15
FLORIDA [3]  1/1 1/5 20/11
fluidity [1]  52/14
folder [1]  39/5
folks [2]  22/22 25/17
following [3]  14/12 18/12 23/25
FORD [20]  2/3 2/4 2/5 3/12 3/13 3/17
5/18 22/17 32/25 33/3 33/24 36/19 37/13
38/3 47/1 48/3 50/12 51/24 52/21 53/7
Ford's [1]  47/11
fordobrien.com [3]  2/7 2/7 2/8
foregoing [1]  55/4
foreign [1]  36/3
form [1]  35/7
formal [1]  41/18
formally [2]  25/6 36/15
former [19]  10/4 13/24 16/16 20/8 21/21
22/3 22/6 22/7 22/10 23/14 24/11 25/13
26/5 28/20 29/5 31/10 32/11 47/6 47/14
forms [1]  48/21
formula [1]  35/25
formulate [5]  18/5 23/20 24/19 29/16
30/20
forthcoming [2]  23/6 31/5
forward [5]  28/16 32/12 32/14 36/17
42/20
found [4]  10/11 10/18 13/11 14/9
four [3]  40/6 42/2 42/12
fourth [1]  38/20
frame [2]  22/5 26/4
Frank [10]  26/3 31/13 34/5 34/6 35/11
35/14 35/16 41/5 41/7 41/17
frankly [6]  6/7 10/10 13/16 28/17 31/9
31/16
Frantz [13]  9/24 19/9 41/4 41/10 42/2
43/5 44/20 44/24 46/14 47/8 49/5 49/21

**F**

Frantz... [1]  50/9
free [1]  37/15
Friday [3]  7/4 11/25 27/23
front [1]  39/2
fruit [1]  30/22
full [1]  8/4
fully [2]  28/24 29/2
function [1]  25/23
further [5]  7/19 14/12 35/6 44/24 52/10

**G**

gather [1]  18/13
gave [2]  51/4 51/5
general [1]  34/11
generally [3]  15/9 15/15 25/13
generically [1]  23/10
genesis [1]  23/4
Gentile [23]  2/4 3/12 8/3 9/2 12/3 13/5
 14/2 14/9 16/18 24/24 25/8 27/16 28/4
 28/10 28/24 29/20 29/23 30/13 31/19
 34/2 42/16 45/5 46/5
Gentile's [7]  13/15 23/5 23/21 26/8 26/17
 27/6 47/10
gentlemen [1]  10/5
get [11]  7/25 8/9 9/19 29/4 33/14 33/15
 35/10 44/4 53/10 54/7 54/15
gets [2]  4/23 28/6
getting [3]  20/7 47/24 51/1
give [3]  21/4 36/19 39/18
given [5]  29/25 30/2 43/18 50/18 52/7
 53/7 53/24 54/1
Gluck [8]  11/12 11/16 27/21 52/19 52/21
gmail.com [2]  2/12 55/9
go [15]  5/23 6/6 9/19 23/1 24/12 26/7
 27/15 28/14 28/15 29/19 35/17 42/10
 45/4 45/10 49/9
goes [2]  9/7 22/13
going [24]  5/8 8/7 12/7 12/23 12/25
 13/22 16/25 18/18 18/21 24/4 24/6 35/4
 37/10 37/20 37/22 39/3 39/14 39/16
 39/18 41/20 46/4 46/14 47/17 51/2
gone [1]  27/14
good [9]  3/7 3/9 3/11 4/11 9/15 13/3
 32/22 38/23 54/18
got [3]  12/21 43/7 43/14
gotten [2]  7/8 41/8
govern [1]  26/11
government [2]  19/14 35/21
grabbed [1]  9/21
grant [5]  41/12 41/14 45/6 46/4 46/20
Great [1]  37/23
grounds [2]  4/10 52/5
guess [8]  6/3 6/4 6/6 7/10 9/8 12/16
 17/13 42/15
guidance [4]  39/6 39/22 52/23 53/8
guidelines [1]  6/14
gun [1]  54/12
Guy [3]  2/4 3/12 10/11
guys [1]  7/15

**H**

had [26]  4/20 6/7 10/7 13/22 14/1 14/20
 14/25 17/24 19/2 23/12 23/15 23/16
 27/10 28/23 31/24 38/21 40/5 40/8 41/18
 42/4 48/5 48/6 49/21 49/22 50/13 50/23
hairs [1]  47/17
half [1]  39/24
HALPIN [3]  2/4 3/13 38/3
handbook [2]  6/14 10/6

handle [3]  23/22 27/8 32/11
handling [1]  23/9
hanging [1]  18/16
happened [10]  13/16 22/10 24/13 25/11
 28/9 38/1 41/2 42/19 43/6 49/7
happy [1]  32/16
has [45]  4/18 6/1 6/10 6/10 6/13 8/6 8/14
 8/20 9/3 9/12 11/16 11/21 12/3 12/11
 12/13 13/4 14/12 17/20 20/19 21/5 23/2
 24/17 25/22 27/6 28/4 31/1 31/2 31/17
 32/4 34/12 35/8 37/4 41/20 42/13 43/3
 44/5 46/5 46/6 47/3 47/15 49/14 50/3
 50/5 50/18 52/20
hasn't [3]  11/17 30/19 33/2
hat [1]  18/16
hate [1]  4/24
have [111]
haven't [11]  15/19 20/17 29/18 30/21
 31/4 33/5 33/10 33/19 39/16 40/9 41/14
having [4]  19/8 28/7 28/8 51/8
he [22]  10/12 10/19 10/20 11/12 11/16
 11/17 11/17 14/1 14/1 14/3 19/13 19/13
 24/25 27/9 29/6 31/20 31/22 34/3 39/10
 46/6 47/2 52/20
head [1]  9/20
hear [8]  4/9 4/10 5/15 21/12 24/7 32/23
 33/17 33/25
heard [12]  25/22 39/23 40/3 40/11 40/12
 40/12 40/13 42/19 46/7 50/15 50/24 54/2
hearing [5]  1/11 24/8 32/19 48/8 49/9
heart [1]  17/16
held [2]  3/2 45/25
help [1]  5/10
her [5]  40/3 40/13 42/4 50/19 51/5
here [33]  3/18 4/6 4/13 4/19 7/12 11/7
 11/13 13/17 19/18 20/5 22/14 22/22 25/21
 27/3 27/5 28/13 30/23 31/9 32/3 33/9
 33/16 33/19 35/8 37/1 37/8 38/4 38/24
 41/2 44/6 45/16 49/15 52/5 54/12
here's [4]  37/6 41/2 41/25 45/1
hereby [1]  55/4
herrings [1]  31/9
hey [3]  7/5 38/6 39/15
highlighted [2]  19/18 48/4
him [6]  29/22 43/17 45/6 47/12 53/25
 53/25
himself [1]  14/9
hinges [1]  43/19
hired [1]  11/13
his [2]  10/19 29/7
history [2]  30/3 30/14
hold [2]  39/17 46/15
honest [2]  50/25 52/6
Honestly [1]  18/18
Honor [53]  3/7 3/11 4/11 5/6 8/1 8/2 9/5
 9/8 9/12 13/7 13/22 14/18 15/14 15/16
 17/5 19/5 20/25 21/11 21/14 23/11 24/20
 26/22 32/16 34/8 36/21 37/22 39/23 40/8
 41/21 42/1 42/3 42/18 43/6 44/5 44/7
 44/12 44/13 46/3 46/13 46/14 46/20
 46/23 47/5 48/10 48/20 49/19 50/20
 51/14 51/23 53/21 54/7 54/17 54/18
Honor's [3]  17/10 40/15 44/8
HONORABLE [1]  1/12
hope [1]  50/21
hopeful [1]  34/16
Hopefully [2]  5/10 37/19
horse [1]  53/3
hour [1]  39/24
how [22]  4/19 9/8 12/25 13/22 15/12

