UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-21079-BB

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

    Defendants.

## DEFENDANT GUY GENTILE'S MOTION FOR RECONSIDERATION

Pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, as well as the Court's obligation to consider its subject-matter jurisdiction at any time it may be lacking, Defendant Guy Gentile ("Gentile") respectfully requests the Court reconsider its September 2, 2022 Order [ECF 122] denying Gentile's Motion to Dismiss All Claims Against Defendant Mintbroker International, Ltd. ("SureTrader") for lack of subject-matter jurisdiction [ECF 121].

## INTRODUCTION

On Friday, September 2, 2022, Gentile moved the Court to dismiss all claims against co-defendant SureTrader for lack of subject-matter jurisdiction. [ECF 121 ("Motion")]. As set forth in the Motion, counsel for Gentile has learned that Plaintiff Securities and Exchange Commission (the "SEC") has taken no steps to ensure that a final judgment from this Court against SureTrader would be enforceable in any way and thus the SEC lacks standing to pursue claims against that entity. More specifically, SureTrader has been under court-supervised liquidation in the Bahamas since before the SEC filed this action, but the SEC has neither sought leave from the Bahamian

courts to file the instant claims against SureTrader outside the liquidation process nor submitted a "proof of debt" in the Bahamian proceedings when requested to do so by the Joint Official Liquidators of SureTrader ("JOLs"). *See* Mot. at 1–4.[1] For this and other reasons, both the JOLs and the SEC now appear to agree that no order from this Court would be enforceable against SureTrader. *Id.* at 6–7.

In the Motion, Gentile cited—among other authorities—the Eleventh Circuit's decision in *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1555 (11th Cir. 1989). Mot. at 6. There, the appellate court observed: "The question of subject matter jurisdiction can be raised *by any party*, or by the court itself, at any point of a proceeding." *Cabalceta*, 883 F.2d at 1555 (emphasis added) (citing *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984); *Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1118 (11th Cir. 1983)). Gentile also noted in the Motion: "The SEC's intent to hold Gentile jointly and severally liable for any disgorgement award or civil money penalties that may be awarded against SureTrader clearly affects Gentile's rights and liabilities, discounting any potential argument by the SEC that Gentile lacks standing to challenge the SEC's claims against SureTrader." Mot. at 12 n.2. Finally, again citing the Eleventh Circuit, Gentile explained: "If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case no longer presents a live case or controversy, and the federal court *must* dismiss the case for lack of subject matter jurisdiction." Mot. 5–6 (emphasis added) (quoting *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011)). All these points support Gentile's ability to challenge whether the Court possesses subject-matter jurisdiction over the SEC's claims against SureTrader.

---

[1] *See also* Compl. ¶ 13 [ECF 1] (observing that a "winding up petition" for SureTrader was filed in the Bahamas in March 2020).

2

Hours after filing on September 2, 2022, the Court denied Gentile's Motion. [ECF 122] ("Order"). Without addressing the Eleventh Circuit's observation in *Cabalceta* that subject-matter jurisdiction can be raised "by any party," or Gentile's observation that any final judgment against SureTrader—which has defaulted—would directly affect his rights, the Court reasoned in its Order: "Gentile has provided no legal authority, nor has the Court found any, to support his standing to make arguments for dismissal on behalf of a co-defendant. Absent authority to the contrary, Gentile does not have standing to seek dismissal of claims that are not asserted against him." *Id.* at 2. The Court also observed that it "is mindful of the obligation to ensure that subject matter [jurisdiction] exists," *id.* at 2 (citations omitted), but did not analyze whether the SEC possesses standing to assert its claims against SureTrader, an essential element of the Court's subject-matter jurisdiction over those claims.

Gentile respectfully requests that the Court reconsider its Order for at least three reasons. *First*, any party (or even nonparty for that matter) has standing to challenge a court's subject-matter jurisdiction, a point supported by authority cited in the Motion and additional authority cited below. *Second*, Gentile has standing to challenge claims against co-defendant SureTrader here because the SEC seeks to hold Gentile jointly and severally liable with SureTrader, an entity that has not appeared in the case and has already defaulted. Put differently, any entry of default final judgment in favor of the SEC against SureTrader would directly affect Gentile's rights, a point noted in the Motion and supported by additional legal authority cited below. *Finally*, as the Court acknowledged in its Order, it is "obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) (cited in Order at 2). Gentile has clearly raised the issue of whether the Court possesses the power to adjudicate the SEC's claims against SureTrader and there is no reason for the Court

to avoid the issue. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) ("A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings.") (quoting *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)).

