UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-21079-BB

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

    Defendants.

**DEFENDANT GUY GENTILE'S REPLY IN FURTHER SUPPORT OF**
**<u>MOTION FOR RECONSIDERATION</u>**

Federal courts may adjudicate only cases or controversies, a restraint that Congress cannot relax or eliminate by statute. For a case or controversy to exist, a plaintiff must maintain throughout the suit that it (1) has suffered or will suffer an injury (2) caused by the defendant (3) that the court can redress. Here, the SEC has presented no theory of how an order from this Court would redress any injury traceable to defendant SureTrader. Does the Court have the power to decide the SEC's claims against SureTrader?

**<u>ARGUMENT</u>**

**I.    The SEC offers no theory of how an order from this Court would redress any injury traceable to defendant SureTrader.**

The Supreme Court's "standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation omitted). The Court has "insisted, for instance, that 'a plaintiff must demonstrate standing separately for each form of relief sought.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't*

*Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); citing *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). Consistent with that principle, a plaintiff "must allege standing as to *each claim against each Defendant*." *Warren Tech., Inc. v. UL LLC*, No. 1:18-CV-21019-UU, 2018 WL 10550930, at *5 (S.D. Fla. Oct. 31, 2018) (emphasis added), *aff'd*, 962 F.3d 1324 (11th Cir. 2020).[1]

Under settled precedent, the "irreducible constitutional minimum" of standing consists of three elements: (1) the plaintiff must have suffered or will suffer an injury in fact, (2) the defendant must have caused that injury, and (3) a favorable decision must be likely to redress it. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). As to the third element of redressability, it must be "likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819–20 (11th Cir. 2003).

"The party invoking the jurisdiction of a federal court bears the burden of establishing [the] elements [of standing] to the extent required at each stage of the litigation." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (citing *Lujan*, 504 U.S. at 561). Here, the SEC utterly fails to explain how a favorable order from this Court is likely to redress any injury traceable to SureTrader.

### A. The SEC points to no threat of future injury caused by SureTrader that would warrant injunctive relief.

The SEC presents no theory or evidence of how an order from this Court enjoining SureTrader from *prospective* violations of the federal securities laws would redress any injury claimed by the SEC. *See* Compl. ¶ 99, p.21. "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—*threat of future injury*." *Church*

---

[1] *See also Coffie v. Fla. Crystals Corp.*, 460 F. Supp. 3d 1297, 1306 (S.D. Fla. 2020); *accord Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 900 (4th Cir. 2022) (collecting cases).

*v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (emphasis added) (citing *Lyons*, 461 U.S. at 102). The Supreme Court has emphasized that "[p]ast exposure to [alleged] illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). Judge Woodlock of the United States District Court for the District of Massachusetts, an SEC alumnus, observed over 30 years ago: "To suggest that [defendant], now an insolvent corporation without employees or facilities, may rise phoenix-like from the ashes to do further harm to non-existent clients or an unsuspecting public is more akin to 'distant prophecy' than to the requisite showing of a 'realistic likelihood' or a 'real probability' of violations." *SEC v. John Adams Tr. Corp.*, 697 F. Supp. 573, 577 (D. Mass. 1988).

SureTrader has been nonoperational since late-2019. As alleged in the Complaint: "In March 2020, [the Securities Commission of the Bahamas] filed with the Supreme Court of the Bahamas a 'winding up petition,' seeking a court-supervised winding up of SureTrader and the appointment of a joint provisional liquidator to take possession of SureTrader's books and records." Compl. ¶ 13, ECF No. 1. On March 17, 2020, the Joint Provisional Liquidators ("JPLs") were appointed, *Ex. A*, and on December 15, 2021, they were made Joint Official Liquidators ("JOLs"), *Ex. B*. That is, the Company is being wound up and dissolved, after which it will cease to exist as an entity.

The SEC's Opposition points to no evidence that SureTrader will continue as a going concern or that it would otherwise ever be capable of transacting business in the future, let alone allegedly violating federal securities laws. Nor could it, since SureTrader is in liquidation and "[w]hen the affairs of the company have been completely wound up . . . the company shall be dissolved accordingly." *Ex. C* (Bahamas Companies (Winding Up Amendment Act), 2011 § 249).

