```
1                   UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
2
                      CASE NO. 21-CV-21079-BB
3
    SECURITIES AND EXCHANGE
4   COMMISSION,

5                                     Miami, Florida
                    Plaintiff(s),
6                                     August 30, 2022
            vs.
7
    MINTBROKER INTERNATIONAL,
8   LTD., et al.,

9
                    Defendant(s).     Pages 1 - 33
10  -----------------------------------------------------------

11                         MOTION HEARING
             TRANSCRIBED FROM DIGITAL AUDIO RECORDING
12          BEFORE THE HONORABLE ALICIA M. OTAZO-REYES
                  UNITED STATES MAGISTRATE JUDGE
13
    APPEARANCES:
14
    FOR THE PLAINTIFF(S):  ALICE SUM, ESQ.
15                         ALISE M. JOHNSON, ESQ.
                           SECURITIES AND EXCHANGE COMMISSION
16                         801 Brickell Avenue
                           Miami, FL 33131
17                         305-982-6300
                           sumal@sec.gov
18                         johnsonali@sec.gov

19
    FOR THE DEFENDANT(S):  ADAM C. FORD, ESQ.
20  Guy Gentile            FORD O'BRIEN LANDY, LLP
                           275 Madison Avenue
21                         New York, NY 10016
                           212-858-0040
22                         aford@fordobrien.com

23
    TRANSCRIBED BY:        Joanne Mancari, RPR, CRR, CSR
24                         Court Reporter
                           jemancari@gmail.com
25
```

1    Thereupon,

2    the following proceedings were held via Zoom videoconference:

3         THE DEPUTY CLERK:  Securities and Exchange Commission

4    v. MintBroker International, Ltd., *et al.*, case No. 21 21079,

5    civil, Bloom.

6         Counsel, please state your appearances for the record.

7         MS. JOHNSON:  Good afternoon.  Alise Johnson for the

8    Securities and Exchange Commission.

9         MS. SUM:  Good afternoon.  Alex Sum for the Securities

10   and Exchange Commission.

11        MR. FORD:  Good afternoon, your Honor.  Adam Ford on

12   behalf of Guy Gentile.

13        THE COURT:  All right.  Thank you.

14        I will note that generally under the -- we have

15   somebody just joined?

16        All right.  I will proceed.

17        Under the discovery procedure it does not contemplate

18   the filing of motions; however, given that the court granted

19   the extension of time to file the motion to compel there was

20   not much I could do except let the motion be briefed.  So I

21   will address the salient points in the motion.

22        It appears that the SEC is looking for additional

23   discovery from Mr. Gentile that has not been received.  I know

24   that there has been letters rogatory issued to the Bahamas for

25   whatever documents that entity over there has that would be

1    useful in this case, but let me ask Mr. Ford, what efforts has

2    your client made to produce in response to the discovery

3    request whatever documents or answers to interrogatories he

4    has?

5              MR. FORD:  Yes.  Thank you, your Honor.

6              Our view of this motion was that it was unnecessary

7    and, frankly, moot.  Mr. Gentile has done a full review for all

8    potentially responsive documents in his possession, custody, or

9    control, and has produced all such records that have been

10   requested.  We have told the SEC that he has done that.

11             So our view is that our discovery obligations are

12   complete because everything that he's had that is relevant and

13   requested and nonprivileged has been turned over to the SEC.

14             What we have said, of course, is that what is at the

15   heart of this case is the SEC's allegations that MintBroker,

16   the Bahamian securities brokerage, the Bahamian brokerage, was

17   wrongfully soliciting U.S. customers.  That is what this case

18   is about, was MintBroker doing that.

19             All of the records almost by definition, sort of 98,

20   99 percent of records dealing with MintBroker's solicitation of

21   U.S. customers, are MintBroker documents.  It is really just

22   the sort of stray -- I don't know, stray or errant, but a very

23   small percentage of documents would be in Mr. Gentile's

24   possession.

25             All the relevant documents are MintBroker documents,

1    and we have said that.  We were the first party to seek letters

2    rogatory to try and get the documents from MintBroker, which is

3    currently, as we all know, being controlled by the joint

4    liquidators.

5            So we are in agreement in terms of where the relevant

6    documents are, who is in control of them, and we have been

7    trying to get these records certainly with more or equal verve

8    as the SEC.

9            We expect the letters rogatory process will go through

10   and that the documents will be produced by the joint

11   liquidators.  That is where the records are.  Everything in

12   Mr. Gentile's possession we have in fact produced.

13           THE COURT:  All right.  Let me hear from the SEC.

14           MS. JOHNSON:  Well, that is not so, according to what

15   they responded to us.

16           We have moved to compel basically three sets of

17   documents.  Documents that they have objected to based on

18   attorney-client privilege without providing any privilege log,

19   and they aren't MintBroker documents.  They are documents that

20   support your affirmative defenses that the FBI and the DOJ and

21   the SEC told them they could do all this and blessed it.  They

22   said they are not producing them based on attorney-client

23   privilege.

24           There is no privilege to those documents.  They have

25   not provided any type of attorney-client privilege log.  They

1    say to do that would -- they have made up a new privilege,

2    selective privilege -- would show their hand at what documents

3    they reviewed.

4         If attorney-client privilege and work product

5    privilege applied to every document that an attorney reviewed

6    in filing a motion, then everything would be privileged.

7         So we are not talking about documents from MintBroker

8    as to request -- those are the requests related to 38 through

9    48.  So that is a whole group of documents he is not

10   addressing.

11        Second of all, there is a group of documents that he

12   says he has; we have documents but they are SureTrader

13   documents so we're not giving them to you.

14        That SureTrader is producing documents and that we

15   have this whole letters rogatory process going on does not

16   excuse him from his own discovery obligations.  He needs to

17   produce those documents unless he has a verified privilege.  He

18   has not asserted -- that they're SureTrader documents, so what?

19   That doesn't mean he doesn't -- if he has them in his

20   possession and control, he needs to produce them.

21        They haven't been objected to production by the joint

22   liquidator that has control over SureTrader right now.  He

23   doesn't have the objections that -- he doesn't have standing to

24   put an objection up for SureTrader.  He hasn't given us any

25   reason why he should not produce those documents that he says

1  that he has that he is withholding, and those are requests Nos.

2  14, 20, 21, 30, and 38.  So he is not correct that he said he

3  has produced everything that they have.

4         The remaining set of documents is, we weren't sure we

5  had to file the motion, and we filed sort of a broad motion

6  because he doesn't comply with Rule 34 saying whether he has

7  the documents or is withholding them.  Maybe he thinks it is

8  clear today.  If he is telling us today that for the remaining

9  documents we don't have anything that we're withholding, I can

10  take him at his word, but it doesn't get over how he has worded

11  it.

12         Under Rule 34 you are supposed to say I have the

13  documents and I am producing them; I have the documents but I

14  am not producing them based on a privilege; or I don't have

15  anything responsive to the request.  What he has done is

16  something in between.  I may have the documents, they may be in

17  a computer in the Bahamas.  I may have the documents but they

18  really belong to third parties so I'm not producing them.

19         It is only clear in Mr. Ford's mind whether they have

20  the documents.  We are scratching our head.  Do you have them,

21  do you not, do you have control over them.  That gets us to I

22  guess the last issue of control.

23         He has asserted sort of this in between language that

24  he doesn't control them, and we are not sure what that is based

25  on.  Are they SureTrader documents, are they a third party, are

1    they in his possession, are they in someone else's possession.

2    It just requires a reasonable phone call to get those

3    documents, like he's done in other cases.

4           So part of our motion was for him to clearly restate

5    his objections to those questions that aren't based on

6    attorney-client privilege.  Do you have the documents, are you

7    withholding the documents, and what the privilege is.  Do you

8    have control over them or not under the legal sense of control.

9    Not are they sitting in the next room, but can you call your

10   lawyer and say, can you give me the documents that I produced

11   to the SEC.

12          So there is fed documents, I think it's 15 through 17,

13   where we asked documents that he's produced to other

14   regulators, and he says they are not under his control or they

15   are attorney-client privileged.  Do they exist.  If they exist,

16   how come his lawyers don't have them.  If they don't exist, why

17   is he asserting it is attorney-client privileged.

18          The third thing that we would ask, we would ask that,

19   one, he be asked to produce the documents where he has a

20   blanket privilege, where he has asserted a blanket privilege

21   attorney-client without producing a reason why they are or a

22   privilege log.  The second thing would be produce the documents

23   that he says are SureTrader's but that he has.  And the third

24   is to have him amend his answers to say whether he is

25   withholding any documents in compliance with Rule 34.

1        THE COURT:  All right.  So let me see.  So there is a

2   group of documents in response to request for production 38

3   through 48 that you're saying the responses there have been

4   privileged but there is no privilege log.

5        MS. JOHNSON:  There is no privilege log.  I don't know

6   how they can be privileged.  His affirmative defenses are the

7   DOJ and FBI all told us we could do this.

8        Are there documents that support your position that

9   they told us they could do this.  They are there or they are

10  not.  How could they be produced in anticipation of a

11  litigation.

12       THE COURT:  All right.  Then the other one is what you

13  are calling the SureTrader document.  That is requests 14, 20,

14  21, 30 and 38.

15       MS. JOHNSON:  Yes, your Honor.

16       THE COURT:  For that one you want to find out if he

17  has any of those documents and tell you affirmatively whether

18  he does or does not.

19       MS. JOHNSON:  That one is a little different.  That

20  one he has said I have documents but I'm withholding them

21  because they belong to SureTrader.  I don't understand the

22  logic behind that.

23       THE COURT:  OK.

24       MS. JOHNSON:  That is the objection.  We would like

25  you to overrule that.

|   |   |
|---|---|
| 1 | THE COURT:  But they belong to SureTrader.  All right. |
| 2 | MS. JOHNSON:  Then the third is what you previously |
| 3 | said.  There is this group of documents.  We don't know whether |
| 4 | he has them or if he is withholding any or he has them in his |
| 5 | control. |
| 6 | THE COURT:  Which request is that?  Is that 15 through |
| 7 | 17, or more? |
| 8 | MS. JOHNSON:  It is more than that.  It is basically |
| 9 | everything but -- 2 through 17 with the exception of 14. |
| 10 | THE COURT:  2 through 13, 15 through 17. |
| 11 | MS. JOHNSON:  2 through 17 with the exception of 14, |
| 12 | which falls under the second group. |
| 13 | THE COURT:  2 through 13 and 14 through 17. |
| 14 | MS. JOHNSON:  That's correct. |
| 15 | THE COURT:  Right.  OK.  On those you want to know |
| 16 | does he have them, does he not have them, but tell you clearly. |
| 17 | MS. JOHNSON:  Yes. |
| 18 | THE COURT:  All right.  Let me hear from Mr. Ford on |
| 19 | the first tranche, requests for production 38 through 48. |
| 20 | Whenever a privilege is asserted it must be |
| 21 | accompanied by a privilege log.  So what is missing here? |
| 22 | MR. FORD:  Yes.  I am not sure I understand the |
| 23 | request.  In terms of the documents -- one of our positions in |
| 24 | this case is that not just the DOJ and FBI, but the SEC itself |
| 25 | had told Mr. Gentile that his conduct -- that MintBroker was |

1   not soliciting clients because of the procedures they had put

2   in place.  To be clear, those are not documents in

3   Mr. Gentile's possession; those are documents in the SEC's

4   possession, and they are mostly described in correspondence

5   between the SEC and FINRA.

