# Exhibit A

Philip Dorsett
February 28, 2023

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

                    PLAINTIFF,

        -against-     Case No.:
                      1:21-cv-21079-bb


MINTBROKER INTERNATIONAL, LTD., f/k/a SWISS
AMERICA SECURITIES LTD. and d/b/a
SURETRADER, and GUY GENTILE, a/k/a GUY
GENTILE NIGRO,

                    DEFENDANTS.
------------------------------------------X


              DATE: February 28, 2023

              TIME: 9:36 A.M.




        DEPOSITION of PHILIP DORSETT,

taken by the Defendant, pursuant to a

Subpoena, held via videoconference, before

Victoria Scro, a Notary Public of the State

of New York.
```

Philip Dorsett
February 28, 2023

|  | Page 306 |
|---|---|
| 1 | P. DORSETT |
| 2 | your recollection that you were not working |
| 3 | for SureTrader in August of 2017? |
| 4 | A.   My exit letter was received in |
| 5 | August, my recollection, and I can actually |
| 6 | check that because I still have it. |
| 7 | Q.   Did you produce that document |
| 8 | to the SEC in the 15,000 documents you gave |
| 9 | them? |
| 10 | A.   That was not produced to the |
| 11 | SEC to my knowledge.  That document, all of |
| 12 | this has already been squashed away.  This |
| 13 | is like negotiation back and forth.  That |
| 14 | document was the actual exit document, the |
| 15 | check and it actually had the breakdown. |
| 16 | You mentioned the loan I received because |
| 17 | they took that out and it was a proper, |
| 18 | official document required by Bahamian law. |
| 19 | Q.   So, do you recall producing |
| 20 | 15,000 documents to the SEC? |
| 21 | A.   I don't know how much documents |
| 22 | were there. |
| 23 | Q.   Mr. Dorsett, it's just a yes or |
| 24 | no question.  I understand this is -- |
| 25 | A.   I don't remember. |

|  | Page 307 |
|---|---|
| 1 | P. DORSETT |
| 2 | Q.   I'm asking you just yes or no, |
| 3 | do you recall producing 15,000 documents to |
| 4 | the SEC in this action? |
| 5 | A.   I don't recall the number. |
| 6 | Q.   When you produced those |
| 7 | documents, did you select only certain |
| 8 | documents to produce to the SEC? |
| 9 | A.   Please clarify. |
| 10 | Q.   Did you produce all SureTrader |
| 11 | documents in your position to the SEC when |
| 12 | you produced the documents in this case, |
| 13 | yes or no? |
| 14 | A.   No, actually.  I think I have |
| 15 | quite a bit more. |
| 16 | Q.   How did you determine which |
| 17 | will documents to give to the SEC and which |
| 18 | documents to hold back? |
| 19 | A.   I can't recall at this point. |
| 20 | I can't recall at this point.  I think -- |
| 21 | Q.   Did the SEC instruct you to |
| 22 | take certain documents out of the |
| 23 | production? |
| 24 | A.   No.  I think -- well, I can't |
| 25 | recall, but I think it was more or less |

|  | Page 308 |
|---|---|
| 1 | P. DORSETT |
| 2 | that e-mails that I was able to send to the |
| 3 | SEC but actual documents a lot of those -- |
| 4 | it's a lot of stuff -- I'm still actually |
| 5 | finding them I don't know exactly what Guy |
| 6 | did to the computer but I'm still finding |
| 7 | stuff to this day and I'm like what is this |
| 8 | some of it is coded stuff I can't read.  A |
| 9 | lot of it is that.  A lot of that wasn't |
| 10 | actually sent, it had to do, I think, just |
| 11 | with e-mails, company e-mails that's what |
| 12 | it was. |
| 13 | Q.   That was on your SureTrader |
| 14 | laptop? |
| 15 | A.   This was on my personal laptop |
| 16 | that Guy put certain codes on. |
| 17 | Q.   When you say the very |
| 18 | beginning, please specify the exact time |
| 19 | period you're referring to. |
| 20 | A.   This would have had to be late |
| 21 | 2011 or early 2012.  He asked if he could |
| 22 | take my laptop home because he wanted to |
| 23 | back some stuff on it and he said now if |
| 24 | something happens to the work computer |
| 25 | we'll be okay. |

|  | Page 309 |
|---|---|
| 1 | P. DORSETT |
| 2 | Q.   Understood.  Therefore, none of |
| 3 | the documents that you produced from your |
| 4 | personal computer to the SEC are after |
