# Exhibit B

```
                      UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA

                       CASE NO. 21-CV-21079-BB

SECURITIES AND EXCHANGE
COMMISSION,

                                        Miami, Florida
                 Plaintiff(s),
                                        January 9, 2023
          vs.

MINTBROKER INTERNATIONAL,
LTD., et al.,


                 Defendant(s).      Pages 1 - 43
----------------------------------------------------------

                         DISCOVERY HEARING
              TRANSCRIBED FROM DIGITAL AUDIO RECORDING
             BEFORE THE HONORABLE ALICIA M. OTAZO-REYES
                   UNITED STATES MAGISTRATE JUDGE



APPEARANCES:

FOR THE PLAINTIFF(S):   ALICE SUM, ESQ.
                        ALISE M. JOHNSON, ESQ.
                        RUSSELL KOONIN, ESQ.
                        SECURITIES AND EXCHANGE COMMISSION
                        801 Brickell Avenue
                        Miami, FL 33131
                        305-982-6300
                        sumal@sec.gov
                        johnsonali@sec.gov
                        kooninr@sec.gov
```

```
 1    APPEARANCES (CONT'D)

 2

 3
      FOR THE DEFENDANT(S):   MATTHEW A. FORD, ESQ.
 4    Guy Gentile              STEPHEN R. HALPIN, III, ESQ.
                               FORD O'BRIEN LANDY, LLP
 5                             275 Madison Avenue
                               New York, NY 10016
 6                             212-858-0040
                               mford@fordobrien.com
 7                             shalpin@fordobrien.com

 8

 9

10    TRANSCRIBED BY:          Joanne Mancari, RPR, CRR, CSR
                               Court Reporter
11                             jemancari@gmail.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   Mr. Koonin?
 2          MS. SUM:  It will be me, your Honor.  I will be making
 3   the argument.
 4          THE COURT:  OK.
 5          MS. SUM:  Your Honor, let me start just very briefly
 6   with an explanation of these emails.
 7          Again, we are talking about two former employees who
 8   we stipulated are whistleblowers, and it's their SureTrader
 9   emails, not Mr. Gentile's emails from his SureTrader email
10   account or anything.  Their emails.  So we're talking about
11   really an impossibility where if he's even talking about a
12   privilege, it belongs to SureTrader.  There is no way that
13   company records can possibly be spoken for by Mr. Gentile.
14          Then if we are looking secondarily at a personal
15   privilege and whatever he mentioned with respect to a divorce
16   proceeding, Mr. Gentile would have had to communicate with his
17   lawyer and ended up copying these two former employees.
18          So certainly, as we have noted in our papers, because
19   these are the employees' email accounts, not Mr. Gentile's, any
20   waiver as to him personally would have been waived.
21          Now I also want to correct the record that in fact the
22   JOLs are fully aware about the extent of these emails.  11,000
23   from Mr. Dorsett and 33,000 from Mr. Frantz.
24          When we initially reached out in late April/May to
25   defense counsel regarding these emails, we did it in an
```

1    a U.S. government agency to seek documents from a foreign
2    company without some type of process.
3             The whistleblower statutes do not apply broad.  They
4    do not have extraterritorial reach.  These individuals are not
5    whistleblowers because this information has not been provided
6    voluntarily.  The SEC has requested it specifically.  We have
7    examples, myriad examples of the SEC saying, look for this,
8    send us this.  That's the real issue here.
9             What power does a U.S. governmental agency have to
10   take documents belonging to a foreign company from former
11   employees?  I mean, is this what is happening in the FTX case
12   as well?  Is the SEC doing the same thing?  Are those going to
13   be handed over to federal prosecutors up here in New York?
14            I mean, this is a real issue.  It raises significant
15   constitutional questions.  And an agency can only do what it's
16   authorized to do.  It is plain lacking.  Ms. Sum says she cites
17   statutes.  I mean, respectfully, there is no statute that
18   authorizes this.
19            MS. SUM:  Your Honor, it is a red herring to talk
20   about an issue relating to the foreign government or a foreign
21   company.  They're whistleblowers.  They did file TCRs, tips,
22   complaints and referrals with the agency.  We followed up with
23   them --
24            MR. HALPIN:  Under the SEC's regulations --
25            MS. SUM:  -- when they -- excuse me.

1  they were all forwarded from his gmail account, to which he was
2  a CC recipient, or whether this individual was actually in the
3  company office taking documents off of computers, which could
4  have included a personal laptop that belonged to Mr. Gentile.
5  I just don't know that information at this time.
6            THE COURT: All right. Any other comments, Ms. Sum?
7            MS. SUM: Your Honor, they've conflated two sets of
8  documents. When Mr. Dorsett filed his whistleblower complaint,
9  he was still an employee of the company. By the way, that is
10 quite typical of many whistleblowers who participate under the
11 whistleblower statute.
12           My colleagues did in fact follow up with Mr. Dorsett
13 to ask for more information. We have no reason to shy away
14 from the fact that we followed up to find out if there's more
15 evidence of securities violations. That's one set of
16 documents.
17           What we're talking about here are the email accounts
18 for the two former employees and a handful of documents that
19 are at issue. Other than their shifting positions during the
20 course of this discussion, there is still no basis at the end
21 of the day for Mr. Gentile to assert any objection with respect
22 to the company's records and anything that's his personal,
23 purported personal right of privilege. Those were copied or
24 otherwise sent to these employees, and there is also no reason
25 to prevent the SEC's access. So again we ask the court to deny