```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2
                        CASE NO. 21-CV-21079-BB
 3
    SECURITIES AND EXCHANGE
 4  COMMISSION,

 5                                      Miami, Florida
                  Plaintiff(s),
 6                                      January 9, 2023

 7            vs.

    MINTBROKER INTERNATIONAL,
 8  LTD., et al.,

 9
                  Defendant(s).      Pages 1 – 43
10  ------------------------------------------------------------

11                       DISCOVERY HEARING
              TRANSCRIBED FROM DIGITAL AUDIO RECORDING
12         BEFORE THE HONORABLE ALICIA M. OTAZO-REYES
                  UNITED STATES MAGISTRATE JUDGE
13


14
    APPEARANCES:
15
    FOR THE PLAINTIFF(S):  ALICE SUM, ESQ.
16                         ALISE M. JOHNSON, ESQ.
                           RUSSELL KOONIN, ESQ.
17                         SECURITIES AND EXCHANGE COMMISSION
                           801 Brickell Avenue
18                         Miami, FL 33131
                           305-982-6300
19                         sumal@sec.gov
                           johnsonali@sec.gov
20                         kooninr@sec.gov

21

22

23

24

25
```

```
1    APPEARANCES (CONT'D)

2


3
     FOR THE DEFENDANT(S):   MATTHEW A. FORD, ESQ.
4    Guy Gentile               STEPHEN R. HALPIN, III, ESQ.
                               FORD O'BRIEN LANDY, LLP
5                              275 Madison Avenue
                               New York, NY 10016
6                              212-858-0040
                               mford@fordobrien.com
7                              shalpin@fordobrien.com

8


9

10   TRANSCRIBED BY:          Joanne Mancari, RPR, CRR, CSR
                              Court Reporter
11                            jemancari@gmail.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    Thereupon,

2    the following proceedings were held via Zoom videoconference:

3          THE DEPUTY CLERK:  Securities and Exchange Commission

4    v. MintBroker International, Ltd., case No. 21 21079, civil,

5    Bloom.

6          Counsel, please state your appearances for the record.

7          MS. SUM:  Good afternoon.  This is Alice Sum for the

8    Securities and Exchange Commission.  Also present are my

9    colleagues Alise Johnson and Russell Koonin.

10         THE COURT:  All right.

11         MR. HALPIN:  Good afternoon, your Honor.  This is

12   Stephen Halpin on behalf of defendant Guy Gentile, who is

13   observing the proceedings, and along with me is my colleague

14   Matthew Ford, from Ford O'Brien Landy.

15         THE COURT:  All right.  Thank you very much.

16         All right.  So this is the hearing that was originally

17   set pursuant to the notice by Mr. Gentile, at docket entry 145,

18   and the cross-notice from the SEC, docket entry 146.

19         We had a hearing last week where I determined that at

20   this hearing there would be no testimony from the two

21   individuals who supplied -- well, one individual has supplied.

22   I think the other one, the attorney, hasn't.  Anyway, the two

23   individuals involved with the documents, Mr. Dorsett and -- let

24   me see the name of the other one.

25         MS. SUM:  Mr. Frantz.

 1          THE COURT:  -- Frantz.  Thank you.

 2          All right.  So the SEC is saying -- well, just to keep

 3   recounting the history, at the last hearing, at a prior hearing

 4   I suggested that the parties try to work out the review process

 5   of those documents, and apparently there has been no agreement

 6   other than the issuance of letters rogatory, but apparently

 7   because those are taking the usual time that letters rogatory

 8   take, which is a glacial pace, the SEC, as I understand it, is

 9   looking to start the review.  The SEC is saying that

10   Mr. Gentile has no standing to object.

11          I have had all along some concern that there may be

12   possibly attorney-client privileged documents or some other

13   kind of privileged documents in that production as to which

14   Mr. Gentile may be entitled to assert a privilege.

15          At our last hearing last week I said something along

16   the lines of taint team review, which the U.S. Attorney's

17   Office uses when they execute search warrants.  Not that that

18   would necessarily be appropriate here, but just something that

19   lets a disinterested party check for things.  Sometimes you

20   appoint a special master to do that.

21          I think where we're at is whether the SEC can start

22   their review or whether there are some preliminary steps that

23   need to be taken to protect any potential privilege claim of

24   Mr. Gentile's.  I'm not making any determination that he does

25   or does not have any claims; I'm just thinking about the

1    process.

2              I think the other batch of documents, the attorney for

3    the other gentleman still has.

4              So just setting the stage for where we're at right

5    now, let me hear from Mr. Gentile, who filed the notice of

6    hearing.  What would you like me to address now?  And then I

7    will hear from the SEC.

8              MR. HALPIN:  Thank you, your Honor.  Stephen Halpin.

9              May it please the court, I will just note briefly that

10   we preserve our objection to these documents coming in at all

11   and then I will focus squarely on the standing question which

12   your Honor previewed at the last hearing.

13             As many cases in the Eleventh Circuit make clear, a

14   party has standing to object to a nonparty subpoena.  Here, we

15   don't have a subpoena.  Assuming we're operating under the Rule

16   45 framework, a party has standing to object to a subpoena to a

17   nonparty to the extent that subpoena seeks information in which

18   the party has a personal right or privilege.  I think it's

19   clear-cut here that Mr. Gentile does.

20             Just to give a little bit more context for why that is

21   the case, I think it is important to recall that Mr. Gentile

22   and the U.S. government have been embroiled in litigation in

23   various forms for over a decade now at this point, and

24   attorneys from my firm have represented Mr. Gentile for the

25   vast majority of that time, if not all of it.

1          Specifically, in 2013 FINRA made a preliminary

2     determination that it was going to charge my client with some

3     of the exact same conduct that is at issue in this case --

4     alleged solicitation of U.S. customers.  That was November

5     2013.  An attorney at my firm made a submission in early 2014

6     addressing that preliminary determination.  FINRA ultimately

7     determined not to charge Mr. Gentile at that time, but

8     important to remember there that time period.  One of the

9     individuals here who was offering to provide documents was

10    actually employed at SureTrader beginning in 2012.  So he was

11    there during that context specifically.

12          That is just one example, and undoubtedly, we suspect

13    there are privileged emails between our firm, Mr. Gentile, the

14    company regarding, again, some of the exact same issues that

15    the SEC has alleged in this complaint.  And I can go through --

16    I'm happy to share, but I'll just go through other things we

17    spotted in the SEC production to date that give us cause for

18    concern, where one of the individuals is forwarding a

19    description of the nature of the legal services that our firm

20    is providing to the company.

21          Again, we were counsel to the company for a number of

22    years.  We are no longer counsel to the company in this case.

23    The company has not appeared.  But we still represent the

24    company in active litigation in another matter.

25          So I have an example of that.  I'm looking at an email

1    right here.  I'm looking at an email forwarded to the SEC from

2    one of these individuals disclosing, arguably, legal advice

3    from an in-house attorney at SureTrader.  I've got an email

4    where one individual forwards information about my client's

5    divorce proceedings to an attorney at the SEC.

6            I could continue on.  Just numerous examples of the

7    SEC soliciting particular information all to build a case,

8    ostensibly, against my client.

9            So we think it's clear that he has a personal right or

10   privilege in the documents sought.

11           I think the way we've been thinking about this and

12   trying to come to a solution that could allow us to move

13   forward notwithstanding our objection is that we would propose

14   that either the SEC arranges for the 11,000 documents that have

15   already been received from one individual as well as the 33,000

16   from the other all to be transmitted to our firm.  We will

17   undertake a privilege review.  We will log everything.  We

18   would respectfully request no less than two weeks.  We'll look

19   at everything.  We'll provide that to the SEC.  They can ensure

20   on their end that the trial attorneys don't have access to what

21   we've logged.  Then if there is a dispute over a privilege

22   question, we can take that up before your Honor.

23           So that would be our proposal.

24           THE COURT:  Let me see.  You are doing something along

25   the lines of what I said about a taint team, in the sense that

1    you're saying you want to have a person look at the documents,

2    identify what you think is privileged with regard to your

3    client, his own privilege claims, obviously, because he's not

4    the company, and that's where I think the purpose of the SEC

5    sending that little blurb about the response of Mr. Gentile to

6    a request for production saying he is not the company, I think

7    that is what the thrust of that was.

8            You're saying after you review and you identify what

9    you claim are privileged, of course, the SEC is free to review

10   and do whatever with the rest of the stuff, and then you're

11   saying what I'm calling a taint team, which is not the trial

12   SEC attorneys, or maybe a master would review your claims.

13           Are you saying from that point forward there would be

14   negotiations with the taint team as to whether they agree with

15   some of your claims and then it goes to me to decide what's

16   unresolved?  Is that how you see the path going?

17           MR. HALPIN:  Not quite, your Honor.  I don't think a

18   taint team is necessary under what I've just proposed.

19           We will log it as we would any other privilege log.

20   The SEC won't have access to the documents that we've

21   designated, and if they have a valid privilege objection, then

22   they can raise it just as you would typically.

23           I think on the company point, I think that is an

24   interesting question.  I mean, the SEC has maintained that the

25   company has waived any privilege claims.  I don't think that's

1   supported by anything in the record.  I mean, a waiver is a

2   knowing, intentional relinquishment of a right, and I don't

3   think passing emails from an attorney before we have the first

4   hearing before your Honor counts as a waiver of SureTrader's

5   privilege.

6          I think there may be more that needs to be done on

7   that front.  Even one of the emails that the SEC attached to

8   their cross-notice for this hearing I think makes clear that

9   that isn't necessarily the position that the counsel for the

10  Joint Official Liquidators have taken, and this is docket entry

11  146-1.

12          THE COURT:  Wait.  Let me find that --

13          MR. HALPIN:  Sure.

14          THE COURT:  -- so we can talk about specifics.

15          MR. HALPIN:  Sure.

16          THE COURT:  While I'm looking for it, I don't see how

17  your client can assert claims on behalf of the company.  The

18  company has its own claims that haven't been made.  Again, your

19  client said he is not the company.

20          So I think you would need to have anything you put on

21  the privilege log, if we go that route, would need to be

22  something that is a privilege to your client.  It may be a

23  privilege to both, but it has to be a privilege to your client.

24          Would you agree with that or do you still think that

25  your client can assert privilege claims on behalf of the

1    company that he no longer controls?

2           MR. HALPIN:  I understand that, your Honor.  I mean, I

3    will point out that the company is in liquidation.  He is still

4    a shareholder.  He still has some interest in the company from

5    that perspective.

6           I guess in principle I agree with your Honor.  He's

7    got standing to make privilege objections as to his privilege,

8    but is your Honor suggesting that the company's privilege has

9    been waived?  Because I don't think we've got a clear record of

10   waiver.  So maybe, perhaps, that is where the SEC's taint team

11   comes in, because I just don't think privilege as to the

12   company should just be coming into this case without a second

13   look.

14          THE COURT:  Well, the company has not appeared.

15   Nobody is demanding anything on behalf of the company.  You are

16   here on behalf of Mr. Gentile.  You can only make demands on

17   his behalf.  Nothing is before me as to the company.  I'm not

18   going to make findings of waiver or anything along those lines

19   because -- unless the SEC can convince me otherwise, that

20   there's some case law that if you don't appear you waive.

21          Let's put that to the side.

22          MR. HALPIN:  OK.

23          THE COURT:  For the moment what I'm interested in is

24   what you are claiming Mr. Gentile has, I think -- let me ask

25   you.  Where is that document that you wanted me to look at?

