# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:21-cv-21079-BB

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

      Defendants.

---

## DEFENDANT GUY GENTILE'S RENEWED MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE UNDER RULE 37(e) AND MEMORANDUM OF LAW IN SUPPORT

# **TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND................................................................................................. 2

LEGAL STANDARD............................................................................................................ 12

ARGUMENT......................................................................................................................... 13

I.   The SEC and its witness failed to preserve ESI in contravention of Rule 37(e) of the
     Federal Rules of Civil Procedure......................................................................... 13

     A.   The ESI should have been preserved in anticipation of litigation, which in fact was
          already underway. ........................................................................................ 13

     B.   The ESI was lost because the SEC and its witness failed to take reasonable steps to
          preserve it. ................................................................................................... 15

     C.   The ESI cannot reasonably be restored or replaced through additional discovery. ..... 18

II.  Sanctions are appropriate because Gentile has been prejudiced by the spoliation of ESI and
     because the SEC's witness, and by extension the SEC, acted with the intent to deprive
     Gentile of the ESI at issue................................................................................... 19

CONCLUSION..................................................................................................................... 20

CERTIFICATION OF COMPLIANCE ............................................................................... 22

REQUEST FOR HEARING OF MOTION.......................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Ahrens Enters., Inc. v. Winning*,
No. 18-80650-CIV, 2019 WL 12520080 (S.D. Fla. Apr. 18, 2019)...........................14, 18, 19

*Alabama Aircraft Indus., Inc. v. Boeing Co.*,
319 F.R.D. 730 (N.D. Ala. 2017),
*aff'd*, No. 20-11141, 2022 WL 433457
(11th Cir. Feb. 14, 2022) (unpublished) (per curiam).............................................................13

*AXIS Ins. Co. v. Terry*,
No. 2:16-CV-01021-JHE, 2018 WL 9943825 (N.D. Ala. Apr. 23, 2018) ..............................15

*Connor v. Sun Trust Bank*,
546 F. Supp. 2d 1360 (N.D. Ga. 2008) ..................................................................................20

*Graff v. Baja Marine Corp.*,
310 F. App'x 298 (11th Cir. 2009) (unpublished) ..................................................................12

*McMurray v. Formel D*,
No. 2:19-CV-00548-AMM, 2021 WL 9080087 (N.D. Ala. Mar. 30, 2021).....................19, 20

*Nationwide Life Ins. Co. v. Betzer*,
No. 5:18-CV-39-OC-30PRL, 2019 WL 5700288 (M.D. Fla. Oct. 28, 2019)..............16, 17, 19

*Oil Equip. Co. Inc. v. Mod. Welding Co. Inc.*,
661 F. App'x 646 (11th Cir. 2016) (unpublished) (per curiam) .............................................12

*Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
No. 6:12-CV-33-ORL-28DAB, 2012 WL 10817204 (M.D. Fla. Nov. 30, 2012)............15, 19

*Ronnie Van Zant, Inc. v. Pyle*,
270 F. Supp. 3d 656 (S.D.N.Y. 2017),
*rev'd in part, vacated in part on other grounds sub nom.*
*Ronnie Van Zant, Inc. v. Cleopatra Recs., Inc.*,
906 F.3d 253 (2d Cir. 2018).................................................................................................16

*Snider-Hancox v. NCL Bahamas Ltd.*,
No. 17-20942-CIV, 2018 WL 6448765 (S.D. Fla. Dec. 3, 2018),
*order clarified*, No. 17-20942-CIV, 2018 WL 11349996 (S.D. Fla. Dec. 11, 2018) ..............13

*In re Sussman*,
816 F. App'x 410 (11th Cir. 2020) (unpublished) (per curiam) .............................................18

*West v. Goodyear Tire & Rubber Co.*,
167 F.3d 776 (2d Cir. 1999).................................................................................................12

**Statutes and Rules:**

15 U.S.C. § 78*o* ................................................................................................................1, 9

15 U.S.C. § 78t ....................................................................................................................1

Fed. R. Civ. P. 37(e) ................................................................................................ *passim*

## PRELIMINARY STATEMENT

The SEC alleges in its Complaint that Defendant SureTrader violated Section 15(a)(1) of the Securities Exchange Act of 1934, 15 U.S.C. § 78*o*(a)(1) (Count I) by failing to register with the SEC and that Defendant Guy Gentile should be held liable for SureTrader's registration violation under Section 20(a), 15 U.S.C. § 78t(a) (control person, Count II) and Section 20(b), 15 U.S.C. § 78t(b) (aiding and abetting, Count III). But Section 20(a) provides a "good faith defense" to liability where "the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."[1]

The SEC's case is founded on the demonstrably false premise that months after SureTrader commenced operations in November 2011 Gentile and his ex-wife devised a scheme to purposefully evade U.S. regulations at a February 2012 meeting after, according to the SEC, it became clear SureTrader could not survive without U.S. customers. The SEC's standard-bearer is Philip Dorsett, who claimed to have attended the February 2012 meeting and served as Chief Compliance Officer for SureTrader from late-2011 to July 2017 when he was terminated for theft of company documents, including emails, and other malfeasance. *See* Ex. K, Tr. 98:19–101:10; Ex. T. Dorsett's February 2023 deposition made clear that he fabricated the occurrence of the February 2012 meeting—a fabrication that was repeated in a declaration drafted by the SEC that Dorsett signed under penalty of perjury—and that he spoliated highly relevant electronically stored information ("ESI"), including emails with lawyers and other advisors to SureTrader regarding policies and procedures for complying with U.S. regulations.

Such communications, which Gentile has reason to believe concerned the use of an unsolicited acknowledgement agreement and website pop-up window to ensure any U.S.

