UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-21079-BLOOM/Torres

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

    Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO GUY GENTILE'S RENEWED
MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE UNDER RULE 37(e)**

Plaintiff Securities and Exchange Commission files its Response in Opposition to Guy Gentile's Renewed Motion for Sanctions for Spoliation of Evidence Under Rule 37(e) ("Renewed Motion"), ECF No. [201].

### I.    INTRODUCTION

In his latest attempt to smear the name of a non-party witness and the SEC, Gentile has again filed a factually and legally baseless motion for sanctions claiming spoliation of evidence pursuant to Fed. R. Civ. P. 37(e) even though the subject Electronically Stored Information ("ESI")—a small subset of emails voluntarily produced by a non-party located in the Bahamas—were *not deleted and have been produced*. Gentile's Renewed Motion is nearly identical to his original Motion for Sanctions for Spoliation of Evidence ("Original Motion"), ECF No. [173], wherein he failed to meet and confer with the SEC as required under the Local Rules. The SEC moved to strike the Original Motion ("Motion to Strike"), ECF No. [175], noting Gentile's failure

to meet and confer and explaining to the Court that, had Gentile actually attempted to meet and confer, he would have learned that the emails in question—in possession of former SureTrader employee, Chief Compliance Officer Philip Dorsett—did in fact still exist and were not destroyed as Gentile incorrectly claimed.[1]

The genesis of this dispute is Gentile's objection to Mr. Dorsett's voluntary production of his SureTrader emails to the SEC, approximately 11,000, minus email communications with SureTrader's attorneys, in April 2022. Instead of working with the SEC to create protocols for the review, Gentile filed a Motion for Sanctions, ECF No. [86], which this Court denied, ECF No. [106]. On January 9, 2023, this Court ruled that the SEC could commence review of the 11,000 emails it received from Mr. Dorsett and provide same to Gentile's counsel, ECF No. [157]. The next time the issue of emails with SureTrader's counsel in Mr. Dorsett's possession arose was during Mr. Dorsett's deposition on February 28, 2023, and after that, in Gentile's Original Motion. Prior to Mr. Dorsett's deposition, Gentile's counsel never reached out to the SEC or Mr. Dorsett to inquire about emails with SureTrader's counsel in Mr. Dorsett's possession.

During the April 10, 2023, hearing on the SEC's Motion to Strike Gentile's Original Motion, the SEC explained that it reached out to Mr. Dorsett after Gentile filed his Original Motion to inquire as to the status of the subset of purportedly deleted emails, the "hits" from the search for SureTrader's attorneys' names, and Mr. Dorsett confirmed that the emails were *not* deleted and still existed. The SEC further described how Mr. Dorsett located and produced this subset of emails to the SEC, which the SEC in turn produced to Gentile. Thus, this Court granted the SEC's request to strike the Original Motion, ECF No. [186], stating: "Due to Mr. Gentile's failure to

---

[1] The SEC met and conferred with Gentile on its Motion to Strike, but Gentile refused to withdraw the motion.

confer with Plaintiff as to the grounds for his Motion for Sanctions [D.E. 173], which has rendered the Motion for Sanctions obsolete, at least in part, Plaintiff's Motion to Strike [D.E. 175] is GRANTED and Mr. Gentile's Motion for Sanctions is STRICKEN WITHOUT PREJUDICE."

After the Original Motion was stricken, Gentile met and conferred with the SEC to see if the SEC would agree to the relief sought in the Original Motion, and the SEC stated it would not agree because 1) Mr. Dorsett had not destroyed evidence, 2) the disputed emails had been produced to Gentile and 3) sanctions would not be appropriate. The SEC took the additional step of providing a Declaration from Mr. Dorsett to Gentile on June 13, 2023, explaining in detail the process by which he voluntarily produced SureTrader work emails in his possession from his Gmail account (including exporting the emails to Outlook to an "Outlook Backup File" on his personal computer) and that the emails he was accused of spoliating still existed in the Outlook Backup File. *See* Ex. B, Dorsett Declaration. Gentile's counsel never responded to the SEC's June 13, 2023, email or disputed the contents of Mr. Dorsett's Declaration.

