# EXHIBIT C

# Sum, Alice

| | |
|---|---|
| **From:** | Sum, Alice |
| **Sent:** | Tuesday, June 13, 2023 8:50 PM |
| **To:** | Matthew Aaron Ford; Adam Ford; Stephen Halpin |
| **Cc:** | Johnson, Alise (johnsonali@SEC.GOV) |
| **Subject:** | SEC/Gentile - Dorsett Declaration re: emails |
| **Attachments:** | Dorsett June 2023.pdf |

Counsel:

Please see attached Declaration from Philip Dorsett.

**Alice Sum**
Trial Counsel
Division of Enforcement
Miami Regional Office

**OFFICE**    +1 305 416 6293
**MOBILE**   +1 305 202 0885
sumal@sec.gov

_____



1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-21079-Bloom/Otazo-Reyes

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

    Defendants.
_____/

## DECLARATION OF PHILIP A. DORSETT

Pursuant to 28 U.S.C. § 1746, the undersigned states as follows:

1. My name is Philip A. Dorsett and I am over twenty-one years of age and have personal knowledge of the matters set forth herein.

2. From November 2011 until August 2017, I was registered with the Bahamian securities regulators as the Chief Compliance Officer at Swiss America Securities, Ltd., also known as SureTrader, and most recently known as Mint Broker International Ltd., a broker-dealer registered with the Securities Commission of the Bahamas (hereinafter "SureTrader"). My duties were focused on ensuring SureTrader's compliance with Bahamian securities laws and regulations and approving new customer accounts.

3. SureTrader opened in the Bahamas in November 2011. The only employees of SureTrader at that time were me and Guy Gentile ("Gentile"), and a clerical staff person joined a short time later.

4. At the beginning when SureTrader was formed, two company laptops were acquired by SureTrader; one laptop for me and one laptop for Gentile. I also owned a personal laptop, which Gentile saw that I had with me every day.

5. Very early on during the company's infancy, Gentile had a concern about loss of data for SureTrader. Gentile asked me to provide my personal laptop, I gave it to him, and he made backups of SureTrader's data to my personal laptop. Gentile told me that he wanted the backups to be separate from SureTrader's two work laptops. I was not aware of what specific technical work Gentile did to back up SureTrader's data to my personal laptop.

6. I occasionally performed work on my personal laptop, which Gentile was fully aware of, and he never told me that I could not work on my personal laptop.

7. I would often have both my personal and work laptops open and work on them in plain view of Gentile because he sat less than 10 feet behind me and his desk was positioned to see that. The company had a small office with an open floor plan.

8. I later learned that SureTrader emails were backed up to my personal Gmail account.

9. When I separated from SureTrader in August 2017, I was not provided with any instructions from Gentile or any other SureTrader employee regarding the SureTrader materials that were backed up to my personal laptop. I was not instructed to destroy or otherwise remove SureTrader data or work from my personal laptop.

10. In or about early April 2022, the U.S. Securities and Exchange Commission ("SEC") requested that I produce SureTrader emails that were backed up to my Gmail account. The SEC said that I was not to send any emails between SureTrader and its lawyers if I had any in my possession.

11. The SEC gave me instructions on how to export my Gmail account to Outlook and to create an Outlook data file (PST), and sent me a link to upload the emails to Accellion@sec.gov.

12. The SEC instructed that I should search for emails between SureTrader and its attorneys, separate these emails, and send the remainder to the SEC. The SEC instructed me to search for the following attorneys: Michael Miller, Philip Davis, and Adam Ford.

13. After I exported my Gmail account to Outlook ("Outlook Backup File"), which included a subfolder called "Swiss America" that contained a copy of the SureTrader emails backed up to my Gmail account, I ran the searches for the attorney names identified in paragraph 12. In addition, I searched for Bettina Albury, who I recalled worked with Michael Miller, as well as the term "lawyer." I ran these searches in the Swiss America subfolder copied into Outlook and removed them from the subfolder.

14. I attempted to upload the SureTrader emails (minus emails with SureTrader's attorneys) on April 20, 2022 to the SEC using the Accellion link the SEC provided, but I was told by the SEC that the upload was not done correctly.

15. On April 21, 2022, I uploaded the SureTrader emails again using the Accellion link, and I was advised by the SEC that it received the emails.

16. After I sent the emails to the SEC, I kept the Outlook Backup File on my computer.

17. On or about March 22, 2023, the SEC contacted me to inquire about SureTrader's emails with its attorneys, specifically to determine whether I still had the emails in my possession that I had previously searched for and not sent to the SEC.

18. I searched for the same names identified in paragraphs 12 and 13 in the Outlook Backup File, and they were still there.

19. On March 23, 2022, I sent the emails with SureTrader's attorneys to the SEC.

20.     Although I testified during my deposition on February 8, 2023, that I had "deleted" the emails with SureTrader's attorneys, those emails were not, in fact, deleted. I misspoke when I said they were deleted. The more accurate explanation is that the emails with SureTrader's attorneys were removed from the Swiss America subfolder so that they would not be sent to the SEC. The emails with SureTrader's attorneys remained in the Outlook Backup File.

21.     To the best of my knowledge, I have produced all SureTrader emails in my possession to the SEC.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 13th day of June 2023.

Philip A. Dorsett