UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-21079-BB

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

    Defendants.

**DEFENDANT GUY GENTILE'S REPLY IN SUPPORT OF RENEWED MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE UNDER RULE 37(e)**

**PRELIMINARY STATEMENT**

Gentile stands by his Renewed Motion for Sanctions for Spoliation of Evidence [ECF No. 201] and will not rehash that entire Motion in this Reply. Distilled to its essence, the present discovery dispute is straightforward: A witness for the SEC (Philip Dorsett) deleted highly relevant emails and admitted under oath at his remote video deposition he had done so. Neither the SEC nor the witness has recovered and produced all of those emails, nor can either explain in any logical fashion how Dorsett preserved (or didn't preserve) such emails after a duty to do so had arisen. The witness (who resides in the Bahamas outside the Court's subpoena power) refused to hold open his deposition after his spoliation of evidence came to light and indicated he would refuse to testify at an evidentiary before this Court concerning the dispute.

The question is whether the Court should allow the SEC to rely on this witness's tainted testimony in advancing its case against Gentile, including in any upcoming motion for summary judgment. It should not. Gentile respectfully reiterates his request for an in-person hearing on this issue at which the witness is instructed to appear and submit to questioning before the Court.

**ARGUMENT**

The starkest example of the witness's spoliation is a January 8, 2014 email from Gentile to Dorsett in which Gentile—then-President of Defendant SureTrader—forwarded a draft affidavit to Dorsett—then-Chief Compliance Officer for SureTrader—for Dorsett to review and sign "if he 100% agrees with everything that is contained in it." *See* Ex. H to Mot. at 3 [ECF No. 201-8]. Dorsett signed the affidavit the next day before a notary, Ex. G [ECF No. 201-7], and the affidavit was subsequently submitted in a filing with FINRA, which operates under the umbrella of the SEC and at the time was investigating SureTrader and Gentile for the same alleged

1

conduct the SEC alleges gives rise to this case, i.e., alleged solicitation of U.S. customers. The next year, FINRA elected not to charge either Gentile or SureTrader.

In the January 9, 2014 affidavit, Dorsett averred:

> 5. In early 2012, Swiss America [SureTrader] adopted a policy of accepting certain unsolicited US-based persons as customers in compliance with US law.
>
> 6. In connection with this policy, I reviewed all relevant Rules and Guidance of the U.S. Securities and Exchange Commission regarding solicitation of US persons by unregistered non-US broker-dealers.
>
> 7. Based on SEC Rules and Guidance, Swiss America developed policies and procedures designed to ensure that SureTrader complied with US laws regarding solicitation.

*Id.* ¶¶ 5–7. To date, Dorsett has never produced the January 8, 2014 email or his notarized affidavit signed January 9, 2014, in this litigation, notwithstanding that the email was sent to his SureTrader email address (philip@suretrader.com) and that he has produced thousands of emails received at that account both before and after January 8, 2014.

The SEC, for its part, steadfastly maintains that the emails Dorsett deleted "did in fact still exist and were not destroyed," Opp. at 2, contending there has been "no loss of ESI evidence," *id.* at 12. Indeed, it isn't until page 13 of the SEC's Opposition that the Court will find any attempt to square the blanket assertion that "there is no loss of ESI evidence" with the plain fact that Dorsett has never produced the January 8, 2014 email or his January 9, 2014 notarized affidavit: "[T]here is no evidence that the 2014 email chain involving Adam Ford drafting an affidavit for Mr. Dorsett to sign were backed up to Mr. Dorsett's Gmail account in the Swiss America [SureTrader] subfolder or that Mr. Dorsett deleted it." Opp. at 13.

This perplexing assertion raises only questions, not answers, such as: So Dorsett backed up thousands of emails from his SureTrader email account before and after January 2014, but he did not back up the specific January 8, 2014 email? How? Why? What else did he not back up?

2

If instead he backed up everything but now he cannot locate the January 8, 2014 email, what other explanation is there other than that he deleted it? What else did he back up and then subsequently delete?

