# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:21-CV-21079-BLOOM

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

      Defendants.

_____/

## PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
## OMNIBUS MOTION *IN LIMINE*

Plaintiff Securities and Exchange Commission hereby submits its Omnibus Motion *in Limine*. For the reasons set forth herein, the Court should preclude the introduction of evidence as described below.

## I. Legal Standards

"The purpose of a motion *in limine* is to give the judge notice of a party's desire to prevent the introduction of damaging evidence that may impact the fairness of a trial." *Biscayne Cove Condo. Ass'n Inc. v. QBE Ins. Corp.*, No. 10-23728-CIV, 2013 WL 2646828, at *3 (S.D. Fla. June 12, 2013) (italics added) (internal citations omitted). "In order to exclude evidence *in limine* it must be inadmissible on all potential grounds." *Id*. The decision to admit or exclude evidence is committed to the broad discretion of the District Court. *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 556 (11th Cir. 1998); *see also Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1161 (11th Cir. 2005).

The Court has wide discretion in determining the relevance of evidence produced at trial. Evidence is admissible only if it is relevant. See Federal Rule of Evidence ("FRE") 402. Evidence is relevant only if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. FRE 401. Even if evidence is relevant, FRE 403 allows the Court to exclude the evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403. Based upon this standard, the Commission respectfully requests that the Court use its discretion to exclude the evidence detailed below.

## II. Maters that Should Be Excluded from Trial

### A. <u>Defendant Should be Barred from Making Ad Hominem Attacks on Commission Counsel and Criticizing the Commission's Investigation</u>

Throughout this litigation, Defendant Guy Gentile has sought to divert attention from his securities violations by attacking the SEC, its investigation, and its attorneys. For example, Gentile has filed multiple motions falsely accusing the SEC of abusing discovery, violating Bahamian law, spoilation and repeating his opinion that the case should have never been brought. [ECF Nos. 86, 173, 201]. In his answer, Gentile accuses the SEC of "unclean hands" and "fraud." [ECF No. 80]. In his deposition, Gentile accuses the SEC staff of stealing documents. See Gentile Depo. pp. 73-75, attached hereto as Ex. A. Gentile has also engaged in ad hominem attacks on his public social media accounts against SEC counsel calling counsel "witches," "nasty women," "criminals" and stating that he "think[s] about the nasty women that work for the SEC and those sexual [urges] just go away." *See* Gentile X f/k/a Twitter Account, attached hereto as Ex. B.

Pursuant to Federal Rules of Evidence 401 and 403, the SEC moves the Court to exclude such arguments regarding the SEC's investigation, personal attacks on SEC staff and the SEC's

discovery efforts. Clearly, such attacks are irrelevant to the issues the jury must decide and should be precluded from presentation at trial.

## **ARGUMENT**

Evidence relating to the SEC's investigation of this civil action does not have "any tendency to make the existence of a fact that is of consequence" to the jury's determination of whether the defendants violated the law "more probable or less probable." FRE 401. Crucially, courts have repeatedly ruled that the government's conduct in its investigations is irrelevant if it does not bear on an actual defense. *See, e.g., US v. Hedgepeth*, 418 F.3d 411, 419-20 (4th Cir. 2005) (holding that the FBI's conduct and motive in investigation was "hardly probative of any 'fact that is of consequence to the determination of the action'"); *US v. Lecco*, 438 F. App'x 187, 191 (4th Cir. 2011) (upholding exclusion of police misconduct evidence where defendant had not argued police misconduct as a defense, and alleged misconduct did not tend to prove defendant's claims); *US v. Bautista*, 252 F.3d 141, 145 (2d Cir. 2001) (holding that defense summation "amounted to an (improper) invitation for the jury to consider the government's choice of investigative techniques"); *US v. Patrick*, 248 F.3d 11, 22-23 (1st Cir. 2001) (barring admission of investigative notes to show "inadequacy of the police investigation"). *US v. Dupree*, 833 F. Supp. 2d 255, 269-72 (E.D.N.Y. 2011) (granting motion *in limine* to exclude evidence of alleged prosecutorial misconduct as irrelevant and prejudicial, and noting that such allegations may only be addressed to the court and not to the jury).

