

**EXHIBIT 12**
Victoria L. Valine, CSR, RMR, CRR
Stenographic Court Reporter
California CSR No. 3036   2/27/2023



🖨 Print Form

Account Type:  ● Individual   ○ Joint   ○ Corporation

For office use only
Account number:

## Tell us about you

| Field | Value |
|---|---|
| First Name | Christopher |
| Middle Name | Miguel |
| Last Name | Penalver |
| Phone Number | [redacted] |
| Email | [redacted]@gmail.com |
| Citizenship | United States |
| Residence | Plano |
| Country | United States |
| ID Type | 1 |
| ID Number | [redacted]6794   Exp. Date 12/20/2017 |
| Country of Issuance | USA |
| Date of Birth | [redacted]1983   Dependents 0 |
| Marital Status | MARRIED |
| Purpose of A/C | Purchases of stocks |

## Mailing Address

| Field | Value |
|---|---|
| Street Address | [redacted] |
| Street Address 2 | [redacted] |
| City | Plano |
| State/Province | Texas |
| Postal Code | 75025 |
| Country | United States |

## Different Mailing Address

| Field | Value |
|---|---|
| Street Address | |
| Street Address 2 | |
| City | |
| State/Province | |
| Postal Code | |
| Country | |

## Spouse's Information

*If you selected married, please enter spouse's information*

| Field | Value |
|---|---|
| First Name | Khlood |
| Last Name | Elsayed |
| Date of Birth | [redacted]1986 |

## Tell us about investment objectives and trading experience for stocks

| Field | Value | Field | Value | Field | Value |
|---|---|---|---|---|---|
| Risk Tolerance | Speculation | Knowledge Level | Extensive | Year of Experience | 5+ |
| Transaction per Year | 10 | Avg Size per Trade | 1000.00 | Amount to Fund | 17000 |
| Funding Method | Bank Wire Transfer | Country | United States | | |

### Industry and other Affiliations

| Question | Answer |
|---|---|
| Are you or any of your immediate family members employed by this firm? | ● No |
| Are you or any of your immediate family members employed by or associated with the securities industry (for example, a sole proprietor, partner, officer, director, or branch manager of a broker-dealer firm) or a financial regulatory agency? | ● No |
| Are you or any of your immediate family members an officer, director or 10% (or more) shareholder in a publicly-owned company? | ● No |
| Have you ever been convicted of an indictable offence, fraud, or any other serious criminal offense? | ● No |
| Have you ever had a bank or investment account involuntarily closed or frozen in any jurisdiction? | ● No |

### Tell us about your financial background *(please estimate the following)*

| Field | Value | Field | Value |
|---|---|---|---|
| Annual Income | $0 - $9,999 | Net Worth | $25,000 - $39,999 |
| Liquid Net Worth | $25,000 - $39,999 | Tax Rate | Under 15% |

**DEPOSITION EXHIBIT 12**

Confidential pursuant to Securities Exchange Act s.24(d).   SEC-SCB-P-0010391

**Tell us about your banking details**

| Bank Name | TD Ameritrade |
|---|---|
| State | Nebraska |
| Country | United States |
| Bank Postal Code | 68154 |

**Tell us about your employment status**

| Employment Type | Unemployed |
|---|---|
| Occupation | |
| Employer Name | |
| Nature of Business | |
| Street Address | |
| Street Address 2 | |
| City | |
| State/Province | |
| Postal Code | |
| Country | |

| Source of Funds | 17000 | Percent | 100 | Description | TDAmeritrade Individual Account |
|---|---|---|---|---|---|

**Professional References:**
1 financial reference and
2 professional references are required

**Reference #1 (Financial Institution)**

| Bank Name | TD Ameritrade |
|---|---|
| Full Name | Carrie Braxdale |
| Phone Number | 8006693900 |
| Email Address | clientservices@tdameritrade.com |

**Reference #2 (example: Banker, Lawyer, Accountant)**

| Full Name | Karl Harmdierks |
|---|---|
| Phone Number | 9725436826 |
| Email Address | kharmdierks@meditassociates.com |

**Reference #3 (example: Banker, Lawyer, Accountant)**

| Full Name | |
|---|---|
| Phone Number | |
| Email Address | |

**How did you hear about us?**

| Type Source | Website |
|---|---|

CLIENT ACKNOWLEDGEMENT. The Client may open an individual account, a joint account, a corporate account or a trust account. Please ensure that the appropriate signature block is completed and executed. By affixing the appropriate signatures and other indications in the appropriate spaces that follow, I (we) hereby acknowledge that I (we) have read, understand and agree to the terms of this Agreement. If this is a joint account (more than one owner), we further acknowledge that this Agreement establishes a Joint Account with Rights of Survivorship. I (We) acknowledge that I (we) have received a copy of the Agreement(s). The Client Agreement contains a pre-dispute Grievances clause at Paragraph 20. I (We) have read the Agreement(s) and agree to the terms. In consideration of Swiss America Securities opening and maintaining one or more margin accounts on my behalf, I (we) hereby acknowledge that I (we) have read, understand and agree to the terms contained in Clauses 28 through 31 of this Agreement governing the use and operation of a margin account. By signing this Agreement, I (we) acknowledge that my (our) securities may be loaned to you or loaned out to others. If this is a joint margin account, all parties must sign

| Signature | *[signature]* | Date | 12/20/2017 |
|---|---|---|---|

All brokerage services through Swiss America Securities, Ltd.

| For office use only<br>RR is registered in State of Customer's residence ||||
|---|---|---|---|
| RR Signature Accepted | Date | Authorized Supervisor's Signature | Date |
| | | | |

**Tax Form W-9**

| W-9 | Request for Taxpayer Identification Number and Certification |
|---|---|

**1 Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.**
Christopher Penalver

**2 Business name/disregarded entity name, if different from above**
Christopher Penalver

**3 Check appropriate box for federal tax classification; check only one of the following seven boxes:**
☐ Individual/sole proprietor or single-member LLC
☐ C Corporation   ☐ S Corporation
☐ Partnership     ☐ Trust/estate
☐ Limited liability company.
Enter the tax classification (C=C corporation, S=S corporation, P=partnership) _____

**Note.** For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.
☐ Other (see instructions) _____

**4 Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):**
Exempt payee code (if any) _____
Exemption from FATCA reporting code (if any) _____
(Applies to accounts maintained outside the U.S.)

**5 Address (number, street, and apt. or suite no.)**
[redacted]

**6 City, state, and Postal Code**
Plano, Texas, 75025

**Requester's name and address (optional)**
Christopher Penalver
[redacted], Plano, TX, 7525

**7 List account number(s) here (optional)**

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

Social security number: [redacted]-9650

OR

Employer identification number: ___-_____

## Part II   Certification

Under penalties of perjury, I certify that:

Postal   The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me);
Code and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page

☑ I Agree that the above information is correct.



# Account Disclaimers

Please read the following document carefully understand and agree to the terms and conditions of service.

## Introduction

This document contains important information regarding the terms and conditions which apply to your brokerage account with SureTrader, a Bahamian corporation doing business as this domain name (hereinafter referred to as "ST"). PLEASE READ THIS DOCUMENT CAREFULLY and retain it for future reference. Please note that the information contained herein is subject to change without notice.

1. I understand that this Agreement ("Agreement") between me and ST states the terms and conditions of my use of ST's online trading service maintained and operated by SureTrader.

In consideration for ST opening and maintaining one or more Accounts (each an "Account"), you agree to the terms and conditions contained in this Agreement, as amended from time to time.

## Liquidation

SureTrader reserves the right to liquidate any securities which are/may become illiquid for the undersigned at zero dollar value.

## Definitions

As used in the Agreement, these terms are defined as follows:

a. Account Application. The application you prepare and submit to open a Brokerage Account. b. Available Funds. The sum of all funds on deposit in your account, plus funds receivable from settled sales, minus funds needed to pay for recent purchases and minus funds needed to pay for any open orders and any uncleared deposits. c. Brokerage Account. A Cash Account or Margin Account. d. Business Day. Monday through Friday, excluding stock exchange holidays. e. Cash Account. The basic brokerage account ST offers wherein you make all purchases on a cash basis. f. Customer Agreement. The agreement you make with us when you open a brokerage account, as amended from time to time. g. Debit Balance. An account balance representing money owed us. h. Free-Riding. The practice of purchasing and selling securities in rapid succession without submitting to ST payment for the purchase order (the proceeds of the sale are expected to cover the purchase price). i. Good Delivery. The delivery to ST of freely transferable securities (properly endorsed, registered and fully negotiable stock certificates which clear transfer). j. Password. Your Personal Password used to access the ST online trading service. k. Securities and/or Other Property. This means, but is not limited to, cash, stocks, bond s, mutual funds, money funds, financial instruments and related contracts and options, whether for present or future delivery. This definition includes securities or other property currently or hereinafter held, carried or maintained by ST or any of its affiliates, in ST 's possession or control, or in the possession or control of any such affiliate, for any purpose, in and for any of your Account(s) now or hereinafter opened, including any Account in which you may have an interest. l. Service. ST's online services. m. Short Sale. The sale of a security you do not own. n. Settlement date. The day on which a transaction is to be completed. On this day, buyers are to pay for their purchases and sellers are to deliver their securities. Generally, for equity transactions, settlement date is three (3) days after your trade executes. o. User ID. Your alphanumeric code which is required for you to access your account through the Service. p. "We," "us". "We" and "us". These terms refers to "ST". q. "You" or "your". Each person who signs an account application or a designee of any person who signs an account application.

2. Opening Your Account. You may apply for a Brokerage Account by completing an Account Application. You warrant and represent that the information that you supply in your Account Application (or other information that ST may require) is accurate and truthful. If your application is approved, ST will open a Brokerage Account (an "Account") for you.

3. Location of transactions. I understand and agree that all transactions, communications and exchanges of information using this website are to be considered as having taken place in the jurisdiction in which the servers providing the service are physically located and as such, are governed by the laws of these jurisdictions. You further understand that this website is operated in compliance with the laws of the jurisdiction in which the servers hosting this service are physically located. Compliance with the laws of the jurisdiction in which you are a resident or citizen is your responsibility alone. ST, its agents, representatives or any of its affiliate Membersites, including this domain name only conduct business in the jurisdiction in which its servers are hosted. Neither ST, its agents, representatives or any of its affiliate Membersites, by offering you the opportunity to do business through them are agreeing to subject themselves to the laws, customs and procedures of the jurisdiction of your residence.

4. Non-Solicitation or recommendation. Nothing in this customer agreement should be construed as a solicitation or recommendation to buy or sell any security. You acknowledge that all orders to buy/sell securities in your account must be placed by you directly through the ST online trading interface.

5. No Legal, Tax or Accounting Advice. You acknowledge that ST will not be providing you with any legal, tax or accounting advice. You assume full responsibility with respect to transactions in or for your Account and your investment decisions. ST and their officers, directors, employees, agents and affiliates will have no liability with respect to transactions in or for your Account and your investment decisions.

6. Tax Liabilities. You acknowledge that ST will report any information regarding your account with ST or income derived therefrom, to any taxing authority or agency. You further acknowledge that it is your obligation and responsibility to comply with the laws of the country of your residence with respect to tax liability.

7. Applicable Rules and Regulations. All transactions in your Account shall be subject to the rules, customs and usages of ST.

8. Minimum Deposits and Balances. ST will require you to make a minimum deposit to open your Account $1000, either in the form of cash or marketable securities and to maintain a minimum balance in your Account thereafter. The minimum deposit and balance may consist of cash or marketable securities, or a combination of cash and marketable securities. This deposit is in addition to any funds required to pay for any purchases of securities in your account.

