UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-21079-BLOOM/Torres

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

      Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
GUY GENTILE'S MOTION IN LIMINE AND TO STRIKE EXPERT**

    Plaintiff Securities and Exchange Commission hereby files its Response in Opposition to Guy Gentile's Motion *in Limine* and to Strike Expert, ECF No. [221]:

## I.     INTRODUCTION

    On February 12, 2024, at approximately 9:46 p.m., EST, Defendant Guy Gentile filed his Motion *in Limine* and to Strike Expert ("Motion").   Contrary to the false certification made pursuant to S.D. Fla. L. R. 7.1 (a)(3), made in the Motion, Gentile's counsel had not conferred with counsel for the SEC as to the issues raised in the motion prior to filing.[1]  The Motion is also deficient in that it is not a motion *in limine* at all.   Instead, it simply requests that the SEC (but seemingly not Defendant Gentile) be precluded from introducing certain evidence at trial "until a

---

[1] Attached hereto as Exhibit A are the emails documenting the SEC's efforts to confer with Gentile's counsel regarding the *SEC's* Motion *in Limine*, ECF No. [220].   As shown, Gentile's counsel made no effort to discuss the items for which they would be moving to preclude *in limine.* Indeed, Gentile's counsel did not even indicate that they would be filing such motion.

hearing has been held outside the presence of the jury to determine the admissibility" of such evidence.  Thus, the Motion is not requesting a ruling as to whether specific evidence should be admitted or excluded but rather asks that the Court delay ruling on the admissibility of such evidence until trial.  Of course, that is not the purpose of a motion *in limine,* which is to save the Court and parties' time and narrow the issues for trial.  Because Gentile's Motion *in limine* is deficient on its face and substantively devoid of reasoning and law, it should be denied.

Gentile also made a bare-bones argument to strike the SEC's expert report ("Report") and anticipated testimony of David MacNair.  Without any basis in law, Gentile seeks to strike an expert who has more than 30 years of experience in the securities industry and is eminently qualified to opine on industry standards, practices, and regulations with respect to the operation of foreign broker-dealers within the framework and exemptions under SEC Rule 15a-6 of the Securities and Exchange Act of 1934 ("Exchange Act").  MacNair's factually detailed, and well-supported opinions easily meet the standards set forth for admissible expert testimony in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny.  As the case law makes clear, this is an acceptable – even desirable – subject of expert testimony in securities cases where the operation of a foreign broker-dealer, including exemptions to registration under Rule 15a-6, are complex and not within the scope of a non-professional's knowledge.  MacNair offers opinions on whether Defendants complied with those standards, practices, and customs based on the facts of the case.  Case law is clear that this is a proper subject of expert testimony, and Gentile's request to strike the SEC's expert and Report should be denied.

## II.   <u>ARGUMENT</u>

### A.  Gentile's Motion *in Limine*

Many of the problems with Gentile's Motion *in Limine* may have been resolved if Gentile's counsel had followed the Local Rules and conferred with SEC counsel.  Had Gentile's counsel bothered to comply with Local Rule 7.1(a)(3), they would have learned that the SEC does not object to the subject matter of their first three request and agrees that *neither* party (not just the SEC) should refer to at trial: 1) prior litigation between the United States or the SEC and Gentile, 2) Gentile's prior cooperation with the United States and/or the SEC, and 3) Gentile's divorce from his ex-wife, Karen Gentile.

The remainder of Gentile's Motion *in Limine*, numbers 4 and 5, should be simply denied on the face of the motion due to Gentile's failure to comply with Local Rule 7.1 (a)(3).[2]  When a party has failed to confer as required by Local Rule 7.1(a)(3), a court may strike the motion.  *United States v. Twenty-Nine Pre-Columbian & Colonial Artifacts from Peru*, Case No.: 13-21697-CIV-LENARD, 2014 WL 4655737, at *3 n.4 (S.D. Fla. Sept. 17, 2014) (noting that the court had previously struck an earlier motion . . . for failing to confer and failing to file a certificate of conferral and denying the plaintiff's motion for failing to contact and confer with opposing counsel prior to filing the motion).  Local Rule 7.1(a)(3) is "a critical Rule that promotes efficient litigation," and when followed, the responding party and the court can be "spared from taking the time to respond to a motion that has no obvious legal support." *Burleigh House Condo, Inc. v. Rockhill Ins. Co.,* Case No.: 21-22911-CIV-SCOLA, 2022 WL 17082909 at *5 (S.D. Fla. Nov. 18, 2022).

