# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:21-cv-21079-BB

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

     Defendants.

## DEFENDANT GUY GENTILE'S OPPOSITION TO
## PLAINTIFF SEC'S MOTION FOR SUMMARY JUDGMENT

FORD O'BRIEN LANDY LLP

Gabriela M. Ruiz
Fla. Bar. 46844
One Biscayne Tower
2 South Biscayne Boulevard, Suite 3200
Miami, Florida 33131
Tel.: (786) 310-1135 (main)
gruiz@fordobrien.com

Adam C. Ford (admitted *pro hac vice*)
Matthew A. Ford (admitted *pro hac vice*)
Stephen R. Halpin III (admitted *pro hac vice*)
275 Madison Avenue, 24th Floor
New York, New York 10016
Tel.: (212) 858-0040 (main)
aford@fordobrien.com
mford@fordobrien.com
shalpin@fordobrien.com

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................... 1

LEGAL STANDARD .......................................................................................................... 2

ARGUMENT ...................................................................................................................... 3

I.    SureTrader committed no violation of Section 15(a)(1) of the Exchange Act because it did not improperly "solicit" U.S. persons............................................ 4

    A.    Whether a U.S. person has been "solicited" to engage in securities transactions is a fact-intensive question. ............................................... 4

    B.    Viewing the evidence in the light most favorable to Gentile, a reasonable juror would conclude that SureTrader did not improperly "solicit" U.S. persons.................. 6

II.    Gentile is not derivatively liable under Section 20 of the Exchange Act for any violations by SureTrader. ....................................................................... 8

    A.    The SEC is not entitled to summary judgment on Count II because Gentile sought to formulate SureTrader policy in compliance with Rule 15a-6 and acted in "good faith." ............................................................... 9

    B.    The SEC is not entitled to summary judgment on Count III because Gentile was not affiliated with SureTrader for a significant portion of the Relevant Period and the SEC has not established Gentile had actual control over transactions in question. .......................................................... 13

III.    The SEC is not entitled to summary judgment on Gentile's affirmative defenses............. 15

CONCLUSION ................................................................................................................. 15

REQUEST FOR HEARING ............................................................................................... 15

## PRELIMINARY STATEMENT

Defendant Guy Gentile, by and through his undersigned counsel, opposes the SEC's Motion for Summary Judgment [ECF No. 222].[1]

The investigation purportedly giving rise to this case began no later than the fall of 2013. But after more than a decade, the SEC has little to show for its time and significant expenditure of taxpayer resources. Last year, in an analogous context, Justice Gorsuch lamented an example of what some commentators and scholars have dubbed "regulatory extortion" when describing an individual's saga with the SEC that had "already dragged on for seven years." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 216 (2023) (Gorsuch, J., concurring). Justice Gorsuch wondered: "[H]ow many people can afford to carry a case that far anyway?" *Id.*

Gentile has shouldered that heavy burden, both in this action and in others, including years of litigation against the SEC in the District of New Jersey between 2016 and 2020 that ultimately resulted in that court dismissing the SEC's amended complaint and the SEC opting not to amend further. *See* SEC Letter to Judge Martinotti, *SEC v. Gentile* 16 Civ. 1619 (BRM) (JAD) (Oct. 19, 2020) [ECF No. 113]. Instead, this action was filed months later. Having come this far, Gentile demands a trial by jury, a right guaranteed to him by the Seventh Amendment to the Constitution.

Gentile founded Defendant SureTrader in 2008. *See* SEC SMF ¶ 7. SureTrader was a securities brokerage based in the Bahamas. Between 2012 and 2019, Gentile was—at various points—a director, officer, and/or shareholder of the company. *See id.* The SEC's Complaint in this case references 2012 to 2019 but focuses in particular on March 2016 to November 2019 (the "Relevant Period"). *See* Compl. ¶ 1 [ECF No. 1]. Between the end of December 2015 and early-February 2017—i.e., during a significant portion of the Relevant Period—Gentile was not affiliated with SureTrader.

The SEC alleges that SureTrader committed violations of the U.S. federal securities laws during the Relevant Period by not registering with the SEC and improperly soliciting U.S. persons to use SureTrader's brokerage services. But foreign brokerages are not required to register with the SEC as a matter of course and are not categorically prohibited from effecting

---

[1] The SEC purports to reserve the right to supplement its Motion for Summary Judgment once it receives additional transcripts from depositions conducted in the Bahamas. If the SEC is permitted to supplement its Motion, which should be limited solely to issues raised in those depositions (if permitted at all), Gentile likewise reserves the right to supplement this Opposition.

transactions with U.S. persons. As detailed below and in Gentile's contemporaneously filed Statement of Material Facts, Additional Facts, and accompanying exhibits, the record evidence demonstrates that SureTrader did not improperly solicit U.S. person and that SureTrader—as well as Gentile—went to great lengths to ensure that was the case.

