# EXHIBIT B

Page 58

1    P. DORSETT
2  input into the unsolicited acknowledgment
3  agreement?
4       A.    I was the one who put it
5  together officially and put the name at the
6  signature line there.
7       Q.    So, to be clear, you officially
8  put the unsolicited acknowledgment
9  agreement together?
10      A.    The very first one.  The
11 subsequent ones, I had no input on.
12      Q.    This refreshes your
13 recollection that your testimony throughout
14 yesterday that the unsolicited
15 acknowledgement agreement was created
16 around February 2012 was not accurate?
17      A.    Well, it had to be in November,
18 it was from the beginning.
19           MR. FORD:  We can take a break
20      now.
21           MR. KOONIN:  We still don't
22      have them.  So, find the documents.
23           MR. FORD:  You have them
24      because they're documents that you
25      produced.

Page 59

1    P. DORSETT
2           MR. KOONIN:  No, that's not it.
3      You love to say 30,000 plus.  So,
4      give us the ones you're using today
5      in your deposition, which you
6      acknowledged is the appropriate thing
7      to do.  Send us the link and that's
8      the end of the conversation.
9           MS. SUM:  Either send a link or
10     send it literally by e-mails.  This
11     isn't that difficult to do so.
12     Ms. Filippelli has been bringing up
13     these exhibits one by one pursuant to
14     your direction.  So, she has access
15     to e-mails, she has our e-mail
16     addresses.  Please have
17     Ms. Filippelli -- I'm not trying to
18     be disrespectful to you -- we request
19     the use, as you are an attorney in
20     this case to send us the documents
21     you've been pulling up as Mr. Ford
22     has been instructing you.
23          MR. FORD:  Okay, see you all in
24     ten minutes.  Thank you.
25          (At this time, there was a

Page 60

1    P. DORSETT
2      pause in the proceeding.)
3       Q.    Mr. Dorsett, during that break,
4  did you have any conversations with anybody
5  about your testimony here today?
6       A.    No.
7       Q.    When we left off, we were
8  looking at Exhibit 20, which is in an
9  e-mail that you provided to us or an e-mail
10 the SEC provided to us.
11          MR. FORD:  Can we pull that
12     document back up?  If we can scroll
13     down to the e-mail from Mr. Walker.
14      Q.    Do you see in that first
15 sentence where it says, "Hi, I was at the
16 Investors Underground seminar last
17 evening," do you see that?
18      A.    Yes.
19      Q.    Do you know what Investors
20 Underground is?
21      A.    I remember that name.  I think
22 that's one of our affiliates.
23      Q.    You had testified yesterday
24 that it was Mr. Gentile's responsibility to
25 work with the members of the affiliate

Page 61

1    P. DORSETT
2  program, do you recall that?
3       A.    Yeah, he dealt directly with
4  the affiliates in the beginning.
5       Q.    Did you ever deal with any
6  members of the affiliate program?
7       A.    There would have been times
8  when I had direct conversations with Tim
9  Sykes and some of the other -- like the
10 persons who were in charge of the
11 affiliates, yes.
12      Q.    What about Investors
13 Underground, did you have any
14 communications with anybody from Investors
15 Underground?
16      A.    I probably did.  I remember
17 they were one of the bigger ones.
18      Q.    Do you recall signing any of
19 the agreements between SureTrader and any
20 members of the affiliate program?
21      A.    I do not recall.  Now, in the
22 beginning, I don't know if Guy would have
23 had maybe signed those, but at some point,
24 Justin took over all of that.
25      Q.    When you say in the beginning,

