UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-21079-BLOOM/Torres

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

    Defendants.

_____/

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Securities and Exchange Commission (the "Commission" or "SEC") files its Reply Memorandum in Further Support of its Motion for Summary Judgment, ECF No. [222].

## I. INTRODUCTION

Gentile's Response to the SEC's Motion for Summary Judgment misses the forest for the trees. Gentile laments the consequences of the SEC's investigation into his and SureTrader's conduct and makes a baseless accusation that this litigation constitutes "regulatory extortion." But Gentile ignores the central issue in this case: Gentile and SureTrader have capitalized on a narrow exemption to registration with the SEC and manufactured a whole business model where, as of February or March 2018, over 78% of SureTrader active traders were located in the U.S. Rule 15a-6(a)(1) was not created to empower foreign broker-dealers like SureTrader to have customers in the U.S. constitute the majority of its total customer base. Nor was the exemption intended to allow foreign broker-dealers to help day traders in the U.S. circumvent U.S. rules that regulate pattern day trading. The narrow exception in Rule 15a-6(a)(1) simply does not stretch to the lengths that Gentile and SureTrader need to avoid a finding of registration violations.

The basic facts in this case are undisputed. SureTrader is a foreign broker-dealer that services customers located in the U.S. and is not registered with the SEC. To qualify for an exemption from registration, SureTrader was not allowed to solicit customers located in the U.S.

While the scope of the "unsolicited exemption" should be construed narrowly, what constitutes solicitation should be interpreted broadly, including inducing or attempting to induce a transaction or an ongoing relationship. The long-established guidance promulgated by the SEC regarding foreign broker-dealer advertising on an internet website is clear: there must be a prominent disclaimer *and a refusal to provide services* to any potential customer if the foreign broker-dealer has reason to believe the customer is, or the customer indicates that they are, a U.S. person based on the information they provide. *Statement of the Commission Regarding the Use of Internet Web Sites to Offer Securities, Solicit Securities Transactions or Advertise Investment Services Offshore,* SEC Release No. 1125, 1998 WL 128173 at *12 (March 23, 1998) (emphasis added).

Here, even though many of SureTrader's customers listed U.S. addresses in their applications and submitted documentation reflecting U.S. addresses, SureTrader did not deny their applications. In fact, while SureTrader often posted disclaimers that its services were intended for non-U.S. persons, there is absolutely no evidence that it refused to provide service to the thousands of customers it serviced that were located in the U.S. Thus, with respect to SureTrader's website and advertising on online day trading school websites based in the U.S., as well as email messages to potential U.S. customers, there is no genuine dispute as to a material fact that SureTrader solicited customers in the U.S., and this Court should enter summary judgment in favor of the SEC on Count I.

Additionally, there are no genuine disputes of material fact as to Counts II and III because Gentile has admitted he controlled SureTrader from the date it was formed until the end when the Bahamas Supreme Court appointed liquidators, except between December 2015 to early 2017 when he claims he had resigned. Gentile details multiple policies and procedures he claims he put in place with respect to marketing to and soliciting customers in the U.S. The undisputed evidence shows that SureTrader did not follow these policies when Gentile was involved with the company, and Gentile should be held liable just the same as SureTrader for its violations of Section 15(a). Finally, there are no genuine issues of disputed fact regarding all of Gentile's Affirmative Defenses, except for the Eleventh Affirmative Defense concerning alleged spoliation of evidence, which will be addressed via Gentile's Renewed Motion for Sanctions for Spoliation of Evidence, ECF No. [201], which is fully briefed.

## II.     ARGUMENT

**A.     There Is No Dispute As To Any Material Fact That SureTrader Was an Unregistered Foreign Broker-Dealer That Was Not Exempt From Registration Under Rule 15a-6 And Thus Violated Section 15(a)(1)**

As a starting point, Gentile concedes in his Response that SureTrader was a foreign broker that effected transactions with U.S. persons and was not registered with the SEC. Thus, the only dispute for the purposes of the SEC's Motion for Summary Judgment on Count I of the Complaint is whether SureTrader qualifies for an exemption from the registration requirements of Section 15(a)(1) of the Exchange Act. Contrary to Gentile's assertions, however, the issue of whether SureTrader solicited customers in the U.S. to engage in securities transactions is not a fact-intensive question that needs to be decided by a jury.

1.     "Solicitation" Is Construed Broadly And Can Be Determined As A Matter of Law

In this case, there is only one exemption that could possibly apply—Rule 15a-6(a)(1), which provides that a "foreign broker or dealer shall be exempt from the regulation requirements of Sections 15(a)(1) or 15B(a)(a) of the Exchange Act to the extent that the foreign broker or dealer (1) [e]ffects transactions in securities with or for persons that have not been solicited by the foreign broker dealer."

