UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-21079-BB

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

    Defendants.

## DEFENDANT GUY GENTILE'S SURREPLY IN FURTHER OPPOSITION TO PLAINTIFF SEC'S MOTION FOR SUMMARY JUDGMENT

    Defendant Guy Gentile, by and through his undersigned counsel, files this Surreply in further Opposition to the SEC's Motion for Summary Judgment [ECF No. 222]. As Gentile explained in his Motion for Leave to File this Surreply [ECF No. 245], which the Court granted [ECF No. 246], the SEC introduces new facts and legal argument in its Reply brief [ECF No. 242] and Reply Statement of Material Facts ("Reply SMF") [ECF No. 243].

    For the reasons below and in Gentile's contemporaneously filed Surreply Statement of Material Facts, the additional material relied on by the SEC confirms the existence of genuine disputes of a material fact and that "[t]his is not the rare case where a plaintiff with the burden of proof and persuasion can prevail at summary judgment." *See SEC v. Montano,* No. 618CV1606ORL31GJK, 2020 WL 5534671, at *6 (M.D. Fla. July 31, 2020), *report and recommendation adopted*, No. 6:18-CV-1606-GAP-GJK, 2020 WL 5887648 (M.D. Fla. Oct. 5, 2020). The Court should deny the SEC's Motion for Summary Judgment, and this case should proceed to trial before a jury, consistent with the Seventh Amendment to the Constitution.[1]

---

[1] The SEC concedes in its Reply that summary judgment is not appropriate on Gentile's Eleventh Affirmative Defense concerning the SEC's spoliation of evidence. *See* Reply at 2.

1

# ARGUMENT

The SEC in its Reply and Reply Statement of Material Facts includes six additional exhibits, which can be broken down into two categories: (1) evidence that SureTrader had U.S.-based customers (although without any evidence they were "solicited"), *see* SEC Reply SMF ¶¶ 89–91; and (2) a pair of SEC releases from more than a quarter century ago and an FAQ document from the SEC Division of Trading Markets about Rule 15a-6's exemption for foreign broker-dealers that effect unsolicited transactions with U.S. persons, *see id.* ¶¶ 92–94. Gentile addresses these in reverse order.

## I. The SEC misstates its own interpretive guidance, which precludes summary judgment because "solicitation" involves a fact-intensive inquiry.

As to interpretive guidance regarding Rule 15a-6, *see* SEC Exs. 43–44, both the SEC and Gentile have cited the 1989 and 1998 releases previously. In its Reply, the SEC attaches the releases as exhibits and contends that these releases set forth a rigid, black-letter set of requirements that a foreign-broker dealer *must* satisfy when providing online financial services to avoid solicitation of U.S. persons. In essence, the SEC attempts to transform two measures that would generally be *sufficient* for compliance with Rule 15a-6—(1) a prominent disclaimer; and (2) refusal to provide any services to U.S. persons—into *necessary* requirements for compliance. *See* Reply at 4 ("Thus, with respect to SureTrader's website and advertising on online day trading school websites, if there is no dispute as to a genuine material fact that SureTrader failed to comply with both requirements, then this Court can enter summary judgment in favor of the SEC on Count I."); *id.* at 6 (contending that SureTrader "failed to comply with the second requirement in the SEC's 1998 Website Release").

But this novel argument is contradicted by the plain language of the release itself, a fact that the SEC fails to recognize or explain. As Gentile pointed out previously and reiterates here, the release makes clear that those two "procedures *are not exclusive*" and "other procedures that suffice to guard against sales to U.S. persons also can be used to demonstrate that the offer is not targeted at the United States." SEC Ex. 44 at 4 (emphasis added). Indeed, "[w]hat constitutes adequate measures *will depend on all the facts and circumstances of any particular situation*." *Id.* (emphasis added); *see also id.* ("The determination of whether measures reasonably designed to guard against sales to U.S. persons have been implemented depends on the facts and circumstances, and can be satisfied through different means."). This is consistent with the earlier release from 1989 adopting the Rule, which the SEC also attached to its Reply filing. *See* SEC

Ex. 43 at 9 (The "concept of solicitation" under the Rule 15a-6 is "fact-specific" and thus "is best addressed . . . on a case-by-case basis.").

