# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-21079-Civ-BLOOM/TORRES

SECURITIES AND EXCHANGE COMMISSION,

    *Plaintiff*,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and GUY
ENTILE, a/k/a GUY GENTILE NIGRO,

    *Defendant*.

_____/

## ***ORDER ON DEFENDANT'S RENEWED MOTION FOR SANCTIONS***

This matter comes before the Court on Defendant Guy Gentile's Renewed Motion for Sanctions for Spoliation of Evidence [D.E. 201], that was referred for disposition. [D.E. 204]. The Court has considered the record submitted on the motion, together with the Plaintiff's response in opposition and Gentile's reply. [D.E. 210, 212]. The matter is ripe for disposition and is due to be Denied.

### I.     BACKGROUND

This case stems from an SEC Complaint filed on March 22, 2021, which seeks damages and injunctive relief alleging that Defendant Mintbroker International d/b/a SureTrader ("SureTrader") violated U.S. securities law by acting as an unregistered

securities broker dealer. The SEC also sued Defendant Gentile as SureTrader's control person. SureTrader is a Bahamian entity that is in receivership proceedings under Bahamanian law and being wound down since March 17, 2020. [D.E. 89-4].

The motion here focuses on a key witness for the SEC, Philip Dorsett, who was SureTrader's Chief Compliance Officer from 2011 through 2017. He claims to have witnessed key meetings at which Gentile and other SureTrader's principals concocted a scheme to evade federal securities law. In the course of the litigation, Gentile has pursued much discovery related to Dorsett and his allegations. This included production of emails and documents the SEC had received or was about to receive from Dorsett and other former SureTrader employees. Dorsett in particular had amassed approximately 11,000 SureTrader work emails that were backed up to his personal Gmail account during the time he was employed with SureTrader. Dorsett produced those materials to the SEC.

As part of the review and production process, the SEC asked Dorsett to search for and segregate any search "hits" for certain attorneys associated with SureTrader and Gentile to isolate any potential privilege problems. Specifically, these hits would involve Michael Miller, Philip Davis, and Adam Ford (counsel of record in this case). Dorsett was instructed to produce the 11,000 emails minus the "hits" to the SEC.

After the emails were then obtained by the SEC for production, Gentile filed the original Motion for Sanctions [D.E. 86] arguing that the SEC improperly obtained documents from Dorsett and other former SureTrader employees. On August 1, 2022, the Court denied Gentile's Motion for Sanctions without prejudice and ordered the

parties to meet and confer about the handling and potential production of documents from the former employees. [D.E. 106]. Following that, a discovery hearing was held in January 2023 where the Court ruled that Gentile does not have standing to object to the production based on any privilege held by SureTrader and that the SEC could begin reviewing the production it received from Dorsett for production to Gentile. [D.E. 157].

Dorsett was then deposed on February 27 and 28, 2023. During his deposition, Mr. Dorsett was asked about what happened to the emails he found containing communications with SureTrader's counsel, to which he responded that he had "deleted" them. This then led to Gentile's filing, on March 21, 2023, of another motion for sanctions, this one seeking spoliation sanctions related to these emails. [D.E. 173]. After Gentile filed his Original Motion, SEC counsel contacted Dorsett to confirm if he still possessed the emails involving SureTrader's counsel (the "hits" from the April 2022 search). Dorsett then confirmed that the disputed SureTrader emails still existed and had not been deleted.

On March 23, 2023, the SEC emailed Gentile's counsel to explain that the emails in question were still in Dorsett's possession, that Dorsett had erred in his deposition, and demanding that Gentile withdraw his Original Motion. On March 27, 2023, the SEC then forwarded the disputed emails to Gentile's counsel. Gentile did not withdraw the Original Motion, and the SEC filed a response and Motion to Strike. On April 10, 2023, this Court conducted a hearing at which the Court struck

Gentile's Original Motion without prejudice with leave to refile after conducting a further review and conferring with the SEC.

The SEC then submitted a Declaration from Dorsett to Gentile's counsel on June 13, 2023, which contained a detailed explanation of how his SureTrader work emails were in his possession, his production of the emails to the SEC minus emails involving SureTrader's counsel in April 2022, and how he misspoke when he said he had "deleted" emails with SureTrader's counsel. Dorsett set forth that he worked on a company laptop while he worked for SureTrader but his work emails were backed up to a gmail account. When he separated from SureTrader in August 2017, he was not instructed to remove or destroy SureTrader data or work from his personal laptop. So when the SEC requested that he voluntarily produce SureTrader emails backed up to his Gmail account, he did so but for emails between SureTrader and its lawyers.

To do so, Dorsett exported his Gmail account to Outlook and created a data file. He then searched for emails with Michael Miller, Philip Davis, and Adam Ford, deleted those particular emails. He also searched for (and deleted) emails from Bettina Albury, who he recalled worked with Michael Miller, as well as the term "lawyer."

