Attorney General v. The Securities Exchange Commission - 125/2023

1     (The following was derived from an audio
2 recording:)
3     (Court commenced)
4     THE COURT:  Recording is now in session. This
5 is the matter of the Attorney General v. The Securities
6 Exchange Commission, et al and others, claim #125 of
7 2023. Appearances for the record, please.
8     MS. CAREY:  Good Morning, Registrar Toote. For
9 the Attorney General, myself Ronique Carey, along with
10 Mrs. Deidre Clarke-Maycock for the First Respondent, the
11 Securities and Exchange Commission, we have a Mrs. Tara
12 Archer-Glasglow along with Mr. Audley Hanna. And for the
13 Third Respondent we have Mr. Philip Mckenzie, KC.
14 Appearing alongside Mr. McKenzie will be Lenthera
15 Culmer.
16     THE COURT:  You're on the record, Ms. Hunter.
17     MS. HUNTER: Yes, Mr. Registrar. Palincia
18 Hunter holding brief with Dwana Davis of Amicus Chambers
19 for the subpoenaed witness, Edward Cooper.
20     THE COURT:  You said Edward Cooper?
21     MS. HUNTER:  Yes, Mr. Registrar.
22     THE COURT:  Ms. Carey?
23     MS. CAREY:  Yes, Registrar Toote, before we
24 proceed we have a few questions, housekeeping issues
25 that needs that need to be sorted. The first is
26 extension of time for service of one of the witnesses;
27 this is Ms. Janay Pyfrom-Symonette. She was not served
28 within the two-week time frame before the date of that
29 position, and we are seeking to extend time for service.
30     THE COURT:  Is there any objection?
31     MR. MCKENZIE,KC:  Registrar, I am - I'm just
32 being made aware of this issue and so I would like to

ROUGH - 23 October 2023

EXHIBIT

G

Attorney General v. The Securities Exchange Commission - 125/2023

1  reserve my position on that; the right to object later.
2  I'll have to see - have to take a look at the rules in
3  respect to that, but we didn't have objection to her
4  evidence, obviously, initially. Unless the rule strictly
5  prohibits it, then I don't think we will make an
6  objection but I'll just like to reserve until after
7  lunch.
8          THE COURT:  Noted. Any other housekeepings,
9  Ms. Carey?
10         MS. CAREY:  Yes, according to Rule 33.6 of the
11 new Supreme Civil Procedure Rules. It stated that each
12 witness or each deponent should be paid reasonable cost
13 for securing their attendance. The rule also stated
14 there should've been practice guidance issued in
15 relation to the fees, but none is in existence, so we
16 would need further guidance in relation to that.
17         MS. MAYCOCK:  Mr. Registrar, I noticed that
18 someone in  this is a closed hearing.
19         THE COURT:  He is not any of your witnesses…?
20 Excuse me, sir? How are you? Which matter do you have?
21 Okay, so this is actually a Supreme Court matter. We're
22 just using this courtroom today. Could you please speak
23 with one of the Marshalls on the outside and he will
24 properly direct you as to where your matters transferred
25 to. I'll address that matter before close of today's
26 hearing, okay, Ms. Carey?
27         MS. CAREY:  Oblige.
28         THE COURT:  Any other housekeeping matters?
29         MS. CAREY:  No, sir, we have no further
30 housekeeping.
31         THE COURT:  Ms. Glasgow?
32         MS. GLASGOW:  Mr. Registrar, before we

ROUGH - 23 October 2023

Attorney General v. The Securities Exchange Commission - 125/2023

1  convene, I'd like to have senior counsel's instructions
2  to put me on record. We were recently retained, Mr.
3  Registrar, in this matter -
4          THE COURT:  What senior counsel are you
5  referring to?
6          MS. GLASGOW:  Dwana Davis - my apology.
7          THE COURT:  You said you needed Ms. Davis'
8  permission to be placed on the record?
9          MS. GLASGOW:  No - no, I said I would like
10  further instructions. Sorry, if I was not clear Mr.
11  Registrar, on the record. Ms. Davis was recently
12  instructed in this matter. She was sent the application
13  documents this morning by the Attorney General Office.
14  She has not had an opportunity to review the scene, Mr.
15  Registrar. I was advised before the start that our
16  client, Mr. Edward Cooper, was scheduled to go tomorrow
17  at 10am and so Mr. Registrar, I would just like to
18  confirm with the parties whether or not Mr. Cooper can
19  go rather on Wednesday to give Ms. Davis an opportunity
20  to review the final in its entirety and to properly
21  advise her client, Mr. Cooper.
22          THE COURT:  Ms. Carey, he was subpoenaed when?
23          MS. CAREY:  He was served -
24          THE COURT:  The client was properly served
25  within requisite time or your attorney was just received
26  - she was in receipt of certain documents today? I just
27  need clarification because it's a huge distinction
28  between the two.
29          MS. CAREY:  Yes, Mr. Registrar. He was served
30  with the documents -
31          THE COURT:  Within the requisite time?
32          MS. CAREY:  Yes, Mr. Registrar, within the

ROUGH - 23 October 2023

Attorney General v. The Securities Exchange Commission - 125/2023

1  requisite time.

