**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:21-cv-21079-BB**

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

    Defendants.

**DEFENDANT GUY GENTILE'S OPPOSITION TO THE SEC'S MOTION FOR
CLARIFICATION OF THE COURT'S OMNIBUS ORDER**

Defendant Guy Gentile hereby opposes the SEC's Motion for Clarification of the Court's Omnibus Order [ECF No. 268] on the three issues identified therein. The motion does not seek "clarification," but instead seeks substantive reconsideration of the Court's Omnibus Order or otherwise seeks rulings on issues not addressed, and in doing so distorts the underlying factual record. The Court should deny the SEC's requested relief.

*First*, Gentile does not dispute that certain purported SureTrader documents were provided by the Joint Official Liquidators ("JOL") and the Securities Commission of the Bahamas ("SCB") to the SEC, who then produced the documents in discovery in this case. But absent the required foundation of the process by which those records were originally collected

1

from SureTrader and produced to the JOL and the SCB in the first place, they are not automatically "authentic" business records of SureTrader and thereby "admissible" at trial.[1]

For example, the SEC should have someone with personal knowledge explain what it thinks its Exhibit 268 for trial is and would show. Exhibit 268 appears to include thousands of individual documents and runs almost 50 pages on the SEC's Exhibit List. [*See* ECF No. 266-1]. On the SEC's view, this "exhibit" should be deemed authentic and admitted into evidence with no further inquiry into how the documents were created or what they purport to be. That is not the law. At minimum, the SEC must produce a witness to testify about such documents from personal knowledge or must produce other reliable circumstantial evidence that the documents are what the SEC claims them to be. *See, e.g.*, *Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 721 (N.D. Fla. 2019) (declining to find evidence authentic and noting that "[c]ourts generally hold that an affidavit of a witness, when viewed in combination with circumstantial indicia of authenticity . . . would support a reasonable juror in the belief that the documents are what the proponent says they are[]" (citations omitted)). It is the SEC's burden to prove authenticity (and admissibility) of evidence it seeks to introduce at trial, not Gentile's burden to disprove authenticity.[2]

*Second*, and on a similar note, the Court should reject the SEC's request for blanket authentication of every document Dorsett or Frantz either stole or illicitly retained from SureTrader upon their respective terminations from the company, and subsequently "produced" in this action, which totals over 40,000 documents. There has been considerable litigation over

---

[1] The letter from the JOL transmitting the documents to the SEC does not detail the process by which the documents were collected. [*See* ECF No. 268-1].

[2] Authenticity is, of course, necessary but not sufficient for admission of a document into evidence, and Gentile reserves all other bases for objection to the admission of documents. Many, if not all, of the documents received from the JOL and SCB also constitute hearsay, and the SEC has the burden of proving a hearsay exception, such as under Rule 803(6).

these documents throughout the course of this case, and the Court ultimately ruled that the documents could be turned over to the SEC and used in *discovery*. Discovery, however, is not trial. To the extent individual documents can be authenticated at trial, such as through a witness with personal knowledge of the document's creation (for example an email that Dorsett or Frantz personally sent that they recall), Gentile likely has no viable authenticity objection. *See* Fed. R. Evid. 901(b)(1).

But the documents Dorsett and Frantz seized from SureTrader are not so limited. For example, Frantz testified at length during his deposition about a massive spreadsheet he produced that he did not "create," which was comprised of underlying data he was not responsible for maintaining (and proved to be unfamiliar with under questioning by Gentile's counsel). *See* Frantz Mar. 12, 2023 Depo. Tr. 137:2–5 ("A. Exported. Not created."); *id* at 137:23–157:19 ("Q. . . . do you understand that where an account number says PFS, that that is an abbreviation of Penson Financial Services? A. No, not really.") [ECF No. 260-2]. The spreadsheet is listed as the SEC's Exhibit 8 for trial. [ECF No. 266-1].

