UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-21079-BB

SECURITIES AND EXCHANGE COMMISSION,

       Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

       Defendants.

**DEFENDANT GUY GENTILE'S MOTION FOR INVOLUNTARY DISMISSAL UNDER RULE 41, THE COURT'S INHERENT AUTHORITY, AND RULE 16, AND IN THE ALTERNATIVE, MOTION TO STRIKE CERTAIN EXHIBITS**

FORD O'BRIEN LANDY LLP
One Biscayne Tower
2 South Biscayne Boulevard, Suite 3200
Miami, Florida 33131
Tel.: (786) 310-1135 (main)

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................................1

LEGAL STANDARD.................................................................................................................6

ARGUMENT ............................................................................................................................8

I.    The Court should dismiss the action under Rule 41(b) because there is a clear
record of willful conduct, and any lesser sanction would be inadequate...............................8

      A.   There is a clear record of willful conduct, based primarily on the SEC's continued
refusal to comply with the Court's Omnibus Order memorializing the parties'
agreement not to introduce evidence of the New Jersey cases and Gentile's
cooperation..............................................................................................................8

           1.   The SEC has included 21 exhibits on its exhibit list referencing the prior DOJ and SEC
investigations and Gentile's cooperation dozens of times. .........................................9

           2.   Nearly 20 additional exhibits included on the SEC's exhibit list and a substantial amount
of testimony the SEC intends to elicit at trial can only be understood by reference to
Gentile's cooperation and undercover work on behalf of the government from 202 to
2015. ......................................................................................................................11

      B.   Any sanction short of dismissal would not be sufficient. ........................................ 14

      C.   Alternatively, the Court should dismiss the action under Rule 16(f), which does not
require a finding of "bad faith," but authorizes dismissal where a party's conduct
unreasonably delays or otherwise interferes with the expeditious management of trial
preparation. ........................................................................................................... 16

II.   Gentile seeks attorney's fees for time spent reviewing the SEC's 286 exhibits to
identify instances of material that is inadmissible under the parties' agreement, the
Court's Omnibus Order, and the Federal Rules of Evidence and for time spent
preparing this Motion.........................................................................................................17

CONCLUSION...................................................................................................................18

## PRELIMINARY STATEMENT

The SEC filed its Complaint on March 22, 2021. Compl. [ECF No. 1]. The filing followed more than seven years after the formal order of investigation that purportedly gave rise to this case, but just months after the SEC had tried for years unsuccessfully to punish Gentile in an enforcement action in the District of New Jersey for his alleged involvement in two pump and dump schemes in 2007 and 2008. *See id.* ¶ 19 (citing New Jersey cases). Through those cases, the SEC sought to obtain injunctions based on Gentile's operation of his Bahamian broker-dealer, SureTrader, for which the SEC also seeks injunctions for the same conduct in the instant case. The SEC's 2016 case was ultimately dismissed on a finding that the injunctions were not equitable but served a punitive purpose and therefore could not be issued under the Court's equity powers. The same legal defect plagues the instant case, which was filed just months after the dismissal of the New Jersey case and purports to seek injunctive relief against future registration violations by a broker-dealer that closed down five years ago and against Gentile who has been *de facto* enjoined from doing so for nearly a decade as a result of the SEC's dilatory attempted prosecutions of him.

This case has always been less about the merits of the narrow dispute in question—whether SureTrader's myriad practices and policies designed to deter U.S. persons from opening accounts satisfy the regulatory exemption for effecting transactions in securities with U.S. persons who have not been "solicited," or at the least establish Gentile's good faith to meet the exemption—and more about the SEC's relentless desire to punish him *for conduct from 17 years ago*. That is why, for much of this case, including through a half dozen extensions of the discovery deadline sought by the SEC following a nearly eight-year investigation, the SEC has shown no real interest in moving towards trial. With the overhang of this ongoing litigation, the

1

SEC has been able to continue to drain Gentile's resources and effectively achieve the punitive, injunctive relief it seeks.

On January 31, 2024, however, the Court made clear that furthers delays would not be countenanced:

> As you can see, we are in the middle of a very long trial; however, I did set this for a status conference, as it is a 2021 case. It was filed on March 22nd of 2021. This Court, as recent as December 1st, entered its sixth order amending the schedule order and certain pretrial deadlines . . . . I want to manage this case by saying emphatically that this case is going to be tried in June.

*See* Jan. 31, 2024 Status Conf. Tr. 2:16–3:1 [ECF No. 219]. Accordingly, the parties proceeded to file pretrial motions *in limine*, and the SEC moved for summary judgment, but failed to take basic steps to prepare for trial, such as seeking issuance of letters rogatory to compel testimony of Bahamian individuals whose incomplete and inaccurate depositions the SEC now seeks to read to the jury.

