**THE SECURITIES COMMISSION OF THE BAHAMAS**
**ROUTINE EXAMINATION REPORT**

| | Financial and Capital Operations | |
|---|---|---|
| 14 | Regulation 50 (1)(a)(b) of the Securities Industry Regulations, 2012 – Reporting to the Commission – interim reporting | 16 |
| 15 | Regulation 91 (1)(a) of the Securities Industry Regulations, 2012 – Reporting to the Commission – quarterly reporting | 16-17 |
| 16 | Regulation 87 (3)(c)(iii) of the Securities Industry Regulations, 2012 – Reconciliations | 17 |

*The Findings are discussed in more detail on pages 6 thru 17. We require that you provide the Commission with your responses to all of the findings noted within 30 days from the date of this report in the space provided (Registrant's Response), below each finding. Spaces below Registrant's Response are to be completed by the Commission. Those responses should outline any corrective measures already taken or planned, along with the target dates for implementation.*

We take this opportunity to thank you and your staff for the cooperation and assistance provided during the examination.

**Yours truly,**

**Christina Rolle**
**Executive Director**

LP/JR/CD/NB/AB

Page 5 of 17

*Swiss America Securities Limited (SASL)*
*May 23, 2016*

NONE - the materials are public information

SEC-SCB-E-0000423

**THE SECURITIES COMMISSION OF THE BAHAMAS**
**ROUTINE EXAMINATION REPORT**

**FINDINGS**

*SASL – Registered Firm – SIA-F108*

**Business Risk Profile**

| Finding 1 | Legislation | **Regulation 43 (3) of the Securities Industry Regulations, 2012 – Insurance.** |
| | | A registered firm shall deliver to the Commission, with the application for renewal of its registration, current details of the insurance policies held by the firm |
| | **Breach** | SASL did not deliver to the Commission the current details of the Insurance Policy held by SASL with the application for renewal of its registration on or before the 31 of January of each year as per the legislative requirement. |
| | **Required Action** | SASL must deliver to the Commission the current details of the Insurance Policy held by SASL with the application for renewal of its registration on or before the 31 of January of each year as per the legislative requirement |
| | **Registrant's Response** | |
| | **Action Plan** | |
| | **Due Date** | |
| | **SCB's Response** | |
| | **Follow-Up Date** | |
| | **Assigned Department** | |

| | | **Resolved** | **Yes** | **No** |
| | | **Date** | | |
| | | **Comments:** | | |

| Finding 2 | Legislation | **Regulation 55 (a) of the Securities Industry Regulations, 2012 - Transactions affecting financial resources.** |
| | | A registered firm shall obtain the prior written consent of the Commission before - |
| | | (a)  seeking to reduce or change the nature of its issued capital or the rights and obligations of its security holders; |

NONE - the materials are public information          SEC-SCB-E-0000424

THE SECURITIES COMMISSION OF THE BAHAMAS
ROUTINE EXAMINATION REPORT

| Breach | SASL did not obtain prior written consent of the Commission before amending its Articles of Association on 18 December 2015. |
|---|---|
| Required Action | SASL must obtain prior written consent of the Commission before changing the rights of its security holders. |
| Registrant's Response | |
| Action Plan | |
| Due Date | |
| SCB's Response | |
| Follow-Up Date | |
| Assigned Department | |

| | Resolved | Yes | No |
|---|---|---|---|
| | Date | | |
| | Comments: | | |

**Anti-Money Laundering /Countering Terrorist Financing**

| Finding 3 | Legislation | **Rule 4 (2)(3) of the Securities Industry (Anti-Money Laundering and Countering the Financing of Terrorism) Rules, 2015 – Money Laundering Reporting Officer**

*(2) A regulated person shall, where the function of the Money Laundering Reporting Officer (MLRO) is outsourced, satisfy itself that the outsourced MLRO has sufficient authority to enable it to carry out the necessary functions and duties.*

*(3) A MLRO has responsibility for overseeing and managing the making of suspicious transaction reports regarding money laundering or terrorist financing* |
|---|---|---|
| | Breach | SASL MLRO, Philip Dorsett does not have sufficient access to all records to make a determination as to whether a transaction is suspicious. |
| | Required Action | SASL must ensure that the MLRO, Philip Dorsett has sufficient access to all records to make a determination as to whether a transaction is suspicious. |
| | Registrant's Response | |
| | Action Plan | |

NONE - the materials are public information

SEC-SCB-E-0000425

THE SECURITIES COMMISSION OF THE BAHAMAS
ROUTINE EXAMINATION REPORT

| | | Resolved | |
|---|---|---|---|
| Due Date | | | |
| SCB's Response | | | |
| Follow-Up Date | | | |
| Assigned Department | | | |
| | | Date | |
| | | Comments: | |
| | | Yes | No |

**Finding 4**

**Legislation**

Rule 5 (1)(2)(a)(c-e) of the Securities Industry (Anti-Money Laundering and Countering the Financing of Terrorism) Rules, 2015 - Requirements for risk rating framework

1. A regulated person shall assess the risk profile of each new customer relationship or product prior to establishing a business relationship with the customer or issuing the product.

2. A regulated person's risk rating framework shall

(a) Categorize customer relationships and products so that the level of risk associated with each customer relationship or product is identifiable;

(c) Establish the level of management able to approve the regulated person entering into customer relationships at the various levels of risk rating categories

(d) Establish Know Your Customer and due diligence information requirements appropriate for the risk profile of the customer relationship or product

(e) Require the periodic review of the customer relationship or product to -
i. Ensure that the categorizations are current and appropriate
ii. Enable the regulated person to determine whether any adjustment should be made to the risk rating

**Breach**

SASL did not assess the risk profile of each new customer (low, medium, high) prior to establishing a business relationship with the customer. SASL began risk rating its client after Mr. Cooper's commencement with the organization in late 2015.

The proper due diligence using an appropriate global system such as World Check was not utilized for all account opening. However, the use of OFAC was noted for a few of the accounts tested.

Swiss America Securities Limited (SASL)
May 23, 2016

LP/JR/CD/NB/AB

NONE - the materials are public information

SEC-SCB-E-0000426

**THE SECURITIES COMMISSION OF THE BAHAMAS**
**ROUTINE EXAMINATION REPORT**

| | | |
|---|---|---|
| **Required Action** | SASL must ensure file reviews are conducted as in accordance with the legislation. | |
| **Registrant's Response** | | |
| **Action Plan** | | |
| **Due Date** | | |
| **SCB's Response** | | |
| **Follow-Up Date** | | |
| **Assigned Department** | **Resolved** | **Yes** / **No** |
| | **Date** | |
| | **Comments:** | |

| Finding 5 | **Legislation** | **Regulation 68 of the Securities Industry Regulations, 2012 – Client Account Opening Form & Documentation** |
|---|---|---|
| | | (1) A registered firm must maintain account opening documentation for each client. |
| | | (2) No registered firm shall execute any transaction for a client until it has in its possession a 'client account form' executed by the client and approved by the designated officer of the firm. |
| | | (3) The client account form shall contain information concerning the client's identity, financial status, employment, education, investment objectives, ability to incur risk, status as an insider to any public issuers, and any other information that may be considered reasonable by the firm in making an investment recommendation to the client. |
| | **Breach** | SASL did not maintain account opening documents for all client files. |
| | | All new accounts should be approved by management, either by Philip Dorsett (Compliance Officer) or Mr. Edward Cooper (Acting Chief Compliance Officer) in order to properly execute transactions on behalf of clients. This was not evidenced on client files prior to the commencement of Mr. Edward Cooper in 2015. |
| | | SASL did not obtained proof of identity for all clients, which as prescribed by legislation. |
| | **Required Action** | SASL must ensure that all new accounts are approved by either Philip Dorsett (Compliance Officer) and or Edward Cooper (Acting Chief Compliance Officer) in order to properly execute transactions on behalf of their clients. |

