UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-21079-BB

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.,
f/k/a SWISS AMERICA SECURITIES LTD.
and d/b/a SURETRADER, and
GUY GENTILE, a/k/a GUY GENTILE NIGRO,

    Defendants.

**DEFENDANT GUY GENTILE'S MOTION RENEWING HIS OBJECTIONS AND SEEKING TO EXCLUDE PLAINTIFF'S ADMITTED EXHIBITS 34–38 AND FOR ISSUANCE OF A CURATIVE INSTRUCTION BECAUSE WITNESS PHILIP DORSETT'S AUTHENTICATION CONFLICTS WITH HIS PRIOR SWORN DEPOSITION TESTIMONY**

FORD O'BRIEN LANDY LLP
One Biscayne Tower
2 South Biscayne Boulevard, Suite 3200
Miami, Florida 33131
Tel.: (786) 310-1135 (main)

1

Defendant Guy Gentile respectfully renews his preserved objections to Plaintiff's Exhibits 34, 35, 36, 37, and 38, and hereby moves to preclude their admission into evidence and for a curative instruction directing the jury to disregard these exhibits.

These exhibits, purporting to be copies of SureTrader customer applications, were admitted based on purported authentication by Dorsett as business records over objections to authenticity, foundation, and hearsay. Dorsett's authentication testimony, however, directly contradicts his prior sworn deposition testimony in which he (1) denied knowledge of this particular form application, (2) testified that he could not recall even "roughly" when this application was used, (3) admitted "I could be wrong" about the time-frame the application was used, and (4) in reference to forward dates on the application, testified "I don't understand that. I don't recall ever seeing something like that before." [Ex. A, *Dorsett Depo. Transcript pages 101–103*].  The exhibit shown to Dorsett at his deposition (deposition Exhibit 4, SEC trial Exhibit 45), attached hereto, is listed as Exhibit 45 of the government's trial exhibits and is identical in form to Exhibits 34–38. [Ex. B, *customer application*]. As importantly, Exhibits 34–38 have bates stamps indicating that the SEC did <u>not</u> receive the documents from SureTrader but rather from the Securities Commission of the Bahamas. All of these purported customer applications have the same indicia of unreliability.

At trial, when shown Exhibit 34, Dorsett testified as follows:

> A: So this is one of the versions of our online application.
> Q: And why would you be familiar with these documents?
> A: Well, I definitely would have seen these.
> Q: Okay. And do you recognize the name on this application?
> A: Yes. So.
> ***
> Q: Is this document a business record of SureTrader?
> A: Yes

[Ex. C, *Transcript day 2 at 92:7–21*]. After Plaintiff sought to move the records into evidence based on that foundation, counsel for Gentile objected on multiple grounds, including "authenticity and foundation" and hearsay, although the Court did not make a ruling on the objections and directed the SEC to "satisfy" the business record exception. [Ex. C, *Transcript day 2 at 92:19–93:01*]. Following a few brief questions, the SEC again attempted to move the document into evidence at which point counsel for Gentile objected and made a "request for a quick voir dire of the witness" so as to question the witness's ability to authenticate the document outside the presence of the jury. [Ex. C, *Transcript day 2 at 93:20–93:23*]. Gentile's motion for voir dire was denied. [Ex. C, *Transcript day 2 at 93:22*]. Exhibit 34 was admitted into evidence over objection on a ruling that "[i]t's being admitted as a business record." [Ex. C, *Transcript day 2 at 94:13–20*]. Exhibits 35–38, also purporting to be SureTrader customer applications were also admitted into evidence over objection. [Ex. C, *Transcript day 2 at 98:2–8; 100:25–101:10; 104:12–15; 105:21–25*].

