# EXHIBIT A

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
11:11  1   the top of the next page -- no.  I'm sorry.  Scroll
11:11  2   down.  Yes.  Thank you.  Okay.
11:11  3              Just to show Mr. Dorsett the balance of that
11:11  4   paragraph.  If you can, please scroll back up to the
11:11  5   text of the paragraph.
11:11  6   BY MS. SUM:
11:11  7        Q.   Okay.  If you'll take a moment, please,
11:11  8   Mr. Dorsett, to review this paragraph.
11:12  9        A.   I've read it.
11:12 10        Q.   Okay.  Does the unsolicited acknowledgement
11:12 11   agreement, in Exhibit 3, appear to be different than
11:12 12   what you reviewed in Exhibit 2?
11:12 13        A.   Yes.
11:12 14        Q.   Do you recall any details for why the
11:12 15   unsolicited acknowledgement agreement paragraph is
11:12 16   different between Exhibit 3 and Exhibit 2?
11:12 17        A.   I -- I don't know why he changed it.
11:12 18        Q.   But your testimony today is that if there are
11:13 19   any changes, that Mr. Gentile made them?
11:13 20        A.   Yes.
11:13 21             MR. MATTHEW FORD:  Objection.
11:13 22   BY MS. SUM:
11:13 23        Q.   Do you recall having any conversations with
11:13 24   Mr. Gentile about the form of the language in the
11:13 25   unsolicited acknowledgement agreement in Exhibit 3?
```

99

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

```
11:13  1        A.   The only time we had conversation about the
11:13  2   language is in the very beginning.
11:13  3        Q.   When you say "the very beginning," what time
11:13  4   period are you referring to?
11:13  5        A.   Like back in that -- like I think it was
11:13  6   February 2012 when, you know, we first did the
11:13  7   unsolicited acknowledgement agreement on a separate
11:13  8   sheet.  And that's when -- that's when, you know, that
11:13  9   meeting that I discussed, that's when we discussed the
11:13 10   content of the unsolicited acknowledgement agreement.
11:14 11             I -- I would have known that these slight
11:14 12   changes were taking place, but, you know, Guy would fine
11:14 13   tune them to better suit, I guess, what he thought was
11:14 14   required by American law.
11:14 15        Q.   Did Mr. Gentile discuss that with you before
11:14 16   making any changes to the unsolicited acknowledgement
11:14 17   agreement?
11:14 18        A.   No.  He didn't discuss it with me, but I
11:14 19   would -- again, sometimes the staff would bring -- like
11:14 20   when there's changes, the staff would bring it to my
11:14 21   attention and be oh, this looks different.  I would go
11:14 22   through it and try to point out some of the differences.
11:14 23             MS. SUM:  All right.  Please take down
11:14 24   exhibit -- oh, actually, before you take it down.
11:14 25             For the record, just to note the Bates stamp
```

100

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
11:14  1   range for Exhibit 3 is SEC-SCB-P-0010164 to 10198.
11:15  2              And then you can take it down, please.
11:15  3              All right.  At this time I'm going to ask the
11:15  4   videographer to bring up Exhibit 4 which is also marked
11:15  5   confidential.
11:15  6              And the Bates stamp range for Exhibit 4 is
11:15  7   SEC-SCB-P-0010428 to 10446.
11:15  8              And I will ask the videographer to please
11:16  9   scroll from page 1 down to 12, please.
11:16 10              (Deposition Exhibit 4 marked.)
11:17 11              MS. SUM:  All right.  Thank you.
11:17 12              And could you please bring it back to page 1?
11:17 13   BY MS. SUM:
11:17 14        Q.    Mr. Dorsett, we are looking at Exhibit 4.
11:17 15              Does this appear to be the same format of an
11:17 16   account application as the ones we reviewed in
11:17 17   Exhibits 3 and 2?
11:18 18        A.    No.
11:18 19        Q.    Do you recall, roughly, when this form was
11:18 20   being used at SureTrader?
11:18 21        A.    So I want to say this would probably be like
11:18 22   the second iteration, but I can't say for sure.
11:18 23        Q.    Okay.  And what leads you to believe that it
11:18 24   was the second iteration?
11:18 25        A.    Well, like I said, the very first ones we used
```