15/19 16/7 17/23 18/3 18/13 22/8 23/22
 27/8 28/4 32/11 32/14 32/15 38/5 41/2
 44/2 46/1 52/22
however [2]  44/7 54/6

**I**

I'd [1]  33/24
I'll [2]  44/14 47/5
I'm [37]  3/16 4/24 4/24 14/18 14/21
 16/15 16/22 32/16 32/19 32/19 33/9
 36/21 36/24 38/10 41/14 42/25 43/24
 47/23 47/23
I've [1]  11/13
idea [5]  9/3 19/25 29/15 36/8 45/15
identifying [1]  30/8
if [72]
lgal [1]  27/23
III [1]  2/4
illegal [1]  31/15
illegally [1]  36/3
imagine [2]  8/17 14/6
immediately [2]  7/7 39/15
imply [1]  37/4
important [6]  8/1 24/12 25/2 27/15 39/8
 46/2
importantly [2]  8/24 28/3
impose [1]  20/19
impossible [1]  50/10
impression [2]  51/7 51/8
improper [3]  24/9 29/10 41/1
improperly [4]  22/25 29/15 29/22 30/10
 in [177]
inaccurate [2]  38/8 38/18
inaudible [4]  9/7 36/20 42/21 51/11
incendiary [1]  24/10
inclined [1]  46/20
include [2]  14/3 45/19
including [1]  21/21
inconsistency [2]  47/2 47/16
indirectly [1]  53/25
individual [2]  6/10 6/10
individuals [9]  6/24 6/25 26/2 29/3 29/9
 47/20 48/17 49/3 49/24
individuals' [2]  8/19 8/24
informal [1]  17/18
information [35]  11/1 11/2 11/5 11/6
 21/20 24/7 25/18 25/24 26/1 26/3 26/16
 28/21 28/25 29/16 29/20 30/3 30/6 30/8
 30/12 30/15 31/7 31/11 32/15 35/17
 35/18 35/19 35/25 36/9 42/22 43/12 47/5
 47/14 47/20 48/23 49/1
informed [1]  14/16
inherent [11]  16/10 16/24 18/9 18/19
 33/22 34/10 34/12 34/19 34/22 44/5 52/7
initial [10]  17/25 18/25 19/2 19/3 19/6
 19/16 22/1 22/4 42/5 42/6
inquire [1]  21/12
insiders [1]  21/21
instead [2]  16/6 24/8
instructed [2]  29/3 44/25 45/22
instructing [1]  44/24
insufficient [2]  9/5 19/4
intend [1]  54/7
intended [1]  37/3
intentionally [1]  16/3
interested [1]  52/24
INTERNATIONAL [2]  1/7 3/4
interpret [1]  20/23
interpretation [1]  52/8

interrupt [1] 4/25
interruption [1] 5/5
intervention [1] 26/19
into [11] 6/4 6/6 7/25 15/13 22/13 23/1 23/5 26/7 27/8 36/5 45/16
investigating [1] 35/22
investigation [3] 8/6 12/21 12/22
investigations [1] 13/1
investigative [1] 25/9
investigatory [1] 12/23
invited [1] 38/15
inviting [1] 14/24
involuntary [2] 27/2 27/11
involved [2] 14/2 39/25
involving [1] 9/1
irrelevant [3] 45/18 46/5 46/9
is [254]
isn't [5] 24/3 31/14 33/12 35/20 35/24
issue [14] 10/19 13/14 14/22 15/25 19/17 36/5 39/1 44/23 45/3 45/11 46/7 52/25 53/5 53/12
issued [2] 24/24 53/3
issues [4] 19/17 28/8 30/7 31/8
issuing [1] 26/11
it [123]
it's [4] 16/2 33/13 37/20 51/22
its [7] 13/1 13/3 13/17 29/16 30/4 30/16 48/14

J
January [1] 25/7
jemancari [2] 2/12 55/9
Joanne [3] 2/11 55/8 55/8
job [3] 6/20 17/6 36/13
joint [16] 7/5 11/13 11/25 12/2 16/3 25/4 25/7 27/18 36/6 44/22 45/9 45/21 45/21 46/16 46/16 52/20
JOL [1] 27/24
JOLs [1] 29/24
judge [22] 1/12 3/9 3/16 4/1 5/7 5/13 5/15 5/22 7/25 9/13 18/22 19/19 36/24 37/1 37/8 37/20 37/25 39/2 39/7 39/8 39/22 40/15
judges [1] 33/12
jump [1] 54/12
jurisdictional [1] 54/4
just [56]

K
keep [1] 10/6
kicked [1] 13/22
kind [3] 19/1 34/24 53/14
knew [4] 10/6 40/5 43/9 50/13
know [40] 6/2 6/20 6/21 7/3 7/22 8/2 8/5 8/15 8/17 9/14 9/25 10/3 10/7 10/8 11/4 11/13 11/16 12/25 17/21 18/1 18/21 23/23 29/17 36/14 37/6 37/20 37/21 38/8 40/1 40/9 40/17 41/3 41/18 41/18 43/6 44/1 45/15 45/17 46/10 52/10
knowing [1] 6/23
knowingly [1] 17/15
known [1] 28/24
knows [4] 6/22 7/2 8/15 26/22

L
lack [1] 30/17
lacks [1] 27/16
lambasted [1] 28/21
LANDY [1] 2/5

laptop [1] 29/6
laptops [3] 28/23 29/1 29/3
last [4] 11/24 25/1 38/7 42/13
late [1] 22/8
later [2] 42/20 49/7
laundry [2] 20/20 35/8
law [14] 9/2 10/14 10/18 10/24 11/10 14/1 14/8 25/15 31/8 32/2 34/6 40/23 41/19 42/25
Law360 [1] 4/2
laws [11] 10/22 21/23 29/12 30/11 31/18 31/18 32/8 32/8 35/13 36/2 42/17
lawyer [4] 11/11 11/19 37/7 43/15
lead [1] 13/23
learned [1] 22/5
least [2] 4/21 38/18
leave [3] 6/15 6/20 30/8
left [1] 43/24
legal [1] 9/15
legally [1] 30/25
let [19] 3/18 4/9 4/12 4/18 5/7 6/2 8/13 17/5 18/24 21/15 27/1 27/15 37/12 37/22 38/7 40/19 44/4 50/12 51/7
let's [6] 18/14 19/1 25/1 28/7 30/7 41/5
letter [2] 18/8 44/12
letters [1] 45/11
level [1] 36/1
license [1] 14/8
light [1] 22/3
lightly [2] 4/15 43/8
like [16] 5/21 6/13 7/6 9/6 14/5 18/18 18/20 20/20 22/11 24/3 30/1 33/24 44/13 50/25 52/2 54/10
likely [1] 54/7
limbo [1] 52/23
limitations [2] 42/24 43/2
limited [1] 46/12
line [4] 38/7 38/25 39/8 42/10
lines [2] 32/24 52/12
liquidated [1] 31/25
liquidation [1] 25/3
liquidator [4] 7/5 11/21 46/16 46/17
liquidators [23] 11/13 12/1 12/2 16/3 25/4 25/5 25/8 27/18 27/20 27/22 27/25 31/25 32/4 32/6 36/6 36/9 36/10 36/12 44/23 45/9 45/21 45/21 54/8
liquidators' [2] 28/4 52/20
list [4] 7/20 19/7 20/20 35/8
litigation [6] 7/24 8/4 8/23 45/16 45/20 46/18
little [6] 10/25 17/13 33/22 51/12 51/17 52/2
LLP [1] 2/5
loading [1] 37/21
lobbying [1] 24/10
local [2] 27/4 53/2
lodging [1] 17/23
long [7] 16/22 17/11 17/13 17/23 18/3 21/6 30/14
look [6] 9/13 24/13 32/2 32/25 36/4 38/7 38/15 38/25 40/21
looked [6] 20/17 29/18 30/19 39/24
looking [3] 16/12 32/2 37/12
looks [3] 24/21 24/22 24/23
lot [3] 33/12 37/2 49/6
lots [1] 8/3
louder [1] 5/4
LTD [2] 1/8 3/4