Accordingly, Gentile respectfully requests that the Court: (1) grant the instant Motion for Reconsideration; (2) vacate its prior Order denying Gentile's Motion to Dismiss for Lack of Subject-Matter Jurisdiction [ECF 122]; (3) direct the SEC to respond to Gentile's Motion to Dismiss [ECF 121] within 14 days; and (4) direct Gentile to file any reply within 7 days of the SEC's response.

## LEGAL STANDARD

A motion for reconsideration "may be brought pursuant to Rule 59(e) or Rule 60(b)." *Harley v. The Health Ctr. of Coconut Creek, Inc.*, 487 F. Supp. 2d 1344, 1360 (S.D. Fla. 2006) (citing *Mahone v. Ray*, 326 F.3d 1176, 1178 n.1 (11th Cir. 2003); *Williams v. Cruise Ships Catering & Service Int'l, N.V.*, 320 F.Supp.2d 1347, 1357 (S.D. Fla. 2004)). "[D]istrict courts generally apply the same standard whether a motion for reconsideration is brought under Rule 59(e) or Rule 60(b)." *E.g., Davis v. Warden, FCC Colemen–Low*, No. 5:20-CV-551-OC-39PRL, 2020 WL 7334507, at *1 (M.D. Fla. Dec. 14, 2020).[2] Typically, the "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Craddock v. M/Y The Golden Rule*, 110 F. Supp. 3d 1267, 1271 (S.D. Fla. 2015) (quoting *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369–70 (S.D. Fla. 2002)).

---

[2] Gentile submits that any distinction makes no difference here.

Where an issue of subject-matter jurisdiction is implicated, many district courts in the Eleventh Circuit are more inclined to revisit a prior order. *See, e.g.*, *Skelton v. Saia*, No. 2:17-CV-00277-JEO, 2018 WL 1784381, at *2 (N.D. Ala. Apr. 13, 2018) ("Because Plaintiff's motion to reconsider challenges the court's finding that it has subject matter jurisdiction over this action, the court will exercise its discretion and take a further look . . . . (citing *Sparks v. Cullman Elec. Coop.*, 2016 WL 927032, *1 (N.D. Ala. Mar. 11, 2016)); *Mitchell & Shapiro LLP v. Marriott Int'l, Inc.*, 2008 WL 11337749 (N.D. Ga. 2008)); *see also NE 32nd St., LLC for Frank Sawyer Revocable Tr. v. United States*, No. 9:16-CV-80802, 2017 WL 5309358, at *3 (S.D. Fla. Apr. 18, 2017) (granting motion for reconsideration and dismissing for lack of subject-matter jurisdiction), *aff'd sub nom. NE 32nd St., LLC v. United States*, 896 F.3d 1240 (11th Cir. 2018); *Applegate v. F.D.I.C.*, No. CV410-302, 2012 WL 1099036, at *1 (S.D. Ga. Mar. 30, 2012) (same). That is so because "a federal court must continually monitor its subject matter jurisdiction." *Skelton*, 2018 WL 1784381, at *2.

## ARGUMENT

**1. A Challenge to Subject-Matter Jurisdiction Can Be Raised by Any Party to a Lawsuit.**

As the Eleventh Circuit has observed, "subject matter jurisdiction can be raised *by any party*." *Cabalceta*, 883 F.2d at 1555 (emphasis added) (cited in Mot. at 6); *see also, e.g.*, *McMaster v. United States*, 177 F.3d 936, 939 (11th Cir. 1999) ("It is well established that the question of subject matter jurisdiction may be raised at any stage in the proceedings by *any party* . . . ." (emphasis added) (quoting *Majd–Pour v. Georgiana Community Hosp., Inc.*, 724 F.2d 901, 902 (11th Cir.1984)). The modifier "any" is broad and sweeping. As far as Gentile can tell, neither the

Eleventh Circuit nor any other federal appellate court has confined challenges to subject-matter jurisdiction for certain claims only to those *against whom the claims are asserted*.[3]

Indeed, such a limitation would run counter to the fundamental premise that "subject-matter jurisdiction . . . involves a court's power to hear a case." *E.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citation omitted); *see also, e.g.*, *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance." (citations omitted)). As to standing specifically, the Supreme Court has explained:

> Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood. The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).