Any purported future securities violations by SureTrader are not redressable by injunction, because an injunction cannot issue against a nonexistent entity. *See John Adams Tr. Corp.*, 697 F. Supp. at 574 ("Equity . . . does not sit to strangle a corpse.").[2]

### B. The SEC failed to take the requisite steps to ensure it could recover any monetary relief from SureTrader.

The SEC's claims against SureTrader for monetary relief fare no better than its claims for injunctive relief. As Gentile explained at length in his initial Motion to Dismiss All Claims against SureTrader for Lack of Subject-Matter Jurisdiction, Bahamian law features a comprehensive process for liquidating companies formed and domiciled there. ECF No. 121 at 7–11. According to counsel for the JOLs, "no resulting judgment in this litigation"—i.e., the above-captioned matter in the Southern District of Florida—"is enforceable outside the liquidation process [in the Bahamas]." *Ex. D*.[3]

Recent discovery from the SEC confirms that it received notice on numerous occasions that it should submit a proof of debt in the Bahamian liquidation to preserve the potential for any monetary payout from SureTrader. As early as November 2021, counsel for the JPL wrote to counsel for the SEC in an effort to settle the SEC's claims against SureTrader:

> The JPL's proposal is that upon the conversion of this case from a provisional liquidation to an official liquidation by the Bahamas Court . . . , then the JPL's will admit the SEC's claim in principle within the liquidation, entitling the SEC to both participate in the proceedings and to a pay-out. In terms of the number, it would be helpful to see the SEC's calculations. We believe this option is preferable to litigating in the United States and will result in the added advantage of an admitted claim instead of a default judgment.

---

[2] *See also, e.g.*, *SEC v. Carrillo Huettel LLP*, No. 13CIV1735GBDJCF, 2017 WL 213067, at *6 (S.D.N.Y. Jan. 17, 2017) ("Carrillo Huettel is a defunct entity. As such, it is not necessary to enter an injunction against it."), *report and recommendation adopted*, No. 13 CIV. 1735 (GBD), 2017 WL 1162199 (S.D.N.Y. Mar. 28, 2017).

[3] Notably, under Bahamian law "the liquidator has custody and control of the assets of the company." *Ex. C* (Bahamas Companies (Winding Up Amendment Act), 2011 § 232).

*Ex E*. The SEC asked several follow-up questions, including: "Regarding the SEC submitting the proof of claim/debt, what is the timing for this-when the conversion occurs and the claims process begins? Can you preview what paperwork/form/filing would be required? (It would help to have this for internal discussions with the bankruptcy and OIA groups.)." *Id.* Counsel for the then-JPLs replied: "Yes - when conversion occurs there will be a process and a form of submission. We can provide guidance on the content but it is effectively the underlying claim data sufficient for JOL to fulfill duty of quasi-judicial resolution." *Id.*

On January 11, 2022, the now-JOLs emailed counsel for the SEC to advise that they had been confirmed as JOLs at a hearing on December 15, 2021, and noting that "[t]he business, affairs and property of the Company are being managed by the Joint Official Liquidators." *Ex. F*. The First Report of the JOLs filed with the Supreme Court of the Bahamas, dated August 31, 2022, a copy of which counsel for Gentile recently obtained, confirms the same. *Ex. G*, Tab 1 at 5–6. The Report also reiterates:

> The SEC was invited to make a claim within the Official Liquidation, and they have been informed that all of the assets of the Company will soon be distributed to admitted creditors, and that they will have no recourse for collection outside of the Official Liquidation because, inter alia, the Company and JOLs may only distribute funds to creditors that have appeared in the Official Liquidation. They were advised that the jurisdictional basis alleged in connection with the U.S. Legal Proceedings is not recognized in the Bahamas, as there is a stay on all litigation in respect of the Company, and that the Company has no assets in the United States in the event any judgment is issued.

*Id.*, Tab 1 at 13. But as of the filing of the Opposition, the SEC still has submitted no proof of debt to the JOLs. *See* Opp. at 6–7 n.6 ("[T]he Commission not filing a claim in the Bahaman liquidation is irrelevant.").

And despite the SEC's concession that it has not filed a proof of debt in the Bahamian liquidation, it offers no explanation for how it would otherwise collect any money judgment entered by this Court against SureTrader. None of the cases the SEC cites in its Opposition—all

5

of which concern bankruptcy proceedings overseen by U.S. courts—excuses the SEC's failure to follow the proper procedures to preserve a claim against a Bahamian company undergoing court-supervised litigation in the Bahamas. In fact, the SEC's cases support the general proposition that a creditor of a company must preserve its rights *in the court overseeing the company's liquidation*.[4]

## II. Contrary to the SEC's position, Congress cannot loosen Article III's standing requirements by statute.

Rather than offer a theory about how an order from this Court is likely to redress any injury traceable to SureTrader, the SEC contends that subject-matter jurisdiction must exist because it is a federal regulatory agency and has alleged violations under federal law. The SEC ignores that, although Congress may confer standing to the edges of Article III's limits, it may not authorize suits that transgress those limits—for any litigant.