6        Now, we subpoenaed FINRA.  FINRA produced these

7   documents, and we did immediately turn them over to the SEC, as

8   we are required to do.  So the SEC has all of those documents.

9        To be clear, I am not aware of any documents on this

10  issue that we are withholding on the basis of a privilege.  I

11  am honestly not certain where that comes from because,

12  obviously, that wouldn't make sense, right.

13       To the extent there is other evidence of it, we expect

14  that evidence to be testimonial, not documentary, and so we

15  don't have the documents of it, but we expect that it will come

16  out once the depositions get started.

17       So to be clear on the first, what we will call sort of

18  the first tranche that is in discussion, Mr. Gentile is not

19  withholding any such documents on privilege grounds.  I am not

20  certain where that comes from.

21       All of the documents on that issue, one, to the extent

22  they -- I just don't remember offhand.  If any were in

23  Mr. Gentile's possession but they were turned over -- I don't

24  recall right at this second.  What I do know is that the bulk

25  of them are documents that are actually SEC documents, some

1    from the SEC's production but mostly from FINRA's production,

2    which has been transmitted to the SEC and they do have.

3          That is my response to the first tranche.

4          THE COURT:  All right.  So I'm looking at your answer

5    to 38:  Audited and unaudited financial statements for

6    SureTrader.  The answer is that there is an objection to

7    request No. 38 to the extent that it was formulated based on

8    information plaintiff improperly obtained, and further because

9    it seeks documents with information that are not available to

10   him.

11         MS. JOHNSON:  I'm sorry, your Honor.  The

12   attorney-client objections begin 39.  I don't know if I told

13   you incorrectly.

14         THE COURT:  OK.  No wonder.

15         39:  All documents that support -- so those are for

16   the affirmative defenses, right?  39 to 48.

17         MS. JOHNSON:  Yes, your Honor.

18         THE COURT:  Then the responses are attorney-client

19   privilege or work product, and that seems to be the refrain for

20   everything 39 through 48.

21         Now, Mr. Ford, generally when you claim that there is

22   privilege, you need to file a privilege log, but under the

23   local rules things that occur after the beginning of the

24   litigation, of course, that is exempt because otherwise it

25   would be very onerous to put everything because once the

1    litigation starts, the client starts talking to the attorneys

2    all the time.

3           Is that your contention, that 39 through 48 are

4    privileged?  But I don't know to what extent you can really

5    claim privilege because these are documents supporting the

6    affirmative defenses.  That is a pretty common request.

7           Are you saying that all of the affirmative defenses

8    are based on documents provided to Mr. Gentile by his counsel?

9    Is that the theory here?

10          MR. FORD:  No.  No, Judge, that is not the theory at

11   all.

12          The documents -- just to remind your Honor, right, our

13   theory of the case is that there was no improper solicitation

14   of U.S. clients by MintBroker, and MintBroker had all the

15   required policies and procedures in place to make sure that

16   they were not soliciting U.S. clients.

17          The second part of that is that because Mr. Gentile --

18   as your Honor knows, Mr. Gentile was cooperating with the DOJ

19   and the SEC from 2012 to 2016.  I have been his lawyer for the

20   entire time period.  I have been his lawyer now for over a

21   decade.  So I was the attorney of record in all of these

22   matters.

23          During those years, 2012 to 2016, Mr. Gentile, and

24   frankly through me, was transmitting to the SEC information

25   about everything he was doing.  Among those things being

1    transmitted was information about his policies and procedures

2    on the solicitation of U.S. clients and that they were in full

3    compliance with the laws as, frankly, my law firm read and

4    interpreted them and provided guidance to Mr. Gentile on.

5         This information was turned over to the SEC and the

6    DOJ, and the FINRA as well, actually.  The SEC is well aware of

7    that.

8         Obviously, those communications are not privileged.

9    When I am talking to the SEC or the DOJ or FINRA or any third

10   party who is not my client, those communications are not

11   privileged and we are not asserting as much.

12        The communications that I had with Mr. Gentile on this

13   topic at the time, of course, are privileged, and that we would

14   assert.  I was his lawyer and representing him in this matter,

15   and of course that would be privileged.  But our affirmative

16   defense is absolutely not based on any conversations that

17   Mr. Gentile and I had that were privileged, but only on the

18   interactions that Mr. Gentile and I had with the SEC, the DOJ,

19   and FINRA on this topic.

20        THE COURT:  Well, then if you are telling me that none

21   of these documents supporting the affirmative defenses are

22   privileged because they were disclosed to the SEC and whoever

23   else, why are all of your answers to 39 through 48 privileged?

24        It is like a repeat of the same stuff over and over

25   again.  It is not clear.

1          If you are saying that whatever was shared with the

2    SEC is not privileged, then why is everything here privileged?

3          MR. FORD:  Well, if we look at -- I think the answer

4    to that -- let me see.  All documents that support your first

5    affirmative defense during his active cooperation, potential --

6    or documents constituting trial material, including preliminary

7    draft reports.

8          I think the reason why we phrased it that way, your

9    Honor, was more on the documents constituting trial preparation

10   materials, right, which is that it is privileged.  It is sort

11   of work product in terms of how we were preparing our

12   presentation.

13         To be clear, those document requests, our response to

14   those document requests are not relying on a blanket refusal to

15   produce in connection with attorney-client privilege.

16         THE COURT:  So are you saying that even though your

17   answers are all basically saying that you are claiming

18   attorney-client and work product privilege that you have

19   produced some documents but you just haven't tied them down to

20   these responses?

21         MR. FORD:  Yes.  To be clear, your Honor, again, I

22   think the issue is that we are not withholding, to be clear, we

23   are not withholding --

24         THE COURT:  Right.

25         MR. FORD:  -- any documents --

1          THE COURT:  Sir, sir, we seem to be going around in

2     circles.  If you are producing stuff, you say, here it is,

3     Bates number this to that.  If you are withholding stuff, then

4     you say, here it is, privilege log, unless it is after the

5     commencement of the litigation under the local rule.

6          What you are saying here is claiming privilege.  So

7     why don't you tell me what nonprivileged documents you are

8     producing in response to 39 to 48.

9          MR. FORD:  Those documents -- again, your Honor, I'm

10    certainly not trying to go around and around.  I really do want

11    to answer your question.

12         Those documents that are supporting those positions

13    are not documents that were in Mr. Gentile's possession; they

14    were documents that we knew to be in FINRA's and the SEC's

15    possession.  So the documents that have been produced in the

16    course of this litigation.

17         THE COURT:  Produced by whom?

18         MR. FORD:  By FINRA and the SEC.

19         THE COURT:  And FINRA sent them to you?

20         MR. FORD:  Yes.  We have a copy and the SEC has a

21    copy.  After we received, obviously --

22         THE COURT:  So honestly, I feel like I am just having

23    to take you by the hand step by step.

24         If you have documents and Mr. Gentile has documents in

25    his possession, custody or control that are responsive to

1    requests 39 through 48, as to which you are not claiming

2    attorney-client or work product privilege, you need to produce

3    it.  That is step number one.

4         Step number two, if you have documents that you claim

5    are privileged, then you need to either produce a privilege log

6    or say all those privileged documents were created or postdate

7    the beginning of the litigation, and then you cite the local

8    rule that says for that stuff you don't need to produce a

9    privilege log.

10        I don't mean this in a derogatory way, but you can't

11   hide the ball from the SEC.

12        MR. FORD:  Of course not, your Honor.  I understand.

13   There is certainly no intention to hide the ball.  We feel very

14   strongly about the strength of our case.  So there is

15   absolutely no hiding anything.  We are happy to get everything

16   out in the open.

17        As far as the privilege log, your Honor, I understand

18   and agree and do not dispute that we have to get to a privilege

19   log.  We had not concluded ours.  To be fair, the SEC literally

20   sent us their privilege log last night at about 10 p.m.,

21   presumably so they could say they already produced theirs, but

22   we also just got the SEC's.

23        Your Honor, maybe we are a little behind on the

24   logging.  We are not that far behind.  Obviously, any document

25   that we are withholding as privileged prior to the start of the

1    litigation we will provide a log for.

2          THE COURT:  I don't understand why you had to wait for

3    the SEC to provide their privilege log to figure out what you

4    are claiming privilege for.

5          MR. FORD:  I didn't, your Honor.  I understand it is

6    an independent obligation.

7          THE COURT:  All right.

8          MR. FORD:  I just mentioned it, but I understand that.

9          THE COURT:  All right.  So 39 through 48, so amend the

10   answers, the responses, to produce documents as to which

11   privilege is not claimed, and then either produce a privilege

12   log or indicate that there are documents as to which there is

13   no duty to provide a privilege log under the local rule.  That

14   will give the SEC a complete picture of what you have or what

15   you are shielding in 39 through 48.

16          Let me hear from the SEC.  Does that make sense to you

17   in terms of the ruling for that tranche, 39 through 48?

18          MS. JOHNSON:  Yes, your Honor.  That is all we can

19   ask.

20          THE COURT:  OK.  All right.

21          Now we have the SureTrader thing, which I started in

22   the wrong spot, 38.  Those are 14, 20, 21, 30, and 38.

23          MS. JOHNSON:  Yes.  I believe those are the correct

24   ones.  If you look at their response, the last line says,

25   without waiving their objection they aver that they have

1    documents in their possession but the documents belong to

2    SureTrader and he lacks the authority to produce such

3    documents.

4         THE COURT:  All right.  So which one are you looking

5    at?  No. 14 or No. 38?  Which one?

6         MS. JOHNSON:  That was No. 14, but it is the same

7    objection for each of those that we listed.

8         THE COURT:  OK.  Let me look at 14.  It is asking for

9    all communications by and between you and SureTrader's

10   officers, directors, employees, and independent contractors

11   concerning soliciting customers who resided, or were otherwise

12   located, in the United States.

13        Then there is an objection that it is seeking

14   information not available to him or requiring him to produce

15   third-party documents.

16        He has documents in his possession but they belong to

17   SureTrader and he lacks authority to produce such documents.

18        Now, again, the rule is documents in Mr. Gentile's

19   possession, custody, or control.

20        So what is the issue?  Is SureTrader going to be upset

21   if you produce these, Mr. Ford?

22        MR. FORD:  I don't know what SureTrader's view is

23   because SureTrader refused to appear in this litigation and

24   didn't have counsel involved in this litigation until about a

25   week or two ago.