| 5 | 2012; is that correct? |
| 6 | A.   None of them are after 2012? |
| 7 | No. |
| 8 | Q.   Mr. Dorsett, you just said Guy |
| 9 | instructed you to back things up -- |
| 10 | A.   He did not instruct me.  He did |
| 11 | it himself and he told me. |
| 12 | Q.   So, here is my question -- |
| 13 | MS. SUM:  Allow him to finish |
| 14 | answering the question. |
| 15 | A.   He explained to me -- |
| 16 | Q.   Mr. Dorsett, I'm asking about |
| 17 | the time period that something happened. |
| 18 | Your testimony is that Mr. Dorsett backed |
| 19 | up documents onto your computer in 2012, we |
| 20 | would not expect to see any documents on |
| 21 | your personal computer after 2012; isn't |
| 22 | that correct? |
| 23 | A.   I did not say that he backed up |
| 24 | documents.  I said he did something to my |
| 25 | computer.  I did not know what he did, but |

Page 310

1    P. DORSETT
2  he said if anything happens to us, we have
3  a back up.  In fact, it wasn't until years
4  later until -- and that computer, I stopped
5  using it -- literally, the hard drive
6  crashed and I had to get it
7  reconstructed --
8       Q.    What year did the hard drive
9  crash?
10      A.    I think 2016 and it sat there
11 over eight years because I spent a lot of
12 money to get it repaired.  The IT person
13 who I hired told me that the way he had to
14 reconstruct my hard drive caused my files
15 to be all over the place.  Looking at my
16 family photos, I see some SAS documents and
17 I press on it and I see a bunch of codes
18 and stuff.  That's when I see a bunch of
19 stuff at that time --
20      Q.    What year did you have the hard
21 drive reconstructed, Mr. Dorsett?
22      A.    I think that was around, I
23 saved up to get it reconstructed and I
24 wanted to let him put a new computer disk,
25 right, so I think that was around 2017 that

Page 311

1    P. DORSETT
2  I built -- I had to build the new laptop
3  and then it was later that year -- like I
4  said, a lot of it was just coding gibberish
5  that I couldn't understand and it was
6  sometime later that I was going through the
7  coding gibberish and stuff and then i was
8  going in my e-mails and I realized, buried
9  in my e-mails was Swiss America Securities.
10 It dawned on me, you know what, this had to
11 have been there from Guy -- I don't know
12 what he did, but whatever he did, it's
13 literally still on my computer to this day.
14           MR. FORD:  Can we go back to
15       the Exhibit 3.
16      Q.    As we pull that up, did the SEC
17 instruct you to remove privileged
18 communication from the e-mails that you
19 were transmitting?
20      A.    Yes, I think they said make
21 sure nothing is privileged between anything
22 to do with a lawyer or anything like that.
23      Q.    Can you please provide me the a
24 name of the law firm that conducted the
25 privilege review?

Page 312

1    P. DORSETT
2       A.    Sorry, what do you mean by a
3  privilege review?
4       Q.    You said the SEC instructed you
5  to remove privileged documents, did you
6  hire a law firm to do that?
7       A.    No, I didn't hire a law firm.
8       Q.    Did they hire a law firm to do
9  that, yes or no?
10      A.    No.  They told me they couldn't
11 receive anything that had privileged
12 communications, and so what I did was, I
13 tried to do a search for the company's
14 lawyer and I think I just deleted those to
15 be honest.  Anything that came up with
16 Michael Miller's, name I just deleted them.
17      Q.    So, they would be available
18 then in your Gmail trash; is that correct?
19      A.    Well, this is sometime ago -- I
20 mean, I don't know.  Interestingly enough,
21 the very week that it became known to the
22 courts that I was in possession of Swiss
23 America Securities e-mails, my Gmail was
24 actually hacked.  And that's when I started
25 following this case because I wanted to log

Page 313

1    P. DORSETT
2  in to see the exact time that you guys
3  became aware of it.  My Gmails were hacked
4  and security e-mails were deleted.
5       Q.    Mr. Dorsett, when did you make
6  the SEC aware that you had these documents,