```
 1            MR. HALPIN:  This is an email exchange that was
 2   attached to the SEC's cross-notice.  It is document 146-1.
 3            THE COURT:  OK.  Let me find it.
 4            (Pause)
 5            THE COURT:  OK.  All right.  Tell me what you want me
 6   to look at.
 7            MR. HALPIN:  So I'm just drawing the court's attention
 8   to, I believe it's paragraph 4, where Mr. Gluck states:
 9   "However, any request for production of documents should be
10   through the proper channels, as has been stated."
11            A few more paragraphs down:  "There is more than one
12   formal channel by which the JOLs and the estate may produce
13   documents" --
14            THE COURT:  I'm sorry.  I'm a little bit lost.
15            MR. HALPIN:  Sure.
16            THE COURT:  I started --
17            MR. HALPIN:  I'm sorry.  I'm on page 3.  I'm sorry,
18   your Honor.  My mistake.  I'm sorry.  I had cued it right in
19   front of me.
20            Page 3, email from Warren Gluck to Ms. Sum, Mr. Ford,
21   copying other members of Mr. Gluck's firm --
22            THE COURT:  OK.
23            MR. HALPIN:  -- August 16, 2022.
24            Excuse me.
25            THE COURT:  All right.  And who is Mr. Gluck?
```

1          MR. HALPIN:  Purportedly he represents the Joint

2    Official Liquidators in the Bahamas overseeing the liquidation

3    of SureTrader.

4          THE COURT:  OK.

5          MR. HALPIN:  He has not entered an appearance in this

6    case.  SureTrader obviously has not appeared.

7          THE COURT:  OK.

8          MR. HALPIN:  That's our understanding.  But this is

9    following the hearing before this court on August 1st.  If you

10   will recall, Mr. Gluck attended the hearing and your Honor

11   encouraged him to try to work with the parties to sort out this

12   issue.  So this is days after that hearing.

13         Then the fourth paragraph, again, this is ostensibly

14   on behalf of the Joint Official Liquidators controlling the

15   company:  "Any request for production of documents should be

16   made through the proper channels, as has been stated."

17         Four more paragraphs down:  "There is more than one

18   formal channel by which the JOLs and estate may produce

19   documents to parties in a litigation.  One of them is,

20   obviously, a properly-issued letter rogatory approved by the

21   Bahamas court."

22         I mean, he takes the position that they wouldn't

23   perform a substantive review.  I'm not really sure how he could

24   take that position.  But I think this shows that the company

25   hasn't waived a privilege claim in the documents the SEC now

1   wants to use in this case.

2         I think it is also worth pointing out that SureTrader

3   is still a named party.  It hasn't been dismissed.  Even though

4   we argued it should be, and Mr. Gentile is being sued on a

5   joint-and-several liability theory.  So in some respects there

6   is certainly a question of his standing to assert the privilege

7   on behalf of the company.

8         THE COURT:  I'm sorry.  That last statement, what is

9   the basis for that?  He is not the company.  Why would he be

10  able to assert the privilege on behalf of the company?  Because

11  he is being sued jointly and severally?

12        MR. HALPIN:  I think if I could come at it from a

13  slightly different angle, I think what should concern the court

14  is a bunch of documents that are arguably privileged,

15  SureTrader's privilege, that the SEC is then going to seek to

16  use against my client, and also SureTrader, to establish

17  joint-and-several liability.  I think that is a real issue.

18        THE COURT:  How can your client prevent the SEC from

19  using a document that he cannot assert he has privilege to

20  because it is not something that pertains to him personally?

21        You threw in that divorce thing and that is kind of

22  what threw me.  Let's look at things in logical order.

23        There is a company that is in liquidation, that has

24  some kind of liquidator, that they're doing whatever they

25  decide to do.  The SEC has documents that my only concern is

1    that if there are privileged documents in that production,

2    which I'm treating as pursuant to subpoena just for the sake of

3    structuring it.

4          MR. HALPIN:  OK.

5          THE COURT:  Let's say that among those documents there

6    is an email between you and Mr. Gentile where you're giving him

7    legal advice.  Let's say that that document fell in that batch,

8    right?

9          MR. HALPIN:  Right.  Yes.

10         THE COURT:  So that seems to me that that's something

11   that you would say, OK, I'm going to claim a privilege, and

12   then the SEC would say, wait, this was disclosed to somebody,

13   it's not privileged, it's not confidential.  But there could be

14   arguments back and forth about that.

15         That is sort of like, to me, the paradigm of what I'm

16   thinking of.  I don't know why you're saying that your client

17   can claim privilege on behalf of the company who is a separate

18   entity.  If you have more to tell me on that, I'm happy to hear

19   it before I turn to the SEC.

20         MR. HALPIN:  Well, sure.  I think it's highlighted in

21   the email we were just looking at.  Again, there hasn't been a

22   subpoena here.  There hasn't been formal process on these two

23   individuals.  It's clear that the documents they possess are

24   company documents.

25         So the individuals, to my knowledge, haven't confirmed

1   that SureTrader waives any and all privilege claims.  I mean,

2   at various points Mr. Gluck suggested, oh, we don't really

3   care, you can just turn them over, but I think if pressed, if

4   we said, particularly in light of some of the more specific

5   issues that I've discussed today, if we said, as counsel to the

6   company, there are privilege issues here and is the company

7   just waiving them carte blanche?  Maybe we need to --

8          THE COURT:  Sorry, Mr. Halpin.  I'm sorry.  I thought

9   I made it clear, I'm not addressing the company and its

10   privilege claims.  That is not for me.  I am addressing your

11   client and his privilege claims.

12          MR. HALPIN:  Understood, your Honor.

13          THE COURT:  I'm trying to figure out from your

14   argument how can your client piggyback on the company's

15   presumed privilege claims, and I haven't heard that answer yet.

16          MR. HALPIN:  Understood, your Honor.  I think -- I

17   don't want to repeat myself to the court, but I think he is the

18   former founder/CEO of this company.

19          Our law firm, obviously, advised the company for a

20   number of years, not that we are the privilege holder per se,

21   but I just think there's been no formal opportunity for the

22   company to object on the record in this case.  So to the extent

23   the SEC is going to obtain access to a bunch of emails that are

24   privileged on behalf of the company, that strikes us as

25   problematic, and maybe we don't have standing to make that

1    argument, and I'm not conceding that -- I think we do for the

2    reasons I've outlined -- but that seems like a very dangerous

3    precedent to set, where the SEC can solicit company records

4    from employees of foreign corporations, the corporation doesn't

5    waive the privilege expressly on the record, and then the SEC

6    is using those documents in litigation against the former

7    founder of that company.

8            THE COURT:  So you are making on this argument some

9    favor on behalf of SureTrader and then you're kind of saying,

10   and if they use those documents against my client, then I can

11   complain about it?

12           MR. HALPIN:  Yes.  Yes.

13           THE COURT:  That's basically (inaudible) --

14           MR. HALPIN:  Yes, that's what it boils down to.

15           THE COURT:  -- what you are trying to establish.

16           MR. HALPIN:  Much more succinctly than I put it, your

17   Honor.

18           THE COURT:  Well, I was just trying to comprehend the

19   argument.

20           There you're saying that even though it is somebody

21   else's privilege, because you don't have an express waiver of

22   that privilege, your client is somehow going to be affected by

23   this, quote, irregularity, but you're not in all of this

24   argument claiming that your client has the privilege, even

25   though I'm sort of giving you the opportunity that if there are

1    any cases, any documents where your client really, as the

2    example I gave you, has a privilege you could assert it, where

3    you're talking to your client.

4            MR. HALPIN:  Correct.

5            THE COURT:  If such a document is in the production.

6            MR. HALPIN:  Correct, your Honor.  I mean, again,

7    we're kind of talking in the abstract, right, because we don't

8    know what exactly these documents are or who the custodians

9    are, what years, any of that information.

10           We would be willing to log everything honestly we

11   think is privileged as to our client, and we would be willing

12   to log everything we think is privileged as to the company.  If

13   that coincides with the privilege asserted by our client, I

14   think the analysis is more straightforward.  But we just don't

15   think that the company's privilege should be waived without

16   adequate safeguards, and I understand our position in making

17   that argument, but that is our argument.

18           THE COURT:  OK.  So it's clear on anything, any

19   privilege log, any privilege claims on behalf of your client.

20           The other argument, which is using those documents

21   against your client, notwithstanding your theory.  So that is a

22   separate argument, which I think is the one where the SEC is

23   saying you've got no dog in this fight sort of, to be

24   colloquial.

25           Let me hear -- who is it going to be?  Ms. Sum,

1    Mr. Koonin?

2         MS. SUM:  It will be me, your Honor.  I will be making

3    the argument.

4         THE COURT:  OK.

5         MS. SUM:  Your Honor, let me start just very briefly

6    with an explanation of these emails.

7         Again, we are talking about two former employees who

8    we stipulated are whistleblowers, and it's their SureTrader

9    emails, not Mr. Gentile's emails from his SureTrader email

10   account or anything.  Their emails.  So we're talking about

11   really an impossibility where if he's even talking about a

12   privilege, it belongs to SureTrader.  There is no way that

13   company records can possibly be spoken for by Mr. Gentile.

14        Then if we are looking secondarily at a personal

15   privilege and whatever he mentioned with respect to a divorce

16   proceeding, Mr. Gentile would have had to communicate with his

17   lawyer and ended up copying these two former employees.

18        So certainly, as we have noted in our papers, because

19   these are the employees' email accounts, not Mr. Gentile's, any

20   waiver as to him personally would have been waived.

21        Now I also want to correct the record that in fact the

22   JOLs are fully aware about the extent of these emails.  11,000

23   from Mr. Dorsett and 33,000 from Mr. Frantz.

24        When we initially reached out in late April/May to

25   defense counsel regarding these emails, we did it in an

1   abundance of caution, to try to meet and confer to come to a

2   resolution, and instead of further meeting and conferring with

3   us they filed the motion for sanctions, which this court has

4   denied.

5          We subsequently obtained an email from Mr. Gluck, who,

6   while he is not counsel of record in this case, Mr. Gentile's

7   lawyers clearly know he is counsel for the JOLs because, in

8   fact, there's separate litigation involving Mr. Gentile in

9   which Mr. Gluck has made an appearance related to the JOLs and

10  the company.

11         In docket entry No. 89-6, which is an email from

12  Mr. Gluck, he says:  The company does not object to the

13  voluntary production of the documents and emails by Mr. Dorsett

14  and Mr. Frantz to the SEC, and they ask us for copies of these

15  documents.

16              THE COURT:  I'm sorry.  89 dash what?

17              MS. SUM:  6, your Honor.

18              THE COURT:  So your contention is that this is an

19  explicit waiver, right?

20              MS. SUM:  Yes, your Honor.

21              THE COURT:  All right.  Let me pull it up.

22              Warren Gluck, counsel for the JOLs?

23              MS. SUM:  Yes, your Honor.

24              THE COURT:  Alice Sum, June 25, 2022, docket entry --

25  Exhibit F?

1          MS. SUM:  Yes, your Honor.

2          THE COURT:  Docket entry 89?

3          MS. SUM:  Yes.

4          THE COURT:  OK.

5          (Pause)

6          MS. SUM:  My colleague, Mr. Koonin, has brought it up

7     on a share screen for your convenience, your Honor.

8          THE COURT:  Yes.  I have it here also.  I'm looking

9     for the exact language.

10         "First, the JOLs and the company" -- the JOLs, the

11    joint liquidators -- "and the company" -- the company is

12    SureTrader.

13         Mr. Gluck has authority to speak for the company

14    because he is counsel for the liquidators who control the

15    company.  Correct so far?

16         MS. SUM:  Yes, your Honor.

17         THE COURT:  "Do not object to the voluntary production

18    of the documents and emails by Dorsett and Frantz to the SEC,

19    and respectfully request copies of the same documentation for

20    their files."

21         So they're not objecting.  So they don't say

22    explicitly we are waiving any privilege, but by not objecting

23    to production you read that as we have no privilege to claim,

24    correct?

25         MS. SUM:  Correct, your Honor.

1          THE COURT:  All right.  OK.  So Mr. Halpin is saying

2     they have not explicitly waived the privilege.  I guess he's

3     looking for something that says in capital letters we waive the

4     privilege.  You don't have that.

5          MS. SUM:  I do not have something that fits that

6     description, your Honor, but there is no secret here about the

7     SEC wanting access, and below this email is where I reached out

8     to Mr. Gluck to confirm the JOLs' position, and they said no

9     problem, you can receive them and, in fact, please send us a

10    copy.

11         Actually, there is also a confirmation in the second

12    part of that paragraph, your Honor, where the JOLs also

13    confirm, through Mr. Gluck, that Mr. Gentile has zero standing

14    to object on behalf of the company.

15         THE COURT:  Well, he's basically saying he has no

16    powers or rights with respect to the company, meaning we are in

17    control, Mr. Gentile is not.

18         Just to give a little bit further context, in your

19    email, dated Thursday, June 23rd, which Mr. Gluck responded,

20    you were informing him that Dorsett and Frantz have agreed to

21    voluntarily produce these documents, and without asking you

22    what is in the documents he said, go ahead, gave you the green

23    light.

24         Would that be accurate?

25         MS. SUM:  That is accurate, your Honor.

1          THE COURT:  All right.  OK.  All right.  So we don't

2     have an express statement that the company and the JOLs are

3     waiving the privilege claims, but we do have an authorization

4     for the production and a request for copies.

5          I'm assuming you provided the copies.

6          MS. SUM:  Your Honor, we did not, actually, because

7     Mr. Gentile's counsel objected to the SEC transmitting what we

8     have in our possession.  So obviously to keep everything status

9     quo, we decided to honor that wish, although we stand by our

10    position that we are entitled to access.

11         THE COURT:  OK.  Because my next question was going to

12    say, when they got it, did they give you any objections, but

13    they haven't gotten it.  So what we have is their pre-receipt

14    non-objection.

15         MS. SUM:  That is correct, your Honor.

16         THE COURT:  OK.  All right.

17         MR. HALPIN:  Your Honor --

18         THE COURT:  Yes.

19         MR. HALPIN:  -- can I just note, too, that that email

20    exchange obviously occurred before the hearing on August 1st,

21    which I think, at least from our perspective, raised the

22    seriousness of some of the concerns we're facing.

23         In the email that Mr. Gluck sent following that

24    hearing on August 5th, there is not -- again, there is no

25    express privilege waiver, and there is, in fact, a request that

1    any -- there is an instruction, any request for documents be

2    made through the proper channels, and obviously the SEC

3    subsequently sent a letter rogatory.  So I don't think there is

4    an express waiver.

5         I will also point out, I mean, Ms. Sum stated that

6    these are all emails of these former employees.  Respectfully,

7    one of these individuals, in the declaration he submitted

8    before this court in connection with the motion for

9    sanctions -- it kind of goes to one of the reasons we wanted to

10   hear live testimony from these individuals -- he avers under

11   penalty of perjury that:  "I later learned that SureTrader

12   emails were backed up to my personal gmail account."

13        So he is suggesting not that these are limited

14   strictly to emails of his while he's at the company.  In fact,

15   in his declaration -- it is docket No. 89-2 -- he is saying,

16   Mr. Gentile, my client, affirmatively made backups of emails

17   and company records to a personal laptop.

18        I don't know if this is a correct representation or if

19   Ms. Sum's representation is correct.  Again, one of the reasons

20   we thought it would be useful to have testimony from this

21   individual.  I think this goes to our point, we really need the

22   opportunity to see these emails first and log our privilege

23   objections before the SEC takes a look at them.

24        MS. SUM:  Your Honor --

25        THE COURT:  Hold on.  Hold on.  Hold on.

```
 1              Mr. Halpin, I don't know what you just said about

 2    backing up, but the point is these are emails from the email

 3    accounts of these two individuals, Dorsett and Frantz.

 4              MR. HALPIN:  Your Honor, that is not the impression

 5    given by the declaration filed by one of these individuals,

 6    respectfully.

 7              THE COURT:  OK.  Tell me which paragraph and --

 8              MR. HALPIN:  Docket No. 89-2.

 9              THE COURT:  Yes.  I have.

10              What paragraph?

11              MR. HALPIN:  Paragraph 7 and also paragraph 9.

12              So I'm not saying it establishes it conclusively, but

13    the representation here is not limited to Mr. -- this

14    individual's emails.  It is that Mr. Gentile made backups of

15    company data to the personal laptop.  Excuse me.  That is what

16    I'm looking at here.

17              THE COURT:  Yes, but it is still his stuff.  It was

18    still disclosed to him.

19              MR. HALPIN:  I'm sorry.  I don't understand.  If

20    Mr. Gentile is making backups of -- I mean, I don't think this

21    is true, to be frank.  Why would Mr. Gentile making backups be

22    limited to only emails involving Mr. -- this individual.  It

23    doesn't make any sense.

24              THE COURT:  He made backups to this individual's

25    personal laptop.  So that means he disclosed everything to this
```

1   guy.

2        MR. HALPIN:  OK.

3        THE COURT:  The essence of attorney-client privilege

4   is confidential; you can't just publish it plainly.

5        MR. HALPIN:  Your Honor, your Honor, I think this is

6   false and it contradicts what Ms. Sum just said, that it is

7   limited -- that the documents this individual has is limited

8   only to his emails.  I mean --

9        MS. SUM:  Your Honor, this has been shifting every way

10  possible from the defendant.  We tried to meet and confer.  We

11  made it clear to this court that we -- we even talked to them

12  about the possibility of a filter team in May.  Now this is

13  before Mr. Gluck, on behalf of the JOLs, told us they had no

14  objection, but it is incredible these delay tactics.

15       Every which way they are trying to find a way to throw

16  up obstacles to state objections that they have absolutely no

17  standing to pursue.  And these are emails that these former

18  employees would have been copied on.  Even if they were

19  personal emails of his, he would have no basis to object.

20       So even though we have initially avoided some of the

21  discussion, I mean, the SEC, as per our prior filings, is

22  absolutely permitted to receive documents from whistleblowers.

23  We cited to whistleblower statutes that say that the company

24  can't stop the SEC from communicating with whistleblowers.

25  That is exactly what we've done and it is par for the course

1    because this is protected by statute.

2           So every time they're boxed into a corner, now eight

3    months after we initially proposed a filter team, they have now

4    finally proposed that there might be a theoretical privilege

5    that he has both as the company and as to him individually.

6    Why are we here eight months later doing this other than for

7    delay?

8           MR. HALPIN:  Your Honor --

9           MS. SUM:  Your Honor, there is no objection from the

10   JOLs for the SEC to review these documents.  This is not a

11   secret.  We have tried to meet and confer.  We in good faith,

12   in order to meet this court's discovery deadlines, did issue

13   the letter rogatory, but, unfortunately, September, October,

14   November, December and now into January we still don't have a

15   ruling from the Bahamian Supreme Court.  We need to move

16   forward and start review of these documents.

17          MR. HALPIN:  Your Honor, if I could just respond

18   briefly.  The SEC has been investigating this case for a

19   decade.  I just think it is disingenuous to suggest that we are

20   somehow stonewalling by insisting that proper procedures are

21   followed here.

22          I mean, let's just take a step back.  The SEC is a

23   government agency.  It is created by statute.  It cannot act

24   without authority from Congress.  There is no -- Ms. Sum

25   claims -- she has not cited us a statute or a rule that allows

1   a U.S. government agency to seek documents from a foreign

2   company without some type of process.

3          The whistleblower statutes do not apply broad.  They

4   do not have extraterritorial reach.  These individuals are not

5   whistleblowers because this information has not been provided

6   voluntarily.  The SEC has requested it specifically.  We have

7   examples, myriad examples of the SEC saying, look for this,

8   send us this.  That's the real issue here.

9          What power does a U.S. governmental agency have to

10  take documents belonging to a foreign company from former

11  employees?  I mean, is this what is happening in the FTX case

12  as well?  Is the SEC doing the same thing?  Are those going to

13  be handed over to federal prosecutors up here in New York?

14         I mean, this is a real issue.  It raises significant

15  constitutional questions.  And an agency can only do what it's

16  authorized to do.  It is plain lacking.  Ms. Sum says she cites

17  statutes.  I mean, respectfully, there is no statute that

18  authorizes this.

19         MS. SUM:  Your Honor, it is a red herring to talk

20  about an issue relating to the foreign government or a foreign

21  company.  They're whistleblowers.  They did file TCRs, tips,

22  complaints and referrals with the agency.  We followed up with

23  them --

24         MR. HALPIN:  Under the SEC's regulations --

25         MS. SUM:  -- when they -- excuse me.