---

[1] Gentile does not concede he was a "control person" of SureTrader within the meaning of Section 20(a) during the Relevant Period.

customers of SureTrader were not improperly solicited, are highly relevant to Gentile's good-faith defense under Section 20(a). But Dorsett *deleted* many such emails.

Gentile files this renewed motion under Rule 37(e) seeking sanctions for the obvious spoliation of relevant emails by the SEC's "star" witness (and purported "whistleblower") Philip Dorsett. He should be precluded from testifying at trial, the SEC should be precluded from relying on his deposition testimony on summary judgment, the Court should instruct the jury at trial that it can infer the documents the witness spoliated are adverse to the SEC's case against Gentile, and the Court should award any other relief it deems just and proper, including dismissal of Count II (if not Counts II and III). In striking Mr. Gentile's original Motion [ECF No. 173] based on a purported failure to meet and confer, the Court noted: "I will grant the motion to strike without prejudice to Mr. Gentile, if it is appropriate, to file a new motion for spoliation that is well-grounded, and I will address that. When that becomes ripe, I will hold an in-person hearing on that matter." *See* Tr. 17:16–20 [ECF No. 190]. Because Mr. Dorsett has failed to cure the deficiencies identified previously and the SEC refuses to consent to any of the relief requested herein, Gentile respectfully submits that the time for an in-person hearing is now.

## **FACTUAL BACKGROUND**

Since March 2016, Dorsett has worked in concert with—and at the direction of—the SEC to assist it in investigating Gentile. For example, Dorsett—while employed at SureTrader—fielded requests to search for and send particular Company documents involving Gentile to the SEC, including at times documents containing sensitive personal information of SureTrader customers. *See, e.g.*, Ex. L at 1–2. Dorsett also created at least one audio recording of SureTrader's executive team, conveyed that he had done so to the SEC, and offered to make further recordings. *See* Ex. N. In the years following his termination from SureTrader, Dorsett

2

has signed numerous declarations under penalty of perjury at the SEC's behest, including one filed in this Court in June 2022.

Of particular relevance here, during his time at SureTrader and following his termination from the Company in July 2017, Dorsett stole or illicitly retained thousands of SureTrader records (predominantly Company emails), contrary to Company policy, Bahamian law, and United States law. *See generally* Gentile Motion for Sanctions, ECF No. 86.[2] The SEC now claims it sought the production of those documents from Dorsett in or about April 2022, over a year after it filed this lawsuit, even though he had forwarded emails and other documents directly to the SEC starting in 2016 and had made clear that he was willing to provide the SEC with "all I can get my hands on." *See* Ex. M at 8. The SEC sought the documents in question outside of any formal process—it did not issue a subpoena or letter rogatory that would have included written instructions for preserving documents or logging documents withheld from production.

The SEC first informed counsel for Gentile about these documents at a meet and confer on May 9, 2022. *See* Ex. A at 2. As memorialized in writing shortly thereafter, at the May 9, 2022 meet and confer counsel for Gentile "asked what limitations [the SEC] put on [its] request, specifically if it was limited to records pertaining to the allegations in [the] complaint regarding the solicitation of US customers and [the SEC] informed [counsel for Gentile] there were no limitations on the request, just all documents they could get." *Id.* at 1. The SEC did not dispute the broadness of its request for documents to Dorsett, but did respond: "With respect to the

---

[2] Dorsett knew what he did was illegal. *See* Ex. V (email from Dorsett to SEC stating "please be advised that we are a Bahamian company located in the Bahamas and therefore must adhere to Bahamian Law"); ECF No. 86-1 at 79–80 (Ex. I to Gentile's Motion for Sanctions) (email from Dorsett to Gentile explaining that requests for documents from the SEC should be made through the Attorney General's office to ensure the Company does not violate Bahamian law); ECF No. 86-3 (Miller Affidavit) (opining that Dorsett's "disclosure of information to the SEC in the absence of a court order[] was in breach of [Bahamian law]").

11,000 emails, we requested that Mr. Dorsett search the emails for communications with counsel/lawyers and asked that he segregate them and not transmit them to the SEC." *Id.* at 2.

On June 3, 2022, Gentile moved for sanctions based on: the SEC's violation of the Federal Rules by failing to issue a subpoena or letter rogatory for the documents even though active litigation had already commenced; disregard of its own internal best practices for obtaining documents from witnesses located in foreign countries; and inducement of former employees of SureTrader to breach Bahamian law and their contractual obligations to their former employer. *See generally* Gentile Motion for Sanctions, ECF No. 86. In opposition, the SEC attached a declaration signed under penalty of perjury by Dorsett in which he stated:

> 7.     Very early on during the company's infancy, Gentile had a concern about loss of data for SureTrader. Gentile asked me to provide my personal laptop, I gave it to him, and he made backups of SureTrader's data to my personal laptop. Gentile told me that he wanted the backups to be separate from SureTrader's two work laptops. I was not aware of what specific technical work Gentile did to back up SureTrader's data to my personal laptop. . . .
>
> 9.     I would often have both my personal and work laptops open and work on them in plain view of Gentile because he sat less than 10 feet behind me and his desk was positioned to see that. The company had a small office with an open floor plan.
>
> 9.     [sic] I later learned that SureTrader emails were backed up to my personal Gmail account.

*See* ECF No. 89-2. Dorsett claimed in his June 27, 2022 declaration that Gentile "backed up" data to both a "personal laptop," that is, a hard drive, and a "personal Gmail account," which can be accessed from any computer with an internet connection. These averments are false.