Seven months after this Court struck his Original Motion, Gentile's counsel emailed the SEC on November 15, 2023—the day after the parties were notified that a new Magistrate Judge was assigned to this case—requesting a meet a confer because Gentile intended to refile his spoliation motion. Two weeks later, on November 30, 2023, Gentile filed his almost indistinguishable Renewed Motion, which failed to address Mr. Dorsett's June 13, 2023, Declaration, the contents of which clearly mooted the bulk of the baseless accusations made against Mr. Dorsett.

As with the Original Motion, the Renewed Motion is replete with inaccuracies and assumptions and is nothing more than an obvious attempt to make inflammatory and baseless accusations against Mr. Dorsett. Tellingly, Gentile used the same intimidation tactic he employed

when he filed his Original Motion—both the Original and Renewed Motions were very quickly followed by vengeful articles parroting the motions (including the false accusations against Mr. Dorsett) in a newspaper in the Bahamas, where Mr. Dorsett lives, potentially threatening Mr. Dorsett's livelihood. This is consistent with Gentile's repeated unfounded accusations that Mr. Dorsett and another former SureTrader employee—who have both testified that Gentile and SureTrader violated U.S. securities laws by soliciting U.S. customers—"stole" SureTrader records and violated the law[2] in voluntarily providing information about the violations to the SEC.

To the extent that Gentile seeks sanctions related to ESI other than the emails Mr. Dorsett originally segregated and did not send to the SEC, Gentile does not come close to satisfying the requirements under Rule 37(e) for this Court to find there was spoliation and to impose any sanctions.

Nothing has changed since Gentile's Original Motion was denied, except that a new Magistrate Judge has been assigned to this case. It is worth noting that Gentile has repeatedly rushed to file motions for sanctions in this case in an effort to short-circuit this Court's consideration of this case on the merits, each time accusing the SEC and non-party witnesses of purported misconduct without any basis. Each motion for sanctions was rejected by this Court. The instant motion should be met with the same skepticism and result. Gentile's continued sharp litigation tactics should not be condoned, and his Renewed Motion should be denied.

---

[2] The two former employees voluntarily reached out to the SEC (separately and at different times) because of their significant concerns that Gentile and SureTrader violated U.S. securities laws. To be clear, these former employees reached out to the SEC, a regulatory agency, to provide information related to potentially illegal activity, as they are protected under U.S. law to do; they did not share the information with private entities or persons for personal benefit or gain.

## II. BACKGROUND AND PROCEDURAL HISTORY

As he has done in the past, Gentile mischaracterized the factual background and made unsupported assumptions and accusations against the SEC and Mr. Dorsett in his Renewed Motion. Because the Renewed Motion concerns production of documents/ESI from Mr. Dorsett dating back to April 2022 and implicates prior rulings against Gentile in this case, the SEC will provide the salient facts and correct the record to the extent needed for this Court to decide the Motion.

The SEC filed its Complaint on March 22, 2021, alleging that SureTrader—a Bahamian entity for which the Bahamas Supreme Court appointed joint official liquidators ("JOLs") to wind-down the company on March 17, 2020, ECF No. [89-4]—violated U.S. securities laws by acting as an unregistered securities broker-dealer and Gentile is liable for SureTrader's violations as a control person.

### A. Former SureTrader Employees' Emails

During the course of responding to Gentile's First Request for Production, the SEC raised the issue of how to handle certain emails and documents that the SEC had received (but not reviewed yet) or was about to receive voluntarily from two former SureTrader employees, Mr. Dorsett and Yaniv Frantz. With respect to Mr. Dorsett, he had approximately 11,000 SureTrader work emails that were backed up to his personal Gmail account during the time he was employed with SureTrader, which he agreed to voluntarily produce to the SEC.[3] Because it was possible that the former employees' emails contained privileged materials, the SEC attempted to meet and confer with Gentile's counsel to discuss how to handle the emails and whether a privilege review would be necessary. The SEC disclosed that it requested that Mr. Dorsett search for and segregate

---

[3] Mr. Frantz's counsel advised the SEC that he had approximately 33,000 SureTrader work emails in his possession.

any "hits" for certain attorneys associated with SureTrader and Gentile—Michael Miller, Philip Davis, and Adam Ford (who is counsel of record in this case)—and transmit the 11,000 emails minus the "hits" to the SEC, but the emails were not yet accessed by SEC attorneys/paralegals pending counsel's discussion.