As is often the case, the simplest explanation is the most likely to be true. Dorsett deleted the January 8, 2014 email (and others) out of self-interest, as he has sought throughout this case and his extensive work with the SEC dating back to 2015 to disclaim any personal responsibility and shift any blame onto Gentile. This also explains other examples of spoliated evidence, such as: (1) a June 6, 2015 email from Gentile to Dorsett and Carla Marin (then-counsel to SureTrader) instructing, among other things: "We need a review of all adveristing [sic] to ensure comlpiance [sic] with SEC Rule 15a-6." [Ex. A]; and (2) Dorsett's formal termination letter he received from SureTrader, dated July 31, 2017, after SureTrader learned he had been stealing company documents. [Ex. B].

Elsewhere in its Opposition, the SEC tries to impose on Gentile a burden that has no basis in law. The SEC has purportedly been investigating this case since 2013. It filed its Complaint in March 2021 and since then has sought numerous extensions of discovery deadlines (some of which Gentile has not opposed) in an effort to build the case it apparently failed to make for the last decade during its investigation. Against that backdrop, there is no merit to the SEC's contention that Gentile has failed to timely raise Dorsett's spoliation of evidence, which counsel for Gentile only learned of during the witness's February 2023 deposition.

This Court's decision in *Romero v. Regions Fin. Corp./Regions Bank*, No. 18-22126-CV, 2019 WL 2866498 (S.D. Fla. July 3, 2019), where the party alleging spoliation merely "*hope[d]* that the unpreserved video would contradict [another party's] claim," *id.* at *7, does not compel a contrary conclusion. The January 8, 2014 email and January 9, 2014 affidavit undermine the

3

central plank of Dorsett's sworn deposition testimony: that as Chief Compliance Officer for SureTrader he was responsible for ensuring compliance only with Bahamian law and not U.S. law. The SEC also overlooks that it charged SureTrader, not Gentile, with a violation of § 15(a) of the Exchange Act. *Compare* Opp. at 17, *with* Compl. ¶¶ 97–99 [ECF No. 1]. Gentile is charged with violations of § 20, including § 20(a), which specifically precludes liability if "the controlling person acted in good faith." *See* 15 U.S.C. § 78t(a). Whether Dorsett as Chief Compliance Officer for SureTrader was responsible for compliance with U.S. law, as other known evidence shows (and spoliated evidence likely confirms), is thus central to Gentile's defense that he acted in good faith.

Nor must Gentile scour the ends of the earth for other methods of identifying and obtaining the evidence Dorsett spoliated. Judge Brannon rejected this precise argument in *Ahrens Enterprises, Inc. v. Winning*, No. 18-80650-CIV, 2019 WL 12520080 (S.D. Fla. Apr. 18, 2019), which Gentile cited in his Motion and the SEC does not mention, let alone attempt to distinguish. In *Ahrens*, Judge Brannon reasoned:

> Mr. Winning's argument that Ahrens can restore or replace any lost ESI by downloading it directly from Ahrens' servers or getting emails from other non-party sources who were included on the emails completely misses the point. While Ahrens could conceivably attempt to piece together the larger puzzle of what might have been on Mr. Winning's thumb drive or in his email accounts through other sources, Ahrens can never know for sure without direct access to these ESI sources.

*Id.* at *4. The same holds for *Pacific Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, No. 6:12-CV-33-ORL-28DAB, 2012 WL 10817204, at *1 (M.D. Fla. Nov. 30, 2012):

> [S]imply because the deleted data might possibly be recoverable through a costly and time consuming forensic investigation, this does negate Gilbert's willful deletion of the ESI. PCMW argues that to find otherwise would allow unscrupulous litigants to always choose the destruction of potentially damaging ESI over producing it, and then argue "no harm, no foul" when the destruction is revealed but the ESI can be recovered. In this case—whether or not the ESI can be recovered—sanctions are warranted to deter others, particularly here where the true

> creation date and accurate metadata of the CAD files could have assisted PCMW in proving its case.

*Id.* at *9 (cited in Mot. at 19); *see also Nationwide Life Ins. Co. v. Betzer*, No. 5:18-CV-39-OC-30PRL, 2019 WL 5700288, at *9 (M.D. Fla. Oct. 28, 2019) ("[I]n spoliation cases, the prejudiced party should not be held to too strict a standard of proof regarding the probable contents of the destroyed evidence 'because doing so allows the spoliators to profit from the destruction of evidence.'" (citation omitted) (cited in Mot. at 17)).