Moreover, the SEC "has discretion to decide both the timing of when it 'make[s] such investigations,' and the manner and scope of how to investigate any facts, conditions, practices, or matters." *See Donahue v. US*, 870 F. Supp.2d 97, 105 (D.D.C. 2012) (quoting *Dichter-Mad Family Partners, LLP v. US,* 707 F. Supp.2d 1016, 1035 (C.D. Cal. 2010)); *SEC v. Tiffany Indus., Inc.,*

535 F. Supp. 1167, 1168 (E.D. Mo. 1982) ("[A]gencies engaged in prosecutorial or enforcement activities are provided a wide discretion on when to file charges and against whom the charges should be instituted"). Blaming the SEC for the manner in which it exercised its investigatory authority in this case does not make it any more or less likely that the defendant violated the securities laws. FRE 401; *cf. SEC v. Buntrock*, 217 F.R.D. 441, 444-45 (N.D. Ill. 2003) (holding that discovery into the SEC's administrative investigation was not warranted).

The jury's role is to decide whether the SEC has proved its case by a preponderance of the evidence, not whether the government should have pursued the case in the first place. Indeed, the jury has no role in evaluating the SEC's investigation, and, in any event, would be ill-equipped to do so. *See SEC v. True N. Fin. Corp.*, 10-cv-3995, Dkt. No. 323, at 7 (D. Minn. 2013) (granting the SEC's motion *in limine* and holding that "evidence as to Plaintiff's so-called charging decision shall be presumptively inadmissible" because the evidence "does not survive the Court's Rule 104 and Rule 403 analysis").

Here, the SEC's conduct during the investigation and this litigation has no relevance to any fact in dispute. In truth, Gentile wishes to focus on the SEC's investigation and conduct in order to put the SEC on trial and confuse the jury with irrelevant and prejudicial evidence and arguments. Permitting such a sideshow would distract the jury from the actual evidence and charges before them. *See, e.g., US v. Day*, 700 F.3d 713, 728 (4th Cir. 2012) (affirming exclusion of report about mishandling of evidence because its "limited probative value" was outweighed by the unfair prejudice); *US v. Cheung Kin Ping*, 555 F.2d 1069, 1073 (2d Cir. 1977) (approving a jury instruction that "law enforcement policy" is not [the jury's] concern, and that the jury should "focus its attention on the real issue, namely, whether the government ha[s] proved the facts alleged"). In sum, the way the SEC exercised its investigatory authority in this matter does not

make it more or less likely that Gentile committed securities violations. Gentile is free to challenge the sufficiency of the SEC's evidence at trial but should not be permitted to attack the SEC's case through inflammatory references to the SEC's investigation, or attacks on SEC staff.

If by some chance, however, evidence and argument regarding the SEC's investigation and charging decisions had any marginal probative value, such evidence would be inadmissible under FRE 403. That rule allows the Court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Here, red herrings pertaining to the SEC's investigation would only serve to confuse the issues, prolong the trial, and mislead the jury, by distracting from the facts relevant to the SEC's claims. Thus, such evidence and argument should be excluded under FRE 403.

**B.** **Gentile Should Be Barred from Referring to the Department of Justice, the SEC and FINRA's Prior Charging Decisions**

Gentile should be precluded from presenting any evidence or argument to the jury or pursuing lines of cross-examination regarding the decisions of the Department of Justice ("DOJ"), the SEC, or FINRA, to not charge him in other matters that they were investigating or the dismissal of those charges. Because that information is irrelevant to any material fact and because DOJ and the SEC face different burdens of proof, references to the DOJ's charging decisions will create jury confusion. Similarly, references to the SEC and FINRA's investigation of Gentile in other unrelated matters should not be introduced in this matter. Gentile should be precluded from introducing or referring to DOJ's charging decisions at trial or to FINRA's decision to not charge Gentile following its investigation as such evidence is irrelevant and would confuse the jury.

## BACKGROUND

Gentile has been the subject of several investigations and criminal actions prior to the SEC bringing the instant regulatory matter. As noted by this Court in its Order Denying Motion to Dismiss, ECF No. [76], prior to the SEC's filing of this matter, from 2007 to 2008, Gentile was involved in two pump-and-dump penny stock schemes while he was the owner of a New York broker-dealer. *SEC v. Gentile*, 939 F.3d 549, 552 (3d Cir. 2019). This scheme did not involve the broker-dealer currently at issue, SureTrader, as it was not in operation at that time. The U.S. Attorney's Office for the District of New Jersey filed a criminal complaint against Gentile in New Jersey District Court in June 2012, and Gentile was arrested a few weeks later. *Id.* Gentile agreed to cooperate against his confederates, but he stopped cooperating in 2015, and the deal fell apart. In early 2016, Gentile was indicted for his involvement in the pump and dump scheme, but the criminal indictment was ultimately dismissed as untimely. *Id.; US v. Gentile*, 235 F. Supp. 3d 649, 650–51 (D.N.J. 2017) (indictment dismissed).