9. Commissions and Fees. You agree to pay our brokerage commissions and other fees, as they exist from time to time and as they apply to your Account, transactions, and services you receive. You also agree to pay all applicable taxes.

10. Transactions and Settlements. All orders for the purchase and/or sale of securities and/or other property will be directly entered by you through the ST online trading system with the understanding that no trade or order will be accepted and/or executed unless and until good funds are in your account. The transaction you wish to execute or securities which have cleared transfer are in your account. Though orders are usually routed to the marketplace shortly after entry, certain orders, at ST's sole discretion, may be subject to manual review and entry, which may cause delays in the processing of your orders. You also understand that you will receive the price at which your order executes in the marketplace, which may be different from the price at which the security or option is trading when your order is entered into our system.

11. Instructions from you are assumed to be genuine. You agree that ST shall not be under a duty to inquire as to the authenticity or propriety of any instructions given to ST by you and shall be entitled to act upon any such instructions; and ST will not be liable for any loss, cost, expense or other liability arising out of any such instructions.

12. Purchases of Securities. To process orders to purchase securities, ST generally requires that the Account contain "Available Funds" or "Buying Power" equal to or greater than the purchase price of the securities prior to trade date. Any order inadvertently accepted and/or executed without sufficient funds in the Account will be subject, at ST's discretion, to cancellation or liquidation. You are responsible for your orders, including any orders which exceed Available Funds or Buying Power in your Account. If full funds are not available in the Account and an order is processed, your payment via wire or personal check, cashiers check or money order payable to SureTrader must be promptly submitted to ST pursuant to the instructions for transmitting funds and/or securities contained on the ST website's funding and banking page.

13. Sales of Securities; Short Sales. ST generally requires that stock certificates be cleared by the transfer agent for the security deposited into the Account prior to the acceptance of a sell order. Any order inadvertently accepted without negotiable certificates in the Account will be subject, at ST's discretion, to cancellation or buy-in. All other sell orders will be for securities owned by you at the time the order is placed, and must be long and in good deliverable form in your Account on or before settlement date of the transaction. Proceeds of the sale cannot be paid to you until the certificate(s) have been received by ST in good deliverable form from the transfer agent for the company whose securities were deposited into your account. If the certificate(s) are not received on or before settlement date, or as market conditions warrant, the securities may be purchased on the open market by ST. If the securities are bought in, you will be responsible for any resulting losses and all associated costs incurred by ST. The proceeds of all sales will be retained in your Account unless you request otherwise. You may withdraw un-invested cash from your Account upon request to ST. We may require that you make these requests in writing.

14. Customers' Responsibility Regarding Certain Securities. Certain securities may grant the holder thereof valuable rights that may expire unless the holder takes action. These securities include, but are not limited to, warrants, stock purchase rights, convertible securities, bonds and securities subject to a tender or exchange offer. You are responsible for knowing the rights and terms of all securities in your Account. ST is not obligated to notify you of any upcoming expiration or redemption dates, or to take any other action on your behalf, without specific instructions from you. However, if any such security is about to expire worthless or be redeemed for significantly less than its fair market value, and we have not received instructions from you, ST may, at its discretion, sell the security and credit your Account with the proceeds. Similarly, you are responsible for knowing about reorganizations related to securities, which you hold, including but not limited to stock splits and reverse stock splits. ST is not obligated to notify you of any such reorganization. If, due to reorganization, you sell more shares of a security than you own, or if you become otherwise exposed to risk requiring ST to take action in your Account, ST will not be responsible for any losses you incur



# Account Disclaimers

15. Cancellation Requests; Late and Corrected Reports. When you place a request to cancel an order, the cancellation of that order is not guaranteed. Your order will only be canceled if your request is received in the marketplace and matched up with your order before your order executes. Market orders are subject to immediate execution. During market hours, it is rarely possible to cancel your market order. For the best chance of ensuring that a market order is canceled, a cancellation request should be placed at least fifteen minutes prior to the opening of the market. Please do not assume that any order has been executed or canceled until you have received a transaction confirmation from ST via e-mail. Also, please be aware that ST from time to time, receives late reports from exchanges and market makers reporting the status of transactions. Accordingly, you will be subject to late reports related to orders that were previously unreported to you or reported to you as being expired, canceled, or executed. In addition, any reporting or posting errors, including errors in execution prices, will be corrected to reflect what actually occurred in the marketplace.

16. Telephone Recording. You understand and agree that for our mutual protection, ST may electronically record any of your telephone conversations conducted with ST.

17. Satisfaction of Indebtedness. You agree to satisfy, upon demand, any indebtedness, and to pay any debit balance in any of your Accounts. No Account of yours may be closed without ST first receiving all securities and/or other property for which the Account is short and all funds to pay in full for all securities and/or other property in which the Account is long. The reasonable costs and expenses of collection of any such indebtedness or debit balance, including but not limited to attorney*s fees, shall be payable by you to ST.

18. Liens. All of your securities and/or other property in any Account in which you have an interest or which at any time are in the possession or under the control of ST, shall be subject to a lien for the discharge of any and all indebtedness or any other obligation you may have to ST. All of your securities and/or other property shall be held by ST as security for the payment of any such obligation or indebtedness to ST in any Account in which you have an interest. ST may, at any time and without giving you prior notice, use and/or transfer any or all securities and/or other property in any Account in which you have an interest, without regard to ST having made any advances in connection with such securities and/or other property and without regard to the number of Accounts you may have with ST. In enforcing its lien, ST at its sole discretion may determine which securities and/or other property are to be sold or which contracts are to be closed.

19. Restrictions on Trading. You understand that ST may at any time, at their sole discretion and without prior notice to you, prohibit or restrict your ability to trade securities, or to substitute securities, in your Account.

20. ST as Agent. You understand that ST is acting as your agent unless ST notifies you, electronically or in writing, before the settlement date for the transaction that ST is acting as a dealer for its own account or as agent for some other person.

21. Receiving Your Securities. Without abrogating any of ST's rights under any other portion of this Agreement and subject to any of your indebtedness to ST, you are entitled, upon appropriate demand and upon paying any applicable fees, to receive physical delivery of fully paid for securities in your Account.

22. Confirmations. It is your responsibility to review upon first receipt, whether delivered to you in the mail, by electronic mail, or other electronic means, all confirmations of transactions. Transactions shall be binding upon you, if you do not object, either in writing or via electronic mail, within two (2) days after the confirmation is first received by you. In all cases, ST reserves the right to determine the validity of your objection to the transaction.

23. Account Statements. It is your responsibility to review upon first receipt, whether delivered electronically or in hard copy, all account statements. The information contained in your account statements (excluding transactions which are covered under Confirmations above) shall be binding upon you, if you do not object, either in writing or via electronic mail, within two (2) days after the account statement is first received by you. In all cases, ST reserves the right to determine the validity of your objection to the information contained in the account statement.

24. Liability of ST. Any liability arising out of any action or omission by ST to provide services to me hereunder shall be limited to an amount equal to the benefit which would have resulted from the transaction during the three (3) business days in which we should have acted.

25. Notices and Other Communications. Notices and other communications, delivered or mailed to the mailing address or to the electronic-mail address provided by you shall, until ST has received notice in writing of any different address, be deemed to have been personally delivered to you whether actually received or not. Notices and other communications may also be provided to you verbally. Such notices and other communications left for you on your answering machine, or otherwise, shall be deemed to have been delivered to you whether actually received or not.

26. Resolution of disputes. Any and all disputes which arise as a result of any activity having to do with your ST account shall be resolved by submission to the Board of Governors of ST. Any such dispute should be submitted by you, in writing, directly to ST with a copy to ST. Any such submission should contain a complete statement of the dispute with all relevant documentation attached. ST will then have 20 days after receipt of your submission to file a response with ST with a copy to you. After receipt of ST's response to your submission, you will have 20 days to file a reply. After receiving the submissions of both parties, the Board of Governors of ST may submit questions in writing to either or both parties to the dispute. Such questions must be responded to within 15 days of receipt. Once all submissions are received and any responses to questions posed by the Board of Governors are received, the Board of Governors will render a decision with regard to the dispute within thirty (30) days. The decision of the Board of Governors of ST is final and binding and there shall be no recourse or appeal from the decision.

27. Dividends, and Subscription Rights. ST will receive dividends on your behalf, and will credit your Account on or shortly after the payable dates. You will be notified of any subscription rights that are received by ST for your Account.

28. Proxy Materials. Neither ST nor ST will forward to you any proxy materials that are received and any other material furnished to ST by issuers whose securities you own, including annual reports, quarterly reports and notices of meetings.

29. Joint Accounts. If this is a Joint Account, each of you signing this Agreement (each a "joint owner") agrees that each joint owner shall have authority to (i) buy, sell and otherwise deal in, through ST as broker, securities and/or other property (ii) to receive confirmations, statements and communications of every kind related to the Account; (iii) to receive and to dispose of money, securities and/or other property in the Account; (iv) to make, terminate, or modify this Agreement and any other written agreement relating to the Account or waive any of the provisions of such agreements; and (v) generally to deal with ST as if each of you alone was the sole owner of the Account, all without notice to the other joint owner(s). Each of you agrees that notice to any joint owner shall be deemed to be notice to all joint owners. Each joint owner further agrees that he or she shall be jointly and severally liable for the Account. ST may follow the instructions of any of the joint owners concerning the Account and make delivery to any of the joint owners of any and all securities and/or other property in the Account, and make payments to any of the joint owners, of any or all monies in the Account as any of the joint owners may order and direct, even if such deliveries and/or payments shall be made to one of the joint owners personally. ST shall be under no obligation to inquire into the purpose of any such demand for such deliveries and/or payments. In the event of the death of any of the joint owners, the surviving joint owner(s) shall immediately give ST written notice thereof, and ST may, before or after receiving such notice, take such proceedings, require such documents, retain such portion and/or restrict transactions in the Account as it deems advisable in its sole discretion to protect itself against any tax, liability, penalty or loss under any present or future laws or otherwise. The estate of any deceased joint owner shall be liable and each survivor will be liable, jointly and severally, to ST for any debt or loss in the Account resulting from the completion of transactions initiated prior to ST's receipt of a written notice of such death or debt or loss incurred in the liquidation of the Account or the adjustment of the interests of the joint owners. Any taxes or other expense becoming a lien against or being payable out of the Account as the result of the death of any of the joint owners, or through the exercise by his or her estate or representatives of any rights in the Account, shall be chargeable against the interest of the surviving joint owner(s) as well as against the interest of the state of the deceased joint owner's estate from any liability arising under this Agreement. Unless the joint owners notify us otherwise and provide us such documentation as we may require, we may presume that it is the express intention of the joint owners to hold the Account as joint tenants with rights of survivorship. In the event of the death of any of the joint owners, the entire interest in the Account shall be vested in the surviving joint owner(s) on the same terms and conditions as theretofore held, without in any manner releasing the deceased joint owners estate from liability. We reserve the right to require written instructions from all account holders, at our discretion.