---

[2] Unfortunately, this is not the first time Gentile's counsel has ignored Local Rule 7.1(a)(3) resulting in a waste of the Court's time.  *See* ECF No. [186] (Order noting Gentile's failure to confer with Plaintiff as to the grounds of his Motion for Sanctions and striking motion).

In addition, item number 4 should be denied because, as noted in the Motion, whether it is proper to preclude any portion of witness Philip Dorsett's testimony, or documents received from him, is already the subject of a fully briefed motion that is pending before the Court. *See* Gentile's Renewed Motion for Sanction for Spoilation of Evidence under Rule 37(e), ECF No. [201] ("Motion for Sanctions"). Thus, the SEC will rely on its Response to the Motion for Sanctions, ECF No. [210], and not belabor the Court with a third reiteration of those issues. Otherwise, Gentile's current Motion does not give any additional support or reason why Mr. Dorsett's testimony or documents he produced should be excluded, so the request should be simply denied or deemed moot pending the Court's ruling on the Motion for Sanctions.

As to item number 5, Gentile requests that "testimony and documents obtained in discovery from Yaniv Frantz, former Senior Sales Manager of SureTrader" be precluded. Gentile provides no reasons why such testimony and documents should be precluded. Indeed, there is no valid reason to exclude such testimony. Mr. Frantz' video deposition was taken over a period of two days, on February 27 and 28, 2023. Gentile's counsel attended this deposition and conducted cross examination, which lasted almost the entire second day of the deposition. The SEC has also produced all documents received from Mr. Frantz as part of its investigation and/or in discovery to Gentile. Thus, there is no valid reason why the SEC should be precluded from using Mr. Frantz' testimony or documents he produced at trial. Accordingly, Gentile's request to preclude same should be denied.

**B. Gentile's Motion to Strike Expert**

1. Summary of the SEC's Allegations and Gentile's Rule 15a-6 Exemption Defense

The Court is familiar with the facts of this case. From March 2016 through at least November 2019 ("Relevant Period"), Defendant MintBroker International, Ltd. f/k/a Swiss

America Securities Ltd. d/b/a SureTrader ("SureTrader") and its founder, owner, and chief executive officer Guy Gentile operated an offshore broker-dealer in the Bahamas designed to help day traders in the U.S. circumvent the U.S. rules that regulate pattern day trading. Gentile founded and registered SureTrader, a foreign broker-dealer, in the Bahamas, and SureTrader was never registered with the SEC in the U.S.

At various times during the Relevant Period, up to 80-85% of SureTrader's customer base was comprised of U.S. customers. SureTrader grew from a three-man shop to one with 75 employees, more than 40,000 customer accounts, and assets of more than $10 million. SureTrader effected transactions in excess of $1 billion on behalf of its customers. These customers were solicited by SureTrader through its website, e-mail messages, and advertising with U.S. based day trading schools with which SureTrader had marketing agreements.

Because SureTrader operated as a foreign broker-dealer without registering with the SEC, it violated Section 15(a)(1) of the Exchange Act. Additionally, Gentile should be held liable as a control person for SureTrader's violations under Section 20(a) of the Exchange Act because he had the power to control the general affairs of SureTrader and the specific corporate policy that resulted in SureTrader's violations. Gentile should also be held liable for violating Section 15(a)(1) through or by means of SureTrader in violation of Section 20(b) of the Exchange Act.

Gentile has raised as a defense that SureTrader is subject to an exemption to registration under Rule 15a-6 of the Exchange Act because SureTrader used pop-up blockers on its website, unsolicited acknowledgement agreements, and disclaimers in advertising that SureTrader's services are not intended for U.S. persons.

2.  Summary of MacNair's Opinions

MacNair's Report, ECF No. [221-1], reviewed the allegations and record evidence in the case and applied those facts as they relate to industry practice and custom.  MacNair's Report, and anticipated testimony, is proffered in an effort to help the trier of fact understand the complicated framework of operating a foreign broker-dealer under possible exemptions to mandatory registration under the Exchange Act.  MacNair's Report sets forth in detail the standards, practices, and customs to which broker dealers adhere as they operate outside of the U.S.  MacNair explains the exemptions available for foreign broker-dealers and how foreign broker-dealers should operate their businesses within the regulatory framework to comport with such exemptions, including SEC Rule 15a-6 and FINRA Rules governing "Pattern Day Trading."