The need for a jury trial is evident on the record here. The central issues in this case—including whether Defendant SureTrader improperly "solicited" U.S. persons to engage in securities transactions and whether Gentile acted in "good faith" in designing policies intended to prevent solicitation—involve fact-intensive disputes that will require jurors to weigh conflicting evidence and make credibility determinations. Stated simply, "[a] summary and undifferentiated finding of liability is not warranted in such circumstances." *SEC v. Montano*, No. 618CV1606ORL31GJK, 2020 WL 5534671, at *6 (M.D. Fla. July 31, 2020) (denying SEC's motion for summary judgment), *report and recommendation adopted*, No. 6:18-CV-1606-GAP-GJK, 2020 WL 5887648 (M.D. Fla. Oct. 5, 2020). The SEC's Motion for Summary Judgment should be denied.[2]

## **LEGAL STANDARD**

The court may grant a motion for summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if 'a reasonable trier of fact could return judgment for the non-moving party,'" and "[a] fact is material if it 'might affect the outcome of the suit under the governing law.'" *ConSeal Int'l Inc. v. Neogen Corp.*, 488 F. Supp. 3d 1257, 1265 (S.D. Fla. 2020) (quoting *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008)).

In analyzing a motion for summary judgment, the court "views the facts in the light most favorable to the non-moving party, draws 'all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which are jury functions, not

---

[2] Gentile respectfully reminds the Court that his Motion for Sanctions for Spoliation of Evidence under Rule 37(e) remains pending [ECF No. 201]. As outlined more fully therein, SEC witness and former SureTrader Chief Compliance Officer Philip Dorsett spoliated relevant evidence (while acting under the effective control of the SEC) and committed perjury at his February 2023 deposition in this matter. More specifically, Dorsett illicitly retained SureTrader company emails after his separation from SureTrader, deleted some still unknown subset of those emails, and then provided the rest to the SEC to the produce in this case. Dorsett admitted during his second deposition day that he had provided false testimony during his first deposition day in this matter. As part of the relief requested in the Motion for Sanctions, Gentile seeks to preclude the SEC from relying on Dorsett's testimony for purposes of summary judgment.

those of a judge.'" *Id.* (quoting *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019)). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Id.* (quoting *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990)). "The Court does not weigh conflicting evidence." *Id.* (citing *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007)).

"Although Rule 56 applies in all civil cases, it has long been recognized that summary treatment is rarely suitable in complex cases, particularly those involving complicated legislation and regulations." *SEC v. Montano*, No. 618CV1606ORL31GJK, 2020 WL 5534671, at *6 (M.D. Fla. July 31, 2020) (citing 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2732 *et seq.* (4th ed. Apr. 2020). "This principle applies with even greater force when summary judgment is sought by the party bearing the burden of proof and persuasion." *Id.* "[D]etermination of liability in an SEC liability action is a jury question while remedial issues are left for the Court to determine." *Id.* at *5 (citing *Tull v. United States*, 481 U.S. 412 (1987)).

## ARGUMENT

The SEC's Complaint alleges two derivative-liability counts against Gentile under Section 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78t(a) (Count II), *see* Compl. ¶¶ 100–04 [ECF No. 1]; and under Section 20(b) of the Exchange Act, § 78t(b) (Count III), *see id.* ¶¶ 105–08. Both depend on an underlying primary violation by SureTrader (alleged in Count I), which is unsupported by the evidence in this case and which the SEC fails to establish in its Motion for Summary Judgment. Accordingly, summary judgment should be denied on all three Counts.

Assuming *arguendo* the SEC were entitled to a finding on summary judgment that it has established SureTrader committed a primary violation—which Gentile contests—summary judgment against Gentile would still be improper. The SEC cannot establish that Gentile was a "control person" under Section 20(a) for much of the Relevant Period, and liability under Section 20(a) does not attach where a control person acted in good faith. Likewise, liability under Section 20(b) requires a showing of control over both the alleged primary violator and actual control over the transactions in question, neither of which the SEC can prove at this stage.

Finally, for several of Gentile's affirmative defenses, the SEC fails to establish the absence of a genuine dispute of material fact. The Court should deny summary judgment.

I. **SureTrader committed no violation of Section 15(a)(1) of the Exchange Act because it did not improperly "solicit" U.S. persons.**

Section 15(a)(1) of the Securities Exchange Act of 1934 requires a broker or dealer to register with the SEC if the entity "make[s] use of the mails or any means or instrumentality of interstate commerce to effect any transactions in . . . any security[.]" 15 U.S.C. § 78*o*(a)(1). The SEC's regulations exempt from registration a foreign broker or dealer that "[e]ffects transactions in securities with or for persons that *have not been solicited by the foreign broker or dealer*[.]" 17 C.F.R. § 240.15a-6 (emphasis added); *Cap. Mgmt. Select Fund Ltd. v. Bennett*, 680 F.3d 214, 231 (2d Cir. 2012) ("In general, Rule 15a-6 exempts from the federal broker-dealer registration requirements of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o, 'foreign entities engaged in certain activities involving U.S. investors and securities markets.'" (citation omitted)).