Philip Dorsett
February 28, 2023

| | Page 242 |
|---|---|
| 1 | P. DORSETT |
| 2 | that you believe could reasonably be |
| 3 | expected to reveal your identity and |
| 4 | explain the basis of your belief that your |
| 5 | identity would be revealed if the documents |
| 6 | were disclosed to a third party," do you |
| 7 | see that? |
| 8 | A.   Yes. |
| 9 | Q.   This says, "All of these |
| 10 | documents were procured from my personal |
| 11 | e-mail account," do you see that? |
| 12 | A.   Yes. |
| 13 | Q.   And then it says, "Hence, |
| 14 | Mr. Gentile will know that it was me who |
| 15 | gave them to you.  I have also noticed that |
| 16 | they cannot all fit here.  In the past when |
| 17 | the SEC wanted info from us, they would do |
| 18 | so by the requesting the Securities |
| 19 | Commission of the Bahamas and request the |
| 20 | information from us and we would be |
| 21 | compelled to give it," do you see that? |
| 22 | A.   Yes. |
| 23 | Q.   When you say the information |
| 24 | would not fit here, how much information |
| 25 | did you have at that time? |

| | Page 243 |
|---|---|
| 1 | P. DORSETT |
| 2 | A.   I can't say.  I don't know. |
| 3 | Q.   Was it thousands of documents? |
| 4 | A.   Certainly not.  In addition, |
| 5 | because I see you said something here -- |
| 6 | Q.   Mr. Dorsett, there is no |
| 7 | pending question. |
| 8 |      "However, Mr. Gentile would |
| 9 | have been aware and would have to have |
| 10 | approved anything I sent to local |
| 11 | regulators," do you see that? |
| 12 | A.   Yes. |
| 13 | Q.   And it says, "However, now that |
| 14 | he has officially resigned from our firm, |
| 15 | if the SEC were specifically asking the SCB |
| 16 | to demand of us all documents that show any |
| 17 | relationship between Traders Cafe, Guy |
| 18 | Gentile, Momu Mia, then I can send over all |
| 19 | I can get my hands on, more than I can |
| 20 | attach here," do you see that? |
| 21 | A.   Correct. |
| 22 | Q.   At the time you wrote that, |
| 23 | this was approximately -- strike that. |
| 24 |      This was several months after |
| 25 | the communications with Ms. Suh from the |

| | Page 244 |
|---|---|
| 1 | P. DORSETT |
| 2 | SEC that we looked at earlier.  In which, |
| 3 | attorney Michael Miller advised that it |
| 4 | could not produce documents directly to the |
| 5 | SEC; isn't that correct? |
| 6 | A.   You could not produce client |
| 7 | documents. |
| 8 | Q.   Okay. |
| 9 | A.   Guy however, was not a client. |
| 10 | Q.   So, is it your testimony that |
| 11 | -- strike that. |
| 12 |      You said that you were going to |
| 13 | provide all you could get your hands on, do |
| 14 | you see that? |
| 15 | A.   Yes, if they sent that request |
| 16 | through the the SCB, because I think it was |
| 17 | in reference to a client as I noted, Guy is |
| 18 | not a client. |
| 19 | Q.   That included documents with |
| 20 | passwords belonging to U.S. persons; isn't |
| 21 | that true? |
| 22 | A.   No. |
| 23 |      MR. FORD:  We're going to come |
| 24 |   back to this, but we'll pull up |
| 25 |   another exhibit.  This is Exhibit 19. |

| | Page 245 |
|---|---|
| 1 | P. DORSETT |
| 2 | Q.   As we pull this up, |
| 3 | Mr. Dorsett, are you familiar with a |
| 4 | legislation called the Computer Fraud and |
| 5 | Abuse Act, or CFAA, it's a United States |
| 6 | Criminal Legislation? |
| 7 | A.   I can't say that I am, no. |
| 8 | Q.   It also provides civil |
| 9 | remedies, are you familiar with it? |
| 10 | A.   No. |
| 11 | Q.   This is an e-mail from Karen |
| 12 | Gentile, Karen@dastrader.com, do you know |
| 13 | who Karen Gentile is? |
| 14 | A.   Yes. |
| 15 | Q.   Do you know where she lived at |
| 16 | the time she sent this e-mail on |
| 17 | November 7, 2011? |
| 18 | A.   I think she lived in New York. |
| 19 | Q.   And it's sent to |
| 20 | info@SureTrader.com? |
| 21 | A.   Yes. |
| 22 | Q.   If we scroll down, this has a |
| 23 | bates stamp of SEC-FL-03848-E-001704, that |
| 24 | is indicating you provided this document to |
| 25 | the SEC and Miami and they produced it to |