Solicitation under Rule 15a-6 is construed broadly to include both efforts to induce a single transaction and efforts to develop an ongoing securities business relationship. *See Registration Requirements for Foreign Broker-Dealers*, Adopting Release No. 34-27017, 54 FR 30013, 30017-18, 1989 WL 27982, at \*6 (July 18, 1989) (in the context of the Exchange Act's broker-dealer registration requirement, solicitation includes "any affirmative effort by a broker or dealer intended to induce transactional business for the broker-dealer or its affiliates," including "efforts to induce a single transaction or to develop an ongoing securities business relationship"). In fact, the SEC "generally believes that a narrow construction of solicitation would be inconsistent with the express language of Section 15(a)(1), which refers to both inducing or attempting to induce the purchase or sale of securities." *Id*. at \*7.

The SEC has also expressed a limited window for foreign broker-dealer advertising on an internet website: "[T]he Commission will not consider a foreign broker-dealer's advertising on an Internet Web site to constitute an attempt to induce a securities transaction with U.S. persons if the foreign broker-dealer takes measures reasonably designed to ensure that it does not effect securities

3

transactions with U.S. persons as a result of its Internet activities.  Under our general principles, as applied in the broker-dealer context, a foreign broker-dealer generally would be considered to have taken measures reasonably designed to ensure it does not effect securities transactions with U.S. persons as a result of its Internet activities if it:

> • Posts a prominent disclaimer on the Web site either affirmatively delineating the countries in which the broker-dealer's services are available, or stating that the services are not available to U.S. persons; *and*
>
> • Refuses to provide brokerage services to any potential customer that the broker-dealer has reason to believe is, or that indicates that it is, a U.S. person, based on residence, mailing address, payment method, or other grounds."

SEC Release No. 1125, 1998 WL 128173 at *12 (March 23, 1998) (emphasis added).

To be clear, the guidance promulgated by the SEC is conjunctive: there must be a prominent disclaimer *and* a refusal to provide services to any *potential* customer if the foreign broker-dealer has reason to believe the customer is, or the customer indicates that they are, a U.S. person based on the information they provide.  Thus, with respect to SureTrader's website and advertising on online day trading school websites, if there is no dispute as to a genuine material fact that SureTrader failed to comply with both requirements, then this Court can enter summary judgment in favor of the SEC on Count I.  Gentile incorrectly argues that SureTrader committed no violation of Section 15(a)(1) because it did not "improperly 'solicit'" customers in the U.S.  The word "improperly" is not the standard set forth in Section 15(a)(1), Rule 15a-6, SEC Adopting Release No. 34-27017, or any other guidance issued by the SEC.  For the purposes of evaluating the exemption, the only issue is whether SureTrader solicited potential customers located in the U.S.; there is no value judgment regarding whether a solicitation was proper or improper.[1]

---

[1] Section 15(a)(1) does not require a showing of scienter to establish a violation because it imposes strict liability.  *SEC v. Merchant Capital*, 311 Fed. Appx. 250, 252 (11th Cir. 2009).  The SEC need only show that a defendant functioned as a "broker" or "dealer" as the term is defined in the Exchange Act, regardless of the person's intent, to establish a violation.  Thus, even if Gentile and SureTrader believed their actions to be "proper," their solicitation of customers in the U.S. would still violate Section 15(a)(1) if they cannot meet the Rule 15a-6 exemption.

4

> 2. <u>SureTrader Solicited Its Customers Through The SureTrader Website And Its Advertising on Online Day Trading Schools Websites</u>

As a threshold matter, Gentile does not deny that the SureTrader website and its advertising on online day trading school websites constituted affirmative efforts intended to induce transactional business. Nor could he. SureTrader's website is replete with page after page providing information about why a customer should sign up, the benefits of using SureTrader, and the fees and costs associated with using SureTrader. SEC's SMF ¶ 37a. SureTrader's "banners" prominently displayed on the day trading school websites, Warrior Trading and Day Trading Radio, were equally obvious that SureTrader was advertising its services and soliciting customers. *Id.* at ¶ 42, Ex. 22, 23. The only dispute—per Gentile—is whether SureTrader's advertising through its website and the online day trading school websites constitutes solicitation of customers in the U.S.