The SEC suggests the Court may enter summary judgment based on the factually unsupported contention that SureTrader never turned away a U.S. person. The SEC fails to cite any evidence supporting this allegation, let alone undisputed evidence. This allegation lacks support, and trial will reflect that SureTrader only accepted non-solicited U.S. persons. Regardless, foreign broker-dealers are not prohibited from having U.S. customers under Rule 15a-6 or from effecting transactions with U.S. persons. If the Rule provided a blanket prohibition on foreign broker-dealers providing services to *any* U.S. persons, then that would be the Rule. It is not. *See* SEC Ex. 43 at 5 ("[R]equiring a foreign broker-dealer to register . . . with the Commission because of unsolicited trades with U.S. persons could cause that foreign broker-dealer to refuse to deal with U.S. persons under any circumstances."); *id.* at 19–20 ("The Rule's exemption for unsolicited trades reflects the view that U.S. persons seeking out unregistered foreign broker-dealers outside the U.S. cannot expect the protection of U.S. broker-dealer standards.").

Nor does a company operating a website automatically qualify as solicitation directed to U.S. persons, as the SEC suggests. *See* Reply at 7. The Rule does not preclude foreign broker-dealers from hosting websites that are accessible in the United States. Again, if the Rule were that simple, it would be the Rule. Notably, on this point, SureTrader undertook efforts at Gentile's behest to screen U.S. IP addresses to prevent U.S. persons from accessing the SureTrader website, as well as including a website pop-up blocker, going above and beyond posting a "prominent disclaimer" (which it also did throughout the Relevant Period). *See, e.g.*, Gentile Add'l Facts ¶ 86 [ECF No. 237].

**II.    That SureTrader had U.S. customers does not mean SureTrader "solicited" such customers.**

The SEC contends that, because a large percentage of SureTrader customers at one point in time were based in the United States, SureTrader must have violated Rule 15a-6 and solicited such customers. But this speculation ignores the reality of why unsolicited U.S. persons sought out SureTrader. Nor do multiple unsolicited transactions with a particular customer render that customer solicited. The FAQ the SEC cites in its Reply explains:

> Staff [of the SEC's Division of Trading and Markets] would not ordinarily view a single securities transaction effected by a foreign broker-dealer on behalf of a U.S.

3

> investor in accordance with Rule 15a-6(a)(1) as precluding such foreign broker-dealer from *relying on that same authority to effect one or more additional unsolicited securities transactions on behalf of the same U.S. investor, absent any other indicia of solicitation.*

*See* SEC Ex. 45 at 8–9 (emphasis added). Rule 15a-6 speaks of no limit on the number of transactions with U.S. persons a foreign broker-dealer can effect, so long as the customers or transactions are not solicited. The Court should reject the SEC's attempt to read restrictions into Rule 15a-6 that do not exist.

Viewed through that lens, the SEC's additional exhibits regarding a handful of U.S. customers are unavailing. *See* SEC Reply SMF ¶ 89–91. The SEC maintains these customers heard about SureTrader from Warrior Trading, a paid online chatroom in which anybody with a membership may participate. *See* SEC SMF ¶ 49. And any marketing services agreement between SureTrader and Warrior Trading indicated:

> Swiss America [SureTrader] desires to engage Marketing Agent [Warrior Trading] and Marketing Agent is qualified to, and desires to, provide certain marketing services to Swiss America *for non-United States investors*.
> . . . .
> F. Non-Solicitation of U.S. Investors: Marketing Agent [Warrior Trading] agrees *not to directly or indirectly engage in the solicitation [of] U.S. investors*. Any mention of Swiss America [SureTrader] or its affiliates on Marketing Agent's website or other promotional materials must have the following disclaimer attached in prominent font: *"This does not constitute an offer or solicitation for brokerage services, investment advisory services, or other products or services in any jurisdiction where we are not authorized to conduct investment business or where such offer or solicitation would be contrary to the securities or local laws and regulations of that jurisdiction." Swiss America Securities, Ltd (SureTrader) does not service accounts for U.S. citizens, U.S. residents or U.S. Corporations.*

SEC Ex. 24 at 1, 3 (emphases added).