After Dorsett produced the 11,000 emails to the SEC (minus the deleted emails relating to the attorney names), he kept the original Outlook Backup file on his computer. When the SEC contacted him after Gentile filed his Original Motion, he then searched for the same attorney names in the Outlook Backup File, located them, and forwarded those to the SEC. Mr. Dorsett explained that, although he testified

during his deposition that he had "deleted" the emails with SureTrader's attorneys after running the searches, the emails in fact were not deleted. He clarified that he "misspoke when [he] said they were deleted" and said that the "more accurate explanation is that the emails with SureTrader's attorneys were removed from the subfolder so that they would not be sent to the SEC but the "emails with SureTrader's attorneys remained in the Outlook Backup File." [D.E. 210, Exh. B, ¶20].

Seven months after the Court struck his Original Motion, on November 30, 2023, Gentile filed the pending Renewed Motion that made no mention of this June 2023 declaration. The Motion reiterates the contention that Dorsett's "deletion" of emails from his production to the SEC with counsel for SureTrader amounts to spoliation of evidence. "Emails between Dorsett—SureTrader's Chief Compliance Officer—and the Company's legal counsel undoubtedly would have involved questions and advice about SureTrader's compliance with U.S. and Bahamian laws and regulations. Such emails would be highly relevant to this case and would support Gentile's good-faith defense to the SEC's allegations that he and the Company failed to register as a broker-dealer in violation of 15 U.S.C. § 78o. Gentile has reason to believe that similar emails between Philip Dorsett and other advisors to the Company have also been deleted." [D.E. 201 at 9]. The Motion seeks spoliation sanctions against the SEC based upon its prime witness's email deletions, which include dismissal of Counts I and II and/or precluding Dorsett from testifying in the case.

The SEC objects to the motion, primarily on the ground that no spoliation of emails had actually occurred. Apart from that, the SEC maintains that a basis for spoliation sanctions is not present in the record, nor has bad faith been established.

## II.   ANALYSIS

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). "A district court possesses broad discretion in deciding whether to impose sanctions for the spoliation of evidence." *Romero v. Regions Fin. Corp./Regions Bank*, 2019 WL 2866498, at *3 (S.D. Fla. July 3, 2019) (citing *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005)).

Rule 37(e), as amended in 2015, is now the primary source to address the spoliation of relevant electronically stored information ("ESI") that a party was required to preserve but lost due to its failure to take reasonable steps to preserve the ESI, resulting in prejudice to the opposing party. *Sosa v. Carnival Corp.*, 18-20957-CIV-CMA, 2018 WL 6335178, at *10 (S.D. Fla. Dec. 4, 2018) ("Based on the plain language of Rule 37, the advisory committee notes, and recent case law, Rule 37(e) very likely controls spoliation claims involving ESI to the exclusion of the common law analysis undertaken under the Court's inherent authority.") (citing circuit and out-of-circuit cases).

The standards for spoliation sanctions are still developing. *See ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1308 (11th Cir. 2018) (declining to establish factors courts must consider when parties seek sanctions under amended Rule 37(e) based on the spoliation of ESI and declining to determine whether bad faith is synonymous or distinguishable from acting with an intent to deprive). But one thing is crystal clear in the Eleventh Circuit: that severe sanctions for spoliation are only proper when the absence of the evidence is due to bad faith on the part of the alleged spoliator. *See id.* at 1308 (citing *S.E.C. v. Goble*, 682 F.3d 934, 947 (11th Cir. 2012) (holding adverse inference instruction only proper "when the absence of [the] evidence is predicated on bad faith." (citations omitted))).

Rule 37(e) specifically provides that:

If [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Rule 37(e) thus has five essential requirements: (1) the information at issue must be ESI; (2) there must have been anticipated or actual litigation that triggered

a duty to preserve ESI; (3) relevant ESI was lost or destroyed; (4) the relevant ESI was lost or destroyed because a party failed to take reasonable steps to preserve it; and (5) the ESI cannot be restored or recovered through additional discovery. *See id.*; *see, e.g., Sosa v. Carnival Corp.*, 2018 WL 6335178, at *10; *Scrap King LLC v. Stericycle, Inc.*, 818CV733TMSSAEP, 2022 WL 18495259, at *6 (M.D. Fla. Dec. 20, 2022) (denying spoliations sanctions where "there is insufficient evidence to establish that Defendant acted with bad faith or intent to deprive Plaintiff of any relevant ESI.").