2          MS. CAREY:  Yes, Mr. Registrar.

3          THE COURT:  But it's just that he retained

4  counsel?

5          MS. CAREY:  Yes. Yes, Mr. Registrar - -

6          THE COURT:  -- Oh, so you're asking for

7  courtesies. That courtesy isn't extended to me if he was

8  served within the requisite period of time that courtesy

9  should be directed to count that to the court.

10         MS. CAREY:  Yes, Mr. Registrar, I agree. I

11  just wanted it to be on the record, Mr. Registrar.

12         THE COURT:  Do you have objection to her

13  questions? She's saying her client was subpoenaed to be

14  examined today. However, she's asking if he can be

15  examined on Wednesday instead of Monday.

16         MS. HUNTER:  That's fine.

17         MS. CAREY:  Thank you very much, Counsel and

18  thank you, Mr. Registrar.

19         THE COURT:  Now, Ms. Hunter.

20         MS. HUNTER: Yes, Mr. Registrar.

21         THE COURT:  We took about 30minutes before we

22  got started. Counsel to Counsel you all could've had

23  that conversation before this matter started.

24         MS. HUNTER: We did Mr. Registrar but it seems

25  as it they had a change of heart and I am greatly-

26         THE COURT:  So you need some muscle from the

27  court.

28         MS. HUNTER:  Pardon me?

29         THE COURT:  You need muscle from the court.

30         MS. HUNTER:  Yes.

31         THE COURT:  Okay. Understood.

32         MS. HUNTER:  Mr. Registrar, for the record,

Attorney General v. The Securities Exchange Commission - 125/2023

1  Mr. Cooper was served on the 29th of September.

2          THE COURT:  Okay. Mrs. Glasgow, any

3  housekeeping matters?

4          MR. MCKENZIE,KC: Mr. Registrar, just one for

5  me. I spoke with my learned friend and she and I have

6  both agreed that my cross-examination could occur after

7  lunch particularly with respect to the first witness we

8  speak of.

9          THE COURT:  Okay.

10          MR. MCKENZIE,KC:  Mr. Registrar, just one

11  note. I've been instructed by US Counsel with respect to

12  the civil procedure rules in the jurisdiction where this

13  matter is pending and so they've asked me to take

14  objections to some of the questions on form and so just

15  to let the court know I am not wasting time with me

16  doing that - because that's the instructions given to

17  me, respect to some of your objections.

18          THE COURT:  Do you know which numbers?

19          MR. MCKENZIE,KC:  Yes. We've shared those with

20          THE COURT:  This is reference in particular to

21  the witness Mr. Moore?

22          MR. MCKENZIE,KC: It is - the first witness is

23  Mr. Moore -

24          THE COURT: That's your first witness, Ms.

25  Carey, Mr. Moore?

26          MS. HUNTER:  Yes, that's her first witness.

27          MR. MCKENZIE,KC:  Now --

28          MS. MAYCOCK: Just to be clear, he said he's

29  putting on the record but the question will go on.

30          MR. MCKENZIE,KC:  That's correct.

31          MS. MAYCOCK: Unless we agree that that'll be a

32  judgment -

ROUGH - 23 October 2023

6

Attorney General v. The Securities Exchange Commission - 125/2023

1          THE COURT: Oh, she wasn't provided with some
2   of the questions prior to.
3          MS. CAREY:  Yes.
4          MS. MAYCOCK: Yes.
5          THE COURT:  Okay.  Noted.
6          MR. MCKENZIE,KC:  Thanks.
7          MS. CAREY: Mr. Registrar, I'll take my leave.
8   Have a good one.
9          THE COURT: Are you ready to start with your
10  first witness, Ms. Carey?
11          MS. CAREY: Yes, Mr. Registrar.
12          THE COURT: Sorry. I just need to request some
13  assistance; it's only me one today. Find Mr. Moore for
14  me.
15  D R A M E K O   M O O R E, having been called as
16  witness, being duly sworn, testified as follows:
17  EXAMINATION IN CHIEF BY MS. CAREY:
18      Q.   Good morning Mr. Moore, can you state your
19  full name and spell it for the Record
20      A.   It's Drameko Moore. That's D-r-a-m-e-k-o,
21  M-o-o-r-e.
22      Q.   Your address?
23      A.   My address is: #2 Buccaneer Road; Little
24  Blair.
25      Q.   Your place of employment?
26      A.   Delchain Limited
27      Q.   Are you a represented by counsel today?
28      A.   No, ma'am.
29      Q.   Do you know someone by the name of Guy
30  Gentile?
31      A.   Yes.
32      Q.   How long have you known him?

ROUGH - 23 October 2023

Attorney General v. The Securities Exchange Commission - 125/2023

1        A.    Since 2014.

2        Q.    When was the first time you met him?

3        A.    When I started working at his previous

4   company, Swiss America Securities and he came into

5   office that would've been late 2014.