There are also questions about the way documents from Dorsett and Frantz were collected and produced, especially from Dorsett, which Judge Torres ruled could be probed at trial if Dorsett testifies. *See* Ord. on Def.'s Renewed Mot. Sanctions 10 (Evidence that Dorsett deleted emails "is certainly something that can be used as impeachment at trial if [Dorsett] testifies. Indeed, the ability to cross examine any witness as to missing information or 'deleted' emails is always available to undermine a witness's credibility.") [ECF No. 259]. Blanket authentication of documents "produced" by Dorsett and Frantz is not appropriate; authenticity should be addressed on a document-by-document basis.[3]

---

[3] To the extent the Court ruled in its Omnibus Order that neither Dorsett's nor Frantz's testimony should be "excluded," Gentile understands this to mean that either would be permitted to appear and testify live in person at

*Finally*, and perhaps most important, the SEC misstates the parties' agreement as reflected in the Joint Notice of Partial Resolution of Motions *in Limine* [ECF No. 244]. The parties agreed not to "mention any of the prior SEC or Department of Justice ('DOJ') investigations, and resulting court cases in the District of New Jersey, or that Gentile was a cooperator for the FBI or DOJ." *Id.* at 1. But the Joint Notice also makes clear:

> . . . The Parties continue to dispute whether documents and evidence regarding FINRA's prior charging decision should be precluded. *The Parties also continue to dispute whether the SEC in those prior investigations (and subsequent cooperation with the DOJ) gave Gentile assurances that SureTrader's solicitation policies and practices conformed with U.S. securities law and whether evidence, if any, of same should be precluded. See* Plaintiff's Motion *in Limine* at ECF No. [220] p. 11-12.

*Id.* at 1–2 (emphasis added). To drive home the point, the Joint Notice states again: "The Parties continue to dispute whether the SEC in those prior investigations (and subsequent cooperation with the DOJ) gave Gentile assurances that SureTrader's solicitation policies and practices conformed with U.S. securities law and whether evidence of same should be precluded." *Id.* at 3–4 (citation omitted).

Nothing about the Court's Omnibus Order frustrates the parties' agreement or contravenes the positions of the parties as outlined in the Joint Notice. As the Court stated, it

> agrees with the SEC that the prior investigation and non-prosecution of Gentile related to an unrelated pump and dump scheme should be excluded. It occurred in 2007 and 2008 before the formation of SureTrader in 2011. ECF No. [220] at 6. As such, the evidence of prior investigations and non-prosecution relate to an entirely different scheme and fails to satisfy Rule 401's low threshold for relevant evidence. Such evidence does not have "any tendency to make a fact more or less probable than it would be without the evidence" and it is not "of consequence in determining the action." Fed. R. Evid. 401. It is "irrelevant evidence" and is accordingly not admissible. *See* Fed. R. Evid. 402.

---

trial. Gentile does not understand the Court to have decided in its Omnibus Order that designations of their deposition testimony in lieu of live testimony is permissible, and Gentile respectfully refers the Court to pages 2–5 of his Objections and Counter-Designations to SEC's Deposition Designations [ECF No. 261], which explain why neither Dorsett nor Frantz should be considered "unavailable" under the Federal Rules of Evidence.

4

Omnibus Order 38 [ECF No. 264].[4]

The SEC does not actually seek "clarification" of the Omnibus Order, but instead complains that the Court ruled against it on issues where the parties had indicated in the Joint Notice they still disagreed:

> . . . Gentile can introduce the Wells Submission from SureTrader in the prior FINRA investigation in 2013, as well as prior assurances given to Gentile by the SEC and DOJ relating to SureTrader's compliance with Section 15(a)(1). Gentile can introduce the related evidence of involvement of counsel in the drafting of the Wells Submission explaining SureTrader's policies and procedures aimed at ensuring compliance with Section 15(a)(1), as long as he complies with the Parties' Joint Notice of Partial Resolution of Motions *in Limine*, ECF No. [244]. Such evidence is relevant as it makes Gentile's defense of good faith as to SureTrader's compliance "more or less probable than it would be without the evidence[.]" Fed. R. Evid. 401. Acting in good faith is a defense under Section 20(a) of the Exchange Act which shields a controlling person from liability if "the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). The jury is capable of understanding FINRA's prior investigation into SureTrader and Gentile's drafting of the Wells Submission without risk of confusion. Accordingly, exclusion is not warranted under Rule 403's exclusion of "relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

*Id.* at 38–39.