In connection with the motions *in limine*, the parties sought to resolve a handful of issues without Court intervention, ostensibly to facilitate efficient preparation for trial. More specifically, on March 15, 2024, the parties filed a Joint Notice of Partial Resolution of Motions *in Limine* ("Joint Notice") [ECF No. 244]. Therein, it was agreed: "No party shall mention any of the prior SEC or Department of Justice ('DOJ') investigations, and resulting court cases in the District of New Jersey, or that Gentile was a cooperator for the FBI or DOJ," Joint Notice 1; *see also id.* at 3 (same). The Joint Notice also made clear:

> Gentile intends to introduce the Wells Submission he submitted to FINRA detailing his compliance with all non-solicitation rules and FINRA's decision to close its investigation with no further action. The SEC opposes the introduction of the Wells submission, but the parties agree that if the court admits this evidence, neither side will mention that the Wells was provided in connection with his cooperation with the DOJ, only that it was provided.

*Id.* at 3.

Against the backdrop of the parties' March 15, 2024 agreement in their Joint Notice not to mention the prior New Jersey cases, on May 13, 2024, the SEC filed designations of deposition testimony for all ten witnesses deposed in this case. [ECF No. 257].[1] As summarized below, the SEC now seeks to introduce the entire deposition transcripts as exhibits, which include dozens of references to the New Jersey cases and Gentile's work as an informant.

Subsequently, in advance of the then-upcoming deadline to file a pretrial stipulation, exhibit lists, witness lists, and the other items required by the Court's Scheduling Order, the parties exchanged draft exhibit lists on May 22, 2024. Final exhibit lists were due on June 4, 2024, and the Court ordered the parties to meet and confer about objections to these lists no later than Friday June 7, 2024. Similar to the deposition designations, the SEC's exhibit list included numerous documents expressly referencing the New Jersey cases and Gentile's cooperation, many of which appear to serve no apparent purpose other than to get before the jury this excluded evidence.

On May 21, 2024, the Court issued its Omnibus Order denying the SEC's Motion for Summary Judgment on all counts and resolving other issues raised by the motions *in limine* that were outstanding. [*See* ECF No. 264]. In doing so, the Court explained:

> Following their Joint Notice of Partial Resolution of Motions in Limine, the Parties agree that no party shall mention any of the prior SEC or Department of Justice ("DOJ") investigations, and resulting court cases in the District of New Jersey, or that Gentile was a cooperator for the FBI or DOJ.

*Id.* at 37. The Court continued:

> The Court agrees with the SEC that the prior investigation and non-prosecution of Gentile related to an unrelated pump and dump scheme should be excluded. It occurred in 2007 and 2008 before the formation of SureTrader in 2011. ECF No. [220] at 6. As such, the evidence of prior investigations and non-prosecution relate

---

[1] To the extent any of the SEC's witnesses will not appear live for trial, Gentile reiterates his objection to use of deposition testimony in lieu of live testimony. [*See* ECF No. 261].

to an entirely different scheme and fails to satisfy Rule 401's low threshold for relevant evidence. Such evidence does not have "any tendency to make a fact more or less probable than it would be without the evidence" and it is not "of consequence in determining the action." Fed. R. Evid. 401. It is "irrelevant evidence" and is accordingly not admissible. *See* Fed. R. Evid. 402.

*Id.* at 38.[2]

The next day, on May 22, 2024, the parties met and conferred regarding issues to be resolved in connection with the joint pretrial filing to be made with the Court in advance of Calendar Call scheduled for June 4, 2024, which included the parties' exhibit lists. During the meet and confer, counsel for Gentile protested that the SEC's exhibit list still included many exhibits that were inadmissible under the parties' agreement and the Court's Omnibus Order, including exhibits referencing Gentile's prior criminal indictment. Later in the day, and without sufficient time for review by Gentile's counsel prior to filing, the SEC added approximately 80 exhibits to its list, which was then filed with the Court on the understanding that Gentile had preserved all possible objections. [ECF No. 266-1]. On May 30, 2024, the SEC filed a Motion for Clarification of the Court's Omnibus Order [ECF No. 268], which necessitated a response from Gentile about why no such "clarification" was necessary, [ECF No. 269], as well as a ruling from the Court. [ECF No. 272].  The order reaffirmed the prior rulings excluding evidence related to the New Jersey investigations and Gentile's cooperation while permitting Gentile to introduce evidence of the FINRA and the SEC's assurance that SureTrader was in compliance with the registration exemption for foreign broker-dealers.

At Calendar Call on June 4, 2024, the Court explained that trial would begin at 9:30 am on Monday, June 10, 2024, and that the schedule would include some half-days, as well as some

---

[2] Gentile maintains the evidence is also inadmissible under Rules 403 and 404(b).

days when trial would not be held. *See* Calendar Call Tr. 3:13–4:24 [ECF No. 285]. The Court indicated:

> . . . I would hope that we would be able to have the case to the jury on June 25th. I am letting you know, at this time, that after June 26th I cannot devote any more time to this trial. So I've given you -- that would take us to eight days, if we take off June 26th. And my hope is that we can work very hard and try this case within that time.