Page 9 of 17

Swiss America Securities Limited (SASL)
May 23, 2016

LP/JR/CD/NB/AB

NONE - the materials are public information

THE SECURITIES COMMISSION OF THE BAHAMAS

ROUTINE EXAMINATION REPORT

| | | | |
|---|---|---|---|
| | Registrant's Response | SASI must ensure that proof of identity has been obtained for all clients.<br><br>The registrant must ensure that all account opening documents are maintained on client files. | |
| | Action Plan | | |
| | Due Date | | |
| | SCB's Response | | |
| | Follow-Up Date | | |
| | Assigned Department | Comments: | |
| | | Resolved | Yes | No |
| | | Date | |
| **Finding 6** | Legislation | **Regulation 3 (b) of the Financial Transactions Reporting Regulations – Verification of Identity**<br><br>*Where a financial institution is required to verify the identity of any person, the following information is required:*<br><br>*(b) Permanent address* | |
| | Breach | SASI did not provide proof of address for some clients | |
| | Required Action | SASI must ensure that all clients proof of address is obtained upon account opening. | |
| | Registrant's Response | | |
| | Action Plan | | |
| | Due Date | | |
| | SCB's Response | | |
| | Follow-Up Date | | |
| | Assigned Department | Comments: | |
| | | Resolved | Yes | No |
| | | Date | |

*Swiss America Securities Limited (SASL)*
*May 23, 2016*

NONE - the materials are public information

SEC-SCB-E-0000428

**THE SECURITIES COMMISSION OF THE BAHAMAS**
**ROUTINE EXAMINATION REPORT**

| Finding 7 | Legislation | **Regulation 75 of the Securities Industry Regulations, 2012 – Complaints** |
|---|---|---|
| | | *A registered firm shall establish effective complaints handling systems and procedures that ensure that* |
| | | *(a) adequate records of complaints, including a central register, are established and maintained;* |
| | | *(b) all complaints are responded to in writing within 14 days of receipt of the complaint; and* |
| | | *(c) each complaint is effectively and fairly resolved.* |
| | Breach | SASL does not maintain a centralized customer complaint log and the proper support to show evidence that a response is submitted to all client complaints within fourteen (14) days. The Customer complaint log provided is that which has been recently started and maintained by Alexis Delancey, Supervisor Customer Support Centre, however, customer complaints or queries can be received and resolved by any other department within the organization. |
| | Required Action | SASL must ensure that they maintain a centralized customer complaint log and the proper support to show evidence that a response is submitted to all client complaints within fourteen (14) days. The deficiency in maintaining a Central Register/Log may prevent the Registrant from compiling and resolving all complaints and unusual circumstances in a timely manner. |
| | Registrant's Response | |
| | Action Plan | |
| | Due Date | |
| | SCB's Response | |
| | Follow-Up Date | |
| | Assigned Department | Resolved / Yes / No / Date / Comments: |
| Finding 8 | Legislation | **Regulation 9 (2) of the Financial Transactions Reporting Regulations – Continued Verification of Accounts** |

LP/JR/CD/NB/AB

NONE - the materials are public information

# THE SECURITIES COMMISSION OF THE BAHAMAS
## ROUTINE EXAMINATION REPORT

LP/JR/CD/NB/AB

| | | | | |
|---|---|---|---|---|
| **Breach** | *Financial institutions shall monitor facility holders for consistency with the facility holders stated account purposes and businesses and the identified potential account activity during the first year of operation of the facility.* | | | |
| | Although an AML monitoring system was established in late 2015 (after Mr. Edward Cooper's commencement with the organization), there was no evidence of this being performed prior and as such the registrant failed to comply with legislation. | | | |
| **Required Action** | SASL must ensure adherence with the legislation as it requires all accounts to be monitored to prevent money laundering and to ensure consistency with the facility holders stated account purposes. | | | |
| **Registrant's Response** | | | | |
| **Action Plan** | | | | |
| **Due Date** | | | | |
| **SCB's Response** | | | | |
| **Follow-Up Date** | | | | |
| **Assigned Department** | | **Resolved** | **Yes** | **No** |
| | | **Date** | | |
| | | **Comments:** | | |

### Business Conduct

**Finding 9** | **Legislation** | **Regulation 44 (1) of the Securities Industry Regulations, 2012 – Outsourcing**

*If a registered firm proposes to enter into an arrangement with a third party service provider whereby that service provider will undertake a material business function, activity or process on behalf of the registered firm, the registered firm shall give the Commission prompt notice of such outsourcing arrangement.*

| | |
|---|---|
| **Breach** | SASL did not provide the Commission prompt notice of its outsourcing arrangements with Cloud Carib Limited or DAS Inc. as per the legislative requirement. |
| **Required Action** | SASL must give the Commission prompt notice of its outsourcing arrangements if SASL enters into an arrangement with a third party service provider whereby that service provider will undertake a material business function, activity or process on behalf of SASL. |

NONE - the materials are public information        SEC-SCB-E-0000430

**THE SECURITIES COMMISSION OF THE BAHAMAS**
**ROUTINE EXAMINATION REPORT**

| | | | |
|---|---|---|---|
| | Registrant's Response | | |
| | Action Plan | | |
| | Due Date | | |
| | SCB's Response | | |
| | Follow-Up Date | | |
| | Assigned Department | Resolved | Yes | No |
| | | Date | |
| | | Comments: | |
| Finding 10 | Legislation | **Regulation 53 (2)(h) of the Securities Industry Regulations, 2012 – Notice of change in information – after registration** |
| | | (2) In addition to the notice requirements under subsection (1), a registered firm shall deliver to the Commission immediate written notice of the occurrence of any of the following in relation to the registered firm or its securities business, as the case may be – |
| | | (h) where the registered firm becomes aware that a director, officer or employee has been engaged in activities involving fraud or other dishonesty |
| | Breach | SASL did not inform the Commission that the Securities and Exchange Commission charged Guy Gentile with perpetrating penny stock manipulation schemes. |
| | Required Action | SASL must deliver to the Commission immediate written notice when the registered firm becomes aware that a director, officer or employee has been engaged in activities involving fraud or other dishonesty. |
| | Registrant's Response | | |
| | Action Plan | | |
| | Due Date | | |
| | SCB's Response | | |
| | Follow-Up Date | | |
| | Assigned Department | Resolved | Yes | No |
| | | Date | |
| | | Comments: | |

*Swiss America Securities Limited (SASL)*
*May 23, 2016*

LP/JR/CD/NB/AB

NONE - the materials are public information

SEC-SCB-E-0000431

# THE SECURITIES COMMISSION OF THE BAHAMAS
## ROUTINE EXAMINATION REPORT

| Finding 11 | Legislation | Regulation 62 (1)(b) of the Securities Industry Regulations, 2012 - Notice of change in information - after registration |
|---|---|---|
| | | (1) A registered representative of a registered firm shall promptly deliver a notice to the Commission and the registered firm if that representative: |
| | | (b) is named as a defendant or respondent in any criminal or regulatory proceeding or any civil proceeding, either domestic or foreign, exceeding twenty-five thousand dollars |
| | Breach | A registered representative of SASL did not inform the Commission that the Securities and Exchange Commission charged him with perpetrating penny stock manipulation schemes in the amount of $17,000,000. |
| | Required Action | A registered representative of SASL must promptly deliver a notice to the Commission if that representative is named as a defendant or respondent in any criminal or regulatory proceeding or any civil proceeding, either domestic or foreign, exceeding twenty-five thousand dollars. |
| | Registrant's Response | |
| | Action Plan | |
| | Due Date | |
| | SCB's Response | |
| | Follow-Up Date | |
| | Assigned Department | |

| | | | Resolved | Yes | No |
|---|---|---|---|---|---|
| | | | Date | | |
| | | | Comments: | | |

**Registration Matters**

| Finding 12 | Legislation | Regulation 48 (1)(2) of the Securities Industry Regulations, 2012 - Termination of Representative |
|---|---|---|
| | | (1) A registered firm shall file notice with the Commission immediately upon the termination, resignation or retirement of any registered individual who carried out securities business on behalf of the registered firm. |
| | | (2) The notice shall contain the information set out in Form 12 of the Second Schedule and shall be accompanied by the documents specified. |
| | Breach | SASL did not notify the Commission of Mr. Earvin Rahming's resignation as SASL trading representative. |