Exhibit 34 looks like this:



It purports to be a copy of a SureTrader account application, although the bates stamp designation SEC-SCB-P-0010391 clearly indicates the document originated <u>not</u> from SureTrader but from the Securities Commission of the Bahamas (SCB).[1] The application that Dorsett "authenticated" purports to include a signature dated *after* Dorsett's termination from SureTrader for theft of company documents:

[signature block image: "BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU AFFIRM THAT YOU HAVE READ THIS AGREEMENT AND ANY REQUIRED DISCLOSURES GOVERNING THIS RELATIONSHIP. YOU AFFIRM THAT THE INFORMATION YOU HAVE PROVIDED IS ACCURATE AND YOU AGREE TO NOTIFY US OF ANY CHANGES IN THE INFORMATION PROVIDED. BY SIGNING THIS AGREEMENT ELECTRONICALLY, I ACKNOWLEDGE THAT AN ELECTRONIC SIGNATURE HAS THE SAME LEGAL EFFECT AND CAN BE ENFORCED IN THE SAME WAY AS A WRITTEN SIGNATURE UNDER PENALTY OF PERJURY AND FOR GIVING FALSE INFORMATION." Signature / Date 12/20/2017]

Other exhibits admitted over objection include dates after SureTrader closed or in the future:

[exhibit excerpt: "How did you hear about us? Type Source: Warrior Trading. CLIENT ACKNOWLEDGEMENT..." Signature / Date 07/06/2022]

*See, e.g.*, Exhibits 35–38, 45 (excerpt from Exhibit 36). Nonetheless, Dorsett testified at trial that while employed at SureTrader between November 2011 and July 2017, "I definitely would have seen *these*." [Ex. C, *Transcript, day 2 at 92:12* (emphasis added)]. When presented with the following foundational business records question for each of these exhibits, "Was this document created at the time of the application" in 2017, Dorsett, answered "Yes." [Ex. C, *Transcript, day 2 at* 93:12–14]; [*see also e.g.*, Ex. C, *Transcript, day 2 at* 100:5–7 ("Q: Okay.

---

[1] While the SEC purported to email a declaration by a representative of the SCB purporting to authenticate these purported applications, the declaration lacks any of the elements required under Rule 901. [Ex. D, *declaration of Igal Wizman*]. The circumstances under which the SCB appears to have received these documents combined with the applications' obvious indicia of unreliability and Dorsett's prior sworn testimony raises substantial issues as to their authenticity.

4

And does this appear to be a document that was created at the time? A: Yes…Q: And what is the date? A: February 21, 2017")]. SureTrader shut down in 2019. Yet, Dorsett was permitted to authenticate at trial purported applications that he claims to have seen as former chief compliance officer of SureTrader during his employment in 2017, including documents purportedly signed and dated in 2022.

This testimony *directly* contradicts Dorsett's prior *sworn* deposition testimony in this matter. During Dorsett's sworn deposition, he was shown SureTrader applications about which he provided testimony. [Ex. A, *Dorsett Depo. Transcript at 99-104*]. They looked like this:



[Ex. A, *Dorsett Depo. Transcript at 99-100*].

Having testified about those deposition exhibits 2 and 3 as reflecting SureTrader applications, Dorsett testified that deposition Exhibit 4 (SEC trial Exhibit 45) does not "appear to

5

be the same format of an account application as the ones we reviewed in Exhibits 3 and 2." [Ex. A, *Dorsett Depo. Transcript at 101:14–18*]. The exhibit looks like this:

 

When shown this exhibit, which has the identical format of SEC trial Exhibits 34–38, Dorsett testified, "I can't say for sure" "roughly, when *this form* was being used at SureTrader." [Ex. A, *Dorsett Depo. Transcript at 101:19–22*]. Critically, deposition Exhibit 4 (SEC trial Exhibit 45), like SEC trial Exhibits 35–38, notes a date far into the future on several of its purported signature pages.