101

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
11:18  1   was a PDF very similar to this, but clients would fill
11:18  2   it out themselves.  And I think this was just a natural,
11:18  3   like, update to that.  And so they would fill it out
11:18  4   online, right, but it still used the same formats
11:18  5   from -- from the first one.  That's why I say that.
11:18  6        Q.   All right.
11:18  7             MS. SUM:  If the videographer could please
11:18  8   scroll to page 2.  Scroll down a little bit more,
11:19  9   please.
11:19 10             Okay.  Stop there, please.
11:19 11   BY MS. SUM:
11:19 12        Q.   All right.  Mr. Dorsett, do you see the date
11:19 13   on this page?
11:19 14        A.   Yes.
11:19 15        Q.   And what is the date?
11:19 16        A.   3/12/2027 -- that looks like an error.
11:19 17        Q.   Okay.  Absent a time machine, the date appears
11:19 18   to be incorrect on this application.
11:19 19             With -- is there any reason why the date would
11:19 20   be incorrect, noting a date far into the future?
11:19 21        A.   I -- I don't understand that.  I don't recall
11:19 22   ever seeing something like that before.
11:19 23        Q.   Okay.
11:19 24             MS. SUM:  Let me ask the videographer to
11:19 25   please scroll to the bottom of page 8.
```

102

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
11:20  1              If you could scroll just a little bit more to
11:20  2   get into -- no.  I'm sorry.  Back down so we can see the
11:20  3   date in the middle of the page, please.
11:20  4   BY MS. SUM:
11:20  5       Q.   Okay.  Mr. Dorsett, do you see a date on
11:20  6   page 8 of Exhibit 4?
11:20  7       A.   Yes.
11:20  8       Q.   Okay.  And what is the date?
11:20  9       A.   So March 23, 2017.
11:20 10       Q.   Okay.  So, given that, does that give you an
11:20 11   indication of the timeframe for when this application
11:20 12   was being used?
11:20 13       A.   Well, that -- there's something off about that
11:20 14   because this is definitely one of the newer
11:20 15   applications -- sorry.  This is one of the older
11:20 16   applications, but that date is far along in the firm.
11:21 17   And so I'm not sure why this application was used.
11:21 18              I know that Guy still had the ability to print
11:21 19   off some of the older applications, but I'm not sure why
11:21 20   this one was being used at that time.  I mean, I could
11:21 21   be wrong, but I'm thinking that this is one of the
11:21 22   earlier applications, but that date is one of the later
11:21 23   dates.
11:21 24              MS. SUM:  Could we scroll back, please, to
11:21 25   page one?
```

103

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
11:21  1    BY MS. SUM:
11:21  2         Q.   Who is the applicant on Exhibit 4?
11:21  3         A.   Dion Von Moltke -- Moltke.
11:21  4         Q.   Thank you.
11:21  5              And where does Mr. Von Moltke indicate he
11:21  6    resides?
11:22  7         A.   His -- let's see.  His residence is
11:22  8    Charleston, United States.
11:22  9              MS. SUM:  Could you please scroll to the
11:22 10    bottom of -- or the middle of page 2?
11:22 11    BY MS. SUM:
11:22 12         Q.   Do you see in bold where it says, "How did you
11:22 13    hear about us"?
11:22 14         A.   Yes.
11:22 15         Q.   Okay.  What does it say?
11:22 16         A.   "Investor's hub."
11:22 17         Q.   Is investor's hub part of the affiliate
11:22 18    program?
11:22 19         A.   Yes.
11:22 20         Q.   And with this particular form of the
11:22 21    application do you recall if the applicant needed to
11:22 22    type in how they heard about us -- how they heard about
11:22 23    SureTrader or was it a drop down?
11:22 24              MR. MATTHEW FORD:  Objection.
11:23 25              THE WITNESS:  I -- I don't recall at this
```

104