M
made [5] 23/2 42/5 50/19 50/21 50/22
Madison [1] 2/5
magistrate [2] 1/12 33/12
main [1] 8/10
maintained [1] 6/9
majority [1] 26/23
make [20] 4/15 8/13 15/7 27/16 27/17 31/16 32/3 33/23 34/3 34/6 35/14 43/21 43/23 43/25 45/12 46/4 47/24 48/1 54/11 54/12
making [7] 5/25 9/7 28/1 31/19 45/12 51/22 53/18
management [1] 50/5
Mancari [2] 2/11 55/8 55/8
manual [1] 31/18 32/5
many [3] 14/2 26/2 26/22
March [3] 22/8 47/8 49/5
mark [1] 23/2
marshaling [1] 28/2
match [1] 20/1
materials [4] 16/16 18/11 19/2 50/6
matter [2] 8/22 55/6
matters [3] 28/24 28/25 35/15
MATTHEW [2] 2/4 3/13
may [31] 4/20 7/11 7/14 8/2 10/20 14/9 14/15 14/15 14/17 14/21 14/21 14/23 17/20 21/8 21/12 22/16 29/19 29/21 31/5 32/17 34/21 35/7 35/19 38/1 38/5 38/13 40/2 40/10 44/9 46/23 52/2
maybe [9] 10/20 14/7 16/21 37/21 40/16 40/17 44/4 51/5 53/10
me [45] 3/12 3/18 4/9 4/12 4/18 5/7 5/15 6/2 8/13 10/15 11/22 15/9 15/12 15/19 16/13 16/13 16/20 17/2 17/5 18/18 18/24 21/12 21/15 27/15 27/23 32/17 33/6 33/10 33/13 37/12 37/22 38/8 40/3 40/4 40/5 40/5 40/19 41/20 44/4 48/15 48/18 50/12 50/16 51/7 52/18
mean [8] 16/20 18/21 34/25 37/17 42/10 42/11 46/2 47/23
meaning [1] 50/7
means [2] 16/7 45/7
meant [1] 51/10
meet [7] 22/16 26/18 27/4 27/9 39/2 49/20 53/7
meeting [1] 53/1
member [1] 54/3
memorializing [1] 14/23
men [15] 11/14 39/4 41/11 41/16 41/21 41/25 42/8 42/11 43/12 43/16 43/19 43/23 44/2 46/17 49/6
men's [1] 10/19
meritless [1] 29/9
merits [2] 7/25 33/4
mford [1] 2/7
Miami [3] 1/5 1/17 22/22
microphone [1] 5/2
might [8] 13/23 17/22 17/23 22/8 22/9 23/25 45/17 45/18
Miller [3] 10/15 10/17 11/8
MINTBROKER [6] 1/7 3/4 6/12 7/3 11/20 16/2
MintBroker's [1] 16/1
minute [1] 40/19
minutes [1] 21/7
misconduct [4] 6/1 13/3 14/11 21/22
misheard [3] 14/25 40/5 40/5
misremember [1] 38/22
missed [2] 23/2 51/14

**M**

missteps [1]  53/16
mistaken [1]  50/15
Misuse [1]  10/21
misused [1]  22/25
moat [1]  30/22
Monopoly [1]  28/14
more [6]  9/19 19/17 26/7 28/3 35/24 46/12
morning [4]  3/7 3/9 3/11 4/11
most [5]  8/24 14/2 26/23 27/15 32/12
motion [21]  1/11 4/6 21/18 21/25 24/9 24/14 28/11 28/16 30/24 30/25 33/21 35/4 36/15 36/17 40/7 40/10 40/14 50/15 52/13 53/6 54/15
move [4]  5/8 32/12 32/14 36/17
Mr [1]  50/9
Mr. [71]
Mr. Cooper [1]  10/4
Mr. Dorsett [9]  41/9 42/1 43/5 44/20 44/24 46/15 47/7 49/4 49/21
Mr. Ford [14]  5/18 22/17 32/25 33/3 33/24 36/19 37/13 38/3 47/1 48/3 50/12 51/24 52/21 53/7
Mr. Ford's [1]  47/11
Mr. Frantz [10]  41/4 41/10 42/2 43/5 44/20 44/24 46/14 47/8 49/5 49/21
Mr. Gentile [21]  8/3 9/2 12/3 13/5 14/2 14/9 16/18 24/24 25/8 27/16 28/4 28/10 28/24 29/20 29/23 30/13 31/19 34/2 42/16 45/5 46/5
Mr. Gentile's [7]  13/15 23/5 23/21 26/8 26/17 27/6 47/10
Mr. Gluck [7]  11/16 27/21 52/19 52/21 53/7 53/24 54/1
Mr. Halpin [1]  38/3
Ms [1]  32/23
Ms. [25]  3/20 4/2 4/3 14/3 21/7 21/10 37/2 39/23 40/2 40/8 42/3 43/11 44/8 46/1 46/7 48/2 50/18 50/22 51/3 51/3 51/13 51/18 52/2 52/21 53/7
Ms. Bolado [3]  3/20 4/2 4/3
Ms. Sum [19]  14/3 21/7 21/10 37/2 39/23 40/2 40/8 42/3 43/11 46/1 46/7 48/2 50/18 50/22 51/3 51/3 51/18 52/21 53/7
Ms. Sum's [3]  44/8 51/13 52/2
much [8]  3/25 5/16 5/18 5/19 5/24 19/14 53/22 54/14
multi [1]  38/25
multi-line [1]  38/25
must [4]  6/15 6/20 26/4 51/14
my [25]  3/12 4/17 5/5 5/7 5/13 7/12 10/10 14/8 14/13 14/19 16/22 32/21 37/1 37/11 37/19 37/21 38/2 38/16 39/12 40/12 44/11 50/21 51/8 53/11 55/5
myself [6]  3/17 7/12 9/2 21/1 22/13 53/18

**N**

name [1]  30/7
names [1]  29/10
necessarily [2]  34/21 40/25
necessary [1]  21/17
need [5]  17/2 18/21 42/22 53/8 53/11
needed [1]  39/1
needs [2]  45/4 52/16
neither [1]  37/4
neutral [1]  38/11
never [13]  7/16 10/1 16/1 24/25 25/22
29/3 30/13 35/10 39/24 40/13 41/23 48/19 50/25
New [2]  2/6 11/12
newspaper [1]  8/3
next [4]  7/15 38/5 38/13 41/13
night [2]  7/4 52/3
Ninth [1]  13/9
nitpicky [1]  18/21
no [25]  1/2 3/4 3/22 3/22 5/6 6/12 7/8 7/13 10/4 12/3 27/10 27/11 30/24 30/25 31/1 34/13 35/11 43/17 47/16 51/19 53/12 53/12 53/16 53/20 53/21
nobody [1]  50/2
non [14]  22/12 39/10 39/14 40/4 41/6 41/7 46/8 46/10 48/5 51/4 51/9 51/9 51/10 51/20
non-Dorsett [1]  40/4
non-email [7]  39/10 39/14 48/5 51/4 51/9 51/10 51/20
non-emails [1]  46/10
non-party [1]  46/8
non-technically [1]  22/12
non-U.S [2]  41/6 41/7
none [1]  22/23
nonevent [1]  24/15
nonparty [1]  7/21
nor [2]  37/4 40/25
normal [1]  31/14 45/4 45/10
not [113]
Notably [1]  30/5
note [14]  13/21 14/24 26/16 52/19
noted [4]  11/19 23/8 24/20 27/3
notes [1]  38/4
nothing [12]  13/12 26/14 26/20 29/12 30/12 31/15 33/19 34/22 43/12 47/15 48/6 49/15
notice [1]  29/25
notify [1]  26/17
notifying [1]  28/18
noting [1]  28/3
notwithstanding [2]  6/23 8/8
novel [1]  6/17
now [48]  5/14 6/2 6/12 6/17 6/23 7/2 7/3 7/10 7/25 8/5 8/11 8/13 9/14 9/23 11/16 12/14 14/5 16/24 17/21 18/16 18/24 25/5 26/7 26/7 27/6 28/6 28/20 28/20 29/13 32/1 35/15 37/6 38/13 38/25 39/8 40/15 40/19 41/11 41/25 42/9 48/15 50/17 51/12 51/14 52/23 53/11 53/16 53/25
number [4]  22/6 22/15 29/6 43/15
numbers [1]  43/14
numerous [1]  25/11
NY [1]  2/6