In fact, the Supreme Court has gone so far as to recognize that a *nonparty* witness can challenge a plaintiff's (i.e., a party's) standing to assert claims against defendants (i.e., other parties), thus implicating the district court's subject-matter jurisdiction over those claims. *See U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72 (1988). In the underlying lawsuit that gave rise to the Supreme Court's decision in *U.S. Catholic Conference*, "various organizations and individuals" sued the U.S. government, alleging that they were "injured by the Government's permitting the Catholic Church to retain its tax-exempt status while engaging in political activities that the plaintiffs contend violate the limitations imposed by [the Internal Revenue Code]." *In re*

---

[3] As Gentile explained in the Motion, subject-matter jurisdiction must exist for each claim asserted against each party. Mot. at 5 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Warren Tech., Inc. v. UL LLC*, No. 1:18-CV-21019-UU, 2018 WL 10550930, at *5 (S.D. Fla. Oct. 31, 2018), *aff'd*, 962 F.3d 1324 (11th Cir. 2020)).

*U.S. Cath. Conf.*, 824 F.2d 156, 158 (2d Cir. 1987). After commencing suit, plaintiffs served nonparty subpoenas on "the United States Catholic Conference ('USCC') and the National Conference of Catholic Bishops ('NCCB') (collectively 'the witnesses')," who refused to respond and were subsequently cited for civil contempt. *Id.*

On appeal, the *nonparty* witnesses—against whom no claims in the action were asserted—argued that the civil contempt orders issued against them should nevertheless be revoked because the plaintiffs lacked standing to assert their claims *against the U.S. government*. 497 U.S. at 74 ("We granted certiorari to resolve whether a nonparty witness may defend against a civil contempt adjudication by challenging the subject-matter jurisdiction of the district court."). The Supreme Court agreed with the witnesses, concluding that "a nonparty witness may attack a civil contempt citation by asserting that the issuing court lacks jurisdiction over the case," *id.* at 76, and on remand the Second Circuit dismissed plaintiffs' claims against the U.S. government for lack of standing, *In re U.S. Cath. Conf. (USCC)*, 885 F.2d 1020, 1031 (2d Cir. 1989).

If a *nonparty* witness may challenge a plaintiff's standing to assert claims against a defendant, there is no sound reason why another *party* may not raise such a challenge as to claims asserted against another *party*. As explained immediately below, it is particularly appropriate here for Gentile to raise a challenge to the Court's subject-matter jurisdiction over the claims asserted against his co-defendant as the SEC seeks to impose joint-and-several liability.

2. **Gentile Has Standing to Challenge Subject-Matter Jurisdiction Because SureTrader Has Refused to Appear in this Action and the SEC Seeks to Hold Gentile Jointly and Severally Liable for Any Judgment Against SureTrader.**

This Court has routinely found that a defendant subject to joint-and-several liability has standing to challenge the entry of final default judgment against a codefendant. *See, e.g.*, *Diaz v. Global Development Consultant, Inc.*, 2015 WL 12745538, *2 (S.D. Fla., Aug. 23, 2015), *report and recommendation adopted*, 2015 WL 12745537 (S.D. Fla. Sept. 22, 2015); *see also In re Air*

7

*Crash Near Rio Grande Puerto Rico on Dec. 3, 2008*, 2017 WL 11680398, *2 (S.D. Fla. Nov. 28, 2017) (concluding under *Diaz* that defendants had standing to challenge motion for default by virtue of their "joint venture relationship," which is "comparable to the relationship of parties with joint and several liability"). The Court has based this finding on the fact a "judgment against the defaulting defendant is executable against the non-defaulting defendant." *Id*.

Here, the SEC "seeks the following relief against SureTrader and Gentile, jointly and severally: disgorgement of all ill-gotten gains or proceeds received including prejudgment interest thereon as a result of the acts and/or courses of conduct alleged in this Complaint and payment of civil money penalties pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3)." [ECF 54 at 2 ("Plaintiff's Notice of Joint Liability")]. Accordingly, Gentile would have standing to challenge any entry of final default judgment issued against SureTrader. *See Diaz*, 2015 WL 12745538, at *2 (collecting cases); *In re Air Crash*, 2017 WL 11680398, at *2; *see also In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1263 n.32 (7th Cir. 1980) (finding the fact that defendants' assets would be affected by orders against the defaulter are "sufficient allegations of 'injury in fact' to confer standing" (citing *Sierra Club v. Morton*, 405 U.S. 727, 733 (1972); *United States v. SCRAP*, 412 U.S. 669, 686 (1973))). That Gentile may be held jointly and severally liable based on SureTrader's default is not hypothetical, as the Court has previously stated that such an order is forthcoming, "once liability is resolved as to all Defendants." [ECF 47 at 2]; *see also Mayorga v. Stamp Concrete & Pavers, Inc.*, 2015 WL 3556972, *2 (S.D. Fla. June 4, 2015) ("when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted" (citing *Frow v. De La Vega*, 82 U.S. 552, 554 (1872)).