The element of redressability is part of the "'irreducible constitutional minimum' of standing." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). "[I]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 339 (citations omitted); *see also Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979) ("In no event . . . may Congress abrogate the Art. III minima: A plaintiff must always have suffered 'a distinct and palpable injury

---

[4] *Cf. SEC v. First Fin. Grp. of Texas*, 645 F.2d 429, 440 (5th Cir. 1981) (observing that U.S. bankruptcy law "protects the bankruptcy court's exclusive jurisdiction over the property of the estate by requiring the custodian of such property to preserve it and deliver it to the bankruptcy trustee"); *In re Bilzerian*, 146 B.R. 871, 873 (Bankr. M.D. Fla. 1992) ("It is important to note that the SEC concedes that the scope of [11 U.S.C.] § 362(b)(4) is not broad enough to permit the SEC to seek to enforce any disgorgement order, and the payment of any disgorgement award *will be subject to the applicable provisions of the Bankruptcy Code and the control of this Court*." (emphasis added)); *In re Fairchild Aircraft Corp.*, 128 B.R. 976, 981 (Bankr. W.D. Tex. 1991) ("If the claim has not been scheduled by the debtor, the creditor's failure to timely file a proof of claim will usually prohibit that creditor from participating in the distribution of estate assets." (citation omitted)).

to himself,' *that is likely to be redressed if the requested relief is granted*." (emphasis added) (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 38 (1976))).

The authority cited by the SEC in its Opposition does not alter this conclusion. There is no question that Congress *may* confer standing by statute "without infringing Article III of the Constitution." *See Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 133 (1995) (cited at Opp. 6). But that does not mean that any claim brought pursuant to such a statute "automatically satisfies" Article III's requirements. *See Spokeo*, 578 U.S. at 341 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."). If so, a litigant would have standing under Article III any time she alleged a violation of federal law. Whether an order from this Court is likely to redress any injury traceable to SureTrader is not simply the same question as whether the SEC has sued SureTrader under a federal statute.

The Fifth Circuit's unpublished per curiam decision in *S.E.C. v. Rogers*, 283 F. App'x 242, 243 (5th Cir. 2008), which lacks precedential value under that court's rules, does not survive the Supreme Court's later decision in *Spokeo*, nor does the Middle District of Florida's unpublished decision in *F.T.C. v. CyberSpy Software, LLC*, No. 6:08CV1872-ORL-31GJK, 2009 WL 455417, at *1 (M.D. Fla. Feb. 23, 2009), which relies on *Rogers*. Both cases concerned whether a governmental agency had sufficiently alleged an "injury," i.e., the first constitutional requirement for standing, and in both cases the court concluded—contrary to *Spokeo*—that Congress's conferral of standing under federal statute was sufficient to satisfy the injury element of Article III. *See Rogers*, 283 F. App'x at 243; *CyberSpy*, 2009 WL 455417, at *1. Neither case concerns

the issue here: redressability. To be clear, even assuming the SEC has alleged a sufficient injury in fact against SureTrader, that does not address the separate question whether that injury is *redressable*.

### III. The SEC's other arguments distract from the overarching principle that the Court has an obligation to analyze subject-matter jurisdiction whenever it may be lacking.

As the Court recognized previously, it has an "obligation to ensure that subject matter [jurisdiction] exists." Order at 2, ECF No. 122 (citing *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *Herskowitz v. Reid*, 187 F. App'x 911, 912–13 (11th Cir. 2006)); *see also, e.g.*, *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006); *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011)). The Court should discharge that obligation, which runs to the heart of the Court's authority to decide the claims against SureTrader.

None of the distinctions the SEC purports to draw in cases cited by Gentile makes a difference to the central question whether an order from the Court is likely to redress any injury traceable to SureTrader. Article III's "irreducible constitutional minimum" of injury, causation, and redressability must be alleged for any claim brought in federal court, whether that claim arises under federal law or the court is sitting in diversity. The SEC suggests (incorrectly) that the cases cited by Gentile involved only diversity jurisdiction rather than federal jurisdiction. *But see McMaster v. United States*, 177 F.3d 936, 939 (11th Cir. 1999) (analyzing subject-matter jurisdiction for claim brought under federal law and observing that "any party" may raise such a challenge) (cited in Mot. for Reconsider. at 5). But, more important, the SEC does not explain what "any party" means if it does not mean "any party."