1            So at the time these requests were formulated or these

2    answers were formulated, SureTrader/MintBroker was a black box.

3    We had reached out to them and no one would respond to us.  So

4    the way we formulated this response was accurate and

5    appropriate given the circumstances.

6            Mr. Gentile does not have the authority to transmit

7    SureTrader documents.  Even if it is in his possession, they

8    are not documents within his control, and it has to be through

9    an approval of the Bahamian court.

10           Now, this is again why we served the letters rogatory,

11   why we tried to get the joint liquidators to appear and talk to

12   us, as they now have, mostly through the SEC, and so that we

13   could get some order to this discovery process.  That is our

14   view.

15           These documents, to the extent that they are in his

16   possession and that they are relevant, they can be produced

17   once we get approval from the Bahamian court and the joint

18   liquidators.

19           THE COURT:  All right.  So it is possession, custody,

20   or control.  It is not possession, custody, and control.  So

21   you do have, your client does have responsive documents, but it

22   sounds to me like you're saying you are waiting for

23   SureTrader's permission or maybe the joint liquidators'

24   permission to produce them; is that what you are sort of

25   conveying?

1          MR. FORD:  Yes.  That's right.  I mean, it is

2     possession, custody, or control, but certainly if someone

3     possesses documents but they don't have authority over them, my

4     understanding is they are not permitted to produce them.  They

5     need approval.

6          THE COURT:  I'm sorry.  They are not permitted by who?

7     Who is keeping your client from producing these documents that

8     he has in his possession?

9          MR. FORD:  Well, the joint liquidators, the entity

10    with control over the documents.

11         THE COURT:  So the joint liquidators have told you,

12    even though you got these documents from SureTrader, you can't

13    produce them in this litigation; is that their position?

14         MR. FORD:  No, that is not my position, your Honor.

15    My position is that at the time these requests were responded

16    to, we did not have any contact with the joint liquidators.  We

17    could not talk to them.  They didn't have counsel.  When we

18    emailed them, they ignored us.

19         THE COURT:  All right.  Let me hear your take on this,

20    Ms. Johnson.

21         MS. JOHNSON:  They don't need SureTrader's permission

22    to give these documents, and SureTrader has had counsel the

23    entire time and has not objected.  They know about this.  So

24    the JOLs have not objected to Mr. Gentile producing these.  He

25    is basing his objection on thin air.  I don't know even if they

1    did object whether they would have the right to.

2           You have to keep in mind, all these documents are

3    protected by a confidentiality order that both sides have

4    agreed on.  So I don't know where Mr. Gentile's fear lies that

5    if he produces these documents that he is breaking some law.

6    If you have documents in your possession and they are not

7    privileged, you produce them.  You can't say, oh, the company

8    might not like it.

9           THE COURT:  All right.  Mr. Ford, you now say that

10   things have changed a little bit since you drafted this.

11          So my ruling on this issue for requests 14, 20, 21,

12   30, and 38 is that you need to amend your responses and produce

13   documents that fit into the categories to the extent you have

14   them in your possession.  Well, your client has them in his

15   possession, custody, or control.

16          Like the SEC said, if you need to produce it with a

17   confidentiality designation, you can do that.  I just don't see

18   this business that your client has stuff but he has to ask

19   somebody else's permission to produce it.  It is not clear to

20   me where that is coming from.

21          MR. FORD:  OK.  Thank you, your Honor.

22          THE COURT:  All right.  All right.  So then the third

23   tranche is, I think here the SEC is looking for clear answers.

24   That is, 2 through 13 and 15 through 17, they want you to tell

25   them, yes, I have them, here they are, Bates numbers, or no, I

1    haven't got any, sorry, go ask somebody else, end of story.  It

2    is that simple.

3          So I don't know what the issue is with 2 through 13

4    and 15 through 17, but you are welcome to tell me if you have

5    any concerns regarding such an order.

6          MR. FORD:  Let me just take a look at this, your

7    Honor.  Just to be clear, we are talking on Nos. 2 through 13

8    and 15 through 17?

9          THE COURT:  That is what the SEC is looking for under

10   this category.

11         MR. FORD:  OK.  With respect to 2, our position is

12   that the request No. 2, documents sufficient to show all

13   persons who are controlled by SureTrader, and what we said is

14   that we do not understand what that means, persons were

15   controlled by SureTrader.  I honestly, your Honor, have no idea

16   what that request is calling for.

17         MS. JOHNSON:  Your Honor, this was discussed in the

18   meet and confer.  I don't think Mr. Ford was there.

19         Persons is defined in the request and so is

20   controlled.  Persons includes entities and people, and

21   controlled is did you have 50 percent or more ownership.

22         We're asking for documents to show --

23         THE COURT:  I'm sorry.  Is that in the instruction?

24         MS. JOHNSON:  Yes, your Honor.

25         THE COURT:  I see the word controlled is capitalized.

1          MS. JOHNSON:  Yes, both controlled and persons is

2     defined in the instructions.

3          THE COURT:  All right.  So let's see.  So you're

4     saying, Mr. Ford, that control or controlled is vague and

5     ambiguous, but they did define it for you, and they did define

6     person.  I don't know.

7          You tell me what your issue is with No. 2.

8          MR. FORD:  Again, it sounds to me -- and, again, I

9     wasn't at the meet and confer -- I apologize -- is they're

10    asking for who is a control person of SureTrader, which is the

11    opposite, or they're asking for entities that were under

12    SureTrader --

13          THE COURT:  It says --

14          MR. FORD:  I'm not sure --

15          THE COURT:  -- request No. 2:  Documents sufficient to

16    show all persons who were controlled by SureTrader.  So

17    SureTrader is the controller and persons are the controllees.

18          MR. FORD:  OK.  I think the answer is going to be no

19    one.  We can amend No. 2.

20          With respect to the others, as I'm flipping through

21    here, while we do put in sort of general objections, as we do

22    with all document requests, we do end -- and I will go through

23    each of them -- with our final position.  As with most things

24    we are objecting to preserve ourself, but then we answer.

25          So with respect to 3, we do, after a long objection,

 1    we do say:  Gentile does not otherwise currently have any

 2    responsive documents in his possession.

 3          With request 4 we say, without waiving the above, he

 4    does not have any responsive documents.

 5          With respect to request No. 5, he also says he does

 6    not have any.

 7          Six, 7, 8, 9, 10, 11, 12, and 13, we all explicitly

 8    state -- I'm sorry.  Up to 12 we say he does not have any

 9    documents.

10          Then with respect to 13 we say:  Without waiving the

11    objections, Gentile will produce any responsive documents in

12    his possession, custody, or control.

13          So with respect to 3 through 13, I do believe that we

14    clearly stated whether he had documents or not, and to the

15    extent in 13 he said he does, those have been produced.

16          With respect to 14 -- I'm sorry.  That is the one we

17    dealt with.

18          Fifteen we say he does not have any documents.

19          Sixteen we say he does not have any.

20          Seventeen we say he does not.

21          Eighteen we say if he has them, he will produce.

22          Now I think I'm past the number.

23          THE COURT:  I'm sorry.  It stops at 17.

24          MR. FORD:  At 17.  I'm sorry, your Honor.

25          Yes.  So other than 2, which we can answer, we can

1    amend 2.

2           With respect to 3 through 13 and 15 through 17, I

3    believe that we clearly stated our position in terms of whether

4    he had documents or not and there is nothing more to do with

5    those.

6           THE COURT:  I see.  All right.  Let me hear from the

7    SEC.  I'm sure you don't like the idea that this was answered.

8           MS. JOHNSON:  We previously said if you don't have

9    them, then let us know, and they refuse to phrase it in that

10   way.

11          If he is telling us, OK, I don't have them, fine.  We

12   will take him at his word.

13          THE COURT:  Yes.

14          MS. JOHNSON:  But it doesn't get us to the issues,

15   particularly as to 15, 16, and 17, whether he has control over

16   some of these documents.

17          15, 16, and 17 ask for documents produced to other

18   regulators and securities regulators or to anyone else, either

19   voluntarily or by a subpoena.

20          He says he has no documents in his control.  Were

21   there documents in his control, were they produced by his

22   counsel, does Mr. Ford have those, does his Bahamian counsel

23   have those.  Those would be -- technically he could say I don't

24   have those documents, but his attorney -- they were produced --

25   should have those.  That would be within his control.

1      So we would ask that he clarify as to 15 through 17

2  whether the documents exist, and control.

3      In some other ones he talks about this Bahamian

4  computer that has become illusive, or third parties.  If he is

5  saying he doesn't have any of those or if he is saying they do

6  exist but they are in third parties, we would like him to say

7  what efforts he's made to get this computer, to access the

8  computer, to access the Cloud, or if it is in a third party

9  that he can just call up and get the documents, we'd like him

10  to make that clear.  If it is clear that he can't do that, then

11  his answers are fine.  But I suspect it is somewhere in

12  between.

13      THE COURT:  All right.  So you are saying that --

14  again, let's go back to the definition possession, custody, or

15  control.

16      As you know, custody, control, if somebody is holding

17  it for you, then that covers custody.  Let's say that you put

18  it in a bank safe and you can go grab it any day.  That would

19  be custody.  Just because it is in the bank's safe doesn't mean

20  it is not in Mr. Gentile's possession.  Just as an example.  I

21  am sure there is no bank safe here.

22      In any event, I believe, Mr. Ford, what the SEC is

23  looking for is, do you have these documents, and if you do have

24  them why are you objecting to producing them?

25      Maybe it needs to be the other way around.  Maybe you

1    can admit that, yes, you have responsive documents but you

2    object to producing them for whatever reason, so the SEC knows

3    whether you do or do not have responsive documents.

4          MR. FORD:  Judge, to be clear, I will answer

5    off-the-cuff.  If you are asking about me and my law firm, I

6    don't believe we have any of these documents.  I don't have any

7    recollection of responding to any securities commission in the

8    Bahamas subpoena or document request or otherwise being

9    involved in that.  I am not licensed to practice law in the

10   Bahamas.  I don't believe I have ever assisted with that.

11         THE COURT:  I'm sorry.

12         MR. FORD:  They are certainly not in my law firm's --

13         THE COURT:  I mean, obviously it is Mr. Gentile who

14   needs to respond, and if Mr. Gentile gave them to you for

15   safekeeping, then they are in his control or custody.  That was

16   the bank safe example.

17         So I think the SEC is just looking for straight

18   answers, is the sense that I get.  If all this stuff, the way

19   you phrased it is, yes, well, this objection is, and then you

20   say subject to your objections I don't have any, but what if

21   you do have some but you are objecting to producing them.  I

22   think it sounds to me like that is what the SEC is puzzled

23   about.

24         MR. FORD:  Your Honor, yes.  I completely agree with

25   your analysis to the bank and that it is Mr. Gentile, but there

1     are a couple of things.