7  what year?
8       A.    I can't recall.  I think it
9  would have been -- you mean the e-mails?
10      Q.    No.  When did you tell the SEC
11 that you had access to these documents
12 approximately what year?
13      A.    When you say these documents
14 please clarify.
15      Q.    The documents you obtained from
16 SureTrader?
17      A.    I did not obtain documents from
18 SureTrader if you were talking about the
19 documents that Guy backed up to my computer
20 I think I made SEC aware of that just
21 recently, like I don't know -- maybe last
22 year or the year before I'm not sure I'll
23 have to check my records.
24      Q.    You never told Sajaad Matin in
25 2016 that Guy Gentile backed up documents

Page 322
1      P. DORSETT
2          MR. FORD:  I do have some more
3      questions.  I just request that we
4      take a quick break.  I think there's
5      a couple more questions on this issue
6      and a couple more clean up, but I
7      don't anticipate much longer.
8          MS. SUM:  Are you saying you
9      expect to finish by 5:45 or what are
10     you saying?
11         MR. FORD:  Can we do a five
12     minute break and see where we're at
13     at 6:00 p.m.?
14         (At this time, there was a
15     pause in the proceeding.)
16         MR. FORD:  During the course of
17     this deposition, we were notified for
18     the first time that the witness has
19     additional documents in his
20     possession that were not produced.
21     As a result of that, we are holding
22     open the deposition, pending briefing
23     before the court on the issue.  I
24     will leave it at that in the interim.
25     We are requesting that the witness be

Page 323
1      P. DORSETT
2      dismissed and then Ms. Sum,
3      Ms. Johnson, to the extent at any of
4      the issues we discuss earlier, we
5      want to bring up, we will do it
6      outside of the presence of the
7      witness and permitted and make
8      whatever record you want, and so that
9      is it.
10         Mr. Dorsett, you are dismissed
11     for the time being with the
12     understanding that this deposition is
13     ongoing.
14         MS. SUM:  I'm not going to
15     speak to that issue --
16         MR. FORD:  Ms. Sum, this is not
17     a conversation before the witness.
18         MS. SUM:  You cannot do this.
19     This is not about the issue about the
20     affidavit.  This is applies
21     specifically on what you just said
22     and I want to state my objection
23     about keeping the deposition open.
24         MR. FORD:  We're doing it
25     outside the presence of the witness.

Page 324
1      P. DORSETT
2          MS. SUM:  This is not how
3      deposition --
4          MR. FORD:  Mr. Dorsett, you are
5      dismissed.
6          MS. SUM:  This is not the way
7      this works.
8          MR. FORD:  Ms. Sum --
9          MS. SUM:  No --
10         MR. FORD:  Ms. Sum, I am
11     dismissing the witness.  I have never
12     encountered anything like this.  I
13     would be interested to see if the
14     court reporter has seen anything like
15     this.
16         MS. SUM:  You cannot stop me
17     from stating on the record --
18         MR. FORD:  I'm not going to.
19     I'm requesting that the witness be
20     dismissed --
21         MS. SUM:  This is
22     unprofessional --
23         MR. FORD:  We are going to
24     dismiss the witness and then we will
25     put --

Page 325
1      P. DORSETT
2          MS. SUM:  You placed the
3      objection in his presence.
4          MR. FORD:  Ms. Sum, I said we
5      are holding the deposition open.
6          MS. SUM:  -- on the
7      transcript --
8          MR. FORD:  Ms. Sum, I ask that
9      you please stop doing this again for
10     the benefit of the court reporter.
11         MS. SUM:  No, you keep cutting
12     me off --
13         MR. FORD:  Mr. Dorsett --
14         MS. JOHNSON:  -- and we'll be
15     done --
16         MS. SUM:  It will take ten
17     seconds.
18         MR. FORD:  Ms. Sum.  We are not
19     doing any objections.
20         MS. SUM:  You do not get the