```
 1              MR. HALPIN:  They're not voluntary.

 2              MS. SUM:  When they filed their whistleblower

 3    complaints, we followed up for more information.  There should

 4    be zero surprise in that.  Frankly, my colleagues at the SEC

 5    wouldn't be doing their job if they did not follow up on the

 6    filing of a TCR.

 7              Again, these are SureTrader documents.  Mr. Gentile

 8    does not have standing to object based on the multitude of

 9    points that we've made, but most importantly, the JOLs are in

10    possession of the company and Mr. Gentile has been stripped of

11    powers.  Mr. Gentile himself has stated as such in writing,

12    that he and the company are not the same, and any personal

13    emails that now magically exist after eight months when we

14    started this whole meet-and-confer process, any privilege would

15    have been waived because they were sent to other employees.

16              So at this point, your Honor, we ask that the court

17    deny any relief requested by the defendant and allow the SEC to

18    proceed forthwith in its review in order for us to meet this

19    court's discovery deadlines.

20              MR. HALPIN:  Your Honor, I just reiterate I think our

21    very reasonable request that we be permitted to receive the

22    documents, we have two weeks, a compressed time line, to log

23    any privilege objections which we can assert on behalf of

24    Mr. Gentile and to revisit those issues before this court.  I

25    don't see how that's an unfair resolution given that we've been
```

1   waiting on this issue for months.  I mean --

2           THE COURT:  Here's the thing, Mr. Halpin.  I have been

3   following along with this whole theory.  The problem, the

4   stumbling block that I have is any privilege claims that

5   Mr. Gentile may have in theory because these individuals had

6   copies of these emails, then there's been a disclosure.  The

7   confidentiality component of the attorney-client privilege does

8   not exist.

9           So going through this exercise where you would claim

10  privilege for Mr. Gentile as to an email where these two

11  individuals are copied or that are in the possession of these

12  two individuals or that in some way have been disclosed to

13  these two individuals, otherwise they wouldn't be producing

14  them, sounds to me like an exercise in futility.  That is the

15  problem.

16          Now that I have the whole picture of where all this

17  stuff came from, and the concern that I have had was to protect

18  Mr. Gentile's own privilege claims.  As I said, we don't have

19  the company claiming privilege.  We have the company agreeing

20  to the production.  They did not put in capital letters we

21  claim privilege, but I think it's a fair assumption that they

22  are not exercising one.

23          Presumably, if and when they get copies, if they have

24  issues, they can do a clawback, if they have that issue.

25          I just don't see that we are getting anywhere.  I see

1    the letter rogatory as a concession to your initial objection

2    that these documents were not obtained through channels.  I see

3    the -- I think Mr. Gluck said something about letters rogatory

4    also, like in the spirit of solving that issue.  Right?

5            Can you point me to that email, Ms. Sum?

6            (Pause)

7            MR. HALPIN:  Your Honor, while she's looking, just

8    very quickly, I think there is an open question about whether

9    one of these individuals has records that are not his emails

10   and there is a factual question about whether he was directed

11   to do that by Mr. Gentile, which we dispute.

12           To the extent this individual has emails not involving

13   himself but Mr. Gentile and presumably potentially our law

14   firm, Mr. Gentile did not authorize this employee to make

15   records of those emails.  There is certainly a privilege, a

16   personal right of privilege on Mr. Gentile's behalf.

17           So perhaps, as your Honor noted, it will be an

18   exercise in futility, but to represent our client's rights I

19   again renew my request, just let us go through two weeks, we'll

20   log our privilege objections.  I still think that is a

21   reasonable proposal.

22           THE COURT:  Right, Mr. Halpin, but that argument that

23   you're making, again, clashes against the concept of

24   Mr. Gentile authorized this employee to have access and have

25   possession of these emails.

```
 1              MR. HALPIN:  Yes, but, your Honor --

 2              MR. FORD:  Your Honor -- if I may, Steve.

 3              THE COURT:  I'm sorry.  I'm sorry.

 4              MR. FORD:  If I may.

 5              THE COURT:  Can I finish my thought?  Thank you.

 6         If he shared them -- I mean, we come across this when

 7    family members are together consulting an attorney and the

 8    family members, yes, they are part of the protective cone

 9    because they are in there; otherwise, the attorney-client

10    privilege is waived.  That's the stumbling block that I have

11    here.

12         Are you saying that Mr. Gentile told these people to

13    keep the emails but he wasn't waiving the attorney-client

14    privilege even though he disclosed its contents?  Is that your

15    theory now?

16              MR. HALPIN:  No.  My theory is that this

17    representation is false, and we have various other emails that

18    are evidence of this individual forwarding stuff to the SEC --

19    I mean, again, those are emails that he received -- looking for

20    specific things in the company's records, client data,

21    agreements, sending that to the SEC.  So I'm just saying we

22    can't accept this representation at face value that Mr. Gentile

23    instructed this person to back up company records on his

24    personal laptop.  That doesn't make any sense.

25              THE COURT:  Sir --
```

1          MR. FORD:  Your Honor, if I may, quickly.  Mr. Gentile

2     did not instruct his clients to back those documents.  So

3     whatever is contained --

4          THE COURT:  OK.  So that's meaningless.  That doesn't

5     change the fact that these documents are in the possession of

6     these individuals.

7          Now, what you are saying is you think that they stole

8     the documents from Mr. Gentile?  Is that the kind of response

9     that you're offering up now?

10          MR. HALPIN:  Yes, that is in fact.

11          MR. FORD:  I mean, we believe this is part of the

12     reason why the SEC originally raised this as an issue, because

13     if we go back to the beginning of this dispute, it was brought

14     to our attention by the SEC and it was only after finding out

15     about it that we began our investigation.

16          Now, we have limited access to information, but at

17     least some of the things I have seen so far I think Mr. Gentile

18     has a personal privilege in relation to them potentially.  This

19     is why we're making this proposal.  And without reviewing the

20     documents or knowing what they are, there is no way for us to

21     determine, make this determination or to have the degree of

22     certainty that Ms. Sum has at this time.

23          You will remember also from some of the earlier

24     discussions about this dispute that the documents that were

25     transmitted by the one individual and that are in the

1    possession of the other may or do in fact contain non-email

2    documents.  We don't know what those are.  Again, we are sort

3    of speculating.

4            I can certainly give you an example of an email that

5    the individual was on but that we think retains the right of

6    privilege for Mr. Gentile as an individual, and we, again,

7    suspect, given that it appears these documents were stolen from

8    the company and Mr. Gentile, that they possess privileged

9    information for which Mr. Gentile himself retains a right, a

10   personal right.  That's why we're requesting that a review

11   happen before the SEC has the opportunity to review them.

12           MS. SUM:  Your Honor, this ground keeps on shifting as

13   to their arguments and the new reasons why there might be a

14   problem.  Again and again they make these accusations, frankly,

15   regarding how the SEC has conducted itself and it is both

16   incorrect and irrelevant.

17           These are company documents.  There's no objection by

18   the only people that have the authority to assert any position

19   with respect to them.  To clarify, the emails versus the

20   documents issue.  We have confirmation from Mr. Dorsett it is

21   11,000 and from Mr. Frantz it's 33,000.  Yes, there is a small

22   subset, but it's very, very small, in the handful range, that

23   are just company documents.

24           So I don't want this conflating of emails and

25   documents and what it is that we don't know or don't know, why

1    haven't they raised any of this during the last eight months.

2    That's because they have been trying desperately to avoid the

3    production, and every time their pointedly asked for their

4    position, they change it.

5           Your Honor, we stated over and over again as to his

6    lack of standing that the SEC has every right to proceed with

7    access to information that whistleblowers, who have filed a TCR

8    with the SEC, to continue its investigation.  That it is a

9    foreign company is a red herring.  It doesn't matter.  This is

10   information we are -- if they have told us that there are

11   securities violations occurring at a company, we absolutely are

12   only doing our jobs by asking for followup information.

13          THE COURT:  Right, but now -- see, we keep moving.

14   Like the tide, we keep moving.  Now what they're raising is --

15   I have been going on the premise that these materials were

16   disclosed to these people, whether by asking them to back up or

17   copying them on the emails or whatever.  Now they're telling me

18   this theory that these people stole these documents from

19   Mr. Gentile.  So the assumption that he disclosed them is no

20   longer valid.  This is the first time I hear the word steal.

21          MR. HALPIN:  Your Honor, respectfully --

22          MS. SUM:  Your Honor, these are --

23          MR. HALPIN:  -- I think we're just --

24          MS. SUM:  These are company documents.

25          MR. HALPIN:  I think we've used --

1          MS. SUM:  There is no theft from Mr. Gentile.

2          MR. HALPIN:  If I could respond, since I think Ms. Sum

3     has just had some time.

4          I think we have used steal, stolen, illicitly retained

5     more times than I can count in raising this issue.  The reason

6     that it hasn't gotten -- the reason that we haven't discussed

7     this issue with the SEC in the last few months is because they

8     issued the letter rogatory.  So we were waiting for that

9     process to play out.

10         There is no incentive for us to raise this issue

11    before the court before the SEC said we're tired of waiting,

12    we're just going to start reviewing.  But we have always

13    maintained that these employees stole or illicitly retained

14    these documents.  You can go back to our first motion where we

15    make that point.

16         They were bound by their employee code of conduct not

17    to retain company information.  Bahamian law prohibits them

18    from disclosing client data.

19         THE COURT:  I'm sorry.  Sir, sir, that is a different

20    issue because the stealing concept is that Mr. Gentile did not

21    authorize it.  That's the new one that I just heard.  How they

22    got these documents, whether they got them with the authority

23    from the company or not, that does not affect Mr. Gentile.

24         You just threw a little wrench at me just now,

25    Mr. Ford, I think, sort of implying that, and maybe -- implying

1    that these documents were stolen from Mr. Gentile, and that's

2    what made me take a second look at it.

3         If Mr. Gentile copied these people or authorized them

4    to back up on computers, then he disclosed the documents and

5    they lost their privileged nature.

6         So where are these documents that were grabbed from

7    Mr. Gentile unauthorized, were not copied to these people, and

8    now are privileged?  Where are those documents that would merit

9    two weeks of privilege examination?

10        MR. FORD:  My understanding is that 11,000 are in the

11   possession of the SEC and 33,000 are in the possession of an

12   attorney representing the other individual.  I don't know what

13   is in them and I don't know what was taken from the company.

14   So until we have had the opportunity to review them --

15        THE COURT:  All right.  But again --

16        MR. FORD:  I can tell you that my client did not

17   authorize these individuals to take any documents, including

18   personal documents that they may have come into access.

19        MS. SUM:  Your Honor --

20        THE COURT:  I'm sorry.  Taken from the company doesn't

21   count.  Being copied doesn't count, because if they're copied,

22   they're disclosed.

23        I'm trying to figure out how these people could come

24   into possession of documents that Mr. Gentile is claiming

25   privilege to that were not shared with anyone else and that he

1   is now saying were unauthorized from the point of view of

2   Mr. Gentile's personal claims.  That is the thing that you kind

3   of threw a wrench at me there.

4           MR. FORD:  Unfortunately, I would like to give an

5   answer, but I've never seen --

6           THE COURT:  You don't know.

7           MR. FORD:  -- or had access to the documents.  We

8   don't know for certain, but I suspect that these individuals

9   did more and took more than just emails that were forwarded

10  from their gmail account, which is borne out at least in some

11  of the emails that I have seen in which the SEC is requesting

12  these individuals obtain information from the company.

13          This is stuff that is going back -- it is information

14  going back to long before -- well, at least going back to, I

15  think, 2013, that sort of information that was taken from the

16  company.

17          There is a request from the SEC in 2016, potentially

18  before the whistleblower letter or after the whistleblower

19  letter, in which an SEC staff personnel is requesting the

20  individual to obtain documents.  I don't know how that

21  individual is getting them, where he was getting them from, and

22  how they were being transmitted to the SEC.

23          What we're requesting is the opportunity to review

24  them to make that determination.  But I can't make an

25  affirmative representation one way or the other as to whether

1    they were all forwarded from his gmail account, to which he was

2    a CC recipient, or whether this individual was actually in the

3    company office taking documents off of computers, which could

4    have included a personal laptop that belonged to Mr. Gentile.

5    I just don't know that information at this time.

6              THE COURT:  All right.  Any other comments, Ms. Sum?

7              MS. SUM:  Your Honor, they've conflated two sets of

8    documents.  When Mr. Dorsett filed his whistleblower complaint,

9    he was still an employee of the company.  By the way, that is

10   quite typical of many whistleblowers who participate under the

11   whistleblower statute.

12             My colleagues did in fact follow up with Mr. Dorsett

13   to ask for more information.  We have no reason to shy away

14   from the fact that we followed up to find out if there's more

15   evidence of securities violations.  That's one set of

16   documents.

17             What we're talking about here are the email accounts

18   for the two former employees and a handful of documents that

19   are at issue.  Other than their shifting positions during the

20   course of this discussion, there is still no basis at the end

21   of the day for Mr. Gentile to assert any objection with respect

22   to the company's records and anything that's his personal,

23   purported personal right of privilege.  Those were copied or

24   otherwise sent to these employees, and there is also no reason

25   to prevent the SEC's access.  So again we ask the court to deny

1   the request for relief.

2           THE COURT:  All right.  What about this story as to

3   backing up, where does that fit into these documents, backing

4   up personal computers?

5           MR. FORD:  Your Honor --

6           MS. SUM:  Your Honor --

7           THE COURT:  Let me hear from Ms. Sum.  I'll hear from

8   you.

9           MS. SUM:  OK.  So as to Mr. Dorsett, he stated in his

10  declaration that he backed up his personal email account to --

11  his SureTrader email account to his gmail account.

12          Mr. Frantz also, and I apologize I did not have that

13  pulled up, but he similarly retains access to his SureTrader

14  emails on his laptop.

15          Actually, let me point out, when Mr. Frantz separated

16  from the company, and this is in his declaration, he was

17  actually charged for his company laptop.  That's stated as such

18  in his declaration.  Not that we necessarily need to go down

19  this rabbit hole, but the fact he was issued a work laptop and

20  he was charged $1300 from -- debited, I should say.

21          THE COURT:  I'm sorry.  You're going off on a tangent.

22          MS. SUM:  OK.

23          THE COURT:  You're stating that the 11,000 documents

24  and the 33,000 documents consist exclusively of emails where

25  either Mr. Frantz or Mr. Dorsett are recipients or have been

```
 1    copied.  Is that accurate --

 2                 MS. SUM:  That is correct.

 3                 THE COURT:  -- statement?

 4                 MS. SUM:  Correct.

 5                 MR. HALPIN:  Your Honor, that is inconsistent with

 6    Mr. Dorsett's declaration 89-2.  Again suggests, we think

 7    incorrectly, that Mr. Gentile asked Mr. Dorsett to back up

 8    files.  He avers in paragraph 7:  "I was not aware of what

 9    specific technical work Gentile did to back up SureTrader's

10    data to my personal laptop."