The Court subsequently denied Gentile's Motion for Sanctions without prejudice because the SEC had not violated any court order, and the SEC thereafter sought the documents from the Company through the letter-rogatory process. *See* Order, ECF No. 106. Months later, the SEC unilaterally determined that the letter-rogatory process was taking too long and that it would start reviewing the documents from Dorsett and another former employee of SureTrader (Yaniv

Frantz). *See* Ex. O. On January 9, 2023, the Court ruled in the SEC's favor, finding that SureTrader was the only entity that possessed any claim to privilege in the documents and that the Company—which has not appeared in this action and has defaulted—had not objected to their production and had waived the privilege. *See* Order, ECF No. 157. The SEC thereafter produced the documents received from Dorsett to Gentile.

Dorsett was deposed in this action for two days on February 27 and 28, 2023. During the SEC's examination on the first day, which was replete with improper leading questions, Dorsett testified that although he served as Chief Compliance Officer for SureTrader throughout his tenure at the Company, he was responsible for ensuring compliance only with Bahamian laws and regulations and not U.S. laws and regulations, which he claimed fell solely to Gentile. *See* Ex. C, Tr. 23:2–27:20, 43:11–19.[3] Throughout his sworn testimony, he described in detail an alleged meeting in February 2012 in the Bahamas that he claimed to have attended with Gentile and Gentile's ex-wife.[4] According to Dorsett, at the alleged February 2012 meeting, Gentile and his ex-wife were worried SureTrader was not attracting enough customers so they devised a plan to solicit U.S. customers and drafted an Unsolicited Acknowledgement Agreement ("UAA") for customers to sign in an effort to evade U.S. regulations. During the first day of his deposition, Dorsett testified that he had minimal input in drafting the UAA. *See* Ex. C, 34:4–14.

The allegation of the February 2012 meeting as the inception of Gentile's purported plan to solicit U.S. customers was so important that it was included in a declaration Dorsett signed

---

[3] This was false. For example, on June 6, 2015, Gentile forwarded an SEC press release to Dorsett with the instruction: "Please read the latest from the SEC and tell me how you think this could impact the way we do business." *See* Ex. U. Dorsett wrote back on June 8, 2015: "The names . . . all seem familiar to me (will do more research), however in the interim I think we should be fine as long as we continue to act in line with Rule 15a-6." *Id.*; *see also* ECF No. 86-2 ¶ 6 (Cooper Affidavit) ("Mr. Dorsett was responsible for keeping the firm compliant with the Bahamas, US, and international securities laws. Mr. Dorsett was responsible for creating and supervising the firm policies regarding accepting non-solicited US clients.").

[4] *See* Ex. C, Tr. 32:17–33:24; *see also id.* at 27:4–20; Ex. D, Tr. 51:9–13; *id.* at 58:12–18.

under penalty of perjury dated September 1, 2020. *See* Ex. B.[5] Dorsett vehemently denied that

the SEC drafted the declaration for him and insisted that he had done so:

> Q.      Does this refresh your recollection that the SEC drafted the [September 1, 2020] declaration?
> A.      No, I sent what I sent to them and they put it in their official form and sent it back for me to sign.
> Q.      Then it says on August 20, 2022, you say, "Yes, I have received it. We will revert shortly," do you see that?
> A.      Yes.
> Q.      It looks like you sent another e-mail on September 1, 2020. So, about 10, 11 days later, you say, "Hi, Jessica, I apologize for the delay. Please find attached the signed document along with my IDs. Please note I made some changes to the document wording," do you see that?
> A.      Okay, could you scroll, because I'm looking -- oh, yes, yes, sorry. I see it.
> Q.      Does that refresh your recollection that it was Jessica Weissman [from the SEC] that drafted the affidavit?
> A.      No, I drafted the affidavit.

*See* Ex. D, Tr. 64:14–65:13. The SEC stated on the record during Dorsett's deposition that it did

"not have these first drafts" purportedly authored by Dorsett, *id.* at 214:21–22, and confirmed the

same in writing after reviewing its files again. *See* Ex. P.

The allegation of the purported February 2012 meeting is fundamental to the SEC's

theory of the case that Gentile "hatched" a scheme months after the Company had begun

operations *because it was failing*: "Gentile hatched his plan in early 2012. With only about 100

customers and bleak business prospects, Gentile recognized that SureTrader would go out of

business absent an influx of new customers." Compl. ¶ 2, ECF No. 1; *see also id.* ¶ 32. (The

SEC's "theory" contrasts starkly with documentary evidence that Gentile and SureTrader had

consulted with lawyers and other professionals about U.S. regulations concerning solicitation

and had implemented policies to ensure compliance prior to commencing operations.)

---

[5] Notably, email correspondence between Dorsett and the SEC reflects that the original SEC draft affidavit recognized the UAA's use in 2011, but was changed to 2012 at Dorsett's behest despite the SEC's knowledge at the time of SureTrader's use of the UAA in 2011. *See* Ex. Q.

But the February 2012 meeting never happened, and the allegation is not only patently

false but based on perjury. During the second day of Dorsett's deposition, the witness was shown

a copy of a signed UAA from a prospective SureTrader customer that was emailed to the witness

alone (without a copy to Gentile or anyone else) on November 22, 2011, the month the Company

commenced operations and months before February 2012. *See* Ex. D, Tr. 54:14–55:13; Ex. S.

Regarding the UAA from November 2011:

> Q.     Do you see there's a printed name and signature on this document?
> A.     Yes. I was the one who actually put that bottom part there. That was my
> input to the unsolicited acknowledgment agreement.
> Q.     Do you recall testifying yesterday that you had no input into the unsolicited
> acknowledgment agreement?
> A.     Yes.
> Q.     But this refreshes your recollection that you did in fact have some input into
> the unsolicited acknowledgment agreement?
> A.     I was the one who put it together officially and put the name at the signature
> line there.

*See* Ex. D, Tr. 57:14–58:9.[6] When shown again the paragraph from his signed declaration in

2020 about the alleged February 2012 meeting, the following unfolded:

> Q.     . . . Is[n't] it a fact that the statement that this agreement [UAA] was created
> in February 2012 [is] false?
> A.     It's true that that is not·correct.
> Q.     It's false, isn't it?
> A.     Yes, it's false. I think we realize that. I realize that now.