Instead of responding to the SEC's request to come up with a protocol for handling the former employees' emails, Gentile filed a Motion for Sanctions, ECF No. [86], (notably without meeting and conferring with the SEC about the motion) arguing that the SEC improperly obtained documents from the former SureTrader employees. On August 1, 2022, this Court denied Gentile's Motion for Sanctions without prejudice and ordered the parties to meet and confer about the handling and potential production of documents from the former employees. ECF No. [106]. Although the SEC proposed procedures for the handling and potential production of the documents, the parties did not reach an agreement. On January 9, 2023, this Court conducted a discovery hearing concerning the production of documents from the former employees. Among other things, this Court ruled that Gentile does not have standing to object to the production based on any privilege held by SureTrader, the company, and that the SEC could begin reviewing the production it received from Mr. Dorsett, receive the production from Mr. Frantz, and produce copies to Gentile's counsel. ECF No. [157].

### B. Gentile's Original Motion

On February 27 and 28, 2023, non-party witness and former Chief Compliance Officer of SureTrader who resides in the Bahamas, Mr. Dorsett, was deposed. During his deposition, Mr. Dorsett was asked about what happened to the emails he found containing communications with SureTrader's counsel, and Mr. Dorsett answered that he "deleted" them. On March 21, 2023— three weeks after Mr. Dorsett's deposition—Gentile filed his Original Motion without meeting and

conferring with the SEC.  ECF No. [173].  In addition to containing numerous inaccuracies about Mr. Dorsett, his testimony, and the evidence in this case, Gentile weaponized the Original Motion in order to intimidate Mr. Dorsett.  Two days after Gentile filed his Motion for Sanctions, an article appeared in the *Tribune*, self-described as "The Bahamas' leading daily newspaper," wherein Gentile was quoted, and the Motion for Sanctions was extensively parroted.[4]

During the three weeks between Mr. Dorsett's deposition and the filing of the Original Motion, Gentile's counsel never reached out to SEC counsel to request to meet and confer about any purported spoliation of evidence, or their intent to file a motion for sanctions.  After Gentile filed his Original Motion, SEC counsel contacted Mr. Dorsett to inquire whether he still possessed the emails involving SureTrader's counsel (the "hits" from his April 2022 search).  After reviewing the emails from his Gmail account, which he had saved on a desktop computer in approximately April 2022, Mr. Dorsett confirmed that the subject SureTrader emails still existed and had not been deleted.  On March 23, 2023, the SEC emailed Gentile's counsel to explain that the emails in question were still in Mr. Dorsett's possession, that Mr. Dorsett had misspoke in his deposition, and to request a meet and confer to address Gentile's counsel's failure to comply with Local Rule 7.1(a)(3), including the SEC's request that Gentile withdraw his Original Motion to spare the SEC from having to file a motion to strike same.

On March 24, 2023, undersigned counsel met with Gentile's counsel.[5]  The SEC also offered to send the emails in question from Mr. Dorsett, and Gentile's counsel said they would

---

[4]  http://www.tribune242.com/news/2023/mar/23/bahamian-whistleblower-accused-fabrication/. (Last accessed on January 5, 2024.)  A copy of the March 23, 2023, Tribune article is attached as **Exhibit A**.

[5]  The SEC addressed: (1) Gentile's counsel's failure to meet and confer prior to filing the Motion for Sanctions; (2) the fact that Mr. Dorsett still is in possession of the emails with SureTrader's counsel and has transmitted them to the SEC; (3) the SEC's request that Gentile withdraw his Motion for Sanctions because of the failure to comply with Local Rule 7.1(a)(3); and (4) the SEC

consider withdrawing the Original Motion after receiving and reviewing them. On March 27, 2023, the SEC transmitted the emails in question from Mr. Dorsett to Gentile's counsel. Gentile did not withdraw the Original Motion, and the SEC filed its Motion to Strike. Despite repeated requests from SEC's counsel for Gentile to identify the names of SureTrader's counsel to conduct a privilege review (prior to the January 9, 2023 hearing), Gentile's counsel never mentioned specific names of attorneys or other counsel, until he filed his Original Motion. On April 10, 2023, this Court conducted a hearing on the SEC's Motion to Strike, which it granted, and struck Gentile's Original Motion without prejudice allowing leave to re-file an updated motion after meeting and conferring with the SEC.