Gentile does not have the virtually unlimited resources of the U.S. government. Last year, in an analogous context, Justice Gorsuch lamented an example of what some commentators and scholars have dubbed "regulatory extortion" when describing an individual's saga with the SEC that had "already dragged on for seven years." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 216 (2023) (Gorsuch, J., concurring). Justice Gorsuch wondered: "[H]ow many people can afford to carry a case that far anyway?" *Id.* "Thanks in part to these realities, the bulk of agency cases settle. Aware, too, that few can outlast or outspend the federal government, agencies sometimes use this as leverage to extract settlement terms they could not lawfully obtain any other way." *Id.* (footnote omitted).

The SEC's one attempt to distinguish a case Gentile cited in his Motion misses the mark. Gentile has never maintained that Dorsett was "an employee or otherwise 'contracted' with the SEC to perform services." *See* Opp. at 15. Neither is a necessary condition to infer "control" in this context. *See, e.g.*, *Pac. Coast Marine*, 2012 WL 10817204, at *5 ("Control may be inferred, even when a party does not have possession or ownership of the evidence, 'when that party has the right, authority, *or practical ability to obtain [the evidence] from a non-party to the action*." (emphasis added) (citation omitted)). Examples abound of the SEC's practical ability to obtain documents and evidence from Dorsett long before the SEC filed its Complaint in this case:

5

- April 1, 2016 email from Dorsett to SEC Staff Attorney: "Further to our conversation today, I found some US client files . . . . I have attached them here. . . . If you do decide to use any of these files, please remember to officially request them from us through the SCB." Ex. L to Mot. [ECF No. 201-12].

- April 11, 2016 email from Dorsett to SEC Staff Attorney: "I started making recordings of the [SureTrader] executive meetings (I made the first one today). We are currently attempting to move all relationships away from the US. We can discuss at length when we speak again." Ex N to Mot. [ECF No. 201-14].

- April 20, 2016 email from Dorsett to SEC Staff Attorney: ". . . I overhead the IT person stating that they may be looking into ways to block or notify the system if someone forwards work emails from the company to their personal email. I will try to stay up-to-date with the IT guy to know for sure." Ex. T to Mot. [ECF No. 201-20].

The conduct of this litigation has only confirmed the SEC's effective control over Dorsett. *See* Mot. at 15–18.

## **CONCLUSION**

For all the foregoing reasons, as well as those in Gentile's Renewed Motion for Sanctions, nonparty Philip Dorsett has spoliated relevant ESI while operating under the de facto direction and control of the SEC. Gentile therefore respectfully requests under Rule 37(e) that the SEC be precluded from relying on Mr. Dorsett's self-serving testimony in this litigation. Gentile requests a hearing before the Court.

Dated:   January 19, 2024               */s/ Dayliset Rielo*
                                        Dayliset Rielo, Esq.
                                        The Rielo Law Firm, LLC
                                        8180 N.W. 36th Street, Suite 220
                                        Doral, FL 33166
                                        Tel: (786) 454-9873
                                        dayliset@rielolaw.com

Adam C. Ford, Esq. (PHV granted)
Matthew A. Ford, Esq. (PHV granted)
Stephen R. Halpin III, Esq. (PHV granted)
FORD O'BRIEN LANDY LLP
275 Madison Avenue, 24th Floor
New York, NY 10016
Tel: (212) 858-0040 (main)
aford@fordobrien.com
mford@fordobrien.com
shalpin@fordobrien.com

*Counsel for Defendant Guy Gentile*

# CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Defendant Guy Gentile's Reply in Support of Renewed Motion for Sanctions under Rule 37(e), January 19, 2024, to be served via CM/ECF on the following counsel for Plaintiff:

Alice Sum
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131
(305) 982-6300
sumal@sec.gov

Alise Meredith Johnson
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131
(305) 982-6385
johnsonali@sec.gov

Russell Koonin
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131
305-982-6390
kooninr@sec.gov

                                                   */s/ Dayliset Rielo*
                                                  Dayliset Rielo, Esq.