In March 2016, the SEC filed a civil enforcement action against Gentile in New Jersey District Court ("NJ case"), under Case No. 16-cv-1619. The Complaint alleged Gentile's actions in the 2007 and 2008 pump and dump schemes violated several provisions of the federal securities laws. On September 29, 2020, the Court dismissed the Complaint for insufficient pleading, without prejudice, and permitted the SEC to further amend its Complaint. The SEC chose not to further amend its Complaint, and the Court directed the Clerk to close the NJ case in October 2020. See ECF No. [76, p. 2].

In March 22, 2021, the SEC filed the instant case against Gentile alleging between 2016 and 2019, Gentile operated an unregistered offshore broker-dealer in the Bahamas, SureTrader, designed to help day traders in the United States circumvent the U.S. rules that regulate pattern

day trading. ECF No. [1]. The allegations in the present Complaint have nothing to do with the prior allegations of Gentile's participation in the 2007 and 2008 pump and dump schemes. Indeed, SureTrader was not even in operation until 2011. Prior to May 2012, FINRA also began investigating another Gentile company, Stock USA.  FINRA ultimately did not bring an action from that investigation.

## ARGUMENT

Gentile should be precluded from presenting any evidence that the criminal case and the SEC's prior case were dismissed. Similarly, that FINRA chose not to bring charges against Gentile should not be permitted to be discussed at trial.

### 1. Evidence of Non-Prosecution Is Irrelevant

The Court should exclude evidence of non-prosecution and dismissal because such evidence is irrelevant. A defendant's "acquittal in a criminal prosecution is not necessarily a judgment of innocence, but merely a negative statement that the quantum of proof necessary for conviction had not been presented." *Galbraith v. Hartford Fire Ins. Co.*, 464 F.2d 225, 227 (3d Cir. 1972). Similarly, the fact that a defendant has not been criminally charged says nothing about whether they are more or less likely to be civilly liable under federal securities laws. *See Martell v. IDS Prop. Cas. Ins. Co*., No. 10-14896, 2012 WL 1391964, at *1 (E.D. Mich. Apr. 20, 2012) (finding that the evidence of non-prosecution "proves nothing about the conduct of the parties here. They are not, in other words, 'relevant'").

Indeed, various courts have made clear that decisions by DOJ not to prosecute are irrelevant to later cases. *See e.g., Bernard v. E. Stroudsburg Univ.*, No. 09-CV-00525, 2014 WL 12740289, at *2 (M.D. Pa. Oct. 16, 2014) (granting plaintiff's motion *in limine* to preclude evidence that defendant was not criminally charged); *Abney v. Badger Mut. Ins. Co.,* No. 12-C-4467, 2014 WL

85986, at *3 (N.D. Ill. Jan. 9, 2014) (granting defendant's motion *in limine* to bar evidence of non-prosecution or non-arrest); *Zibolis-Sekella v. Ruehrwein*, No. 12- CV-228-JD, 2013 WL 5574575, at *2 (D.N.H. Oct. 8, 2013) (granting plaintiff's motion *in limine* to exclude evidence that the defendant was not criminally charged unless a party or witness opens the door by testifying that defendant acted criminally); *Horvath v. W. Bend Mut. Ins. Co.,* No. 10-CV-180 CAN, 2012 WL 12888391, at *1 (N.D. Ind. Jan. 26, 2012) (granting defendant's motion *in limine* to prohibit evidence related to lack of criminal charges or proceedings).

**2. The Probative Value of the Evidence of Non-Prosecution Is Substantially Outweighed by the Danger of Unfair Prejudice**

Even if evidence of non-prosecution was minimally relevant to the issues at trial—which it is not—its probative value is plainly outweighed by the danger of prejudice to the SEC's case and confusion of issues by the jury. See FRE 403. A court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, [or] misleading the jury." FRE 403. Unfair prejudice means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FRE 403 Advisory Committee's Note. Evidence has probative value "if it tends to prove or actually proves a proposition." *US v. Jamil*, 707 F.2d 638, 642 (2d Cir. 1983).

Courts have held that evidence of non-prosecution is inadmissible in civil trials because such evidence is generally not probative of a defendant's innocence in the case at trial and the information tends to mislead the jury. *See Am. Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 325 (3d Cir. 1985) ("The evidence of non-prosecution is of very limited probative value . . . because of the higher burden of persuasion in a criminal case. . . . The inadmissibility of [such evidence] also comports with the general rule that evidence of an acquittal in a criminal arson case is inadmissible in a civil arson case."); *US v. Young*, 20 F.3d 758, 765 (7th Cir. 1994)