30. Credit Interest and Money Market Fund Information. ST does not offer Credit Interest or Money Market Funds.

31. Online Service. You shall use the ST online trading service (the "Service") only in accordance with this Agreement and any additional services offered through the Service in the future will only be used in accordance with this Agreement. You shall be the only authorized user of the Service under this Agreement. You shall be responsible for the confidentiality and use of your User ID and password. You understand that you shall be solely responsible for all orders entered through the Service using your User ID and password. You further understand and agree that, as a condition of using the Service to place orders and/or send information, you shall immediately notify ST if: (a) an order has been placed through the Service and you have not received an order confirmation number; (b) an order has been placed through the Service and you have not received an accurate acknowledgment (whether through hard copy, electronic, or verbal means) of the order or of its execution; (c) you have received acknowledgment (whether through hard copy, electronic, or verbal means) of an execution for an order which you did not place or any similar conflict; or (d) you become aware of any unauthorized use of your User ID and password. If you fail to notify ST immediately after any of the above conditions occur, neither ST nor any of its officers, employees, agents, affiliates or subsidiaries can or will have any responsibility or liability to you or to any other person whose claim may arise through you for any claims with respect to the handling, mishandling or loss of any order. You further agree that ST and its affiliates will not be liable for any consequential, incidental, special, or indirect damage (including lost profits, trading losses and damages) that result from inconvenience, delay or loss of the use of the Service even if ST has been advised of the possibility of such damages. You agree that ST and its affiliates will not be liable for any losses resulting from a cause over which ST or its affiliates does not have direct control, including but not limited to the failure of electronic or mechanical equipment or communication lines, telephone or other interconnect problems (e.g. if you are unable to access your online service provider), unauthorized access, theft, operator errors, severe weather, earthquakes, floods and strikes or other labor problems. ST offers you various ways of accessing your Account, including telephone and online services. You agree that should you experience any problems in reaching ST through any particular method, you will attempt to use alternate methods to communicate with us. You agree that ST may modify the Service or change the terms of this Agreement, in whole or in part, upon notice through the Service and/or in writing.



# Account Disclaimers

32. **Market Data.** You understand that each participating securities exchange or association asserts a proprietary interest in all of the market data it furnishes to the parties that disseminate the data. You also understand that neither any participating securities exchange or association nor any supplier of market data guarantees the timeliness, sequence, accuracy or completeness of market data or any other market information, or messages disseminated by any party. Neither ST nor any disseminating party shall be liable in any way, and you agree to indemnify and hold harmless ST and such disseminating party, for (a) any inaccuracy, error, or delay in, or omission of (i) any such data, information, or message or (ii) the transmission or delivery of any such data, information, or message; or (b) any loss or damage arising from or occasioned by (i) any such inaccuracy, error, delay, or omission, (ii) non-performance, or (iii) interruption of any such data, information, or message, due either to any negligent act or omission by ST or any disseminating party or to any "FORCE MAJEURE" (i.e., flood, extraordinary weather conditions, earthquake, or other act of God, fire, war, insurrection, riot, labor dispute, accident, action of government, communications, power failure or equipment or software malfunction) or any other cause beyond the reasonable control of ST or any disseminating party. You understand that the terms of this Agreement may be enforced directly against you by the securities exchanges and associations providing market data.

33. **Extraordinary Events.** ST and/or its agents will not be liable for losses caused directly or indirectly by government restriction, exchange or market rulings, suspension of trading, computer or telephone failure, war, earthquakes, strikes or any other conditions beyond ST's control.

34. **Termination of Accounts.** You may close your Account at any time by giving us written notice. ST may terminate your Account at any time and for any reason. Closing an Account will not affect rights and obligations of either party incurred prior to the date the Account is closed.

35. **Severability.** If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not affect the validity of the remaining provisions of this Agreement.

36. **Waiver.** Except as specifically permitted in this Agreement, no provision of this Agreement can be, nor be deemed to be, waived, altered, modified or amended unless agreed to in writing signed by an authorized officer of ST and approval is obtained from a representative of ST.

37. **Successors.** You hereby agree that this Agreement and all the terms hereof shall be binding upon your heirs, executors, administrators, personal representatives and assigns. This Agreement shall inure to the benefit of ST and its successors, assigns and agents. ST may assign its rights and duties under this Agreement to any of its subsidiaries or affiliates without giving you notice, or to any other entity upon prior written notice to you.

38. **Power of Attorney.** You agree and hereby irrevocably appoint ST, with full power as your true and lawful attorney-in-fact, to the full extent permitted by law, for the purpose of carrying out the provisions of this Agreement and taking any action and executing any instrument that ST deems necessary or advisable to accomplish the purposes of this Agreement.

39. **Headings.** The heading of each provision of this Agreement is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision.

40. **Entire Understanding; Assignment.** This Agreement, together with all other written agreements between you and ST related to your Account and terms contained on statements and confirmations sent to you, contains the entire understanding between you and ST concerning the subject matter of this Agreement. You may not assign your rights and obligations hereunder without first obtaining the prior written consent of both ST and ST.

BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU AFFIRM THAT YOU HAVE READ THIS AGREEMENT AND ANY REQUIRED DISCLOSURES GOVERNING THIS RELATIONSHIP. YOU AFFIRM THAT THE INFORMATION YOU HAVE PROVIDED IS ACCURATE AND YOU AGREE TO NOTIFY US OF ANY CHANGES IN THE INFORMATION PROVIDED. BY SIGNING THIS AGREEMENT ELECTRONICALLY, I ACKNOWLEDGE THAT AN ELECTRONIC SIGNATURE HAS THE SAME LEGAL EFFECT AND CAN BE ENFORCED IN THE SAME WAY AS A WRITTEN SIGNATURE UNDER PENALTY OF PERJURY AND FOR GIVING FALSE INFORMATION.

Signature _[signature]_     Date  12/20/2017



# Client Agreement

**GENERAL CLIENT AGREEMENT:** Throughout this Agreement, "I", "My", "We", and "Us" refer to the Client in any and all applicable forms (Individual, Joint, Corporate, Trust), and all others who are legally obligated on the account.

In consideration of Swiss America Securities Limited (Swiss America) accepting my account and agreeing to act as my registered representative, I agree to the following with respect to any of my accounts with Swiss America for extensions of credit and the purchase and sale of securities, options, and other property. This Agreement shall not become effective until accepted by Swiss America.

1. **MY REPRESENTATIONS.** I represent that I am of the age of majority according to the laws of my place of residence and that I am not an employee of any securities exchange or a member firm of any exchange or of a bank, trust company, insurance company, registered investment company or registered investment advisory firm, unless I have notified Swiss America otherwise. If I become so employed, I will notify Swiss America promptly. I represent that no persons other than those signing this agreement have an interest or beneficial ownership in my account and that the securities in my account from time to time are solely for my benefit. I represent that the financial information and investment objectives provided to Swiss America are accurate in all material respects and that I will promptly inform Swiss America of any material changes in my financial or other circumstances, including investment objectives.

2. **DEFINITION OF "PROPERTY".** In this agreement the word "property" means securities of all lands, certificates of deposit, commercial paper, monies, cash deposits, options commodities and contracts for the future delivery of, or otherwise relating to commodities or securities and all other property usually and customarily dealt with by brokerage firms.

3. **ORDERS, EXECUTIONS, DELIVERIES, SETTLEMENTS, ORAL AND ELECTRONIC AUTHORIZATIONS.** In giving orders to sell, I will inform Swiss America which sales are "short" and which are "long". A 'short sale' means any sale of a security not owned by the seller or any sale that is consummated by delivery of a borrowed security. If the security is not in Swiss America's possession at the time of the contract for sale, I will deliver it to Swiss America by settlement date. In case of non-delivery of a security, Swiss America is authorized to purchase the security to cover my position and charge any loss, commissions and fees to my account(s). If Swiss America fails to receive payment for securities purchased Swiss America may without prior demand or notice, sell all securities and other property held by Swiss America in any of my accounts and charge any resulting loss to my accounts. Unless otherwise agreed, Swiss America will in its sole discretion and without prior notice, execute the order on the over-the-counter market or on any exchange in any location, including a foreign exchange where such security is traded, either on a principal or agency basis. In consideration of Swiss America acting in accordance with any facsimile or electronic mail (e-mail) instructions received from me or any authorized signatories of my account I acknowledge and agree that if any instructions received by Swiss America purport or appear on their face to have been duly signed by me or an authorized signatory of my account or to have been sent via email by me or my authorized agent, such instruction(s) may be treated by Swiss America as though they had been duly signed by me or an authorized signatory on the account with the authority for and on behalf of me notwithstanding that it may be later established that such instructions were not so authorized. I hereby agree to indemnify and hold harmless Swiss America and any of its correspondents, affiliates or agents from or against any or all liability, obligations, losses, damages, penalties, judgments, suits, costs, expenses, claims, or disbursements of any kind which may be imposed upon, incurred, or served against Swiss America, its affiliates, or agents by reason of Swiss America acting on such instructions. I irrevocably authorize Swiss America to debit my account in respect of all amounts chargeable as a result of Swiss America receiving and acting on instructions in accordance with this Agreement. In the case of sensitive instructions being sent electronically, whether by facsimile or e-mail, I understand that mechanical and other technical difficulties outside of Swiss America's control may prevent my instructions from being received and acted upon, and that I will indemnify and hold harmless Swiss America from and against all action, proceedings, claims, demands, costs, charges, liabilities, and expenses whatsoever arising in consequence of Swiss America's failure to act on such instruction.

4. **OPTION POSITIONS-MARGIN DEPOSITS.** I agree not to buy or sell any equity, debt, foreign currency or index put or call options without having read and fully understood the terms, conditions, and risks, as set forth in the Swiss America Risk Disclosure Form and applicable supplements that Swiss America may provide in the future. Clients' short option positions can be assigned at any time, including the day written, and are assigned on an automated random basis. For purposes of entering into option positions, Swiss America may treat my account as a margin account. Swiss America may pledge, re-pledge, hypothecate or re-hypothecate my property in Swiss America's possession or control based on the terms of the margin agreement herein. I agree not to exceed the position or exercise limits set by the options exchange either acting alone or with others.

5. **NOTICE TO EXERCISE OPTIONS.** If I purchase any listed option, I will notify Swiss America of my intention to exercise such option no later than two hours before the expiration of the option (one hour in the case of an over-the-counter option). Failure to give such notice constitutes abandonment of the option in which event it may, if profitable, be exercised for my account, except as required by the Options Clearing Corporation Rules. Swiss America has no obligation to exercise any option absent my specific instructions. If, due to commissions' expenses, exercising an option would not profit my account, the option may be permitted to expire or, at Swiss America's discretion, sold or acquired by Swiss America for some equitable payment to me based on Swiss America's expenses and risk, without liability or responsibility on Swiss America's part to me.

6. **IMPARTIAL LOTTERY ALLOCATION SYSTEM; CALL FEATURES.** When Swiss America holds on my behalf bonds or preferred stocks in street or bearer form that are callable in part. I agree to participate in the impartial lottery allocation of called securities in accordance with any given Stock Exchange's rules. When the call is favorable, no allocation will be made to an account in which either Swiss America or Swiss America's officers or employees, have a financial interest until all other Clients' positions in such securities are satisfied on an impartial lottery basis. For debt securities, there may exist call or other redemption features in addition to those disclosed on the trade confirmation. Debt securities subject to call or redemption features, such as sinking funds, may be redeemed in whole or in part before maturity or before the first scheduled call dates. The existence of sinking funds, or other special mandatory redemption features, may not be disclosed on a trade confirmation. It is my obligation to review all prospectuses and altering statements I may receive, and to understand risks of extraordinary calls or early redemptions, which may affect yield. Swiss America is not obligated to notify me of published calls or notices relating to calls or redemptions, nor will Swiss America tender securities on my behalf.

7. **RESTRICTIONS ON TRADING; TERMINATION.** Swiss America may in its sole discretion prohibit or restrict trading or substitution of securities in any of my accounts and refuse to enter into any transaction with me. Swiss America has the right to terminate my accounts (including multiple owner accounts) at any time by notice to me.