Citing to specific record evidence, MacNair built a profile of the Defendants' business to determine if they met the requirements of Rule 15a-6 exemptions and considered Defendants' processes and controls for permitting client day trading.  After reviewing the key documents and testimony (detailed at Exhibit A to his Report, ECF No. [221-1] at pp. 31-32), MacNair synthesizes all the information reviewed to opine that (1) Defendants did not have the necessary processes and controls associated with the general standards of care in place when evaluating the possible U.S. registration exemption requirements; (2) Defendants failed to implement controls to prevent SureTrader solicitations from targeting U.S. residents; and (3) Gentile did not perform any meaningful evaluation of the available exemptions, and had he done do, he would have concluded based on the facts and circumstances, that Defendants did not meet any exemptions to SEC Rule 15a-6.

3.  Legal Standard

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), requires district courts to ensure that any and all scientific testimony or evidence admitted is both relevant and reliable.  *See id.* at 589–90.  The *Daubert* analysis also applies to non-scientific expert testimony.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).  District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'"  *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005).  The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'"  *Hendrix v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010).  The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

"[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho*, 526 U.S. at 152. Whether to admit expert testimony is "left to the broad discretion of the district court." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).

In *United States v. Brown*, 415 F.3d 1257, 1268-69 (11th Cir. 2005), for example, the District Court admitted the testimony of two government expert witnesses, even though some of the factors *Daubert* identifies to determine reliability of expert testimony were not present.   In affirming this decision, the *Brown* Court noted that: "'whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine.'" *Id.* (*citing Kumho,* 526 U.S. at 153).   The *Brown c*ourt further stated that its "conclusion is consistent with the 'liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony.'" *Brown*, 415 F.3d at 1268.   Thus, pursuant to Eleventh Circuit precedent, the liberal bent of Rule 702, and the cases discussed below, this Court should allow MacNair's expert testimony.

4.   <u>MacNair is Qualified</u>

The first question under *Daubert* is whether the proposed expert witness is qualified to testify competently regarding the matters he intends to address.   *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 563 (11th Cir. 1998).   An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702.   "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" *Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting *Jack v. GlaxoWellcome, Inc.*, 239 F. Supp. 2d 1308, 1314–16 (N.D. Ga. 2002)).   "This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility."   *Id*. (citations and internal quotation marks omitted).   The court's "gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" *Maiz*

*v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001) (quoting *Allison v. McGhan*, 184 F.3d 1300, 1311 (11th Cir. 1999)).

Gentile does not dispute that MacNair is qualified as an expert.  Even if he did, such an argument would be baseless.  MacNair has over 30 years of experience in the securities industry, including compliance support to broker-dealers, banks, and financial institutions.  ECF No. [221-1] at pp. 1-2.  MacNair was also Examiner for the Financial Industry Regulatory Authority ("FINRA"), formerly the National Association of Securities Dealers ("NASD").  *Id.*  As an Examiner, he conducted sales practice exams of broker-dealers and special investigations into market abuse allegations.  *Id.*  Through this experience, he gained an understanding of industry practices and the standard of care governing registration, day trading, suitability, suspicious activity, and related regulatory requirements.  His knowledge of SEC Rule 15a-6 requirements and the regulatory framework that encompasses these activities was gained through performing on-boarding of higher risk foreign financial institutions to determine if those institutions qualified for the relevant exemption.  *Id.*  MacNair also performed annual reviews of foreign financial institutional clients where SEC Rule 15a-6 exemptions were evaluated, and he was responsible for the investigation of suspect activity involving foreign financial institutions where evaluation of applicable exemptions and regulations would be determined.  *Id.*  Based on the foregoing, MacNair is clearly qualified as an expert.

### 5.  MacNair's Testimony is Reliable

The second question under *Daubert* is whether the expert's testimony is reliable.  Experts relying on experience must explain "how that experience is reliably applied to the facts.'"  *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (citations omitted).  Gentile's argument is cursory and fails to explain why MacNair's Report "does not reflect any underlying 'reliable

principles and methods derived from specialized knowledge that he then applies to the facts of the case." To the contrary, MacNair connects his own experience in evaluating whether an exemption under SEC Rule 15a-6 applied to foreign financial institutional clients and broker-dealers to conclude that there were not the necessary processes and controls in place by Defendants. ECF No. [221-1] at p. 15. MacNair has knowledge of SEC Rule 15a-6 requirements and regulatory framework through performing on-boarding of higher risk foreign financial institutions to determine if they qualified for an exemption. *Id.* at p. 3. MacNair explains in detail the regulatory framework for broker-dealers, registration requirements, FINRA rules, risks associated with day trading, regulations to protect investors, know your customer requirements, and Rule 15a-6 controls, all of which his 30-year career in the securities industry encompassed. MacNair cites numerous portions of the record as outlined in Ex. A to his Report. *Id.* at pp. 31-32. Thus, MacNair's testimony is reliable.