Here, there is no dispute that at all relevant times SureTrader was operating as a foreign broker and that it was not registered with the SEC. But there is a genuine dispute of material fact about whether any U.S. person who used SureTrader's services was improperly "solicited." Whether a person has been "solicited" to do something is inherently a fact-intensive question. The SEC's own interpretive guidance makes as much clear. A jury should decide based on the evidence presented by the SEC and Gentile at trial whether any person was improperly "solicited" by SureTrader during the Relevant Period.

A. **Whether a U.S. person has been "solicited" to engage in securities transactions is a fact-intensive question.**

The SEC adopted Rule 15a-6 in 1989, well before widespread use of the internet. In doing so, the SEC explained that "solicitation" under the Rule is "fact-specific" and thus "is best addressed . . . on a case-by-case basis." *See In Re Registration Requirements for Foreign Broker-Dealers*, Release No. 105, 54 Fed. Reg. 30,013, 1989 WL 1097092, at *7 (July 18, 1989) (adopting Rule 15a-6). According to the SEC, "[t]he Rule's exemption for unsolicited trades reflects the view that U.S. persons seeking out unregistered foreign broker-dealers outside the U.S. cannot expect the protection of U.S. broker-dealer standards." *Id.* at *26. Indeed, such "U.S. investors would have little reason to expect these foreign broker-dealers to be subject to U.S. broker-dealer requirements. Moreover, requiring a foreign broker-dealer to register . . . with the Commission because of unsolicited trades with U.S. persons could cause that foreign broker-dealer to refuse to deal with U.S. persons under any circumstances." *Id.* at *6.

Almost a decade later, in 1998, the SEC provided further guidance for foreign brokers and dealers operating online through the internet, still in its infancy. The SEC reiterated that it "has exempted foreign broker-dealers that effect transactions with U.S. customers from registering in the United States if these customers initiated transactions with the foreign broker-dealers outside of the United States without solicitation." *Statement of the Commission Regarding Use of Internet Web Sites to Offer Securities, Solicit Securities Transactions or Advertise Investment Services Offshore*, 63 Fed. Reg. 14,806, 14,813 (Mar. 27, 1998). The SEC also explained: "Information posted on a Web site . . . is not sent to any particular person, although it is available for anyone to search for and retrieve." *Id.* at 14,807.

Accordingly, the SEC proposed certain measures that foreign broker–dealers could consider implementing to avoid improperly soliciting U.S. persons through the internet. The SEC suggested that a foreign broker–dealer include on its website

> a prominent disclaimer making it clear that the offer is directed only to countries other than the United States. For example, the Web site could state that the securities or services are not being offered in the United States or to U.S. persons, or it could specify those jurisdictions (other than the United States) in which the offer is being made.

*Id.* at 14,808. The SEC did not purport to set out an exclusive list of practices a foreign broker–dealer *must* adopt to avoid improper solicitation, emphasizing instead that "[w]hat constitutes adequate measures will depend on all the facts and circumstances of any particular situation." *Id.* at 14,811. The SEC also noted that, if the foreign broker–dealer "uses a third-party Web service that employs at least the same level of precautions against sales to U.S. persons as would be adequate for the offshore Internet offeror to employ, we would not view the third-party's Web site as an offer that is targeted to the United States." *Id.* at 14,809.[3]

---

[3] The Commodities and Futures Trading Commission (CFTC), the SEC's sister agency, has provided the following guidance as to what constitutes a solicitation: "a solicitation means the marketing of a financial product or service initiated by an entity to a particular consumer . . . . A solicitation does not, however, include communications that are directed at the general public without regard to the consumer's personal information, even if those communications are intended to encourage consumers to purchase financial products and services from the entity initiating the communications." *See* CFTC, *Q & A – Final Regulations on Protection of Consumer Information Under the Fair Credit Reporting Act* at 2, http://tinyurl.com/3r5b87x8 (last accessed Feb. 27, 2014). In issuing this guidance, the CFTC emphasized that it made "minor changes" to this guidance "to ensure consistency with other federal agencies' final regulations." The CFTC's definition comports with the common understanding of the term "solicitation," which Congress did not define when enacting the securities laws.

**B.    Viewing the evidence in the light most favorable to Gentile, a reasonable juror would conclude that SureTrader did not improperly "solicit" U.S. persons.**

The SEC presents a one-sided view of the facts in support of its argument that SureTrader is liable for violations of Section 15(a)(1) and Rule 15a-6. Viewed in the light most favorable to Gentile, the facts show that SureTrader committed no such violation. At minimum, there are genuine disputes of material fact that preclude summary judgment on Count I.