Gentile's main defense is that SureTrader's website contained disclaimers that it was not intended for U.S. persons and a pop-up blocker, and SureTrader's advertising with online day trading school websites contained similar disclaimers. Even if the Court accepts *arguendo* Gentile's argument—which the SEC disputes—SureTrader nonetheless accepted and opened accounts for thousands of customers located in the U.S. even though potential customers indicated they were U.S. persons on their applications and supporting documentation, such as driver's licenses and bank statements. The applications for Christopher Penalver, Franklin Martin, Sheldon King, Marcello Martin, and Stephen Derong all listed U.S. addresses, and the supporting documentation for each application similarly reflected U.S. addresses. *Id.* at ¶¶ 49, Exs. 35, 36, 37, and 38; 67, Ex. 34. In fact, the SureTrader Active Traders List, which was generated in February or March 2018, reflects that 2,216 of the 2,824 traders listed—78.47 percent—had "US" listed in the "Country" column. *Id.* at ¶ 27. SureTrader's failure to reject potential customers located in the U.S. is even more conspicuous because it identified potential customers' "Country of Residence" in its "Money Laundering Risk Assessment" document for each potential customer. For example, in Penalver, F. Martin, King, M. Martin, and Derong's Money Laundering Risk Assessment document, which was produced by the Joint Official Liquidators in response to the Letters Rogatory, "USA" or "US" was listed in the "Country of Residence" column. SEC's Reply SMF at ¶ 89.

Gentile argues that with Warrior Trading and Day Trading Radio, their students came from all over the world, not just the U.S. and they never agreed to improperly solicit U.S. investors on behalf of SureTrader.  Again, "improperly" solicit is not the standard, and Gentile misses the point.  Gentile admits that SureTrader knew that Warrior Trading and Day Trading Radio had students based in the U.S. and does not dispute that the day trading schools were based in the U.S.; yet SureTrader proceeded to advertise its services on the schools' websites and open accounts for students who provided U.S. addresses and listed Warrior Trading as the source of referral.  SEC's SMF at ¶ 49.  While Warrior Trading has students anywhere in the world, it is "predominantly for U.S. traders."  SEC Reply SMF at ¶85.  Warrior Trading knew that SureTrader accepted U.S. traders.  *Id.*  "U.S. traders were not allowed to participate in the broker rebate program, but that didn't mean that U.S. traders wouldn't end up signing up and using SureTrader anyways because they were a tool that helped them trade below [Patter Day Trading limits]." *Id*.

Clearly, SureTrader knew its potential customers were located in the U.S. because it opened accounts for customers whose application packages reflected U.S. addresses and it created Money Laundering Risk Assessment documents reflecting U.S. as the "Country of Residence."  SureTrader may have attempted to comply with the letter of the SEC's guidance by including disclaimers, but it failed to comply with the second requirement in the SEC's 1998 Website Release that a foreign broker-dealer should refuse to provide services to any potential customer that the broker-dealer has reason to believe is, or that indicates that it is, a U.S. person, based on residence, mailing address, payment method, or other grounds."  There is simply no evidence in the record that SureTrader turned away a single U.S. customer; to the contrary, the undisputed evidence in the record establishes that SureTrader's U.S. customer base ballooned to 78%. The SEC submits that these are material facts that are not and cannot be in dispute.

    3.  <u>SureTrader Solicited Its Customers Through Email Messages</u>

The SEC provided two examples where SureTrader solicited customers via email messages who were located in the U.S.:  Mazen Agha and Orestes Jimenez.  The only argument that Gentile attempts with respect to Agha is that he may not have been a "U.S. person" because Agha submitted an employment authorization card with his application indicating that his country of birth was Syria and the card was "NOT VALID FOR REENTRY to U.S."  First, this argument is irrelevant because SureTrader recognized Agha's "Country of Residence" as "USA" in his Money Laundering Risk Assessment.  SEC Reply SMF at ¶ 90.  Second, Rule 15a-6 is not limited to U.S.

6

citizens as Gentile seems to imply; instead, the Rule defines "U.S. person" "based on residence, mailing address, payment method, or other grounds." SEC Release No. 1125, 1998 WL 128173 at *12. Gentile wholly fails to address the SEC's argument that SureTrader also made efforts with existing U.S. customers—here, Agha—to "develop an ongoing securities business relationship."