As to former SureTrader customer Mazen Agha in particular, the SEC points to no evidence that Gentile or SureTrader solicited Agha to open an account. Agha maintains only that he heard about SureTrader from Warrior Trading. *See* SEC Ex. 21, ¶ 3. Furthermore, Agha was an active day trader when he visited SureTrader's website to open an account. Indeed, shortly after opening an account, he sought to negotiate SureTrader's commission charges on his trades and wrote: "I traded more than 1 million shares a month in my Etrade account. I would like to keep trading with 17K [in my SureTrader account] for now. I think I may qualify for better commission rate than advertised on your website." *See* Ex AA at 24. The next day he wrote: "I

4

have a lot of entries and exits and I average a lot. I would prefer a kind of per trade commission based and not per shares because as I you see in the example I do a lot of 10K blocks for a scalp." *See id.* at 22. Agha sought out SureTrader, not vice versa.

So too for Orestes Jimenez. The SEC has pointed to no evidence that SureTrader or Gentile contacted Jimenez and solicited him to open an account. Jimenez purportedly visited SureTrader's website after hearing about the brokerage from Warrior Trading. *See* Ex. BB. Jimenez was an active day trader prior to seeking to open an account with SureTrader. For example, his 2016 Form 1099-B from brokerage OptionsHouse—a tax form that details "PROCEEDS FROM BROKER AND BARTER EXCHANGE TRANSACTIONS"—shows over 250 separate stock transactions in 2016. *See* Ex. CC at 37–44.

Put succinctly, Rule 15a-6 permits foreign broker-dealers to service U.S. persons and effect transactions on their behalf, so long as the broker-dealer has not engaged in solicitation. The SEC has put forth no evidence of solicitation other than the circumstantial evidence that a large percentage of SureTrader customers were U.S. persons. In fact, SureTrader's Chief Marketing Officer Janay Pyfrom made clear in her deposition: "A. I was not allowed to advertise in any way to US customers or to US residents . . . . Q. The policy was to exclude US? A. Yes. At all times. Q. Was there a IP blocker pop-up is? . . . A. There was, yes." *See* Ex. DD, Tr. 87:2–11.[2] Gentile is entitled to every reasonable inference at this stage, including with regard to his good-faith defense. The additional material in the SEC's Reply and Reply Statement of Material Facts cannot remove this case-by-case, fact-based inquiry from the province of the factfinder.

## CONCLUSION

For all the foregoing reasons, as well as those stated in Gentile's Opposition, there exist genuine disputes of material fact that should be resolved by a jury. The SEC's Motion for Summary Judgment should be denied in its entirety.

---

[2] Counsel for Gentile received a copy of the rough transcript of Ms. Pyfrom's January 26, 2024 deposition only within the last few days.

Dated: March 25, 2024

Respectfully submitted,

FORD O'BRIEN LANDY LLP

By:   /s/ *Gabriela M. Ruiz*
      Gabriela M. Ruiz
      Fla. Bar. 46844
      One Biscayne Tower
      2 South Biscayne Boulevard Suite 3200
      Miami, Florida 33131
      Tel.: (786) 310-1135 (main)
      gruiz@fordobrien.com

      Adam C. Ford (admitted *pro hac vice*)
      Matthew A. Ford (admitted *pro hac vice*)
      Stephen R. Halpin III (admitted *pro hac vice*)
      275 Madison Avenue, 24th Floor
      New York, New York 10016
      Tel.: (212) 858-0040 (main)
      aford@fordobrien.com
      mford@fordobrien.com
      shalpin@fordobrien.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Defendant Guy Gentile's Surreply in further Opposition to the Plaintiff SEC's Motion for Summary Judgment, March 25, 2024, to be served via CM/ECF on the following counsel for Plaintiff:

Alice Sum
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131
(305) 982-6300
sumal@sec.gov

Alise Meredith Johnson
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131
(305) 982-6385
johnsonali@sec.gov

Russell Koonin
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131
305-982-6390
kooninr@sec.gov

                                             */s/ Gabriela M. Ruiz*
                                             Gabriela M. Ruiz