If all these requirements are not met, "a motion for spoliation sanctions or curative measures must be denied." *Sosa*, 2018 WL 6335178, at *10 (quotation and citation omitted). Even if all of the threshold requirements are satisfied, a court may only award sanctions under subsection (e)(1) if it finds "prejudice" to another party, or under subsection (e)(2) if it finds that the party acted with the "intent to deprive" the opposing party of the ESI. Fed. R. Civ. P. 37(e); *see also, Title Capital Mgmt., LLC v. Progress Residential, LLC*, 2017 WL 5953428, at *3 (S.D. Fla. Sept. 29, 2017) (citation omitted).

And with respect to the "bad faith" threshold adopted in the Eleventh Circuit in other spoliation contexts prior to Rule 37(e), the Eleventh Circuit recently adopted that same standard in defining what the Rule means by "intent to deprive." *See Skanska USA Civil Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1312 (11th Cir. 2023) ("The phrase 'intent to deprive' naturally requires that the spoliator has a 'purpose of hiding adverse evidence' from other parties. And the advisory committee notes

explain that 'intent to deprive' is more than negligence or even gross negligence. 2015 Committee Notes on Rule 37(e)(2). So rather than adopt a new law of spoliation from scratch for Rule 37(e)(2) sanctions, we will borrow our identical and well-trodden standard of 'bad faith.'").

There is no dispute here that the emails maintained by Dorsett constitute ESI under the Rule. Nor can there be any serious dispute that Dorsett had a duty to preserve evidence that he had gathered with respect to SureTrader when he knew that he would cooperate with the SEC in its investigation into the company's principals. Thus the first two elements for spoliation have been satisfied. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).

The SEC does dispute, however, whether the third essential requirement has been satisfied; namely, whether Gentile has shown that any ESI was actually lost. The SEC argues that the record shows that Dorsett did not delete emails with SureTrader's counsel. Immediately upon Gentile filing the Original Motion, the SEC contacted Dorsett to clarify the status of the purportedly deleted emails. Despite what he said in his deposition, Dorsett only deleted emails from the subfolder that was produced to the SEC (at the SEC's direction). Dorsett did ultimately make available for review the entire original Outlook data file that contained emails with counsel as well.

The Court's review of the record sustains the SEC's position. Gentile has the initial prima facie burden of showing that any ESI was actually lost. But Gentile seems to just ignore the record showing that Dorsett's supplemental production of the

emails he initially segregated was made available to Gentile. Rather than disputing this factual point head on, Gentile cursorily insists that some emails seem to be missing (from an 11,000 batch of documents). But that showing is hardly enough to meet his initial burden of showing that, in fact, ESI has been "lost" for purposes of Rule 37.

Instead, Gentile falls back on highlighting what Dorsett originally testified in his deposition as to his "deleted" emails. That evidence is certainly something that can be used as impeachment at trial if Gentile testifies. Indeed, the ability to cross examine any witness as to missing information or "deleted" emails is always available to undermine a witness's credibility. Nothing stops Gentile from doing so here notwithstanding the supplemental showing the SEC has made that Dorsett cured this problem and clarified the record. But that certainly does not warrant a Rule 37 sanction simply because a witness may be impeached based on inconsistent statements he may have made.

Gentile also focuses on (1) an email chain from 2014 wherein Gentile forwarded to Dorsett (at his SureTrader email address) a draft affidavit sent by Adam Ford (counsel of record in this case) to Gentile and produced by Gentile in this litigation, and (2) unknown, undefined, and additional emails that Gentile speculates exist with other SureTrader/Gentile attorneys or consultants, specifically Michael Miller, Franklin Ogele, Arthur Quintero, and Carla Marin, which purportedly involve questions and advice about SureTrader's compliance with U.S. and Bahamian laws and regulations. The problem for purposes of this motion is that Gentile has not

made a prima facie showing that the 2014 email chain involving Adam Ford drafting an affidavit for Dorsett was every included in the backup emails stored in Dorsett's Gmail account in the first place. Nor has he made any prima facie showing that Dorsett every deleted it. What the record does show is that Dorsett produced to the SEC, and the SEC produced to Gentile, a huge batch of emails that include many relevant emails for purposes of the case. In such a circumstance, speculation about a particular esoteric communication about a draft affidavit hardly amounts to a prima facie showing of spoliation.

The only substantiation Gentile has for accusing Mr. Dorsett of deleting such emails is that "Gentile has reason to believe that Dorsett would have communicated" with attorneys and advisors. [D.E. 201 at 9]. Yet, the SEC points out that two of the names, Frank Ogele and Arthur Quintero were not identified in Gentile's initial disclosures nor have they been subpoenaed or otherwise requested to produce their communications. Conspicuously absent from Arthur Quintero's supporting Affidavit is any mention of him exchanging emails with Dorsett. [D.E. 201-6]. So, the relevance of any chain of emails with these individuals is speculative at best, and certainly not enough to find that the absence of emails with them evidences spoliation of evidence.