6        Q.    When was the last time you spoke with him?

7        A.    That was late last year.

8        Q.    And what was the subject of this discussion?

9        A.    Some of it was just us catching up  small

10  talk, and then he also told me about the lawsuit that

11  was going to be taking place.

12       Q.    Have you heard of Midbroker International

13  Limited?

14       A.    Yes.

15       Q.    Formally known as Swiss America and doing

16  business as SureTrader?

17       A.    Yes.

18       Q.    Were you employed by SureTrader?

19       A.    Yes.

20       Q.    How did you become employed by SureTrader?

21       A.    I went on an interview and then I was hired.

22       Q.    What was your title at SureTrader?

23       A.    Initially I was a Risk Analysis and then I was

24  later promoted to Assistant Manager to the trade desk.

25       Q.    What time period were you employed at

26  SureTrader?

27       A.    Between September 2014 and December of 2019.

28       Q.    Are you aware of the lawsuit filed by the US

29  Securities and Exchange Commission in the United Stated

30  Southern District of Florida against Mr. Gentile and

31  SureTrader?

32       A.    Yes, I was made aware.

ROUGH - 23 October 2023

Attorney General v. The Securities Exchange Commission - 125/2023

1        Q.    How did you learn of this?

2        A.    Mr. Gentile informed me.

3        Q.    What was your discussion with Mr. Gentile in
4   relation to him?

5             MR. MCKENZIE,KC:   Mr. Registrar, this is one
6   of my objection on the ground that it is hearsay.

7             THE COURT:  Ms. Carey?

8             MS. CAREY:  He can go.  Receipt of answering
9   the question.

10            THE COURT:  He says he is objecting on the
11  grounds that the information of the chief founded about
12  the suit is hearsay.

13            MR. MCKENZIE,KC:  Yes.

14            THE COURT:  He is objecting to - put to 0006.

15            MS. CAREY:  We note his objection but we still
16  ask that Mr. Moore pursue with answering the question.

17  BY MS. CAREY:

18        A.    Can you repeat the question, please?

19        Q.    What was your discussion with Mr. Gentile
20  about the Securities and Exchange Commission lawsuit?

21            THE COURT:  Sorry, you're asking him to
22  disclose the discussion that he had with Mr. Gentile
23  reference to a lawsuit by the Securities Exchange
24  Commission? I just wanted clarity.

25            MS. CAREY:  Yes.

26            MR. MCKENZIE:  Mr. Registrar that was the
27  objection. So just to be clear, our objection is to the
28  contents of that discussion.

29            THE WITNESS:  Should I still answer it?

30            THE COURT:  Not yet. Relevance, Ms. Carey?

31            MS. GLASGOW:  Sir, just so I can interject.
32  Mr. Edgecombe, my understanding is that he's still going

ROUGH - 23 October 2023

Attorney General v. The Securities Exchange Commission - 125/2023

1  to answer the questions and these objections are to be
2  taken in the United States but Mr. McKenzie is just
3  putting it on the record and when the evidence gets
4  transferred to the United States, it will be taken up
5  over there. Obviously, the SEC does not agree, but the
6  fight's not here with respect to that.
7          MR. MCKENZIE,KC:  Right. There are some
8  objections of this nature and then there are some that I
9  might have taken on here, but this is one of those where
10  the processing in the other jurisdictions might differ
11  from what evidence is allowed here.
12          THE COURT:  You could go head.
13          WITNESS:  Regarding the conversation I had
14  with Mr. Gentile, like I said, he initially informed me
15  that the lawsuit will be taking place. He did express
16  some discontent with the lawsuit itself claiming that
17  the allegations were false. He stated that I might be
18  requested to speak on behalf of the case here locally.
19  BY MS. CAREY:
20      Q.   Have you spoken with anyone else about the
21  lawsuit?
22      A.   No.
23      Q.   Please describe your educational history.
24      A.   I have a BA in Interdisciplinary Studies from
25  Florida International University.
26      Q.   Do you hold any professional licenses?
27      A.   Yes, I also possess a series 7 license.
28      Q.   And prior to your employment at SureTrader,
29  where were you employed?
30      A.   I was employed at CIBC First Caribbean.
31      Q.   What were your duties and responsibilities at
32  SureTrader?

ROUGH - 23 October 2023

Attorney General v. The Securities Exchange Commission - 125/2023


1      A.    Initially as a Risk Analysis I was responsible
2  for providing a technical support to clients or anything
3  related to their trading or their trading platforms.
4  Also, responsible for monitoring the risk of Margin
5  Accounts.
6            Applying any corporate actions that may have
7  occurred. For example: Dividends payments, updating
8  stocks splits or semble changes or mergers to any
9  accounts that were applicable and also doing daily
10 reconciliations of trading positions.
11     Q.    When did you stop working at SureTrader?
12     A.    December 2019.
13     Q.    Why did you stop?
14     A.    The company closed.
15     Q.    What was Mr. Gentile's role at SureTrader
16 during your time of your employment?
17     A.    He was the CEO.
18     Q.    Did his role change at any time during that
19 period?
20     A.    No.
21     Q.    What, if any changes, did you have to your
22 responsibilities during your employment at SureTrader?
23     A.    Yes. When I was promoted to Assistant Manager,
24 I was still doing the same things that I was previously
25 doing that I just stated but I was also now supervising
26 the Risk Department. I was also more involved in
27 decision-making with any symbols or stocks needed, any
28 sort of restrictions applied to the amount of margins we
29 offer clients on those particular symbols.
30     Q.    Did you report to anyone during your time at
31 SureTrader?
32     A.    Yes. Initially I reported to the Trade Desk