It is entirely appropriate and consistent with Gentile's planned good-faith defense and the Court's Omnibus Order for the defense to put on evidence that Gentile received assurances from the DOJ and/or the SEC about SureTrader's compliance with U.S. securities laws between approximately 2012 and 2015: specifically, assurances by SEC staff attorneys that SureTrader could service U.S. persons as clients because it had adequate policies in place to prevent solicitation of U.S. persons, including requiring U.S. persons to sign a nonsolicitation agreement, a website clickwrap agreement requiring acknowledgment of nonsolicitation before accessing SureTrader's website, and prominent "not intended for U.S. persons" disclaimers on

---

[4] The evidence would also be inadmissible under Rules 403 and 404(b)(1).

advertisements. That evidence can be elicited without any reference to the alleged pump-and-dump schemes underlying the DOJ's and the SEC's prior actions against Gentile in New Jersey, or Gentile's service as a cooperator for the government during the same timeframe.

Indeed, nothing warrants opening the door at trial in this case to evidence concerning Gentile's prior arrest, his cooperation with the government, or the litigation between the SEC and Gentile in New Jersey—as the parties agreed in the Joint Notice. On September 29, 2020, Judge Martinotti of the District of New Jersey dismissed the SEC's amended complaint regarding the pump-and-dump allegations against Gentile with leave to refile. *See SEC v. Gentile*, 2:16-cv-01619-BRM-ESK (D.N.J. Sept. 29, 2020) [ECF Nos. 108, 109].[5] Instead of amending further and refiling there, the SEC allowed the deadline to refile to lapse and filed the instant Complaint here months later in March 2021. *See* Compl. [ECF No. 1].[6] When Gentile then complained that the allegations here should have been included in a second amended complaint in New Jersey, the SEC responded:

> [T]he Florida Case is not duplicative of or materially on all fours with this case. The Florida Case includes a different party, SureTrader. The two actions involve different substantive violations of the federal securities laws: here an alleged penny stock fraud and in the Florida Case unregistered broker-dealer conduct.

SEC Opp. to Gentile's Mot. Contempt 14, *SEC v. Gentile*, 2:16-cv-01619-BRM-ESK (D.N.J. Dec. 6, 2021) [ECF No. 123]; *see also id.* at 8 (contending that "the two matters are separate and substantively unrelated"). In other words, when Gentile argued that the allegations here related to

---

[5] The criminal indictment concerning the same conduct had previously been dismissed by Judge Linares on January 30, 2017. *See* Ord. Granting Mot. Dismiss, *United States v. Gentile*, 2:16-cr-00155-JLL (D.N.J. Jan. 30, 2017) [ECF Nos. 32, 33]. An appeal to the Third Circuit was later dismissed. *See* Ord. USCA, *United States v. Gentile*, 2:16-cr-00155-JLL (D.N.J. May 1, 2017) [ECF No. 36].

[6] Notably, prior to filing the instant action, the SEC did not follow its typical practice of issuing a "Wells notice" to Gentile outlining why it believed Gentile had violated the securities laws and inviting a "Wells submission" prior to filing suit, as FINRA had done back in 2013 regarding the same alleged conduct. *See SEC v. Levin*, No. 12-21917-CIV, 2013 WL 594736, at *12 n.6 (S.D. Fla. Feb. 14, 2013) ("A Wells notice is a letter notifying the recipient that the SEC is close to bringing an enforcement action against the recipient. It provides the recipient with an opportunity to set forth his or her version of the law or facts." (citation omitted)).

the New Jersey cases, the SEC disagreed. Now, however, the SEC contends that any prior assurances given to Gentile regarding SureTrader's business

> allegedly arose as part of the New Jersey cases and Gentile's cooperation with the DOJ, and not the instant case and not in FINRA's investigation. Thus, any discussion of alleged SEC and DOJ assurances relating to SureTrader's compliance with Section 15(a) would necessarily require the parties to address the very areas they stipulated not to address: the New Jersey cases.

SEC Mot. 5. It is the SEC, not Gentile, that is trying to have it both ways, and the Court's Omnibus Order strikes the appropriate balance.