*See id.* at 5:19–25; *see also id.* at 41:13–17 ("[E]ven looking at the Plaintiff's exhibits … obviously, they'll be electronically submitted to the jury, but we have 286 exhibits. So … this is going to be a very lengthy trial, and we're going to compress it within an eight-day period.").

On Thursday, June 6, 2024, the parties met and conferred for approximately three hours regarding exhibits and other pretrial housekeeping issues, with counsel for Gentile again reiterating their concerns about the volume of the SEC's planned exhibits and highlighting various issues with their admissibility. The parties tentatively agreed to exchange further revisions to objections to exhibit lists by Sunday, June 9, 2024. Counsel for Gentile also raised with the SEC at the meet and confer, raise here in this filing, and intend to raise again on the record that Gentile demands equal time to present his case, including because of the seriousness of the permanent injunction the SEC seeks if there is any finding of liability and because he bears the burden of proof on his good-faith defense. The SEC has taken the position that it should be entitled to all but one day of trial to present its case. The next day, Friday, June 7, 2024, unfortunate circumstances pushed the beginning of trial back to Wednesday June 12, 2024.

Amidst the foregoing, counsel for Gentile have been working diligently to prepare for trial and have had to waste significant resources scouring the SEC's 286 exhibits to ensure references to the New Jersey cases and Gentile's cooperation are not backdoored into evidence. A stray reference here or there may suggest only negligence, but counsel for Gentile have

identified over 20 exhibits still on the SEC's list, many if not most of which include several references to material that should not be put before the jury, suggesting that these exhibits have been either intentionally included or the SEC recklessly failed to review its exhibits prior transmitting them to Gentile's counsel.

On Saturday, June 8, 2024, the SEC transmitted a redacted copy of a single exhibit. Far from curing the SEC's violation of the Court's orders, the redaction would most likely serve to prompt a juror to research Gentile on the internet to uncover the prior cases and his work as an informant. On Sunday, June 9, 2024, the SEC sent along another single exhibit presenting the same issues as the exhibit transmitted the day before. Gentile preserves all his objections to these kinds of exhibits (as well as many others that are plainly inadmissible for various reasons). These include dozens of documents related to a Securities Commission of the Bahamas investigation that arose in response to the New Jersey cases as well as documents that cannot be authenticated, including customer applications dated *after* SureTrader closed down and for which the customer has not been included in the SEC's witness list or initial disclosures. Unfortunately, wading through each of them at trial will be a significant drain on the Court's resources and is sure to irritate the jury. It will likely result in hours spent in tedious and unnecessary sidebars.

The SEC's attempt to get certain exhibits before the jury violates the parties' agreement, the Court's Omnibus Order, and the Federal Rules of Evidence. As explained below, dismissal of the action is warranted under Rule 41(b), the Court's inherent authority, and/or Rule 16(f).

## **LEGAL STANDARD**

"A district court has inherent authority to manage its own docket 'so as to achieve the orderly and expeditious disposition of cases.'" *Equity Lifestyle Props., Inc. v. Fla. Mowing And Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) (quoting *Chambers v. NASCO, Inc.*,

501 U.S. 32, 43 (1991)). "The court may dismiss a claim if the plaintiff fails to prosecute it or comply with a court order." *Id.* (citing Fed. R .Civ. P. 41(b)). "The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Court." *Id.* (quoting *Durham v. Fla. East Coast Ry. Co.,* 385 F.2d 366, 367 (5th Cir. 1967)).

In a similar vein, "[s]anctions under Rule 16(f) were designed to 'punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation.'" *Ulysse v. Waste Mgmt. Inc.*, No. 11-CV-80723, 2014 WL 11429061, at *2 (S.D. Fla. Jan. 10, 2014) (quoting *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985)). "While dismissal under Rule 16(f) is a sanction of last resort, such a sanction is appropriate to punish an attorney for disregard of the court's orders affecting his readiness for trial." *Id.* (citing *Goforth*, 766 F.2d at 1535); *see also, e.g.*, *Granados v. Palm Coast Bldg. Maint., Inc.*, No. 20-CV-81917-RAR, 2021 WL 1617689, at *4 (S.D. Fla. Jan. 26, 2021) (same).

"Whether to dismiss a complaint for failure to comply with an order of the court is a matter committed to the district court's discretion." *Equity Lifestyle Props., Inc.*, 556 F.3d 1232, 1240 n.14 (11th Cir. 2009) (citing *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999)). "Discretion means the district court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006) (citation omitted) (affirming dismissal under Rule 41(b)).