Swiss America Securities Limited (SASL)
May 23, 2016

LP/JR/CD/NB/AB

NONE - the materials are public information     SEC-SCB-E-0000432

**THE SECURITIES COMMISSION OF THE BAHAMAS**
**ROUTINE EXAMINATION REPORT**

| | Required Action | SASL must ensure that the Commission is notified of the termination and resignation of all registered persons, with the information set out in Form 12 of the Second Schedule. |
|---|---|---|
| | Registrant's Response | |
| | Action Plan | |
| | Due Date | |
| | SCB's Response | |
| | Follow-Up Date | |
| | Assigned Department | |

| Resolved | Yes | No |
|---|---|---|
| Date | | |
| Comments: | | |

| Trading | | |
|---|---|---|
| Finding 13 | Legislation | **Regulation 74 (2)(b) of the Securities Industry Regulations, 2012 – Supervision, Compliance and Risk Management Systems** |
| | | *A registered firm must establish, maintain and apply a system of controls and supervision sufficient to –* |
| | | *(b) manage the risks associated with its business in conformity with prudent business practices.* |
| | Breach | SASL did not ensure that the risk monitoring report objectives were completed and signed off indicating that the work has been performed. |
| | Required Action | SASL must ensure that the risk monitoring reports are completed and signed to ensure a system of controls and supervision sufficient to manage the risks associated with its business. |
| | Registrant's Response | |
| | Action Plan | |
| | Due Date | |
| | SCB's Response | |
| | Follow-Up Date | |
| | Assigned Department | |

| Resolved | Yes | No |
|---|---|---|
| Date | | |
| Comments: | | |

LP/JR/CD/NB/AB

*Swiss America Securities Limited (SASL)*
*May 23, 2016*

NONE - the materials are public information

**THE SECURITIES COMMISSION OF THE BAHAMAS**
**ROUTINE EXAMINATION REPORT**

| | Financial and Capital Operations | | | |
|---|---|---|---|---|
| **Finding 14** | **Legislation** | **Regulation 50 (1)(a)(b) of the Securities Industry Regulations, 2012 – Reporting to the Commission – Interim reporting**<br><br>(1) A registered firm must deliver to the Commission no later than the 30th day after the end of the first, second, third and fourth quarter of its financial year-<br>(a) its financial statements for that quarter; and<br>(b) the information set out in Form 13 of the Second Schedule for that quarter. | | |
| | **Breach** | SASL did not file its interim financial statements for Quarters (q) 1, 2, 3 and 4 of 2015 and Q1 of 2016 within the legislative deadline of the 30th day after the end of the first, second, third and fourth quarter of its financial year. | | |
| | **Required Action** | SASL must ensure that its interim financial statements and Form 13 are filed to the Commission within the legislative deadline. | | |
| | **Registrant's Response** | | | |
| | **Action Plan** | | | |
| | **Due Date** | | | |
| | **SCB's Response** | | | |
| | **Follow-Up Date** | | | |
| | **Assigned Department** | | **Resolved** | **Yes** | **No** |
| | | | **Date** | | |
| | | | **Comments:** | | |
| **Finding 15** | **Legislation** | **Regulation 91 (1)(a) of the Securities Industry Regulations, 2012 – Reporting to the Commission – quarterly reporting**<br><br>(1) The registered firm shall prepare and deliver a report to the Commission on a quarterly basis<br>(a) confirming that it is in compliance with the requirements of this Division | | |
| | **Breach** | SASL submitted its quarterly Form 13 but did not complete Schedule 2 of the form confirming the firm's compliance with the reconciliation and segregation requirements of Division 2 of Part VII for quarters 1 of 2015. | | |
| | **Required Action** | SASL must ensure that it submits a completed Form 12 Schedule 2 confirming the firm's compliance with the reconciliation and segregation requirements of Division 2 of Part VII. | | |
| | **Registrant's Response** | | | |
| | **Action Plan** | | | |
| | **Due Date** | | | |

LP/JR/CD/NB/AB

NONE - the materials are public information                    SEC-SCB-E-0000434

THE SECURITIES COMMISSION OF THE BAHAMAS
ROUTINE EXAMINATION REPORT

|  | | Resolved | Yes | No |
|---|---|---|---|---|
| SCB's Response | | | | |
| Follow-Up Date | | | | |
| Assigned Department | | Date | | |
| | | Comments: | | |

**Finding 16**

**Legislation**

**Regulation 87 (1)(a)(i)(c)(iii) of the Securities Industry Regulations, 2012 – Reconciliations**

(1) A registered firm shall perform re-conciliations as often as necessary to ensure the accuracy of its records, and shall perform reconciliations –

    (a) At least once every month –

        a. On all balances with banks;

    (c ) at least twice per month-

        (iii) on its records of client assets for which it is accountable with statements obtained from the custodian.

**Breach**

SASL is not performing reconciliations at least twice per month on its records of client assets for which it is accountable at the custodian.

**Required Action**

SASL must ensure reconciliations of its record of client assets for which it is accountable with statements obtained from the custodian are performed at least twice per month as prescribed by legislation.

| | | Resolved | Yes | No |
|---|---|---|---|---|
| Registrant's Response | | | | |
| Action Plan | | | | |
| Due Date | | | | |
| SCB's Response | | | | |
| Follow-Up Date | | | | |
| Assigned Department | | Date | | |
| | | Comments: | | |

NONE - the materials are public information      SEC-SCB-E-0000435

CR 3



# Securities Commission of The Bahamas

Review of Swiss America
Securities Limited ("SASL")

21 February 2018

NONE - the materials are public information

# Contents

▼ Procedures performed

▼ Representations made at meeting with SASL

▼ Overview of analyzed SASL trade data

▼ Summary of findings from forensic data analytics

▼ Proposed areas of further investigation

▼ Limitations of review



NONE - the materials are public information

SEC-SCB-E-0000437



# Procedures performed

1. Held fact gathering meeting on 8 August 2017 at the SASL office in Nassau to discuss the background and operations of the company.

2. Requested and obtained additional data from SASL including:

   a. Download of trade data directly from DAS for the period 1 January 2014 through 30 June 2017

   b. Client listing and equity position as of 1 January 2016 (approx. $8.2M)

   c. Selected policies and procedures

3. Reviewed and analyzed the following SASL polices and procedures:

   a. Account opening process and procedures

   b. Compliance manual and compliance function

   c. Securities risk manual

   d. Funding and banking process and procedures

4. Performed forensic data analytics on the trade data provided by SASL to identify trends or anomalies within the data.

5. Performed open source research.

Page 3

SEC-SCB-E-0000438

# Procedures performed

6.   Presented our initial findings to the Securities Commission of the Bahamas ("SCB") on 23 October 2017.

7.   Held in-person meetings in the SASL office on 27 October 2017 to discuss initial findings.

8.   Following this meeting, additional analytical procedures were performed based on the responses received from SASL.

9.   Final meeting held in the SASL office on 19 January 2018 to follow-up on outstanding questions.

Page 4



NONE - the materials are public information

SEC-SCB-E-0000439

# Representations made by SASL management on 8 August 2017

## Trading

1. SASL's trading platform, SureTrader, offers trading of equities and options, however options make up a marginal portion of trading activity.

2. The trading activity consists of approximately NASDAQ/NYSE (98%), penny stocks (1%) and options (1%).

3. SureTrader offers leverage models for intraday trading (6:1) and overnight trades (2:1).

4. SureTrader executes approximately 10,000 trades per day and between 200,000-250,000 per month.

5. The average amount of a wire is approximately $2,000. Wires over $10,000 are rare.

6. It is common for many clients to trade the same securities on the same day.

7. SASL serves as the custodian for all trades and is a self-clearing firm.

## Clients

1. SASL currently has approximately 17,000 client accounts with assets of approximately $12 million.

2. SASL opens approximately 300 new client accounts per month.

3. The SASL client base consists of individuals and corporations in the following locations:

   a. 40 – 50% - United States (attracted by "no pattern day trader" rules and account minimums);

   b. 10% - Canada (attracted by 6:1 leverage model);

   c. 20% - United Kingdom and Europe (attracted by the opportunity to trade NASDAQ/NYSE stocks); and

   d. Remaining percentage - various global locations.



Page 5

SEC-SCB-E-0000440

# Overview of analyzed SASL trade data

The period under scope for our review was 1 January 2014 through 30 June 2017. However, the trade data provided by SASL also included executed trades from 1 July 2017 through 9 August 2017 (1 January 2014 through 9 August 2017 collectively the "Review Period").

In our initial analysis of the trade data, we noted six accounts which began with '328' as opposed to the typical customer identifier of 'PFS' or 'MBS', and further follow-up with SASL was required to understand the nature of these accounts and the associated trading volumes.

We understand from discussions with SASL that the '328' accounts are a combination of SASL's own proprietary trading ("Prop Trading") accounts and a clearing account (32812). Further information in relation to the clearing account is included on page 20 of this report.