6

When SEC counsel, who at the deposition appeared to notice the odd dating for the first time, presented Dorsett with this document, he testified:

> Q: Alright. Mr. Dorsett, do you see the date on this page?
> A: Yes.
> Q: And what is the date?
> A: 3/12/2027 – that looks like an error.
> Q: Okay. Absent a time machine, the date appears to be incorrect on this application. With – is there any reason why the date would be incorrect, *noting a date far into the future*?
> A: I – I don't understand that. *I don't recall ever seeing something like that before.*

[Ex. A, *Dorsett Depo. Transcript at 102:12–22* (emphasis added)]. To be clear, Dorsett testified under penalty of perjury that as of February 27, 2023, he did not recall ever seeing a SureTrader application noting a future date and that he could not even recall "roughly" when this application form was used. After showing Dorsett another page of the exhibit dated March 23, 2017, Dorsett testified at his deposition:

> Q: Okay. Mr. Dorsett, do you see a date on page 8 of Exhibit 4?
> A: Yes.
> Q: Okay, And what is that date?
> A: So March 23, 2017.
> Q: Okay. So, given that, does that give you an indication of the timeframe when this application was being used?
> A: Well, that – there's something off about that….

[Ex. A, *Dorsett Depo. Transcript at 102:5–13*]. That is, Dorsett at his deposition identified exactly what Gentile and Gentile's counsel had already identified during discovery, raised during Gentile's deposition, and attempted to object to at trial: that these documents, of mysterious origin, are not authentic SureTrader business records and should not be admitted into evidence.

What is more troubling, is that at trial, Dorsett provided contradictory testimony when shown *this same form* application, claiming that he "definitely would have seen these" form applications while employed at SureTrader that noted a date in the future. [Ex. C, *Transcript day*

7

*2 at 92:10-12*]. He also attested that they were "created at the time of the application," even though he also testified at a deposition when shown this form application that he "could not say for sure" "roughly when this form was being used at SureTrader."

Gentile sought to raise these issues by requesting *voir dire* on Dorsett's lack of ability to authenticate the forms and otherwise raised objections to admitting these documents into evidence, which are not authentic SureTrader records, were not created at the time of the application, appear to have been modified, and lack any indicia of reliability. Accordingly, Gentile hereby renews his objections to these exhibits and requests that Court prelude the documents from evidence and issue a curative instruction to the jury.

Dated: June 16, 2024.	Respectfully submitted,

FORD O'BRIEN LANDY LLP

By: ＿/s/Gabriela M. Ruiz＿＿＿＿＿
    Gabriela M. Ruiz
    Fla. Bar. 46844
    One Biscayne Tower
    2 South Biscayne Boulevard, Suite 3200
    Miami, Florida 33131
    Tel.: (786) 310-1135 (main)
    gruiz@fordobrien.com

    Matthew Aaron Ford (admitted *pro hac vice*)
    Emily Klair Bloom (admitted *pro hac vice*)
    3700 Ranch Road 620 South, Suite B
    Austin, Texas 78738
    Tel.: (512) 503-6388 (main)
    mford@fordobrien.com
    ebloom@fordobrien.com

    Adam C. Ford (admitted *pro hac vice*)
    Stephen R. Halpin III (admitted *pro hac vice*)
    275 Madison Avenue, 24th Floor
    New York, New York 10016
    Tel.: (212) 858-0040 (main)
    aford@fordobrien.com
    shalpin@fordobrien.com

## **CERTIFICATE OF CONFERRAL**

Pursuant to Local Rule 7.1(a)(3), the parties have met and conferred on the issues raised above. On June 16, 2024, at 12:55pm EST, the undersigned emailed counsel for the SEC requesting the SEC's position and the SEC responded they oppose the relief sought.

                                                                                    */s/Matthew A. Ford*
                                                                                    Matthew Aaron Ford

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Defendant Guy Gentile's Motion Renewing His Objections And Seeking To Exclude Plaintiff's Admitted Exhibits 34–38 And For Issuance Of A Curative Instruction Because Witness Philip Dorsett's Authentication Conflicts With His Prior Sworn Deposition Testimony, dated June 16, 2024, to be served via CM/ECF on the following counsel for Plaintiff:

Alice Sum
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131
(305) 982-6300
sumal@sec.gov

Alise Meredith Johnson
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131
(305) 982-6385
johnsonali@sec.gov

    /s/Gabriela M. Ruiz
    Gabriela M. Ruiz