**O**

O'BRIEN [1]  2/5
oath [1]  7/13
object [3]  46/5 46/8 46/11
objection [3]  14/7 16/21 29/25
objections [5]  27/17 28/5 28/11 45/11 54/5
obligation [3]  15/21 35/22 36/11
obligations [1]  13/12
observe [1]  3/20
observed [1]  3/21
observing [1]  52/20
obtain [2]  15/24 30/3
obtained [4]  7/23 8/20 39/4 39/20
obvious [1]  24/21
obviously [6]  6/17 13/8 18/10 51/16
occasions [1]  49/6
occur [3]  27/5 28/13 30/23
occurred [2]  4/19 31/2
occurrence [1]  31/14
off [2]  4/12 41/4
offended [1]  13/16
officer [1]  10/4
official [1]  25/5
often [2]  26/1 43/9
oh [1]  27/8
OK [26]  4/5 5/24 6/4 8/19 8/22 9/7 9/13 9/18 11/14 15/5 17/21 18/14 19/7 21/2 24/18 32/22 33/7 37/19 38/18 38/22 42/3 44/4 44/9 45/23 46/1 49/25
on [68]
once [1]  13/11
one [26]  5/7 6/9 12/8 13/21 13/23 22/6 22/15 23/15 24/21 24/22 24/23 27/15 28/6 29/5 31/19 32/10 32/11 34/15 40/2 41/5 43/14 43/15 43/16 44/12 47/7 49/4
one-page [1]  44/12
only [6]  4/22 11/6 12/7 13/6 14/6 27/18
onto [1]  39/17
operating [3]  29/22 36/2 41/17
opportunity [4]  21/4 41/15 45/11 46/5
opposed [1]  51/6
opposite [1]  31/2
option [1]  7/12
options [1]  20/19
or [50]  4/15 6/16 6/21 10/1 10/20 11/1 11/2 11/18 12/21 13/10 14/25 15/7 16/13 17/2 17/25 19/9 23/24 24/2 26/13 26/21 28/11 29/4 29/4 31/18 31/18 31/18 32/24 32/5 32/8 32/17 34/4 34/16 34/21 35/16 38/8 38/18 39/9 41/9 43/5 44/15 48/14 48/24 51/9 52/6 52/6 52/7 53/10 53/15 54/4 54/5
orally [1]  9/11
order [26]  11/2 12/10 12/16 12/20 23/6 23/13 26/24 27/7 28/11 30/15 31/1 33/2 33/2 33/5 33/10 33/14 33/16 34/14 35/4 35/6 36/8 44/23 46/13 53/5 53/9 54/15
ordered [3]  11/21 12/11 44/18
orders [2]  53/12 54/11
OTAZO [1]  1/12
OTAZO-REYES [1]  1/12
other [18]  6/10 6/13 12/1 12/19 12/21 17/19 21/5 22/18 23/16 28/18 34/1 40/1 41/25 43/15 44/14 50/9 51/4 51/12
others [1]  13/18
otherwise [1]  29/4
our [25]  4/21 4/21 7/5 7/20 9/9 11/19 14/1 15/2 17/7 17/16 19/21 24/19 24/19 27/3 27/16 38/9 44/13 46/19 46/20 48/13 50/5 50/7 51/7 53/2 54/5
ourselves [1]  39/3
out [20]  4/20 14/1 19/12 19/13 19/15 25/14 26/6 31/6 34/7 39/3 40/10 41/21 43/16 43/17 45/14 46/1 52/22 54/7
outreach [1]  42/15
outside [3]  7/23 9/7 25/25
over [27]  5/23 6/25 8/4 10/13 11/1 11/14 11/22 12/3 12/4 12/12 12/15 12/23 13/24 14/3 14/5 17/19 22/4 29/6 29/20 33/24 39/11 39/15 39/19 39/21 42/15 45/22 46/18
overall [1]  47/15
overreaction [1]  24/14
own [1]  53/9

**P**

pages [2]  1/9 20/14
paint [1]  29/9
panoply [1]  33/6
papers [2]  14/13 15/2
par [1]  25/20
paragraph [5]  38/19 38/20 38/20 38/20 39/1
parcel [1]  25/22
parked [1]  50/5
part [7]  12/8 12/21 24/16 25/7 25/22 38/18 53/11
partially [1]  53/10
particular [1]  8/6
particularly [1]  52/7
parties [9]  17/17 18/10 18/11 36/17 38/22 45/19 52/19 52/25 54/7
party [21]  6/5 6/5 6/6 6/12 7/2 9/7 9/21 12/24 13/11 16/2 16/4 16/5 17/16 19/22 20/8 24/5 26/12 35/20 35/20 46/8 46/8
pass [1]  28/14
passed [1]  34/14
passing [1]  52/3
past [1]  28/6
path [1]  36/17
Pause [1]  5/12
people [4]  15/9 33/13 33/14 43/9
Pepsi [1]  35/25
percent [1]  26/24
perfect [1]  37/23
perfectly [1]  52/6
perhaps [2]  24/2 35/4
perjurious [1]  43/7
perjury [1]  43/9
permission [1]  3/20
person [2]  37/8 48/22
persons [1]  27/18
perspective [2]  28/4 37/2
perusing [1]  16/11
phone [5]  4/23 23/12 27/7 43/14 43/14
phrase [1]  25/19
piece [1]  36/13
place [1]  54/5
Plaintiff [1]  1/5 1/15
play [2]  25/2 48/8
pleadings [1]  20/21
please [6]  3/6 3/23 31/6 38/7 40/4 43/21
plus [1]  50/14
point [18]  5/25 6/3 8/10 8/13 13/5 13/23 17/2 17/18 19/11 26/20 41/25 44/8 44/9 49/17 52/11 52/15 53/3 53/17
pointed [1]  13/9
points [3]  27/15 32/17 33/23
poisonous [2]  30/22 34/4
policy [2]  6/19 10/1
position [4]  5/17 27/19 40/21 46/19
possession [8]  6/4 6/24 8/24 21/25 22/3 44/16 44/20 45/21
possibility [1]  22/2
possible [2]  28/18 35/18
possibly [3]  11/7 39/25 42/18
potential [7]  21/22 23/9 25/15 31/11 34/18 35/13 36/11
potentially [1]  53/9
power [1]  52/7
powers [1]  16/25
practice [1]  41/1
predates [1]  47/15
predicate [2]  33/1 33/20
prefer [1]  12/17