Given clear precedent that Gentile would have standing to challenge an entry of final default judgment against SureTrader for lack of subject-matter jurisdiction, it follows that he has standing to challenge the Court's subject-matter jurisdiction to enter a default judgment against SureTrader in the first instance. In this respect, the Court's determination that "Gentile does not have standing to seek dismissal of claims that are not asserted against him" is erroneous.

### 3. The Court Is Obligated to Review Issues of Subject-Matter Jurisdiction *Sua Sponte*.

Even if the Court is not persuaded by either of the two foregoing propositions—(1) binding precedent holds that subject-matter jurisdiction may be challenged by any party at any time; and (2) a defendant may challenge a plaintiff's standing to assert claims against a co-defendant when the plaintiff seeks joint-and-several liability and the co-defendant has defaulted—the Court still has an independent obligation to ensure it possesses subject-matter jurisdiction over the SEC's claims against SureTrader, and the Court has failed to discharge that obligation. For that reason alone, the Court should grant the instant Motion for Reconsideration and vacate its Order.

To be clear, "courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, *even in the absence of a challenge from any party*." *E.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) (emphasis added); *see also* Order at 2 (citing *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *Herskowitz v. Reid*, 187 F. App'x 911, 912–13 (11th Cir. 2006)). In fact, courts "*must* raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434, (2011) (emphasis added).

There is no plausible inference from the undisputed facts that the Court can enter judgment against SureTrader that will redress the SEC's claims against that defendant, and thus there is no reason to defer consideration of whether the Court possesses subject-matter jurisdiction over such claims. The Supreme Court has "repeatedly held that an 'actual controversy' must exist . . . through

9

'all stages' of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013). "The party invoking the jurisdiction of a federal court," i.e., the SEC here, "bears the burden of establishing [the] elements [of standing] to the extent required at each stage of the litigation." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). At minimum, then, the SEC must point to "facts that plausibly establish their standing" for the claims asserted against SureTrader, or the Court should dismiss them. *Id.* (citations omitted).

That Gentile filed the underlying Motion to Dismiss for Lack of Subject-Matter Jurisdiction rather than SureTrader—who has refused to appear in the case for the reasons set forth in Gentile's Motion; namely, lack of enforceability of any orders from this Court against it—is immaterial to the Court's obligation to ensure it possesses subject-matter jurisdiction over the claims asserted in this action. Put simply, Gentile does not bear the burden of *disproving* the SEC's standing; the SEC bears the burden of demonstrating standing, and the Court has an independent obligation to police that constitutional requirement.

The Court nevertheless issued its Order before the SEC responded to the Motion and without any findings regarding the jurisdictional issues raised therein. In doing so, the Order leaves those jurisdictional issues not only unresolved, but unbriefed. Gentile respectfully requests that the Court revisit that decision. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented.").

## CONCLUSION

For the foregoing reasons, as well as the reasons stated in Gentile's Motion to Dismiss All Claims against SureTrader for Lack of Subject-Matter Jurisdiction [ECF 121], Gentile respectfully

requests this Court reconsider its Order [ECF 122] denying the Motion, vacate the Order, and direct the parties to fully brief the Motion.

Dated: September 8, 2022

                                                    */s/ Dayliset Rielo*
                                                    Dayliset Rielo, Esq.
                                                    The Rielo Law Firm, LLC
                                                    8180 N.W. 36th Street, Suite 220
                                                    Doral, FL 33166
                                                    Tel: (786) 454-9873
                                                    dayliset@rielolaw.com

                                                    Adam C. Ford, Esq. (PHV granted)
                                                    Matthew A. Ford, Esq. (PHV granted)
                                                    Stephen R. Halpin III, Esq. (PHV granted)
                                                    FORD O'BRIEN LANDY LLP
                                                    275 Madison Avenue, 24th Floor
                                                    New York, NY 10016
                                                    Tel: (212) 858-0040 (main)
                                                    aford@fordobrien.com
                                                    mford@fordobrien.com
                                                    shalpin@fordobrien.com

                                                    *Counsel for Defendant Guy Gentile*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 8th day of September 2022 via CM-ECF on all counsel.

*/s/ Daryliset Rielo*
Dayliset Rielo, Esq.