The Northern District of Georgia's unpublished decision in *F.T.C. v. Hornbeam Special Situations, LLC*, No. 1:17-CV-3094-TCB, 2018 WL 6521516, at *1 (N.D. Ga. July 11, 2018), does

8

not support the proposition that Gentile's challenge is barred under the Federal Rules. *Hornbeam* involved a "facial" challenge to subject-matter jurisdiction, under which "the Court takes all allegations in the complaint as true." *Id.* (citing *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)). Gentile's arguments do not depend on whether the Complaint here adequately alleges redressability for the SEC's claims against SureTrader. Instead, Gentile's motion raises a "factual attack" based on post-Complaint facts, including that (1) SureTrader is being officially wound up and will be dissolved pursuant to court-supervised proceedings in the Bahamas; and (2) the SEC cannot explain how it would collect any money judgment from SureTrader when it has failed to follow the steps required to preserve a claim against a company undergoing liquidation in the Bahamas (despite repeated notice). *See id.* at *1 ("A Rule 12(b)(1) motion may also be based on a 'factual attack,' which allows the Court to go beyond the pleadings to determine whether the claim of subject-matter jurisdiction is credible.").

SureTrader has not appeared in this action and has defaulted. The SEC seeks to hold Gentile jointly and severally liable with SureTrader. In other words, if the SEC proves Gentile is liable, then it will immediately claim Gentile is also responsible for any money judgment awarded against SureTrader, which does not plan to defend itself at all in this action. Clearly, then, Gentile has a concrete and particularized interest in whether the SEC's claims against SureTrader satisfy the constitutionally required elements of standing. If SureTrader remains in the case, Gentile faces the threat of significantly higher money damages awarded against him based on the conduct and litigation strategy of an absent codefendant. That interest is at least as strong as the interest of the nonparty in *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72 (1988), who sought to avoid civil contempt for failing to respond to a subpoena from a party. In both

instances, the question whether the plaintiff has standing to assert claims against a defendant directly affects another litigant. If Gentile is prohibited from challenging the SEC's standing for its claims against SureTrader and the Court refuses to consider the issue on its own, how will this fundamental constitutional question be addressed?

## CONCLUSION

The SEC has now had ample opportunity to present any facts it believes would support a theory that any future securities violation by SureTrader would likely be redressed by an injunction against that defunct entity. There are none, and thus the Court lacks the power to hear such a claim. The SEC has likewise offered no facts from which the Court could conclude that the SEC will recover any monetary relief from SureTrader if the Court were to enter an order to that effect. The SEC declined to obtain leave from the Bahamian courts to bring the instant action against SureTrader and was provided notice multiple times that it must submit a proof of debt in the Bahamas to obtain any monetary relief from SureTrader in the liquidation process. The SEC concedes it has done neither and has never explained why. The JOLs have taken the position that any monetary judgment obtained by the SEC against SureTrader from this Court would be unenforceable.

Under Article III, federal courts "do not adjudicate hypothetical or abstract disputes," "do not possess a roving commission to publicly opine on every legal question," "do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities," and "do not issue advisory opinions." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Because the SEC has not shown how any order from this Court entered against SureTrader is likely to redress some past or future injury traceable to that defendant, the SEC's claims against SureTrader fail to satisfy Article III and should be dismissed.

Dated: September 29, 2022

    */s/ Dayliset Rielo*
Dayliset Rielo, Esq.
The Rielo Law Firm, LLC
8180 N.W. 36th Street, Suite 220
Doral, FL 33166
Tel: (786) 454-9873
dayliset@rielolaw.com

Adam C. Ford, Esq. (PHV granted)
Matthew A. Ford, Esq. (PHV granted)
Stephen R. Halpin III, Esq. (PHV granted)
FORD O'BRIEN LANDY LLP
275 Madison Avenue, 24th Floor
New York, NY 10016
Tel: (212) 858-0040 (main)
aford@fordobrien.com
mford@fordobrien.com
shalpin@fordobrien.com

*Counsel for Defendant Guy Gentile*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 29th day of September 2022 via CM-ECF on all counsel.

                                                 _/s/ Dayliset Rielo_
                                                 Dayliset Rielo, Esq.