2          I have been practicing a long time.  I think it is

3     standard practice, at least in New York -- and I apologize if

4     there is a discrepancy between the northeast and Miami -- but

5     putting in standard objections and then saying subject to and

6     without waiving I have documents and I'll produce them or I

7     don't have documents is done in every sort of document request

8     I have been involved in.  So I apologize if that is unusual.

9     We were not trying to be cute or cagey.

10         I do feel that the way that we end each of these

11    requests is explicit.  I don't hedge.  We say without waiving,

12    Gentile, either he says he doesn't have them or he does and he

13    will produce or he has them but they are not in his control

14    because they are SureTrader's, which is an issue we have

15    already dealt with.

16         Then just to put -- so, one, Mr. Gentile has

17    affirmatively stated that he doesn't have these documents and

18    then, two, just because your Honor raised it with me and I am

19    an officer of the court, I felt compelled to respond directly

20    to your Honor's question, which is whether there was any

21    document at my law firm that are responsive, and the answer is

22    no.  So Mr. Gentile has said that in his request, in the last

23    sentence, and now to the extent I will back it up with my

24    affirmation to the court.

25         MS. JOHNSON:  What about Bahamas counsel, Mr. Miller?

```
 1            MR. FORD:  I'm sorry.  Was that Ms. --

 2            MS. JOHNSON:  I'm sorry.  It is Alise Johnson.

 3            Does Mr. Miller have Mr. Gentile's -- Bahamian counsel

 4   Mr. Miller have anything responsive to 15, 16, or 17?

 5            MR. FORD:  I don't know.  I don't know if Mr. Miller

 6   was the lawyer who did that.  I honestly don't know.

 7            Again, the other issue --

 8            MS. JOHNSON:  That is what we need to know in those

 9   answers and then we will go away.

10            MR. FORD:  But just to be clear -- hold on.  Because

11   this goes back to sort of one of the main issues here.

12            To the extent that these requests are calling for

13   documents where MintBroker/SureTrader received a subpoena from

14   the Bahamian Securities Commission, and MintBroker and the

15   company responded -- and, again, I wasn't involved in this.

16   The company responded.  Those are not Mr. Gentile's documents.

17   Those are the company's documents.

18            MS. JOHNSON:  We are not asking for those.  We are

19   asking for the ones Mr. Gentile produced.

20            MR. FORD:  What do you mean produced?  I'm sorry.

21            THE COURT:  So Mr. Gentile is saying he does have some

22   documents, right, and he is producing them?  I think you said a

23   couple of examples were saying yes, he does.

24            MR. FORD:  Yes.

25            THE COURT:  Has he produced those?
```

```
 1              MR. FORD:  Yes.

 2              THE COURT:  He has.

 3              MR. FORD:  Yes.  Oh, yes.  All documents that we have

 4    identified and that we said we would produce we have produced.

 5              THE COURT:  So you're saying that your answers on the

 6    ones where you say you don't have any, can that be read as you

 7    don't have any or you don't have any that don't fit in this

 8    exception category, but you may have some.  By "you" I mean

 9    Mr. Gentile.  I think that is what the SEC is kind of stumped

10    with.

11              MR. FORD:  I apologize, your Honor.  I am not certain

12    I followed that last question.

13              To the extent we say -- I'm sorry.  Could your Honor

14    rephrase just so I can make sure.

15              THE COURT:  All right.  You have a litany of

16    objections.  On the ones where you say, despite these

17    objections I am going to produce, so at least you are giving

18    them something.  Then the ones where you say, despite these

19    objections I don't have any, so are you saying that whatever

20    they asked you for, in your mind, your client's mind, is

21    improper, it is not relevant, it is not proportional, and so on

22    or whatever, or is protected by privilege, all of that?

23              Then you say, when you cut all that off, then you

24    don't have any, and then that is the question that the SEC is

25    trying to figure out; is it that you don't have any or you
```

1    don't have any that you think you should produce but you're

2    holding back some?

3        MR. FORD:  No.  Yes.  Thank you, your Honor.  I

4    understand.

5        No.  The answer is so obvious.  If we say, look, we

6    don't like this document request, we think it is overbroad and

7    harassing and privileged and blah, blah, blah, but, hey, just

8    so you know, we don't have any documents anyway, then we are

9    saying --

10        THE COURT:  All right.

11        MR. FORD:  I am not trying to be cute or confusing

12    anyone.

13        When we say at the end we don't have these documents,

14    we mean we don't have these documents.  I'm not trying to,

15    again, sort of play games and say we don't have any because it

16    is irrelevant.  I mean, I've stated my objection, A, I think

17    this is irrelevant and burdensome, blah, blah, blah, but I

18    don't have the documents anyway.

19        So when I say we don't have any, that is the answer.

20    I wasn't trying to be confusing there.

21        THE COURT:  OK.  So I guess the SEC can take that as a

22    representation by an officer of the court that whenever the

23    answer is, don't have any, don't have any that are responsive

24    to the request, and then if it comes up later that Mr. Gentile

25    did have them, I am sure that will pop up.

```
 1              At this point in time, then, I don't think with that

 2   clarification that this needs to be amended.  That is as far as

 3   3 through 13 and 15 through 17.

 4              Mr. Ford has agreed to amend No. 2.

 5              Anything else?

 6              MS. JOHNSON:  I think that is it, your Honor.

 7              THE COURT:  OK.  You will get a written order.

 8              MS. JOHNSON:  Thank you for your time.

 9              THE COURT:  Thank you very much.

10              MS. JOHNSON:  Thank you.  Have a good afternoon.

11              THE COURT:  Just don't file anymore discovery motions.

12   This one slipped through the cracks.  All right.

13              MS. JOHNSON:  Thank you.

14              MR. FORD:  Thank you, your Honor.  Have a good

15   afternoon, everyone.

16              THE COURT:  You too.

17              THE DEPUTY CLERK:  Court's adjourned.

18              (Adjourned)

19

20

21

22

23

24

25
```

C E R T I F I C A T E


    I hereby certify that the foregoing is an accurate

transcription to the best of my ability of the digital audio

recording in the above-entitled matter.


September 12, 2022    s/ Joanne Mancari
                      Joanne Mancari, RPR, CRR, CSR
                      Court Reporter
                      jemancari@gmail.com

MR. FORD: [38]
MS. JOHNSON: [30]  2/7 4/14 8/5 8/15
8/19 8/24 9/2 9/8 9/11 9/14 9/17 11/11
11/17 17/18 17/23 18/6 20/21 22/17
22/24 23/1 25/8 25/14 28/25 29/2 29/8
29/18 32/6 32/8 32/10 32/13
MS. SUM: [1]  2/9
THE COURT: [57]
THE DEPUTY CLERK: [2]  2/3 32/17

# 0
0040 [1]  1/21

# 1
10 [2]  16/20 24/7
10016 [1]  1/21
11 [1]  24/7
12 [3]  24/7 24/8 33/8
13 [11]  9/10 9/13 21/24 22/3 22/7 24/7
24/10 24/13 24/15 25/2 32/3
14 [11]  6/2 8/13 9/9 9/11 9/13 17/22
18/5 18/6 18/8 21/11 24/16
15 [12]  7/12 9/6 9/10 21/24 22/4 22/8
25/2 25/15 25/17 26/1 29/4 32/3
16 [3]  25/15 25/17 29/4
17 [17]  7/12 9/7 9/9 9/10 9/11 9/13
21/24 22/4 22/8 24/23 24/24 25/2 25/15
25/17 26/1 29/4 32/3

# 2
20 [4]  6/2 8/13 17/22 21/11
2012 [2]  12/19 12/23
2016 [2]  12/19 12/23
2022 [2]  1/6 33/8
21 [5]  2/4 6/2 8/14 17/22 21/11
21-CV-21079-BB [1]  1/2
21079 [1]  2/4
212-858-0040 [1]  1/21
275 [1]  1/20

# 3
30 [5]  1/6 6/2 8/14 17/22 21/12
305-982-6300 [1]  1/17
33 [1]  1/9
33131 [1]  1/16
34 [3]  6/6 6/12 7/25
38 [11]  5/8 6/2 8/2 8/14 9/19 11/5 11/7
17/22 17/22 18/5 21/12
39 [11]  11/12 11/15 11/16 11/20 12/3
13/23 15/8 16/1 17/9 17/15 17/17

# 4
48 [12]  5/9 8/3 9/19 11/16 11/20 12/3
13/23 15/8 16/1 17/9 17/15 17/17

# 5
50 [1]  22/21

# 6
6300 [1]  1/17

# 8
801 [1]  1/16

# 9
98 [1]  3/19
99 [1]  3/20

# A
ability [1]  33/5
about [12]  3/18 5/7 12/25 13/1 16/14
16/20 18/24 20/23 26/3 27/5 27/23 28/25
above [2]  24/3 33/6
above-entitled [1]  33/6
absolutely [2]  13/16 16/15
access [2]  26/7 26/8
accompanied [1]  9/21
according [1]  4/14
accurate [2]  19/4 33/4
active [1]  14/5
actually [2]  10/25 13/6
ADAM [2]  1/19 2/11
additional [1]  2/22
address [1]  2/21
addressing [1]  5/10
adjourned [2]  32/17 32/18
admit [1]  27/1
affirmation [1]  28/24
affirmative [8]  4/20 8/6 11/16 12/6 12/7
13/15 13/21 14/5
affirmatively [2]  8/17 28/17
aford [1]  11/2
after [4]  11/23 15/4 15/21 23/25
afternoon [5]  2/7 2/9 2/11 32/10 32/15
again [11]  13/25 14/21 15/9 18/18 19/10
23/8 23/8 26/14 29/7 29/15 31/15
ago [1]  18/25
agree [2]  16/18 27/24
agreed [2]  21/4 32/4
agreement [1]  4/5
air [1]  20/25
al [2]  1/8 2/4
Alex [1]  2/9
ALICE [1]  1/14
ALICIA [1]  1/12
ALISE [3]  1/15 2/7 29/2
all [54]
allegations [1]  3/15
almost [1]  3/19
already [2]  16/21 28/15
also [2]  16/22 24/5
am [15]  6/13 6/14 9/22 10/9 10/11 10/19
13/9 15/22 26/21 27/9 28/18 30/11 30/17
31/11 31/25
ambiguous [1]  23/5
amend [6]  7/24 17/9 21/12 23/19 25/1
32/4
amended [1]  32/2
Among [1]  32/11
analysis [1]  27/25
answer [12]  11/4 11/6 14/3 15/11 23/18
23/24 24/25 27/4 28/21 31/5 31/19 31/23
answered [1]  25/7
answers [11]  3/3 7/24 13/23 14/17 17/10
19/2 21/23 26/11 27/18 29/9 30/5
anticipation [1]  8/10
any [43]
anymore [1]  32/11
anyone [2]  25/18 31/12
anything [5]  6/9 6/15 16/15 29/4 32/5
anyway [1]  31/8 31/18
apologize [4]  23/9 28/3 28/8 30/11
appear [2]  18/23 19/11
appearances [2]  1/13 2/6
appears [1]  2/22
applied [1]  5/5
appropriate [1]  19/5
approval [1]  19/9 19/17 20/5