21     cut me off and stop me from speaking.
22         MR. FORD:  This is my
23     deposition and I'm dismissing the
24     witness.
25         MS. JOHNSON:  You're not

Philip Dorsett
February 28, 2023

|  | Page 326 |
|---|---|
| 1 | P. DORSETT |
| 2 | letting her make an objection. |
| 3 | MR. FORD: Ms. Johnson, it will |
| 4 | be on the record outside of the |
| 5 | presence of the witness. |
| 6 | MS. SUM: -- on the record and |
| 7 | I am permitted to respond. |
| 8 | MR. FORD: You are going to get |
| 9 | to respond -- |
| 10 | MS. SUM: This whole discussion |
| 11 | -- |
| 12 | MR. FORD: Ms. Sum, all I'm |
| 13 | requesting that it's -- all I'm |
| 14 | asking is that we dismiss the |
| 15 | witness. |
| 16 | MS. SUM: You don't dictate -- |
| 17 | MR. FORD: Mr. Dorsett, can you |
| 18 | please log off. We will get all of |
| 19 | your -- |
| 20 | MS. SUM: This is not the |
| 21 | way -- let me put it on the record. |
| 22 | MR. FORD: We're not doing it |
| 23 | in the presence of the witness. |
| 24 | MS. SUM: You're being -- sir, |
| 25 | you made your statement in the |

|  | Page 327 |
|---|---|
| 1 | P. DORSETT |
| 2 | presence of the witness -- |
| 3 | MR. FORD: There's no |
| 4 | statement. All I said was -- |
| 5 | MS. SUM: Sir, you made a |
| 6 | statement, you know full well what |
| 7 | you did. This is really unfortunate |
| 8 | in this matter. This is not |
| 9 | tolerated that you are -- |
| 10 | MR. FORD: Mr. Dorsett, you are |
| 11 | excused. You will be further |
| 12 | contacted about continuance -- |
| 13 | MS. SUM: The witness is |
| 14 | entitled to hear the commission's |
| 15 | position -- |
| 16 | MR. FORD: Then call him on the |
| 17 | phone and tell him your position. |
| 18 | MS. SUM: Sir, you made yours |
| 19 | statement in the presence of the |
| 20 | witness. Ten seconds of my time is |
| 21 | not going to make a difference and |
| 22 | this is unheard of. This is not how |
| 23 | we practice in Southern District. |
| 24 | MR. FORD: Go ahead. |
| 25 | MS. SUM: We object to the |

|  | Page 328 |
|---|---|
| 1 | P. DORSETT |
| 2 | statement you just made and we do not |
| 3 | agree that this deposition should be |
| 4 | held open. We will make our position |
| 5 | known to the court. |
| 6 | MR. FORD: Thank you, Ms. Sum. |
| 7 | Mr. Dorsett, you are dismissed. |
| 8 | THE WITNESS: Thank you. |
| 9 | MS. SUM: Have a good evening, |
| 10 | Mr. Dorsett. |
| 11 | MR. FORD: I've never seen that |
| 12 | before, but go ahead. |
| 13 | MS. SUM: You absolutely refuse |
| 14 | to let me have something on the |
| 15 | record and I literally needed ten |
| 16 | seconds to respond and that's it. |
| 17 | MR. FORD: Put it on the |
| 18 | record. Everything that you want to |
| 19 | put on the record about that |
| 20 | deposition, you can do. I wanted it |
| 21 | done outside of the presence of the |
| 22 | witness, because last time you tried |
| 23 | to modify the witness' testimony in |
| 24 | front of him. I don't think that's |
| 25 | appropriate and I was afraid you were |

|  | Page 329 |
|---|---|
| 1 | P. DORSETT |
| 2 | going to do it again. That's why I |
| 3 | was talking over you because I don't |
| 4 | think it is fair of you to attempt to |
| 5 | modify a witness' sworn statement. |
| 6 | If you want to testify, we'd be more |
| 7 | than happy to appear, whether you're |
| 8 | taking it or we're taking it, but in |
| 9 | the mean time the witness is the one |
| 10 | who is testifying and the prior |
| 11 | statement you made on the record, it |
| 12 | sounded an awful lot like coaching. |
| 13 | You were trying to modify his |
| 14 | previously existing testimony. |
| 15 | Ms. Sum, Ms. Johnson you can |
| 16 | put whatever objections on the |
| 17 | record, the court reporter is here. I |
| 18 | would only say that we do it with |
| 19 | recognition that it's been a very |
| 20 | long day and I, myself, have never |
| 21 | seen anything like this from other |
| 22 | attorneys, but let's go easy on her. |
| 23 | I know Ms. Scro and I appreciate it, |
| 24 | and I'm sorry that some of my |
| 25 | adversaries were conducting |