11                 Then he later says:  "I later learned that SureTrader

12    emails" -- he doesn't say my SureTrader emails.  He says --

13    "SureTrader emails were backed up."

14                 So, again, I think that's false that Mr. Gentile would

15    have instructed that.

16                 One example, if I may, of how a document --

17    theoretically, if Mr. Gentile was communicating with our law

18    firm and there are no other recipients and such a document is

19    in these 11,000, we would have a lot of questions about how

20    that came to be.

21                 THE COURT:  All right.

22                 MR. HALPIN:  So that is one classic example.

23                 THE COURT:  All right.

24                 MR. HALPIN:  It is a factual question.

25                 THE COURT:  So, Ms. Sum, the SEC can review the
```

1    emails.  If there are any emails where neither Mr. Dorsett nor

2    Mr. Frantz are copied, you can set those aside and segregate

3    them.  All right.

4            MS. SUM:  Understood, your Honor.

5            THE COURT:  All right.  Let's see how many you come up

6    of those.

7            MS. SUM:  Understood, your Honor.

8            We also did hold off on the transmission of the 33,000

9    emails from the second former employee, Mr. Frantz.  We intend,

10   assuming we understand your Honor's ruling, to request

11   transmission of those emails to the SEC.

12           THE COURT:  Yes.  You may request that transmission.

13   You may also transmit the documents to the Liquidators with the

14   same instructions.  If there's any emails where Mr. Frantz or

15   Mr. Dorsett are not copied, I'd like to see them.

16           MS. SUM:  Understood as to your order.

17           THE COURT:  Segregate them.

18           MR. HALPIN:  Your Honor, if I could make --

19           THE COURT:  Segregate them, and I would like to see

20   them because otherwise we're looking for a needle in a

21   haystack.

22           MR. FORD:  Your Honor, if I could request one other

23   thing.  Does the SEC have permission to produce the documents

24   to us as well?

25           THE COURT:  Oh, of course.  Of course.

```
 1              MR. HALPIN:  We'd request all of them.

 2              THE COURT:  I'm sorry.  Isn't that part of the whole

 3   deal under a subpoena, that they get the documents, Ms. Sum?

 4              MS. SUM:  Yes.  We were going to transmit the emails

 5   to them.

 6              MR. HALPIN:  We'll request all of them, every single

 7   one that the SEC receives.

 8              THE COURT:  Well, of course.  You're a party --

 9              MR. HALPIN:  We would like a copy.

10              THE COURT:  You're a party here.  You're entitled to

11   the production.

12              Am I correct or am I --

13              MR. HALPIN:  You are correct.  I wish it was so simple

14   in practice.

15              THE COURT:  Ms. Sum, the SEC in discharging its

16   discovery obligations produces these documents to Mr. Gentile's

17   counsel.  Confirmed?

18              MS. SUM:  Confirmed, your Honor.

19              THE COURT:  Do you want it clearer than that,

20   Mr. Halpin and Mr. Ford?

21              MR. HALPIN:  No, your Honor.  That's clear.  Thank

22   you.

23              THE COURT:  You want capital letters, exclamation

24   point?