*Id.*, Tr. 74:2–10. Mr. Gentile's ex-wife has confirmed the same. She avers that "from November

2011 until June 2012, Mr. Gentile and I were legally separated and not on speaking terms." Ex.

E, Karen Gentile Decl. ¶ 2. She explains: "I was never in The Bahamas at any time period of

2012, and I was never in a meeting with Guy Gentile and Philip Dorsett on or around February

2012 (or at any time)." *Id.* ¶ 1. According to Ms. Gentile, she "was never in a meeting with Guy

---

[6] Dorsett opened an account for this customer in November 2011. *See* Ex. W. The customer's account number was "PFS00008," indicating that he was the eighth customer ever for SureTrader. *See id.*

Gentile and Philip Dorsett on or around February 2012 (or at any time) regarding an Unsolicited

Acknowledgment agreement or gave any advice or suggestion regarding an Unsolicited

Acknowledgment agreement." *Id.*

Apart from the various falsities described above, it also became apparent during the

second day of Dorsett's deposition that the witness had not turned over all SureTrader documents

in his possession, notwithstanding the SEC's representation at the May 9, 2022 meet and confer

that it had asked him for all such documents except for potentially privileged documents:

> Q.      I'm asking you just yes or no, do you recall producing 15,000 documents to
> the SEC in this action?
> A.      I don't recall the number.
> Q.      When you produced those documents, did you select only certain
> documents to produce to the SEC?
> A.      Please clarify.
> Q.      Did you produce all SureTrader documents in your [possession] to the SEC
> when you produced the documents in this case, yes or no?
> A.      No, actually. I think I have quite a bit more.
> Q.      How did you determine which documents to give to the SEC and which
> documents to hold back?
> A.      I can't recall at this point. I can't recall at this point. I think --
> Q.      Did the SEC instruct you to take certain documents out of the production?
> A.      No. I think -- well, I can't recall, but I think it was more or less that e-mails
> that I was able to send to the SEC . . . .

Ex. D, Tr. 307:2–308:12. Regarding potentially privileged documents, the SEC represented

that it had asked Dorsett (a nonlawyer) to conduct his own privilege review and "segregate"

such documents, which he apparently did:

> Q.      [D]id the SEC instruct you to remove privileged communication[s] from the
> e-mails that you were transmitting?
> A.      Yes, I think they said make sure nothing is privileged between anything to
> do with a lawyer or anything like that.
> Q.      You said the SEC instructed you to remove privileged documents, did you
> hire a law firm to do that?
> A.      No, I didn't hire a law firm.
> Q.      Did they hire a law firm to do that, yes or no?
> A.      No. . . .

*Id.*, Tr. 311:16–312:10. And then Dorsett *deleted the documents*: "what I did was, I tried to do a search for the company's lawyer and I think I just deleted those to be honest. Anything that came up with Michael Miller's[] name I just deleted them." *Id.*, Tr. 312:10–16.

Emails between Dorsett—SureTrader's Chief Compliance Officer—and the Company's legal counsel undoubtedly would have involved questions and advice about SureTrader's compliance with U.S. and Bahamian laws and regulations. Such emails would be highly relevant to this case and would support Gentile's good-faith defense to the SEC's allegations that he and the Company failed to register as a broker-dealer in violation of 15 U.S.C. § 78*o*. Gentile has reason to believe that similar emails between Philip Dorsett and other advisors to the Company have also been deleted. For example, Franklin Ogele is a U.S. attorney who at various times provided advice to SureTrader regarding compliance with U.S. laws and regulations, including nonsolicitation of U.S. persons. Gentile has reason to believe that Dorsett would have communicated with Ogele via email regarding such issues, but Gentile's counsel have identified zero emails involving Ogele and Dorsett in the SEC's current production, demonstrating that any such emails were also deleted by Dorsett prior to his transmission of Company email to the SEC.

The same holds true for any emails Dorsett exchanged with Arthur Quintero. Quintero is not a lawyer but has been "registered with FINRA for over 35 years," has been "a compliance consultant since 1999," and has "familiarity with SEC Rule 15a-6 under the SEC Act of 1934 which provides conditional exemptions from broker-dealer registration for foreign broker-dealers that engage in certain specified activities involving U.S. investors." Ex. F, Arthur Quintero Aff. ¶¶ 2–5. Quintero avers, among other things, that he "consulted Guy Gentile (Gentile), Founder, and Philip Dorsett (Dorsett), the Chief Compliance Officer [of SureTrader] on SEC 15a-6 in November 2011 via group call," *id.* ¶ 7, and that he continued to consult in the following months,

including proposing edits to the UAA and certain disclosures on the Company's website, *id.* ¶¶ 8–11. But Dorsett's production of roughly 15,000 documents spanning his entire time of employment with SureTrader includes exactly zero communications with Quintero.

Gentile has identified at least one specific, concrete example where Dorsett deleted a highly relevant email that bears on the central issues in this case. During the first day of the witness's deposition, he was shown his affidavit dated January 9, 2014, which he initialed on each page and signed before a notary in the Bahamas. *See* Ex. R, Tr. 193:4–198:17; Ex. G. In the affidavit, which was submitted to U.S. Financial Industry Regulatory Authority ("FINRA") in connection with its investigation of the same allegations as those alleged in the SEC's Complaint, Dorsett averred:

> 5.     In early 2012, Swiss America adopted a policy of accepting certain unsolicited US-based persons as customers in compliance with US law.
>
> 6.     In connection with this policy, I reviewed all relevant Rules and Guidance of the U.S. Securities and Exchange Commission regarding solicitation of US persons by unregistered non-US broker-dealers.
>
> 7.     Based on SEC Rules and Guidance, Swiss America developed policies and procedures designed to ensure that SureTrader complied with US laws regarding solicitation.