### C. Mr. Dorsett's June 14, 2023 Declaration

Although the purportedly deleted emails in question had already been produced by Mr. Dorsett, which in the SEC's view fully mooted the Original Motion, the SEC took an additional step of providing a Declaration from Mr. Dorsett to Gentile's counsel on June 13, 2023, which contained a detailed explanation of how his SureTrader work emails were in his possession, his production of the emails to the SEC minus emails involving SureTrader's counsel in April 2022, and how he misspoke when he said he had "deleted" emails with SureTrader's counsel. The SEC's June 13, 2023, email attaching Mr. Dorsett's June 13, 2023, Declaration is attached hereto as **Exhibit B**.

Mr. Dorsett was employed with SureTrader between November 2011 and August 2017 as Chief Compliance Officer, focusing on ensuring SureTrader's compliance with Bahamian securities laws and regulations. Dorsett Declaration at ¶ 2. Mr. Dorsett worked on a company

---

seeking to strike the Motion for Sanctions and entry of sanctions pursuant to Local Rule 7.1(a)(3) for said failure to comply if Gentile did not agree to withdraw the Motion for Sanctions.

laptop as well as his personal laptop, of which Gentile was aware. *Id.* at ¶¶ 4-7. Mr. Dorsett later learned that his SureTrader work emails were backed up to his personal Gmail account. *Id.* at ¶ 8. When he separated from SureTrader in August 2017, he was not instructed to remove or destroy SureTrader data or work from his personal laptop. *Id.* at ¶ 9.

Mr. Dorsett recalled that when the SEC requested that he voluntarily produce SureTrader emails backed up to his Gmail account, the SEC stated that he was not to send any emails between SureTrader and its lawyers if he had any in his possession. *Id.* at ¶ 10. Mr. Dorsett exported his Gmail account to Outlook and created a data file. *Id.* at ¶ 11. The SEC instructed Mr. Dorsett to search for emails with Michael Miller, Philip Davis, and Adam Ford, separate any such emails, and send the remainder to the SEC. *Id.* at ¶ 12. After Mr. Dorsett exported his Gmail account to Outlook ("Outlook Backup File"), which included a subfolder called "Swiss America" that contained a copy of the SureTrader emails backed up to his Gmail account, Mr. Dorsett ran searches for the attorney names the SEC provided him. *Id.* at ¶ 13. He also searched for Bettina Albury, who he recalled worked with Michael Miller, as well as the term "lawyer." *Id.* After Mr. Dorsett sent the 11,000 emails to the SEC—minus the "hits" for the attorney names—he kept the Outlook Backup file on his computer. *Id.* at ¶ 16.

When the SEC contacted Mr. Dorsett after Gentile filed his Original Motion, Mr. Dorsett searched for the same attorney names in the Outlook Backup File, located them, and sent them to the SEC. *Id.* at ¶ 17-19. Mr. Dorsett explained that, although he testified during his deposition that he had "deleted" the emails with SureTrader's attorneys after running the searches, the emails in fact were not deleted. *Id.* at ¶ 20. He clarified that he "misspoke when [he] said they were deleted" and said that the "more accurate explanation is that the emails with SureTrader's attorneys

9

were removed from the Swiss America subfolder so that they would not be sent to the SEC" but the "emails with SureTrader's attorneys remained in the Outlook Backup File." *Id.*