(affirming district court's decision, on relevancy grounds, to preclude the defendant from introducing evidence that another individual who had been arrested with him was not charged); *US v. Mosby*, 626 F. Supp. 3d 847, 859 & n.2 (D. Md. 2022) (excluding evidence about the investigation of the case and holding that "[e]vidence about the Government's charging decision related to potential tax charges involving Defendant is also not relevant to the issues in this case"). Furthermore, courts have held that evidence of non-prosecution carries such substantial danger of unfair prejudice that it is inadmissible even when a limiting instruction is given to the jury. *See Kelly's Auto Parts, No. 1, Inc. v. Boughton*, 809 F.2d 1247, 1253-54 (6th Cir. 1987) (finding that the admission of evidence of non-prosecution is reversible error and that the trial court's "[j]ury instructions are inadequate ... to cure the inherent prejudice involved"); *E. Stroudsburg Univ.*, 2014 WL 12740289, at *2 ("[A limiting instruction] could not adequately prevent the jury from speculating as to other reasons for the lack of charges").

For example, in *US v. Benson*, 957 F.3d 218, 236-37 (4th Cir. 2020), the Fourth Circuit affirmed the district court's decision to instruct the jury that the previous dismissal of charges against the defendant was irrelevant. The panel explained that "non-prosecution decisions are irrelevant because they often take into consideration the availability of prosecutorial resources, alternative priorities, the expectation of prosecution by other authorities, or any number of other valid discretionary reasons." *Id.* Testimony regarding criminal charging decisions have no part in this trial, as it would not make any fact of consequence more or less probable. *Benson*, 957 F. 3d at 236 (citing FRE 401).

In addition, a prosecutorial decision not to indict may take into account many other factors not only irrelevant in a civil suit but also difficult for the jury to fully understand. *See Galbraith*, 464 F.2d at 227 ("[N]ot all laymen are aware of the complexities inherent in a prosecutor's

deliberations concerning whether or not to seek a grand jury indictment."); *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 147 (3d Cir. 2002) ("Because the probative value of evidence of non-arrest is very limited, courts exclude it in order to avoid the danger of the jury in a civil trial exaggerating its worth."). Jurors may not be fully cognizant of the fact that the SEC and DOJ face different burdens of proof. As a result, jurors may feel compelled to defer to what they believe to be an evaluation of the evidence by another government agency, notwithstanding the various factors (discussed by *Benson, supra*) that inform a charging decision and the entirely different (and far more demanding) standard of proof. *See FIGA v. R.V.M.P.*, 874 F.2d 1528, 1531 (11th Cir. 1989) ("[T]he different standards of proof between a criminal prosecutorial decision and a civil case might mislead the jury."); *Abney*, 2014 WL 85986, at *1 ("[E]vidence [of non-prosecution] is highly prejudicial and that a decision not to file criminal charges is based on significantly different factors than those applicable in a civil case."); *Horvath,* 2012 WL 12888391, at *1 ("A jury may not be able to appreciate the distinction between those two levels of proof, and so evidence of a lack of criminal charges or proceedings is unfairly prejudicial.")

As the burden of proof in a criminal case is substantially higher than the burden the SEC must meet in the present civil action, if Gentile is permitted to introduce evidence that criminal charges were dismissed against him, this evidence could mislead the jury into drawing erroneous conclusions that would ultimately prejudice the SEC's case. The jury might conclude the lack of criminal charges or proceedings means that Gentile is "innocent." Thus, there is a substantial likelihood of jury confusion should such prior decisions be admitted to the jury. Moreover, in the instant case, any discussion of the dismissal of the criminal action would be particularly confusing to a jury as the indictment was dismissed as untimely due to the AUSA's failure to secure a tolling

agreement, and not on substantive grounds.  For these reasons, the Court should exclude evidence and argument the criminal indictment and investigation of Gentile. See FRE 403.

Similarly, any reference to the SEC's NJ case being dismissed should be precluded as it is both irrelevant and any evidentiary value it has would be outweighed by the danger of prejudice. *SEC v. True North Fin. Corp.,* No. 10- 3995 (DWF/JJK), 2013 WL 4781037, at *3 (D. Minn. Sept. 6, 2013) (granting motion to preclude evidence concerning SEC's charging decisions); *see also SEC v. Nutmeg Group, LLC*, No. 09-cv-1775, 2017 WL 3269389, at *4 (N. D. Ill. Aug. 1, 2017) (granting unopposed motion *in limine* to bar reference to unrelated SEC investigations or enforcement actions). Simply put, any reference to the SEC's decision not to pursue its pump and dump action against Gentile that occurred at another broker-dealer has no relevance to this action and would only lead to jury confusion.

For the same reasons, FINRA's failure to bring charges against Gentile is irrelevant to this action. Testimony regarding FINRA's investigation and charging decisions have no part in this trial, as it would not make any fact of consequence more or less probable. *Benson*, 957 F. 3d at 236, FRE 401. Thus, evidence regarding FINRA's investigation or its failure to bring an action against Gentile should be excluded from trial.