8. **TRANSFER OF FUNDS.** By giving Swiss America instructions to transfer funds from my accounts to a bank or other entity, I agree to provide an accurate account number designating the account to receive such funds. I indemnify and hold Swiss America harmless from and against any liabilities arising from my providing any inaccurate account information.

9. **TRANSFER OF EXCESS FUNDS; EXCHANGE RATE FLUCTUATIONS.** Swiss America may transfer excess funds (also called "free credit balances") between my accounts (including commodity accounts) for any reason. If Swiss America effects transactions for me requiring foreign currency, my accounts will be charged loss and credited profit resulting from exchange rate fluctuations.

10. **PRINCIPAL, INTEREST AND DIVIDEND PAYMENTS.** With respect to principal and interest payments on debt instruments, Swiss America may credit my accounts with principal and interest due on the payment dates and is entitled to recover payments from me if the same are not received by Swiss America from the trustee or payment agent. Swiss America may redeem my money market or cash deposit investment without notice to satisfy debits arising in my accounts. Interest will not be paid on credit balances in my account(s) unless Swiss America specifically agrees in writing. Swiss America is not required to remit interest or dividends to me on a daily basis. 11. **FEES AND CHARGES.** Swiss America may impose various service charges and other fees relating to my accounts as well as charge commissions and other fees for execution of transactions to buy and sell securities, options or other property. Such charges, commissions and fees may be changed from time to time without notice. Accounts that produce insufficient commission revenue for any calendar year may be subject to administrative fees, with advance notice. If I purchase securities on a cash basis and plan to pay by settlement date, I will pay a late charge. Any late charges Swiss America imposes will be at the maximum interest rate set forth in Swiss America's most current fee schedule and may be charged from the trade date to the payment date. I agree to indemnify Swiss America and its counterparties for legal fees and expenses directly related to the structuring, support and/or defense of my account or the assets contained therein, and for fees and expenses related to any regulatory enquiry, legal action, litigation, or dispute, whether such situations occur or are anticipated. Swiss America shall be entitled to charge my account for such fees without further notice. Such fees may include, but are not limited to, seeking a suitable counsel's opinion in advance of a transaction; asking counsel for a legal opinion in respect of restricted stock; or costs incurred in order to defend Swiss America or the Account as a result of an action ordered by me including buying or selling a security. Swiss America will provide copies of all invoices on request. You agree that in instances where I am proposing to deliver out assets held within the Account and Swiss America is aware that action by regulatory authorities or litigation has been entered into or may reasonably be anticipated as a result of a transaction occurring in my Account(s), such that the amount remaining in the Account after such delivery may be insufficient to cover Swiss America's reasonably anticipated costs (including legal fees) then Swiss America shall be entitled to withhold a reasonable sum to cover such costs. Such a withholding by Swiss America shall be for a period of time as is reasonably necessary to resolve the regulatory or litigation issues and Swiss America may place any amounts garnered from me in cash and into a separate account, and shall pay me the remaining balance after the noted issues are resolved. Furthermore, I agree that where such anticipated or actual actions relate to a specific asset in the Account, that asset may not be transferred out of the Account until the matter is resolved. I understand that the daily debit balance in my Account shall be charged with interest at a rate published by Swiss America from time to time or agreed between me and Swiss America, and the "Cash" accounts incurring debits will be charged a higher rate of interest. The publis hed rate is subject to change without prior notification.

12. **CONFLICTS OF INTEREST.** My account may be invested in investment products or services from which Swiss America or Swiss America's affiliates derive compensation and which Swiss America may have an incentive to use instead of other similar investments. I understand that Swiss America and Swiss America's affiliates act in various capacities with respect to such products, services, and funds and may receive fees for doing so. Swiss America may compensate Swiss America's employees and agents who refer my accounts to the firm. The sale of certain investment products and funds may result in an additional payment to the selling registered representative. Completeness of communication by Internet. Accordingly I acknowledge that Swiss America shall not be liable for: (i) any loss or dam age suffered by me and (ii) without limiting the generality of the foregoing, any loss of profits, revenues, or contracts, or any indirect, consequential, incidental damages howsoever caused or arising, incurred by me or any other, related to the transmission of documents via the Internet.

13. **ACCURACY OF REPORTS; COMMUNICATIONS.** Confirmation of orders and statements of my accounts shall be conclusive if not objected to in writing within ten days after mailing. If I fail to receive a confirmation within ten days from the date of a transaction in my account, I will notify Swiss America immediately in writing. Until Swiss America receives written notice from me of a different address, communications mailed to me at the address specified by me shall be deemed to have been personally delivered to me and I waive all claims resulting from failure to receive such communications. ONLINE STATEMENT ACCESS. By choosing the Internet delivery option and using Swiss America Online Statement Access to view my Swiss America Client Statement, I agree to the following: - that it is my sole responsibility to access and review my account on a regular basis, and that I agree to do so at least once per month. - that this service takes the place of having monthly statements mailed to me and that at anytime I can choose to cancel my online access in favor of mailed statements; that I will be deemed to have accessed and reviewed my account on a monthly basis. If for any reason I am unable to do so, I will notify Swiss America immediately so that a statement can be delivered by other means. I accept that changes, delays, and reconciliation adjustments in my Swiss America Client Statement may occur due to the recent nature of the information available via Swiss America's Online Statement Access, and I acknowledge that statements dated as of each month end (as produced 3 or more business days after each month end) shall override any interim statements to the extent of any

inconsistencies. I acknowledge that the use of the Internet is for our mutual benefit; the service provided shall not be used to impose liability for consequential damages or in any way increase the liability of either party in the event of a failure to perform its obligations beyond what it would have incurred if these documents had not been delivered via the Internet. Swiss America has sought to ensure that its electronic communications are secure according to industry standards. However, Swiss America cannot guarantee the delivery, security, timeliness, confidentiality, and compatibility or completeness of communication by Internet. Accordingly I acknowledge that Swiss America shall not be liable for: (i) any loss or damage suffered by me and (ii) without limiting the generality of the foregoing, any loss of profits, revenues, or contracts, or any indirect, consequential, incidental damages howsoever caused o r arising, incurred by me or any other, related to the transmission of documents via the Internet.



# Client Agreement

14. **SECURITY INTEREST.** As security for the payment or performance of all liabilities or indebtedness to Swiss America or any of i ts affiliates now or hereafter existing (collectively, the 'Swiss America Entities') presently outstanding or to be incurred under this or any other agreement or otherwise, I grant the Swiss America Entities a security interest in any and all property be longing to me or in which I may have an interest, held by any Swiss America Entity or carried in any of my accounts with any Swiss America Entity including individual, multiple owner or commodity accounts (collectively, the 'collateral'). The collateral shall be subject to such security interest as collateral to discharge my obligations to the Swiss America Entities, wherever or however arising and without regard to whether or not any Swiss America Entity has made loans with respect to such collateral. The Swiss America Entities are authorized to sell and/or purchase any and all property in any of my accounts or to liquidate open options, commodity futures or forward contracts or redeem money market or cash deposit investments in any of my accounts without notice in order to satisfy such obligations. In enforcing Swiss America's security interest the Swiss America Entities shall have the discretion to determine the amount, order and manner of property to be sold and shall have all the rights and remedies available. Without Swiss America's prior written consent, I will not cause or allow any of the collateral held in my accounts, whether now owned or hereafter acquired, to be or become subject to liens, security interest, mortgages or encumbrances of any nature other than Swiss America's security interest.

15. **LIQUIDATON OF COLLATERAL OR ACCOUNT.** Swiss America may sell property in my accounts and cancel open orders for the purchase or sale of property without notice in the event of my death, or whenever, in Swiss America's discretion, it is necessary for Swiss America's protection or in the event I fail to make payments on loan balances as set forth in the terms of this Agreement related to Margin Extension. In such events Swiss America also may borrow or buy-in all property required to make delivery against any sale, including a short sale, effected for me. Such sale or purchase may be public or private and may be made without advertising or notice to me and in such manner as Swiss America determines. No demands, calls, tenders or notices by Swiss America shall invalidate my waiver. At any such sale, Swiss America may purchase the property free of any rights of redemption and I shall be liable for any remaining deficiency on my accounts.

16. **ANTI-MONEY LAUNDERING & ANTI-TERRORISM PROVISIONS.** To comply with various domestic & international money laundering terrorism prevention initiatives, Swiss America may request identification, documents, or other information from me or other sources. Swiss America may, if legally bound, share this information with regulators or the government as necessary. Until required information or documentation is p rovided, Swiss America may not be able to open an account or effect any transactions in an existing account for me.

17. **POLITICALLY EXPOSED PERSONS.** If applicable I have disclosed to Swiss America my identity as and my relationships and connections to significant international political officials. This includes my immediate family, close associates, and any corporation, business, or other entity that has been formed by, or for the benefit of a significant international political official.

18. **CREDIT AND BUSINESS CONDUCT INFORMATION AND INVESTIGATION.** I authorize Swiss America, at its discretion, to obtain reports concerning my credit standing and business conduct. I warrant and agree that no funds presently invested or to be invested in the future with Swiss America, are the direct or indirect proceeds of any criminal activity. I understand and agree that for our mutual protection Swiss America may electronically record any of my telephone conversations. I acknowledge that Swiss America does not provide legal or tax advice and agree that, to the extent I deem necessary, I will consult with qualified professionals in my own jurisdiction prior to utilizing Swiss America's account or implementing any financial plan.

19. **JOINT ACCOUNTS; DESIGNATION OF TENANCY.** If this is a Joint Account, each of us shall have the authority on behalf of the account and generally to deal with Swiss America as if each of us alone were the account owner, without notice to all account owners. Notice to any account owner is deemed notice to all account owners. Each account owner shall be jointly and severally liable for this account. Swiss America is authorized, in its discretion, to require joint action by the joint tenants with respect to any matter concerning the joint account, including giving or canceling of orders and withdrawal or transfer of monies, securities or other property in the event of the death of any of us, the survivor(s) shall immediately give Swiss America written notice, and Swiss America may, before or after receiving notice, take actions, require papers, retain a portion of the account and/or restrict transactions in the acc ount as Swiss America deems advisable to protect Swiss America against any liability, penalty or loss under any present or future laws or otherwise. It is our express intention to create an estate or account as joint tenants with rights of survivorship and not as tenants- in-common; unless a separate Tenancy-in-Common form is properly completed and submitted to Swiss America. In the event of the death of any of us, the entire interest in the joint account shall be vested in the Survivor(s) on the same terms and conditions as heretofore held, without releasing the decedent's estate from liability unless properly designated as a Tenancy- In-Common.

20. **GRIEVANCES.** Any question or difference which may arise concerning the construction meaning or effect of this Agreement or concerning the rights and liabilities of the parties hereunder or any other matter arising out of or in connection with this Agreement shall be referred to a single arbitrator in the Commonwealth of The Bahamas, to be agreed between the partie s- provided however that this provision will not be construed to oust the jurisdiction of the Courts of the Commonwealth of The Bahamas in relation to proprietary rights of Customers in respect of Accounts. Failing such agreement within thirty days of the request by one party to the other that a matter be referred to arbitration, such reference shall be to an arbitrator appointed by the senior partner of a major accounting firm in the Commonwealth of The Bahamas. The decision of such arbitrator shall be final and binding upon the parties.