 6. MacNair's Testimony Will be Helpful to the Jury

 The last question under Daubert is whether the expert's testimony will be helpful to the trier of fact. Expert testimony must "assist[] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Rink*, 400 F.3d at 1292 (citation omitted). "An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). But "testifying experts may not offer legal conclusions." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1112 n.8 (11ᵗʰ Cir. 2005). Gentile moves to strike MacNair's Report and testimony arguing "it simply parrots the SEC's theory of liability" and this is "not a case that involves a complex area of knowledge that a jury is incapable of understanding without the guidance of an expert." Both arguments fail.

First, MacNair's Report addresses far more than the SEC's theory of liability.  MacNair provides extensive background on the operations of broker-dealers, day trading, registration requirements for broker-dealers, possible exemptions to registration, and more.  MacNair also evaluates whether the necessary processes and controls associated with the general standards of care were in place in this case.  By concluding, for example, that Defendants failed to implement controls to prevent SureTrader solicitations from targeting U.S. residents (i.e., the necessary processes and controls associated with potential exemptions to registration were not in place, including Rule 15a-6), MacNair embraces the ultimate issue in this case but does not offer a legal conclusion.

Second, outside of industry insiders and regulators, operations of a foreign broker-dealer and possible exemptions for registration with the SEC is little understood and is certainly not in the common knowledge of lay people.  MacNair's Report offers specialized insight into this field and provides important background on industry standards, customs, and regulations for foreign broker-dealers and operating same to qualify for a registration exemption.  MacNair's testimony is both admissible and helpful to a jury that has likely never encountered foreign broker-dealers and exemptions to registering with the SEC.  *See United States v. Bilzerian*, 926 F.2d 1285, 1294-95 (2nd Cir. 1991) ("Particularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts."); *Highland Capital Management, L.P., v. Schneider*, 551 F. Supp. 2d 173, 182 (S.D.N.Y. 2008) (holding that an expert "may testify as to the customs and practices of the industry" because such testimony was "relevant to this case and may prove helpful to the jury").

Finally, Gentile complains that MacNair relied upon a "perjurious" Declaration signed by a former SureTrader Chief Compliance Officer and that the Report was authored before certain

witnesses were deposed.  As to the former argument, Gentile continues to mischaracterize and attack a former SureTrader employee who brought SureTrader's securities violations to light in an attempt to discredit him.  Regarding the latter, that additional fact discovery occurred after the Report was created[3] does not render the Report or testimony improper, inadmissible, or unreliable.

In fact, criticism of the factual basis for an expert's opinion is not grounds for exclusion under *Daubert*.  *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) ("in most cases, objections to the inadequacies of [expert evidence] are more appropriately considered an objection going to the weight of the evidence rather than its admissibility") (internal quotation marks omitted); *United States v. Finch,* 630 F.3d 1057, 1062 (8th Cir. 2011) (factual basis for expert's testimony goes to the weight the fact-finder should give it, and any doubts should "be resolved in favor of admissibility").  To be excluded, an expert's testimony must be so "fundamentally unsupported" that it cannot assist the fact-finder.  *Finch*, 630 F.3d at 1062. Ultimately, these are arguments that can be pursued at trial by cross-examining MacNair. *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004) ("The factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination").  As such, MacNair's testimony satisfies the third Daubert prong, and Gentile's request to strike MacNair's Report and testimony should be denied.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, Gentile's Motion should be denied.

---

[3] MacNair's Report was disclosed on February 3, 2023—the deadline at that time—for expert disclosures pursuant to the Second Order Amending Scheduling Order and Certain Pretrial Deadlines, ECF. No. [129].

February 26, 2024                          Respectfully submitted,


                                           /s/Alice Sum_____
                                           Alice Sum
                                           Senior Trial Counsel
                                           Fla Bar No.: 354510
                                           Phone: (305) 416-6293
                                           Email: sumal@sec.gov

                                           Alise Johnson
                                           Senior Trial Counsel
                                           Fla. Bar No. 0003270
                                           Direct Dial: (305) 982-6385
                                           Email: johnsonali@sec.gov

                                           *Attorneys for Plaintiff*
                                           **SECURITIES AND EXCHANGE
                                           COMMISSION**
                                           801 Brickell Avenue, Suite 1950
                                           Miami, Florida 33131
                                           Telephone: (305) 982-6300
                                           Facsimile: (305) 536-4154