The SEC first takes issue with SureTrader's website and quotes the above interpretive guidance about "[p]ost[ing] a prominent disclaimer." *See* Mot. at 11. That is exactly what SureTrader did here; it posted a prominent disclaimer on its website, in the form of a pop-up window, that users were required to review and accept before accessing the site. Indeed, the pop-up disclosure SureTrader employed throughout the Relevant Period is akin to a "click-wrap agreement," which is "when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions." *See Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1337 (S.D. Fla. 2022) (citation omitted). This Court has observed that "[i]n Florida and the federal circuits . . . click-wrap agreements are valid and enforceable contracts." *Valiente*, 645 F. Supp. 3d 1331, 1338 (S.D. Fla. 2022) (quoting *Salco Distribs., LLC v. iCode, Inc.*, No. 8:05 CV 642 T 27TGW, 2006 WL 449156, at *3 (M.D. Fla. Feb. 22, 2006); *see also Dye v. Tamko Bldg. Prod., Inc.*, 908 F.3d 675, 678 (11th Cir. 2018) (upholding enforceability under Florida law of mandatory-arbitrary provision in "'shinglewrap' agreement").

By 2017, as the SEC acknowledges, the SureTrader website also employed IP-detection technology as a further deterrent to U.S. persons, once the technology became readily available. *See* SEC SMF ¶ 63; Gentile Add'l Facts ¶ 86; Ex. Y. And, in addition to the procedures in place on the website itself, SureTrader also required customers to attest in writing that they had not been solicited to open an account with SureTrader. All SureTrader advertising included language along the lines of "not intended for U.S. persons." *See, e.g.*, Ex. Z. A reasonable juror could readily conclude that these and other measures employed by SureTrader demonstrate that the company did not seek to improperly solicit U.S. persons through its website. Nor should the Court credit the SEC's attempt to transform a "review" purportedly posted on SureTrader's website by an unknown person into a statement by SureTrader itself, *see* Gentile SMF ¶ 35, or

other slim evidence the SEC maintains shows an effort to target U.S. customers, *see id.* ¶¶ 36–37.

The SEC takes similar liberties regarding agreements that SureTrader reached with online day trading school websites such as Warrior Trading and Day Trading Radio. For example, during negotiation of an agreement with Warrior Trading in August 2016 (while Gentle was not at SureTrader), SureTrader employee Justin Ritchie made clear that Warrior Trading must indicate in any advertising it displayed that SureTrader's services were not intended for U.S. customers. *See* Gentile SMF ¶ 28. Additionally, the founders of Warrior Trading and Day Trading Radio—both of whom the SEC deposed—testified that their students and customers came from all over the world, not just the United States. *See* Gentile SMF ¶ 28. Both also testified that they never agreed with Gentile or anyone else at SureTrader to improperly solicit U.S. investors on behalf of SureTrader, nor did they. *See* Gentile Add'l Facts ¶ 85. Any contracts between SureTrader and these entities expressly prohibited solicitation of U.S. customers and any discounts or rebates were only allowed for non-U.S. persons. *See* SEC Ex. 24 at 2, Ex. 26 at 2.

The SEC omits entirely that FINRA began investigating Gentile in 2013 for the same conduct that forms the basis of the SEC's Complaint in this action. *See* Gentile Add'l Facts ¶¶ 75–78. In that proceeding, Gentile submitted a "Wells submission" in January 2014 before a formal charging decision by FINRA that detailed SureTrader's policies and procedures for complying with Rule 15a-6. *See* Ex. M. That submission included a signed, notarized affidavit dated January 9, 2014, from then-Chief Compliance Officer of SureTrader Philip Dorsett. *See* Ex. N. Dorsett averred:

> 5.      In early 2012, Swiss America adopted a policy of accepting certain unsolicited US-based persons as customers in compliance with US law.
>
> 6.      In connection with this policy, I reviewed all relevant Rules and Guidance of the U.S. Securities and Exchange Commission regarding solicitation of US persons by unregistered non-US broker-dealers.
>
> 7.      Based on SEC Rules and Guidance, Swiss America developed policies and procedures designed to ensure that SureTrader complied with US laws regarding solicitation.

*See id.*

On April 14, 2015, FINRA informed counsel for Gentile by letter that "FINRA Enforcement staff has determined not to recommend the commencement of a disciplinary action

against Mr. Gentile." *See* Ex. X. Gentile nonetheless actively sought to ensure compliance with Rule 15a-6 following FINRA's determination during the times he was at SureTrader.