With respect to Jimenez, Gentile only states that the emails were not from him and do not mention him. Gentile does not dispute that SureTrader sent an email to Jimenez with a subject line of "Trading Tips You Can't Afford to Ignore" and offering $99 in free trades (SMF ¶ 38), which plainly attempts to induce Jimenez to sign up with SureTrader. Gentile also does not dispute that Jimenez opened an account minutes after the preceding email or that SureTrader sent a reminder email on April 12, 2017, to induce Jimenez to trade through SureTrader. Gentile claims, without any evidence, that Jimenez "would have already had to navigate through the SureTrader website, including its pop-up disclaimer that SureTrader was not intended for U.S. persons" and that "Jimenez was an active day trader and actively sought out SureTrader." Like the other customers listed above, SureTrader recognized Jimenez's "Country of Residence" as "USA" in his Money Laundering Risk Assessment, yet still chose to open an account for him. SEC Reply SMF at ¶ 91. Additionally, while a foreign broker can send confirmations of transactions to present clients, a "foreign broker-dealer seeking to rely on Rule 15a-6(a)(1) may not, however, provide a U.S. investor with any document that includes advertising or other material intended to induce either a securities transaction or transactional business for the foreign broker-dealer or its affiliates." FAQ, Question 3, citing Rule 15a-6 Adopting Release at 54 FR 30017-30018.

4. FINRA's Actions With Respect To SureTrader And the ITA "Advertising Review" Are Irrelevant

Gentile next raises FINRA's investigation of Gentile and its decision in April 2015 to not recommend disciplinary action against Gentile as well as SureTrader hiring ITA Compliance to conduct an "Advertising Review." As to the former, any purported evidence of the outcome of FINRA's investigation of Gentile is irrelevant for the purposes of summary judgment or for trial, for the reasons set forth in the SEC's Omnibus Motion in Limine, ECF No. [220]. Regarding the latter, that ITA Compliance may not have uncovered "evidence of [SureTrader] targeting U.S. individuals through advertising to promote its online trading services" in February 2018, is beside the point. First, ITA Compliance's review occurred in early 2018—effectively a snapshot of SureTrader's operations at a moment in time—and the report fails to include a review of, among

7

other things, SureTrader's archived webpages, SureTrader's advertising with online day trading schools, or SureTrader's emails to customers prior to the review. Also notably absent in the review was an analysis of the current makeup of SureTrader's customers and how they became customers of SureTrader.

Ultimately, this Court should enter summary judgment on Count I, finding that SureTrader is not subject to a registration exemption under Rule 15a-6 because the basic evidence of SureTrader's solicitation of customers in the U.S., as well as its decisions to accept thousands of customers it recognized as located in the U.S., is undisputed. During the Relevant Period, SureTrader made no genuine effort to decline to provide brokerage services to any U.S. customer. Indeed, there is no evidence that SureTrader prohibited *any* U.S. customer from opening an account with and trading through SureTrader.

**B.     Gentile Is Liable Under Section 20(A) Of The Exchange Act As A Control Person Because His Own Statement Of Material Facts Demonstrates He Was In Control**

Gentile attempts to argue that he cannot be held responsible under Section 20(a) of the Exchange Act because he acted in good faith and tried to formulate "corporate policy in compliance with Rule 15a-6 during the time he was at SureTrader." However, Gentile demonstrates the exact opposite of good faith with his actions and omissions from the founding of SureTrader.

For example, Gentile cites to an email he sent SureTrader employees Philip Dorsett and Justin Ritchie concerning "SEC Rule 15a-6," which attached a document titled "Swiss America Securities Limited [SureTrader] Policy and Procedures For Compliance with U.S. Securities and Exchange Commission Rule 15a-6 exemption" ("Policy"). Gentile's SMF at Ex. J, pp. 1-2. Conspicuously absent from the Policy is language consistent with the SEC's guidance about SureTrader refusing to provide services to any potential customer SureTrader has reason to believe is, or that indicates that it is, a U.S. person, based on residence, mailing address, payment method, or other grounds. On its face, the Policy does not even attempt to set out procedures for how to process new customer applications that list U.S. addresses and whether SureTrader should refuse to approve an application if SureTrader receives an application from a person located in the U.S. In addition to the Policy, Gentile references other emails with SureTrader employees where the issue of refusing to provide service is similarly not addressed.

Gentile's reliance on this Policy is even more egregious because SureTrader failed to follow its own Policy in at least five instances[2]:

| Policy Language | SureTrader's Non-Compliance |
|---|---|
| Do not advertise in the U.S. | SureTrader advertised on online day trading school websites based in the U.S., Warrior Trading and Day Trading Radio. SMF at ¶ 51, Exs. 22, 23, 27, 28. |
| Do not put a U.S. phone/fax on the website. | SureTrader's "Contact" webpage listed U.S. phone numbers. *Id.* at ¶ 37c, Ex. 13. |
| Do not charge fee in U.S. dollars, use BSD dollars. | SureTrader's "Account Fees" webpage showing fees in U.S. dollars. *Id.* at ¶ 37a, Ex. 11. |
| Do not compare our firm to U.S. firms. | SureTrader's "Pricing Comparison" webpage comparing SureTrader to U.S. firms. *Id.* at ¶ 37e, Ex. 15. |
| Do not discuss taxes. | SureTrader's webpages with link to Resources, FATCA Compliance, at bottom right of webpages. *Id.* at ¶ 37, Exs. 11, 15. |