At bottom, the record submitted on the motion evidences that, in good faith (not bad faith), the SEC sought to responsibly produce Dorsett's communications to Gentile in relation to the case. When an issue was made of that procedure, supplemental production was made to cure the purported insufficiencies. Gentile has submitted no record evidence that undermines the thrust of the SEC's showing that

he now has had access to *all* emails that Dorsett stored in his gmail account during the years that he worked at SureTrader. Gentile's reply makes little effort to impeach that showing, which means that the Court can find on this record that a complete production of all materials that Dorsett retained from that time period has been produced. And, consequently, Gentile has failed to show that in fact any material evidence was ever destroyed or lost. The motion can thus be Denied on that basis alone.

We note as well that spoliation sanctions like the ones requested in Gentile's motion are not warranted when the party in the case, here the SEC, has not actually engaged in any discovery misconduct. Gentile has not disputed the SEC's claims that the SEC produced all the materials, at various points, that it received from Dorsett. There is no argument that the SEC suppressed any emails or destroyed any materials. Thus, even if the Court found that Dorsett had engaged in some misconduct that would not require it to find that spoliation against the SEC were warranted. At best, if intentional misconduct was found against the witness, specific sanctions as to that witness could be supported. But here Gentile's first demand is for dispositive sanctions against the SEC, which is something that the record could not support as against the SEC no matter how important Dorsett was to their case. *See, e.g., Hernandez v. Pitco Frialator, Inc.*, 15-CV-01709A(F), 2019 WL 12345496, at *9 (W.D.N.Y. Oct. 28, 2019), *report and recommendation adopted in relevant part,* 15-CV-1079-A, 2022 WL 954404 (W.D.N.Y. Mar. 30, 2022) ("Although spoliation of evidence is grounds for dismissal of an action, such spoliation must be attributed to

the party against whom the evidence would be used and even then supports dismissal only in the most extreme cases.").

Turning, then, to whether any sanctions should be directed at Dorsett or at his specific testimony in the case, Gentile fails on that score as well. Gentile has failed to show that bad faith is evidenced in this record. Federal law requires the party moving for spoilation sanctions to show that "the absence of [the evidence at issue] is predicated on bad faith." *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (citing *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009) (holding that a "district court did not err in declining to draw an adverse inference against the defendants" where the moving party presented "no evidence that any party acted in bad faith regarding any of the instances"); *see also Skanska,* 75 F.4th at 1312 (affirming severe sanctions under Rule 37(e)(2) based on bad faith finding; "the 'intent to deprive another party of the information's use in the litigation' is the equivalent of bad faith in other spoliation contexts.").

Here, the Court has reviewed the deposition transcript excerpts cited in Gentile's motion as well as all the supplemental affidavits and declarations cited in support for, or in opposition to, the motion. That review does not reveal a prima facie showing of bad faith, even sufficient to trigger an evidentiary hearing on this matter. At best, Gentile has made a case that Dorsett's original testimony revealed negligence on his part; but that showing is clearly not enough to evidence bad faith in his review and production of emails that he stored in his gmail account. To begin with, the

company may have access to more emails than the one he backed up into his gmail account. But in the second place his storage and production of that account does not reveal any intentional or reckless conduct given that Gentile now has the benefit of those 11,000 emails and may make of them as he wishes. So the witness's actions here undermine any showing of bad faith.

Gentile has instead only shown that the SEC erred in having the witness conduct the privilege review that led to the original "deletion" of emails in Dorsett's production. That process should have been supervised by counsel and not left to a witness to undertake on his own. And, even if the SEC is correct that this was caused in great part by Gentile's counsel's failure to cooperate, the SEC certainly is in a position to utilize a taint team of lawyers or paralegals to assure that the witness was not wrongly depriving the parties with all possible admissible evidence. Leaving any privilege review to a witness alone is not advisable. But, again, that does not evidence bad faith on the SEC or its witness's part. Negligence committed during the scope of good faith production does not warrant spoliation sanctions. *See, e.g., Vick,* 514 F.2d at 737 ("The adverse inference to be drawn from destruction of records is predicated on bad conduct of the defendant. Moreover, the circumstances of the act must manifest bad faith. Mere negligence is not enough ....") (internal citations omitted); *Patrick v. Forster & Howell, Inc.*, 681 F. Supp. 3d 1253, 1255 (N.D. Fla. 2023) ("Plaintiff may be able to show that Defendant was negligent in losing or destroying the relevant video surveillance footage, but 'mere negligence' is not enough to support

Plaintiff's spoliation argument.") (denying motion for spoliation sanctions under Rule 37).

### III.   CONCLUSION

Based upon our thorough review of the record as a whole, Gentile's Renewed Motion for Spoliation Sanctions is **DENIED.**

**DONE AND ORDERED** in Chambers at Miami, Florida this 14th day of May, 2024.

>  /s/ Edwin G. Torres
>  EDWIN G. TORRES
>  United States Magistrate Judge