Attorney General v. The Securities Exchange Commission - 125/2023

1   Manager. Then I started reporting directly to the CFO.

2        Q.   Did you supervise any employee?

3        A.   Yes.

4        Q.   Who did you supervise?

5        A.   The Risk Department a team of Risk Analysis.

6   During my time in that position there was between six

7   and seven Risk Analysis that I supervised.

8        Q.   During your employment at SureTrader, what

9   interactions did you have with Mr. Guy Gentile?

10       MR. MCKENZIE,KC:  Mr. Registrar, objection to this

11  question also under the bases that it's vague.

12       MS. GLASGOW:  Repeat the question for me please,

13  Ms. Carey.

14  BY MS. CAREY:

15       Q.   During your employment at SureTrader what

16  interactions, if any, did you had with Mr. Guy

17  Gentile?

18       A.   I didn't always have interactions with him

19  directly. There were times when I did and it could've

20  been on a variety of things; it was all work-related

21  regarding my position or any updates that may have been

22  applicable to my role within the company or my

23  departments. Or if there was any type of assignment or

24  task that he wanted me to provide, or some sort of

25  report he wanted me to provide, he would express that to

26  me and I would provide that information to him. It

27  wasn't on regular basis, it was periodical.

28       Q.   How did these interactions with Mr. Gentile

29  occur?

30       A.   Usually in-person.

31       Q.   How frequently did you interact with him?

32       A.   Sometimes I would go maybe several weeks or

ROUGH - 23 October 2023

Attorney General v. The Securities Exchange Commission - 125/2023


 1  months without interacting with him. Other times it

 2  would be on a daily basis depending on what is going

 3  on.

 4       Q.   What tools did SureTrader provide you to

 5  perform your duties?

 6       A.   A laptop and some monitors; a couple monitors.

 7       Q.   What was your usual business practice with

 8  regard to preserving the work done on the computer?

 9       A.   I don't understand. Can you explain what

10  you're asking, please?

11       Q.   What internal policies related to storing of

12  data on the computer or how you transmit information or

13  data?

14       A.   In terms of practices, I did all of work on

15  the company-provided laptops via the company-provided

16  email, so I didn't do any company-related work on my

17  personal email or personal laptops. I don't know if that

18  answers your question.

19       Q.   If we could elaborate a little further in

20  relation  to saving the work product, or retaining the

21  data. Did you guys have docket-retention policy in

22  place?

23       A.   Yes, well, everything was saved to the laptop

24  and the company had access to all of the files that were

25  saved on work laptops.

26       Q.   What was your usual practice regarding using a

27  personal computer?

28            MR. MCKENZIE,KC:  Mr. Registrar, I think that

29  question has been asked several times and the answer

30  previously explained that he only saved on the work

31  laptops or work computers. And so, what I find very

32  unsettling here we began to cross-exam this witness and

13

Attorney General v. The Securities Exchange Commission - 125/2023


1  we have an objection to that.

2          THE COURT:  The question was whether or not he

3  informed any work for SureTraders on a private pc.

4          MR. MCKENZIE,KC:  Think the answer a few

5  questions ago was, "no".

6          THE COURT:  Okay.

7          MR. MCKENZIE,KC:  I could be wrong, but I

8  think you're recommending reflector.

9          MS. GLASGLOW:  Can you answer that question

10 again, please?

11 BY MS. CAREY:

12    Q.   Mr. Moore for clarity purposes and for the

13 record, did any of the work you conducted for

14 SureTrader, was it done on any of your personal

15 computers?

16    A.   No, it was not.

17    Q.   What was your work email number?

18    A.   It was moore@suretrader.com  D-M-O-O-R-E

19 @suretrader.com

20    Q.   Do you currently have in your possession any

21 emails from your employment with SureTrader?

22    A.   No.

23    Q.   Did you ever use your personal email address

24 to conduct work SureTrader?

25    A.   No.

26          MS. GLASGLOW:That's a repetition right there,

27 Mr. Hanna.

28          MR. HANNA: Yes, that's cross-examination

29 there-

30 BY MS. CAREY:

31    Q.   How did you provide updates to Mr. Gentile

32 during your employment?

ROUGH - 23 October 2023

14

Attorney General v. The Securities Exchange Commission - 125/2023

1       A.    What do you mean by updates?

2       Q.    In relation to the work that you were doing.

3  For example, the status of any assignments.

4       A.    Primarily verbal, but I also prepared daily

5  reports that were sent to the management team at

6  SureTrader and he was a part of the email chain.

7       Q.    And what did these reports address?

8       A.    Just daily numbers of revenue commissions

9  collected, fees collected, trading profits, newly closed

10  accounts, any negative accounts, any new platform

11  subscriptions, so it provided the daily statistics and

12  also the historical statistics as well.