The SEC also claims in a footnote in its recent motion: "The Complaint's allegations here begin in March 2016, after Gentile's cooperation ceased. So, it would be impossible for Gentile to have been a cooperator and conducting SureTrader's illegal offshore activities, as alleged here, with the blessing of the DOJ and/or SEC." SEC Mot. 6 n.2. This is beyond disingenuous.

Although the Complaint here may artfully plead that the "Relevant Period" comprises "[f]rom no later than March 2016 until at least November 2019," Compl. ¶ 1—so as to postdate Gentile's cooperation and bring the SEC's allegations within the five-year statute of limitations—it also alleges conduct *predating* March 2016 and during Gentile's cooperation as forming the foundation of the SEC's case. *See, e.g.*, *id.* ¶ 2 ("Gentile hatched his plan in early 2012."); *id.* ¶ 32 ("By early 2012, SureTrader had only about 100 customers. Gentile decided to begin soliciting U.S. customers in order to increase SureTrader's customer base and improve its business prospects."). The SEC has elicited deposition testimony from its own witnesses to the same effect. *See, e.g.*, Dorsett Feb. 27, 2023 Depo. Tr. 26:16–20 ("[A:] And so [Gentile] made a decision -- this was within like the first quarter -- the first few months -- first few weeks of 2012, that we were going to start allowing for U.S. clients."); *id.* at 31:7–14 ("[Q:] The discussion about the unsolicited acknowledgement agreement, was that within days, weeks, months after SureTrader opened? Can you estimate the time period? A. That would have been, I would say,

about two months. Q. Okay. This would then be early 2012? A. Right. Early 2012. . . .") [ECF No. 260-3].[7]

Lest there be any remaining doubt that the SEC's theory here rests on pre-March 2016 conduct, the SEC's formal order commencing the investigation that purportedly led to this case—*In the Matter of Traders Café* (FL-03848)—was issued on November 25, 2013.[8] In December 2015 and February 2016, Gentile's counsel emailed the SEC to remind it of FINRA's prior investigation concerning the same alleged conduct and the assurances Gentile had received from both DOJ and the SEC about SureTrader's business practices during that investigation. [Ex. C]. Such events (and others) provide all the context necessary for why Gentile would have met with the SEC and explained SureTrader's operations prior to March 2016 and well before the SEC filed this action in March 2021.

The material change that occurred by March 2016 was *not* the result of SureTrader's business or the government's awareness of its nonsolicitation policies, but instead resulted from Gentile ceasing to cooperate with the DOJ and the SEC. After years of Gentile's valuable cooperation (leading to multiple criminal convictions and tens of millions of dollars in

---

[7] It bears noting that the deponent subsequently admitted to making a false statement during the first day of his deposition and ultimately acknowledged that certain SureTrader nonsolicitation policies were developed and implemented in 2011 before the company even began operating. *See* Dorsett Feb. 28, 2023 Depo. Tr. 74:3–10 ("Q. . . . Is it a fact that the statement [you made yesterday] that this [unsolicited acknowledgment] agreement was created in February 2012 false? A. It's true that that is not correct. Q. It's false, isn't it? A. Yes, it's false. I think we realize that. I realize that now.") [ECF No. 260-3]. Despite knowing that Dorsett's testimony about the policies first being developed in 2012 was false, the SEC nonetheless (1) in 2020 revised an affidavit by Dorsett to change the date from 2011 to 2012, which it then submitted to this Court, and (2) included the 2012 date in its Complaint. Although Dorsett has since acknowledged under oath that his prior sworn testimony was false, it appears the SEC intends to elicit this testimony about the nonsolicitation agreement first being used in 2012 at trial.