## ARGUMENT

**I.    The Court should dismiss the action under Rule 41(b) because there is a clear record of willful conduct, and any lesser sanction would be inadequate.**

Rule 41 of the Federal Rules of Civil Procedure "appears in that part of the Rules concerned with trials[.]" *Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 207 (1958). Rule 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). The default is that such a dismissal "operates as an adjudication on the merits." *See id.* For dismissal under Rule 41(b), "[t]here must be both [1] a clear record of willful conduct and [2] a finding that lesser sanctions are inadequate." *Aguilar v. United Floor Crew, Inc.*, No. 14-CIV-61605, 2015 WL 2415421, at *7 (S.D. Fla. May 21, 2015) (Bloom, J.) (quoting *Zocaras*, 465 F.3d at 483).

Additionally, Rule 41 does not divest the Court of its inherent authority to manage its docket, as the Supreme Court made clear in *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962) (concluding that Rule 41 did not "abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief"). District courts are "necessarily vested" with the power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.*

**A.    There is a clear record of willful conduct, based primarily on the SEC's continued refusal to comply with the Court's Omnibus Order memorializing the parties' agreement not to introduce evidence of the New Jersey cases and Gentile's cooperation.**

As set out in detail below, the SEC's actions amount to "willful conduct" in violation of the parties' agreement, the Court's Omnibus Order, and the Federal Rules of Evidence. To wit, the SEC has listed numerous documents that expressly referenc the New Jersey cases and Gentile's cooperation, as well as documents that will require Gentile to testify about his

cooperation to provide context.  In addition to these two categories, Gentile's counsel have

identified approximately 40 additional exhibits for which no basis exists to admit the documents.

> **1.     The SEC has included 21 exhibits on its exhibit list referencing
> the prior DOJ and SEC investigations and Gentile's
> cooperation dozens of times.**

Notwithstanding the parties' stipulation and two written orders barring the SEC from

discussing the prior DOJ and SEC investigations and Gentile's cooperation from 2012 to 2015

on behalf of the FBI, DOJ, and SEC, the SEC has nonetheless included 21 exhibits on its exhibit

list expressly referencing the investigations and Gentile's cooperation. *See* SEC Exs. 11, 25, 64,

67, 68,[3] 80, 104, 105, 106, 107, 132, 133, 134, 141, 142, 144, 152, 153, 276, 280, 285.[4] Burying

them in lengthy exhibits, the SEC seeks to backdoor these statements by introducing emails,

online comments buried in lengthy documents, deposition testimony referencing the

investigations and cooperation, the SEC's 2016 complaint, and the Judge Linares opinion

dismissing the New Jersey case on statute-of-limitations grounds. The inclusion of these exhibits

on the SEC's exhibit list reflects the SEC's disregard for the Court's prior orders.

As one example, like the SEC's inadmissible "Ignite" post discussed in the Court's

Omnibus Order denying summary judgment, SEC exhibit 285 purports to be a screenshot capture

by an SEC employee of a post on the website "Day Trade Review," which has no known

affiliation to SureTrader. The review, titled "SURETRADER BROKER REVIEW – AVOID

THE PDT RULE," purports to have been posted by "Dave" on February 22, 2018, and at the

---

[3] Although exhibit 68 does not *expressly* mention the investigations, it is an email sent by Yaniv
Frantz requesting removal of an article from a website falsely claiming that Gentile had been
convicted of securities fraud based on his alleged involvement in two pump and dump schemes
in 2007 and 2008.

[4] As noted above, over the weekend the SEC has transmitted redacted copies of two exhibits. The
redactions do not cure the issue, but instead would likely prompt a juror to research Gentile on
her own and uncover the existence of the prior cases and his cooperation.

time of the screenshot had 0 views.[Ex. B, *SEC exhibit 285*]. The third sentence of the "review"

(inadmissible on myriad grounds) says:

> As a division of Swiss Americas Securities, Ltd., SureTrader is overseen by CEO Guy Gentile, who in 2016 was charged by the Securities and Exchange Commission with penny stock manipulation schemes. The charges were dismissed in 2017.

Similarly, exhibit 280, purporting to be a screenshot of "comments" on a thread posted on

warriortrading.com, includes a post by "Joseph Bosco," imploring "DO NOT open a Sure Trader

account . . . The owner of Sure Trader, Guy Gentile was official charged with securities fraud by

the US Attorney's Office in 2016." [Ex. C, *SEC exhibit 280*]. Exhibit 276 includes an excerpt of

Gentile's Wikipedia page describing in detail his cooperation on behalf of the FBI, DOJ, and

SEC. [Ex. D, *SEC exhibit 276*]. In other more egregious examples, complete copies of the SEC's

2016 complaint against Gentile and Judge Linares's decision dismissing that complaint can be

found buried in lengthy exhibits. [Ex. E, *SEC exhibit 105 at 10*]; [Ex. D, *SEC exhibit 106 at 11*].