The table below summarizes the trade data provided by SASL (during the Review Period), both including and excluding the '328' accounts.

| | All accounts | Customer accounts (excluding '328' accounts) |
|---|---|---|
| Number of executed trades | 17,578,950 | 5,808,854 |
| Number of unique tickers traded (including options) | 29,068 | 28,991 |
| Number of accounts | 14,975 | 14,969 |
| Volume of shares traded | 8,755,858,054 | 3,531,818,192 |
| Value of shares traded | $76,868,025,062 | $34,527,016,404 |

*Note: [1] Proprietary trading occurs when a firm or bank invests for its own direct gain. [2] The clearing account (32812) represents a mirror of all trades executed in both customer and proprietary trading accounts. [3] Source Thomson Reuters, Capital IQ and other public stock market data.*



NONE - the materials are public information

SEC-SCB-E-0000441

# Overview of analyzed SASL trade data

The following graphs show the breakdown of trade volume (number of shares), executed trades (number of trades), and value of trades (dollars value for trades) by year executed in the customer accounts (i.e. excluding the '328' accounts).



Volume of shares traded by year

Number of executed trades by year

Value of shares ($) traded by year

Page 7

EY

NONE - the materials are public information

SEC-SCB-E-0000442

# Summary of findings
## Test 1 - Identify the most frequently traded tickers

One of the initial representations made by SASL was that customers primarily traded on NASDAQ/NYSE and trading of penny stocks is minimal. However, the trade data showed that at least of nine the top fifteen most frequently traded tickers by customers (when based on volume of shares traded) were penny stocks as detailed in the table below.

Most frequently traded tickers based on volume of shares

| Symbol | Volume of shares | Number of trades | Value of trades ($) | Stock price ($) | Market cap ($) | Exchange |
|--------|------------------|------------------|---------------------|-----------------|----------------|----------|
| SUNE | 40,391,014 | 46,801 | 258,883,134 | n/a | n/a | NYSE |
| JNUG | 37,952,677 | 50,295 | 304,661,870 | 18.3500 | n/a | NYSE Arca |
| PLUG | 36,607,798 | 37,082 | 202,643,074 | 2.0800 | 484,360,000 | NASDAQ |
| MNKD | 29,412,789 | 29,316 | 165,863,764 | 2.8800 | 436,520,000 | NASDAQ |
| NUGT | 26,723,685 | 56,508 | 611,444,290 | 35.3600 | n/a | NYSE Arca |
| UVXY | 25,887,544 | 58,916 | 684,329,371 | 9.9200 | n/a | NYSE Arca |
| GENE | 23,708,880 | 32,062 | 102,461,830 | 1.7800 | 51,420,000 | NASDAQ |
| GALE | 22,975,788 | 16,848 | 94,125,079 | 0.2910 | 399,225,000,000 | NASDAQ |
| TVIX | 22,259,002 | 32,741 | 177,523,255 | 5.4300 | n/a | NASDAQ |
| AMD | 19,179,256 | 28,145 | 189,881,471 | 12.8900 | 11,973,150,000 | NASDAQ |
| GBSN | 17,375,932 | 17,339 | 44,058,830 | 0.1300 | 710,000 | OTC Market |
| HEMP | 17,210,248 | 2,436 | 2,953,216 | 0.0277 | 7,587,000 | OTC Market |
| VLTC | 16,901,360 | 31,665 | 128,200,432 | 1.3239 | 12,140,000 | OTC Market |
| FCEL | 16,793,914 | 5,942 | 55,104,664 | 1.7600 | 163,870,000 | NASDAQ |
| ISR | 16,707,152 | 15,590 | 47,740,468 | 0.4856 | 25,340,000 | NYSE American |

*Notes: [1] Stock Price and Market cap is quoted as at 26 January 2018 where available. [2] The above table excludes trades in all "328" accounts. [3] For the purposes of this analysis, penny stocks are those with a stock price of less than $5.00 per share. [4] Certain stocks have been delisted or no longer trade under the ticker listed in the trade data provided, thus the stock price for these tickers have been listed as not available, N/A.*

Page 8



NONE - the materials are public information

SEC-SCB-E-0000443

# Summary of findings
## Test 1 - Identify the most frequently traded tickers

During the meeting with SASL in October 2017, Mr. Guy Gentile, CEO of SASL, indicated that the initial trading patterns which were referenced during the kickoff meeting in August were based on the number of trades executed rather than the number of shares traded.

In view of these comments, we completed further analysis on the trade data to identify the most frequently traded tickers by customers, when based on the number of trades executed and the value of trades. The results of which are shown in the tables below.

Most frequently traded tickers based on number of trades

| Symbol | Number of trades | Volume of shares | Value of trades ($) | Stock price ($) | Market cap ($) | Exchange |
|---|---|---|---|---|---|---|
| FRX | 60,244 | 11,102,266 | 1,038,007,709 | 0.0760 | 14,720,000 | NYSE |
| UVXY | 58,916 | 25,887,544 | 684,329,371 | 9.9200 | n/a | NYSE Arca |
| NUGT | 56,508 | 26,723,685 | 611,444,290 | 35.3600 | n/a | NYSE Arca |
| JNUG | 50,295 | 37,952,677 | 304,661,870 | 18.3500 | n/a | NYSE Arca |
| VRX | 46,857 | 16,540,811 | 46,633,760 | 19.3200 | 6,864,210,000 | NYSE |
| SUNE | 46,801 | 40,391,014 | 258,883,134 | n/a | n/a | NYSE |
| ACT | 44,874 | 3,529,504 | 737,627,538 | n/a | n/a | n/a |
| FB | 42,056 | 12,476,955 | 848,597,100 | 190.0000 | n/a | NASDAQ |
| PLUG | 37,082 | 36,607,798 | 202,643,074 | 2.0800 | 484,360,000 | NASDAQ |
| TVIX | 32,741 | 22,259,002 | 177,523,255 | 5.4300 | n/a | NASDAQ |
| GENE | 32,062 | 23,708,880 | 102,461,830 | 1.7800 | 51,420,000 | NASDAQ |
| VLTC | 31,665 | 16,901,360 | 128,200,432 | 1.3239 | 12,140,000 | OTC Market |
| TWTR | 30,349 | 10,020,361 | 330,595,652 | 24.2700 | 16,460,300,000 | NYSE |
| MNKD | 29,316 | 29,412,789 | 165,863,764 | 2.8800 | 436,520,000 | NASDAQ |
| AMD | 28,145 | 19,179,256 | 189,881,471 | 12.8900 | 11,973,150,000 | NASDAQ |

When based on number of trades executed, the number of penny stocks traded reduced from at least nine to five.



NONE - the materials are public information

SEC-SCB-E-0000444

# Summary of findings
## Test 1 - Identify the most frequently traded tickers

Most frequently traded tickers based on value of trades ($)

| Symbol | Value of trades ($) | Volume of shares | Number of trades | Stock Price ($) | Market Cap ($) | Exchange |
|---|---|---|---|---|---|---|
| FRX | 1,038,007,709 | 11,102,266 | 60,244 | 0.0760 | 14,720,000 | NYSE |
| FB | 848,597,100 | 12,476,955 | 42,056 | 190.000 | n/a | NASDAQ |
| ACT | 737,627,538 | 3,529,504 | 44,874 | n/a | n/a | n/a |
| UVXY | 684,329,371 | 25,887,544 | 58,916 | 9.9200 | n/a | NYSE Arca |
| NUGT | 611,444,290 | 26,723,685 | 56,508 | 35.3600 | n/a | NYSE Arca |
| AAPL | 498,003,511 | 3,158,744 | 18,990 | 171.5100 | 878,531,700,000 | NASDAQ |
| VRX | 486,633,760 | 16,540,811 | 46,857 | 19.3200 | 6,864,210,000 | NYSE |
| GOOG | 457,296,399 | 812,409 | 13,500 | 1,175.8400 | 819,345,600,000 | NASDAQ |
| GOOGL | 454,530,405 | 826,160 | 12,759 | 1,187.5600 | 819,345,600,000 | NASDAQ |
| TSLA | 349,204,283 | 1,579,362 | 13,054 | 342.8500 | 56,746,230,000 | NASDAQ |
| TWTR | 330,595,652 | 10,020,361 | 30,349 | 24.2700 | 16,460,300,000 | NASDAQ |
| JNUG | 304,651,870 | 37,952,677 | 50,295 | 18.3500 | n/a | NYSE Arca |
| NFLX | 292,646,606 | 1,954,440 | 13,737 | 274.6000 | 116,707,500,000 | NASDAQ |
| SUNE | 258,883,134 | 40,391,014 | 46,801 | n/a | n/a | NYSE |
| NVDA | 213,261,889 | 2,154,311 | 12,639 | 243.3300 | 143,228,100,000 | NASDAQ |

When based on value of shares traded, the number of penny stocks reduced from at least nine to one.