prejudice [4]  52/14 52/18 53/6 54/16
prejudiced [1]  19/8
prepared [2]  14/4 39/11
present [2]  27/3 38/4
presentation [1]  50/21
press [1]  37/18
presumably [2]  9/15 11/5
presume [1]  8/24
pretty [1]  24/20
prevents [1]  26/15
previously [3]  24/24 47/19 49/23
primary [1]  46/20
prior [6]  11/20 22/1 30/3 33/14 40/6 50/21
privacy [5]  11/3 30/6 31/8 31/18 32/8
private [1]  35/20
privilege [3]  9/5 34/18 45/18
privileged [4]  8/25 9/1 23/24 23/24
problem [5]  5/6 25/7 37/1 37/8 49/1
problems [2]  24/1 31/24
procedural [2]  9/10 27/12
Procedure [7]  13/19 18/12 20/7 25/25 26/15 28/10 45/6
proceed [1]  18/23 52/22 54/10
proceeding [2]  17/1 54/13
proceedings [3]  3/2 3/22 25/3
process [10]  19/24 20/3 20/6 23/21 24/7 29/7 31/6 32/15 34/17 44/5
processed [4]  23/15 28/12 36/5 50/8
processing [3]  21/17 22/14 22/20
produce [4]  8/15 15/10 25/9 41/15
produced [9]  8/5 24/25 39/5 47/9 47/21 48/6 48/16 49/12 51/17
production [14]  23/7 23/7 24/19 24/21 26/10 26/12 30/15 30/21 41/13 48/13 48/16 50/3 51/15 51/19
productive [1]  32/12
program [1]  47/21
prohibiting [1]  36/8
promptly [1]  41/15
proper [2]  15/25 52/11
propose [1]  23/21
proposition [1]  20/18
propounded [1]  48/16
prosecute [1]  30/16
prosecuting [1]  35/22
protect [1]  5/4
protected [5]  12/10 35/14 35/19 41/5 41/19
protection [4]  10/21 26/3 32/8 41/12
protections [5]  31/12 34/6 35/11 35/15 45/5
protective [3]  12/20 23/6 28/11
protocols [1]  7/23
prove [1]  8/11
provide [6]  34/10 35/17 42/22 47/5 48/21 49/1
provided [7]  31/11 39/10 39/22 41/9 47/20 49/23 51/13
providing [2]  48/22 48/24
provisional [1]  25/4
public [1]  54/3
purport [1]  9/24
purpose [1]  48/19
pursuant [1]  4/7
push [1]  36/17
put [10]  9/23 11/18 16/22 18/14 24/13 35/24 39/2 41/5 41/7 51/7
putting [4]  9/10 27/14 33/9 53/2
puzzle [1]  36/13

**Q**

question [8]  17/10 35/12 47/11 47/18 49/20 49/22 50/19 50/21
questions [8]  9/12 14/13 14/14 21/6 32/17 53/19 53/20 53/22
quickly [1]  19/19
quite [1]  10/9
quote [1]  29/16
quote-unquote [1]  29/16

**R**

rampant [1]  31/24
rare [1]  4/16
rather [1]  21/15
reach [2]  53/14 54/7
reached [7]  4/20 14/1 19/13 25/14 26/5 43/16 43/17
reacted [1]  40/18
read [3]  33/5 33/10 39/6
reading [1]  21/4
ready [1]  53/15
real [2]  18/4 29/14
realize [1]  8/2
really [28]  8/1 8/11 9/14 13/2 13/18 15/16 17/3 17/14 18/20 24/10 26/4 28/9 31/16 32/10 33/10 34/2 34/25 36/16 45/2 45/16 45/17 45/24 46/2 46/4 48/8 50/22 51/1
reason [4]  13/18 16/4 19/9 42/20
reasons [1]  6/6
rebut [1]  21/4
recall [1]  39/12
receive [3]  24/17 25/18 39/6
received [14]  10/5 14/20 16/6 16/16 17/22 18/2 19/8 19/11 24/8 24/16 42/4 48/7 48/14 52/4
receives [3]  21/20 25/12 25/24
receiving [3]  16/19 17/11 26/15
recommend [1]  53/13
record [6]  3/6 5/4 34/7 48/1 52/17 52/17
recording [3]  1/11 3/22 55/6
records [22]  6/9 6/15 6/24 7/3 7/3 7/5 7/11 10/23 11/4 21/24 22/9 22/12 22/15 23/9 25/18 26/18 28/2 29/23 30/1 30/2 36/5 36/7
red [1]  31/9
redact [2]  30/7 30/7
referenced [1]  23/10
referrals [2]  25/12 48/21
referred [1]  49/11
reflect [1]  38/11
refused [2]  43/23 43/24
refute [1]  10/16
refuted [1]  10/3
regard [1]  26/4
regarding [9]  17/23 27/7 31/8 31/11 33/24 49/6 50/18 52/8 53/7
regularly [1]  21/20
regulatory [4]  21/20 25/18 35/21 40/24
related [1]  54/4
relevant [5]  8/22 11/7 29/24 30/15 45/20
relief [5]  34/10 35/1 35/7 46/21 53/1
rely [1]  43/21
relying [1]  20/10
remedy [2]  13/6 27/12
remember [4]  4/16 4/17 37/17 38/1
remembering [1]  10/10
Remind [1]  48/18
reminded [1]  19/19
remotely [2]  34/23 37/11

**R**

repeat [1]  5/24
reply [3]  11/19 19/21 36/22
report [1]  41/19
reporter [3]  2/11 4/2 55/9
reports [4]  41/9 41/13 41/16 41/22
represented [1]  43/17
request [13]  10/14 14/10 23/7 26/10 26/12 29/14 36/6 44/11 44/13 45/1 46/13 48/16 52/11
requested [3]  12/13 46/20 54/9
requests [7]  4/15 12/24 24/19 24/21 29/19 30/20 45/12
require [2]  26/19 28/10
required [1]  53/2
requirement [1]  27/4
requires [1]  48/12
requiring [1]  35/5
resolution [3]  34/17 44/4 53/8
respect [7]  17/9 18/12 27/19 29/5 34/12 35/15 44/25
respectfully [3]  40/8 42/12 42/18
respond [6]  11/18 15/1 18/15 21/7 26/13 44/9
responded [1]  9/9
responds [1]  38/15
response [8]  11/24 13/3 24/20 27/3 27/16 28/17 43/17 44/15
responsive [1]  23/7
rest [1]  14/13
restricted [2]  8/21 8/21
retained [2]  29/1 44/17
retaliation [1]  35/16
retention [1]  29/2
return [2]  6/21 10/1
returned [2]  6/16 10/7
review [13]  7/8 7/18 7/20 9/4 24/5 34/16 34/18 37/3 40/16 45/12 47/19 47/20 50/8
reviewed [7]  7/10 8/16 22/15 22/23 23/16 31/4 33/20 37/5 39/9 39/14 39/16 39/16 39/17 40/3 40/9 47/3 47/11 48/5 49/21 50/3 50/11 50/13 51/4
reviewing [4]  7/14 7/16 24/16 24/17
REYES [1]  1/12
rid [1]  29/4
right [39]  3/14 3/18 4/5 4/6 5/9 5/14 9/9 10/24 14/5 14/19 15/3 15/5 15/14 15/22 15/25 17/12 17/18 18/14 19/10 21/2 21/9 21/15 32/1 36/19 37/7 37/8 38/24 40/2 40/16 44/15 46/22 50/12 50/15 51/21 51/24 52/23 53/11 53/24 54/10
rightfully [1]  44/22
rights [2]  13/15 28/1
rogatory [1]  45/11
role [1]  48/8
room [1]  5/17
rough [1]  22/5
round [1]  34/7
route [2]  16/25 31/6
routinely [1]  25/24
RPR [2]  2/11 55/8
rule [43]  4/7 4/8 4/8 4/8 15/6 15/6 15/6 15/9 15/13 15/15 15/16 15/17 15/18 15/19 15/20 15/25 16/10 16/12 16/22 17/1 17/1 17/2 17/3 17/7 17/7 17/10 18/8 18/9 18/14 18/16 18/16 18/19 19/25 26/10 26/10 26/21 26/21 27/4 32/25 45/13 48/12 52/6 52/6
ruled [1]  19/22
rules [12]  3/21 13/19 18/12 20/7 25/25

26/11 26/14 28/9 28/10 35/3 45/6 53/2
ruling [1]  2/21
rulings [1]  53/11
run [1]  20/6