# B
are [13]
aren't [2]  4/19 7/5
around [4]  15/1 15/10 15/10 26/25
as [26]  4/3 4/8 5/8 10/7 12/18 13/3 13/6
13/11 16/1 16/17 16/17 16/25 17/10
17/12 19/12 23/20 23/21 23/23 25/15
26/1 26/16 26/20 30/6 31/21 32/2 32/2
ask [8]  3/1 7/18 7/18 17/19 21/18 22/1
25/17 26/1
asked [3]  7/13 7/19 30/20
asking [7]  18/8 22/22 23/10 23/11 27/5
29/18 29/19
assert [1]  13/14
asserted [5]  5/18 6/23 7/20 9/20
asserting [2]  7/17 13/11
assisted [1]  27/10
at [24]  3/14 5/2 6/10 10/24 11/4 12/10
13/13 14/3 16/20 17/24 18/5 18/8 19/1
20/15 22/6 23/9 24/23 24/23 24/24 25/12 28/3
28/21 30/17 31/13 32/1
attorney [16]  4/18 4/22 4/25 5/4 5/5 7/6
7/15 7/17 7/21 11/12 11/18 12/21 14/15
14/18 16/2 25/24
attorney-client [13]  4/18 4/22 4/25 5/4
7/6 7/15 7/17 7/21 11/12 11/18 14/15
14/18 16/2
attorneys [1]  12/1
audio [2]  1/11 33/5
Audited [1]  11/5
August [1]  1/6
authority [4]  18/2 18/17 19/6 20/3
available [2]  11/9 18/14
Avenue [2]  1/16 1/20
aver [1]  17/25
aware [2]  10/9 13/6
away [1]  29/9

# B
back [4]  26/14 28/23 29/11 31/2
Bahamas [5]  2/24 6/17 27/8 27/10 28/25
Bahamian [8]  3/16 3/16 19/9 19/17
25/22 26/3 29/3 29/14
ball [2]  16/11 16/13
bank [4]  26/18 26/21 27/16 27/25
bank's [1]  26/19
based [8]  4/17 4/22 6/14 6/24 7/5 11/7
12/8 13/16
basically [3]  4/16 9/8 14/17
basing [1]  20/25
basis [1]  10/10
Bates [2]  15/3 21/25
BB [1]  1/2
be [40]
because [3]  3/12 6/6 8/21 10/1 10/11
11/8 11/24 11/25 12/5 12/17 13/22 18/23
26/19 28/14 28/18 29/10 31/15
become [1]  26/4
been [14]  2/23 2/24 3/9 3/13 4/6 5/21
8/3 11/2 12/19 12/20 15/15 24/15 28/2
28/8
BEFORE [1]  1/12
begin [1]  11/12
beginning [2]  11/23 16/7
behalf [1]  2/12
behind [3]  8/22 16/23 16/24
being [3]  4/3 12/25 27/8
believe [6]  17/23 24/13 25/3 26/22 27/6
27/10
belong [5]  6/18 8/21 9/1 18/1 18/16
best [1]  33/5

**B**

between [6]  6/16 6/23 10/5 18/9 26/12 28/4
bit [1]  21/10
black [1]  19/2
blah [6]  31/7 31/7 31/7 31/17 31/17 31/17
blanket [3]  7/20 7/20 14/14
blessed [1]  4/21
Bloom [1]  2/5
both [2]  21/3 23/1
box [1]  19/2
breaking [1]  21/5
Brickell [1]  1/16
briefed [1]  2/20
broad [1]  6/5
brokerage [2]  3/16 3/16
bulk [1]  10/24
burdensome [1]  31/17
business [1]  21/18
but [50]

**C**

cagey [1]  28/9
call [4]  7/2 7/9 10/17 26/9
calling [3]  8/13 22/16 29/12
can [17]  6/9 7/9 7/10 8/6 12/4 17/18 19/16 21/17 23/19 24/25 24/25 26/9 26/18 27/1 30/6 30/14 31/21
can't [4]  16/10 20/12 21/7 26/10
capitalized [1]  22/25
case [8]  1/2 2/4 3/1 3/15 3/17 9/24 12/13 16/14
cases [1]  7/3
categories [1]  21/13
category [2]  22/10 30/8
certain [3]  10/11 10/20 30/11
certainly [5]  4/7 15/10 16/13 20/2 27/12
certify [1]  33/4
changed [1]  21/10
circles [1]  15/2
circumstances [1]  19/5
cite [1]  16/7
civil [1]  2/5
claim [3]  11/21 12/5 16/4
claimed [1]  17/11
claiming [4]  14/17 15/6 16/1 17/4
clarification [1]  32/2
clarify [1]  26/1
clear [16]  6/8 6/19 10/2 10/9 10/17 13/25 14/13 14/21 14/22 21/19 21/23 22/7 26/10 26/10 27/4 29/10
clearly [4]  7/4 9/16 24/14 25/3
client [20]  3/2 4/18 4/22 4/25 5/4 7/6 7/15 7/17 7/21 11/12 11/18 12/1 13/10 14/15 14/18 16/2 19/21 20/7 21/14 21/18
client's [1]  30/20
clients [4]  10/1 12/14 12/16 13/2
Cloud [1]  26/8
come [2]  7/16 10/15
comes [3]  10/11 10/20 31/24
coming [1]  21/20
commencement [1]  15/5
commission [7]  1/4 1/15 2/3 2/8 2/10 27/7 29/14
common [1]  12/6
communications [4]  13/8 13/10 13/12 18/9
company [3]  21/7 29/15 29/16
company's [1]  29/17

compel [2]  2/19 4/16
compelled [1]  26/18
complete [2]  3/12 17/14
completely [1]  27/24
compliance [2]  7/25 13/3
comply [1]  6/6
computer [4]  6/17 26/4 26/7 26/8
concerning [1]  18/11
concerns [1]  22/5
concluded [1]  16/19
conduct [1]  9/25
confer [2]  22/18 23/9
confidentiality [2]  21/3 21/17
confusing [2]  31/11 31/20
connection [1]  14/15
constituting [2]  14/6 14/9
contact [1]  20/16
contemplate [1]  2/17
contention [1]  12/3
contractors [1]  18/10
control [31]  3/9 4/6 5/20 5/22 6/21 6/22 6/24 7/8 7/8 7/14 9/5 15/25 18/19 19/8 19/20 19/20 20/2 20/10 21/15 23/4 23/10 24/12 25/15 25/20 25/21 25/25 25/25 26/2 26/15 26/16 27/15 28/13
controlled [9]  4/3 22/13 22/15 22/20 22/21 22/25 23/1 23/4 23/16
controllees [1]  23/17
controller [1]  23/17
conversations [1]  13/16
conveying [1]  19/25
cooperating [1]  12/18
cooperation [1]  14/5
copy [2]  15/20 15/21
correct [3]  6/2 9/14 17/23
correspondence [1]  10/4
could [10]  2/20 4/21 8/7 8/9 8/10 16/21 19/13 20/17 25/23 30/13
counsel [9]  2/6 12/8 18/24 20/17 20/22 25/22 25/22 28/25 29/3
couple [2]  28/1 29/23
course [6]  3/14 11/24 13/13 13/15 15/16 16/12
court [9]  1/1 1/24 2/18 19/9 19/17 28/19 28/24 31/22 33/9
Court's [1]  32/17
covers [1]  26/17
cracks [1]  32/12
created [1]  16/6
CRR [2]  1/23 33/8
CSR [2]  1/23 33/8
cuff [1]  27/5
currently [2]  4/3 24/1
custody [13]  3/8 15/25 18/19 19/19 19/20 20/2 21/15 24/12 26/14 26/16 26/17 26/19 27/15
customers [3]  3/17 3/21 18/11
cut [1]  30/23
cute [2]  28/9 31/11
CV [1]  1/2

**D**

day [1]  26/18
dealing [1]  3/20
dealt [2]  24/17 28/15
decade [1]  12/21
Defendant [1]  1/9 1/19
defense [2]  13/16 14/5
defenses [6]  4/20 8/6 11/16 12/6 12/7 13/21

define [2]  23/5 23/5
defined [2]  22/19 23/8
definition [2]  3/19 26/14
depositions [1]  10/16
derogatory [1]  16/10
described [1]  10/4
designation [1]  21/17
despite [2]  30/16 30/18
did [8]  10/7 20/16 21/1 22/21 23/5 23/5 29/6 31/25
didn't [3]  17/5 18/24 20/17
different [1]  8/19
digital [2]  1/11 33/5
directly [1]  28/19
directors [1]  18/10
disclosed [1]  13/22
discovery [7]  2/17 2/23 3/2 3/11 5/16 19/13 32/11
discrepancy [1]  28/4
discussed [1]  22/17
discussion [1]  10/18
dispute [1]  16/18
DISTRICT [2]  1/1 1/1
do [35]
document [10]  5/5 8/13 14/13 14/14 16/24 23/22 27/8 28/7 28/21 31/6
documentary [1]  10/14
documents [135]
does [23]  2/17 5/15 8/18 8/18 9/16 9/16 17/16 19/6 19/21 24/1 24/4 24/5 24/8 24/15 24/18 24/19 24/20 25/22 25/22 28/12 29/3 29/21 29/23
doesn't [12]  5/19 5/19 5/23 5/23 6/6 6/10 6/24 25/14 26/5 26/19 28/12 28/17
doing [2]  3/18 12/25
DOJ [7]  4/20 8/7 9/24 12/18 13/6 13/9 13/18
don't [58]
done [5]  3/7 3/10 6/15 7/3 28/7
down [1]  14/19
draft [1]  14/7
drafted [1]  21/10
during [2]  12/23 14/5
duty [1]  17/13

**E**

each [3]  18/7 23/23 28/10
efforts [2]  3/1 26/7
Eighteen [1]  24/21
either [4]  16/5 17/11 25/18 28/12
else [4]  13/23 22/1 25/18 32/5
else's [2]  7/1 21/19
emailed [1]  20/18
employees [1]  18/10
end [4]  22/1 23/22 28/10 31/13
entire [2]  12/20 20/23
entities [2]  22/20 23/11
entitled [1]  33/6
entity [2]  2/25 20/9
equal [1]  4/7
errant [1]  3/22
ESQ [3]  1/14 1/15 1/19
et [2]  1/8 2/4
even [4]  14/16 19/7 20/12 20/25
event [1]  26/22
ever [1]  27/10
every [2]  5/5 28/7
everyone [1]  32/15
everything [10]  3/12 4/11 5/6 6/3 9/9 11/20 11/25 12/25 14/2 16/15