25              MR. HALPIN:  Yes.  I must be slow on the uptake for
```

1   insisting on formality.  Thank you, your Honor.

2          THE COURT:  All right.  So any emails where either

3   Mr. Dorsett or Mr. Frantz were not copied, you are to segregate

4   it, put it aside, and alert Mr. Ford and Mr. Halpin.

5          The same goes for Mr. Ford and Mr. Halpin.  If you

6   find some before them, then you advise them that they should be

7   segregated.  OK?  And the segregation order applies for the

8   Liquidators also.

9          MS. SUM:  Understood.

10          THE COURT:  That is how this will proceed.  All right.

11          MS. SUM:  Understood, your Honor.

12          THE COURT:  You are authorized to get the documents

13   from the attorney for the other gentlemen, and you are

14   authorized to produce the documents to Mr. Gentile, and you are

15   authorized to produce the documents to the Joint Liquidators.

16          Have I covered everything?

17          MS. SUM:  Yes, your Honor.

18          THE COURT:  All right.

19          MR. HALPIN:  Yes, your Honor.  We would just note our

20   objection and understand the ruling.  Thank you.

21          THE COURT:  Thank you very much.

22          MS. SUM:  Thank you, your Honor.

23          MR. HALPIN:  Thank you.

24          (Adjourned)

25

C E R T I F I C A T E


          I hereby certify that the foregoing is an accurate

transcription to the best of my ability of the digital audio

recording in the above-entitled matter.


March 28, 2023          s/ Joanne Mancari
                        Joanne Mancari, RPR, CRR, CSR
                        Court Reporter
                        jemancari@gmail.com

MR. FORD: [10] 31/2 31/4 32/1 32/11
36/10 36/16 37/4 37/7 39/5 41/22
MR. HALPIN: [59]
MS. SUM: [42] 3/7 3/25 18/2 18/5 19/17
19/20 19/23 20/1 20/3 20/6 20/16 20/25
21/5 21/25 22/6 22/15 23/24 25/9 26/9
27/19 27/25 28/2 33/12 34/22 34/24 35/1
36/19 38/7 39/6 39/9 39/22 40/2 40/4
41/4 41/7 41/16 42/4 42/18 43/9 43/11
43/17 43/22
THE COURT: [86]
THE DEPUTY CLERK: [1] 3/3

## $

$1300 [1] 39/20

## 0

0040 [1] 2/6

## 1

10016 [1] 2/5
11,000 [6] 7/14 18/22 33/21 36/10 39/23
40/19
145 [1] 3/17
146 [1] 3/18
146-1 [2] 9/11 11/2
16 [1] 11/23
1st [2] 12/9 22/20

## 2

2012 [1] 6/10
2013 [3] 6/1 6/5 37/15
2014 [1] 6/5
2016 [1] 37/17
2022 [2] 11/23 19/24
2023 [2] 1/6 44/8
21 [1] 3/4
21-CV-21079-BB [1] 1/2
21079 [1] 3/4
212-858-0040 [1] 2/6
23rd [1] 21/19
25 [1] 19/24
275 [1] 2/5
28 [1] 44/8

## 3

305-982-6300 [1] 1/18
33,000 [6] 7/15 18/23 33/21 36/11 39/24
41/8
33131 [1] 1/18

## 4

43 [1] 1/9
45 [1] 5/16

## 5

5th [1] 22/24

## 6

6300 [1] 1/18

## 8

801 [1] 1/17
89 [2] 19/16 20/2
89-2 [3] 23/15 24/8 40/6
89-6 [1] 19/11

## A

ability [1] 44/5
able [1] 13/10
about [24] 4/25 7/4 9/1 7/25 8/5 9/14
14/14 16/11 18/7 18/10 18/11 18/22 21/6
24/1 25/12 27/20 30/3 30/8 30/10 32/15
32/24 38/17 39/2 40/19
above [1] 44/6
above-entitled [1] 44/6
absolutely [3] 25/16 25/22 34/11
abstract [1] 17/7
abundance [1] 19/1
accept [1] 31/22
access [12] 7/20 8/20 15/23 21/7 22/10
30/24 32/16 34/7 36/18 37/7 38/25 39/13
account [7] 18/10 23/12 37/10 38/1
39/10 39/11 39/11
accounts [3] 18/19 24/3 38/17
accurate [4] 21/24 21/25 40/1 44/4
accusations [1] 33/14
across [1] 31/6
act [1] 26/23
active [1] 6/24
actually [6] 6/10 21/11 22/6 38/2 39/15
39/17
address [1] 5/6
addressing [3] 6/6 15/9 15/10
adequate [1] 17/16
Adjourned [1] 43/24
advice [2] 7/2 14/7
advise [1] 43/6
advised [1] 15/19
affect [1] 35/23
affected [1] 16/22
affirmative [1] 37/25
affirmatively [1] 23/16
after [6] 8/8 12/12 26/3 28/13 32/14
37/18
afternoon [2] 3/7 3/11
again [22] 6/14 6/21 9/18 12/13 14/21
17/6 18/7 22/24 23/19 28/7 30/19 30/23
31/19 33/2 33/6 33/14 33/14 34/5 36/15
38/25 40/6 40/14
against [6] 7/8 13/16 16/6 16/10 17/21
30/23
agency [5] 26/23 27/1 27/9 27/15 27/22
agree [3] 8/14 9/24 10/6
agreed [1] 21/20
agreeing [1] 29/19
agreement [1] 4/5
agreements [1] 31/21
ahead [1] 21/22
al [1] 1/8
alert [1] 43/4
ALICE [3] 1/15 3/7 19/24
ALICIA [1] 1/12
ALISE [2] 1/16 3/9
all [33] 3/10 3/15 3/16 4/2 4/11 5/10 5/25
7/7 7/16 11/5 11/25 15/1 16/23 19/21
21/1 22/1 22/1 22/16 23/6 29/16 36/15
38/1 38/6 39/2 40/21 40/23 41/3 41/5
42/1 42/6 43/2 43/10 43/18
alleged [2] 6/4 6/15
allow [2] 7/12 28/17
allows [1] 26/25
along [6] 3/13 4/11 4/15 7/24 10/18 29/3
already [1] 7/15
also [16] 3/8 13/2 13/16 18/21 20/8
21/11 21/12 23/5 24/11 30/4 32/23 38/24
39/12 41/8 41/13 43/8
although [1] 22/9
always [1] 35/12

am [3] 15/10 42/12 42/12
among [1] 29/25
analysis [1] 17/14
angle [1] 13/13
another [1] 6/24
answer [2] 15/15 37/5
any [33] 4/23 4/24 4/25 8/19 8/25 11/9
12/15 15/1 17/1 17/1 17/9 17/18 17/19
18/19 20/22 22/12 23/1 23/1 24/23 28/12
28/14 28/17 28/23 29/4 31/24 33/18 34/1
36/17 38/6 38/21 41/1 41/14 43/2
anyone [1] 36/25
anything [7] 9/1 9/20 10/15 10/18 17/18
18/10 38/22
Anyway [1] 3/22
anywhere [1] 29/25
apologize [1] 39/12
apparently [2] 4/5 4/6
appear [1] 10/20
appearance [2] 12/5 19/9
appearances [3] 1/14 1/21 3/6
appeared [3] 6/23 10/14 12/6
appears [1] 33/7
applies [1] 43/7
apply [1] 27/3
appoint [1] 4/20
appropriate [1] 4/18
approved [1] 12/20
April [1] 18/24
April/May [1] 18/24
are [84]
arguably [2] 7/2 13/14
argued [1] 13/4
argument [11] 15/14 16/1 16/8 16/19
16/24 17/17 17/17 17/20 17/22 18/3
30/22
arguments [2] 14/14 33/13
arranges [1] 7/14
as [42] 4/8 4/13 5/13 7/15 7/15 8/14 8/19
8/22 9/4 10/7 10/11 10/17 11/10 12/16
14/2 15/5 15/24 17/1 17/11 17/12 18/18
18/20 20/23 25/21 26/5 26/5 27/12 28/11
29/10 29/18 30/1 30/17 32/12 33/6 33/12
34/5 37/25 39/2 39/9 39/17 41/16 41/24
aside [2] 41/2 43/4
ask [5] 10/24 19/14 28/16 38/13 38/25
asked [2] 34/3 40/7
asking [3] 21/21 34/12 34/16
assert [10] 4/14 9/17 9/25 13/6 13/10
13/19 17/2 28/23 33/18 38/21
asserted [1] 17/13
assuming [3] 5/15 22/5 41/10
assumption [2] 29/21 34/19
at [45]
attached [2] 9/7 11/2
attended [1] 12/10
attention [2] 11/7 32/14
attorney [14] 3/22 4/12 5/2 6/5 7/3 7/5
9/3 25/3 29/7 31/7 31/9 31/13 36/12
43/13
Attorney's [1] 4/16
attorney-client [5] 4/12 25/3 29/7 31/9
31/13
attorneys [3] 5/24 7/20 8/12
audio [2] 1/11 44/5
August [4] 11/23 12/9 22/20 22/24
authority [4] 20/13 26/24 33/18 35/22
authorization [1] 22/3
authorize [3] 30/14 35/21 36/17
authorized [6] 27/16 30/24 36/3 43/12

## A

authorized... [2]  43/14 43/15
authorizes [1]  27/18
Avenue [2]  1/17 2/5
avers [2]  23/10 40/8
avoid [1]  34/2
avoided [1]  25/20
aware [2]  18/22 40/8
away [1]  38/13

## B

back [13]  14/14 26/22 31/23 32/2 32/13
 34/16 35/14 36/4 37/13 37/14 37/14 40/7
 40/9
backed [3]  23/12 39/10 40/13
backing [3]  24/2 39/3 39/3
backups [5]  23/16 24/14 24/20 24/21
 24/24
Bahamas [2]  12/2 12/21
Bahamian [2]  26/15 35/17
based [1]  28/8
basically [2]  16/13 21/15
basis [3]  13/9 25/19 38/20
batch [2]  5/2 14/7
BB [1]  1/2
be [44]  3/20 4/11 4/14 4/18 4/23 7/16
 7/23 8/13 9/6 9/6 9/21 9/22 9/23 10/12
 11/9 12/15 13/4 13/9 14/13 16/22 17/10
 17/11 17/15 17/23 17/25 18/2 18/2 18/3
 21/24 23/1 23/20 24/21 24/21 26/4 27/13
 28/4 28/5 28/21 29/13 30/17 33/13 40/20
 42/25 43/6
because [25]  4/7 8/3 10/9 10/11 10/19
 13/10 13/20 16/21 17/7 18/18 19/7 20/14
 22/6 22/11 26/1 27/5 28/15 29/5 31/9
 32/12 34/2 35/7 35/20 36/21 41/20
been [26]  4/5 5/22 7/11 7/15 9/18 10/9
 11/10 12/16 13/3 14/21 14/22 15/21
 18/20 25/9 25/18 26/18 27/5 28/10 28/15
 28/25 29/2 29/6 29/12 34/2 34/15 39/25
before [18]  1/12 7/22 9/3 9/4 10/17 12/9
 14/19 22/20 23/8 23/23 25/13 28/24
 33/11 35/11 35/11 37/14 37/18 43/6
began [1]  32/15
beginning [2]  6/10 32/13
behalf [17]  3/12 9/17 9/25 10/15 10/16
 10/17 12/14 13/7 13/10 14/17 15/24 16/9
 17/19 21/14 25/13 28/23 30/16
being [4]  13/4 13/11 36/21 37/22
believe [2]  11/8 32/11
belonged [1]  30/4
belonging [1]  27/10
belongs [1]  18/12
below [1]  21/7
best [1]  44/5
between [2]  6/13 14/6
bit [5]  5/20 11/14 21/18
blanche [1]  15/7
block [2]  29/4 31/10
Bloom [1]  3/5
blurb [1]  8/5
boils [1]  16/14
borne [1]  37/10
both [3]  9/23 26/5 33/15
bound [1]  35/16
boxed [1]  26/2
Brickell [1]  1/17
briefly [3]  5/9 18/5 26/18
broad [1]  27/3
brought [2]  20/6 32/13

build [1]  7/7
bunch [2]  15/14 15/23
but [44]  4/6 4/18 6/7 6/16 6/23 9/23 10/8
 12/8 12/24 14/13 15/3 15/17 15/21 16/2
 16/23 17/14 17/17 20/22 21/6 22/3 22/12
 24/2 24/12 24/17 25/14 26/13 28/9 29/21
 30/13 30/18 30/22 31/1 31/13 32/16 33/5
 33/22 34/13 35/12 36/15 37/5 37/8 37/24
 39/13 39/19

## C

calling [1]  8/11
came [2]  29/17 40/20
can [30]  4/21 6/15 7/19 7/22 8/22 9/14
 9/17 9/25 10/16 10/19 13/18 14/17 15/3
 15/14 16/3 16/10 18/13 21/9 22/19 27/15
 28/23 29/24 30/5 31/5 33/4 35/5 35/14
 36/16 40/25 41/2
can't [2]  25/4 25/24 31/22 37/24
cannot [2]  13/19 26/23
capital [1]  21/3 29/20 42/23
care [1]  15/3
carte [1]  15/7
case [14]  1/2 2/4 5/21 6/3 6/22 7/7 10/12
 10/20 12/6 13/1 15/22 19/6 26/18 27/11
cases [2]  5/13 17/1
cause [1]  6/17
caution [1]  19/1
CC [1]  38/2
CEO [1]  15/18
certain [1]  37/8
certainly [4]  13/6 18/18 30/15 33/4
certainty [1]  32/22
certify [1]  44/4
change [2]  32/5 34/4
channel [1]  11/12 12/18
channels [4]  11/10 12/16 23/2 30/2
charge [2]  6/2 6/7
charged [2]  39/17 39/20
check [1]  4/19
Circuit [1]  5/13
cited [2]  25/23 26/25
cites [1]  27/16
civil [1]  3/4
claim [8]  4/23 8/9 12/25 14/11 14/17
 20/23 29/9 29/21
claiming [1]  10/24 16/24 29/19 36/24
claims [18]  4/25 8/3 8/12 8/15 8/25 9/17
 9/18 9/25 15/1 15/10 15/11 15/15 17/19
 22/3 26/25 29/4 29/18 37/2
clarify [1]  33/19
clashes [1]  30/23
classic [1]  40/22
clawback [1]  29/24
clear [10]  5/13 5/19 7/9 9/8 10/9 14/23
 15/9 17/18 25/11 42/21
clear-cut [1]  5/19
clearer [1]  42/19
clearly [1]  19/7
client [31]  4/12 6/2 7/8 8/3 9/17 9/19
 9/22 9/23 9/25 13/16 13/18 14/16 15/11
 15/14 16/10 16/22 16/24 17/1 17/3 17/11
 17/13 17/19 17/21 23/16 25/3 29/7 31/9
 31/13 31/20 35/18 36/16
client's [2]  7/4 30/18
clients [1]  32/2
code [1]  35/16
coincides [1]  17/13
colleague [2]  3/13 20/6
colleagues [3]  9/19 28/4 38/12

colloquial [1]  17/24
come [7]  7/23 13/12 19/1 31/6 36/16
 36/23 41/5
comes [1]  10/11
coming [2]  5/10 10/12
comments [1]  38/6
COMMISSION [4]  1/4 1/17 3/3 3/8
communicate [1]  18/16
communicating [2]  25/24 40/17
company [78]
company's [5]  10/8 15/14 17/15 31/20
 38/22
complain [1]  16/11
complaint [2]  6/15 38/8
complaints [1]  27/22 28/3
component [1]  29/7
comprehend [1]  16/18
compressed [1]  28/22
computers [3]  36/4 38/3 39/4
conceding [1]  16/1
concept [2]  30/23 35/20
concern [5]  4/11 6/18 13/13 13/25 29/17
concerns [1]  22/22
concession [1]  30/1
conclusively [1]  24/12
conduct [2]  6/3 35/16
conducted [1]  33/15
cone [1]  31/8
confer [4]  19/1 25/10 26/11 28/14
conferring [1]  19/2
confidential [2]  14/13 25/4
confidentiality [1]  29/7
confirm [2]  21/8 21/13
confirmation [2]  21/11 33/20
confirmed [3]  14/25 42/17 42/18
conflated [1]  38/7
conflating [1]  33/24
Congress [1]  26/24
connection [1]  23/8
consist [1]  39/24
constitutional [1]  27/15
consulting [1]  31/7
CONT'D [1]  2/1
contain [1]  33/1
contained [1]  32/3
contention [1]  19/18
contents [1]  31/14
context [3]  5/20 6/11 21/18
continue [2]  7/6 34/8
contradicts [1]  25/6
control [2]  20/14 21/17
controlling [1]  12/14
controls [1]  10/1
convenience [1]  20/7
convince [1]  10/19
copied [11]  25/18 29/11 36/3 36/7 36/21
 36/21 38/23 40/1 41/2 41/15 43/3
copies [6]  19/14 20/19 22/4 22/5 29/6
 29/23
copy [2]  21/10 42/9
copying [3]  11/21 18/17 34/17
corner [1]  26/2
corporation [1]  16/4