Ex. G. The witness was provided a draft of the affidavit in Microsoft Word format by email on January 8, 2014, when Gentile forwarded the document to the witness, indicating "Please review attached," and including the following cover note from counsel for Gentile: "Attached is a copy of an affidavit that we would like Philip to sign and get notarized. Can you give him this document, make sure that he 100% agrees with everything that is contained in it and get it back to us signed and notarized tomorrow. Thanks." Ex. H. The draft, along with the cover note, was sent to Dorsett's SureTrader email address (philip@suretrader.com). *Id.*

At the first day of his deposition on February 27, 2023, the witness testified that his signature appeared on the FINRA affidavit, but he claimed he did not recall the document and

that "if I did sign this, I can only say that it was maybe under duress." Ex. R, Tr. 198:9–10. He

testified that paragraph 6 of his affidavit was "not a correct statement." *Id.*, Tr. 197:2. During the

second day, the following exchange unfolded between the witness and counsel for Gentile:

> Q.       Isn't it a fact that my law firm at the time, Harris O'Brien sent you a copy
> of this document for review prior to you signing it, isn't that a fact?
> A.       No, I don't recall that at all.
> Q.       Isn't it a fact --
> A.       No --
> Q.       Isn't it a fact that in that e-mail, it was requested by an attorney from Harris
> O'Brien?
> A.       Could you show me that [e]mail.

Ex. D, Tr. 224:17–225:3. When shown the email chain clearly demonstrating the draft FINRA

affidavit had originally been sent by counsel for Gentile to Gentile, who then forwarded the draft

to Dorsett at his SureTrader email address for his review prior to his signing it, the witness

obfuscated, obstructed, and still maintained he had never received the email. *See id.* at Tr.

233:17–238:12. Gentile was able to smoke out this deception—involving a central aspect of the

case—only because he and his counsel had been on the email correspondence involving the draft

affidavit. For all other emails Dorsett sent or received from his SureTrader account but that did

not include Gentile or his counsel—such as with Michael Miller, Arthur Quintero, Franklin

Ogele, Carla Marin (another attorney who advised SureTrader at various points), or anyone

else—there is no way of knowing what else the witness deleted.[7]

        When Dorsett was pressed during his deposition about whether he might yet be able to

recover deleted emails in his "trash" folder, the witness testified that his Gmail had since been

---

[7] Dorsett also withheld from production the formal termination letter he received from SureTrader, dated July 31, 2017. SureTrader's IT professional, Stephen Darville, testified under oath that he had been instructed to monitor Dorsett's emails after the Company determined Dorsett had been forwarding and otherwise stealing SureTrader emails and documents and that SureTrader fired Dorsett for this reason. *See* Ex. K, Tr. 98:19–101:10.

"hacked" and bizarrely insinuated that the alleged hacking was somehow connected to this case and may have been carried out by Gentile or his counsel:

> Q.      So, they would be available then in your Gmail trash; is that correct?
> A.      Well, this is sometime ago -- I mean, I don't know. Interestingly enough, the very week that it became known to the courts that I was in possession of Swiss America Securities [SureTrader] e-mails, my Gmail was actually hacked. And that's when I started following this case *because I wanted to log in to see the exact time that you guys became aware of it*. My Gmails were hacked and security e-mails were deleted.

Ex. D, Tr. 312:17–313:4 (emphasis added).[8] The SEC maintained during Dorsett's deposition— after the witness had been excused—that they were aware of the alleged hacking. *See id.*, Tr. 338:16–18 ("[Counsel for Gentile][:] Can I ask you, were you aware that this hack had happened? Was this something -- do you know about this? [Counsel for the SEC]: My understanding is this happened after April [2022] when he already made that transmission to us."). But the incident had never been disclosed to counsel for Gentile.[9] Nor does it make any sense since the emails were purportedly transferred to the SEC prior to the alleged hack.

## LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (unpublished) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). A district court possesses authority to impose sanctions for spoliation "[e]ven without a discovery order." *West*, 167 F.3d at 779; *see also Oil Equip. Co. Inc. v. Mod. Welding Co. Inc.*, 661 F. App'x 646, 658 (11th Cir.

---

[8] Gentile and his counsel categorically deny such spurious speculation and doubt that Dorsett's email account was ever even hacked at all. Counsel for Gentile first became aware of the emails in May 2022, and it was counsel for Gentile who brought the issue to the Court's attention in June 2022.

[9] Gentile previously requested in discovery that the SEC produce all communications with Dorsett. The SEC's production includes no written communication where Dorsett informs the SEC his email account has been hacked.

2016) (unpublished) (per curiam). Spoliation of ESI is analyzed under Rule 37(e) of the Federal Rules of Civil Procedure. *See, e.g.*, *Snider-Hancox v. NCL Bahamas Ltd.*, No. 17-20942-CIV, 2018 WL 6448765, at *3–4 (S.D. Fla. Dec. 3, 2018) (collecting cases).[10]

## **ARGUMENT**

I. **The SEC and its witness failed to preserve ESI in contravention of Rule 37(e) of the Federal Rules of Civil Procedure.**

To determine if sanctions under Rule 37(e) are warranted, the court must first assess four "threshold elements," i.e., whether: "(1) the information sought constitutes ESI; (2) the ESI should have been preserved in anticipation of litigation; (3) the ESI is lost because a party failed to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery." *Snider-Hancox*, 2018 WL 6448765, at *4 (citation omitted). Here, there can be no dispute that the emails the SEC's witness intentionally deleted constitute ESI. And, as explained below, the remaining three elements are easily satisfied.