### D. The Renewed Motion

Gentile's counsel never responded to the SEC's June 13, 2023, email that included Dorsett's Declaration. Seven months after this Court struck his Original Motion, Gentile's counsel emailed the SEC on November 15, 2023—the day after the parties received ECF notices of a new Magistrate Judge assignment—requesting a meet a confer because Gentile intended to refile his spoliation motion. Counsel met and conferred that same day, and the SEC advised that it did not agree to the relief sought because no evidence had been spoliated. Two weeks later, on November 30, 2023, Gentile filed his nearly identical Renewed Motion, without updating it to respond to Mr. Dorsett's June 13, 2023, Declaration, which clearly addressed the bulk of the accusations made against Mr. Dorsett. On December 7, 2023, another article appeared in the *Tribune* in the Bahamas wherein Gentile's Renewed Motion was quoted extensively, including the numerous baseless negative comments about Mr. Dorsett.[6] Gentile has never attempted to issue letters rogatory to Mr. Dorsett, even though he and his counsel are well-versed in the procedure. Nor has Mr. Gentile subpoenaed or requested discovery from SureTrader's attorneys or other consultants, despite him having access to such counsel.

### E. Mr. Dorsett's Earlier Voluntary Production of Emails and Information

While Mr. Dorsett was still employed with SureTrader in 2015, he made a submission with the SEC wherein he identified concerns about SureTrader and Gentile violating U.S. securities laws. After receiving Mr. Dorsett's submission, an SEC staff attorney reached out to Mr. Dorsett

---

[6] http://www.tribune242.com/news/2023/dec/07/whistleblower-secretly-taped-broker-meetings/. (Last accessed January 5, 2024.) A copy of the December 7, 2023, Tribune article is attached as **Exhibit C**.

10

to request information about the statements in the submission. *See* ECF No. [201-12]. Thereafter, during the investigation of this case, the SEC staff attorney requested additional information from Mr. Dorsett, and Mr. Dorsett voluntarily provided information and documents to the SEC.

### III.   MEMORANDUM OF LAW

**A. Standard for Seeking Sanctions for Spoliation of Evidence**

Federal Rules of Civil Procedure 37(e) provides:

Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
(A) presume that the lost information was unfavorable to the party;
(B) instruct the jury that it may or must presume the information was unfavorable to the party; or
(C) dismiss the action or enter a default judgment.

Sanctions under Rule 37(e) are only warranted if a court determines all four threshold elements are met:

[A]s a preliminary matter, the rule applies only to ESI, so the first inquiry is whether ESI is what was lost. Assuming that the alleged spoliation does indeed involve ESI, then three additional questions must be resolved. First, should the spoliated ESI have been preserved in the anticipation or conduct of the litigation? Second, is the loss of the ESI due to the party's failure to take reasonable steps to preserve the ESI? Third, can the ESI be restored or replaced through additional discovery? Where the "[a]nswer to any of [the three] questions ... is 'no,' ... a motion for spoliation sanctions or curative measures must be denied."

*Easterwood v. Carnival Corporation*, Case No. 19-cv-22932-Bloom, 2020 WL 6781742, at * (S.D. Fla. Nov. 18, 2020)(quoting *Living Color Enters., Inc. v. New Era Aquaculture, Ltd.*, No. 14- cv-62216, 2016 WL 1105297, at *4-5 (S.D. Fla. Mar. 22, 2016)).

11

### B. Gentile Does Not Satisfy Any Of The Threshold Elements

*1. No ESI Was Lost*

The SEC does not dispute that Mr. Dorsett's emails constitute ESI, but as a *factual* threshold matter—with respect to the emails with SureTrader's counsel that Mr. Dorsett searched for and did not initially send to the SEC and misstated during his deposition that he "deleted" them—there is no loss of ESI evidence. Thus, the Court need not analyze the remainder of the elements, and the request for sanctions on this subset of ESI should be summarily denied.

Put bluntly, Gentile should never have filed his Original Motion or Renewed Motion over the emails with SureTrader's counsel that were not transmitted in April 2022. The fatal flaw with the Original Motion is that Gentile failed to meet and confer with the SEC before filing the motion because he would have learned that Mr. Dorsett did not delete the emails with SureTrader's counsel. Immediately upon Gentile filing the Original Motion, the SEC contacted Mr. Dorsett to clarify the status of the purportedly deleted emails. Mr. Dorsett exported his Gmail account to Outlook and kept the Outlook Backup File on his computer. *See* Dorsett Declaration at ¶¶ 11, 16. When he searched the Swiss America subfolder for emails with counsel's names, he removed them from the subfolder so that they would not be sent to the SEC but did not delete them from the Outlook Backup File. *Id.* at ¶ 20. Mr. Dorsett located the emails he removed from the Swiss America subfolder in the Outlook Backup File and sent them to the SEC, and the SEC quickly produced them to Gentile. But Gentile would not back down and withdraw his Original Motion. This Court ultimately struck Gentile's Original Motion.