## C.  The Court Should Exclude Argument that the SEC Or DOJ Approved of SureTrader's Solicitation of US Investors

In his First, Sixth and Eighth Affirmative Defenses contained in his Amended Answer ECF No. [80], Gentile asserts that during his earlier cooperation with the DOJ, the FBI and the SEC became "aware of SureTrader's policies for accepting U.S. individuals" and assured Gentile that SureTrader's acceptance of "non-solicited" U.S. clients conformed with U.S. securities law.  He further states that the SEC consented to SureTrader's conduct as lawful. Gentile has also indicated that he intends to call as witnesses at trial a parade of FBI, DOJ, and SEC staffers to testify

regarding conversations he had with them prior to 2012, wherein they assured him his business conduct at SureTrader (which was just in its infancy at the time) did not violate the securities laws. Gentile should be precluded from testifying or presenting such evidence because: 1) it's factually impossible, 2) is irrelevant, and 3) would confuse the jury.

### 1. The Facts do Not Support Gentile's Assertion

Gentile's argument that his prior dealings with the FBI somehow shields him from future liability for violating the securities laws, is both legally insufficient and factually impossible. Gentile concedes that his meetings with the FBI and SEC wherein he discussed SureTrader and their policies occurred at the latest May of 2012 when he was just starting the SureTrader firm. He specifically says in his affirmative defenses that the SEC's consent began "no later than May 2012." Amended Answer Affirmative Defenses, 6, 7, 8, 9 & 10. As alleged in the instant Complaint, the allegations that violated Section 15 of the Securities Exchange Act of 1934 ("Exchange Act") occurred years later and the relevant time period in the Complaint is from 2016-2019, after Gentile had stopped cooperating with the FBI. Thus, the SEC could not review or approve conduct that would not occur until years later.

Moreover, the SEC's policy is that it does not prophylactically consent to or otherwise bless a company's conduct as lawful under any circumstance (much less those described by Gentile). If an entity or individual wishes to know whether conduct *might* constitute a violation of the federal securities laws, they may request a no-action letter to get the SEC's staff's interpretation of how the federal securities law apply under a particular set of facts and circumstances through the SEC's official process (a process which Gentile did not follow). However, even those no-action letters

are non-binding.[1] The SEC simply does not give advice or consent as to whether an individual's conduct is compliant with securities laws-much less a blanket "get out of jail free" card that Gentile alleges he was given. Gentile's assertion of being given such immunity is an impossibility.

### 2. The Probative Value of the Evidence Is Substantially Outweighed by the Danger of Jury Confusion and Prejudice

Even if Gentile mistakenly believed that the SEC gave him some type of tacit approval for his conduct (which would not occur until years later), such testimony should be precluded from trial as it is irrelevant and prejudicial and would result in the presentation of details from the prior criminal and SEC cases and become a trial within a trial.

First, evidence of prior approval by DOJ or the SEC of Gentile's business model is irrelevant because Exchange Act Section 15(a)(1) imposes strict liability and does not require any proof of scienter or intent to commit the violation. *SEC v. Merchant Capital*, *LLC,* 311 Fed. Appx. 250, 252 (11th Cir. 2009). *See also SEC v. Corporate Relations Group,* 2003 WL 25570113, at *37 (M.D. Fla. 2003). Thus, the question for the jury is simply whether there was a violation, not why there was a violation or what advice was received from anyone concerning whether the activity might be considered a violation. Prior informal opinions by the DOJ or SEC staff that Gentile was compliant with the law in 2012 have no value to the jury whose sole role is to determine whether there was a violation from 2016-2019.

---

[1] As explained on the SEC's website:

General Information about no-action, interpretive, exemptive and waiver requests:

- The staff's responses to no-action, interpretive, exemptive, or waiver requests are not rules, regulations, or statements of the Commission, and the Commission has neither approved nor disapproved the staff's responses or interpretations. Due to their informal nature, these responses are not necessarily binding on the staff, the Division of Corporation Finance or the Commission. Our responses do not constitute legal advice, for which you should consult with your own attorney. While the Division encourages written requests, the staff's responses to these requests may be given telephonically.

SEC.gov/Requests for No-Action, Interpretive, Exemptive, and Waiver Letters.

Given the diminutive value of the evidence, weighed against the confusion and prejudice that could occur should Gentile present evidence of comments allegedly made during investigations or be allowed to present witnesses from the prior actions to discuss what occurred in those cases, Gentile should be precluded from putting on such a side show. See FRE 403.