21. **GOVERNING LAW AND APPLICABLE REGULATIONS.** This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of The Bahamas, and the customer hereby irrevocably agrees that any legal suit, action or proceeding brought by him against Swiss America shall be brought in the cou rts of the Commonwealth of The Bahamas. The customer hereby accepts and irrevocably submits to the jurisdiction of the said courts and acknowledges their competence and agrees to be bound by any judgment there of, provided that nothing herein shall limit Swiss America's right to bring proceedings against the customer elsewhere. Cross Jurisdiction Accounts. In some cases customers of Swiss America, may elect to use the services of an account advisor employed by a Swiss America affiliate in another jurisdiction. In those cases, the following terms will apply: the customer will be a customer of Swiss America; the Swiss America affiliate and the designated account advisor will serve as sub-managers to my account; my account will remain legally domiciled in and governed and construed by the laws of the Commonwealth of The Bahamas. So long as my account is sub- managed by the Swiss America affiliate, my account and its management shall be subject to relevant regulations in both the Commonwealth of The Bahamas and the Jurisdiction of the Swiss America affiliat e.

22. **BINDING EFFECT; ASSIGNMENT.** This Agreement shall bind my heirs, executors successors, administrators, assigns, committee and conservators ('successors'). In the event of my death, incompetency, or disability, whether or not successors of my estate and property shall have qualified or been appointed, Swiss America may continue to operate as though I were alive and competent and liquidate my account as described in Clause 15 without notice to or demand upon my successors. This Agreement shall inure to the benefit of Swiss America's assigns and successors, by merger, consolidation or otherwise, and Swiss America may transfer my accounts to Swiss America's successors and assigns at Swiss America's discretion.

23. **WAIVER NOT IMPLIED.** Swiss America's failure to insist upon strict compliance with this Agreement or with any of its terms or any continued course of such conduct on Swiss America's part shall not constitute or be considered a waiver of any of Swiss America's rights.

24. **NO ORAL MODIFICATION; EFFECT ON PRIOR AGREEMENTS.** No modification of this Agreement shall be effective unless in writing and executed by Swiss America and me. The signing of this Agreement supersedes any prior agreement made with Swiss America or any of Swiss America's predecessors or assignors. To the extent this Agreement is inconsistent with any other agreement governing my account the provisions of this Agreement shall govern.

25. **CUSTODY OF CUSTOMER ASSETS.** Unless I otherwise direct in writing, any securities held or carried by Swiss America for or on my account may at Swiss America's discretion be kept at any of the places where Swiss America has a custodian and may be registered in the name of Swiss America or its nominee. In particular and without prejudice to Swiss America's right to use of its brokers or nominees, Swiss America may at its discretion contract with third party service providers to carry out and discharge securities execution, custody, clearing and administrative functions for and on behalf of Swiss America. Swiss America (or any of its associated companies) will from time to time act as principal, broker, underwriter and/or agent with regard to cash or securities transactions that may or may-not be executed on listed exchanges. Swiss America and/or its associated companies and/or its/their officers, directors, employees or other Customers may have positions , or opposite positions, in investments held or purchased or sold for my Account. Notwithstanding the Margin related provisions of this Agreement and without prejudice to the right of Indemnity or any lien o r right of Swiss America to deal with securities in a Margin Account or other accounts pursuant to the provisions of Clause 9 of this Agreement, all securities in the Customer's Account shall be held by Swiss America as trustee on b ehalf of, to and for the order of that Customer. Subject to the margin provisions of this Agreement (if applicable) and the rights of lien which may arise in favor of Swiss America under this Agreement, Swiss America declares that the Customer will enjoy a beneficial ownership in (a) securities purchased on its behalf and (b) any free cash balances held by Swiss America for the account of the Customer and these assets are not to be treated as general assets of Swiss America. This is so even though securities purchased by Swiss America on the instruction of the Customer may be held in fungible form and free cash balance s may not be held in a separate bank account established specifically for the Customer. FOREIGN SECURITIES. If my account contains securities issued by a foreign issuer (foreign to the Commonwealth of The Bahamas), I acknowledge that Swiss America is acting solely as custodian with respect to such securities and has no obligation to provide me any proxies, annual statements or other disclosures from the issuer or to facilitate my participation in any rights offer or other transaction that the issuer conducts with or offers to holders of its securities. DEPOSIT OF PHYSICAL OR RESTRICTED SECURITIES. If a security is deposited in physical form, subsequen t withdrawals may be limited to physical form only, and may be required to be put back into the same name as it was originally received. At Swiss America's sole discretion such securities may be allowed to be transferred, but may be charged the higher of 1 .5% or $500 per transfer. If Swiss America facilitates the lifting of a restriction on a security, Swiss America reserves the right to charge a fee of up to 1.5% of market value if that security is subsequently transferred out of my account in any form.

26. **NOTICES.** Swiss America will endeavor to notify me in advance of any calls in my Margin Account and to provide various other notices relating to activities in my accounts. However, Swiss America reserves the right to take any appropriate action for my accounts permitted by this Agreement and/or required by law or regulation without prior notice. I acknowledge and consent that Swiss America may, from time to time, monitor and/or electronically record conversations between me/us and Swiss America's employees or agents for quality assurance, future verification, employee training or the mutual protection of both of us. Swiss America may offer such recordings as evidence in any arbitration or other proceedings relating this Agreement.

27. **FORCE MAJEURE.** Swiss America's performance under this Agreement is excused in the event that a trade is prevented, delaye d, or otherwise made impossible, due to an unforeseeable business-disrupting event or occurrence beyond Swiss America's reasonable control, including, but not limited to: Acts of God, fire, epidemic, bi ohazard, or terrorism: civil commotion; acts of government or military; shortages or failures in transportation, telecommunications, labor, or energy, computer failures, hacking, or viruses; and natural or man made disa sters resulting in destructions of records.

28. **MARGIN LOANS.** From time to time Swiss America may, at its discretion, make loans to me to purchase, carry, or trade in securities ("Margins Loans"). Margin Loans will generally be made in a Margin Accounts. Swiss America will determine, in its discretion, the minimum and maximum amounts of any particular loan, regardless of the amount of collateral delivered to Swiss America and Swiss America may change such minimum and maximum amounts from time to time.

29. **PAYMENT OF LOANS ON DEMAND.** I will pay ON DEMAND any balance owing on my account(s), including interest, commissions, lat e charges and any collection costs, including attorneys fees Swiss America may incur. Swiss America may demand full payment of the balance due in my account(s) plus interest charges at Swiss America's sole option, at any time, whether or not demand is made for Swiss America's protection. Loans are not for any specific term or duration but are due and payable at Swiss America's discretion upon demand for payment. Swiss America may apply payments received for my account(s), including interest, dividends, premiums, principal or other payments, to balance(s) due in my account(s).

30. **MAINTENANCE OF COLLATERAL** The securities or other instr uments ("securities") in my Margin Account may be carried as general loans and may be pledged, hypothecated o r otherwise used by Swiss America in a financing transaction and pledged separately or in common with other properties. I may not be entitled to vote the securities in my Margin Account during a period in which they have been pledged by Swiss America. In addition, while I will receive an amount equal to any dividends or other distributions in respect of such securities, the actual dividend or other distributions may be made to the entity to which the securities have been pledged. Swiss America's pledge may secure Swiss America's indebtedness equal to or greater than the amount I owe Swiss America. I will deposit additional collateral as Swiss America may in its discretion require from time to time, in the form of cash or securities, in accordance with any rules and regulations under whose jurisdiction Swiss America is subject and Swiss America's own minimum house margin maintenance requirements.

31. **INTEREST CHARGES AND PAYMENTS.** I will pay interest, to the extent not prohibited by the laws of the Commonwealth of The Bahamas, upon amounts advanced and balances due in my account (s) in accordance with Swiss America's most current fee schedule. Interest on all debit balances shall be payable ON DEMAND and in the absence of demand, interest shall be due on the first business day of each interest period. My daily net debit balance includes any accrued interest. I have not paid from prior interest periods. Thus, to the extent permitted by law, Swiss America may charge me compound interest. Swiss America may, in Swiss America's discretion, not deem any cheque or other remittance to constitute payment until paid by the drawee and the funds representing such payments are available to Swiss America. BY

32. **AUTHORIZATION TO CHARGE CREDIT CARD.** I authorize Swiss America to change my credit card on file any unsecured debit balance in my account.

SIGNING THIS CUSTOMER AGREEMENT BELOW, YOU AFFIRM THAT YOU HAVE READ THIS CUSTOMER AGREEMENT AND ANY REQUIRED DISCLOSURES GOVERNING THIS RELATIONSHIP. YOU AFFIRM THAT THE INFORMATION YOU HAVE PROVIDED IS ACCURATE AND YOU AGREE TO NOTIFY US OF ANY CHANGES IN THE INFORMATION PROVIDED.

| Signature | Date |
|---|---|
| _(signature)_ | 04/19/2017 |

 **SureTrader** Unsolicited Acknowledgement Agreement

To: Swiss America Securities Ltd: i. I affirm that in no way did Swiss America Securities, Ltd solicit me to become a client. I initiated contact with Swiss America Securities, Ltd on an unsolicited basis. ii. I understand that Swiss America Securities, Ltd does not target or intend their services for United States Citizens or residents. I acted on my own behalf in my choice to open an account, transact business and use the services of Swiss America Securities, Ltd. iii. I acknowledge as a United States Citizen or resident that I have reporting obligations to the United States Government of income/loss, money transfers to an offshore brokerage firm, or ownership or control of a foreign entity. iv. I have read all the disclaimers on Swiss America Securities, Ltd.'s websites and account documentation and agree to the contents and terms of those disclaimers. v. I understand that Swiss America Securities, Ltd does not provide legal or tax advice and indemnify Swiss America Securities, Ltd for any issues that may arise in regards to reporting requirements. vi. I attest that I have independently sought professional legal and tax advice before opening an account with Swiss America Securities Ltd

Signature   Date  12/20/2017

# SureTrader

## Trading Summary

| | | |
|---|---|---|
| Do you use Market Data solely for your personal, non-business use? | | ●Yes ○No |
| Do you receive Market Data for your business or any other entity? | | ○Yes ●No |
| Are you engaged to provide investment advice to any individual or entity? | | ○Yes ●No |
| Are you engaged as an asset manager? | | ○Yes ●No |

## LETTER OF AUTHORIZATION

I authorize Swiss America Securities, Ltd. to debit my account for Quotes Fees as follows:

Your software account starts the day we send your password. If your software account starts within the last 3 days of the trading month you will receive the software for free. Your trades only count when they are settled. All data feed cancellation requests must be made in writing, no later than 5 trading days before the last trading day of the month, or you will be billed for the following month. Your account can remain open for phone trading. All data feed cancellation requests must be made in writing, no later than 5 trading days before the last trading day of the month, or you will be billed for the following month. If you do not meet the monthly requirements, there will be a monthly charge on your account in the amount listed below.

**Please choose your trading platform:**

Learn more about the platforms https://suretrader.com/Fee_Commissions.aspx

○ SURETRADER WEB  ● SURETRADER PRO

☑ Add iSure Trader Mobile Access (There is an App for IOS and Android Devices) for $25.00

**Data: Exchange Fee (Level 1)**

| | Cost | Agree | |
|---|---|---|---|
| Nasdaq (level 1) | $12 | ● Yes | ○ No |
| NYSE, AMEX (level 1) | $13 | ● Yes | ○ No |
| News Headline | $14 | ○ Yes | ● No |
| Pink Sheet (level 1) | $15 | ○ Yes | ● No |
| OPRA Options (level 1) | $15 | ○ Yes | ● No |
| E-Mini Futures (level 1) | $15 | ○ Yes | ● No |
| TSX Canadian (level 1) | $15 | ○ Yes | ● No |

**Data: Market Depth Fee (Level 2)**
*Additional $40 plus monthly fees below*

| | Cost | Agree | |
|---|---|---|---|
| Regional Quotes (Basic level 2) | $12 | ● Yes | ○ No |
| Nasdaq Total View (Book Depth) | $13 | ● Yes | ○ No |
| Pink Sheet (level 2) | $14 | ○ Yes | ● No |
| OPRA Options (level 2) | $15 | ○ Yes | ● No |
| News Body | $15 | ○ Yes | ● No |

**Monthly total: $124**

BY SIGNING THIS LETTER OF AUTHORIZATION BELOW, YOU AFFIRM THAT YOU HAVE READ THIS LETTER OF AUTHORIZATION AND ANY REQUIRED DISCLOSURES GOVERNING THIS RELATIONSHIP. YOU AFFIRM THAT THE INFORMATION YOU HAVE PROVIDED IS ACCURATE

AND YOU AGREE TO NOTIFY US OF ANY CHANGES IN THE INFORMATION PROVIDED.