In fact, in early-2018, after Gentile returned to SureTrader, a firm called ITA Compliance, LLC ("ITA") conducted an "Advertising Review" of SureTrader at the behest of law firm Miles & Stockbridge, P.C. *See* Gentile Add'l Facts ¶ 88. According to its February 21, 2018 report, ITA "specializes in providing examination services to broker-dealers, investment advisers, and transfer agents. These services include FINRA, SEC, and state-required testing and audits, as well as consultative mock regulatory-type reviews." *Id.* ITA reviewed SureTrader's policies and procedures on advertising and interviewed SureTrader employees. *See id.* ITA specifically "discussed and viewed controls and disclosures in place relating to the display of advertising content to U.S. individuals." *Id.* After its review, "ITA did not discover any evidence of the firm targeting U.S. individuals through advertising to promote its online trading services. In addition, online content included disclosures to explain SAS's trading services are not intended for U.S. persons. ITA did not identify any material findings during this review." *Id.*; *see also* Part II.A, *infra* (detailing further efforts to ensure compliance with Rule 15a-6).

Similar to *Montano*, "this is a case involving numerous complex transactions with multiple participants, uncertain states of mind, issues of causation, damages and scope of equitable relief. In such cases, inferences are controlling and best left for the finders of fact." *Montano*, 2020 WL 5534671, at *6. "This is not the rare case where a plaintiff with the burden of proof and persuasion can prevail at summary judgment." *Id.*; *see also SEC v. Sky Way Glob., LLC*, No. 8:09-CV-455-T-23TBM, 2010 WL 5058509, at *2 (M.D. Fla. Dec. 6, 2010) (denying summary judgment where "the parties present both conflicting evidence as to material factual issues and certain, persuasive grounds for doubting the admissibility of at least some of the proffered evidence").

## II.   Gentile is not derivatively liable under Section 20 of the Exchange Act for any violations by SureTrader.

The SEC has not shown the absence of a dispute of material fact regarding whether SureTrader improperly solicited U.S. persons, i.e., whether SureTrader committed any primary violation of Section 15(a)(1) or Rule 15a-6. Indeed, many material facts regarding SureTrader's practices and policies are heavily disputed. Because no primary violation has been established, the SEC is not entitled to summary judgment on either of its derivative claims against Gentile under Section 20. *Cf. In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1276 (11th

Cir. 2016) ("Because Hotz's complaint does not allege a primary violation, Hotz's § 20(a) claim fails."); *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 636 (11th Cir. 2010) ("As the Second Amended Complaint failed to allege primary liability under § 10(b), there can be no secondary liability under § 20(a)."); *Laperriere v. Vesta Ins. Grp., Inc.*, 526 F.3d 715, 725 (11th Cir. 2008). Assuming *arguendo* that SureTrader committed any primary violation, the SEC has not demonstrated it is entitled to summary judgment on either of the derivative claims under Section 20 asserted against Gentile.

> **A.** **The SEC is not entitled to summary judgment on Count II because Gentile sought to formulate SureTrader policy in compliance with Rule 15a-6 and acted in "good faith."**

Section 20(a) of the Exchange Act provides that "[e]very person who . . . controls any person liable under . . . this chapter . . . shall also be liable jointly and severally with and to the same extent as such controlled person . . . , *unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action*. 15 U.S.C. § 78t(a) (emphasis added). Put differently, Section 20(a) requires proof that "(1) the defendant had the power to control the general affairs of the primary violator, and (2) the defendant had the power to control the specific corporate policy that resulted in the primary violation." *Laperriere*, 526 F.3d at 723 (footnote omitted).

On the first, Gentile did not have the power to control SureTrader between December 2015 and February 2017, a significant portion of the Relevant Period (March 2016 to November 2019). Gentile resigned his position effective December 29, 2015, *see* Ex. S, and did not return until early-2017, *see* SEC SMF ¶ 13. More important, the record is replete with examples of Gentile's efforts to formulate corporate policy *in compliance with Rule 15a-6* during the time he was at SureTrader. This evidence undermines the notion that he controlled any "specific corporate policy" that resulted in any violation by SureTrader and raises a significant, genuine dispute of material fact regarding whether he acted in "good faith," a defense to liability under Section 20(a).

For example, in the fall of 2011 and thereafter, Gentile conferred with compliance consultant Arthur Quintero about steps SureTrader should take so as not to run afoul of Rule 15a-6. *See* Ex. W. On January 15, 2012, Gentile sent an email to Philip Dorsett stating: "We cannot send mail to clients in the U.S. So no overnight checks." Ex H. Gentile also pasted information from an article on Rule 15a-6 drafted by a law firm. *See id.* In December 2012,

Gentile exchanged emails with a digital marketing company called Blue Cherry Group, during which the representative from Blue Cherry indicated after speaking with Gentile: "We . . . manage many brands with campaigns in other languages (French, German, Italian, etc.). After reviewing your business and some of the limitations that you have with advertising in the US, there is much we can offer you with advertising in Canada, Mexico and the entire Latin American region." Ex. I.