Gentile does not provide any evidence on whether the Policy was superseded at any subsequent point. Gentile also attempts to split hairs for the events that occurred during the Relevant Period, arguing that he was not affiliated with SureTrader between December 2015 and February 2017. Even if the Court accepts this carved out time period as true, which the SEC disputes, SureTrader's Policy and other procedures that Gentile admits to in his Response to the Motion for Summary Judgment demonstrate that he had the power to control both the general affairs of SureTrader and the implementation concerning Rule 15a-6 and customers located in the U.S. at all other times during the Relevant Time Period.[3] Gentile's control over SureTrader and its policies led to thousands of accounts being opened for customers located in the U.S. SEC SMF at ¶ 27.

The SEC submits that while good faith is often an issue submitted to the jury to decide, the evidence proffered by Gentile regarding SureTrader policies, and his control over same, cannot—on their face—constitute good faith as a matter of law because SureTrader violated the Policy and they so obviously fail to address the elephant in the room: refusing to open accounts for a potential

---

[2] These webcaptures were for the webpages in 2017 and 2018, when Gentile had allegedly returned to SureTrader.
[3] There is evidence that Gentile remained involved in SureTrader's operation during the time period. *See* SEC SMF at ¶ 14.

customer when SureTrader had reason to believe or the customer indicated that they are a U.S. person, based on residence, mailing address, payment method, or other grounds.

Therefore, pursuant to Section 20(a) Gentile should be held equally liable as SureTrader is for violations of Section 15(a)(1) of the Exchange Act, and summary judgment on Count II should be entered against Gentile.

C.   **Gentile Is Liable Under Section 20(b) Of The Exchange Act**

For the same reasons that Gentile is liable as a control person under Section 20(a) of the Exchange Act, Gentile should also be held liable for acting through SureTrader to commit violations of Section 15(a)(1) of the Exchange Act as prohibited by Section 20(b). Gentile knew that SureTrader was not allowed to solicit customers in the U.S. and has openly admitted to controlling SureTrader's policies concerning compliance with Rule 15a-6 since the inception of SureTrader, as evidenced by, among other things, the steps he took through SureTrader to circumvent such restrictions through the implementation of the pop-up blocker and the Unsolicited Acknowledgment Agreement. SMF ¶ 64, 68. Thus, summary judgment should be entered on Count III against Gentile.

D.   **Gentile's Affirmative Defenses Fail as a Matter of Law, and Summary Judgment Should Be Entered Against Gentile**

Gentile complains that the SEC's discussion of his Affirmative Defenses is cursory, but there are no genuine issues of disputed fact regarding all but the Eleventh Affirmative Defense of alleged spoliation of evidence. Gentile has not cited any evidence to support his other Affirmative Defenses in his Response or Statement of Material Facts. Gentile's argument that the SEC has not produced evidence to the contrary that Gentile was "actively cooperating with the U.S. government between approximately 2012 to 2015" mischaracterizes Gentile's First, Sixth, Seventh, Eighth, Ninth, and Tenth Affirmative Defenses. The issue is not whether Gentile was "cooperating," but rather that Gentile claims that the Government (including the SEC) approved of SureTrader's solicitation policies. Regardless, Gentile has failed to produce any evidence of such approval. Thus, the Court should enter summary judgment on all of Gentile's Affirmative Defenses, except the Eleventh Affirmative Defense, which addresses purported spoliation of evidence and will be decided via Gentile's Renewed Motion for Sanctions for Spoliation of Evidence, ECF No. [201].[4]

---

[4] Upon the Court denying Gentile's Renewed Motion for Sanctions, the Court can also enter summary judgment on Gentile's Eleventh Affirmative Defense.

### III. CONCLUSION

For the foregoing reasons, summary judgment should be entered in favor of the SEC on Counts I, II, and III of the Complaint and against Gentile on his Affirmative Defenses, except his Eleventh Affirmative Defense.

March 11, 2024.

Respectfully submitted,

/s/ Alice Sum
Alice Sum
Senior Trial Counsel
Fla Bar No.: 354510
Phone: (305) 416-6293
Email: sumal@sec.gov

Alise Johnson
Senior Trial Counsel
Fla. Bar No. 0003270
Direct Dial: (305) 982-6385
Email: johnsonali@sec.gov

*Attorneys for Plaintiff*
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154