13      Q.    Were these reports saved on SureTrader's

14  server?

15      A.    Yes.

16      Q.    Were they also saved on your work computer?

17      A.    Yes.

18            MS. GLASGLOW:  He already answered that. He

19  said every time he saves his work.

20  BY MS. CAREY:

21      Q.    Did your job duties include working with

22  websites with SureTrader advised its  advertised its

23  services?

24      A.    No.

25      Q.    While you worked at SureTrader did you use the

26  term 'affiliate'?

27      A.    Did I use the term 'affiliate'?

28      Q.    Yes.

29      A.    Personally?

30      Q.    Sorry?

31      A.    What are you asking?

32            MS. GLASGLOW:  Could you ask the question

ROUGH - 23 October 2023

Attorney General v. The Securities Exchange Commission - 125/2023

1  again? That's very broad.

2          MR. MCKENZIE,KC:  Yes. Very, very.

3          MS. GLASGLOW:  Unless it's something that

4  triggers a specific point that's already -

5  BY MS. CAREY:

6      Q.   During the course of your employment, did you

7  use the term 'affiliate'?

8      A.   Did I use the term 'affiliate'?

9          MS. GLASGLOW:  Affiliate - specific sense in

10  your line of work.

11          THE WITNESS:  Yes.

12  BY MS. CAREY:

13      Q.   What did the term 'affiliate' refer to?

14          MR. MCKENZIE,KC:  Can I just get a

15  clarification on the question being put to the witness?

16          THE COURT: The court.

17          MR. MCKENZIE,KC:  No, the two questions

18  together.

19          THE COURT:  Her question was: "While he was

20  employed at SureTrader did he ever use the term

21  'affiliate'?"

22          MR. MCKENZIE,KC:  Did he -

23          THE COURT:  Yes. Did he answer? He didn't

24  answer that specific question.

25          MR. MCKENZIE,KC:  Right.

26          THE COURT:  I clarified it and I asked: "Does

27  the term 'affiliate' signify anything specific in his

28  course of employment.

29          MR. MCKENZIE,KC:  Right. So my question is:

30  "Did he personally use it?" is what the -

31          THE COURT:  Okay.

32          MS. GLASGOW:  She said during the course of

ROUGH - 23 October 2023

Attorney General v. The Securities Exchange Commission - 125/2023

1   her employment to interject Mr. Registrar, but she

2   clarified that during the course of your employment, did

3   you use the term 'affiliate', and he said, "Yes".

4           MR. MCKENZIE,KC:  But the question -

5           THE COURT:  No, he didn't answer that. He

6   answered the question that I put to him: Does the term

7   "affiliate" signify anything in *his* course of

8   employment, and she went on and said what does

9   'affiliate' refer to, but he never answered the question

10  right around how *he* specifically used the term

11  'affiliate'.

12          THE COURT:  Do you want him to continue

13  answering your question or are you up and you will come

14  back to the question that Mr. McKenzie already asked to

15  specifically place that question to him? And it is your…

16          MR. MCKENZIE,KC:  No, I wasn't suggesting that

17  she put it to him. I just wanted to know  just make sure

18  we were all in agreement what question he was answering.

19  BY MS. CAREY:

20      Q.   Mr. Moore, I'll just repeat the last question

21  that I would've asked you. What did the term 'affiliate'

22  refer to during your course of employment?

23      A.   The term 'affiliate' refers to any programs

24  any companies that were - that had some sort of

25  agreement with SureTrader.

26      Q.   What discussion, if any, did you have

27  regarding the role affiliates at SureTrader with Mr.

28  Gentile.

29      A.   I didn't have any discussion with him directly

30  regarding that.

31      Q.   Did you have any discussion with any other

32  employee of SureTrader about affiliates?

ROUGH - 23 October 2023

Attorney General v. The Securities Exchange Commission - 125/2023

1      A.    Yes.

2      Q.    What was this discussion?

3            MR. MCKENZIE,KC:   Objection, on the grounds of

4      hearsay. Like I said in the other jurisdiction

5      apparently this is an issue.

6            THE COURT:   Could you repeat the question

7      actually for me?

8      BY MS. CAREY:

9      Q.    What discussion did you have with the other

10     employees of SureTrader about affiliates?

11     A.    The discussions were related to the type of

12     affiliate program they were a part of, generally and who

13     the participating companies were. Those conversations

14     were had with either the trade desk manager at the time,

15     or the deputy director.

16           MS. CAREY:   Mr. Moore, I am going to list a

17     few websites and I want you to confirm whether

18     SureTrader advertised its services on these websites.

19     The first website is.

20           MR. MCKENZIE:   Again, Mr. Registrar, we will

21     object on the basis that this question line. We shared

22     the printed copy lacks foundation. There are no tips

23     we've known excess of any between the matter which the

24     order relates to  to which the deposition refer. So, in

25     other words, I'm not sure why the relevance of

26     advertising - would advertising sets on the website will

27     have to do with the allegations if any, in a foreign

28     jurisdiction.