[8] *See* Ex. 1 to Gentile's Mot. Temp. Restraining Ord., *Gentile v. SEC*, 2:19-cv-05155-JLL-JAD (D.N.J. Mar. 5, 2019) [ECF No. 5-1] [Ex. A]; *see also* Hr'g Tr. 67:23–24, 87:3–7, *SEC v. Marin*, No. 19-mc-20493-UU (S.D. Fla. Mar. 19, 2019) (testimony of SEC staff attorney Jessica Weissman) (testifying that she "inherited [the investigation] in December of 2014" and that "[i]n connection with the Traders Cafe investigation, which I was not involved, it came to our attention that there may be U.S.-based customers being solicited by a Bahamian-registered broker-dealer but not registered with the SEC in possible violation of Section 15 . . . .") [Ex. B].

disgorgement and fines), and repeated government promises that Gentile would not be charged, the government still wanted Gentile to plead to a felony, which he refused to do. The government was not happy.[9] Indeed, the AUSA out of New Jersey overseeing Gentile's cooperation and *extra-judicial* bond conditions, needed Gentile's ongoing assistance to prosecute a novel securities fraud case. That AUSA, Gurbir Grewal, now heads the SEC Enforcement Division, and the SEC claims in its motion that it will be "forced to call" him in this action if Gentile separately puts on evidence—consistent with the Court's Omnibus Order—regarding assurances about SureTrader's compliance with U.S. securities law.

At bottom, the government should not be permitted to provide a cooperator assurances that certain conduct he undertakes is legal and then prosecute him later for that exact conduct. The FBI, DOJ, and SEC had unfettered access to SureTrader and assured Gentile during his cooperation from approximately 2012 to 2015 that SureTrader's business complied with U.S. securities law, and such evidence is relevant to his good-faith defense. That Gentile subsequently stopped cooperating with the government does not thereby render illegal the prior practices the government was made aware of and approved, but that is exactly the Kafkaesque proposition the SEC advances in its footnote. *See* SEC Mot. 6 n.2 ("The Complaint's allegations here begin in March 2016, after Gentile's cooperation ceased. So, it would be impossible for Gentile to have been a cooperator and conducting SureTrader's illegal offshore activities, as alleged here, with the blessing of the DOJ and/or SEC.").

From Gentile's perspective, the SEC is free to cross-examine him on his recollection of the prior assurances *from the SEC* that he received about SureTrader's compliance with U.S.

---

[9] On March 23 2016, the DOJ indicted Gentile and the SEC sued him in New Jersey over the stale pump-and-dump allegations from 2007 and 2008. *See* Indictment, *United States v. Gentile*, 2:16-cr-00155-JLL (D.N.J. Mar. 23, 2016) [ECF No. 1]; Compl., *SEC v. Gentile*, 2:16-cv-01619-BRM-ESK (D.N.J. Mar. 23, 2016) [ECF No. 1].

securities laws without mentioning his prior arrest, his cooperation, the FBI or DOJ, or the alleged pump-and-dump cases in New Jersey. But the SEC should not be able to smear Gentile at trial in this case by introducing irrelevant, highly inflammatory, and highly prejudicial testimony concerning prior alleged criminal conduct.

The Court's Omnibus Order appropriately allows Gentile to introduce evidence critical to his good-faith defense in this action while excluding the inappropriate evidence the SEC seeks to introduce in an effort to mislead the jury. No "clarification" is needed.

Dated: May 31, 2024

Respectfully submitted,

FORD O'BRIEN LANDY LLP

By: _/s/ Gabriela M. Ruiz_
    Gabriela M. Ruiz
    Fla. Bar. 46844
    One Biscayne Tower
    2 South Biscayne Boulevard Suite 3200
    Miami, Florida 33131
    Tel.: (786) 310-1135 (main)
    gruiz@fordobrien.com

    Adam C. Ford (admitted *pro hac vice*)
    Matthew A. Ford (admitted *pro hac vice*)
    Stephen R. Halpin III (admitted *pro hac vice*)
    275 Madison Avenue, 24th Floor
    New York, New York 10016
    Tel.: (212) 858-0040 (main)
    aford@fordobrien.com
    mford@fordobrien.com
    shalpin@fordobrien.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Defendant Guy Gentile's Opposition to the SEC's Motion for Clarification of the Court's Omnibus Order, dated May 31, 2024, to be served via CM/ECF on the following counsel for Plaintiff:

Alice Sum
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131
(305) 982-6300
sumal@sec.gov

Alise Meredith Johnson
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131
(305) 982-6385
johnsonali@sec.gov

    */s/ Gabriela M. Ruiz*
Gabriela M. Ruiz