      The SEC also includes on its exhibit list more than half a dozen full deposition transcripts

referencing the investigations dozens of times. A non-exhaustive list of the statements contained

in deposition transcripts the SEC hopes to place before the jury has been attached as exhibits,

which include the following:

- "Mr. Gentile aided and assisted not only the DOJ but the SEC in terms of all of this other stuff that was going on. Everything that he was doing benefited both your agencies." [Ex. G, *SEC exhibit 11 at 164*].

- "You're asking me whose money is this, I'm telling you my understanding and especially buttressed by the SEC, FBI, and the DOJ utilizing SureTrader to go after targets and get criminal convictions of people." [Ex. G, *SEC exhibit 11 at 165*].

- "There had been news that Guy Gentile had been indicted . . ." [Ex. H, *SEC exhibit 25 at 25*].

- "Q. Do you know if any of the conversations that you heard between 2012 and 2015 where Mr. Gentile was on the phone with people that you testified yesterday, whether he was talking to FBI agents? A. I cannot say if he was talking to FBI agents. There

10

was . . . actually a few conversations, where he was referring to me and it sounded as if he was talking to regulators." [Ex. I, *SEC exhibit 132 at 174*].

- "[W]hen I spoke to the regulators – SEC, DOJ, FBI – with my lawyer present, and I'm explaining to them the entire operation of the firm, they specifically told me to maintain a relationship with Nathan Michaud. Several months later, they asked me to go to Timothy Sykes' penny stock conference in Las Vegas. They wired me up and they asked me to do recordings against Nathan Michaud and several other targets that the government had." [Ex. J, *SEC exhibit 134 at 141*].

- "He did mention also on the website about Guy's SEC pump and dump pending case." [Ex. K, SEC exhibit 142].

2.     **Nearly 20 additional exhibits included on the SEC's exhibit list and a substantial amount of testimony the SEC intends to elicit at trial can only be understood by reference to Gentile's cooperation and undercover work on behalf of the government from 2012 to 2015.**

In addition to these 21 exhibits expressly referencing the investigations and Gentile's cooperation, another nearly 20 exhibits as well as a substantial amount of the testimony the SEC seeks to introduce at trial and through deposition transcripts, can only be understood by or will likely elicit reference to Gentile's cooperation. *See*, *e.g.*, Exs. 2, 26, 43, 46, 47, 52, 55, 56, 58, 61, 72, 132, 134, 141, 144, 152, 153, 160. During the course of Gentile's cooperation for the FBI, DOJ, and SEC from 2012 to 2015, he (i) attended over 50 meetings with targets of investigations, (ii) authored thousands of emails to targets, (iii) authored thousands of text messages to targets, (iv) attended over 50 meetings with government officials, including: Southern District of New York prosecutors and FBI agents, District of New Jersey prosecutors and FBI agents, Royal Mounted Canadian Police, and the Securities and Commission, and (v) made hundreds of recorded phone calls to over 25 potential targets, subjects, and/or witnesses. Given the intensity of his work as an informant and the importance of the cases he was assisting with, Gentile was repeatedly *instructed to maintain the status quo at SureTrader and not to do anything to arouse suspicion*. In particular, he understood that maintaining

SureTrader as a lawfully operating foreign broker dealer *accepting U.S. clients was essential to his assistance in ensnaring securities violators*. In other words, many of the documents and much of the testimony the SEC seeks to introduce regarding events between 2012 and 2015 require understanding the context of the depth of Gentile's cooperation to understand the actions he was taking.

As chronicled in an affidavit detailing his work as an informant (submitted by Gentile in support of his motion to dismiss the 2016 Indictment), his cooperation included cooperating against a Russian national, but Florida resident, he had identified and developed a relationship with who had been engaging in a sophisticated high-speed international stock trading scheme that involved the use of traders from around the world who would enter buy or sell orders and then quickly cancel them, a scheme known as layering or spoofing. [Ex. A, *Gentile affidavit*]. That individual's scheme was generating as much as $50 million in illicit profits per month. The Russian national, but Florida resident, was ultimately indicted after Gentile set up multiple meetings with this individual at his Bahamian broker-dealer and persuaded him to set up an account at SureTrader where he his trades would be anonymous and undetected while being provided with the cover of trading through a broker-dealer *in full compliance with U.S. registration exemptions*. *Id*.

The DOJ press release touted the Indictment of this individual as the "First Federal Securities Fraud Prosecution Involving 'Layering'." [Ex. L, *DOJ press release*]. The press release identifies Assistant U.S. Attorneys Gurbir Grewal and Nicholas Grippo (both of whom now appear on the SEC's witness list in the instant case) as the representing the government and notes that Milrud relied on the assistance "of an individual who owned an off-shore broker-dealer (the Foreign-BD) but who, unbeknownst to Milrud, was a cooperating witness ("CW")

with law enforcement." [Ex. L, *DOJ press release at 2*]. That was Gentile. It goes on to explain

that Milrud "sought to open a trading account at the Foreign-BD for use in his layering scheme"

and describes recorded meetings in the Bahamas between Milrud and the CW [Gentile]. [Ex. L,

*DOJ press release, at 2*]. The SEC's parallel complaint against Milrud also contains allegations

about his meetings "with the owner of an offshore brokerage firm" (SureTrader) to "explore the

possibility of engaging in layering through an account at the Broker's offshore firm. Complaint

at 16-17, 26-27, *SEC v. Aleksandr Milrud* (D.N.J. 2015) (No. 15 Civ. 237) [Ex. M].