As noted, the previous three tables in relation to frequently traded tickers, exclude trades through the '3281' accounts. We have completed a high level analysis of the Prop Trading accounts 32810 and 32813, and have summarized the most frequently traded tickers in these accounts by volume of shares traded, number of trades executed, and value of trades executed. These are shown in the tables in Appendix A (pages 22-27) to this report.

Page 10



**NONE - the materials are public information**   **SEC-SCB-E-0000445**

# Summary of findings
## Test 1 - Discussions on SASL customers and frequently traded tickers

▲ SASL noted that customers typically open accounts with SASL after hearing about the company on trading community chatrooms.

▲ In some instances, certain customers may be referred to SASL, however, no compensations is paid in relation to this. The customer is typically given the recommendation as a result of attending a course/seminar that 'teaches' them to trade (e.g. seminar hosted by Timothy Sykes, a well known penny stock trader).

▲ SASL noted that they did previously have an agreement in place with Timothy Sykes who would refer customers to SASL, but this expired in 2014 and no new agreements were executed with him or any other party.

▲ We discussed with SASL the nature of day trading and enquired on the mechanisms that SASL have in place to connect their customers and facilitate information sharing, along with SASL's role in this.

▲ Mr. Gentile commented that it is common for SASL customers to trade the same securities on the same day.

▲ It was also noted that the Suretrader website issues a daily update on the most actively traded tickers, along with other trading information.

▲ SureTrader has also recently set up an Instagram account which also publishes the trading information.

▲ We have separately found a Twitter account for SASL which appears to publish daily updates on the most actively traded stocks at SureTraders (@SureTraders).



Page 11

# Summary of findings
## Test 1 – Observations related to SunEdison Inc. (SUNE)

1. 20 July 2015 - SunEdison purchases Vivint Solar Inc. for $2.2 billion

2. 7 October 2015 - SASL trading of SUNE spikes to a record high

3. 11 December 2015 - Shareholder Class Action Filed Against SunEdison, Inc. which alleges SunEdison and certain of its senior executive officers issued a series of false and misleading statements, and omitted to disclose material information to investors during the Class Period of 16 June 2015 and 6 October 2015. (https://www.ktmc.com/new-cases/sunedison-inc)

4. 21 April 2016 - SunEdison files for Chapter 11 bankruptcy protection

5. 17 May 2017 - SUNE is delisted from NYSE and now trades as SUNEQ on OTC markets

6. 25 July 2017- SunEdison wins final approval for its bankruptcy plan



Page 12

EY

# Summary of findings
## Test 1 – Observations related to Hemp Inc. (HEMP)

1. 3 February 2014 through 6 February 2014 – Significant increase in trading activity

2. 4 August 2014 - Pump and dump: SEC v. Galas, Civil Action No. 14-cv-5621 filed against Michail Galas, Alexander Hawatmeh, Christopher Mrwoca and Tovy Pustovit. The defendants are charged with manipulating the share price of six microcap stocks since 2012 using coordinated trading, aggressive promotions over the internet through social media and e-mails. The six securities include ISML, ADPC, ADSU, PHOT, HEMP and RVDO. (https://www.sec.gov/litigation/complaints/2014/comp-pr2014-159.pdf)

   a. PHOT, HEMP and RVDO were traded by SASL

   b. Tovy Pustovit is a SASL customer (account number PFS03985)



EY

Page 13

  SEC-SCB-E-0000448

# Summary of findings
## Test 1 – Observations related to Hemp Inc. (HEMP)

▼ From a review of the trade data we noted that:

- ▼ Account PFS03985 had not completed any trades in HEMP during the Review Period;
- ▼ SASL using their Prop Trading account had completed minimal trading in HEMP during the Review Period; and
- ▼ SASL customers have traded for approximately $3,000,000 worth of HEMP shares during the Review Period.

▼ We discussed the trading of HEMP with SASL and requested that they provide us with the following additional information:

- ▼ The equity position and movements on account PFS03985 since it was activated with SASL;
- ▼ Details of all trades in HEMP by account PFS03985 prior 1 January 2014 (prior to the Review Period); and
- ▼ Details of all trades in HEMP by SASL, using their Prop Trading account prior 1 January 2014 (prior to the Review Period).

▼ We were advised that account PFS03985 was never made active as there was a missing application document. We were further advised that when a customer applies to open an account with SASL they are assigned an account reference, but the account is only active once all documentation is received.

▼ SASL provided the equity position for account PFS03985 for the period 18 January 2000 to 18 January 2018, which confirmed it was nil for the entire period.

▼ Furthermore, Mr. Gentile advised that SASL did not start proprietary trading until late 2015, therefore there would be little or no trades in HEMP executed by SASL in their Prop Trading account prior 1 January 2014. In view of this information, we reviewed the trade data for the '328' accounts and did not identify any significant volumes of trading for HEMP during the Review Period.



NONE - the materials are public information

SEC-SCB-E-0000449

# Summary of findings
## Test 1 - Market surveyor

- SASL advised that a third party, 'Market Surveyor' ("MS"), monitors the trades that are processed through SureTrader. SASL explained that this company uses technology to detect instances of potential fraud and provides SASL with reports to identify transactions which have been flagged as potentially fraudulent. It also reports instances of significant customer gains/losses.

- Over the course of our discussions, SASL advised that their trades would be 'flagged' on MS' reviews under suspicion of 'wash trading' was occurring at SASL. Wash trading refers to buying shares through one broker and selling through another, in order to manipulate the market and encourage other investors to move into a buying position. They would also flag the large volumes of shares being moved on a daily basis.

- SASL explained that this was a result of MS viewing trades from SASL in a single account rather than an individual customer account basis. In addition, whilst MS now understand the structure of SASL's trading (namely that all customer trades are executed by SASL and not directly by the customer's account), including that customers regularly trade the same stocks, MS may still flag any activity that is deemed suspicious in accordance with their regulations.

- We requested copies of the MS reports that SASL receives, however, were advised that MS' relationship and all documentation is with Mint Global Markets Inc. (formerly Stock USA Execution Services) ("Mint Global") and that SASL does not have any supporting documentation from MS. Mint Global is the firm which SASL execute their equity trades through. We found this response to be vague and could not confirm or deny the statement made by SASL.

- We have also been unable to locate any information on this company independently. Further clarification will be needed on the legal entity name of MS.

- SASL advised in October 2017 that one customer's account had been shut down as a result of MS, due to a suspicion of layering. When asked to provide additional detail on the said customer account, SASL advised that the account was identified internally and that they could not recall the account details furthermore that the staff member who dealt with the matter was no longer at SASL. Mr. Gentile confirmed that SASL noticed that the customer was making consistent profits and larger wires so SASL internally reviewed the customers activity. It was during this review that they suspected layering based on Mr. Gentiles' personal knowledge.

- SASL advised that customer accounts would be reviewed internally if wires exceeding $10,000 were being made due to the nature of their customer's trading.



Page 15

# Summary of findings
## Test 2 - Identify the highest trading accounts

Highest trading accounts with standardized customer numbers based on volume of shares traded:

| ID | Account holder type | Account holder name | Account number | Volume of shares traded | Number of trades | Value of trades ($) | % of total shares traded |
|----|--------------------|--------------------|----------------|------------------------|------------------|---------------------|--------------------------|
| 1 | Individual | Simon Amos | PFS01970 | 112,583,468 | 60,708 | 530,681,642 | 3.2% |
| 2 | Individual | Alexander Dmitrievich Kostrov | PFS02578 | 51,354,291 | 14,410 | 28,467,809 | 1.5% |
| 3 | Corporate | Nevis Capital LLC | PFS01402 | 50,913,967 | 151,939 | 1,556,999,875 | 1.4% |
| 4 | Corporate | Arxcis Trading LLC | PFS02472 | 41,165,456 | 345,705 | 4,280,033,462 | 1.2% |
| 5 | Corporate | Nostrum Trading LLC | PFS02341 | 37,674,006 | 124,239 | 1,672,237,213 | 1.1% |

Highest trading accounts with non-standardized customer numbers:

| ID | Account holder type | Account holder name | Account number | Volume of shares traded | Number of trades | Value of trades ($) |
|----|--------------------|--------------------|----------------|------------------------|------------------|---------------------|
| 1 | Clearing | SASL | 32812 | 4,393,055,556 | 10,075,284 | 36,979,405,569 |
| 2 | Proprietary | SASL | 32813 | 804,600,933 | 1,672,748 | 5,153,249,569 |
| 3 | Proprietary | SASL | 32810 | 25,231,451 | 21,647 | 197,326,410 |

Note: 32812 has been identified as a clearing account which is a mirror of all trades executed in both customer accounts and proprietary accounts. 32813 and 32810 have been identified as proprietary accounts.