**S**

said [40]  7/15 7/16 9/25 10/17 10/17 10/20 14/6 14/15 15/5 17/20 20/25 23/5 23/18 24/3 33/3 33/11 34/3 36/22 38/4 38/6 38/9 38/11 38/14 38/17 38/21 38/23 39/13 39/15 40/2 40/3 40/8 40/11 40/18 43/11 45/3 50/23 50/25 51/16 51/18 54/10
salient [1]  46/24
same [5]  6/19 17/8 17/8 45/25 48/15
sanction [7]  13/17 24/15 27/1 44/6 44/15 46/3 52/15
sanctions [25]  4/7 4/8 4/12 4/14 15/8 15/10 16/19 20/19 21/18 21/25 24/9 24/14 27/1 27/10 28/16 29/15 30/18 32/25 33/1 33/7 33/13 35/7 36/15 52/5 52/13
satisfactory [1]  24/3
satisfied [1]  50/17
savvy [1]  22/13
saw [1]  43/9
say [27]  7/17 9/12 9/17 12/1 17/22 18/2 19/1 21/8 22/13 25/24 28/7 34/21 34/21 36/22 37/6 39/1 39/19 40/1 40/3 40/11 40/21 42/25 43/8 46/7 48/25 50/7 53/12
saying [18]  9/18 9/19 13/23 16/24 18/25 19/3 20/17 20/22 33/19 34/1 34/3 38/6 39/12 45/2 45/15 47/1 48/3 49/14
says [9]  10/4 10/23 11/13 20/2 20/22 38/7 39/24 51/3 51/13
scenario [3]  15/12 16/14 17/3
screen [4]  37/11 37/15 37/25 47/3
search [2]  10/10 10/11
SEC [115]
SEC's [4]  16/19 25/16 30/3 51/6
sec.gov [1]  1/18 1/19
second [9]  5/8 21/24 22/7 22/18 32/11 33/14 35/1 38/19 47/8
seconds [1]  5/9
Secrecy [1]  10/25
section [2]  17/2 48/25
sections [1]  18/4
securities [16]  1/3 1/16 3/3 3/8 3/10 21/19 21/23 25/15 29/11 30/11 31/11 31/23 35/22 36/2 42/17 42/25
see [17]  3/18 5/14 16/13 17/5 18/19 20/9 20/14 33/16 35/12 37/22 38/16 38/19 41/12 51/15 52/17 53/25 53/25
seek [3]  16/5 16/6 46/17
seeking [4]  4/13 14/10 16/18 52/16
seem [5]  5/2 32/23 33/6 33/21 45/17
seems [4]  12/22 19/13 40/20 47/1
seen [1]  41/14
segregated [1]  39/5
send [2]  7/20 26/3
sensational [1]  32/13
sense [4]  10/2 34/7 43/25 51/22
sent [7]  14/21 14/23 22/4 23/16 26/1 35/20 35/25
separate [2]  16/18 39/5
separation [2]  29/1 29/7
sequence [1]  25/2
serious [4]  4/14 13/14 14/11 47/25
set [2]  23/15 35/3
sets [1]  25/2

several [1]  2/21
severe [2]  4/14 14/11
severity [1]  5/25
shalpin [1]  2/8
share [4]  22/11 37/11 37/15 37/16
shared [1]  47/2
she [13]  37/2 37/3 37/4 39/24 40/2 40/5 40/5 40/5 40/6 40/11 40/13 51/9 51/13
ships [1]  52/2
short [1]  44/12
shortly [1]  18/4
should [9]  1/8 13/16 13/17 17/22 18/1 28/9 31/22 36/4 36/5 36/12 44/14 44/17 44/17 44/23 45/10 45/10 45/11 45/16 46/17
show [1]  15/10
shut [1]  42/13
side [5]  17/19 28/18 41/6 41/8 49/14
signal [1]  52/4
significance [1]  14/17
significant [1]  30/6
similar [2]  10/22 13/10
simply [10]  14/11 23/1 24/14 27/2 28/16 29/17 35/9 35/24 44/3 49/8
since [3]  39/17 42/13 46/9
single [1]  28/6
sir [2]  5/19 50/12
sit [2]  22/14 46/15
sitting [1]  52/23
situation [5]  9/6 14/8 25/17 35/24 52/14
situations [2]  15/15 25/12
skip [1]  16/25
slice [1]  36/13
slow [1]  5/4
so [88]
soliciting [1]  30/10
solution [1]  26/19
some [23]  6/3 7/11 7/14 8/16 8/16 12/21 15/1 17/2 17/2 18/24 19/11 27/14 28/7 31/4 31/5 32/19 33/3 40/16 44/14 52/11 52/11 52/23 53/14
somehow [1]  5/2 22/25 36/8
someone [4]  12/13 13/25 22/12 37/17
something [17]  5/8 16/13 24/3 25/20 25/21 32/24 34/4 34/4 36/22 37/18 38/17 38/21 40/18 47/24 48/7 52/4 52/12
sometimes [2]  33/14 33/15
soon [1]  43/6
sorry [10]  3/16 4/24 4/24 14/18 14/21 32/19 36/21 36/24 47/23 47/23
sort [17]  8/10 10/1 12/17 16/9 17/8 18/20 19/17 20/1 20/20 32/24 33/21 37/1 38/25 39/2 50/22 52/23 53/2
sought [2]  3/20 52/24
sounds [1]  18/18
SOUTHERN [1]  1/1
space [1]  35/18
speak [3]  5/4 28/20 39/23
speaking [6]  3/15 3/17 5/3 16/11 22/22 36/25
specific [1]  22/6
specifically [1]  17/9
spent [1]  37/2
spirit [1]  18/7
split [1]  47/17
spring [1]  6/4
stamp [2]  47/10 47/22
standard [1]  34/20
standards [2]  17/8 45/25
standing [9]  27/16 27/19 28/4 28/8 28/8

## S

standing... [4]  46/6 46/7 46/11 46/12
stands [3]  20/18 48/19 48/20
start [10]  3/19 4/12 5/21 5/23 7/8 12/15
13/23 21/15 34/9 34/23
started [2]  7/16 22/8
starting [1]  26/20
starts [1]  34/25
state [2]  3/6 7/13
stated [5]  22/16 46/24 49/4 50/4 50/15
statement [7]  23/2 47/3 47/25 48/3 49/11
50/18 51/13
statements [2]  50/19 50/23
STATES [4]  1/1 1/12 10/22 31/12
stating [2]  21/15 27/23
statute [2]  42/24 43/2
stay [1]  54/5
steal [2]  10/23 34/7
stealing [1]  28/21
Steel [3]  19/21 20/11 20/12
step [1]  34/15
STEPHEN [2]  2/4 3/13
still [7]  8/9 15/19 16/4 16/22 44/6 44/14
50/25
stole [1]  34/2
stolen [16]  6/24 7/8 7/22 8/13 9/21 11/14
12/4 13/12 17/15 18/5 18/11 20/7 25/17
29/8 29/16 31/14
stop [1]  5/7
story [2]  43/4 44/1
straight [2]  28/15 33/15
strange [2]  51/12 51/17
strategy [1]  18/6
striking [1]  20/21
stronger [1]  11/1
stuff [1]  34/2
stunning [3]  10/9 11/23 11/23
subject [3]  8/21 49/9 50/1
submit [4]  11/25 15/23 42/18 44/12
submits [1]  11/12
submitted [5]  7/4 10/15 47/6 47/8 49/3
subpoena [6]  16/1 16/6 24/23 25/10
26/13 46/8
subpoenas [2]  7/21 26/11
such [8]  4/15 30/5 35/7 52/15 52/17
52/24 53/3 53/14
suggest [1]  19/13
suggested [2]  30/5 46/1
suggesting [4]  12/12 12/23 40/20 50/22
SUM [22]  1/15 3/7 14/3 21/7 21/10
32/23 37/2 39/23 40/2 40/8 42/3 43/11
46/1 46/7 48/2 50/18 50/22 51/3 51/3
51/18 52/21 53/7
Sum's [3]  44/8 51/13 52/2
sumal [1]  1/18
support [3]  17/4 48/13 52/17
supposed [1]  37/9
Supreme [1]  31/21
sure [9]  5/1 16/15 18/15 23/18 46/4
47/24 48/1 54/11 54/12
SureTrader [4]  28/23 28/25 29/2 36/2
surprise [1]  30/2
surprised [1]  41/14
suspect [1]  8/25
swims [1]  30/22
system [2]  12/17 50/6 51/6