**E**

evidence [2]  10/13 10/14
example [2]  26/20 27/16
examples [1]  29/23
except [2]  2/20
exception [3]  9/9 9/11 30/8
EXCHANGE [5]  1/3 1/15 2/3 2/8 2/10
excuse [1]  5/16
exempt [1]  11/24
exist [5]  7/15 7/15 7/16 26/2 26/6
expect [3]  4/9 10/13 10/15
explicit [1]  28/11
explicitly [1]  24/7
extension [1]  2/19
extent [10]  10/13 10/21 11/7 12/4 19/15
21/13 24/15 28/23 29/12 30/13

**F**

fact [1]  4/12
fair [1]  16/19
falls [1]  9/12
far [3]  16/17 16/24 32/2
FBI [3]  4/20 8/7 9/24
fear [1]  21/4
fed [1]  7/12
feel [3]  15/22 16/13 28/10
felt [1]  28/19
Fifteen [1]  24/18
figure [1]  17/3 30/25
file [4]  2/19 6/5 11/22 32/11
filed [1]  6/5
filing [2]  2/18 5/6
final [1]  23/23
financial [1]  11/5
find [1]  8/16
fine [2]  25/11 26/11
FINRA [8]  10/5 10/6 10/6 13/6 13/9
13/19 15/18 15/19
FINRA's [2]  11/1 15/14
firm [3]  13/3 27/5 28/21
firm's [1]  27/12
first [6]  4/1 9/19 10/17 10/18 11/3 14/4
fit [2]  21/13 30/7
FL [1]  1/16
flipping [1]  23/20
FLORIDA [2]  1/1 1/5
followed [1]  30/12
following [1]  2/2
FORD [13]  1/19 1/20 2/11 3/1 9/18
11/21 18/21 21/9 22/18 23/4 25/22 26/22
32/4
Ford's [1]  6/19
fordobrien.com [1]  1/22
foregoing [1]  33/4
formulated [4]  11/7 19/1 19/2 19/4
frankly [3]  3/7 12/24 13/3
full [2]  3/7 13/2
further [1]  11/8

**G**

games [1]  31/15
gave [1]  27/14
general [1]  23/21
generally [2]  2/14 11/21
Gentile [29]  1/20 2/12 2/23 3/7 9/25
10/18 12/8 12/17 12/18 12/23 13/4 13/12
13/17 13/24 15/24 19/6 20/24 24/1 24/11
27/13 27/14 27/25 28/12 28/16 28/22
29/19 29/21 30/9 31/24
Gentile's [10]  3/23 4/12 10/3 10/23 15/13

18/18 21/4 26/20 29/3 29/16
get [15]  4/2 4/7 6/10 7/2 16/16 16/15
16/18 19/11 19/13 19/13 19/17 25/14 26/7 26/9
27/18 32/7
gets [1]  6/21
give [3]  7/10 17/14 20/22
given [3]  2/18 5/24 19/5
giving [2]  5/13 30/17
gmail.com [2]  1/24 33/9
go [7]  4/9 15/10 22/1 23/22 26/14 26/18
29/9
goes [1]  29/11
going [5]  5/15 15/1 18/20 23/18 30/17
good [5]  2/7 2/9 2/11 32/10 32/14
got [3]  16/22 20/12 22/1
grab [1]  26/18
granted [1]  2/18
grounds [1]  10/19
group [5]  5/9 5/11 8/2 9/3 9/12
guess [2]  6/22 31/21
guidance [1]  13/4
Guy [2]  1/20 2/12

**H**

had [14]  3/12 6/5 9/25 10/1 12/14 13/12
13/17 13/18 16/19 17/2 19/3 20/22 24/14
25/4
hand [1]  5/25 15/23
happy [2]  16/15
harassing [1]  31/7
has [49]
hasn't [1]  5/24
have [121]
haven't [5]  5/21 14/19 22/1
having [1]  15/22
he [90]
he's [4]  3/12 7/3 7/13 26/7
head [1]  6/20
hear [5]  4/13 9/18 17/16 20/19 25/6
HEARING [1]  1/11
heart [1]  3/15
hedge [1]  28/11
held [1]  2/2
here [11]  9/21 12/9 14/2 15/2 15/4 15/6
21/23 21/25 23/21 26/21 29/11
hereby [1]  33/4
hey [1]  31/7
hide [2]  16/11 16/13
hiding [1]  16/15
him [11]  5/16 6/10 7/4 7/24 11/10 13/14
18/14 18/14 25/12 26/6 26/9
his [39]
hold [1]  29/10
holding [2]  26/16 31/2
honestly [6]  10/11 15/22 22/15 29/6
Honor [29]  2/11 3/5 8/15 11/11 11/17
12/12 12/18 14/9 14/21 15/9 16/12 16/17
16/23 17/5 17/18 20/14 21/21 22/7 22/15
22/17 22/24 24/24 27/24 28/18 30/11
30/13 31/3 31/6 32/4
Honor's [1]  28/20
HONORABLE [1]  1/12
how [5]  6/10 7/16 8/6 8/10 14/11
however [1]  2/18

**I**

I'll [1]  28/6
I'm [21]  6/18 8/20 11/4 11/11 15/9 20/6
22/23 23/14 23/20 24/8 24/16 24/22
24/23 24/24 25/7 27/11 29/1 29/20

30/13 31/14
idea [2]  22/15 25/7
identified [1]  30/4
if [43]
ignored [1]  20/18
illusive [1]  26/4
immediately [1]  10/7
improper [2]  12/13 30/21
improperly [1]  11/8
in [102]
includes [1]  22/20
including [1]  14/6
incorrectly [1]  11/13
independent [2]  17/6 18/10
indicate [1]  17/12
information [6]  11/8 11/9 12/24 13/1 13/5
18/14
instruction [1]  22/23
instructions [1]  23/2
intention [1]  16/13
interactions [1]  13/18
INTERNATIONAL [2]  1/7 2/4
interpreted [1]  13/4
interrogatories [1]  3/3
into [1]  21/13
involved [4]  18/24 27/9 28/8 29/15
irrelevant [2]  31/16 31/17
is [187]
issue [10]  6/22 10/10 10/21 14/22 18/20
21/11 22/3 23/7 28/14 29/7
issued [1]  2/24
issues [2]  25/14 29/11
it [75]
it's [1]  7/12
itself [1]  9/24

**J**

jemancari [2]  1/24 33/9
Joanne [3]  1/23 33/8 33/8
JOHNSON [4]  1/15 2/7 20/20 29/2
johnsonali [1]  1/18
joined [1]  2/15
joint [9]  4/3 4/10 5/21 19/11 19/17 19/23
20/9 20/11 20/16
JOLs [1]  20/24
JUDGE [3]  1/12 12/10 27/4
just [23]  2/15 3/21 7/2 9/24 10/22 12/12
14/19 15/22 16/22 17/8 21/17 22/6 22/7
26/9 26/19 26/20 27/17 28/16 28/18
29/10 30/14 31/7 32/11

**K**

keep [1]  21/2
keeping [1]  20/7
kind [1]  30/9
knew [1]  15/14
know [22]  2/23 3/22 4/3 8/5 9/3 9/15
10/24 11/12 12/4 18/22 20/23 20/25 21/4
22/3 23/6 25/9 26/16 29/5 29/5 29/6
29/8 31/8
knows [2]  12/18 27/2

**L**

lacks [2]  18/2 18/17
LANDY [1]  1/20
language [1]  6/23
last [5]  6/22 16/20 17/24 28/22 30/12
later [1]  31/24
law [6]  13/2 13/21 27/5 27/9 27/12 28/21

laws [1]  13/3
lawyer [5]  7/10 12/19 12/20 13/14 29/6
lawyers [1]  7/16
least [2]  28/3 30/17
legal [1]  7/8
let [12]  2/20 3/1 4/13 8/1 9/18 14/4 17/16
18/8 20/19 22/6 25/6 25/9
let's [3]  23/3 26/14 26/17
letters [5]  2/24 4/1 4/9 5/15 19/10
licensed [1]  27/9
lies [1]  21/4
like [12]  7/3 8/24 13/24 15/22 19/22 21/8
21/16 25/7 26/6 26/9 27/22 31/6
line [1]  17/24
liquidator [1]  5/22
liquidators [7]  4/4 4/11 19/11 19/18 20/9
20/11 20/16
liquidators' [1]  19/23
listed [1]  18/7
litany [1]  30/15
literally [1]  16/19
litigation [10]  8/11 11/24 12/1 15/5 15/16
16/7 17/1 18/23 18/24 20/13
little [3]  8/19 16/23 21/10
LLP [1]  1/20
local [4]  11/23 15/5 16/7 17/13
located [1]  18/12
log [17]  4/18 4/25 7/22 8/4 8/5 9/21
11/22 15/4 16/5 16/9 16/17 16/19 16/20
17/1 17/3 17/12 17/13
logging [1]  16/24
logic [1]  8/22
long [2]  23/25 28/2
look [5]  14/3 17/24 18/8 22/6 31/5
looking [2]  2/22 11/4 18/4 21/23 22/9
26/23 27/17
LTD [2]  1/8 2/4

M
made [3]  3/2 5/1 26/7
Madison [1]  1/20
MAGISTRATE [1]  1/12
main [1]  29/11
make [5]  10/12 12/15 17/16 26/10 30/14
Mancari [3]  1/23 33/8 33/8
material [1]  14/6
materials [1]  14/10
matter [1]  13/14 33/6
matters [1]  12/8
may [4]  6/16 6/16 6/17 30/8
maybe [5]  6/7 16/23 19/23 26/25 26/25
me [22]  3/1 4/13 7/10 8/1 9/18 12/24
13/20 14/4 15/7 17/16 18/8 19/22 20/19
21/20 22/4 22/6 23/7 23/8 25/6 27/5
27/22 28/18
mean [9]  5/19 16/10 20/1 26/19 27/13
29/20 30/8 31/14 31/16
means [1]  22/14
meet [2]  22/18 23/9
mentioned [1]  17/8
Miami [3]  1/5 1/16 28/4
might [1]  21/8
Miller [4]  28/25 29/3 29/4 29/5
mind [6]  6/19 21/2 30/20 30/20
MINTBROKER [15]  1/7 2/4 3/15 3/18
3/21 3/25 4/2 4/19 5/7 9/25 12/14 12/14
19/2 29/13 29/14
MintBroker's [1]  3/20
MintBroker/SureTrader [1]  29/13

missing [1]  9/21
moot [1]  3/7
more [6]  4/7 9/7 9/8 14/9 22/21 25/4
most [1]  23/23
mostly [3]  10/4 11/1 19/12
motion [9]  1/11 2/19 2/20 2/21 3/6 5/6
6/5 6/5 7/4
motions [2]  2/18 32/11
moved [1]  4/16
Mr. [49]
Mr. Ford [10]  3/1 9/18 11/21 18/21 21/9
22/18 23/4 25/22 26/22 26/7
Mr. Ford's [1]  6/19
Mr. Gentile [24]  2/23 3/7 9/25 10/18 12/8
12/17 12/18 12/23 13/4 13/12 13/17
13/18 15/24 19/6 20/24 27/13 27/14
27/25 28/16 28/22 29/19 29/21 30/9
31/24
Mr. Gentile's [10]  3/23 4/12 10/3 10/23
15/13 18/18 21/4 26/20 29/3 29/16
Mr. Miller [4]  28/25 29/3 29/4 29/5
Ms [1]  29/1
Ms. [1]  20/20
Ms. Johnson [1]  20/20
much [3]  2/20 13/11 32/9
must [1]  9/9
my [13]  11/3 13/3 13/10 20/3 20/14
20/15 21/11 27/5 27/12 28/21 28/23
31/16 33/5