corporations [1]  16/4
correct [13]  17/4 17/6 18/21 20/15 20/24
 20/25 22/15 23/18 23/19 40/2 40/4 42/12
 42/13
could [12]  7/6 7/12 12/23 13/12 14/13
 17/2 26/17 35/2 36/23 38/3 41/18 41/22
counsel [12]  3/6 6/21 6/22 9/9 15/5

## C

counsel... [1]  18/25 19/6 19/7 19/22
 20/14 22/7 42/17
count [3]  35/5 36/21 36/21
counts [1]  9/4
course [6]  8/9 25/25 38/20 41/25 41/25
 42/8
court [16]  1/1 2/10 5/9 12/9 12/21 13/13
 15/17 19/3 23/8 25/11 26/15 28/16 28/24
 35/11 38/25 44/9
court's [3]  11/7 26/12 28/19
covered [1]  43/16
created [1]  26/23
cross [3]  3/18 9/8 11/2
cross-notice [3]  3/18 9/8 11/2
CRR [2]  2/10 44/8
CSR [2]  2/10 44/8
cued [1]  11/18
custodians [1]  17/8
customers [1]  6/4
cut [1]  5/19
CV [1]  1/2

## D

dangerous [1]  16/2
dash [1]  19/16
data [4]  24/15 31/20 35/18 40/10
date [1]  6/17
dated [1]  21/19
day [1]  38/21
days [1]  12/12
deadlines [2]  26/12 28/19
deal [1]  42/3
debited [1]  39/20
decade [2]  5/23 26/19
December [1]  26/14
decide [2]  8/15 13/25
decided [1]  22/9
declaration [7]  23/7 23/15 24/5 39/10
 39/16 39/18 40/6
defendant [5]  1/9 2/3 3/12 25/10 28/17
defense [1]  18/25
degree [1]  32/21
delay [2]  25/14 26/7
demanding [1]  10/15
demands [1]  10/16
denied [1]  19/4
deny [2]  28/17 38/25
description [2]  6/19 21/6
designated [1]  8/21
desperately [1]  34/2
determination [5]  4/24 6/2 6/6 32/21
 37/24
determine [1]  32/21
determined [2]  3/19 6/7
did [16]  18/25 22/6 22/12 26/12 27/21
 28/5 29/20 30/14 32/2 35/20 36/16 37/9
 38/12 39/12 40/9 41/8
different [2]  13/13 35/19
digital [2]  1/11 44/5
directed [1]  30/10
discharging [1]  42/15
disclosed [9]  14/12 24/18 24/25 29/12
 31/14 34/16 34/19 36/4 36/22
disclosing [2]  7/2 35/18
disclosure [1]  29/6
discovery [4]  1/11 26/12 28/19 42/16
discussed [2]  15/5 35/6
discussion [2]  25/21 38/20
discussions [1]  32/24

disingenuous [1]  26/19
disinterested [1]  4/9
dismissed [1]  13/3
dispute [4]  7/21 30/11 32/13 32/24
DISTRICT [2]  1/1 1/1
divorce [3]  7/5 13/21 18/15
do [16]  4/20 8/10 9/24 13/25 16/1 20/17
 21/5 22/3 27/3 27/4 27/15 27/16 29/24
 30/11 33/1 42/19
docket [8]  3/17 3/18 9/10 19/11 19/24
 20/2 23/15 24/8
document [7]  10/25 11/2 13/19 14/7 17/5
 40/16 40/18
documentation [1]  20/19
documents [80]
does [10]  4/24 4/25 5/19 19/12 27/9 28/8
 29/7 35/23 39/3 41/23
doesn't [8]  16/4 24/23 31/24 32/4 34/9
 36/20 36/21 40/12
dog [1]  17/23
doing [6]  7/24 13/24 26/6 27/12 28/5
 34/12
don't [38]  5/15 7/20 8/17 8/25 9/2 9/16
 10/9 10/11 10/20 14/16 15/2 15/17 15/25
 16/21 17/7 17/14 20/21 21/4 22/1 22/3
 23/18 24/1 24/19 24/20 26/14 28/25
 29/18 29/25 33/2 33/24 33/25 33/25
 36/12 36/13 37/6 37/8 37/20 38/5
done [2]  9/6 25/25
Dorsett [15]  3/23 18/23 19/13 20/18
 21/20 24/3 33/20 38/8 38/12 39/9 39/25
 40/7 41/1 41/15 43/3
Dorsett's [1]  40/6
down [4]  11/11 12/17 16/14 39/18
drawing [1]  11/7
during [3]  6/11 34/1 38/19

## E

earlier [1]  32/23
early [1]  6/5
eight [4]  26/2 26/6 28/13 34/1
either [3]  7/14 39/25 43/2
Eleventh [1]  5/13
else [1]  36/25
else's [1]  16/21
email [23]  6/25 7/1 7/3 11/1 11/20 14/6
 14/21 18/9 18/19 19/5 19/11 21/7 21/19
 22/19 22/23 24/2 29/10 30/5 33/1 33/4
 38/17 39/10 39/11
emails [49]
embroiled [1]  5/22
employed [1]  6/10
employee [5]  30/14 30/24 35/16 38/9
 41/9
employees [10]  16/4 18/7 18/17 23/6
 25/18 27/11 28/15 35/13 38/18 38/24
employees' [1]  18/19
encouraged [1]  12/11
end [2]  7/20 38/20
ended [1]  18/17
ensure [1]  7/19
entered [1]  12/5
entitled [4]  4/14 22/10 42/10 44/6
entity [1]  14/18
entry [6]  3/17 3/18 9/10 19/11 19/24 20/2
ESQ [5]  1/15 1/16 1/16 2/3 2/4
essence [1]  25/3
establish [2]  13/16 16/15
establishes [1]  24/12
estate [2]  11/12 12/18

et [1]  1/8
even [9]  4/7 13/3 16/20 16/24 18/11
 25/11 25/18 25/20 31/14
every [6]  25/9 25/15 26/2 34/3 34/6 42/6
everything [7]  7/17 7/19 17/10 17/12
 22/8 24/25 43/16
evidence [2]  31/18 38/15
exact [3]  6/3 6/14 20/9
exactly [2]  17/8 25/25
examination [1]  36/9
example [6]  6/12 6/25 17/2 33/4 40/16
 40/22
examples [3]  7/6 27/7 27/7
exchange [6]  1/3 1/17 3/3 3/8 11/1 22/20
exclamation [1]  42/23
exclusively [1]  39/24
excuse [3]  11/24 24/15 27/25
execute [1]  4/17
exercise [3]  29/9 29/14 30/18
exercising [1]  29/22
Exhibit [1]  19/25
exist [2]  28/13 29/8
explanation [1]  18/6
explicit [1]  19/19
explicitly [2]  20/22 21/2
express [4]  16/21 22/2 22/25 23/4
expressly [1]  16/5
extent [4]  5/17 15/22 18/22 30/12
extraterritorial [1]  27/4

## F

face [1]  31/22
facing [1]  22/22
fact [11]  18/21 19/8 21/9 22/25 23/14
 32/5 32/10 33/1 38/12 38/14 39/19
factual [2]  30/10 40/24
fair [1]  29/21
faith [1]  26/11
false [3]  25/6 31/17 40/14
family [2]  31/7 31/8
far [2]  20/15 32/17
favor [1]  16/9
federal [1]  27/13
fell [1]  14/7
few [2]  11/11 35/7
fight [1]  17/23
figure [2]  15/13 36/23
file [1]  27/21
filed [6]  5/5 19/3 24/5 28/2 34/7 38/8
files [2]  20/20 40/8
filing [2]  28/6
filings [1]  25/21
filter [2]  25/12 26/3
finally [1]  26/4
find [5]  9/12 11/3 25/15 38/14 43/6
finding [1]  32/14
findings [1]  10/18
finish [1]  31/5
FINRA [2]  6/1 6/6
firm [9]  5/24 6/5 6/13 6/19 7/16 11/21
 15/19 30/14 40/18
first [5]  9/3 20/10 23/22 34/20 35/14
fit [1]  39/3
fits [1]  21/5
FL [1]  1/18
FLORIDA [2]  1/1 1/5
focus [1]  5/11
follow [2]  28/5 38/12
followed [4]  26/21 27/22 28/3 38/14
following [4]  3/2 12/9 22/23 29/3

## F

followup [1]  34/12
FORD [9]  2/3 2/4 3/14 3/14 11/20 35/25 42/20 43/4 43/5
fordobrien.com [2]  2/6 2/7
foregoing [1]  44/4
foreign [6]  16/4 27/1 27/10 27/20 27/20 34/9
formal [4]  11/12 12/18 14/22 15/21
formality [1]  43/1
former [9]  15/18 16/6 18/7 18/17 23/6 25/17 27/10 30/18 41/9
forms [1]  5/23
forth [1]  14/14
forthwith [1]  28/18
forward [3]  7/13 8/13 26/16
forwarded [3]  7/1 37/9 38/1
forwarding [2]  6/18 31/18
forwards [1]  7/4
founder [2]  15/18 16/7
founder/CEO [1]  15/18
Four [1]  12/17
fourth [1]  12/13
framework [1]  5/16
frank [1]  24/21
frankly [2]  28/4 33/14
Frantz [15]  3/25 4/1 18/23 19/14 20/18 21/20 24/3 33/21 39/12 39/15 39/25 41/2 41/9 41/14 43/3
free [1]  8/9
front [2]  9/7 11/19
FTX [1]  27/11
fully [1]  18/22
further [2]  19/2 21/18
futility [2]  29/14 30/18

## G

gave [2]  17/2 21/18
Gentile [58]
Gentile's [9]  4/24 18/9 18/19 19/6 22/7 29/18 30/16 37/2 42/16
gentleman [1]  5/3
gentlemen [1]  43/13
get [3]  29/23 42/3 43/12
give [6]  5/20 6/17 21/18 22/12 33/4 37/4
given [3]  24/5 28/25 33/7
giving [2]  14/6 16/25
glacial [1]  4/8
Gluck [16]  11/8 11/20 11/25 12/10 15/2 19/5 19/9 19/12 19/22 20/13 21/8 21/13 21/19 22/23 25/13 30/3
Gluck's [1]  11/21
gmail [4]  23/12 37/10 38/1 39/11
gmail.com [2]  2/11 44/9
go [8]  6/15 6/16 9/21 21/22 30/19 32/15 35/14 39/18
goes [4]  8/15 23/9 23/21 43/5
going [18]  6/2 8/16 10/18 13/15 14/11 15/23 16/22 17/25 22/11 27/12 29/9 34/15 35/12 37/13 37/14 37/14 39/21 42/4
good [3]  3/7 3/11 26/11
got [7]  7/3 10/7 10/9 17/23 22/12 35/22 35/22
gotten [2]  22/13 35/6
government [4]  5/22 26/23 27/1 27/20
governmental [1]  27/9
grabbed [1]  36/6
green [1]  21/22

## G (cont.)

ground [1]  33/12
guess [2]  16/6 21/2
guy [3]  2/4 3/12 25/1

## H

had [10]  3/19 4/11 11/18 18/16 25/13 29/5 29/17 35/3 36/14 37/7
HALPIN [11]  2/4 3/12 5/8 15/8 21/1 24/1 29/2 30/22 42/20 43/4 43/5
handed [1]  27/13
handful [2]  33/22 38/18
happen [1]  33/11
happening [1]  27/11
happy [2]  6/16 14/18
has [50]
hasn't [6]  3/22 12/25 13/3 14/21 14/22 35/6
have [81]
haven't [6]  9/18 14/25 15/15 22/13 34/1 35/6
haystack [1]  41/21
he [55]
he's [6]  8/3 10/6 18/11 21/2 21/15 23/14
hear [8]  5/5 5/7 14/18 17/25 23/10 34/20 39/7 39/7
heard [2]  15/15 35/21
hearing [16]  1/11 3/16 3/19 3/20 4/3 4/3 4/15 5/6 5/12 9/4 9/8 12/9 12/10 12/12 22/20 22/24
held [1]  3/2
here [19]  4/18 5/14 5/19 6/9 7/1 10/16 14/22 15/6 20/8 21/6 24/13 24/16 26/6 26/21 27/8 27/13 31/11 38/17 42/10
Here's [1]  29/2
hereby [1]  44/4
herring [2]  27/19 34/9
highlighted [1]  14/20
him [7]  12/11 13/20 14/6 18/20 21/20 24/18 26/5
himself [3]  28/11 30/13 33/9
his [28]  8/3 10/7 10/17 13/6 15/11 18/9 18/16 23/14 23/15 24/17 25/8 25/19 30/9 31/23 32/2 34/5 38/1 38/8 38/22 39/9 39/10 39/11 39/11 39/13 39/14 39/16 39/17 39/18
history [1]  4/3
hold [4]  23/25 23/25 23/25 41/8
holder [1]  15/20
hole [1]  39/19
honestly [1]  17/10
honor [67]
Honor's [1]  41/10
HONORABLE [1]  1/12
house [1]  7/3
how [15]  8/16 9/16 12/23 13/18 15/14 28/25 33/15 35/21 36/23 37/20 37/22 40/16 40/19 41/5 43/10
However [1]  11/9

## I

I'd [1]  41/15
I'll [2]  6/16 39/7
I'm [41]  4/24 4/25 6/16 6/25 7/1 8/11 9/16 10/17 10/23 11/7 11/14 11/14 11/17 11/17 11/17 11/18 12/23 13/8 14/2 14/11 14/15 14/16 15/8 15/9 15/13 16/1 16/25 19/16 20/8 22/5 24/12 24/16 24/19 31/3 31/3 31/21 35/19 36/20 36/23 39/21 42/2
I've [5]  7/3 8/18 15/5 16/2 37/5
identify [1]  8/2 8/8

## I (cont.)

if [44]  5/25 7/21 8/21 9/21 10/20 12/9 13/7 14/7 14/18 15/3 15/3 15/3 18/10 16/25 17/5 17/12 18/11 18/14 23/18 23/18 24/19 25/18 26/17 28/5 29/23 29/23 29/24 31/2 31/4 31/6 32/1 32/13 34/10 35/2 36/3 36/21 38/14 40/16 40/7 41/1 41/14 41/18 41/22 43/5
III [1]  2/4
illicitly [2]  35/4 35/13
implying [1]  35/25 35/25
important [2]  5/21 6/8
importantly [1]  28/9
impossibility [1]  18/11
impression [1]  24/4
in [111]
in-house [1]  7/3
inaudible [1]  16/13
incentive [1]  35/10
included [1]  38/4
including [1]  36/17
inconsistent [1]  40/5
incorrect [1]  33/16
incorrectly [1]  40/7
incredible [1]  25/14
individual [15]  3/21 7/4 7/15 23/21 24/22 25/7 30/12 31/18 32/25 33/5 33/6 36/12 37/20 37/21 38/2
individual's [2]  24/14 24/24
individually [1]  26/5
individuals [21]  3/21 3/23 6/9 6/18 7/2 14/23 14/25 23/7 23/10 24/3 24/5 27/4 29/5 29/11 29/12 29/13 30/9 32/6 36/17 37/8 37/12
information [17]  5/17 7/4 7/7 17/9 27/5 28/3 32/16 33/9 34/7 34/10 34/12 35/17 37/12 37/13 37/15 38/5 38/13
informing [1]  21/20
initial [1]  30/1
initially [3]  18/24 25/20 26/3
insisting [2]  26/20 43/1
instead [1]  19/2
instruct [1]  32/2
instructed [2]  31/23 40/15
instruction [1]  23/1
instructions [1]  41/14
intend [1]  41/9
intentional [1]  9/2
interest [1]  10/4
interested [1]  10/23
interesting [1]  8/24
INTERNATIONAL [2]  1/7 3/4
into [6]  10/12 26/2 26/14 36/18 36/24 39/3
investigating [1]  26/18
investigation [2]  32/15 34/8
involved [1]  3/23
involving [3]  19/8 24/22 30/12
irregularity [1]  16/23
irrelevant [1]  33/16
is [198]
isn't [2]  9/9 42/2
issuance [1]  4/6
issue [17]  6/3 12/12 13/17 26/12 27/8 27/14 27/20 29/1 29/24 30/4 32/12 33/20 35/5 35/7 35/10 35/20 38/19
issued [3]  12/20 35/8 39/19
issues [5]  6/14 15/5 15/6 28/24 29/24
it [78]
it's [13]  5/18 7/9 11/8 14/13 14/13 14/20 14/23 17/18 18/8 27/15 29/21 33/21

it's... [1]  33/22
its [6]  9/18 15/9 28/18 31/14 34/8 42/15
itself [1]  33/15

**J**

January [2]  1/6 26/14
jemancari [2]  2/11 44/9
Joanne [3]  2/10 44/8 44/8
job [1]  28/5
jobs [1]  34/12
JOHNSON [2]  1/16 3/9
johnsonali [1]  1/19
joint [7]  9/10 12/1 12/14 13/5 13/17 20/11 43/15
jointly [1]  13/11
JOLs [13]  11/12 12/18 18/22 19/7 19/9 19/22 20/10 20/10 21/12 22/2 25/13 26/10 28/9
JOLs' [1]  21/8
JUDGE [1]  1/12
June [2]  19/24 21/19
just [45]

**K**

keep [5]  4/2 22/8 31/13 34/13 34/14
keeps [1]  33/12
kind [8]  4/13 13/21 13/24 16/9 17/7 23/9 32/8 37/2
know [14]  14/16 17/8 19/7 23/18 24/1 33/2 33/25 33/25 36/12 36/13 37/6 37/8 37/20 38/5
knowing [2]  9/2 32/20
knowledge [1]  14/25
KOONIN [4]  1/16 3/9 18/1 20/6
kooninr [1]  1/20

**L**

lack [1]  34/6
lacking [1]  27/16
LANDY [2]  2/4 3/14
language [1]  20/9
laptop [9]  23/17 24/15 24/25 31/24 38/4 39/14 39/17 39/19 40/10