A. **The ESI should have been preserved in anticipation of litigation, which in fact was already underway.**

Gentile disagrees with how Dorsett obtained the SureTrader emails and other documents in question, which Gentile maintains were taken in violation of Company policy and Bahamian law. But, regardless of how the ESI was obtained, a duty to preserve the data—including all

---

[10] *Order clarified*, No. 17-20942-CIV, 2018 WL 11349996 (S.D. Fla. Dec. 11, 2018); *see also Alabama Aircraft*, 2022 WL 433457, at *13. Rule 37(e) states in full:

**(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

relevant data and not just data the SEC's witness thought helpful to his self-serving testimony—arose prior to the witness's destruction of evidence. *See, e.g.*, *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 740 (N.D. Ala. 2017) (duty to preserve arises "not only when litigation is pending but also when it is reasonably foreseeable").[11]

The duty to preserve arose on August 17, 2015, when an SEC staff attorney sent Dorsett a letter instructing him to "preserve[]" documents under threat of "criminal liability" and specifically "request[ed] that you take no affirmative action to delete <u>any</u> emails." *See* Ex. J.[12] Seven months after being threatened with "criminal" prosecution by an SEC staff attorney, in March 2016, Dorsett filed a "whistleblower" complaint (further confirming he anticipated litigation and a duty to preserve had arisen), offered to provide the SEC "all I can get my hands on," and subsequently forwarded numerous Company emails and documents to the SEC. Although the SEC cannot deny that Dorsett began forwarding emails and other documents to the SEC at its request as early as 2016, it maintains that it never received Dorsett's SureTrader emails en masse prior to April 2022, a head-scratching proposition. In any event, the SEC and Dorsett were obviously under a duty to preserve ESI by 2016. In April 2022, after the SEC requested documents from Dorsett outside the formal discovery process and provided Dorsett with "links" for exporting his SureTrader email, Ex. I, Dorsett then deleted relevant ESI—including communications related to his termination and reflecting advice received by SureTrader related to compliance with U.S. regulations—and transmitted some ill-defined subset of records to the SEC. *See Ahrens Enters., Inc. v. Winning*, No. 18-80650-CIV, 2019 WL 12520080, at *4 (S.D. Fla. Apr. 18, 2019) ("Mr. Winning's explanations for deleting or losing

---

[11] *Aff'd*, No. 20-11141, 2022 WL 433457 (11th Cir. Feb. 14, 2022).

[12] Of note, the SEC filed its Complaint on March 22, 2021, ECF No. 1, and indicated in its December 2021 Initial Disclosures that Dorsett possessed discoverable information.

the ESI . . . demonstrate an unreasonable failure to preserve. . . . It was not for Mr. Winning to

unilaterally decide what might or might not be relevant.").

### B.  The ESI was lost because the SEC and its witness failed to take reasonable steps to preserve it.

"Control may be inferred, even when a party does not have possession or ownership of

the evidence, 'when that party has the right, authority, or practical ability to obtain [the evidence]

from a non-party to the action.'" *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, No.

6:12-CV-33-ORL-28DAB, 2012 WL 10817204, at *5 (M.D. Fla. Nov. 30, 2012) (citation

omitted); *AXIS Ins. Co. v. Terry*, No. 2:16-CV-01021-JHE, 2018 WL 9943825, at *6 (N.D. Ala.

Apr. 23, 2018). Prior to Dorsett's deletion of relevant ESI, the SEC had already obtained certain

ESI from him and had the practical ability to obtain all ESI regarding SureTrader he possessed.

Indeed, the evidence of the SEC's control of Dorsett is abundant. Dorsett is not

represented by counsel in this case, and the SEC has been in constant contact with him since

2016, for example: (1) insisting Dorsett is a "whistleblower" under the Dodd–Frank Act and the

SEC's regulations, which—if correct—would entitle Dorsett to a monetary payout if the SEC

prevails;[13] (2) requesting and eliciting production of documents from him outside the formal

discovery process; (3) persuading him to sign a declaration in support of the SEC's opposition to

Gentile's first Motion for Sanctions in June 2022 (in addition to a 2020 declaration he signed at

the SEC's behest); (4) requesting Gentile's counsel contact the SEC to schedule Dorsett's

deposition rather than the witness directly; (5) meeting with Dorsett before his deposition and

producing additional documents obtained from Dorsett on the eve of his first day of testimony;

(6) indicating at points during counsel for Gentile's examination of Dorsett that the SEC would

---

[13] Dorsett acknowledged he is "aware" that whistleblowers are entitled to a percentage of the recovery obtained by the SEC in a successful case. *See* Ex. D, 240:20–24. Dorsett's financial interest in this case is aligned with the SEC and incentivizes him to provide false testimony and spoliate documents he views as unhelpful to him or the SEC.

instruct the witness not to answer questions; and (7) objecting to holding open Dorsett's deposition after it became apparent the witness had committed perjury and also spoliated relevant ESI. The SEC plainly has "control" over Dorsett and the documents he possessed and continues to possess. *See Ronnie Van Zant, Inc. v. Pyle*, 270 F. Supp. 3d 656, 669–70 (S.D.N.Y. 2017) ("'[C]ommon sense' indicates that [nonparty] Cohn's texts with Pyle were within [party] Cleopatra's control, and . . . should have been preserved.").[14]

At a meet and confer on May 9, 2022, the SEC represented to counsel for Gentile that it had recently requested and received documents—including approximately 11,000 emails—from Dorsett without any restriction on time range or subject matter and without having served any formal subpoena, document request, or letter rogatory on the witness. *See generally* Ex. A. The SEC stated in writing the next day on May 10, 2022, that it "requested" Dorsett (who is not a lawyer) "search the emails for communications with counsel/lawyers and asked that he *segregate them* and not transmit them to the SEC." *Id.* at 2 (emphasis added). The SEC also proposed that a "taint team" conduct an additional review of the emails, a proposal that made little sense given the SEC's request that Dorsett conduct his own privilege review. The SEC instructed Dorsett to *segregate* emails he was not turning over but did not instruct him to *retain* such emails, which the SEC should have done pursuant to its duty to preserve evidence over which it had "control."