Not content to accept that the Original Motion was improvidently filed, Gentile has now doubled down and filed the Renewed Motion, which wholly fails to address Mr. Dorsett's

12

supplemental production of the emails he initially segregated and did not send to the SEC, or Mr. Dorsett's Declaration explaining the sequence of events.

Moreover, while Mr. Dorsett may have misspoken during his deposition when he said he "deleted" certain emails matching the search terms for counsel's names in the Swiss America subfolder, which he has now clarified did not happen, that does not automatically mean that Mr. Dorsett deleted *additional* emails with other counsel. Specifically, Gentile claims that Mr. Dorsett deleted: (1) an email chain from 2014 wherein Gentile forwarded to Mr. Dorsett (at his SureTrader email address) a draft affidavit sent by Adam Ford (counsel of record in this case) to Gentile and produced by Gentile in this litigation, and (2) unknown, undefined, and additional emails that Gentile speculates exist with other SureTrader/Gentile attorneys or consultants, specifically Michael Miller, Franklin Ogele, Arthur Quintero, and Carla Marin involving questions and advice about SureTrader's compliance with U.S. and Bahamian laws and regulations.

As to the former, there is no evidence that the 2014 email chain involving Adam Ford drafting an affidavit for Mr. Dorsett to sign were backed up to Mr. Dorsett's Gmail account in the Swiss America subfolder or that Mr. Dorsett deleted it. Regarding an unknown and undefined universe of emails between Mr. Dorsett and other attorneys or a consultant, the accusation is nothing more than rank speculation. The only substantiation Gentile has for accusing Mr. Dorsett of deleting such emails is that "Gentile has reason to believe that Dorsett would have communicated" with attorneys and advisors. Renewed Motion at p. 9. Two of the names, Frank Ogele and Arthur Quintero, despite the newly-touted critical role they played in advising SureTrader on compliance with U.S. and Bahamian laws, were not identified in Gentile's initial disclosures nor have they been subpoenaed or otherwise requested to produce their communications. Conspicuously absent from Arthur Quintero's Affidavit is any mention of him

13

exchanging emails with Mr. Dorsett. ECF No. [201-6]. Michael Miller was one of the names the SEC asked Mr. Dorsett to search and segregate in April 2022, but Mr. Dorsett supplemented the production as explained supra and produced emails with Miller. And Mr. Dorsett previously produced emails involving Carla Marin.

> 2. *Mr. Dorsett Did Not Have a Duty to Preserve His Emails and the SEC Does Not Control Him, a Bahamian Citizen*

Gentile incorrectly argues that Mr. Dorsett, a Bahamian Citizen, had a duty to preserve his emails as of August 17, 2015, and the SEC should be held responsible for a purported failure to preserve his emails. Importantly, Gentile overlooks the fact that Mr. Dorsett is outside of this Court's and the U.S. jurisdiction as a Bahamian citizen. The SEC does not and cannot control Mr. Dorsett. Nor can this Court. That Mr. Dorsett submitted a tip to the SEC and has cooperated with the SEC and provided evidence of SureTrader and Gentile's violations of U.S. securities laws does not mean that the SEC can or does actually exert control over Mr. Dorsett.

Additionally, Gentile's argument that Dorsett's duty to preserve arose in August 2015, when an SEC staff attorney sent a letter to *SureTrader,* [ECF No. 201-10], is nonsensical. On the face of the letter, it is apparent that it was directed at SureTrader the company, and not Mr. Dorsett individually: "We believe Swiss America Securities, Ltd. d/b/a SureTrader may possess or control documents and data relevant to an ongoing investigation. . . Accordingly, we hereby provide such notice that such evidence would be preserved and retained until further notice." Moreover, Gentile knew the letter was addressed to SureTrader because he forwarded the letter to Michael Miller and Adam Ford, SureTrader and Gentile's counsel, and asked Michael Miller "how to handle the attached [letter]." The email from Gentile to Michael Miller and Adam Ford dated August 19, 2015, attaching the SEC's letter is attached hereto as **Exhibit D**.