**D.** **The Court Should Exclude Evidence and Argument Regarding Advice, Involvement or Presence of Counsel**

Gentile should not be permitted to refer to any advice, involvement, or presence of counsel regarding whether he was acting as an unregistered dealer. As shown above and in the SEC's motion for summary judgment, the SEC's claim under Section 15(a) of the Exchange Act is a strict liability claim that does not require any showing of intent. Such evidence is irrelevant under FRE 401 and would unduly prejudice the SEC, confuse the issues, and mislead the jury.

In cases involving other violations for failure to register under the securities laws, courts have held that advice of or reliance on counsel defenses are insufficient to avoid liability. *See SEC v. PV Enterprises,* No. 16-20542-Civ-Scola, 2016 WL 8808697, at *4 (S.D. Fla. Jun. 28, 2016) (in case involving failure to register securities under Section 5 of the Securities Act of 1933, "neither a good faith belief that the offers or sales in question were legal, nor reliance on the advice of counsel, provides a complete defense") (*quoting SEC v. Friendly Power Co.,* 49 F. Supp. 2d 1363, 1368 (S.D. Fla. 1999)). Therefore, whether Gentile relied on advice of counsel is irrelevant, and should not be presented to the jury.

Even if advice of counsel was theoretically a viable defense to a Section 15(a)(1) claim, Gentile does not satisfy the required elements to present such a claim. "To succeed with a defense of good faith reliance on the advice of counsel, the defendant must show that: 1) he fully disclosed all relevant facts to his counsel and 2) he relied in good faith on his counsel's advice." *US v.*

14

*Parker*, 839 F.2d 1473, 1482 n.6 (11th Cir. 1988); *SEC v. Huff*, 758 F. Supp. 2d 1288, 1348-49 (S.D. Fla. 2010) (collecting cases). Here, Gentile has not shown either element.

Second, even if the Court finds some relevance in Gentile's involvement of attorneys in these transactions, evidence and argument that Gentile relied on them should still be excluded under FRE 403 as it is unfairly prejudicial to the SEC, would confuse the issues in this case, and would mislead the jury. Moreover, such evidence would allow Gentile "all of the essential benefits of an advice of counsel defense without . . . the burden of proving any of [its] elements." *Id.; see also SEC v. Kokesh*, No. 09-cv-1021, 2014 WL 11516545, at *3 (D.N.M. July 21, 2014) (finding the "probative value" of such evidence is "outweighed by the danger that the jury will be misled and confused"); *SEC v. Mapp*, No. 16-cv00246, 2017 WL 8780604, at *2 (E.D. Tex. Dec. 4, 2017)

Because Gentile did not give any notice of the affirmative defense of advice-of-counsel, the SEC would be unduly prejudiced if Gentile could now introduce evidence of the involvement of attorneys. Indeed, Gentile has insisted throughout that he will not waive attorney-client privilege. Lacking notice, the SEC was deprived of the ability to depose any attorneys Gentile allegedly relied on to determine (1) what facts Gentile told them, and (2) what advice they gave him. *See generally In re EchoStar Commc'ns Corp.,* 448 F.3d 1294, 1299 (Fed. Cir. 2006) ("Once a party announces that it will rely on advice of counsel…the attorney-client privilege is waived."). The Court should not permit Gentile to assert a "back door" advice of or presence of counsel defense under these circumstances. Indeed, multiple courts have rejected similar efforts. *See SEC v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013) (excluding evidence that would suggest that counsel blessed the relevant disclosures because defendant is not pursing an advice-of-counsel defense and such evidence would therefore "be irrelevant, misleading, or both[.]"); *Abdo v. Fitzsimmons*, 2022 WL 2276898, at *2 (N.D. Cal. June 23, 2022) (holding that advice-of-counsel

evidence is not relevant unless all the elements of an advice-of-counsel defense are satisfied, and that adhering to the elements "is especially important because of the risk of confusion and unfair prejudice stemming from the presentation of what we might call an 'imperfect' advice of counsel showing."); *SEC v. Frost*, No. 8:19-cv01559-JLS-JDE, 2022 WL 17327322, at *1 (C.D. Cal., Feb. 3, 2022) (excluding evidence of "good faith effort to provide adequate disclosure to investors though consultation with counsel" as impermissible attempt at asserting back door advice-of-counsel defense); *US ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 393 (4th Cir. 2015) (Wynn, J., concurring) ("in allowing [defendant] to press its advice of counsel defense and giving the jury an advice of counsel instruction yet preventing the jury from hearing all the advice that [defendant] got, the district court abused its discretion and prejudiced the government").