Signature                                                                                      Date  04/19/2017

All brokerage services through Swiss America Securities, Ltd.



# Risk Disclosure

The following is a synopsis of standard industry practice and knowledge, and is intended to create general awareness on the part of industry participants. The concepts stated here are not necessarily representative of any specific policy or protocol of Swiss America Securities Ltd.

Investing in a speculative investment has certain inherent risks of loss. You should be aware of these risks and consider carefully if you want and can accept them. If in doubt, please contact one of our Registered Professionals to have these risks explained in detail and to discuss if the contemplated investment is suited for you in view of your goals and/or profile. Risks and possible profits go hand in hand: the higher the possible profit, the higher the risk.

Risks associated with Mutual Funds and Structured Instruments, Guarantees:

Please see the respective offering memorandum or fact sheet for the risks associated with the specific Mutual Fund or Structured Instrument and for any guarantees and information on the grantor

Investment Risk can take many forms. The following serves to indicate some of the most prominent forms. (explained with an investment in a company's shares)

- Natural Risk: The Company can be negatively affected by an earthquake or drought and, consequently, the price of its shares may drop.
- Political Risks: War or a political crisis may undermine the trust in a country or its economy, causing the revenues of the company to drop. The price of the shares will decline likewise.
- Economic or country risk: The economic situation of the country where the company is located may present high unemployment or high interest rates. This will negatively affect the financial results of the company.
- Exchange rate risk: The exchange rate of the currency of the country where the company operates can diminish in relation to the investor's home currency and, even all other things being normal, the value of the shares and their dividends will be reduced.
- Industry risk: The industry in which the company operates can be negatively affected for inherent reasons. For example, the tourism industry can be affected by terrorism or the aviation industry can be affected by high fuel prices.
- Management risks: Price of shares can drop simply because the management of the company is indecisive, and the competition is taking advantage of this.
- Market Risk: In a down market, generally, all stocks decline.
- Liquidity risk: There is not much demand for or offers of the shares of the company, therefore when you want to buy or sell them, you may have to wait before being able to do so. This risk is negligible when trading stocks of large, actively traded companies on regulated international exchanges.
- Time risk: The longer the maturity of an investment, the higher the risk.
- Margin Risk: When trading securities on margin, the risk of loss will always be greater than trading those same securities on a cash account. Due to its inherent nature, futures trading are always considered margined. You can only sell shares short or write options in a margin account. When you purchase securities, you may borrow part of the purchase price from your brokerage firm, their clearing broker or their clearing firm; this is called "trading on margin". The securities purchased are collateral for the firm that has made the loan to you. If the securities in your account decline in value, so does the value of the collateral supporting your loan and, as a result, the lender can take action or ask your brokerage firm to take action. Such action may include issuing a margin call and/or selling securities or other assets in any of your account held with the clearing broker or brokerage firm, in order to maintain the required equity in the account.

There are several risks inherent in trading securities on margin. These risks include the following:

- You can lose more funds than you deposit in the margin account. A decline in the value of securities you have purchased on margin may require you to deposit additional funds to avoid the forced sale of those securities or other assets in your account(s). The firm that has made the loan may force the sale of securities or other assets in your account (s). If the equity in your account falls below the stated maintenance requirements, the firm can sell the securities or any other assets in your account(s) to cover the margin deficit. You will be responsible for any short-fall in the account after such sale!
- The firm can sell your securities or any other assets without contacting you. Most firms will attempt to notify their customers of margin calls, but they are not required to do so before selling your securities or other assets. Even if the firm has contacted a client and a specific date is provided by which the customer may meet the margin call, the firm still can take the necessary steps to protect its interests, including immediately selling the securities without notice.
- You are not entitled to choose which securities or assets in your account(s) are liquidated or sold to meet a margin call.
- The firm (or when trading futures the exchange) can increase maintenance margins at any time without prior written notice. These changes often take effect immediately and may result in the issuance of a margin call.
- You are not entitled to an extension of time on a margin call. However, an extension of time may be granted in certain conditions.

Futures/ Forex/ Options/ Day Trading/ CFDs - Risk:

There is a potential for large profits in Futures/ Forex/ Options/ Day Trading/ CFDs. However, Futures/ Forex/ Options/ Day Trading/ CFDs can also lead to large and immediate financial loss. Therefore, Futures/ Forex/ Options/ Day Trading/ CFDs is generally not suited to individuals of limited resources, limited investment or trading experience and low risk tolerance. You should be prepared to lose all of the funds that you invest in Futures/ Forex/ Options/ Day Trading/ CFDs. Certain evidence indicates that a small investment will significantly impair the ability of making profits in Futures/ Forex/ Options/ Day Trading/ CFDs. Of course, a large investment in no way will guarantee success.

Futures/ Forex/ Options/ Day Trading/ CFDs require knowledge of the securities markets and a thorough understanding of the specific product. You will be competing with professional, licensed traders, employed by securities firms.

Futures/ Forex/ Options/ Day Trading/ CFDs requires knowledge of a given firm's operations. You should be familiar with securities firm's business practices, including the operation of the firm's order execution system and procedures.

Under certain market conditions, it might be difficult or impossible to liquidate a position quickly at a reasonable price. The more volatile a security is, the greater the likelihood that such problems may be encountered in execution of a transaction. In addition to normal market risks, you may experience losses due to system failures. If you are trading Futures/ Forex/ Options/ Day Trading/ CFDs electronically, these failures include computer and communications failures. Futures/ Forex/ Options/ Day Trading/ CFDs will generate substantial commissions, even if the cost per trade is low. Futures/ Forex/ Options/ Day Trading/ CFDs involve aggressive trading and you will pay commissions for each trade. The total daily commissions will reduce your earnings or add to your losses. Futures/ Forex/ Options/ Day Trading/ CFDs on Margin or Short Selling may result in losses beyond your initial investment.

Bond/ Debt Instruments Risk:

Most of the times, Bonds have clearly defined risks as they normally have a declared risk rating from a major service provider (Incl. S&P, Moody, Fitch).

---

I HEREBY CERTIFY THAT I HAVE REVIEWED THE INFORMATION CONTAINED IN THIS DOCUMENT AND I HAVE AN UNDERSTANDING OF THE VARIOUS RISKS INHERENT IN PARTICIPATION IN THE INTERNATIONAL SECURITES INDUSTRY.

Signature                                                                                      Date  04/19/2017

All brokerage services through Swiss America Securities, Ltd.

Confidential pursuant to Securities Exchange Act s.24(d).                                                                      SEC-SCB-P-0010401



# Identity Declaration Form

This form must be completed for each Beneficial Owner, Corporate Officer, and Corporate Director & Signatory of a SWISS AMERICA SECURITIES LTD. account. This includes individuals named on Powers of Attorney and Trading Authorizations. The information requested is required under International Anti-Money Laundering & Anti-Terrorism regulations. One form is to be completed for each relevant individual.

## Tell us about yourself

| Field | Value |
|---|---|
| First Name | Christopher |
| Middle Name | Miguel |
| Last Name | Penalver |
| Street Address | ▓▓▓ |
| Street Address 2 | ▓▓▓ |
| City | Plano |
| State/Province | Texas |
| Postal Code | 75025 |
| Country | United States |
| Phone Number | ▓▓▓ |
| Mobile Number | ▓▓▓ |
| Work Phone | ▓▓▓ |
| Email | ▓▓▓@gmail.com |
| Citizenship | United States |
| Date of Birth | ▓▓▓ 1983 |

## Tell us about your employment status

| Field | Value |
|---|---|
| Employment Type | Unemployed |
| Occupation | |
| Employer Name | |
| Nature of Business | |
| Street Address | |
| Street Address 2 | |
| City | |
| State/Province | |
| Postal Code | |
| Country | |

## Proof of Identity

**First Identification**

| Field | Value |
|---|---|
| ID Type | 1 |
| ID Number | ▓▓6794   Exp. Date 12/20/2017 |
| Country of Issuance | USA |

**Second Identification**

| Field | Value |
|---|---|
| ID Type | 2 |
| ID Number | ▓▓5276   Exp. Date 10/07/2017 |
| Country of Issuance | USA |

## Proof of Residency

**First Residency**

| Field | Value |
|---|---|
| ID Type | 1 |
| Exp. Date | 04/06/2017 |
| Country of Issuance | USA |

**Second Residency**

| Field | Value |
|---|---|
| ID Type | |
| Exp. Date | |
| Country of Issuance | |

I hereby certify & declare that the information provided by me in this document is true and correct, and I agree to advise Swiss America Securities, Ltd. immediately of any changes.

Signature: *[signature]*   Date: 12/20/2017



Confidential pursuant to Securities Exchange Act s.24(d).  SEC-SCB-P-0010403



Confidential pursuant to Securities Exchange Act s.24(d). SEC-SCB-P-0010404



**DISCOUNT POWER**

Christopher Penalver
C. Penalver

Plano, TX 75025

| Account Summary | |
|---|---|
| Acct #: 0004 | |
| Bill Date: 04/06/17 | Bill #: 1704061117 |
| Amount Due: $40.51 | Due by: 04/24/17 |
| Amount Enclosed : $ | |
| Do Not Pay - Auto Credit Card Payment Scheduled on Due Date | |

DISCOUNT POWER
P.O. Box 4395
Houston, TX 77210-4395

1511140004170406111700000040515

....Please return this portion with your payment ....

**DISCOUNT POWER**

PUC License No. 10161
📞 713-423-6970
📞 877-909-POWER
📠 281-781-2299

✉ Customercare@discountpowertx.com
DISCOUNT POWER
5757 Woodway Drive, Suite # 270
Houston, TX 77057

Customer Care Hours:
Monday - Friday from 8:00 AM - 6:00 PM CST and Saturdays from 9:00 AM - 1:00 PM CST

Excluding Holidays.