On June 17, 2013, Gentile sent SureTrader employees Philip Dorsett and Justin Ritchie an email with the subject line "SEC Rule 15a-6," which attached a document titled "Swiss America Securities Limited [SureTrader] Policy and Procedures For Compliance with U.S. Securities and Exchange Commission Rule 15a-6 exemption," as well as guidance issued by the SEC dated March 21, 2013. Ex. J. In a follow-up email on the same thread, Gentile reiterated:

> We cannot advertise in the U.S. as part of SEC Rule 15a-6.
> We do not want to be seen as activ[el]y engaging with U.S. Clients. If they want to do business with us and the[y] contact us and push to open an account, th[e]n its ok to take it, but we have to deter them as much as we can to be compliant with the SEC rules.

Ex. K.

After being investigated by FINRA between 2013 and 2015 and receiving notice from FINRA in April 2015 that it would not recommend disciplinary action for the same conduct the SEC alleges here constitutes improper solicitation, *see* Exs. L, M, N, X, Gentile continued to take seriously SureTrader's obligation to comply with Rule 15a-6. On June 6, 2015, Gentile emailed SureTrader executive Antonio Collie, Chief Compliance Officer Philip Dorsett, and company attorney Carla Marin with the instruction: "Please read the latest from the SEC and tell me how you think this could impact the way we do business." Ex. O. On June 8, 2015, Dorsett responded that he would "do more research" but "in the interim I think we should be fine as long as we continue to act in line with Rule 15a-6." *Id.*

In August 2015, Gentile exchanged emails with SureTrader Janay Pyfrom, SureTrader Chief Marketing Officer, about a potential "affiliate" setting up advertising for SureTrader. *See* Ex. P. Pyfrom asked Gentile whether he agreed that Pyfrom should inform the potential "affiliate" that "[i]t's important that in any campaign it is clearly indicated that 'services are not intended for U.S. persons' and that United States is not targeted in their PPC [pay-per-click campaign]." *Id.* Gentile responded: "Yes. I agree." *Id.* Pyfrom forwarded a similar exchange to Gentile in September 2015 after she made clear:

> It would be best for CJ affiliates to limit their PPG ads to the top 3 countries:
>
> **Countries:**
> UK
> Canada
> Australia
> ***Strictly no advertising to the United States***
>
> We can make keyword recommendations, however we are not as strict as it relates to this.
>
> **The reason we will not tolerate PPC ads to U.S. persons:**
> Non-U.S. Broker-Dealers such as Swiss America Securities. Ltd. (SureTrader.com) maintaining an Internet Website can thus only accept a U.S. person if he or she has not been solicited either directly or indirectly through accessing their websites under the 'unsolicited' exemption Rule 15a-6.

Ex. Q. Gentile chimed in: "Please make sure they are not showing ads in the United States." *Id.* In December 2015, Pyfrom and Gentile exchanged emails about advertising provided by Yieldmo, Inc. Gentile directed Pyfrom to "ensure this [advertising campaign] has no U.S. impressions," and the "count[r]ies targeted" included: Canada, Australia, the United Kingdom, Italy, Israel, and Brazil. Ex. R.

 Gentile was not affiliated with SureTrader between December 2015 and February 2017. Accordingly, he cannot be derivatively liable for any violations during that period. When Gentile returned to SureTrader in early-2017 after more than a year away, he continued to stress the need to comply with Rule 15a-6.

 For example, in May 2017, a few months after he returned to SureTrader, Gentile endeavored to strengthen the pop-up disclosure on SureTrader's website so that the website would detect whether a user was attempting to access the website from the United States. *See* Ex. G, Frantz Tr. Day 2 256:6–11 ("Q. And do you remember, was it Mr. Gentile's idea to add a pop-up disclosure that customers have to agree for terms and conditions with their IP address from the US at that time [in May 2017]? A. Yes.·I'm not tech-savvy to know that we can block IP addresses."). Contemporaneous messages between Pyfrom and Frantz show that Pyfrom even insisted the modified pop-up disclosure appear for all visitors to the website until all the kinks could be ironed out:

```
[5/2/17, 9:25:46 AM] YANN: I saw the the disclaimer is up... its only for U.S. IP
address correct?
[5/2/17, 9:26:47 AM] Janay Pyfrom: At the moment it is up for all visitors until we
finish coding to all for this.
[5/2/17, 9:27:37 AM] YANN: how long will it take you think? i rather have it down
until the coding is done
[5/2/17, 9:29:05 AM] Janay Pyfrom: It could take one or 2 days. I wouldn't risk
having it down until then
```

*See* Ex. T, Def. Ex 49 to Frantz Dep. The SEC's other cherry-picked evidence for 2017 does not support a finding of summary judgment.

The SEC's Statement of Material Facts and Motion for Summary Judgment include minimal detail regarding any alleged conduct in 2018 or 2019 that constituted a violation of Rule 15a-6 by SureTrader, let alone that Gentile should be derivatively liable for any such violation during that time period. The Complaint is similarly sparse. It includes an allegation that "in February 2018, SureTrader offered coupons through Groupon." *See* Compl. ¶ 74. But this allegation has not been established and the SEC has abandoned it. *See* Gentile Tr. 112:22–113:6 ("[**Q.**] How long -- what period of time did SureTrader offer discounts through Groupon? **A.** Never. . . . We never had any deal with Groupon. If you go to Groupon website right now and type in SureTrader, this still comes up. It's not real.").[4] And the 2018 "Advertising Review" conducted by ITA found that SureTrader was not improperly soliciting U.S. persons. There is no basis on which the Court could enter summary judgment in favor of the SEC for any alleged violations of Rule 15a-6 between 2018 and 2019.