29           Perhaps my learned friend will lay that

30     foundation then we will finger that it is an irrelevant

31     question. So our objections to lack of foundation, to

32     the relevance of it.

ROUGH - 23 October 2023

Attorney General v. The Securities Exchange Commission - 125/2023

1        MS. CAREY:  Mr. Registrar we beg the court's
2   indulgence for a few minutes. Mr. Registrar with
3   reference to KC McKenzie's question, we note that these
4   questions were held within the original order by the
5   court made; I believe it was the 10th of March and more
6   specifically; these questions go to the nature of the
7   matter within the US as the purpose with how SureTrader
8   advertised on websites. So, any further objection taken
9   in relation to this question in particular should be
10  made at the matter within the US.
11       THE COURT:  Mr. McKenzie?
12       MR. MCKENZIE,KC:  Mr. Registrar, we still say
13  that the attempt at establishing relevance is still very
14  vague, very weak, and that the fact that the company may
15  or may not have advertised on a particular website in
16  and of itself, does not make the question relevant,
17  unless the advertisement on those websites were
18  fraudulent or improper in some way.
19       THE COURT:  Let me ask a question. According
20  to the order, once the  wasn't there  did you receive
21  any documents to furnish advertising - (Inaudible)
22       MS. MAYCOCK:  Mr. Registrar to assist the
23  Attorney General Office, I would've received the letters
24  of request which was sent out. The evidence - the
25  request  considering the usual clashing by the Office of
26  the Attorney General. It would've deemed it appropriate
27  to have our evidence taken where we've passed it to the
28  Registrar --  To the Judge, sorry -- Who heard the
29  application and all the parties were present, where
30  these questions that my learned friend is now asking was
31  contained within the originating application before the
32  Judge, where all the points was represented.

ROUGH - 23 October 2023

Attorney General v. The Securities Exchange Commission - 125/2023

1  The Judge then granted the order that my learned friend
2  referred to on the 10th of March that included these
3  questions to ask. My learned friend clearly stated what
4  the relevance is as far as *she* is aware, and to my mind,
5  whether it is relevant to the main action states it is
6  something to be said in the United States during the
7  American proceedings.

8          See, we can't say nor can my learned senior
9  say with respect whether it goes to the issues at heart
10 or not because we are not involved with that. I think
11 that we have to be clear on what we're here for.

12         We're here pursuant to a request for evidence
13 to be taken from this court for use and the proceedings
14 in the United States. The relevance of it or how it will
15 be used or whether persons will be objected to, whether
16 those questions will be objected to  that should be done
17 in the United States.

18         Our purpose is to get the evidence once we
19 establish a prima facie basis for asking a question. It
20 is contained in the order that was weighed and to go
21 beyond that  this is a trial and we're arguing the
22 merits of the case here. I respectfully submit is:  We
23 don't have the jurisdiction to do that.

24         THE COURT:  My jurisdiction is limited in this
25 capacity, Mr. McKenzie. I'm just going through the order
26 of justice now. Looking at typically at page 4, 25 and
27 26.

28         MR. MCKENZIE,KC:  I'm looking through the
29 order, Mr. Registrar, on page --

30         THE COURT:  25 and 26 advertising for
31 SureTrader. Is that not in line with your question that
32 was put forth by the accounts affiliation?

ROUGH - 23 October 2023

Attorney General v. The Securities Exchange Commission - 125/2023


1          MR. MCKENZIE,KC:  Yes, Mr. Registrar. I'm
2   aware that the order contains provision for production
3   of certain documents and for the approval of the - a
4   particular question with respect to this particular
5   witness  with respect to one or two questions respect to
6   this particular witness  with respect to those websites.
7   Sir, I'm aware that the order provides for the  the
8   order was/is a next party ordered those.
9          THE COURT: What is your title?
10          THE WITNESS: Risk Analysis and then Assistant
11  Manager of the trade desk.
12          THE COURT: I asked him what his title was.
13          MR. MCKENZIE,KC:  Yes. So Mr. Registrar I just
14  state the objection and I abide by your decision.
15          THE COURT:  What Mr. McKenzie was asking was
16  asking was how the foundation was laid, not
17  understanding the question that was put forth. I'll
18  allow you to ask your question. Before you ask your
19  question, I'll put forth the question.
20  BY THE COURT:
21      Q.  Mr. Moore are you familiar with the website
22  the SureTrader were advertising their services?
23      A.  I'm familiar with the websites that were apart
24  of the affiliate program, if that answers the question?
25          THE COURT:     Alright, Ms. Carey.
26          MS. CAREY:     Oblige, Mr. Registrar.
27  BY MS. CAREY:
28      Q.  Mr. Moore, I'm going to list a few websites
29  and I want you to confirm whether or not SureTrader
30  advertised its services on those websites:
31  Warriortrading.com - did SureTrader advertise their on
32  that website?