 The SEC seeks to introduce nearly two dozen exhibits, deposition transcripts, and live

testimony that either reference or can only be explained in reference to Gentile's cooperation.

For example, these documents include emails about and invoices from 2014 between SureTrader

and U.S. based educational website whom which Gentile understood he needed to maintain the

status quo and avoid arousing suspicion during his cooperation. [Ex. N, *SEC exhibit 46*]; [Ex. O,

*SEC exhibit 72*].  They also include alleged customer lists that include targets of FBI and SEC

investigations. [Ex. P, *SEC exhibit 61*] Similarly, the SEC seeks to introduce the deposition

testimony of Philip Dorsett, regarding conversation he had with Gentile concerning U.S.

regulations [Ex. Q, *SEC exhibit 141 at 32*] as well as cryptic testimony about conversations in

which Dorsett purportedly overheard Gentile speaking to "regulators":

> So Guy would – would be saying something loudly and he'd know like I'd hear
> him. So sometimes I would turn around and hear it, and he would give me the
> thumbs up to be like yeah, we got this one, or this, and this . . . . The one or two
> times that Guy spoke quietly those were odd. And it's interesting. As we talk I'll
> probably talk more about that. There was a difference when Guy was just talking
> to some sort of like business partner than when he was talking, perhaps, like a
> regulator, or a lawyer, or something like that.

[Ex. Q, *SEC exhibit 141 at 42*]. Dorsett also repeatedly testified about SureTrader's relationship

with Timothy Sykes, which developed after the FBI instructed Gentile to attend the Sykes

conference to record a target of a securities fraud investigation. Dep. of Phillip Dorsett at 30:20;

38:6,12,16; 45:11,12,20; 50:12; 61:6,7; 65:3; 68:24; 69:1; 134:25; 135:3,18,22,23; 136:1,3 (Feb. 27, 2023); Dep. of Phillip Dorsett at 61:9; 114:24; 115:9, 10; 117:17; 126:21; 182:3, 7, 10, 23; 183:10, 22; 184:2; 258:21 (Feb. 28, 2023). SureTrader's relationship with Sykes was formally terminated (with the knowledge of the FBI, DOJ, and SEC) by Sykes in 2014, although the SEC seeks to introduce testimony of Dorsett as well as Yaniv Frantz suggesting that SureTrader used Sykes to solicit U.S. customers between from 2016 to 2018. *Id.*

      **B.**    **Any sanction short of dismissal would not be sufficient.**

      To grant dismissal in these circumstances, the Court must conclude that any other sanction would not be sufficient, but "the district court's finding can be explicit or implicit." *Murphy for Ellen C. Price Tr. v. Hurtado*, No. 16-23562-CIV-KMW, 2017 WL 7794279, at *3 (S.D. Fla. Sept. 20, 2017). Given the numerous instances described above, Gentile is concerned there is a significant danger that, even if the offending exhibits are excised from the SEC's exhibit list or otherwise excluded at trial, one or more of the SEC's witnesses will "directly testif[y] about evidence that [has] been excluded in the presence of the jury." *See Bonet v. Now Courier, Inc.*, 203 F. Supp. 3d 1195, 1204–06 (S.D. Fla. 2016) (dismissing "case with prejudice as a sanction under Federal Rule of Civil Procedure 41").

      Furthermore, in addition to the issues concerning the myriad SEC exhibits that reference the New Jersey cases and Gentile's prior cooperation, many if not most of the remaining 286 exhibits are plagued by various other issues that render them admissible. Counsel for Gentile have raised these issues with the SEC multiple times and likewise expended considerable resources reviewing these exhibits. For example, as of writing, the SEC has not provided counsel for Gentile a declaration explaining how the mass of documents the SEC allegedly received from the Securities Commission of the Bahamas, who allegedly received them from SureTrader sometime before the filing of the Complaint, can be authenticated at trial. The same holds true for the

documents purportedly provided by SureTrader to the Joint Official Liquidators and then turned over to the SEC. That is notwithstanding the Court's June 3, 2024 ruling:

> Without more, the JOLs letter is not sufficient to support a finding that documents Plaintiff seeks to introduce are "what the proponent claims" they are. Fed. R. Evid. 901(a). The SEC does not point the Court to the methods of authentication or identification listed under Rule 901(b) or other methods to authenticate the JOLs or the SCB documents, nor does it attach a certification under Fed. R. Evid. 803(6)(E) to justify its position that the documents should be deemed authenticated. Accordingly, Plaintiff's request to introduce documents provided by JOLs and the SCB to Plaintiff without further authentication is denied.