Page 16

 EY

NONE - the materials are public information    **SEC-SCB-E-0000451**

# Summary of findings
## Test 3 – Stratification of trading activity by broker

▲ Top three highest trading brokers by volume of shares traded in customer accounts:

| ID | Broker symbol | Broker name | Volume of shares traded | Number of trades | Value of trades ($) |
|---|---|---|---|---|---|
| 1 | SURE | SureTrader | 2,079,172,747 | 3,432,091 | 17,792,377,501 |
| 2 | ARCA | Arca Capital Investments | 234,286,264 | 522,560 | 4,551,524,622 |
| 3 | ALTX | AltX | 192,143,629 | 285,274 | 1,571,903,071 |

▲ Trades executed without a broker include:[1]

| Broker symbol | Broker name | Volume | Number of trades | Value of trades ($) |
|---|---|---|---|---|
| [Blank] | Unknown | 818,889 | 40,370 | 589,771 |

Note:
[1] We followed up with SASL to understand the nature of trading activity without a designated broker and were advised that if a broker was not assigned then it would likely be that it is an option. We have reviewed the trade data and this appears consistent with the nature of the trades, i.e. the underlying symbol for these trades is related to an option rather than a standard stock symbol.



NONE - the materials are public information

SEC-SCB-E-0000452

# Summary of findings
## Additional tests

| Test | High level observations |
|---|---|
| Test 4 - Identify trades outside of normal trading hours | • Two trades identified as being executed over the weekend:<br><br>• We confirmed with SASL that whilst customers have 24 hour access to the platform, trades are only executed between the hours of 8am and 6pm on working days.<br><br>• Account PFS12991 bought and sold 1,062 shares of RTGN on 16 May 2015 (Saturday)<br><br>   • SASL confirmed that this was a manual trade to reflect a change in the stock symbol on 16 June 2015 from RTGN to PULM. There was also a stock split of 2:5 on the same day.<br><br>   • We were provided with evidence from the website 'marketocracy' to substantiate this.<br><br>   • The trade data shows a manual entry for the above on 16 June 2015. The same was entered on 16 May 2015, however, the shares were bought and sold on the same day for nil value.<br><br>• Account PFS15783 bought 200 shares of 813991833 on 19 June 2016 (Sunday)<br><br>   • SASL confirmed that this was another manual trade as the rights expired. The stock symbol was EYES but subsequently changed following expiration of the rights.<br><br>   • We were provided with a print screen from 'speedtrader pro' to evidence the expiration.<br><br>   • The trade data shows a manual trade on 16 June 2016 for the expired rights and a further manual trade on 19 June 2016 for a rights distribution. We have evidence of a rights distribution however, this was on 19 May 2016. |

**EY**

NONE - the materials are public information

**SEC-SCB-E-0000453**

# Summary of findings
## Additional tests

| Test | High level observations |
|------|------------------------|
| Test 5 – Correlate quantity with commissions | • Generally, higher volume trades are charged $0.00 in commission fees.<br>• Two large quantity trades, however, were charged high value commission fees.<br>• Broker: BATS traded 940,000 shares of UWTI and was charged a commission fee of $1,500 (Account 32810).<br>• Broker: BI traded 481,800 shares of USO and was charged a commission fee of $2,500 (Account 32810). |
| Test 6 – Identify volume of manually entered trades | • Of the 5,808,854 total trades, 6,968 trades were manually entered.<br>• In our discussions in October 2017, SASL advised that manual trades would primarily relate to either options or corporate actions which are entered into the system.<br>• We subsequently reviewed the data and the descriptions in the trade data corroborates with this explanation. However, we noted that a number of entries with the comment 'adjustment'.<br>  • We requested additional information on these items however, were informed that the trade data we were provided is a replica of their system, so there would be no additional notes.<br>  • We enquired how SASL keep up to date on any corporate actions and were advised that staff review the market for updates, as well as subscribing to various websites which provide a list of corporate actions on a daily basis. |
| Test 7 – Identify tickers frequently traded after hours | • UVXY, NUGT and VRX are the most frequently traded tickers between 5:00 a.m-8:00 a.m.<br>• TWTR, TVIX and KBIO are the most frequently traded tickers between 5:00 a.m-8:00 a.m. |



NONE - the materials are public information

SEC-SCB-E-0000454

# Clearing account

As previously discussed, we had identified that account 32812 had a significant amount of trades and SASL advised that this is a clearing account, and essentially a mirror of all trades executed in the customer and SASL accounts.

In view of this, we reviewed the trades in this account against those made in all other accounts to confirm if they reconciled.

We found 111 instances in which trade positions were not cleared in the 32812 account and thus appears an open position remained.

During our January 2018 meeting with SASL, they advised that if the data has been reconciled on a daily basis then open positions might remain as customers and/or SASL do not always sell the shares purchased on that day and can hold the shares for as long as they wish.

We reviewed two of the instances from July 2015 with SASL which related to one stock, DANG:

▼ On 8 July 2015 purchased 212,170 shares and sold 203,317 shares;

▼ On 9 July 2015 purchased 196,105 shares and sold 191,565 shares; and

▼ Total volume difference equals 13,393 shares.

SASL were unable to provide us with a full history for trading of the stock, however, they provided daily holding positions which eventually demonstrated that the 13,393 shares were sold.

The trade data shows this was a manual entry detailed as 'flatten position'.

We reviewed a sample of other instances and identified the same practice for other positions.



NONE - the materials are public information

SEC-SCB-E-0000455

# Proprietary trading
## Recommended areas of investigation



As previously discussed in this report, SASL advised that their firm conducts proprietary trading.

We have completed a high level analysis of the Prop Trading accounts 32810 and 32813, and have summarized the most frequently traded tickers in these accounts by volume of shares traded, number of trades executed, and value of trades executed. These are shown in the tables in Appendix A to this report.

Whilst we understand that the SCB would like for EY to examine the source of funds entering SASL's accounts and review their customer listing for potential fictitious customers, we would also recommend a review of SASL's Prop Trading activity to confirm that it does not negatively impact their customers.

The list below is a high level summary of our recommended areas of investigation for Prop Trading analysis.

i. Compliance testing

   a. Review and analyze compliance program elements related to Prop Trading.

ii. Forensic data analytics

   a. Front running: *examine if SASL are stepping out in front of orders placed or about to be placed by their customers to gain a price advantage;*

   b. Promotion of stocks traded in Prop Trading accounts: *examine the promotion of tickers traded by SASL in their Prop Trading accounts. Identify instances where SASL is actively promoting the opposite position taken by SALS in their Prop Trading accounts. Determine impact on SASL's capital and customer accounts from trading; and*

   c. Extension of capital: *examine daily asset balances of SASL accounts and compare to reserve capital for trading. Understand funding of the Prop Trading.*

**NONE - the materials are public information**

# Appendix A: Analysis of SASL Prop Trading account

## Frequently traded tickers based on number of trades

The tables below show the most frequently traded tickers in each of SASL's Prop Trading accounts, 32810 and 32813.

Account 32810 - most frequently traded tickers based on number of trades

| Symbol | Number of trades | Volume of shares | Value of trades ($) | Stock price ($) | Market cap ($) | Exchange |
|---|---|---|---|---|---|---|
| MBRX | 1,297 | 2,055,394 | 6,125,486 | 1.9500 | 40,590,000 | NASDAQ |
| IDXG | 871 | 1,380,378 | 2,767,556 | 1.1200 | 29,270,000 | NASDAQ |
| AMD | 599 | 299,488 | 3,711,845 | 12.8900 | 11,973,150,000 | NASDAQ |
| GLYC | 562 | 175,354 | 1,967,391 | 22.3500 | 797,670,000 | NASDAQ |
| HMNY | 358 | 213,638 | 919,471 | 8.5900 | 209,690,000 | NASDAQ |
| PIRS | 338 | 276,924 | 988,438 | 7.9200 | 345,810,000 | NASDAQ |
| APHB | 332 | 217,054 | 928,853 | 1.1700 | 14,520,000 | NYSE American |
| ALZS | 328 | 371,314 | 951,487 | 2.8500 | 37,590,000 | NASDAQ |
| SORL | 327 | 199,596 | 1,373,281 | 6.4700 | 121,620,000 | NASDAQ |
| INPX | 320 | 216,122 | 872,137 | 0.3200 | 14,260,000 | NASDAQ |
| CCCR | 294 | 186,664 | 551,856 | 1.7000 | 33,306,000 | NASDAQ |
| MTBC | 272 | 229,826 | 623,155 | 3.8300 | 41,390,000 | NASDAQ |
| NADL | 269 | 197,016 | 606,879 | 0.0650 | 1,760,000 | OTC Market |
| TEVA | 243 | 169,488 | 3,350,220 | 21.3300 | 22,592,780,000 | NYSE |
| JNUG | 230 | 542,490 | 5,298,660 | 18.3500 | n/a | NYSE Arca |