## T

taint [2]  9/4 24/2
take [12]  5/9 11/21 23/25 25/1 27/19
32/6 33/7 35/7 40/22 40/23 41/6 44/24
taken [3]  22/25 30/17 55/16
taking [1]  16/16
talk [2]  40/19 43/18
talking [7]  9/20 19/25 22/8 30/17 44/21
47/16 48/4
talks [1]  35/16
TCR [5]  47/21 48/18 48/22 51/5 51/14
TCRs [11]  25/13 25/14 47/6 47/13 47/21
48/14 48/14 48/17 49/3 49/12 49/23
team [5]  9/4 22/23 24/2 24/2 50/7
technically [1]  22/12
technology [1]  13/25
Ted [1]  9/15
telephone [1]  14/22
tell [11]  7/17 15/12 16/13 16/13 17/11
40/4 40/5 40/11 40/12 40/13 43/6
telling [3]  16/20 37/7 43/5
tells [1]  4/23
ten [1]  8/4
TERESA [2]  1/16 3/9
terminated [1]  10/7
terms [6]  7/13 10/5 20/1 23/15 35/16
48/21
terrible [1]  32/14
Terrific [1]  37/16
test [2]  43/22 43/25
than [1]  40/1
thank [19]  3/25 4/1 4/5 4/11 5/4 5/18
17/5 21/2 21/11 21/13 21/14 34/8 36/24
37/23 50/20 53/2 54/14 54/17 54/18
that [418]
that's [13]  4/4 26/24 26/25 27/9 31/1
33/16 38/11 38/23 40/4 41/1 41/1 44/7
45/23
theft [1]  11/20
their [27]  8/11 9/3 9/14 10/25 12/21
13/11 16/15 17/25 18/5 19/2 19/3 23/7
25/14 28/1 29/1 29/1 29/11 30/8 35/17
36/13 40/20 43/14 43/22 48/19 48/22
52/25 53/1
them [49]  6/8 6/25 7/6 7/9 7/16 7/23
8/15 8/16 8/16 9/22 10/24 11/22 12/13
12/21 13/20 16/6 16/7 17/15 19/16 22/23
23/22 24/7 24/8 29/9 29/12 32/12 34/16
36/12 38/15 39/11 39/15 39/17 39/18
39/21 41/12 41/14 43/7 43/21 43/22
43/23 44/18 45/15 45/22 46/17 50/11
51/15 51/15 51/16 54/9
themselves [1]  44/19
then [29]  4/10 4/22 6/5 7/7 7/18 14/20
15/5 16/25 18/9 20/3 23/20 30/7 32/5
32/8 33/3 33/18 33/21 35/1 35/5 35/6
38/15 38/16 39/19 41/12 45/22 45/23
48/23 48/24 53/10
there [71]
there's [1]  33/13
therefore [1]  9/18
Thereupon [1]  2/13
these [114]
they [123]
they'd [1]  29/25
they're [4]  42/1 44/2 45/12 45/20
they've [1]  30/20
thing [3]  11/24 13/21 51/12
things [5]  12/1 12/7 33/15 38/4 51/17
think [47]  5/25 6/1 6/3 6/18 8/1 9/11 9/25
10/12 11/6 11/14 12/14 12/19 13/4 13/14
13/14 13/15 18/6 18/6 18/17 21/6 21/16
21/21 32/12 33/3 34/1 34/3 34/9
36/10 36/13 37/20 38/6 38/14 40/15 40/23
41/7 44/5 44/17 44/17 45/9 46/24 49/1
49/8 50/15 52/5 52/20 53/25
thinking [1]  34/23
third [3]  24/5 35/20 38/20
third-party [1]  24/5
this [123]
those [28]  4/14 15/2 15/15 18/15 19/8
19/10 22/8 22/9 22/12 22/15 22/18 26/11
29/2 29/18 29/18 31/9 31/19 32/3 33/1
39/15 44/22 45/16 45/19 46/17 49/12
50/6 50/14 52/12
though [1]  22/24
thought [5]  13/23 38/17 38/21 51/10
52/3
thoughtfulness [1]  53/23
three [3]  5/9 7/11 42/13
through [8]  15/24 16/6 16/7 32/25 42/10
45/4 45/10 47/20
thrust [1]  33/6
thus [1]  23/2
tight [1]  46/16
time [30]  4/16 4/17 4/22 6/3 9/13
9/17 9/19 17/6 18/4 22/5 24/12 25/4
25/19 25/19 27/15 37/2 39/21 40/21
41/24 42/10 48/15 52/11 52/15 52/24
53/4 53/13 53/14 53/17 53/22
timely [2]  42/22 43/3
times [2]  26/2 39/24
tip [1]  48/24
tips [2]  25/12 48/20
title [1]  15/6
today [7]  7/12 11/19 13/23 14/13 22/14
24/13 31/16 38/4 49/15 53/23 54/3
together [2]  33/9 52/22
told [6]  9/3 15/19 39/13 40/13 41/20 42/3
too [5]  5/24 16/21 17/11 17/13 54/20
took [6]  16/21 17/11 17/13 17/24 18/3
38/4
topic [2]  21/24 22/2
total [1]  6/11
totaling [1]  50/2
totality [1]  15/1
TRANSCRIBED [2]  1/11 2/11
transcription [1]  55/5
transformed [1]  27/6
transmission [1]  36/9
transmitted [7]  22/9 22/9 22/11 22/19
36/12 50/4 50/10
transmitting [1]  3/22
transparency [1]  31/3
transparent [1]  28/18
transpired [1]  52/8
traveling [1]  15/6
tree [2]  30/23 34/4
tried [2]  30/20 40/10
trigger [2]  29/14 35/9
triggers [4]  26/21 26/25 34/23 35/6
troubling [1]  12/6
true [5]  23/1 26/18 29/17 33/11 44/3
trust [1]  37/7
truth [1]  37/7
truthful [2]  19/10 47/17
truthfully [1]  47/12
truthfulness [1]  47/25
try [10]  5/8 5/14 5/24 8/12 23/20 26/18
31/6 37/12 43/25 44/4
trying [7]  8/9 9/22 16/22 38/10 38/12
38/23 50/22
turn [20]  6/25 10/13 11/1 11/14 11/22

T

turn... [15]  12/4 12/12 12/23 14/4 17/19
29/20 32/21 33/24 36/23 39/11 39/15
39/21 42/15 45/22 46/18
turned [2]  14/3 39/19
turning [1]  12/15
turns [3]  19/12 19/15 41/21
two [25]  6/7 6/23 7/12 8/18 9/24 12/7
19/9 22/3 25/13 26/4 29/6 33/9 33/9
39/4 40/12 40/19 41/25 43/12 43/19
43/20 47/6 47/14 47/20 49/24 51/17
type [1]  24/5
types [1]  11/6
typically [2]  26/23 35/3