N
need [9]  11/22 16/2 16/5 16/8 20/5
20/21 21/12 21/16 29/8
needs [5]  5/16 5/20 26/25 27/14 32/2
new [3]  1/21 5/1 28/3
next [1]  7/9
night [1]  16/20
no [32]  1/2 2/4 4/24 8/4 8/5 11/7 11/14
12/10 12/10 12/13 16/13 16/15 17/13
18/5 18/5 18/6 19/3 20/14 21/25 22/12
22/15 23/7 23/15 23/18 23/19 24/5 25/20
26/21 28/22 31/3 31/5 32/4
none [1]  13/20
nonprivileged [2]  3/13 15/7
northeast [1]  28/4
Nos [2]  6/1 22/7
not [91]
note [1]  2/14
nothing [1]  25/4
now [11]  5/22 10/6 11/21 12/20 17/21
18/18 19/10 19/12 21/9 24/22 28/23
number [4]  15/3 16/3 16/4 24/22
numbers [1]  21/25
NY [1]  1/21

O
O'BRIEN [1]  1/20
object [2]  21/1 27/2
objected [4]  4/17 5/21 20/23 20/24
objecting [3]  23/24 26/24 27/21
objection [10]  5/24 8/24 11/6 17/25 18/7
18/13 20/25 23/25 27/19 31/16
objections [10]  5/23 7/5 11/12 23/21
24/11 27/20 28/5 30/16 30/17 30/19
obligation [1]  17/6
obligations [2]  3/11 5/16
obtained [1]  11/8
obvious [1]  31/5
obviously [5]  10/12 13/8 15/21 16/24
27/13

occur [1]  11/23
off [2]  27/5 30/25
offhand [1]  10/22
officer [2]  28/19 31/22
officers [1]  18/10
oh [2]  21/7 30/3
OK [11]  8/23 9/15 11/14 17/20 18/8
21/21 22/11 23/18 25/11 31/21 32/7
on [34]
once [3]  10/16 11/25 19/17
one [16]  7/19 8/12 8/16 8/19 8/20 9/23
10/21 16/13 18/4 18/5 19/3 23/19 24/16
28/16 29/11 32/12
onerous [1]  11/25
ones [6]  17/24 26/3 29/19 30/6 30/16
30/18
only [2]  6/19 13/17
open [1]  16/16
opposite [1]  23/11
or [62]
order [4]  19/13 21/3 22/5 32/7
OTAZO [1]  1/12
OTAZO-REYES [1]  1/12
other [9]  7/3 7/13 8/12 10/13 24/25
25/17 26/3 26/25 29/7
others [1]  23/20
otherwise [4]  11/24 18/11 24/1 27/8
our [15]  3/6 3/11 3/11 6/20 7/4 9/23
12/12 13/15 14/11 14/13 16/14 19/13
22/11 23/23 25/3
ours [1]  16/19
ourself [1]  23/24
out [6]  8/16 10/16 16/16 17/3 19/3 30/25
over [15]  2/25 3/13 5/22 6/10 6/21 7/8
10/7 10/23 12/20 13/5 13/24 13/24 20/3
20/10 25/15
overbroad [1]  31/6
overrule [1]  8/25
own [1]  5/16
ownership [1]  22/21

P
p.m [1]  16/20
Pages [1]  1/9
part [2]  7/4 12/17
particularly [1]  25/15
parties [3]  6/18 26/4 26/6
party [5]  4/1 6/25 13/10 18/15 26/8
past [1]  24/22
people [1]  22/20
percent [2]  3/20 22/21
percentage [1]  3/23
period [1]  12/20
permission [4]  19/23 19/24 20/21 21/19
permitted [2]  20/4 20/6
person [2]  23/6 23/10
persons [7]  22/13 22/14 22/19 22/20
23/1 23/16 23/17
phone [1]  7/2
phrase [1]  25/9
phrased [2]  14/8 27/19
picture [1]  17/14
place [2]  10/2 12/15
plaintiff [3]  1/5 1/14 11/8
play [1]  31/15
please [1]  2/6
point [1]  32/1
points [1]  2/21
policies [2]  12/15 13/1
pop [1]  31/25

**P**

position [7]  8/8 20/13 20/14 20/15 22/11 23/23 25/3
positions [2]  9/23 15/12
possesses [1]  20/3
possession [28]  3/8 3/24 4/12 5/20 7/1 7/1 10/3 10/4 10/23 15/13 15/15 15/25 18/1 18/16 18/19 19/7 19/16 19/19 19/20 20/2 20/8 21/6 21/14 21/15 24/2 24/12 26/14 26/20
postdate [1]  16/6
potential [1]  14/5
potentially [1]  3/8
practice [2]  27/9 28/3
practicing [1]  28/2
preliminary [1]  14/6
preparation [1]  14/9
preparing [1]  14/11
presentation [1]  14/12
preserve [1]  23/24
presumably [1]  16/21
pretty [1]  12/6
previously [2]  9/2 25/8
prior [1]  16/25
privilege [42]
privileged [21]  5/6 7/15 7/17 8/4 8/6 12/4 13/8 13/11 13/13 13/15 13/17 13/22 13/23 14/2 14/2 14/10 16/5 16/6 16/25 21/7 31/7
procedure [1]  2/17
procedures [3]  10/1 12/15 13/1
proceed [1]  2/16
proceedings [1]  2/2
process [3]  4/9 5/15 19/13
produce [30]  3/2 5/17 5/20 5/25 7/19 7/22 14/15 16/2 16/5 16/8 17/10 17/11 18/2 18/14 18/17 18/21 19/24 20/4 20/13 21/7 21/12 21/16 21/19 24/11 24/21 28/6 28/13 30/4 30/17 31/1
produced [21]  3/9 4/10 4/12 6/3 7/10 7/13 8/10 10/6 14/19 15/15 15/17 16/21 19/16 24/15 25/17 25/21 25/24 29/19 29/20 29/25 30/4
produces [1]  21/5
producing [14]  4/22 5/14 6/13 6/14 6/18 7/21 15/2 15/8 20/7 20/24 26/24 27/2 27/21 29/22
product [5]  5/4 11/19 14/11 14/18 16/2
production [5]  5/21 8/2 9/19 11/1 11/1
proportional [1]  30/21
protected [2]  21/3 30/22
provide [3]  17/1 17/3 17/13
provided [3]  4/25 12/8 13/4
providing [1]  4/18
put [6]  5/24 10/1 11/25 23/21 26/17 28/16
putting [1]  28/5
puzzled [1]  27/22

**Q**

question [4]  15/11 28/20 30/12 30/24
questions [1]  7/5

**R**

raised [1]  28/18
reached [1]  19/3
read [2]  13/3 30/6
really [4]  3/21 6/18 12/4 15/10
reason [4]  5/25 7/21 14/8 27/2
reasonable [1]  7/2

recall [1]  10/24
received [3]  2/23 15/21 29/19
recollection [1]  27/7
record [2]  2/6 12/21
recording [1]  1/11 33/6
records [5]  3/9 3/19 3/20 4/7 4/11
refrain [1]  11/19
refusal [1]  14/14
refuse [1]  25/9
refused [1]  18/23
regarding [1]  22/5
regulators [3]  7/14 25/18 25/18
related [1]  5/8
relevant [3]  3/12 3/25 4/5 19/16 30/21
relying [1]  14/14
remaining [1]  6/4 6/8
remember [1]  10/22
remind [1]  12/12
repeat [1]  13/24
rephrase [1]  30/14
Reporter [2]  1/24 33/9
reports [1]  14/7
representation [1]  31/22
representing [1]  13/14
request [19]  3/3 5/8 6/15 8/2 9/6 9/23 11/7 12/6 22/12 22/16 22/19 23/15 24/3 24/5 27/8 28/7 28/22 31/6 31/24
requested [2]  14/13 16/4
requests [13]  5/8 6/1 8/13 9/19 14/13 14/14 16/1 19/1 20/15 21/11 23/22 28/11 29/12
required [2]  10/8 12/15
requires [1]  7/2
requiring [1]  18/14
resided [1]  18/11
respect [8]  22/11 23/20 23/25 24/5 24/10 24/13 24/16 25/2
respond [3]  19/3 27/14 28/19
responded [4]  4/15 20/15 29/15 29/16
responding [1]  27/7
response [7]  3/2 8/2 11/3 14/13 15/8 17/24 19/4
responses [5]  8/3 11/18 14/20 17/10 21/12
responsive [12]  3/8 6/15 15/25 19/21 24/2 24/4 24/11 27/1 27/3 28/21 29/4 31/23
restate [1]  7/4
review [1]  3/7
reviewed [2]  5/3 5/5
REYES [1]  1/12
right [34]
rogatory [5]  2/24 4/2 4/9 5/15 19/10
room [1]  7/9
RPR [2]  1/23 33/8
rule [7]  6/6 6/12 7/25 15/5 16/8 17/13 18/18
rules [1]  11/23
ruling [2]  17/17 21/11