last [8]  3/19 4/3 4/15 4/15 5/12 13/8 34/1 35/7
late [1]  18/24
later [4]  23/11 26/6 40/11 40/11
law [5]  10/20 15/19 30/13 35/17 40/17
lawyer [1]  18/17
lawyers [1]  19/7
learned [2]  23/11 40/11
least [4]  22/21 32/17 37/10 37/14
legal [3]  6/19 7/2 14/7
less [1]  7/18
let [12]  3/23 5/5 5/24 9/12 10/24 11/3 17/25 18/5 19/21 30/19 39/7 39/15
let's [6]  10/21 13/22 14/5 14/7 26/22 41/5
lets [1]  4/19
letter [7]  12/20 23/3 26/13 30/1 35/8 37/18 37/19
letters [4]  4/6 4/7 21/3 29/20 30/3 42/23
liability [2]  13/5 13/17
light [2]  15/4 21/23
like [10]  5/6 14/15 16/2 29/14 30/4 34/14 37/4 41/15 41/19 42/9
limited [6]  23/13 24/13 24/22 25/7 25/7 32/16
line [1]  28/22

lines [3]  4/16 7/25 10/18
liquidation [5]  10/3 12/2 13/2s
liquidator [1]  13/24
liquidators [8]  9/10 12/2 12/14 20/11 20/14 41/13 43/8 43/15
litigation [5]  5/22 6/24 12/19 16/6 19/8
little [5]  5/20 8/5 11/14 21/18 35/24
live [1]  23/10
LLP [1]  2/4
log [10]  7/17 8/19 8/19 9/21 17/10 17/12 17/19 23/22 28/22 30/20
logged [1]  7/21
logical [1]  13/22
long [1]  37/14
longer [3]  6/22 10/1 34/20
look [5]  7/18 8/1 10/13 10/25 11/6 13/22 23/23 27/7 36/2
looking [12]  4/9 6/25 7/1 9/16 14/21 18/14 20/8 21/3 24/16 30/7 31/19 41/20
lost [2]  11/14 36/5
lot [1]  40/19
LTD [2]  1/8 3/4

**M**

made [13]  6/1 6/5 9/18 12/16 15/9 19/9 23/2 23/16 24/14 24/24 25/11 28/9 36/2
Madison [1]  2/5
magically [1]  28/13
MAGISTRATE [1]  1/12
maintained [2]  8/24 35/13
majority [1]  5/25
make [14]  5/13 10/7 10/16 10/18 15/25 24/23 30/14 31/24 32/21 33/14 35/15 37/24 37/24 41/18
makes [1]  9/8
making [8]  4/24 16/8 17/16 18/2 24/20 24/21 30/23 32/19
Mancari [2]  2/10 44/8 44/8
many [3]  5/13 38/10 41/5
March [1]  44/8
master [2]  4/20 8/12
materials [1]  34/15
matter [2]  6/24 34/9 44/6
MATTHEW [2]  2/3 3/14
may [18]  4/11 4/14 5/9 9/6 9/22 11/2 12/18 18/24 25/12 29/5 31/2 31/4 32/1 33/1 36/18 40/16 41/12 41/13
maybe [5]  8/12 10/10 15/7 15/25 35/25
me [36]  3/13 3/24 5/5 5/6 7/24 8/15 9/12 10/17 10/19 10/24 10/25 11/3 11/5 11/19 11/24 13/22 14/10 14/15 14/18 15/10 17/25 18/2 18/5 19/21 24/7 24/15 27/25 29/14 30/5 34/17 35/24 36/2 37/3 39/7 39/15
mean [18]  8/24 9/1 10/2 12/22 15/1 17/6 23/5 24/20 25/8 25/21 26/22 27/11 27/14 27/17 29/1 31/6 31/19 32/11
meaning [1]  21/16
meaningless [1]  32/4
means [2]  24/25
meet [6]  19/1 25/10 26/11 26/12 28/14 28/18
meeting [1]  19/2
members [3]  11/21 31/7 31/8
mentioned [1]  18/15
merit [1]  36/8
mford [1]  21/6
Miami [2]  1/5 1/18
might [2]  26/4 33/13
MINTBROKER [2]  1/7 3/4

mistake [1]  11/18
moment [1]  20/23
months [6]  26/3 26/6 28/13 29/1 34/1 35/7
more [16]  5/20 9/6 11/11 11/11 12/17 12/17 14/18 15/4 16/16 17/4 28/3 35/5 37/9 37/9 38/13 38/14
most [1]  28/9
motion [3]  19/3 23/8 35/14
move [2]  7/12 26/15
moving [2]  34/13 34/14
Mr [2]  24/13 24/22
Mr. [118]
Mr. Dorsett [12]  3/23 18/23 19/13 33/20 38/8 38/12 39/9 39/25 40/7 41/1 41/15 43/3
Mr. Dorsett's [1]  40/6
Mr. Ford [5]  11/20 35/25 42/20 43/4 43/5
Mr. Frantz [11]  3/25 18/23 19/14 33/21 39/12 39/15 39/25 41/2 41/9 41/14 43/3
Mr. Gentile [55]
Mr. Gentile's [9]  4/24 18/9 18/19 19/6 22/7 29/18 30/16 37/2 42/16
Mr. Gluck [14]  11/8 11/25 12/10 15/2 19/5 19/9 19/12 20/13 21/8 21/13 21/19 22/23 25/13 30/3
Mr. Gluck's [1]  11/21
Mr. Halpin [8]  15/8 21/1 24/1 29/2 30/22 42/20 43/4 43/5
Mr. Koonin [2]  18/1 20/6
Ms. [15]  11/20 17/25 23/5 23/19 25/6 26/24 27/16 30/5 32/22 35/2 38/6 39/7 40/25 42/3 42/15
Ms. Sum [14]  11/20 17/25 23/5 25/6 26/24 27/16 30/5 32/22 35/2 38/6 39/7 40/25 42/3 42/15
Ms. Sum's [1]  23/19
much [3]  3/15 16/16 43/21
multitude [1]  28/8
must [1]  42/25
my [26]  3/8 3/13 5/24 6/2 6/5 7/4 7/8 11/18 13/16 13/25 14/25 16/10 20/6 22/11 23/12 23/16 28/4 30/19 31/5 31/16 36/10 36/16 38/12 40/10 40/12 44/5
myriad [1]  27/7
myself [1]  15/17

**N**

name [1]  3/24
named [1]  13/3
nature [2]  6/19 36/5
necessarily [3]  4/18 9/9 39/18
necessary [1]  8/18
need [7]  4/23 9/20 9/21 15/7 23/21 26/15 39/18
needle [1]  41/20
needs [1]  9/6
negotiations [1]  8/14
neither [1]  41/1
never [1]  37/5
new [4]  2/5 27/13 33/13 35/21
next [2]  22/11
no [36]  1/2 3/4 3/20 4/5 4/10 6/22 7/18 10/1 15/21 17/23 18/12 19/11 20/23 21/6 21/8 21/15 22/24 23/15 24/8 25/13 25/16 25/19 26/9 26/24 27/17 31/16 32/20 33/17 34/19 35/1 35/10 38/13 38/20 38/24 40/18 42/21
Nobody [1]  10/15
non [2]  22/14 33/1

## N

non-email [1] 33/1
non-objection [1] 22/14
nonparty [2] 5/14 5/17
nor [1] 41/1
not [71]
note [3] 5/9 22/19 43/19
noted [2] 18/18 30/17
Nothing [1] 10/17
notice [5] 3/17 3/18 5/5 9/8 11/2
notwithstanding [2] 7/13 17/21
November [2] 6/4 26/14
now [21] 5/5 5/6 5/23 12/25 18/21 25/12
 26/2 26/3 26/14 28/13 29/16 31/15 32/7
 32/9 32/16 34/13 34/14 34/17 35/24 36/8
 37/1
number [2] 6/21 15/20
numerous [1] 7/6
NY [1] 2/5

## O

O'BRIEN [2] 2/4 3/14
object [9] 4/10 5/14 5/16 15/22 19/12
 20/17 21/14 25/19 28/8
objected [1] 22/7
objecting [2] 20/21 20/22
objection [10] 5/10 7/13 8/21 22/14
 25/14 26/9 30/1 33/17 38/21 43/20
objections [6] 10/7 22/12 23/23 25/16
 28/23 30/20
obligations [1] 42/16
observing [1] 3/13
obstacles [1] 25/16
obtain [3] 15/23 37/12 37/20
obtained [2] 19/5 30/2
obviously [7] 8/3 12/6 12/20 15/19 22/8
 22/20 23/2
occurred [1] 22/20
occurring [1] 34/11
October [1] 26/13
off [3] 38/3 39/21 41/8
offering [2] 6/9 32/9
office [2] 4/17 38/3
Official [3] 9/10 12/2 12/14
oh [2] 15/2 41/25
OK [21] 10/22 11/3 11/5 11/22 12/4 12/7
 14/4 14/11 17/18 18/4 20/4 21/1 22/1
 22/11 22/16 24/7 25/2 32/4 39/9 39/22
 43/7
on [54]
one [28] 3/21 3/22 3/24 6/8 6/12 6/18
 7/2 7/4 7/15 9/7 11/11 12/17 12/19
 17/22 23/7 23/9 23/19 24/5 29/22 30/9
 32/25 35/21 37/25 38/15 40/16 40/22
 41/22 42/7
only [8] 10/16 13/25 24/22 25/8 27/15
 32/14 33/18 34/12
open [1] 30/8
operating [1] 5/15
opportunity [6] 15/21 16/25 23/22 33/11
 36/14 37/23
or [35] 4/12 4/22 4/25 5/18 7/9 8/12 9/24
 10/18 17/8 18/10 21/16 23/18 26/25
 27/20 29/11 29/12 32/20 32/21 33/1
 33/25 34/16 34/17 35/13 35/23 36/3 37/7
 37/18 37/25 38/2 38/23 39/25 39/25
 41/14 42/12 43/3
order [5] 13/22 26/12 28/18 41/16 43/7
originally [2] 3/16 32/12
ostensibly [2] 7/8 12/13

## OTAZO

OTAZO [1] 1/12
OTAZO-REYES [1] 1/12
other [22] 3/22 3/24 4/6 4/12 5/2 5/3
 6/16 7/16 8/19 11/21 17/20 26/6 28/15
 31/7 36/1 36/12 37/25 38/6 38/19 40/18
 41/22 43/13
otherwise [5] 10/19 29/13 31/9 38/24
 41/20
our [30] 4/15 5/10 6/13 6/19 7/13 7/16
 7/23 12/8 15/19 17/11 17/13 17/16 17/17
 18/18 22/8 22/9 22/21 23/21 23/22 25/21
 28/20 30/13 30/18 30/20 32/14 32/15
 34/12 35/14 40/17 43/19
out [14] 4/4 10/3 12/11 13/2 15/13 18/24
 21/7 23/5 32/14 35/9 36/23 37/10 38/14
 39/15
outlined [1] 16/2
over [6] 5/23 7/21 15/3 27/13 34/5 34/5
overseeing [1] 12/2
own [3] 8/3 9/18 29/18

## P

pace [1] 4/8
page [2] 11/17 11/20
Pages [1] 1/9
papers [1] 18/18
par [1] 25/25
paradigm [1] 14/15
paragraph [8] 11/8 12/13 21/12 24/7
 24/10 24/11 24/11 40/8
paragraphs [2] 11/11 12/17
part [4] 21/12 31/8 32/11 42/2
participate [1] 38/10
particular [1] 7/7
particularly [1] 15/4
parties [3] 4/4 12/11 12/19
party [7] 4/19 5/14 5/16 5/18 13/3 42/8
 42/10
passing [1] 9/3
path [1] 8/16
Pause [3] 11/4 20/5 30/6
penalty [1] 23/11
people [7] 31/12 33/18 34/16 34/18 36/3
 36/7 36/23
per [2] 15/20 25/21
perform [1] 12/23
perhaps [2] 10/10 30/17
period [1] 6/8
perjury [1] 23/11
permission [1] 41/23
permitted [2] 25/22 28/21
person [2] 8/1 31/23
personal [21] 5/18 7/9 18/14 23/12 23/17
 24/15 24/25 25/19 28/12 30/16 31/24
 32/18 33/10 36/18 37/2 38/4 38/22 38/23
 39/4 39/10 40/10
personally [2] 13/20 18/20
personnel [1] 37/19
perspective [2] 10/5 22/21
pertains [1] 13/20
picture [1] 29/16
piggyback [1] 15/14
plain [1] 27/16
plainly [1] 25/4
Plaintiff [2] 1/5 1/15
play [1] 35/9
please [3] 3/6 5/9 21/9
point [13] 5/23 8/13 8/23 10/3 23/5 23/21
 24/2 28/16 30/5 35/15 37/1 39/15 42/24
pointedly [1] 34/3

pointing [1] 13/2
points [2] 15/2 28/9
position [8] 9/9 12/22 12/24 17/16 21/8
 22/10 33/18 34/4
positions [1] 38/19
possess [2] 14/23 33/8
possession [9] 22/8 28/10 29/11 30/25
 32/5 33/1 36/11 36/11 36/24
possibility [2] 25/12
possible [1] 25/10
possibly [2] 4/12 18/13
potential [1] 4/23
potentially [3] 30/13 32/18 37/17
power [1] 27/9
powers [2] 21/16 28/11
practice [1] 42/14
pre [1] 22/13
pre-receipt [1] 22/13
precedent [1] 16/3
preliminary [3] 4/22 6/1 6/6
premise [1] 34/15
present [1] 3/8
preserve [1] 5/10
pressed [1] 15/3
presumably [2] 29/23 30/13
presumed [1] 15/15
prevent [2] 13/18 38/25
previewed [1] 5/12
principle [1] 10/6
prior [2] 4/3 25/21
privilege [71]
privileged [14] 4/12 4/13 6/13 8/2 8/9
 13/14 14/1 14/13 15/24 17/11 17/12 33/8
 36/5 36/8
problem [4] 21/9 29/3 29/15 33/14
problematic [1] 15/25
procedures [1] 26/20
proceed [5] 28/18 34/6 43/10
proceeding [1] 18/16
proceedings [3] 3/2 3/13 7/5
process [6] 4/4 5/1 14/22 27/2 28/14
 35/9
produce [6] 11/12 12/18 21/21 41/23
 43/14 43/15
produces [1] 42/16
producing [1] 29/13
production [14] 4/13 6/17 8/6 11/9 12/15
 14/1 17/5 19/13 20/17 20/23 22/4 29/20
 34/3 42/11
prohibits [1] 35/17
proper [4] 11/10 12/16 23/2 26/20
properly [1] 12/20
properly-issued [1] 12/20
proposal [3] 7/23 30/21 32/19
propose [1] 7/13
proposed [3] 8/18 26/3 26/4
prosecutors [1] 27/13
protect [2] 4/23 29/17
protected [1] 26/1
protective [1] 31/8
provide [2] 6/9 7/19
provided [2] 22/5 27/5
providing [1] 6/20
publish [1] 25/4
pull [1] 19/21
pulled [1] 39/13
purported [1] 38/23
Purportedly [1] 12/1
purpose [1] 8/4
pursuant [2] 3/17 14/2

**P**

pursue [1]  25/17
put [5]  9/20 10/21 16/16 29/20 43/4

**Q**

question [8]  5/11 7/22 8/24 13/6 22/11
30/8 30/10 40/24
questions [2]  27/15 40/19
quickly [2]  30/8 32/1
quite [2]  8/17 38/10
quo [1]  22/9
quote [1]  16/23

**R**

rabbit [1]  39/19
raise [2]  8/22 35/10
raised [3]  22/21 32/12 34/1
raises [1]  27/14
raising [2]  34/14 35/5
range [1]  33/22
reach [1]  27/4
reached [2]  18/24 21/7
read [1]  20/23
real [3]  13/17 27/8 27/14
really [5]  12/23 15/2 17/1 18/11 23/21
reason [5]  32/12 35/5 35/6 38/13 38/24
reasonable [2]  28/21 30/21
reasons [4]  16/2 23/9 23/19 33/13
recall [2]  5/21 12/10
receipt [1]  22/13
receive [3]  21/9 25/22 28/21
received [2]  7/15 31/19
receives [1]  42/7
recipient [1]  38/2
recipients [2]  39/25 40/18
record [7]  3/6 9/1 10/9 15/22 16/5 18/21
19/6
recording [2]  1/11 44/6
records [8]  16/3 18/13 23/17 30/9 30/15
31/20 31/23 38/22
recounting [1]  4/3
red [2]  27/19 34/9
referrals [1]  27/22
regard [1]  8/2
regarding [3]  6/14 18/25 33/15
regulations [1]  27/24
reiterate [1]  28/20
related [1]  19/9
relating [1]  27/20
relation [1]  32/18
relief [2]  28/17 39/1
relinquishment [1]  9/2
remember [2]  6/8 32/23
renew [1]  30/19
repeat [1]  15/17
Reporter [2]  2/10 44/9
represent [2]  6/23 30/18
representation [6]  23/18 23/19 24/13
31/17 31/22 37/25
represented [1]  5/24
representing [1]  36/12
represents [1]  12/1
request [17]  7/18 8/6 11/9 12/15 20/19
22/4 22/25 23/1 28/21 30/19 37/17 39/1
41/10 41/12 41/22 42/1 42/6
requested [2]  27/6 28/17
requesting [4]  33/10 37/17 37/19 37/23
resolution [1]  19/2 28/25
respect [4]  18/15 21/16 33/19 38/21
respectfully [6]  7/18 20/19 23/6 24/6

27/17 34/21
respects [1]  13/5
respond [2]  26/17 35/2
responded [1]  21/19
response [2]  8/5 32/8
rest [1]  8/10
retain [1]  35/17
retained [2]  35/4 35/13
retains [3]  33/5 33/9 39/13
review [17]  4/4 4/9 4/16 4/22 7/17 8/8
8/9 8/12 12/23 26/10 26/16 28/18 33/10
33/11 36/14 37/23 40/25
reviewing [2]  32/19 35/12
revisit [1]  28/24
REYES [1]  1/12
right [40]  3/10 3/15 3/16 4/2 5/4 5/18 7/7