And because the SEC did not request the documents through any formal process, there were no written instructions to Dorsett reiterating the duty to preserve documents or instructing him to create a log of potentially privileged documents that he was withholding from transmission to the SEC. So instead of *segregating* and preserving relevant emails that might also have been privileged, the witness "*deleted* them." Ex. D, Tr. 312:16 (emphasis added).

---

[14] *Rev'd in part, vacated in part on other grounds sub nom. Ronnie Van Zant, Inc. v. Cleopatra Recs., Inc.*, 906 F.3d 253 (2d Cir. 2018).

Dorsett's intentional deletion of ESI clearly violates the duty to preserve. *See Nationwide Life Ins. Co. v. Betzer*, No. 5:18-CV-39-OC-30PRL, 2019 WL 5700288, at *9 (M.D. Fla. Oct. 28, 2019) ("This is not a case in which data was lost because it was overwritten or purged via an automatic process. Rather, the evidence suggests that Defendants manually, intentionally and systematically utilized deletion software . . . .").

Dorsett admitted that he "deleted" emails with Michael Miller, SureTrader's former counsel, but he also deleted communications with other legal counsel, advisors, and other SureTrader employees. He deleted a chain of emails he received at his Company email address in January 2014—comfortably within the time range of other emails he produced to the SEC from the same address—asking him to review and sign an affidavit to be submitted to FINRA only if he "100% agree[d]" with its contents, which he then signed before a notary. The subject of that affidavit is the exact subject of this case, that is, alleged solicitation of U.S. customers by SureTrader. Dorsett signed the affidavit before a notary, but now testifies that although he recognizes his signature on the document, he does not recall the affidavit, he refuses to admit he received a draft of it via email, and he suggests—without any evidence—that maybe he signed it "under duress," another lie. Gentile and his counsel had copies of the other side of the email exchange, but there is no telling what other highly relevant ESI Dorsett deleted.

At a January 9, 2023 hearing, this Court found that the Company did not object to the production of its records and had waived any privilege. *See* Order, ECF No. 157. Accordingly, none of the spoliated ESI is protected by privilege and should have been produced to Gentile. These spoliated records are highly relevant to Gentile's good-faith defense in this case that neither he nor SureTrader intended to violate the U.S. securities laws. *See Betzer*, 2019 WL 5700288, at *9 ("[I]n spoliation cases, the prejudiced party should not be held to too strict a

17

standard of proof regarding the probable contents of the destroyed evidence 'because doing so allows the spoliators to profit from the destruction of evidence.'" (citation omitted)).

### C. The ESI cannot reasonably be restored or replaced through additional discovery.

When counsel for Gentile first learned during the witness's recent deposition that the witness had spoliated relevant ESI, counsel for Gentile asked about the ability to recover the deleted documents from his "Gmail trash." Ex. D, Tr. 312:17–18. The witness responded: "Well, this is sometime ago -- I mean, I don't know." *Id.*, Tr. 312:19–20. The witness then continued— with no question pending and without a shred of evidence—to suggest "that you guys," that is, Gentile and his counsel, may have been involved in a purported hack of his Gmail account. *See id.*, Tr. 312:19–313:4. In other words, after counsel for Gentile learned for the first time during the witness's second day of deposition testimony on February 28, 2023, that he had affirmatively deleted relevant ESI (and that he possessed additional relevant documents he had not produced), counsel for Gentile then learned for the first time about an alleged "hack" of the witness's email, purportedly after the witness had transmitted documents to the SEC in April 2022. The witness then insinuated that Gentile and his counsel were responsible. After the witness had been excused, counsel for Gentile asked the SEC if they were aware of the "hack," and counsel for the SEC responded: "My understanding is this happened after April [2022] when he already made that transmission to us." *See* Ex. D, Tr. 338:16–18.[15]

Counsel for Gentile are aware of no further efforts on the part of the witness or the SEC to identify or recover the documents he spoliated. And counsel for Gentile have no way of

---

[15] Tellingly, the witness's June 27, 2022 declaration includes no mention of this alleged "hack." *See* ECF No. 89-2. Courts routinely reject such fanciful stories regarding a witness's failure to preserve ESI he clearly possesses after a duty to preserve has arisen. *See, e.g.*, *In re Sussman*, 816 F. App'x 410, 416 (11th Cir. 2020) (unpublished) (per curiam) (the spoliator's "story regarding the laptop[] 'change[d] as necessary and convenient to suit her needs'").

knowing the full scope of the spoliated ESI; there is no written record or log, and the witness himself testified he does not recall. *See Ahrens*, 2019 WL 12520080, at *4 ("While Ahrens could conceivably attempt to piece together the larger puzzle of what might have been on Mr. Winning's thumb drive or in his email accounts through other sources, Ahrens can never know for sure without direct access to these ESI sources."); *Pac. Coast Marine*, 2012 WL 10817204, at *9 ("[S]imply because the deleted data might possibly be recoverable through a costly and time consuming forensic investigation, this does negate Gilbert's willful deletion of the ESI.").

## II.    Sanctions are appropriate because Gentile has been prejudiced by the spoliation of ESI and because the SEC's witness, and by extension the SEC, acted with the intent to deprive Gentile of the ESI at issue.