There is simply no legal basis to transfer a corporate responsibility to preserve documents to an individual employee, let alone an employee that separated from the company in August 2017, more than three and a half years before this lawsuit was filed.[7]  Indeed, Gentile's argument begs the question, why did SureTrader not preserve the ESI?  When the SEC finally received documents from the Joint Official Liquidators for SureTrader in the Bahamas pursuant to this Court's Request for International Judicial Assistance, ECF No. [136], no SureTrader employee's emails were included.  Gentile also focuses on Mr. Dorsett sending emails and other documents to the SEC in 2016, but this is during a time frame when Mr. Dorsett was employed with SureTrader and would have had access to the records, so he did not have an obligation to preserve documents in his individual capacity.

Gentile relies on *Ronnie Van Zant, Inc. v. Pyle*, 270 F. Supp. 3d 656, 669–70 (S.D.N.Y. 2017) to support his argument that Mr. Dorsett's emails were within the SEC's control and that the SEC effectively controls Mr. Dorsett, but the case is easily distinguishable.  In *Van Zandt*, the plaintiff sought to sanction defendant for a non-party director/screenwriter that was contracted with defendant film producer to perform work on a film who did not preserve text messages when the non-party switched phones.  *Id.* at 669.  The court found that the non-party was within the defendant's control because he worked closely on the film with the defendant.  *Id.*  In this case, Mr. Dorsett is clearly not an employee or otherwise "contracted" with the SEC to perform services.  Thus, the *Van Zant* case does not apply here.

---

[7] Interestingly, Gentile simultaneously accuses Mr. Dorsett of "stealing" the company's records *and* posits that Mr. Dorsett should have preserved all of SureTrader's ESI and kept it with him after his departure from the company.  SureTrader's own counsel, Michael Miller, responded to the SEC's letter dated August 17, 2015, and flatly rejected the SEC's request arguing that the SEC did not have jurisdiction to tell a Bahamian company what to do.

15

### 3. Gentile Has Not Demonstrated That the ESI Cannot Reasonably Be Restored Or Replaced

Gentile argument that the subject ESI—emails involving SureTrader's counsel—cannot reasonably restored or replaced is without merit and unsupported. First, as argued *supra*, Mr. Dorsett located the emails that he previously segregated and has produced them to the SEC, which has produced them to Gentile. Second, the specific email chain between Gentile and Mr. Dorsett attaching an affidavit sent by Adam Ford was produced by Gentile himself. And even if there were related emails that Gentile does not possess, he has not shown that he cannot otherwise obtain them from Adam Ford, his counsel of record in this case. Finally, with respect to the other names identified by Gentile in his Renewed Motion—Michael Miller, Frank Ogele, Arthur Quintero, and Carla Marin, Gentile has not demonstrated that he cannot otherwise obtain email communications directly from these individuals. Gentile has not subpoenaed Ogele, Quintero, or Marin nor has he attempted to obtain letters rogatory to Miller, who is located in the Bahamas, or indicated that he has even informally requested the documents from his former counsel.

More than seven months have passed since this Court struck Gentile's Original Motion, so he has had more than sufficient time to attempt to obtain the purportedly critical information from these individuals. Gentile did not even disclose Ogele, Quintero, or Miller in his initial disclosures, and the SEC is not aware of any attempts by Gentile to obtain the unknown, unidentified, and speculative emails from these individuals. Gentile's inaction undermines his claim of the importance of these unknown emails. *See, e.g., Romero v. Regions Financial Corporation/Regions Bank*, CASE No. 18-22126-CV-Williams/Torres, 2019 WL 2866498, at *7 (S.D. Fla. July 3, 2019).

Gentile also relies upon testimony from Mr. Dorsett where he discusses an alleged hack of his Gmail account. However, this is irrelevant as Mr. Dorsett has confirmed that his Gmail account

was exported to Outlook and saved as an Outlook Backup File on his computer. *See* Dorsett Declaration at ¶ 13.