The vague and unspecified advice of attorneys who may not have been apprised of all pertinent facts is not relevant. But it is unduly prejudicial, would mislead the jury, and does confuse the issues in this case. Therefore, the Court should preclude Gentile from (1) offering an advice-of-counsel defense, (2) stating or arguing through testimony or jury addresses that Gentile "relied on," "was advised by," or "consulted with" attorneys regarding any of the matters in the Complaint, or (3) suggesting through questioning, testimony, or jury addresses that any attorney approved in any way Gentile's actions as described in the Complaint.

### E. Evidence Regarding Personal Hardships Gentile May Suffer as A Result of This Action Should be Excluded.

The SEC anticipates that Gentile may attempt to play on the sympathies of the jury by discussing the personal and professional hardships he has or may suffer as a result of the SEC's charges or hardship that could be caused by a filing of liability against him.[2]  Thus, the SEC moves

---

[2] For example, in his deposition, Gentile gave testimony regarding the negative impact that the lawsuit and preceding investigation have had on him and his personal life.

to bar Gentile from submitting any argument or evidence at trial that: (a) he has suffered personal, financial, or professional hardship as a result of the filing of this case; or, (b) a finding of liability against him could cause him to suffer additional personal, financial, or professional harm. Gentile should not be allowed to employ this tactic at trial for two reasons.

First, evidence of personal or professional hardship—or of potential remedies in this case—is completely irrelevant to the jury's task and should, therefore, be excluded under FRE 401. The only question before the jury is whether Gentile acted as an unregistered broker.  Any reference to the collateral consequences of the SEC's litigation or potential remedies would represent an attempt to engender sympathy rather than to present facts relevant to deciding that question.

Courts have recognized that "juries are not to consider the consequences of their verdicts." *US v. Garrett*, 757 F.3d 560, 571 (7th Cir. 2014) (*citing US v. Diekhoff,* 535 F.3d 611, 621 (7th Cir.2008)); *E.I. du Pont Nemours & Co. v. Berkley & Co*., 620 F.2d 1247, 1275 n. 54 (8th Cir. 1980) (noting with approval the trial judge's instruction that the jury should ignore consequences of the jury's findings).  As the District Court in *Moran* found when it barred defendants "from offering any evidence regarding the hardship or loss which the defendants suffered as a result of these charges being lodged or that may result from the court's verdict":

> There is no relevant basis under which such proof could be offered. It is well settled that the trier of fact must consider only the factual issue of liability without regard to any potential consequences which may befall a defendant. *See Shannon v. United States,* 114 S. Ct. 2419, 2424 (1994) ("information regarding the consequences of a verdict are irrelevant" for the finder of fact to consider); *Rogers v. United States*, 422 U.S. 35, 40 (1975) (verdict must be reached "without regard to what sentence might be imposed"). Thus, evidence of this kind may not be admitted.

*SEC v. Moran*, 1995 WL 785953, at *1 (S.D.N.Y. Oct. 31, 1995).

Second, even if evidence of hardship or remedies could be viewed as relevant, the minimal probative value of such evidence would be vastly outweighed by the danger of misleading the jury.

See FRE 403. If Gentile is allowed to suggest that he has already suffered hardship from being charged—or would suffer further hardship if found liable—jurors could be misled into basing their decision on emotion or sympathy rather than the facts of the case.

For these reasons, courts consistently exclude evidence of adverse consequences in SEC actions. In *SEC v. Spencer Pharm., Inc.,* 58 F. Supp. 3d 165, 166 (D. Mass. 2014), the court granted the SEC's motion to exclude evidence or argument concerning the negative effects of the investigation or a finding of liability. The court reasoned that "[n]one of the statutory provisions under which [defendant] is charged include an element related to either the effects of the investigation or the possible consequences of trial. Accordingly, such evidence is irrelevant to a determination of [defendant's] liability for the charges brought against him." *Id.* Similarly, in *SEC v. Saul*, No. 90 C 2633, 1991 WL 218061 (N.D. Ill. Oct. 16, 1991), the court concluded that "[t]estimony concerning the ramifications of a judgment against the defendants has such limited probative value and such substantial potential for prejudice and distraction that it [should] be precluded pursuant to Fed R. Evid. 403." *Id.* at *1. Further, "[s]peculation about the consequences [the defendants] might suffer from a jury finding against them would likely distract the jury from the allegations of the S.E.C.'s complaint and encourage deliberation based on emotional considerations which are improper." *Id.; see also SEC v. Jacobs*, No. 1:13-cv-1289, 2014 WL 12597832, at *5 (N.D. Ohio Feb. 25, 2014) (excluding adverse consequences evidence because it is irrelevant, "and even if such evidence were relevant, it is more prejudicial than probative").