Outages and Emergencies at any time. Please Contact Oncor (888)313-6862

For more information about residential electric service, please visit www.powertochoose.com

Acct # : 0004   Bill # : 1704061117   Bill Date : 04/06/17                                Page: 1 of 1

Christopher Penalver
C. Penalver

Plano, TX 75025

Service at ESI ID #: 0957
PLANO,TX 75025-3500
✉ christopher.m.penalver@gmail.com

Bill Date: 04/06/17   Bill Period - 03/06/17 thru 04/05/17

| Previous Balance | New Charges | Payments/Adj. | Due Amount | Due Date |
|---|---|---|---|---|
| $45.51 | $40.51 | -$45.51 | $40.51 | 04/24/17 |

| Meter | Type | Dates | Current Meter Read | Previous Meter Read | Multiplier | kWh Usage |
|---|---|---|---|---|---|---|
| 118049177LG | ACT | 03/06 - 04/05 | 46709 | 46211 | 1 | 498.00 |

**Current Charges**
Electric Service
  Energy Charge 498 KWh @ $0.03544 Per KWh............................................ $17.65
  TDU Delivery Charges............................................................................... $19.42
  TDSP Discretionary Service Charges....................................................... $2.19
    MSC019:Advanced Metering Cost Recovery Factor................................... $2.19
Sales & Gross Receipt Taxes
  City Tax...................................................................................................... $0.40
  Gross Receipt Reimb................................................................................. $0.78
  PUC Assessment....................................................................................... $0.07

**Payments and Adjustments**
Previous Balance......................................................................................... $45.51
Payments and Adjustments
  Payment on 03/23/17................................................................................. -$45.51
Total Payments/Adjustments....................................................................... -$45.51
Total Current Charges................................................................................. $40.51
**Total Amount Due.................................................................................... $40.51**

The average price you paid for electric service this month is 7.9¢ per kWh.'* IMPORTANT INFORMATION ** If you believe the bill includes unauthorized charges, please contact us to dispute the charges. If you are not satisfied with our response to your inquiry or complaint, you may file a complaint by calling or writing the Public Utility Commission of Texas, P.O. Box 13326, Austin Texas 78711-3326; or phone (512) 936-7120 or toll free in Texas at (888) 782-8477. Hearing and speech impaired individuals with text telephones (TTY) may contact the commission at (512) 936-7136. You have the opportunity to voluntarily donate money to the Discount Power bill payment assistance program on this bill.
You have a contract valid from 12/17/2016 to 12/17/2018.

Confidential pursuant to Securities Exchange Act s.24(d).                                                    SEC-SCB-P-0010405



International Back Office Support System

Today is 01/31/2018

**Customer Account**
Logon User: **Edward56303**  Logoff
View Account: **MBS02211**  Account Name: **Christopher Penalver**

Daily Summary | Trading Blotter | Activity ▶ | Report ▶

## Profit and Loss Summary

Enter Starting Date: 01/01/2016    Enter Ending Date: 01/30/2018   Go   (mm/dd/yyyy)

### Trading Summary — Download csv

| Symbol | Tickets | Open Qty | Long Qty | Short Qty | Long Amount | Short Amount | Gross P&L | Commission | Trade Fee 1 | Trade Fee 2 | Trade Fee 3 | True P&L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AEZS | 4 | 0 | 2,750 | 2,750 | 8,300.71 | 7,920.48 | (380.23) | 55.00 | 0.20 | 0.33 | 0.00 | (435.75) |
| APVO | 3 | 0 | 1,000 | 1,000 | 3,190.00 | 3,336.00 | 146.00 | 20.00 | 0.09 | 0.12 | 0.00 | 125.79 |
| BONT | 7 | 0 | 4,500 | 4,500 | 4,173.96 | 3,960.00 | (213.96) | 94.90 | 0.10 | 0.54 | 0.00 | (309.49) |
| CLSN | 5 | 0 | 2,600 | 2,600 | 10,667.95 | 10,777.25 | 109.30 | 52.00 | 0.28 | 0.31 | 0.00 | 56.71 |
| CMTL | 2 | 0 | 2 | 2 | 39.92 | 39.56 | (0.36) | 9.90 | 0.01 | 0.00 | 0.00 | (10.27) |
| DHXM | 3 | 0 | 2,000 | 2,000 | 6,299.83 | 5,900.00 | (399.83) | 40.00 | 0.15 | 0.24 | 0.00 | (440.22) |
| EFX | 5 | 0 | 152 | 152 | 18,454.27 | 17,983.93 | (470.34) | 24.75 | 0.46 | 0.02 | 0.00 | (495.56) |
| FDC | 10 | 0 | 1,780 | 1,780 | 32,047.33 | 32,084.58 | 37.25 | 57.40 | 0.78 | 0.21 | 0.00 | (21.15) |
| GLBS | 5 | 0 | 4,000 | 4,000 | 5,739.60 | 5,200.00 | (539.60) | 80.00 | 0.13 | 0.48 | 0.00 | (620.21) |
| INFI | 42 | 0 | 13,950 | 13,950 | 44,891.30 | 45,394.98 | 503.68 | 320.14 | 1.21 | 1.66 | 0.00 | 180.67 |
| JMEI | 5 | 0 | 2,476 | 2,476 | 9,654.83 | 9,682.68 | 27.85 | 49.83 | 0.25 | 0.29 | 0.00 | (22.52) |
| LINU | 4 | 0 | 1,850 | 1,850 | 4,134.47 | 3,922.00 | (212.47) | 41.45 | 0.10 | 0.22 | 0.00 | (254.23) |
| MNKD | 9 | 0 | 5,400 | 5,400 | 24,272.90 | 23,562.01 | (710.89) | 117.85 | 0.60 | 0.64 | 0.00 | (829.98) |
| NTNX | 5 | 0 | 435 | 435 | 9,064.91 | 9,077.44 | 12.54 | 24.75 | 0.24 | 0.05 | 0.00 | (12.50) |
| OTIV | 4 | 0 | 1,500 | 1,500 | 3,520.00 | 3,615.00 | 95.00 | 30.00 | 0.10 | 0.18 | 0.00 | 64.72 |
| ROKU | 8 | 0 | 2,996 | 2,996 | 52,121.33 | 53,046.39 | 925.06 | 64.67 | 1.31 | 0.36 | 0.00 | 858.73 |
| RYTM | 4 | 0 | 1,110 | 1,110 | 28,714.38 | 29,104.27 | 389.89 | 24.55 | 0.72 | 0.13 | 0.00 | 364.49 |
| SWCH | 10 | 0 | 3,600 | 3,600 | 81,987.10 | 84,285.15 | 2,298.05 | 78.75 | 2.11 | 0.43 | 0.00 | 2,216.76 |
| TRXC | 23 | 0 | 7,612 | 7,612 | 33,776.38 | 33,942.56 | 166.18 | 172.12 | 0.87 | 0.91 | 0.00 | (7.71) |
| WPRT | 8 | 0 | 2,500 | 2,500 | 8,569.91 | 8,326.03 | (243.88) | 57.85 | 0.23 | 0.30 | 0.00 | (302.25) |
| XNET | 12 | 0 | 7,075 | 7,075 | 74,687.43 | 74,634.34 | (53.08) | 150.15 | 1.87 | 0.84 | 0.00 | (205.95) |
| **TOTAL** | **178** | | **69,288** | **69,288** | **464,308.49** | **465,794.67** | **1,486.18** | **1,566.06** | **11.78** | **8.25** | **0.00** | **(99.91)** |

### Cash Move Summary — Download csv

| Account | Name | DAS User | Entry Date | Currency | Deposit | Withdraw | Note |
|---|---|---|---|---|---|---|---|
| MBS02211 | Christopher Penalver | MBS02211 | 04/26/2017 | USD | 17,000.00 | 0.00 | HELLENIC CHRISTOPHER MIGUEL P |
| MBS02211 | Christopher Penalver | MBS02211 | 05/26/2017 | USD | 0.00 | (25.00) | Monthly Platform fee - May |
| MBS02211 | Christopher Penalver | MBS02211 | 06/01/2017 | USD | 0.00 | (139.00) | Monthly Platform fee - May |
| MBS02211 | Christopher Penalver | MBS02211 | 07/03/2017 | USD | 0.00 | (139.00) | Monthly Platform fee - June |
| MBS02211 | Christopher Penalver | MBS02211 | 08/01/2017 | USD | 0.00 | (139.00) | Monthly Platform fee - July |
| MBS02211 | Christopher Penalver | MBS02211 | 09/01/2017 | USD | 0.00 | (139.00) | Monthly Platform fee - August |
| MBS02211 | Christopher Penalver | MBS02211 | 10/02/2017 | USD | 0.00 | (139.00) | Monthly Platform fee - September |
| MBS02211 | Christopher Penalver | MBS02211 | 11/01/2017 | USD | 0.00 | (139.00) | Monthly Platform fee - October |
| MBS02211 | Christopher Penalver | MBS02211 | 11/06/2017 | USD | 0.00 | (25.00) | Withdrawal : Christopher Penalver |
| MBS02211 | Christopher Penalver | MBS02211 | 11/17/2017 | USD | 139.00 | 0.00 | REVERSAL OF MONTHLY PLATFORM FEE - CLIENT GESTURE |
| MBS02211 | Christopher Penalver | MBS02211 | 12/01/2017 | USD | 0.00 | (139.00) | Monthly Platform fee - November |
| MBS02211 | Christopher Penalver | MBS02211 | 12/14/2017 | USD | 50.00 | 0.00 | Courtesy Credit |
| MBS02211 | Christopher Penalver | MBS02211 | 01/02/2018 | USD | 0.00 | (139.00) | Monthly Platform fee - December |
| **TOTAL** | | | | **USD** | **17,189.00** | **(1,162.00)** | |

### Equity Change

| Date | Currency | Balance | Change |
|---|---|---|---|
| 04/19/2017 | USD | 0.00 | 0.00 |
| 04/20/2017 | USD | 0.00 | 0.00 |
| 04/21/2017 | USD | 0.00 | 0.00 |
| 04/24/2017 | USD | 0.00 | 0.00 |
| 04/25/2017 | USD | 0.00 | 0.00 |
| 04/26/2017 | USD | 17,000.00 | 17,000.00 |
| 04/27/2017 | USD | 17,000.00 | 0.00 |
| 04/28/2017 | USD | 17,000.00 | 0.00 |
| 05/01/2017 | USD | 17,000.00 | 0.00 |
| 05/02/2017 | USD | 17,000.00 | 0.00 |
| 05/03/2017 | USD | 17,000.00 | 0.00 |
| 05/04/2017 | USD | 17,000.00 | 0.00 |
| 05/05/2017 | USD | 17,000.00 | 0.00 |
| 05/08/2017 | USD | 17,000.00 | 0.00 |
| 05/09/2017 | USD | 17,000.00 | 0.00 |
| 05/10/2017 | USD | 17,000.00 | 0.00 |
| 05/11/2017 | USD | 17,000.00 | 0.00 |
| 05/12/2017 | USD | 17,000.00 | 0.00 |
| 05/15/2017 | USD | 17,000.00 | 0.00 |
| 05/16/2017 | USD | 17,000.00 | 0.00 |
| 05/17/2017 | USD | 17,000.00 | 0.00 |
| 05/18/2017 | USD | 17,000.00 | 0.00 |
| 05/19/2017 | USD | 17,000.00 | 0.00 |
| 05/22/2017 | USD | 17,000.00 | 0.00 |
| 05/23/2017 | USD | 17,000.00 | 0.00 |
| 05/24/2017 | USD | 17,000.00 | 0.00 |
| 05/25/2017 | USD | 17,000.00 | 0.00 |
| 05/26/2017 | USD | 16,975.00 | (25.00) |
| 05/30/2017 | USD | 16,975.00 | 0.00 |
| 05/31/2017 | USD | 16,975.00 | 0.00 |
| 06/01/2017 | USD | 16,836.00 | (139.00) |
| 06/02/2017 | USD | 16,836.00 | 0.00 |
| 06/05/2017 | USD | 16,836.00 | 0.00 |
| 06/06/2017 | USD | 16,836.00 | 0.00 |