The above are just a few examples of many instances of conduct undertaken by Gentile predating and during the Relevant Period that demonstrate his efforts to direct SureTrader policy in accordance with Rule 15a-6 during the times he was affiliated with the company. In the face of such evidence, which the SEC ignores, the SEC does not cite a single case where a court granted summary judgment on the issue of a defendant's "good faith." Gentile's state of mind and whether he acted with the requisite intent for the SEC to sustain a violation of Section 20(a) is a quintessential question of fact reserved for a jury. *See Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 723 n.22 (11th Cir. 2012) (explaining that "[t]he verdict form asked for a determination of [a defendant's good faith] because it is a defense to control-person liability under § 20(a) that 'the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.'" (quoting 15 U.S.C. § 78t(a)).

This Court has denied summary judgment in similar circumstances. In *ConSeal International Inc. v. Neogen Corp.*, 488 F. Supp. 3d 1257 (S.D. Fla. 2020), defendant Neogen asserted that it was entitled to summary judgment because plaintiff ConSeal had allegedly acted

---

[4] This continues to be the case, notwithstanding that SureTrader has not actively operated since 2019. *See* Groupon, *Suretrader Promo Codes*, https://www.groupon.com/coupons/suretrader (advertising "SureTrader Top February 2024 Offers") (last accessed Feb. 26, 2024). If at one time a third-party marketing entity contacted Groupon about advertising for SureTrader, that does not mean SureTrader had an agreement with Groupon.

in "bad faith" when setting the price of its product under a contract that had an "open price term" allowing ConSeal to "determine and change [the price] in its sole discretion." *Id.* at 1275. After reviewing the conflicting evidence regarding the parties' intent, "the Court [was] unpersuaded . . . that [ConSeal's] alleged bad faith conduct is affirmatively proven and that no factual disputes remain. Looking at the record in the light most favorable to [nonmovant ConSeal] reveals significant disputes about the parties' intent[.]" *Id.* at 1277. The Court added that Neogen's "allegations of bad faith and commercial unreasonableness present significant questions of fact and require credibility determinations that this Court is unable to make at summary judgment." *Id.* at 1277–78.

The issue of Gentile's "good faith" raises significant questions of fact that cannot be resolved without weighing the evidence and making determinations of credibility. The Court should deny summary judgment on Count II of the SEC's Complaint.

> **B.    The SEC is not entitled to summary judgment on Count III because Gentile was not affiliated with SureTrader for a significant portion of the Relevant Period and the SEC has not established Gentile had actual control over transactions in question.**

Section 20(b) of the Exchange Act provides: "It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person. 15 U.S.C. § 78t(b). "[T]o satisfy a Section 20(b) claim, the defendant must not only have actual control over the primary violator, but have actual control over the *transaction* in question.'" *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 771 (S.D.N.Y. 2017) (quoting *Arkansas Teacher Ret. Sys. v. Bankrate, Inc.*, 18 F. Supp. 3d 482, 486 (S.D.N.Y. 2014)).[5]

Here, the evidence—viewed in light most favorable to Gentile—shows that SureTrader committed no Section 15(a)(1) violation. Furthermore, Gentile was not affiliated with and thus could not exercise control over SureTrader during a significant portion of the Relevant Period,

---

[5] The SEC cites an unpublished decision from the Northern District of Georgia for the proposition that Section 20(b) does not require proof of "control." *See* Mot. at 19. This appears to be against the weight of authority. *See, e.g.*, *Cohen v. Citibank, N.A.*, 954 F. Supp. 621, 630 (S.D.N.Y. 1996) ("Few reported cases discuss the applicability of Section 20(b), but it is clear that the section requires a showing that a 'controlling person knowingly used the controlled person to commit the illegal act.'" (quoting *Moss v. Morgan Stanley*, 553 F. Supp. 1347, 1362 (S.D.N.Y.), *aff'd*, 719 F.2d 5 (1983), *cert. denied*, 465 U.S. 1025 (1984)); *see also SEC v. Coffey*, 493 F.2d 1304, 1318 (6th Cir. 1974) ("Under section 20(b), there must be shown to have been knowing use of a controlled person by a controlling person before a controlling person comes within its ambit. Without such a restriction, every link in a chain of command would be personally criminally and civilly liable for the violations of inferior corporate agents.").

and the SEC fails to demonstrate that Gentile exercised actual control over transactions that might have given rise to an alleged violation of Rule 15a-6. As explained above, the use of a pop-up window is grounded squarely in the SEC's own interpretive guidance, and SureTrader's negotiations with "affiliates" for advertising were overseen not by Gentile but by SureTrader Deputy Director Justin Ritchie. *See* Part I.B, *supra*.