ROUGH - 23 October 2023

Attorney General v. The Securities Exchange Commission - 125/2023

1       A.     Just to be clear, are you asking me if, who

2   are your trading was an affiliate of SureTrader?

3       Q.     Mr. Moore, so, we would like for you to answer

4   whether or not SureTrader advertised on that website and

5   then if you can say whether or not they were an

6   affiliate?

7       A.     Warrior Trading was apart of the affiliate

8   program but I'm not sure if SureTrader advertised on

9   their website.

10      Q.     Next website is daytradingradio.com?

11      A.     I don't recollect that company.

12      Q.     Commissionjunction.com?

13      A.     I don't recollect that one either.

14      Q.     The Sykes Challenge?

15      A.     The Sykes Challenge, yes, that was also an

16  affiliate. I'm not exactly sure if SureTrader advertised

17  on the website.

18      Q.     Investorsunderground.com?

19      A.     That company was also an affiliate. I'm not

20  sure if SureTrader ever advertised on the website.

21      Q.     Stocktradeideas.com?

22      A.     I'm not familiar with that company.

23      Q.     Mojodaytrading.com?

24      A.     That company was also an affiliate but I'm not

25  sure if SureTrader advertised on the website.

26      Q.     What communication, if any, did you have with

27  individuals at Warrior Trading?

28      A.     I did have communications with one individual

29  who was one of the instructors at one of those

30  companies, I can't remember for sure which company it

31  was, so I don't know - I don't remember if it was

32  Warrior Trading or one of the other ones.

Attorney General v. The Securities Exchange Commission - 125/2023

1          I think it might've been Warrior Trading or
2    MOJO. I can't remember the individuals name but he was a
3    client of SureTrader and he was basically treated as a
4    VIP client in the sense that whatever services or needs
5    he had, he was able to contact my line directly to
6    receive that service faster than the normal route of
7    receiving that service.
8          Q.   And you would say the primary communication
9    was by direct line?
10         A.   Yes, my direct phone line. We also had a -
11   there was a chat - where clients could contact.
12         Q.   And what is the name of the person you
13   would've spoken with? The client?
14         A.   I don't remember the name of the individual.
15   That would've been either 2015 or 2016 if I remember
16   correctly, so I don't remember the name.
17         Q.      Do you know who is Ross Cameron?
18         A.      I'm familiar with the name.
19         Q.      And who is he?
20         A.      As far as I remember he was involved with
21   one of the companies that were involved with the
22   affiliate programs; I think it might've been investors
23   underground.
24         Q.   What did you and Mr. Cameron discuss?
25         A.   We never discussed anything.
26         THE COURT:    You already put that question
27   to him. You asked him if he's familiar with Ross Cameron
28   and he said, "yes"; you asked him who is Ross Cameron,
29   he said he's an individual brought with the think
30   investors.
31         So to put to him what did they discuss, you
32   never asked him whether or not he ever communicated with

ROUGH - 23 October 2023

23

Attorney General v. The Securities Exchange Commission - 125/2023

1   Ross Cameron.

2           MS. CAREY: I'm obliged.

3           MR. MCKENZIE, KC:  You did provide an answer.

4   BY MS. CAREY:

5           Q.   With reference to the company Warrior

6   Trading - what was the price structure for customers who

7   traded with SureTrader.

8           A.   I don't recall - I don't remember what

9   the price structure was for that. I know it was some

10  sore of discount that clients received if they came into

11  the company using the Warrior Trading - what's it called

12  - like a special code.

13          So, they would receive some of sort of

14  discount, but I don't remember exactly what that amount

15  was. A promo code, that's what it was.

16          Q.   Okay, thank you! Were Warrior Trading's

17  customer treated any differently than other SureTrader

18  customers?

19          A.   No.

20          Q.   In what country were Warrior Trading's

21  customers that came to SureTrader primarily located?

22          A.   I'm not sure. Different countries.

23          Q.   Did SureTrader enter into any contract with

24  any of the listed website - mentioned websites?

25          A.   A contract? I assume that if those companies

26  were apart of some affiliate program there would've been

27  some sort of agreement or contract that was made, but

28  I'm not one-hundred - I can't confirm that.

29          Q.   Did you discuss SureTrader's advertising with

30  these websites with Mr. Gentile?

31          A.   No.

32          Q.   Did you discuss advertising with any other

ROUGH - 23 October 2023

24

Attorney General v. The Securities Exchange Commission - 125/2023

1  SureTrader employee?

2       A.   Can you clarify, please?

3       Q.   In relation to the websites that woul've

4  mentioned? Did you discuss SureTrader advertising with

5  any of those websites with any other employee at

6  SureTrader?

7            MR. MCKENZIE:  Your question was: Did he

8  discuss advertising?

9            MS. CAREY:  On the website, yes.

10           MR. MCKENZIE:  Mr. Registrar, my only

11  objection to that question. I understand that we are

12  just in the deposition. I think there's an answer to the

13  question each of the websites were placed to him was

14  that either he didn't know the company or that the ones

15  he knew, he knew they wanted to be affiliates but he did

16  not know any of them to advertise.