*See* Ord. on Mot. Clarification 3 [ECF No. 272]; *see also id.* at 4 ("The determination as to which documents obtained by Dorsett and Frantz can be introduced at trial and how they should be authenticated will be made at trial and depend on the document at issue.").

Judge Ryskamp's decision in *Ulysse v. Waste Management Inc.*, No. 11-CV-80723, 2014 WL 11429061 (S.D. Fla. Jan. 10, 2014), is instructive. Among other things, the court "found that Plaintiff's [exhibit] list did not comply with the Court's Scheduling Order and that Plaintiff acted in bad faith 'in submitting useless exhibit and witness lists and delaying and disrupting the litigation as a result.'" *Id.* at *3 (citation omitted). Judge Ryskamp struck the plaintiff's exhibit list and dismissed the action with prejudice. *Id.* at *3–4.

Here, the SEC's conduct regarding its exhibits has generated extraordinary amounts of unnecessary work in the lead-up to—and on the eve of—trial. And Gentile rejects the notion that any lesser sanction and a continuance of the trial date for the SEC to streamline its case would be appropriate. *See id.* ("Plaintiff's failures cost Waste Management and the Court time, expense, and resources, resulting in perpetuated motion practice and the continuation of trial. At some point, the Court must draw the line. That time is now."). The prejudice to Gentile of further delay is evident. *See Goforth*, 766 F.2d at 1535 ("As any further delay would have greatly prejudiced defendants, a lesser sanction than dismissal would not have served the interests of justice.").

The SEC's conduct affects "not only the instant case but also the Court's ability to manage the rest of its heavy trial docket." *See Versage v. Marriott Int'l, Inc.*, No. 6:05-CV-974ORL19JGG, 2006 WL 3614921, at \*3, \*7 (M.D. Fla. Dec. 11, 2006) ("The Court finds that no sanction less than dismissal will suffice in this case."); *see also Equity Lifestyle Props., Inc. v. Fla. Mowing And Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) ("The power to invoke this sanction [of dismissal] is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Court." (citation omitted)).

If the Court is not inclined to grant dismissal, in the alternative, Gentile respectfully moves the Court to strike, prior to trial so as to streamline the parties' cases, Exhibits 1–3, 6–7, 10–11, 16–17, 21, 25–26, 35–38, 43–47, 50, 52, 55–56, 58, 61–62, 64, 67–68, 72, 80, 96–100, 102–111, 113, 116–17, 120–24, 132–35, 141–42, 144–47, 150, 152–154, 156–160, 276, 278–281, 285).

**C.     Alternatively, the Court should dismiss the action under Rule 16(f), which does not require a finding of "bad faith," but authorizes dismissal where a party's conduct unreasonably delays or otherwise interferes with the expeditious management of trial preparation.**

Rule 16(f) of the Federal Rules of Civil Procedure similarly contemplates dismissal of an action when a party "fails to obey a scheduling or other pretrial order." *See* Fed. R. Civ. P. 16(f) (citing Fed. R. Civ. P. 37(b)(2)(A)(ii)–(vii)).[5] In a thoughtful and thorough opinion, Judge Goodman concluded that a district court can "*probably* impose sanctions under Rule 16(f) without a finding of bad faith." *In re Sanctions Hearing: Remer*, No. 11-23592-CIV, 2012 WL 12888409, at \*10 (S.D. Fla. Dec. 20, 2012), *report and recommendation adopted sub nom.*

---

[5] Rule 37(b)(2)(A)(v) authorizes the Court to "dismiss[] the action or proceeding in whole or in part[.]"

*Dammar-Fletcher v. Baptist Health S. Fla., Inc.*, No. 12-2298-CIV, 2013 WL 12131602 (S.D. Fla. Jan. 11, 2013) (Graham, J.).

Judge Goodman cited Wright & Miller and collected out-of-circuit cases for the proposition that "[i]n deciding to order Rule 16(f) sanctions, some authorities hold that the court need not find that the party acted in bad faith." *Id.* at *8 (citations omitted). And he also observed: "Other district judges in this circuit have . . . imposed Rule 16(f) sanctions against attorneys without an explicit bad faith finding." *Id.* The Eleventh Circuit's decision in *Goforth* "provides some additional support for the conclusion that bad faith may not be necessary for a Rule 16(f) sanction," and "[o]her district judges in this circuit have also imposed Rule 16(f) sanctions against attorneys without an explicit bad faith finding." *Id.* at *9.

Here, for the reasons above, Gentile maintains there is a clear record of delay and willful contempt of the Court's Omnibus Order by the SEC, and accordingly the Court may dismiss the action under Rule 41(b) or its inherent authority. But assuming *arguendo* the Court does not agree the SEC's conduct has reached that level, at the least the conduct has needlessly "interfer[ed] with the expeditious management of trial preparation," justifying dismissal under Rule 16(f). *See Goforth*, 766 F.2d at 1535 (citation omitted).