# Appendix A: Analysis of SASL Prop Trading account
Frequently traded tickers based on number of trades

Account 32813 - most frequently traded tickers based on number of trades

| Symbol | Number of trades | Volume of shares | Value of trades ($) | Stock price ($) | Market cap ($) | Exchange |
|--------|------------------|------------------|---------------------|-----------------|----------------|----------|
| AMD  | 21,702 | 9,846,706  | 103,658,136 | 12.8900 | 11,973,150,000 | NASDAQ |
| JNUG | 19,242 | 7,592,070  | 66,501,776  | 18.3500 | n/a            | NYSE Arca |
| DRYS | 17,106 | 6,537,751  | 27,745,667  | 3.5400  | 374,350,000    | NASDAQ |
| VRX  | 14,185 | 4,592,694  | 78,093,735  | 19.3200 | 6,864,210,000  | NYSE |
| MGT  | 14,070 | 11,045,858 | 37,654,351  | 3.2500  | 178,720,000    | OTC Market |
| AUPH | 13,957 | 6,325,374  | 34,378,469  | 5.6700  | 473,860,000    | NASDAQ |
| MTBC | 10,819 | 6,406,516  | 15,046,536  | 3.8300  | 41,390,000     | NASDAQ |
| EXAS | 10,631 | 4,271,220  | 51,424,681  | 50.4900 | 6,017,650,000  | NASDAQ |
| IDXG | 10,606 | 5,508,400  | 14,080,070  | 1.1200  | 29,270,000     | NASDAQ |
| AEZS | 10,458 | 5,947,476  | 18,033,653  | 2.8500  | 37,590,000     | NASDAQ |
| SORL | 10,291 | 5,574,952  | 33,703,567  | 6.4700  | 121,620,000    | NASDAQ |
| UVXY | 10,273 | 2,971,370  | 48,233,428  | 9.9200  | n/a            | NYSE Arca |
| MBRX | 9,972  | 6,202,410  | 14,736,741  | 1.9500  | 40,590,000     | NASDAQ |
| NUGT | 9,714  | 2,321,866  | 68,682,857  | 35.3600 | n/a            | NYSE Arca |
| HTGM | 9,397  | 4,003,994  | 17,377,540  | 3.9900  | 57,950,000     | NASDAQ |



NONE - the materials are public information

SEC-SCB-E-0000458

# Appendix A: Analysis of SASL Prop Trading account
## Frequently traded tickers based on volume of shares traded

Account 32810 - most frequently traded tickers based on volume of shares

| Symbol | Volume of shares | Number of trades | Value of trades ($) | Stock price ($) | Market cap ($) | Exchange |
|---|---|---|---|---|---|---|
| UWTI | 4,956,560 | 211 | 21,170,817 | n/a | n/a | NYSE Arca |
| MBRX | 2,055,394 | 1,297 | 6,125,486 | 1.9500 | 40,590,000 | NASDAQ |
| IDXG | 1,380,378 | 871 | 2,767,556 | 1.1200 | 29,270,000 | NASDAQ |
| USO | 1,138,240 | 23 | 16,554,439 | 13.2400 | 2,180,000,000 | NYSE Arca |
| AKAO | 966,936 | 221 | 13,803,311 | 11.0000 | 488,450,000 | NASDAQ |
| BAC | 704,164 | 87 | 15,221,147 | 32.2000 | 329,190,000,000 | NYSE |
| OPGN | 632,516 | 77 | 1,512,322 | 6.2000 | 14,830,000 | NASDAQ |
| JNUG | 542,490 | 230 | 5,298,660 | 18.3500 | n/a | NYSE Arca |
| RLOG | 532,160 | 59 | 911,991 | 0.0580 | n/a | NASDAQ |
| ARRY | 437,134 | 86 | 2,634,902 | 14.5400 | 2,906,150,000 | NASDAQ |
| UVXY | 414,226 | 181 | 6,864,259 | 9.9200 | n/a | NYSE Arca |
| AEZS | 371,314 | 328 | 951,487 | 2.8500 | 37,590,000 | NASDAQ |
| SCON | 301,712 | 75 | 732,040 | 1.1400 | 12,480,000 | NASDAQ |
| AMD | 299,498 | 599 | 3,711,845 | 12.8900 | 11,973,150,000 | NASDAQ |
| PIRS | 276,924 | 338 | 988,438 | 7.9200 | 345,810,000 | NASDAQ |



NONE - the materials are public information

SEC-SCB-E-0000459

# Appendix A: Analysis of SASL Prop Trading Account
Frequently traded tickers based on volume of shares traded



Account 32813 - most frequently traded tickers based on volume of shares

| Symbol | Volume of shares | Number of trades | Value of trades ($) | Stock price ($) | Market cap ($) | Exchange |
|--------|------------------|------------------|---------------------|-----------------|----------------|----------|
| MGT | 11,045,858 | 14,070 | 37,654,351 | 3.2500 | 178,720,000 | OTC Market |
| DCTH | 10,980,100 | 4,207 | 1,881,366 | 0.0400 | 2,380,000 | NASDAQ |
| AMD | 9,846,706 | 21,702 | 103,658,136 | 12.8900 | 11,973,150,000 | NASDAQ |
| JNUG | 7,592,070 | 19,242 | 66,501,776 | 18.3500 | n/a | NYSE Arca |
| DRYS | 6,537,751 | 17,106 | 27,745,667 | 3.5400 | 374,350,000 | NASDAQ |
| MTBC | 6,406,516 | 10,819 | 15,046,536 | 3.8300 | 41,390,000 | NASDAQ |
| AUPH | 6,325,374 | 13,957 | 34,378,469 | 5.6700 | 473,860,000 | NASDAQ |
| MBRX | 6,202,410 | 9,972 | 14,736,741 | 1.9500 | 40,590,000 | NASDAQ |
| AEZS | 5,947,476 | 10,458 | 18,033,653 | 2.8500 | 37,590,000 | NASDAQ |
| SUNE | 5,877,204 | 6,580 | 39,410,203 | n/a | n/a | NYSE |
| SORL | 5,574,952 | 10,291 | 33,703,567 | 6.4700 | 121,620,000 | NASDAQ |
| IDXG | 5,508,400 | 10,606 | 14,080,070 | 1.1200 | 29,270,000 | NASDAQ |
| TOPS | 5,279,162 | 8,632 | 15,897,149 | 0.2000 | 23,800,000 | NASDAQ |
| CLRB | 5,051,484 | 6,717 | 17,851,299 | 1.2300 | 18,820,000 | NASDAQ |
| CHK | 4,940,670 | 7,910 | 27,860,127 | 3.9700 | 4,516,230,000 | NYSE |

NONE - the materials are public information

SEC-SCB-E-0000460

# Appendix A: Analysis of SASL Prop Trading Account
## Frequently traded tickers based on value of shares traded

Account 32810 - most frequently traded tickers based on value of trades ($)

| Symbol | Value of trades ($) | Volume of shares | Number of trades | Stock price ($) | Market cap ($) | Exchange |
|---|---|---|---|---|---|---|
| UWTI | 21,170,817 | 4,956,560 | 211 | n/a | n/a | NYSE Arca |
| USO | 16,554,439 | 1,138,240 | 23 | 13.2400 | 2,180,000,000 | NYSE Arca |
| BAC | 15,221,147 | 704,164 | 87 | 32.2000 | 329,190,000,000 | NYSE |
| AKAO | 13,803,311 | 966,936 | 221 | 11.0000 | 468,450,000 | NASDAQ |
| UVXY | 6,864,259 | 414,226 | 181 | 9.9200 | n/a | NYSE Arca |
| MRRX | 6,125,486 | 2,055,394 | 1,297 | 1.9500 | 40,590,000 | NASDAQ |
| JNUG | 5,298,660 | 542,490 | 230 | 18.3500 | n/a | NYSE Arca |
| NFLX | 4,012,957 | 31,892 | 92 | 274.6000 | 116,707,500,000 | NASDAQ |
| AMD | 3,711,845 | 299,488 | 599 | 12.8900 | 11,973,150,000 | NASDAQ |
| TEVA | 3,350,220 | 169,488 | 243 | 21.3300 | 22,592,780,000 | NYSE |
| AERI | 2,807,775 | 76,072 | 88 | 56.7000 | 2,159,850,000 | NASDAQ |
| IDXG | 2,767,556 | 1,380,378 | 871 | 1.1200 | 29,270,000 | NASDAQ |
| ARRY | 2,634,902 | 437,134 | 86 | 14.5400 | 2,906,150,000 | NASDAQ |
| SRPT | 2,337,433 | 66,438 | 93 | 67.5800 | 4,369,770,000 | NASDAQ |
| GLYC | 1,967,391 | 175,354 | 562 | 22.3500 | 797,670,000 | NASDAQ |