U

U.S [9]  25/15 29/11 30/10 30/10 34/6
35/13 36/2 41/6 41/7
ultimate [4]  27/1 27/12 44/6 46/3
ultimately [2]  27/17 29/23 31/24 35/5
35/18 36/4
unaddressed [1]  49/10
uncertain [2]  7/13 10/5
unclear [1]  19/13
under [20]  7/13 15/6 16/8 16/10 17/1
18/19 26/2 31/12 34/6 35/11 35/14 35/15
41/16 41/17 41/19 41/23 42/21 44/5
47/21 52/6
underlined [1]  38/17
underlying [3]  26/24 31/1 34/13
understand [7]  3/24 4/14 11/11 14/10
17/17 51/1 51/2
understanding [3]  17/7 38/3 49/17
understood [1]  14/24
undisputed [1]  21/23
Undoubtedly [1]  46/8
unequivocally [1]  50/2
unfortunately [2]  23/3 30/2
unique [1]  25/21
UNITED [4]  1/1 1/12 10/22 31/12
unless [9]  9/12 14/12 16/13 21/5 37/18
unlikely [1]  23/4
unquote [1]  29/16
untenable [1]  28/17
until [5]  39/6 39/21 44/25 52/24 53/14
untruthful [1]  50/23
up [7]  15/10 24/4 32/6 32/9 35/3 36/22
37/25
uploading [1]  23/15
upon [1]  10/14
us [24]  4/20 4/23 4/23 7/7 9/3 12/4 12/10
14/3 14/20 14/22 17/11 22/23 29/25 31/5
32/12 39/5 39/13 40/14 40/24 44/4 45/3
46/2 50/11 51/4
use [7]  7/18 9/22 24/18 25/19 28/10
48/13 48/14
used [11]  7/22 7/23 8/14 9/15 13/4 17/15
17/15 18/5 29/15 34/17 51/9
uses [1]  13/12
using [2]  18/10 29/13

V

various [3]  16/12 20/19 26/8
vast [1]  26/23
veracity [3]  43/22 44/1 50/19
verbally [1]  53/6
VERGES [2]  1/16 3/9
vergest [1]  1/19
version [1]  16/15
versions [1]  53/1

very [16]  3/25 4/15 5/3 5/19 9/14 19/13
19/15 26/18 38/7 43/9 46/12 52/16 53/13
53/21 53/22 54/14
via [2]  3/2 22/11
video [1]  5/7
videoconference [1]  3/2
view [1]  49/17
views [1]  52/25
violate [1]  10/20
violated [4]  13/15 26/25 31/2 33/16
violates [1]  10/20
violating [1]  42/17
violation [20]  10/14 10/24 11/3 11/9
15/20 15/23 18/25 20/22 30/10 31/17
32/4 33/1 33/4 33/14 34/24 35/1 35/2
35/5 40/23 43/1
violations [12]  21/22 25/15 25/15 29/11
29/21 31/12 32/8 32/13 33/8 35/13 35/23
36/2
voluntarily [6]  7/1 12/12 26/16 42/9
42/14 43/24
voluntary [2]  12/4 14/4 18/17

W

wait [4]  15/18 15/18 34/16 41/20
waiving [1]  54/4
want [28]  7/25 18/2 18/10 18/11 19/4
21/3 23/5 23/24 26/16 28/20 29/20 30/13
32/17 33/23 34/4 34/7 35/19 36/6 37/23
40/25 42/10 46/3 46/4 47/24 48/1 49/9
49/20 51/23
wanted [6]  23/8 24/1 30/13 33/17 33/17
45/7
wants [2]  8/14 36/16
Warren [1]  11/12
was [86]
Washington [2]  23/15
wasn't [1]  30/11
way [7]  24/24 32/12 35/3 37/9 38/11
45/5 51/7
we [214]
we'd [3]  7/6 13/20 14/5
We'll [2]  30/7 43/17
we're [16]  4/13 12/1 14/4 17/12 18/21
19/14 29/21 30/9 30/17 30/18 39/16
40/24 44/21 45/15 45/24 49/15
we've [1]  12/3
weeds [2]  47/24 51/1
weekend [1]  13/24
weeks [1]  4/22
well [16]  13/20 15/20 17/13 17/20 19/5
22/3 26/10 27/8 27/22 30/5 37/21 38/3
40/15 44/9 47/1 51/13
went [8]  10/10 10/11 10/17 16/1 17/14
28/15 43/11 43/13
were [42]  3/2 4/22 6/24 8/18 10/1 15/2
19/1 19/3 19/6 19/25 21/25 22/4 23/14
24/6 25/3 25/5 25/6 26/5 28/12 28/24
29/11 31/23 36/25 37/8 38/4 39/19 39/14
39/20 41/19 42/6 42/11 42/16 45/2 46/24
47/6 48/4 48/5 48/5 49/23 51/8 51/9
52/3
what [106]
what's [2]  8/15 45/15
whatever [3]  16/4 34/17 35/7
whatsoever [1]  28/5
when [33]  6/15 6/20 10/10 10/10 11/14
11/18 11/20 14/15 15/9 17/21 18/2 19/22
22/5 23/4 23/12 24/12 24/21 24/22 24/23
25/24 29/14 29/25 30/5 30/22 33/13 35/12

when [19]  4/7 9/7 10/2 13/10 13/22
16/14 17/19 18/21 19/22 24/6 24/13
25/17 33/18 34/14 35/24 38/17 39/24
48/4 53/11
whether [4]  23/23 31/17 32/3 41/6
which [38]  4/7 4/8 4/13 6/6 9/11 9/21
10/15 10/15 10/16 10/22 10/23 12/9
12/11 13/8 14/2 14/2 15/7 17/10 17/14
19/14 19/21 20/5 20/9 24/24 24/24 27/16
28/1 28/23 29/22 30/2 32/7 32/25 33/20
41/12 41/17 45/14 49/22 52/16
while [2]  19/25 36/25
whistleblower [9]  41/9 41/13 41/15 41/18
41/22 42/15 42/20 42/21 51/5
whistleblowers [7]  40/22 41/11 41/23
42/1 42/9 43/20 44/3
who [17]  3/14 7/12 11/12 12/1 12/13
16/18 26/4 27/18 27/21 27/24 31/10 41/6
42/11 42/12 43/16 48/22 48/23
whole [1]  30/17
wholesale [1]  8/18
why [8]  19/14 23/1 24/1 31/25 42/21
45/1 51/1 54/9
will [38]  3/14 3/17 4/10 5/9 5/9 5/10 5/24
6/8 12/16 13/21 14/13 16/15 18/15 21/4
23/1 23/10 26/7 32/21 34/9 34/17 36/19
38/16 38/19 40/11 40/12 41/14 41/24
43/6 43/21 51/19 52/13 52/13 52/18
52/19 53/5 53/6 53/12 54/15
wind [1]  54/6
wish [1]  36/14
within [6]  9/4 18/6 18/7 40/15
without [10]  10/9 11/2 11/22 42/14 43/25
52/14 52/18 53/6 54/4 54/16
witnessed [1]  4/17
witnesses [1]  7/12
Wizman [1]  27/23
won't [1]  40/11
Wonderful [1]  37/16
word [1]  51/9
work [4]  31/5 37/20 40/10 52/22
worked [2]  28/23 42/12
working [2]  28/25 46/1
works [1]  5/14
world [1]  6/13
worth [1]  9/11
would [31]  3/23 7/13 11/6 12/17 14/6
14/7 16/7 19/16 19/17 24/7 33/5 37/9
39/4 40/9 41/12 42/10 42/11 43/23 43/24
44/11 44/12 46/13 46/19 48/13 50/10
50/14 51/6 52/21 53/2 53/12 53/13
written [1]  54/15
wrong [4]  20/1 29/12 40/4 44/2
wrongdoing [1]  9/17
wrongful [1]  10/8
wrongfully [1]  6/9
wrote [2]  7/15 38/5

Y

year [1]  42/8
years [12]  8/4 8/7 8/8 42/3 42/12 42/12
42/14 42/17 42/20 42/23 43/2 49/7
yes [18]  3/24 4/4 14/18 19/5 20/16 20/25
32/22 34/8 34/22 36/23 37/14 40/7 48/10
48/10 49/13 49/16 49/19 51/25
yesterday [1]  38/10
yet [7]  12/11 14/8 23/16 23/17 24/17
31/4 51/3
York [2]  2/6 11/12

Y

you [135]
you're [9]  9/22 10/7 16/24 20/9 20/17
 20/21 33/19 48/3 49/14
your [84]

Z

zero [2]  28/4 43/4
Zoom [2]  3/2 3/22