**S**

safe [4]  26/18 26/19 26/21 27/16
safekeeping [1]  27/15
said [13]  3/14 4/1 4/22 6/2 8/20 9/3 21/16 22/13 24/15 25/8 28/22 29/22 30/4
salient [1]  2/21
same [2]  13/24 18/6
say [32]  5/1 6/12 7/10 7/24 15/2 15/4 16/6 16/21 21/7 21/9 24/1 24/3 24/8 24/16 24/23 24/24 24/25 25/23

recall [1]  10/24
saying [18]  6/6 8/3 12/7 14/1 14/16 14/17 15/6 19/22 23/4 26/5 26/5 26/13 28/5 29/21 29/23 30/5 30/19 31/9
says [10]  5/12 5/25 7/14 7/23 16/8 17/24 23/13 24/5 25/20 28/12
scratching [1]  6/20
SEC [40]
SEC's [5]  3/15 10/3 11/1 15/14 16/22
sec.gov [2]  1/17 1/18
second [5]  5/11 7/22 9/12 10/24 12/17
securities [9]  1/3 1/15 2/3 2/8 2/9 3/16 25/18 27/7 29/14
see [6]  8/1 14/4 21/17 22/25 23/3 25/6
seek [1]  4/1
seeking [1]  18/13
seeks [1]  11/9
seem [1]  15/1
seems [1]  11/19
selective [1]  5/2
sense [4]  7/8 10/12 17/16 27/18
sent [2]  15/19 16/20
sentence [1]  28/23
September [1]  33/8
served [1]  19/10
set [1]  6/4
sets [1]  4/16
Seventeen [1]  24/20
shared [1]  14/1
shielding [1]  17/15
should [3]  5/25 25/25 31/1
show [4]  5/2 12/12 22/22 23/16
sides [1]  21/3
simple [1]  22/2
since [1]  21/10
sir [2]  15/1 15/1
sitting [1]  7/9
Six [1]  24/7
Sixteen [1]  24/19
slipped [1]  32/12
small [1]  3/23
so [66]
solicitation [3]  3/20 12/13 13/2
soliciting [4]  3/17 10/1 12/16 18/11
some [10]  10/25 14/19 19/13 21/5 25/16 26/3 27/21 29/21 30/8 31/2
somebody [2]  2/15 21/19 22/1 26/16
someone [2]  7/1 20/2
something [6]  6/16 30/18
somewhere [1]  26/11
sorry [13]  11/11 20/6 22/1 22/23 24/8 24/16 24/23 24/24 27/11 29/1 29/2 29/20 30/13
sort [11]  3/19 3/22 6/5 6/23 10/17 14/10 19/24 23/21 28/7 29/11 31/15
sounds [3]  19/22 23/8 27/22
SOUTHERN [1]  1/1
spot [1]  17/22
standard [2]  28/3 28/5
standing [1]  5/23
start [1]  16/25
started [2]  10/16 17/21
starts [2]  12/1 12/1
state [2]  2/6 24/8
stated [4]  24/14 25/3 28/17 31/16
statements [1]  11/5
STATES [3]  1/1 1/12 18/12
step [4]  15/23 15/23 16/3 16/4
stops [1]  24/23

**S**

story [1]  22/1
straight [1]  27/17
stray [2]  3/22 3/22
strength [1]  16/14
strongly [1]  16/14
stuff [6]  13/24 15/2 15/3 16/8 21/18
27/18
stumped [1]  30/9
subject [2]  27/20 28/5
subpoena [3]  25/19 27/8 29/13
subpoenaed [1]  10/6
such [5]  3/9 10/19 18/2 18/17 22/5
sufficient [2]  22/12 23/15
SUM [2]  1/14 2/9
sumal [1]  1/17
support [4]  4/20 8/8 11/15 14/4
supporting [3]  12/5 13/21 15/12
supposed [1]  6/12
sure [9]  6/4 6/24 9/22 12/15 23/14 25/7
26/21 30/14 31/25
SureTrader [26]  5/12 5/14 5/18 5/22
5/24 6/25 8/13 8/21 9/1 11/6 17/21 18/2
18/17 18/20 18/23 19/2 19/7 20/12 22/2
22/13 22/15 23/10 23/12 23/16 23/17
29/13
SureTrader's [6]  7/23 18/9 18/22 19/23
20/21 28/14
SureTrader/MintBroker [1]  19/2
suspect [1]  26/11

**T**

take [6]  6/10 15/23 20/19 22/6 25/12
31/21
talk [2]  19/11 20/17
talking [4]  5/7 12/1 13/9 22/7
talks [1]  26/3
technically [1]  25/23
tell [6]  8/17 9/16 15/7 21/24 22/4 23/7
telling [3]  6/8 13/20 25/11
terms [5]  4/5 9/23 14/11 17/17 25/3
testimonial [1]  10/14
than [2]  9/8 24/25
Thank [9]  2/13 3/5 21/21 31/3 32/8 32/9
32/10 32/13 32/14
that [224]
That's [2]  9/14 20/1
their [7]  5/2 16/20 17/3 17/24 17/25 18/1
20/13
theirs [1]  16/21
them [52]
then [30]  5/6 8/12 9/2 11/18 13/20 14/2
15/3 16/5 16/7 17/11 18/13 21/22 23/24
24/10 25/9 26/10 26/17 27/15 27/19 28/5
28/16 28/18 29/9 30/18 30/23 30/23
30/24 31/8 31/24 32/1
theory [3]  12/9 12/10 12/13
there [30]  2/19 2/24 2/25 4/24 5/11 7/12
8/1 8/3 8/4 8/5 8/8 8/9 9/3 10/13 11/6
11/21 12/13 16/13 16/14 17/12 17/12
18/13 22/18 25/4 25/21 26/21 27/25 28/4
28/20 31/20
Thereupon [1]  2/1
these [27]  4/7 10/6 12/5 12/21 13/21
14/20 18/21 19/1 19/1 19/15 20/7 20/12
20/15 20/22 20/24 21/2 21/5 25/16 26/23
27/6 28/10 28/17 29/12 30/16 30/18
31/13 31/14
they [80]
they're [5]  5/18 23/9 23/11

**thin** [1]  20/25
thing [3]  7/18 7/22 7/21
things [5]  11/23 12/25 21/10 23/23 28/1
think [18]  7/12 14/3 14/8 14/22 21/23
22/18 23/18 24/22 27/17 27/22 28/2
29/22 30/9 31/1 31/6 31/16 32/1 32/6
thinks [1]  6/7
third [11]  6/18 6/25 7/18 7/23 9/2 13/9
18/15 21/22 26/4 26/6 26/8
third-party [1]  18/15
this [47]
those [39]
though [2]  14/16 20/12
three [1]  4/16
through [37]
tied [1]  4/16
time [10]  2/19 12/2 12/20 13/13 19/1
20/15 20/23 28/2 32/1 32/8
today [2]  6/8 6/8
told [7]  3/10 4/21 8/7 8/9 9/25 11/12
20/11
too [1]  32/16
topic [2]  13/13 13/19
tranche [5]  9/19 10/18 11/3 17/17 21/23
TRANSCRIBED [2]  1/11 1/23
transcription [1]  33/5
transmit [1]  19/6
transmitted [2]  11/2 13/1
transmitting [1]  12/24
trial [2]  14/6 14/9
tried [1]  19/11
try [1]  4/2
trying [7]  4/7 15/10 28/9 30/25 31/11
31/14 31/20
turn [1]  10/7
turned [3]  3/13 10/23 13/5
two [3]  16/4 18/25 28/18
type [1]  4/25

**U**

U.S [5]  3/17 3/21 12/14 12/16 13/2
unaudited [1]  11/5
under [11]  2/14 2/17 6/12 7/8 7/14 9/12
11/22 15/5 17/13 22/9 23/11
understand [9]  8/21 9/22 16/12 16/17
17/2 17/5 17/8 22/14 31/4
understanding [1]  20/4
UNITED [3]  1/1 1/12 18/12
unless [2]  5/17 15/4
unnecessary [1]  3/6
until [1]  18/24
unusual [1]  28/8
up [7]  5/1 5/24 24/8 26/9 28/23 31/24
31/25
upset [1]  18/20
us [13]  4/15 5/24 6/8 6/21 8/7 8/9 16/20
19/3 19/12 20/18 25/9 25/11 25/14
useful [1]  3/1

**V**

vague [1]  23/4
verified [1]  5/17
verve [1]  4/7
very [4]  3/22 11/25 16/13 32/9
via [1]  2/2
videoconference [1]  2/2
view [4]  3/6 3/11 18/22 19/14
voluntarily [1]  25/19

**W**

wait [1]  17/2
waiting [1]  19/22
waiving [5]  17/25 24/3 24/10 28/6 28/11
want [4]  8/16 9/15 15/10 21/24
was [28]  2/19 3/6 3/6 3/16 3/18 7/4 9/25
11/7 12/13 12/18 12/21 12/24 12/25 13/1
13/5 13/14 14/1 14/9 18/6 19/2 19/4
22/17 22/18 25/7 27/15 28/20 29/1 29/6
wasn't [3]  23/9 29/15 31/20
way [7]  14/8 16/10 19/4 25/10 26/25
27/18 28/10
we [119]
we'd [1]  26/9
we're [5]  5/13 6/9 22/22
week [1]  18/25
welcome [1]  22/4
well [8]  4/14 13/6 13/6 13/20 14/3 20/9
21/14 27/19
were [24]  2/2 4/1 10/22 10/23 12/16 13/2
13/17 13/22 14/11 15/13 15/14 16/6
18/11 19/1 19/2 20/15 22/14 23/11 23/16
25/20 25/21 25/24 28/9 29/23
weren't [1]  6/4
what [38]
whatever [6]  2/25 3/3 14/1 27/2 30/19
30/22
when [6]  11/21 13/9 20/17 30/23 31/13
31/19
whenever [2]  9/20 31/22
where [13]  4/5 4/11 7/13 7/19 7/20 10/11
10/20 21/4 21/20 29/13 30/6 30/16 30/18
whether [12]  6/6 6/19 7/24 8/17 9/3 21/1
24/14 25/3 25/15 26/2 27/3 28/20
which [15]  4/2 9/6 9/12 11/2 14/10 16/1
17/10 17/12 17/21 18/4 18/5 23/10 24/25
28/14 28/20
while [1]  23/21
who [10]  4/6 13/10 18/11 20/6 20/7
22/13 23/10 23/16 27/13 29/6
whoever [1]  13/22
whole [2]  5/9 5/15
whom [1]  15/17
why [11]  5/25 7/16 7/21 13/23 14/2 14/8
15/7 17/2 19/10 19/11 26/24
will [19]  2/14 2/16 2/21 4/9 4/10 10/15
10/17 17/1 17/14 23/22 24/11 24/21
25/12 27/4 28/13 28/23 29/9 31/25 32/7
withholding [13]  6/1 6/7 6/9 7/7 7/25
8/20 9/4 10/10 10/19 14/22 14/23 15/3
16/25
within [2]  19/8 25/25
without [7]  4/18 7/21 17/25 24/3 24/10
28/6 28/11
wonder [1]  11/14
word [3]  6/10 22/25 25/12
worded [1]  6/10
work [5]  5/4 11/19 14/11 14/18 16/2
would [20]  2/25 3/23 5/1 5/2 5/6 7/18
7/18 7/22 8/24 11/25 13/13 13/15 19/3
21/1 25/23 25/25 26/1 26/6 26/18 30/4
wouldn't [1]  10/12
written [1]  32/7
wrong [1]  17/22
wrongfully [1]  3/17

**Y**

years [1]  12/23
yes [24]  3/5 8/15 9/17 9/22 11/17 14/21
15/20 17/18 17/23 20/1 21/25 22/24 23/1

**Y**

yes... [11]  24/25 25/13 27/1 27/19 27/24
 29/23 29/24 30/1 30/3 30/3 31/3
York [2]  1/21 28/3
you [130]
you're [5]  8/3 19/22 23/3 30/5 31/1
your [56]

**Z**

Zoom [1]  2/2