7/9 9/2 11/5 11/18 11/25 14/8 14/9 17/7
19/19 19/21 21/1 22/1 22/1 22/16 30/4
30/16 30/22 33/5 33/9 33/10 34/6 34/13
36/15 38/6 38/23 39/2 40/21 40/23 41/3
41/5 43/2 43/10 43/18
rights [2]  21/16 30/18
rogatory [8]  4/6 4/7 12/20 23/3 26/1
30/1 30/3 35/8
route [1]  9/21
RPR [2]  2/10 44/8
rule [2]  5/15 26/25
ruling [3]  26/15 41/10 43/20
RUSSELL [2]  1/16 3/9

**S**

safeguards [1]  17/16
said [12]  4/15 7/25 9/19 15/4 15/5 21/8
21/22 24/1 25/6 29/18 30/3 35/11
sake [1]  14/2
same [7]  6/3 6/14 20/19 27/12 28/12
41/14 43/5
sanctions [2]  19/3 23/9
say [9]  14/5 14/7 14/11 14/12 20/21
22/12 25/23 39/20 40/12
saying [20]  4/2 4/9 8/1 8/6 8/8 8/11 8/13
14/16 16/9 16/20 17/23 21/1 21/15 23/15
24/12 27/7 31/12 31/21 32/7 37/1
says [5]  19/12 21/3 27/16 40/11 40/12
screen [1]  20/7
se [1]  15/20
search [1]  4/17
SEC [66]
SEC's [4]  10/10 11/2 27/24 38/25
sec.gov [3]  1/19 1/19 1/20
second [4]  10/12 21/11 36/2 41/9
secondarily [1]  18/14
secret [2]  21/6 26/11
securities [6]  1/3 1/17 3/3 3/8 34/11
38/15
see [13]  3/24 7/24 8/16 9/16 23/22 28/25
29/25 29/25 30/2 34/13 41/5 41/15 41/19
seek [2]  13/15 27/1
seeks [1]  5/17
seems [2]  14/10 16/2
seen [3]  32/17 37/5 37/11
segregate [4]  41/2 41/17 41/19 43/3
segregated [1]  43/7
segregation [1]  43/7
send [2]  21/9 27/8
sending [2]  8/5 31/21
sense [3]  7/25 24/23 31/24
sent [4]  22/23 23/3 28/15 38/24
separate [3]  14/17 17/22 19/8
separated [1]  39/15

September [1]  26/13
seriousness [1]  32/22
services [1]  6/19
set [4]  3/17 16/3 38/15 41/2
sets [1]  38/7
setting [1]  5/4
several [2]  13/5 13/17
severally [1]  13/11
shalpin [1]  2/7
share [2]  6/16 20/7
shared [2]  31/6 36/25
shareholder [1]  10/4
she [2]  26/25 27/16
she's [1]  30/7
shifting [3]  25/9 33/12 38/19
should [9]  10/12 11/9 12/15 13/4 13/13
17/15 28/3 39/20 43/6
shows [1]  12/24
shy [1]  38/13
side [1]  10/21
significant [1]  27/14
similarly [1]  39/13
simple [1]  42/13
since [1]  35/2
single [1]  42/6
sir [3]  31/25 35/19 35/19
slightly [1]  13/13
slow [1]  42/25
small [2]  33/21 33/22
so [54]
solicit [1]  16/3
solicitation [1]  6/4
soliciting [1]  7/7
solution [1]  7/12
solving [1]  30/4
some [21]  4/11 4/12 4/22 6/2 6/14 8/15
10/4 10/20 13/5 13/24 15/4 16/8 22/22
25/20 27/2 29/12 32/17 32/23 35/3 37/10
43/6
somebody [2]  14/12 16/20
somehow [1]  16/22 26/20
something [9]  4/15 4/18 7/24 9/22 13/20
14/10 21/3 21/5 30/3
Sometimes [1]  4/19
sorry [15]  11/14 11/17 11/17 11/18 13/8
15/8 15/8 19/16 24/19 31/3 31/3 35/19
36/20 39/21 42/2
sort [7]  12/11 14/15 16/25 17/23 33/2
35/25 37/15
sought [1]  7/10
sounds [1]  29/14
SOUTHERN [1]  1/1
speak [1]  20/13
special [1]  4/20
specific [3]  15/4 31/20 40/9
specifically [3]  6/1 6/11 27/6
specifics [1]  9/14
speculating [1]  33/3
spirit [1]  30/4
spoken [1]  18/13
spotted [1]  6/17
squarely [1]  5/11
staff [1]  37/19
stage [1]  5/4
stand [1]  22/9
standing [11]  4/10 5/11 5/14 5/16 10/7
13/6 15/25 21/13 25/17 28/8 34/6
start [5]  4/9 4/21 18/5 26/16 35/12
started [2]  11/16 28/14
state [2]  3/6 25/16

S

stated [7]  11/10 12/16 23/5 28/11 34/5
  39/9 39/17
statement [3]  13/8 22/2 40/3
states [3]  1/1 1/12 11/8
stating [1]  39/23
status [1]  22/8
statute [5]  26/1 26/23 26/25 27/17 38/11
statutes [3]  25/23 27/3 27/17
steal [2]  34/20 35/4
stealing [1]  35/20
step [1]  26/22
STEPHEN [3]  2/4 3/12 5/8
steps [1]  4/22
Steve [1]  31/2
still [12]  5/3 6/23 9/24 10/3 10/4 13/3
  24/17 24/18 26/14 30/20 38/9 38/20
stipulated [1]  18/8
stole [3]  32/7 34/18 35/13
stolen [3]  33/7 35/4 36/1
stonewalling [1]  26/20
stop [1]  25/24
story [1]  39/2
straightforward [1]  17/14
strictly [1]  23/14
strikes [1]  15/24
stripped [1]  28/10
structuring [1]  14/3
stuff [5]  8/10 24/17 29/17 31/18 37/13
stumbling [2]  29/4 31/10
submission [1]  6/5
submitted [1]  23/7
subpoena [7]  5/14 5/15 5/16 5/17 14/2
  14/22 42/3
subsequently [2]  19/5 23/3
subset [1]  33/22
substantive [1]  12/23
succinctly [1]  16/16
such [4]  17/5 28/11 39/17 40/18
sued [2]  13/4 13/11
suggest [1]  26/19
suggested [2]  4/4 15/2
suggesting [2]  10/8 23/13
suggests [1]  40/6
SUM [17]  1/15 3/7 11/20 17/25 19/24
  23/5 25/6 26/24 27/16 30/5 32/22 35/2
  38/6 39/7 40/25 42/3 42/15
Sum's [1]  23/19
sumal [1]  1/19
supplied [2]  3/21 3/21
supported [1]  9/1
Supreme [1]  26/15
sure [5]  9/13 9/15 11/15 12/23 14/20
SureTrader [19]  6/10 7/3 12/3 12/6 13/2
  13/16 15/1 16/9 18/8 18/9 18/12 20/12
  23/11 28/7 39/11 39/13 40/11 40/12
  40/13
SureTrader's [3]  9/4 13/15 40/9
surprise [1]  28/4
suspect [3]  6/12 33/7 37/8

T

tactics [1]  25/14
taint [6]  4/16 7/25 8/11 8/14 8/18 10/10
take [7]  4/8 7/22 12/24 26/22 27/10 36/2
  36/17
taken [5]  4/23 9/10 36/13 36/20 37/15
takes [1]  12/22 23/23
taking [2]  4/7 38/3
talk [2]  9/14 27/19

talked [1]  25/11
talking [6]  17/3 17/7 18/7 18/10 18/11
  38/17
tangent [1]  39/21
TCR [2]  28/6 34/7
TCRs [1]  27/21
team [8]  4/16 7/25 8/11 8/14 8/18 10/10
  25/12 26/3
technical [1]  40/9
tell [4]  11/5 14/18 24/7 36/16
telling [1]  34/17
testimony [3]  3/20 23/10 23/20
than [10]  4/6 7/18 11/11 12/17 16/16
  26/6 35/5 37/9 38/19 42/19
Thank [10]  3/15 4/1 5/8 31/5 42/21 43/1
  43/20 43/21 43/22 43/23
that [286]
that's [19]  8/4 8/25 12/8 14/10 16/13
  16/14 27/8 28/25 31/10 32/4 33/10 34/2
  35/21 36/1 38/15 38/22 39/17 40/14
  42/21
theft [1]  35/1
their [16]  4/22 7/20 9/8 18/8 18/10 20/20
  22/13 28/2 28/5 33/13 34/3 34/3 35/16
  36/5 37/10 38/19
them [33]  12/19 15/3 15/7 21/9 23/23
  25/11 27/23 29/14 31/6 32/18 33/11
  33/19 34/16 34/17 34/19 35/17 35/22
  36/3 36/13 36/14 37/21 37/21 37/24 41/3
  41/15 41/17 41/19 41/20 42/1 42/5 42/6
  43/6 43/6
then [17]  5/6 5/11 7/21 8/10 8/15 8/21
  12/13 13/15 14/12 16/5 16/9 16/10 18/14
  29/6 36/4 40/11 43/6
theoretical [1]  26/4
theoretically [1]  40/17
theory [7]  13/5 17/21 29/3 29/5 31/15
  31/16 34/18
there [51]
there's [7]  10/20 15/21 19/8 29/6 33/17
  38/14 41/14
Thereupon [1]  2/12
these [62]
they [55]
they're [9]  13/24 20/21 26/2 27/21 28/1
  34/14 34/17 36/21 36/22
they've [1]  38/7
thing [5]  13/21 27/12 29/2 37/2 41/23
things [5]  4/19 6/16 13/22 31/20 32/17
think [60]
thinking [3]  4/25 7/11 14/16
this [98]
those [18]  4/5 4/7 10/18 14/5 16/6 16/10
  17/20 27/12 28/24 30/15 31/19 32/2 33/2
  36/8 38/23 41/2 41/6 41/11
though [5]  13/3 16/20 16/25 25/20 31/14
thought [3]  15/8 23/20 31/5
threw [4]  13/21 13/22 35/24 37/3
through [9]  6/15 6/16 11/10 12/16 21/13
  23/2 29/9 30/2 30/19
throw [1]  25/15
thrust [1]  8/7
Thursday [1]  21/19
tide [1]  34/14
time [11]  4/7 5/25 6/7 6/8 26/2 28/22
  32/22 34/3 34/20 35/3 38/5
times [1]  35/5
tips [1]  27/21
tired [1]  35/11
today [1]  15/5

together [1]  31/7
told [5]  25/13 35/12 34/6
too [1]  22/19
took [1]  37/9
TRANSCRIBED [2]  1/11 2/10
transcription [1]  44/5
transmission [3]  41/8 41/11 41/12
transmit [2]  41/13 42/4
transmitted [3]  7/16 32/25 37/22
transmitting [1]  22/7
treating [1]  14/2
trial [2]  7/20 8/11
tried [2]  25/10 26/11
true [1]  24/21
try [3]  4/4 12/11 19/1
trying [7]  7/12 15/13 16/15 16/18 25/15
  34/2 36/23
turn [2]  14/19 15/3
two [15]  3/20 3/22 7/18 14/22 18/7 18/17
  24/3 28/22 29/10 29/12 29/13 30/19 36/9
  38/7 38/18
type [1]  27/2
typical [1]  38/10
typically [1]  8/22

U

U.S [5]  4/16 5/22 6/4 27/1 27/9
ultimately [1]  6/6
unauthorized [2]  36/7 37/1
under [6]  5/15 8/18 23/10 27/24 38/10
  42/3
understand [6]  4/8 10/2 17/16 24/19
  41/10 43/20
understanding [2]  12/8 36/10
Understood [7]  15/12 15/16 41/4 41/7
  41/16 43/9 43/11
undertake [1]  7/17
undoubtedly [1]  6/12
unfair [1]  28/25
unfortunately [2]  26/13 37/4
UNITED [2]  1/1 1/12
unless [1]  10/19
unresolved [1]  8/16
until [1]  36/14
up [25]  7/22 18/17 19/21 20/6 23/12
  24/2 25/16 27/13 27/22 28/3 28/5 31/23
  32/9 34/16 36/4 38/12 38/14 39/3 39/4
  39/10 39/13 40/7 40/9 40/13 41/5
uptake [1]  42/25
us [15]  6/17 7/12 15/24 19/3 19/14 21/9
  25/13 26/25 27/8 28/18 30/19 32/20
  34/10 35/10 41/24
use [2]  13/1 13/16 16/10
used [2]  34/25 35/4
useful [1]  23/20
uses [1]  4/17
using [3]  13/19 16/6 17/20
usual [1]  4/7

V

valid [2]  8/21 34/20
value [1]  31/22
various [3]  5/23 15/2 31/17
vast [1]  5/25
versus [1]  33/19
very [8]  3/15 16/2 18/5 28/21 30/8 33/22
  33/22 43/21
via [1]  3/2
videoconference [1]  3/2
view [1]  37/1

**V**

violations [2]  34/11 38/15
voluntarily [2]  21/21 27/6
voluntary [3]  19/13 20/17 28/1

**W**

wait [2]  9/12 14/12
waiting [3]  29/1 35/8 35/11
waive [3]  10/20 16/5 21/3
waived [8]  8/25 10/9 12/25 17/15 18/20
21/2 28/15 31/10
waiver [9]  9/1 9/4 10/10 10/18 16/21
18/20 19/19 22/25 23/4
waives [1]  15/1
waiving [4]  15/7 20/22 22/3 31/13
want [7]  8/1 11/5 15/17 18/21 33/24
42/19 42/23
wanted [2]  10/25 23/9
wanting [1]  21/7
wants [1]  13/1
warrants [1]  4/17
Warren [2]  11/20 19/22
was [29]  3/16 6/2 6/4 6/9 6/9 6/10 8/7
11/1 14/12 16/18 22/11 24/17 29/17
30/10 32/13 32/14 33/5 36/13 37/15
37/21 38/1 38/2 38/9 39/16 39/19 39/20
40/8 40/17 42/13
wasn't [1]  31/13
way [9]  7/11 18/12 25/9 25/15 25/15
29/12 32/20 37/25 38/9
we [119]
We'd [1]  42/1
we'll [4]  7/18 7/19 30/19 42/6
we're [14]  4/21 5/4 5/15 17/7 18/10
22/22 32/19 33/10 34/23 35/11 35/12
37/23 38/17 41/20
we've [8]  7/11 7/21 8/20 10/9 25/25 28/9
28/25 34/25
week [2]  3/19 4/15
weeks [4]  7/18 28/22 30/19 36/9
well [11]  3/21 4/2 7/15 10/14 14/20
16/18 21/15 27/12 37/14 41/24 42/8
were [25]  3/2 6/21 14/21 21/20 23/12
25/18 28/15 30/2 32/24 33/7 34/15 35/8
35/16 36/1 36/6 36/7 36/25 37/1 37/9
37/22 38/1 38/23 40/13 42/4 43/3
what [43]  5/6 7/20 7/25 8/2 8/7 8/8 8/11
8/18 10/23 10/24 11/5 13/8 13/13 13/22
14/15 16/14 16/15 17/8 17/9 19/16 21/22
22/7 22/13 24/1 24/10 24/15 25/6 25/25
27/9 27/11 27/15 32/7 32/20 33/2 33/25
34/14 36/2 36/12 36/13 37/23 38/17 39/2
40/8
what's [1]  8/15
whatever [5]  8/10 13/24 18/15 32/3
34/17
when [10]  4/17 18/24 22/12 27/25 28/2
28/13 29/23 31/6 38/8 39/15
where [29]  3/19 4/21 5/4 6/18 7/4 8/4
10/10 10/25 11/8 14/6 16/3 17/1 17/2
17/22 18/11 21/7 21/12 29/9 29/10 29/16
35/14 36/6 36/8 37/21 39/3 39/24 41/1
41/14 43/2
whether [9]  4/21 4/22 8/14 30/8 30/10
34/16 35/22 37/25 38/2
which [26]  4/8 4/13 4/16 5/11 5/17 8/11
11/12 12/18 14/2 17/20 17/22 19/3 19/9
19/11 21/19 22/21 24/7 25/15 28/23
30/11 33/9 37/10 37/11 37/19 38/1 38/3
while [4]  9/16 19/6 23/14 30/7

whistleblower [7]  25/23 27/3 28/2 37/18
37/18 38/8 38/14
whistleblowers [7]  18/8 25/22 25/24 27/5
27/21 34/7 38/10
who [13]  3/12 3/21 5/5 6/9 11/25 14/17
17/8 17/25 18/7 19/5 20/14 34/7 38/10
whole [4]  28/14 29/3 29/16 42/2
why [10]  5/20 13/9 14/16 24/21 26/6
32/12 32/19 33/10 33/13 33/25
will [14]  5/7 5/9 5/11 7/16 7/17 8/19 10/3
12/10 18/2 18/2 23/5 30/17 32/23 43/10
willing [2]  17/10 17/11
wish [2]  22/9 42/13
without [6]  10/12 17/15 21/21 26/24 27/2
32/19
won't [1]  8/20
word [1]  34/20
work [4]  4/4 12/11 39/19 40/9
worth [1]  13/2
would [34]  3/20 4/18 5/6 7/13 7/18 7/23
8/12 8/13 8/19 8/22 9/20 9/21 9/24 13/9
14/11 14/12 17/10 17/11 18/16 18/20
21/24 23/20 24/21 25/18 25/19 28/14
29/9 36/8 37/4 40/14 40/19 41/19 42/9
43/19
wouldn't [3]  12/22 28/5 29/13
wrench [2]  35/24 37/3
writing [1]  28/11

**Y**

years [3]  6/22 15/20 17/9
yes [22]  14/9 16/12 16/12 16/14 19/20
19/23 20/1 20/3 20/8 20/16 22/18 24/9
24/17 31/1 31/8 32/10 33/21 41/12 42/4
42/25 43/17 43/19
yet [1]  15/15
York [2]  2/5 27/13
you [81]
you're [16]  8/1 8/8 8/10 14/6 14/16 16/9
16/20 16/23 17/3 30/23 32/9 39/21 39/23
42/8 42/10 42/10
you've [1]  17/23
your [94]

**Z**

zero [2]  21/13 28/4
Zoom [1]  3/2