The four threshold elements under Rule 37(e) are plainly satisfied here and thus sanctions are warranted. As explained below, because Gentile has suffered significant prejudice as a result of Dorsett's spoliation of relevant ESI and because Dorsett acted with an intent to deprive Gentile of such evidence, the Court should impose the stiffest sanctions. That Dorsett is a nonparty does not alter this conclusion; he is the SEC's witness who provided the "facts" giving rise to the SEC's Complaint, and it is the SEC that benefits from his willful deletion of ESI that is highly relevant to Gentile's defense. *See Pac. Coast Marine*, 2012 WL 10817204, at *8 ("[I]t is Malibu who benefits from the lack of any adverse creation dates . . . or other negative metadata . . . that PCMW's expert might have found, had files not been deleted [by nonparty].").

"An analysis of whether there is prejudice or an intent to deprive overlaps. . . . [A] finding of intent to deprive can support 'an inference that the lost information was unfavorable to the party that intentionally destroyed it' and 'also an inference that the opposing party was prejudiced by the loss of information that would have favored its position.'" *Betzer*, 2019 WL 5700288, at *10 (quoting Fed. R. Civ. P. 37(e), 2015 Notes of Advisory Committee). Where appropriate, the Court may "forbid[] the party that failed to preserve information from putting on

certain evidence, permit[] the parties to present evidence and argument to the jury regarding the loss of information, or giv[e] the jury instructions to assist in its evaluation of such evidence or argument." *McMurray v. Formel D*, No. 2:19-CV-00548-AMM, 2021 WL 9080087, at *9 (N.D. Ala. Mar. 30, 2021) (citation omitted).

Here, the prejudice to Gentile is clear, and it is clear Dorsett deleted ESI with the intent to deprive Gentile of its use. Dorsett deleted relevant ESI that directly undermines his sworn testimony and is adverse to the SEC's case. The starkest example is his deletion of the January 2014 email string where he is asked to review and sign an affidavit to be submitted to FINRA if he "100% agrees with everything that is contained in it." In that affidavit, Dorsett avers: "I reviewed all relevant Rules and Guidance of the U.S. Securities and Exchange Commission regarding solicitation of US persons by unregistered non-US broker-dealers. [] Based on SEC Rules and Guidance, Swiss America developed policies and procedures designed to ensure that SureTrader complied with US laws regarding solicitation." *See* Ex. G, ¶¶ 6–7. Simply because counsel for Gentile were able to recover the other side of one email exchange (of potentially hundreds of deleted, highly relevant emails) does not excuse the witness's egregious misconduct. *See Connor v. Sun Trust Bank*, 546 F. Supp. 2d 1360, 1376 (N.D. Ga. 2008) (party was prejudiced by destruction of later-recovered email "because it raises a question of whether there were other relevant emails in existence at that time but which were also not produced").

## CONCLUSION

Gentile respectfully requests that the Court find the SEC and its witness failed to preserve ESI in contravention of Rule 37(e) of the Federal Rules of Civil Procedure. In light of the intentional spoliation of highly relevant evidence, Gentile requests stiff sanctions, including dismissal of Counts II and III against Gentile or, in the alternative, that Dorsett be precluded

from testifying at trial and the SEC be precluded from relying on his deposition testimony at summary judgment.

## CERTIFICATION OF COMPLIANCE

Pursuant to Local Rule 7.1(a)(3), counsel for Gentile certifies that they sought to resolve the issues raised in the Motion and have been unable to do so. Counsel for Gentile asked Dorsett under oath at his deposition on February 28, 2023, whether he was able to recover the ESI he spoliated and he indicated he could not. Counsel for Gentile stated their intention on the record to hold open the witness's deposition after the spoliation became evident, but the SEC objected and indicated that it would make its position known to the Court. The SEC subsequently coordinated with Dorsett to produce additional emails, but such productions did not cure the defects originally identified. Dorsett resides in the Bahamas and counsel for Gentile has no practical ability to compel the witness's further deposition testimony or further production of documents from the witness within the current discovery schedule.

After Gentile's original Motion was stricken by the Court on April 10, 2023, counsel for Gentile again conferred with counsel for the SEC on November 15, 2023. The SEC reiterated its refusal to consent to any of the relief sought herein.

## REQUEST FOR HEARING OF MOTION

Pursuant to Local Rule 7.1(b) and the Court's prior oral ruling on April 10, 2023, Defendant Gentile respectfully requests a hearing on the instant motion. Gentile estimates that two hours total would be sufficient, inclusive of live testimony from Mr. Dorsett.

Dated:    November 30, 2023                         _/s/ Dayliset Rielo_____
                                                    Dayliset Rielo, Esq.
                                                    The Rielo Law Firm, LLC
                                                    8180 N.W. 36th Street, Suite 220
                                                    Doral, FL 33166
                                                    Tel: (786) 454-9873
                                                    dayliset@rielolaw.com

                                                    Adam C. Ford, Esq. (PHV granted)
                                                    Matthew A. Ford, Esq. (PHV granted)
                                                    Stephen R. Halpin III, Esq. (PHV granted)
                                                    FORD O'BRIEN LANDY LLP
                                                    275 Madison Avenue, 24th Floor
                                                    New York, NY 10016
                                                    Tel: (212) 858-0040 (main)
                                                    aford@fordobrien.com
                                                    mford@fordobrien.com
                                                    shalpin@fordobrien.com

                                                    *Counsel for Defendant Guy Gentile*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I caused the foregoing Defendant Guy Gentile's Memorandum of

Law in Support of Motion for Sanctions under Rule 37(e), dated November 30, 2023, to be

served via CM/ECF on the following counsel for Plaintiff:

Alice Sum
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131
(305) 982-6300
sumal@sec.gov

Alise Meredith Johnson
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131
(305) 982-6385
johnsonali@sec.gov

Russell Koonin
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131
305-982-6390
kooninr@sec.gov

                         _/s/ Dayliset Rielo_____
                         Dayliset Rielo, Esq.