### 4. Gentile Cannot Establish He Will Suffer Prejudice

Even if Gentile could establish that ESI was deleted and the ESI cannot otherwise be reasonably replaced (which the SEC vigorously disputes), Gentile cannot establish he will suffer prejudice. First, Gentile's reliance on advice of counsel defense is irrelevant to the SEC's Section 15(a)(1) of the Securities Exchange Act of 1934 claims because they are non-scienter based. Section 15(a)(1) imposes strict liability and does not require any proof of scienter or intent to commit the violation. *SEC v. Merchant Capital, LLC*, 311 Fed. Appx. 250, 252 (11th Cir. 2009).[8]

Second, even if relevant, Gentile has not met the burden of demonstrating that the allegedly spoliated evidence is crucial to his ability to prove his defense. *Romero*, 2019 WL 2866498, at *7(citing *In Matter of Complaint of Boston Boat III, LLC*, 310 F.R.D. 510, 514 (S.D. Fla. 2015)("In meeting the requirement to demonstrate that the spoliated evidence was crucial to the movant's ability to prove its prima facie case or defense, it is not enough for the movant to show only that the spoliated evidence would have been relevant to a claim or defense.")). Moreover, Gentile's inaction for an extended period of time (since Mr. Dorsett's deposition in February 2023) belies any claim that the evidence is crucial:

> There is one additional fact we cannot ignore in light of Romero's claim about the importance of the lost video: she never once sought information related to the alleged Romero/Pumar confrontation until Defendant provided it in an effort to rebut her deposition testimony concerning Pumar's actions on the day in question. This undermines Plaintiff's argument about the importance of the video evidence.

---

[8] Also, in cases involving similar violations for failure to register under the Section 5 of the Securities Act of 1933, courts have held that advice of counsel defenses are insufficient to avoid liability. *See SEC v. PV Enterprises*, Case No. 16-20542-Civ-Scola, 2016 WL 8808697, at *4 (S.D. Fla. Jun. 28, 2016) ("neither a good faith belief that the offers or sales in question were legal, nor reliance on the advice of counsel, provides a complete defense") (quoting *SEC v. Friendly Power Co. LLC*, 49 F. Supp. 2d 1363, 1368 (S.D. Fla. 1999)).

> If the end-of-day confrontation was, indeed, so critical to proving that Regions acted in a discriminatory fashion, it would be expected that her attorneys would move heaven and earth to uncover any footage that might support such a claim. Yet the issue remained dormant until Defendant presented Plaintiff with the surveillance footage that seemingly contradicted Plaintiff's version of events.

*Romero*, 2019 WL 2866498, at *7. Indeed, Gentile has cited to no actions that he has taken since this case was filed in March 2021 to obtain the allegedly crucial evidence.

### C. Sanctions Are Not Appropriate

Because Gentile has not established the four threshold elements under Rule 37(e), sanctions are not warranted. Moreover, Gentile has not established that Mr. Dorsett or the SEC acted with the intent to deprive Gentile of the subject emails as required under Rule 37(e) or that he has been prejudiced. Instead, Gentile has taken one moment in time—when Mr. Dorsett misstated during his deposition that he "deleted" the emails he searched for and segregated with SureTrader's counsel—and has attempted to convert it into a vehicle to undermine a former employee's testimony about Gentile and SureTrader's violations of U.S. securities laws and to secure an advantage in this litigation by preventing Mr. Dorsett from testifying at trial or precluding the use of his deposition testimony at summary judgment. Gentile conveniently ignores Mr. Dorsett's detailed explanation that the subject emails with SureTrader's counsel still exist and the subsequent production of these emails. Gentile should not have filed his meritless Renewed Motion.

### III. CONCLUSION

For the foregoing reasons, Gentile's Renewed Motion should be denied.

January 5, 2024.                                      Respectfully submitted,

/s/Alice Sum_____
Alice Sum
Senior Trial Counsel
Fla Bar No.: 354510
Phone: (305) 416-6293
Email: sumal@sec.gov

Alise Johnson
Senior Trial Counsel
Fla. Bar No. 0003270
Direct Dial: (305) 982-6385
Email: johnsonali@sec.gov

*Attorneys for Plaintiff*
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154