Here, it is the Court, and not the jury, that will decide the appropriate remedies if Gentile is found liable for violating federal securities laws. And the Court will be entitled to consider and weigh all the factors permitted under law. *See Garrett,* 757 F.3d at 571. Accordingly, the jury

should be confined to considering and deciding whether the parties' evidence proves that Gentile engaged in violations of the securities laws-and not the effect of any resulting remedy.

**F.** **The Court Should Find That the SEC's Webcaptures Are Authenticated Without the Need for A Live Witness.**

Here, the SEC intends to introduce into evidence the copies or "webcaptures" posted on websites. Some of the copies were made directly from websites where some of the pages captured are still posted. Other exhibits were copied from archived internet pages preserved by an entity called the "Internet Archive." The SEC contends these webcaptures accurately reflect the internet sites from which they were copied.

Pursuant to FRE 901(a), "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Courts routinely accept that the Internet Archive accurately captures images of websites. *See, e.g., Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 717–18 (N.D. Fla. 2019) (citing multiple cases); *US v. Bondars*, No. 16-CR-228,2018 WL 9755074, at *2 (E.D. Va. Aug. 20, 2018) (holding that screenshots available from the Internet Archive are self-authenticating as certified records generated by an electronic process or system and certified data copied from an electronic device, storage medium, or file).

All the SEC's webcaptures, whether from the Internet Archive or a live site, were made by a SEC "IT Specialist" whose job is to copy internet material for investigations and litigation. Each webcapture is supported by a declaration that includes the Specialist's name, the address of the specific internet location copied, the date of the copy, the tools used to make the copy, and the location on the SEC's computer system where the Specialist saved the webcapture.  In the absence of any evidence rebutting the SEC's authenticity evidence, requiring the SEC to prove authenticity through live witnesses would be time-consuming and wasteful. Thus, the SEC requests that the

19

Court issue an order ruling that the Webcaptures presented by the SEC in this manner are authenticated and that the SEC need not establish authenticity through live witnesses at trial.

### G. **The Court Should Find That the Documents Produced by Defendants and the Securities Commission of the Bahamas Are Authentic.**

Here, the Defendants produced several documents that the SEC intends to use at trial. While some of these exhibits were authenticated in deposition testimony, not all of them were. "Documents produced during discovery 'are deemed authentic when offered by a party opponent." *Slone v. Judd*, No. 8:09-cv-1175, 2011 WL 1124618, at *2 (M.D. Fla. Mar. 25, 2011) (citing authorities). "[I]f a party produces a document in response to a discovery demand or subpoena, it cannot then argue that, despite its production, the document is not authentic." *Id.* (citation omitted). See also 31 Fed. Prac. & Proc.: Evidence § 7105, at 39 ("Authentication can also be accomplished through judicial admissions such as ... production of items in response to ... [a] discovery request.")."  Thus, the SEC request that documents produced by Defendants be deemed authentic.

Similarly, the documents produced by the Securities Commission of The Bahamas ("SCB") should be deemed authentic.[3]  SureTrader's regulator in the Bahamas, the SCB, requested documents from SureTrader as part of the liquidation process and SureTrader produced documents in response to their request. In turn, the SEC requested that the SCB produce the documents produced to them by SureTrader and those documents were produced in this litigation. For the same reasons listed above, the documents received by the SEC from the SCB should also be deemed authentic without having to present representatives from the SCB to testify as to the chain of production and their authenticity.

---

[3] These documents include those produced by the Joint Liquidators appointed by the Supreme Court of the Bahamas for SureTrader in response to the Letters Rogatory issued by this Court on August 23, 2022.  ECF Nos. [115, 116].

## <u>CERTIFICATE OF CONFERRAL</u>

Pursuant to Southern District of Florida Local Rule 7.1(a)(3), undersigned counsel emailed

conferred with counsel for Gentile who opposes the relief requested herein.

February 12, 2024                                    Respectfully submitted,


                                        /s/Alise Johnson
                                        Alise Johnson
                                        Senior Trial Counsel
                                        Fla. Bar No. 0003270
                                        Direct Dial: (305) 982-6385
                                        Email: johnsonali@sec.gov

                                        Alice Sum
                                        Senior Trial Counsel
                                        Fla Bar No.: 354510
                                        Phone: (305) 416-6293
                                        Email: sumal@sec.gov

                                        *Attorneys for Plaintiff*
                                        **SECURITIES AND EXCHANGE
                                        COMMISSION**
                                        801 Brickell Avenue, Suite 1950
                                        Miami, Florida 33131
                                        Telephone: (305) 982-6300
                                        Facsimile: (305) 536-4154


## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 12th

day of February 2024 via CM/ECF on all counsel.

                                        Alise Johnson
                                        Alise Johnson