Confidential pursuant to Securities Exchange Act s.24(d).                                                                                                         SEC-SCB-P-0010406

| Date | Currency | Amount | P/L |
|---|---|---:|---:|
| 06/07/2017 | USD | 16,836.00 | 0.00 |
| 06/08/2017 | USD | 16,836.00 | 0.00 |
| 06/09/2017 | USD | 16,836.00 | 0.00 |
| 06/12/2017 | USD | 16,836.00 | 0.00 |
| 06/13/2017 | USD | 16,836.00 | 0.00 |
| 06/14/2017 | USD | 16,836.00 | 0.00 |
| 06/15/2017 | USD | 16,836.00 | 0.00 |
| 06/16/2017 | USD | 16,836.00 | 0.00 |
| 06/19/2017 | USD | 16,836.00 | 0.00 |
| 06/20/2017 | USD | 16,836.00 | 0.00 |
| 06/21/2017 | USD | 16,836.00 | 0.00 |
| 06/22/2017 | USD | 16,836.00 | 0.00 |
| 06/23/2017 | USD | 16,836.00 | 0.00 |
| 06/26/2017 | USD | 16,836.00 | 0.00 |
| 06/27/2017 | USD | 16,836.00 | 0.00 |
| 06/28/2017 | USD | 16,836.00 | 0.00 |
| 06/29/2017 | USD | 16,836.00 | 0.00 |
| 06/30/2017 | USD | 16,836.00 | 0.00 |
| 07/03/2017 | USD | 16,697.00 | (139.00) |
| 07/05/2017 | USD | 16,697.00 | 0.00 |
| 07/06/2017 | USD | 16,697.00 | 0.00 |
| 07/07/2017 | USD | 16,697.00 | 0.00 |
| 07/10/2017 | USD | 16,697.00 | 0.00 |
| 07/11/2017 | USD | 16,697.00 | 0.00 |
| 07/12/2017 | USD | 16,697.00 | 0.00 |
| 07/13/2017 | USD | 16,697.00 | 0.00 |
| 07/14/2017 | USD | 16,697.00 | 0.00 |
| 07/17/2017 | USD | 16,697.00 | 0.00 |
| 07/18/2017 | USD | 16,697.00 | 0.00 |
| 07/19/2017 | USD | 16,697.00 | 0.00 |
| 07/20/2017 | USD | 16,697.00 | 0.00 |
| 07/21/2017 | USD | 16,697.00 | 0.00 |
| 07/24/2017 | USD | 16,697.00 | 0.00 |
| 07/25/2017 | USD | 16,697.00 | 0.00 |
| 07/26/2017 | USD | 16,697.00 | 0.00 |
| 07/27/2017 | USD | 16,697.00 | 0.00 |
| 07/28/2017 | USD | 16,697.00 | 0.00 |
| 07/31/2017 | USD | 16,697.00 | 0.00 |
| 08/01/2017 | USD | 16,558.00 | (139.00) |
| 08/02/2017 | USD | 16,558.00 | 0.00 |
| 08/03/2017 | USD | 16,558.00 | 0.00 |
| 08/04/2017 | USD | 16,558.00 | 0.00 |
| 08/07/2017 | USD | 16,558.00 | 0.00 |
| 08/08/2017 | USD | 16,558.00 | 0.00 |
| 08/09/2017 | USD | 16,558.00 | 0.00 |
| 08/10/2017 | USD | 16,558.00 | 0.00 |
| 08/11/2017 | USD | 16,558.00 | 0.00 |
| 08/14/2017 | USD | 16,558.00 | 0.00 |
| 08/15/2017 | USD | 16,558.00 | 0.00 |
| 08/16/2017 | USD | 16,558.00 | 0.00 |
| 08/17/2017 | USD | 16,558.00 | 0.00 |
| 08/18/2017 | USD | 16,558.00 | 0.00 |
| 08/21/2017 | USD | 16,535.48 | (22.52) |
| 08/22/2017 | USD | 16,535.48 | 0.00 |
| 08/23/2017 | USD | 16,535.48 | 0.00 |
| 08/24/2017 | USD | 16,535.48 | 0.00 |
| 08/25/2017 | USD | 16,535.48 | 0.00 |
| 08/28/2017 | USD | 16,535.48 | 0.00 |
| 08/29/2017 | USD | 16,535.48 | 0.00 |
| 08/30/2017 | USD | 16,535.48 | 0.00 |
| 08/31/2017 | USD | 16,535.48 | 0.00 |
| 09/01/2017 | USD | 16,396.48 | (139.00) |
| 09/05/2017 | USD | 16,383.97 | (12.50) |
| 09/06/2017 | USD | 16,383.97 | 0.00 |
| 09/07/2017 | USD | 16,383.97 | 0.00 |
| 09/08/2017 | USD | 15,888.41 | (495.56) |
| 09/11/2017 | USD | 15,888.41 | 0.00 |
| 09/12/2017 | USD | 15,888.41 | 0.00 |
| 09/13/2017 | USD | 15,888.41 | 0.00 |
| 09/14/2017 | USD | 15,867.27 | (21.15) |
| 09/15/2017 | USD | 15,867.27 | 0.00 |
| 09/18/2017 | USD | 15,867.27 | 0.00 |
| 09/19/2017 | USD | 15,867.27 | 0.00 |
| 09/20/2017 | USD | 15,867.27 | 0.00 |
| 09/21/2017 | USD | 15,867.27 | 0.00 |
| 09/22/2017 | USD | 15,867.27 | 0.00 |
| 09/25/2017 | USD | 15,867.27 | 0.00 |
| 09/26/2017 | USD | 15,867.27 | 0.00 |
| 09/27/2017 | USD | 15,867.27 | 0.00 |
| 09/28/2017 | USD | 16,726.00 | 858.73 |
| 09/29/2017 | USD | 16,715.73 | (10.27) |
| 10/02/2017 | USD | 16,576.73 | (139.00) |
| 10/03/2017 | USD | 16,331.18 | (245.55) |
| 10/04/2017 | USD | 16,331.18 | 0.00 |
| 10/05/2017 | USD | 16,813.54 | 482.36 |
| 10/06/2017 | USD | 18,776.07 | 1,962.53 |
| 10/09/2017 | USD | 18,776.07 | 0.00 |
| 10/10/2017 | USD | 18,776.07 | 0.00 |
| 10/11/2017 | USD | 18,776.07 | 0.00 |
| 10/12/2017 | USD | 18,737.76 | (38.31) |
| 10/13/2017 | USD | 18,737.76 | 0.00 |
| 10/16/2017 | USD | 18,956.75 | 218.99 |

Confidential pursuant to Securities Exchange Act s.24(d).

SEC-SCB-P-0010407

| Date | Currency | Balance | P/L |
|---|---|---|---|
| 10/17/2017 | USD | 18,949.04 | (7.71) |
| 10/18/2017 | USD | 18,126.98 | (822.06) |
| 10/19/2017 | USD | 18,126.98 | 0.00 |
| 10/20/2017 | USD | 18,126.98 | 0.00 |
| 10/23/2017 | USD | 18,126.98 | 0.00 |
| 10/24/2017 | USD | 18,126.98 | 0.00 |
| 10/25/2017 | USD | 18,126.98 | 0.00 |
| 10/26/2017 | USD | 17,817.49 | (309.49) |
| 10/27/2017 | USD | 17,817.49 | 0.00 |
| 10/30/2017 | USD | 17,817.49 | 0.00 |
| 10/31/2017 | USD | 17,817.49 | 0.00 |
| 11/01/2017 | USD | 17,477.22 | (340.27) |
| 11/02/2017 | USD | 17,472.54 | (4.68) |
| 11/03/2017 | USD | 17,472.54 | 0.00 |
| 11/06/2017 | USD | 16,827.33 | (645.21) |
| 11/07/2017 | USD | 16,827.33 | 0.00 |
| 11/08/2017 | USD | 16,827.33 | 0.00 |
| 11/09/2017 | USD | 16,827.33 | 0.00 |
| 11/10/2017 | USD | 16,827.33 | 0.00 |
| 11/13/2017 | USD | 16,827.33 | 0.00 |
| 11/14/2017 | USD | 16,827.33 | 0.00 |
| 11/15/2017 | USD | 16,827.33 | 0.00 |
| 11/16/2017 | USD | 16,827.33 | 0.00 |
| 11/17/2017 | USD | 16,966.33 | 139.00 |
| 11/20/2017 | USD | 16,966.33 | 0.00 |
| 11/21/2017 | USD | 16,966.33 | 0.00 |
| 11/22/2017 | USD | 16,966.33 | 0.00 |
| 11/24/2017 | USD | 16,966.33 | 0.00 |
| 11/27/2017 | USD | 16,966.33 | 0.00 |
| 11/28/2017 | USD | 16,966.33 | 0.00 |
| 11/29/2017 | USD | 16,966.33 | 0.00 |
| 11/30/2017 | USD | 16,966.33 | 0.00 |
| 12/01/2017 | USD | 16,827.33 | (139.00) |
| 12/04/2017 | USD | 16,827.33 | 0.00 |
| 12/05/2017 | USD | 16,827.33 | 0.00 |
| 12/06/2017 | USD | 16,827.33 | 0.00 |
| 12/07/2017 | USD | 16,827.33 | 0.00 |
| 12/08/2017 | USD | 16,707.50 | (119.83) |
| 12/11/2017 | USD | 16,507.50 | (200.00) |
| 12/12/2017 | USD | 16,387.11 | (120.39) |
| 12/13/2017 | USD | 16,387.11 | 0.00 |
| 12/14/2017 | USD | 16,437.11 | 50.00 |
| 12/15/2017 | USD | 16,437.11 | 0.00 |
| 12/18/2017 | USD | 16,501.84 | 64.72 |
| 12/19/2017 | USD | 16,501.84 | 0.00 |
| 12/20/2017 | USD | 16,501.84 | 0.00 |
| 12/21/2017 | USD | 16,066.09 | (435.75) |
| 12/22/2017 | USD | 16,066.09 | 0.00 |
| 12/26/2017 | USD | 16,066.09 | 0.00 |
| 12/27/2017 | USD | 16,066.09 | 0.00 |
| 12/28/2017 | USD | 16,066.09 | 0.00 |
| 12/29/2017 | USD | 16,066.09 | 0.00 |
| 01/02/2018 | USD | 15,927.09 | (139.00) |
| 01/03/2018 | USD | 15,927.09 | 0.00 |
| 01/04/2018 | USD | 15,927.09 | 0.00 |
| 01/05/2018 | USD | 15,927.09 | 0.00 |
| 01/08/2018 | USD | 15,927.09 | 0.00 |
| 01/09/2018 | USD | 15,927.09 | 0.00 |
| 01/10/2018 | USD | 15,927.09 | 0.00 |
| 01/11/2018 | USD | 15,927.09 | 0.00 |
| 01/12/2018 | USD | 15,927.09 | 0.00 |
| 01/16/2018 | USD | 15,927.09 | 0.00 |
| 01/17/2018 | USD | 15,927.09 | 0.00 |
| 01/18/2018 | USD | 15,927.09 | 0.00 |
| 01/19/2018 | USD | 15,927.09 | 0.00 |
| 01/22/2018 | USD | 15,927.09 | 0.00 |
| 01/23/2018 | USD | 15,927.09 | 0.00 |
| 01/24/2018 | USD | 15,927.09 | 0.00 |
| 01/25/2018 | USD | 15,927.09 | 0.00 |
| 01/26/2018 | USD | 15,927.09 | 0.00 |
| 01/29/2018 | USD | 15,927.09 | 0.00 |
| 01/30/2018 | USD | 15,927.09 | 0.00 |
| **TOTAL** | | | **15,927.09** |

Confidential pursuant to Securities Exchange Act s.24(d).

SEC-SCB-P-0010408



Confidential pursuant to Securities Exchange Act s.24(d).

SEC-SCB-P-0010409