The evidence presented by the SEC is insufficient. For example, at various times, the SEC points to interactions between SureTrader and customer Mazen Agha as alleged evidence of improper solicitation. But the SEC omits or elides several important facts, most importantly that Agha appears to have *not* been a U.S. person. For example, the SEC alleges that Agha received emails from SureTrader in August and October 2016, SEC SMF ¶¶ 39, 46–47. Gentile had resigned from SureTrader in December 2015 and, as the SEC acknowledges, did not return until February 2017. *See id.* ¶ 13. Additionally, when opening his account, Agha submitted an employment authorization card set to expire August 9, 2017, indicating that his country of birth was "Syria" and that the card was "**NOT VALID FOR REENTRY to U.S.**" *See* Ex. U. There is thus a question of whether Agha even qualifies as a "U.S. person" for purposes of Rule 15a-6. The SEC cites no other customer affidavits other than Agha's.

The SEC similarly omits key facts regarding SureTrader customer Orestes Jimenez. The SEC attaches no declaration from Jimenez, instead relying on three emails Jimenez received from SureTrader in 2017 after he had already signed up for a "demo" and started opening an account, *see* SEC Exs. 18, 19, 20, i.e., after he would have already had to navigate through the SureTrader website, including its pop-up disclaimer indicating that SureTrader was not intended for U.S. persons. None of these emails were from Gentile or reference Gentile. All three emails do indicate, however, "You may unsubscribe or change your contact details at any time." *See id.* There is no inference of solicitation connected to Gentile or an particular person at SureTrader for that matter. Rather, it appears Jimenez was an active day trader and actively sought out SureTrader.

Conclusory allegations unsupported by record evidence cannot support a finding of a primary violation of Rule 15a-6 on summary judgment, let alone a derivative claim for liability against Gentile under Section 20(b). *See, e.g.*, *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d at 771 (dismissing plaintiff's Section 20(b) claims for alleged misstatements in certain public filings where "[t]here are, in fact, no concrete allegations as to [defendant] Gradin's activities in

connection with, or responsibility for, such filings"). Summary judgment on Count III should be denied.

**III.     The SEC is not entitled to summary judgment on Gentile's affirmative defenses.**

The SEC provides a cursory discussion in support of its efforts to preclude all of Gentile's affirmative defenses. Several of these defenses are supported by record evidence developed during the course of discovery in this action. For example, as the SEC notes, Gentile's Eleventh Affirmative Defense concerns "spoliation of evidence" and is the subject of a fully briefed Motion for Sanctions filed by Gentile. [*See* ECF No. 201]. Similarly, Gentile has testified, other public documents confirm, and the SEC has not produced evidence to the contrary that Gentile was actively cooperating with the U.S. government between approximately 2012 to 2015, while the SEC alleges Gentile was in control of SureTrader.

**CONCLUSION**

For all the foregoing reasons, the SEC's Motion for Summary Judgment should be denied. Drawing all inferences in the light most favorable to nonmovant Gentile, a reasonable jury could return judgment in his favor. This action should proceed to a jury trial on the merits, consistent with the dictates of the Seventh Amendment.

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), Gentile respectfully requests oral argument on the SEC's Motion for Summary Judgment. There are voluminous facts at issue, as demonstrated in the SEC's Motion and this Opposition. Gentile estimates that one hour would be sufficient for argument.

Dated: February 27, 2024            Respectfully submitted,

                                    FORD O'BRIEN LANDY LLP

                                    By:   _/s/ Gabriela M. Ruiz_____
                                          Gabriela M. Ruiz
                                          Fla. Bar. 46844
                                          One Biscayne Tower
                                          2 South Biscayne Boulevard, Suite 3200
                                          Miami, Florida 33131
                                          Tel.: (786) 310-1135 (main)
                                          gruiz@fordobrien.com

15

Adam C. Ford (admitted *pro hac vice*)
Matthew A. Ford (admitted *pro hac vice*)
Stephen R. Halpin III (admitted *pro hac vice*)
275 Madison Avenue, 24th Floor
New York, New York 10016
Tel.: (212) 858-0040 (main)
aford@fordobrien.com
mford@fordobrien.com
shalpin@fordobrien.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Defendant Guy Gentile's Opposition to the Plaintiff SEC's Motion for Summary Judgment, dated February 27, 2024, to be served via CM/ECF on the following counsel for Plaintiff:

Alice Sum
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131
(305) 982-6300
sumal@sec.gov

Alise Meredith Johnson
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131
(305) 982-6385
johnsonali@sec.gov

Russell Koonin
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131
305-982-6390
kooninr@sec.gov

                                        */s/ Gabriela M. Ruiz*
                                        Gabriela M. Ruiz