17           Are the SureTrader advertising on any of the

18  websites? So, the question - this question whether or

19  not he discussed.

20           THE COURT:  The question that she asked was

21  that if he discussed advertising; not withstanding he

22  didn't know - I mean if he didn't he could just say he

23  didn't.

24           THE WITNESS:   In regards to SureTrader

25  advertising on those companies websites, I didn't have a

26  discussion with anybody at SureTrader regarding that.

27  BY MS. CAREY:

28       Q.   Who do you understand would be targeted as a

29  potential customer to advertising on the websites?

30       A.   Generally US clients.

31       Q.   Did you have a discussion with Mr. Gentile

32  about that?

ROUGH - 23 October 2023

Attorney General v. The Securities Exchange Commission - 125/2023

1          THE COURT:  Isn't that the same question as
2  previous? As to whether or not he discussed with Mr.
3  Gentile about advertising? The same question as earlier?
4          MR. MCKENZIE:  And just for clarification, Mr.
5  Registrar, was the question on these websites that -
6          THE COURT:  Her question initially was - who -
7  which - technically which clients would SureTrader
8  target? His response were US clients and she asked him
9  after that, did he ever discuss *that* with Mr. Gentile.
10  My response was whether or not it was the same as asking
11  if he advertised, if he had any discussion with Mr.
12  Gentile about advertising, which he previously answered.
13          MR. MCKENZIE:  Thank you. It was just a
14  general question I was asking, not necessarily to the
15  particular websites.
16          THE COURT:  Yes. Yes.
17          MR. MCKENZIE, KC:  Oblige. Thanks.
18          MS. CAREY:  Mr. Registrar, just for clarity
19  purposes we wanted to be specific in relation to the
20  customer's distinct from advertising generally.
21          THE COURT:  That's fine, you can go on.
22  BY MS. CAREY:
23      Q.   Mr. Moore to repeat my prior question, did you
24  discuss with Mr. Gentile in relation to the potential
25  customers that were targeted by advertising.
26      A.   No, I didn't have any discussions with Mr.
27  Gentile regarding that.
28      Q.   And, did you have any other employee at
29  SureTrader?
30      A.   Yes, this would've been between 2014 and 2015,
31  shortly after working there. So, I don't remember the
32  exact details of the conversation but I do remember

Attorney General v. The Securities Exchange Commission - 125/2023

1  having conversations with our compliance officer at the

2  time.

3          Also, the company's head - or the trade desk

4  manager, as well as the Deputy Director of the company

5  around that time.

6          The response that I vaguely remember receiving

7  was that from the top - the sentiment was that the

8  affiliate programs were a way to get access to more US

9  clients without there being any direct solicitation.

10         Q.    For clarity purposes can you name who the

11  deputy director was at the time?

12         A.    Justin Ritchie.

13         Q.    And also the Compliance Managers you would've

14  indicated?

15         A.    Philip Dorsett.

16         MS. CAREY:  Okay, great! We just have a few

17  more questions before we're done with our examination.

18         Q.    Can we go back to the affiliate program - Can

19  you describe what a SureTrader's affiliate program?

20         A.    Sorry, can you repeat that, please?

21         Q.    Can you describe what is the affiliate program

22  of SureTrader?

23         A.    Yes. So, the affiliate program was put in

24  place to - so that the company could get into some sort

25  of partnership or agreement with other companies that

26  had trading clients that were possibly looking for a

27  software provider or a trading platform to day trade on.

28  And SureTrader was the - was a company that provided

29  those services.

30         So, the affiliate program was to basically

31  give clients that joined SureTrader using the promo code

32  provided - or I guess the promo code of whichever

ROUGH - 23 October 2023

Attorney General v. The Securities Exchange Commission - 125/2023

1  company they were apart of - some sort of incentive or
2  discount once they joined SureTrader.
3      Q.        Mr. Moore, how did a company become an
4  affiliate?
5      A.    I'm not sure.
6      Q.    Which employees of SureTrader did you discuss
7  the affiliates program with, if you did?
8      A.    That would've been the three people that I
9  just mentioned. So, the Manager of the trade desk, the
10  Compliance Officer,and the Deputy Director.
11      Q.    And one final question: Can you tell me the
12  name of the desk trade manager?
13      A.    At the time it was Michael Strachan.
14          MS. CAREY: Mr. Registrar --
15          THE COURT:  That's the end of your
16  examination?
17          MS. CAREY: That's the end of my examination.
18  Thank you.
19          MS. HUNTER: No questions.
20          THE COURT:  Mr. Moore, you are not to discuss
21  anything that transpired today with anybody.
22          THE WITNESS: Understood.
23          THE COURT:  Do you have any other witness for
24  examination f or today?
25          MS. CAREY: No, I don't have a witness
26  scheduled for today.
27          THE COURT:  It is 11:42am. We will break and
28  we will begin again at 2:00pm.
29          (Court adjourned at 11:42am)
30                  - - - - - -
31

32

ROUGH - 23 October 2023

Attorney General v. The Securities Exchange Commission - 125/2023

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
```

ROUGH - 23 October 2023