**II.   Gentile seeks attorney's fees for time spent reviewing the SEC's 286 exhibits to identify instances of material that is inadmissible under the parties' agreement, the Court's Omnibus Order, and the Federal Rules of Evidence and for time spent preparing this Motion.**

To the extent the Court were to dismiss the action, it may also award attorney's fees and costs. *See* 28 U.S.C. § 1927 ("Counsel's liability for excessive costs"); Fed. R. Civ. P. 16(f)(2) ("Instead of or in addition to any other sanction, the court must order the party. . . to pay the reasonable expenses--including attorney's fees--incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award

of expenses unjust."). At the Court's invitation, counsel for Gentile are prepared to submit records detailing their time spent in connection with this Motion.

Finally, it is worth noting that, less than two weeks ago, Judge Shelby of the District of Utah awarded approximately $1.8 million in attorney's fees against the SEC after previously finding that SEC staff attorneys there had "engaged in bad faith conduct in obtaining and defending [a] TRO." *SEC v. Digital Licensing Inc.*, No. 2:23-CV-00482-RJS-DBP, 2024 WL 2728019, at *1 (D. Utah May 28, 2024). Judge Shelby "imposed a sanction against the Commission of all attorney fees and costs arising from the improvidently entered *ex parte* relief." *Id.* Gentile does not suggest that the conduct here is to the same as the conduct on display in the Utah litigation, yet it shows the same level of disregard for the judicial process.

## CONCLUSION

As Gentile has noted in prior filings, last year Justice Gorsuch observed: "Aware . . . that few can outlast or outspend the federal government, agencies sometimes use this as leverage to extract settlement terms they could not lawfully obtain any other way." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 216 (2023) (Gorsuch, J., concurring). In that case, the Justice lamented an example of what some commentators and scholars have dubbed "regulatory extortion" when describing an individual's saga with the SEC that had "already dragged on for seven years." *Id.* & n.14.

The "saga" between the SEC and Gentile is even older. It has caused Gentile to incur significant legal fees and has exacted an immense toll on his personal life, imposed *de facto* injunctive relief even after such relief was repeatedly rejected by judges in New Jersey, to say nothing of the resources expended by the SEC, and the resources required of the courts. Gentile respectfully requests the Court dismiss this case.

Dated: June 10, 2024

Respectfully submitted,

FORD O'BRIEN LANDY LLP

By:  /s/Gabriela Ruiz
    Gabriela M. Ruiz
    Fla. Bar. 46844
    One Biscayne Tower
    2 South Biscayne Boulevard, Suite 3200
    Miami, Florida 33131
    Tel.: (786) 310-1135 (main)
    gruiz@fordobrien.com

    Matthew Aaron Ford (admitted *pro hac vice*)
    Emily Klair Bloom (admitted *pro hac vice*)
    3700 Ranch Road 620 South, Suite B
    Austin, Texas 78738
    Tel.: (512) 503-6388 (main)
    mford@fordobrien.com
    ebloom@fordobrien.com

    Adam C. Ford (admitted *pro hac vice*)
    Stephen R. Halpin III (admitted *pro hac vice*)
    275 Madison Avenue, 24th Floor
    New York, New York 10016
    Tel.: (212) 858-0040 (main)
    aford@fordobrien.com
    shalpin@fordobrien.com

**<u>CERTIFICATE OF CONFERRAL</u>**

Pursuant to Local Rule 7.1(a)(3), the parties have met and conferred on the issues raised above numerous times, including but not limited to email exchanges, as well as videoconference meet-and-confers on May 22, 2024, and June 4, 2024. On June 9, 2024, the undersigned emailed counsel for the SEC a list of exhibits and requested the SEC remove them from its exhibit list, advising that failure to do so would result in Gentile filing the instant motion for involuntary dismissal. This morning, counsel for the SEC responded that they would not remove any exhibits from their list.

*/s/Matthew A. Ford*
Matthew Aaron Ford

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I caused the foregoing Defendant Guy Gentile's Defendant Guy

Gentile's Motion for Involuntary Dismissal under Rule 41, the Court's Inherent Authority, and

Rule 16, dated June 10, 2024, to be served via CM/ECF on the following counsel for Plaintiff:

> Alice Sum
> U.S. Securities and Exchange Commission
> 801 Brickell Avenue, Suite 1950
> Miami, FL 33131
> (305) 982-6300
> sumal@sec.gov

> Alise Meredith Johnson
> U.S. Securities and Exchange Commission
> 801 Brickell Avenue, Suite 1800
> Miami, FL 33131
> (305) 982-6385
> johnsonali@sec.gov

*/s/Gabriela Ruiz*
Gabriela M. Ruiz