NONE - the materials are public information

**SEC-SCB-E-0000461**

# Appendix A: Analysis of SASL Prop Trading Account
Frequently traded tickers based on value of shares traded

Account 32813 - most frequently traded tickers based on value of trades ($)

| Symbol | Value of trades ($) | Volume of shares | Number of trades | Stock price ($) | Market cap ($) | Exchange |
|---|---|---|---|---|---|---|
| AMD | 103,658,136 | 9,846,706 | 21,702 | 12.8900 | 11,973,150,000 | NASDAQ |
| VRX | 78,093,735 | 4,592,694 | 14,185 | 19.3200 | 6,864,210,000 | NYSE |
| NUGT | 68,682,857 | 2,321,866 | 9,714 | 35.3600 | n/a | NYSE Arca |
| NVDA | 68,597,849 | 640,698 | 7,293 | 243.3300 | 143,228,100,000 | NASDAQ |
| JNUG | 66,501,776 | 7,592,070 | 19,242 | 18.3500 | n/a | NYSE Arca |
| EXAS | 51,424,681 | 4,271,220 | 10,631 | 50.4900 | 6,017,650,000 | NASDAQ |
| WTW | 48,961,521 | 3,117,462 | 6,482 | 65.4400 | 4,251,890,000 | NYSE |
| UVXY | 48,233,428 | 2,971,370 | 10,273 | 9.9200 | n/a | NYSE Arca |
| HTZ | 46,298,874 | 2,991,308 | 8,611 | 24.1500 | 1,915,560,000 | NYSE |
| X | 40,631,595 | 1,831,858 | 6,500 | 40.9500 | 7,047,020,000 | NYSE |
| SUNE | 39,410,203 | 5,877,204 | 6,580 | n/a | n/a | NYSE |
| TEVA | 38,174,857 | 1,687,810 | 5,004 | 21.3300 | 22,592,780,000 | NYSE |
| MGT | 37,654,351 | 11,045,858 | 14,070 | 3.2500 | 178,720,000 | OTC Market |
| SRPT | 36,871,915 | 1,739,054 | 8,072 | 67.5800 | 4,369,770,000 | NASDAQ |
| AUPH | 34,378,469 | 6,325,374 | 13,957 | 5.6700 | 473,860,000 | NASDAQ |



Page 27

NONE - the materials are public information

# Limitations of review

## Scope of our work

▼ Our work has been limited in scope and time, and we note that more detailed procedures may have identified additional issues. The procedures summarized in our report do not constitute an audit, a review or other form of assurance in accordance with any generally accepted auditing, review or other assurance standards, and accordingly, we do not express any form of assurance. Additionally, the procedures do not address the effectiveness of internal controls over financial reporting under Section 404 of the Sarbanes-Oxley Act.

▼ Our work has been limited in scope and cannot be relied upon to have identified all information or issues that may be of relevance.

▼ EY performed certain searches using publicly-available information. We cannot assess whether the information from these sources is accurate or complete, and there is a risk that this information may be false, incomplete, or no longer relevant. EY cannot assume liability for these risks. The findings presented in this report are a result of the identification, compilation, and cross-referencing of information as it was publicly available.

▼ The contents of this report are based on information provided and disclosed by SASL during the course of the review. EY did not have access to SASL's internal systems and our analysis has been based on the trade data and any supporting documentation that was extracted by SASL and provided to EY.

▼ During the engagement we asked for copies of 'Market Surveyor' reports or communications. SASL advised that the relationship and all documentation is with Mint Global Markets Inc. (formerly Stock USA Execution Services) ("Mint Global") and that SASL does not have any supporting documentation from Market Surveyor. Mint Global is the firm which SASL execute their equity trades through. We found this response to be vague and could not confirm or deny the statement made by SASL.

▼ SASL highlighted to us that a customer account was closed due to suspicion of layering. SASL were unable to advise which customer or account this was or any documentation to support this.



NONE - the materials are public information

SEC-SCB-E-0000463

# Limitations of review



▲ Following a reconciliation of SASL's clearing account (32812) we found 111 instances in which trade positions were not cleared in this account and thus appears an open position remained. SASL explained that if the reconciliation was completed on a daily basis then this could be the case as customers are not required to sell the shares purchased on that day and can hold a position for as long as they wish. When asked for supporting data, we were informed that providing a full trade history of the stock was too cumbersome for SASL's system and instead provided with copies of the daily position in relation to two of the instances from the date on which the open position was created until it cleared. The trade data shows this was a manual entry detailed as 'flatten position'. We reviewed a sample of other instances and identified the same practice for other positions. We did not review all 111 instances.

▲ Upon requesting additional information in regards to the notes for manual trades, SASL advised that they would be unable to provide this and that there would be no further information on their system i.e. the trade data contains all information available in relation to that trade. We are unable to confirm or deny this statement.

Page 29

NONE - the materials are public information

SEC-SCB-E-0000464

EY | Assurance | Tax | Transactions | Advisory

About EY

EY is a global leader in assurance, tax, transaction and advisory services. The insights and quality services we deliver help build trust and confidence in the capital markets and in economies the world over. We develop outstanding leaders who team to deliver on our promises to all of our stakeholders. In so doing, we play a critical role in building a better working world for our people, for our clients and for our communities.

EY refers to the global organization and may refer to one or more of the member firms of Ernst & Young Global Limited, each of which is a separate legal entity. Ernst & Young Global Limited, a UK company limited by guarantee, does not provide services to clients. For more information about our organization, please visit ey.com.

About EY's Assurance Services

Our assurance services help our clients meet their reporting requirements by providing an objective and independent examination of the financial statements that are provided to investors and other stakeholders. Throughout the audit process, our teams provide timely and constructive challenge to management on accounting and reporting matters and a robust and clear perspective to audit committees charged with oversight.

The quality of our audit starts with our 60,000 assurance professionals, who have the breadth of experience and on-going professional development that comes from auditing many of the world's leading companies.

For every client, we assemble the right multidisciplinary team with the sector knowledge and subject matter expertise to address your specific issues. All teams use our Global Audit Methodology and latest audit tools to deliver consistent audits worldwide.

© 2018 Ernst & Young
All Rights Reserved

NONE - the materials are public information

**THE COMMONWEALTH OF THE BAHAMAS**
**IN THE SUPREME COURT**
**PUBLIC LAW DIVISION**

**IN THE MATTER** of an application by Mintbroker International Ltd. (formerly Swiss America Securities Ltd.) T/A Sure Trader, for Leave to apply for Judicial Review

**AND IN THE MATTER** of the Application for Leave to apply or an Order of Certiorari

**AND IN THE MATTER** of Purported Orders dated the 18th September 2019 made pursuant to sections 133(1) (b) and (f) and 133(3) of the Securities Industry Act, 2011

**AND IN THE MATTER** of the decision dated the 20th September 2019 of the Securities Commission of The Bahamas to appoint an auditor with costs payable by the Applicant, pursuant to section 45 of the Securities Industry Act, 2011

**AND IN THE MATTER** of the Securities Industry Act, 2011 as amended

**AND IN THE MATTER** of the Securities Industry (Disciplinary Proceedings) (Hearings and Settlements) Rules, 2017.

**BETWEEN**

**MINTBROKER INTERNATIONAL LTD. (FORMERLY SWISS AMERICA SECURITIES LTD.) T/A SURE TRADER**

**Applicant**

**AND**

**THE SECURITIES COMMISSION OF THE BAHAMAS**

**Respondent**

---

## SUPPLEMENTAL AFFIDAVIT

(Of *Christina Rolle*)

---

**2019 PUB/jrv/00024**

The Securities Commission of the Bahamas
Poinciana House, 31A East Bay Street.
The Respondent

10

NONE - the materials are public information