## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    *Plaintiff*,<br><br>          v.<br><br>MINTBROKER INTERNATIONAL, LTD., f/k/a SWISS AMERICA SECURITIES LTD. And d/b/a SURETRADER, and GUY GENTILE, a/k/a GUY GENTILE NIGRO<br><br><br>                    *Defendants*. | No. 21-CV-21079 |

## DEFENDANT GUY GENTILE'S OPPOSITION TO PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR REMEDIES

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................................1

STATEMENT OF FACTS.............................................................................................................4

    I.    Gentile Founded SureTrader ............................................................................4

    II.   Regulators Bring Enforcement Actions Against Gentile and SureTrader..........................5

ARGUMENT ..............................................................................................................................6

I.    The SEC Bears the Burden on its Motion ...........................................................6

II.    The Request for "Disgorgement" Should Be Rejected as an Improper Penalty ................6

    A.  The SEC's Requested Disgorgement is an Improper Penalty Because the SEC Cannot Show Any Investor Losses Attributable to the Violation....................................................9

    B.  The SEC's Requested Disgorgement is an Improper Penalty Because it Exceeds Gentile's Pecuniary Gain ........................................................................................10

    C.  No Award for Joint and Several Liability Disgorgement is Permissible Here.................11

    D.  The SEC Fails to Deduct Expenses from the Request for Disgorgement ........................14

III.   The SEC's Request for a Penalty is An Impermissible Request for a Joint and Several Penalty in Disguise ...........................................................................................15

IV.   The Injunctive Relief Sought is Punitive, Not Equitable ...................................17

    A. The "Obey the Law" Injunction Sought Here is Punitive ..................................17

    B. The SEC's Punitive Injunction is Not Appropriate Here .................................18

V.    The Court Should Not Award Prejudgment Interest .......................................20

CONCLUSION ...........................................................................................................................21

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Aaron v. Sec. & Exch. Comm'n,*
  446 U.S. 680 (1980) ................................................................................................17, 18

*Burton v. City of Belle Glade,*
  178 F.3d 1175 (11th Cir. 1999) ...............................................................................17

*Exch. Comm'n v. Bevil,*
  2020 WL 7048263 (D. Nev. Nov. 30, 2020) ............................................................8

*Exch. Comm'n v. Graham,*
  823 F.3d 1357 (11th Cir. 2016) ...............................................................................17

*Exch. Comm'n v. Johnson,*
  368 F. Supp. 3d 247 (D. Mass. 2019) .....................................................................20

*Exch. Comm'n v. Keener,*
  644 F. Supp. 3d 1290 (S.D. Fla. 2022) ...................................................................16

*Exch. Comm'n v. Ripple Labs, Inc.,*
  2024 WL 3730403 (S.D.N.Y. Aug. 7, 2024) ...........................................................9

*Exch. Comm'n v. Warren,*
  583 F.2d 115 (3d Cir. 1978) .....................................................................................18

*Gabelli v. SEC,*
  568 U.S. 442 (2013) ...................................................................................................6

*Gen. Motors Corp. v. Devex Corp.,*
  461 U.S. 648 (1983) ...................................................................................................20

*Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH,*
  141 F.3d 1434 (11th Cir. 1998) ...............................................................................20

*Kokesh v. SEC,*
  581 U.S. 455 (2017) .........................................................................................7, 17, 18

*Liu v. Sec. & Exch. Comm'n*
  591 U.S. 71 (2020) ............................................................................................. Passim

*Osterneck v. E.T. Barwick Indus., Inc.,*
  825 F.2d 1521 (11th Cir. 1987) ...............................................................................20

*Pierce Mfg., Inc. v. E-One, Inc.,*
  2022 WL 479804 (M.D. Fla. Feb. 16, 2022) ........................................................................20

*Robbie's of Key W. v. M/V Komedy III*,
  470 F. Supp. 3d 1264 (S.D. Fla. 2020) ...............................................................................6

*S.E.C.  v. Gallison,*
  2023 WL 3004882 (S.D.N.Y. Feb. 4, 2023) .......................................................................20

*S.E.C. v. Calvo,*
  378 F.3d 1211 (11th Cir. 2004)...........................................................................................18

*S.E.C. v. Clark,*
  915 F.2d 439 (9th Cir. 1990)...............................................................................................12

*S.E.C. v. Contorinis*,
  743 F.3d 296 (2d Cir. 2014)................................................................................................12

*S.E.C. v. Patel,*
  61 F.3d 137 (2d Cir. 1995)..................................................................................................20

*S.E.C. v. Pentagon Cap. Mgmt. PLC*,
  725 F.3d 279 (2d Cir. 2013)...........................................................................3, 11, 14, 16

*S.E.C. v. Wellshire Sec., Inc.,*
  773 F. Supp. 569 (S.D.N.Y. 1991) ...............................................................................18, 19

*S.E.C. v. Whittemore,*
  659 F.3d 1 (D.C. Cir. 2011) ................................................................................................12

*Saad v. SEC*,
  873 F.3d 297 (D.C. Cir. 2017) .......................................................................................4, 17

*Sec. & Exch. Comm'n v. Smyth*,
  420 F.3d 1225 (11th Cir. 2005)...........................................................................................17

*SEC v. Ahmed*,
  72 F.4th 379 (2d Cir. 2023).............................................................................................8, 13

*SEC v. Commonwealth Chem. Sec., Inc.*,
  574 F.2d 90 (2d Cir. 1978).............................................................................................17, 19

*SEC v. First Jersey Sec., Inc.*,
  101 F.3d 1450 (2d Cir. 1996)..........................................................................................11, 12

*SEC v. Gentile,*
   939 F.3d 549 (3d Cir. 2019) ........................................................................4, 5, 17

*SEC v. Govil,*
   86 F.4th 89 (2d Cir. 2023) ..........................................................................7, 8, 9, 17

*SEC v. Jones,*
   476 F. Supp. 2d 374 (S.D.N.Y. 2007) ..........................................................................19

*Sec. & Exch. Comm'n v. Keener*
   102 F.4th 1328 (11th Cir. 2024) ..........................................................................

*SEC v. Savoy Indus., Inc.,*
   665 F.2d 1310 (D.C. Cir. 1981) ..........................................................................17

*SEC v. Tourre,*
   4 F. Supp. 3d 579 (S.D.N.Y. 2014) ..........................................................................17

*SEC v. Westport Cap. Markets, LLC,*
   547 F. Supp. 3d 157 (D. Conn. 2021) ..........................................................................19

*Steadman v. S.E.C.,*
   603 F.2d 1126 (5th Cir. 1979) ..........................................................................18

*Tug Allie-B, Inc. v. United States,*
   273 F.3d 936 (11th Cir. 2001) ..........................................................................14

*U.S. Sec. & Exch. Comm'n v. Janus Spectrum LLC,*
   811 F. App'x 432 (9th Cir. 2020) ..........................................................................8

*United States v. Gentile,*
   235 F. Supp. 3d 649 (D.N.J. 2017) ..........................................................................5

*United States v. Telluride Co.,*
   146 F.3d 1241 (10th Cir. 1998) ..........................................................................18

Statutes

15 U.S.C. § 77t(d) ..........................................................................17
15 U.S.C. § 77t(d)(3) ..........................................................................7
15 U.S.C. § 78o ..........................................................................18
15 U.S.C. § 78o(a)(1) ..........................................................................18
15 U.S.C. § 78t(a) ..........................................................................12, 13
15 U.S.C. § 78u ..........................................................................11, 13
15 U.S.C. § 78u-6(b) ..........................................................................7

15 U.S.C. § 78u(3), (5), and (7)................................................................................................7
15 U.S.C. § 78u(d)......................................................................................................2, 17
15 U.S.C. § 78u(d)(3)(a)(ii)..............................................................................8, 13, 14
15 U.S.C. § 78u(d)(3)(B)..........................................................................................14
15 U.S.C. § 78u(d)(3)(B)(i)-(iii)................................................................................3
15 U.S.C. § 78u(d)(3)(B)(iii).....................................................................................13
15 U.S.C. § 78u(d)(5)...............................................................................................12
15 U.S.C. § 78u(d)(7) ...............................................................................................8
15 U.S.C. § 7246(a) ..............................................................................................7, 8
15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B)(i)-(iii) ...........................................7, 11, 15, 16
15 U.S.C. § 78t .......................................................................................................14

Rules

Fed. R. Civ. P. 65(d).......................................................................................17, 18

Defendant Guy Gentile ("Gentile") submits this memorandum of law and accompanying Declaration of Matthew A. Ford (the "Ford Decl."), with exhibits, and Declaration of Guy Gentile (the "Gentile Decl."), with exhibits, in opposition to Plaintiff Securities and Exchange Commission's ("SEC") Motion for Remedies Against Defendants (the "Motion," ECF No. 359).[1]

## PRELIMINARY STATEMENT

The SEC failed in its lawsuit in the District of New Jersey against Gentile. After the third dismissal of that time-barred suit, the SEC decided to head south, shopping for a better forum. The SEC found it. And now, following a trial on a purported "registration" violation by *registered* foreign broker-dealer, MintBroker International, Ltd. ("SureTrader"), the SEC has fabricated "disgorgement" and "penalty" amounts so they are equal to those it sought in the original dismissed District of New Jersey cases based on alleged conduct from 2007–2008. The relief sought against Gentile is punitive—intended to punish him for alleged conduct from 17 years ago. But Congress has not authorized the SEC to seek or the Court to order such punitive relief. As explained below, the Court should deny the SEC's requested punishment and limit the SEC's relief to a tier one penalty against Gentile: $11,524.

To begin with, the SEC's request for almost $20 million in disgorgement, penalties, and interest exceeds the SEC's equitable powers. It is legally deficient. As explained below, it is also factually deficient. The SEC fails to even meet the threshold of showing that *any* losses were attributable the supposed violation here, let alone the $29.69 million in losses that the SEC claims investors incurred "trading with SureTrader." Motion at 5. There is no connection between SureTrader's lack of SEC registration and investors' decisions to pay commission and

---

[1] All references to "Ex." are references to exhibits to the Ford Decl. or the Gentile Decl. Gentile has also included a proposed judgment that only imposes a penalty of $11,524 for reasons explained in this memorandum of law.

enter into certain trades using self-directed accounts.  And in fact, SureTrader charged *significantly lower* commissions than US registered broker-dealers.

Further, the exorbitant award requested by the SEC is based on purported commissions received by SureTrader and estimated SEC registration fees.[2]  Yet, the SEC has failed to satisfy its initial burden of showing that Gentile received these "ill-gotten gains," a threshold for both disgorgement and penalties under 15 U.S.C. § 78u(d).

In *Liu v. Sec. & Exch. Comm'n*, the United States Supreme Court was clear that, as an equitable remedy, disgorgement is "restricted … to an individual wrongdoer's net profits."  591 U.S. 71, 79 (2020).  And since it is limited to an *individual's* net profits, disgorgement should be awarded against individuals, "not against multiple wrongdoers under a joint-and-several liability theory."  591 U.S. 71, 84 (2020).  Imposing disgorgement only on an individual basis is not only fair but also brings disgorgement practice in line with "[t]he rule against joint-and-several liability for profits that have accrued to another" that courts imposing equitable relief have followed throughout American history.  *Id.* (citing Supreme Court cases as early as 1795).

The Motion is in effect a request by the SEC for the Court to disregard its congressional mandate by punishing Gentile for purported benefits—that purportedly accrued to SureTrader—under the guise of "disgorgement." The SEC's proposed award includes over $13 million, reflecting the percentage of *SureTrader's* commission purportedly derived from U.S. residents and customers.  But the SEC has no evidence that Gentile ever received any of this commission revenue.  It even concedes that "[b]y 2018, SureTrader had nearly 75 employees." Motion at 4.

---

[2] After the DOJ and SEC ceased using SureTrader as a "honeypot" to ensnare securities violators (*see* Ford Decl. Ex. 1 at 70-71, 73-76)), it forced SureTrader into liquidation in the Bahamas. As a result, SureTrader's counsel was blocked from presenting a defense at trial and a default was entered against SureTrader (although hearsay evidence was admitted as if SureTrader was a party to the trial).

The SEC also seeks over $1 million from Gentile in a purported consulting fee despite having *no* bank records, wire transfers, or other evidence that he ever received it. Thirteen years after the SEC first deposed Gentile, during which time he acted as a cooperator for the DOJ and SEC freely sharing SureTrader's and his financial records, the SEC cannot even satisfy its threshold burden.  Instead, the SEC offers speculation that an irrevocable trust for which Gentile was a trustee but not a beneficiary received certain funds from SureTrader.

No less critically, the SEC disregards the Supreme Court's holding that disgorgement is limited to "net profits from wrongdoing after deducting legitimate expenses," *Liu*, 591 U.S. at 84, by failing to deduct *any* of SureTrader's expenses despite recognizing that SureTrader had nearly 75 employees by 2018.  Motion at 4.  Indeed, deduction of SureTrader's $30 million in legitimate expenses between March 2016 and December 2019—including payroll, taxes paid to the IRS, and *registration fees for the Securities Commission of the Bahamas*—should absorb the entire sought "disgorgement." *See* Gentile Decl. Ex. A.

The SEC's request for another $1.9 million in civil money penalties also exceeds Congress's authorization of a penalty no more than either a fixed amount or "the gross amount of pecuniary gain to *such defendant* as a result of the violation."  *See* 15 U.S.C. § 78u(d)(3)(B)(i)-(iii) (emphasis added).  Because Congress restricted penalties to "the pecuniary gain" to Gentile, penalties must be assessed individually, not jointly and severally.  *See, e.g.*, *S.E.C. v. Pentagon Cap. Mgmt. PLC,* 725 F.3d 279, 288 (2d Cir. 2013).  Yet the SEC seeks to penalize *Gentile* for the amount that *SureTrader* purportedly failed to pay by not registering with the SEC (although SureTrader paid all registration and related fees in the Bahamas as well as United States IRS related fees and taxes).  This is a joint and several penalty in disguise and should be rejected.

3

The SEC's request for an "obey the law" injunction is also legally deficient because it lacks specificity and is not equitable.  Injunctions based on securities violations must be *solely* equitable. Because the injunction here serves to punish Gentile for alleged prior violations, label him a wrongdoer, remove his rights to defend against a subsequent lawsuit, and deter him and others from similar conduct it is punishment (not equitable relief).  It serves neither to restore the *status quo ante* nor compensate a victim.  The Court lacks authority to issue this sort of punitive restraint under the pretense of being an equitable injunction.  *SEC v. Gentile*, 939 F.3d 549, 565 (3d Cir. 2019); *Saad v. SEC*, 873 F.3d 297, 304-06 (D.C. Cir. 2017) (Kavanaugh, J., concurring).

## STATEMENT OF FACTS

### I.      Gentile Founded SureTrader

In 2008, Gentile founded and incorporated SureTrader, which took its first customer in November 2011. (*See* Ford Decl. Ex. 1 at 26.)  SureTrader was a Bahamas-based broker dealer registered with the Securities Commission of the Bahamas but not the United States Securities and Exchange Commission. (*Id.*)[3]  It was a day trading firm, which permitted self-directed trading only (that is, it had no managed accounts).  At its peak, SureTrader had an 8,000 square-foot office space and nearly 75 employees.  (*See* Motion at 4).  SureTrader charged significantly lower commissions than US registered broker-dealers, including, Schwab, Fidelity, and TD Ameritrade. (*See, e.g.*, Ford Decl. Ex. 2 at 21-22.)

From 2012 through 2015, Gentile acted as a cooperator and informant for the Federal Bureau of Investigation, Department of Justice (the "DOJ"), and the SEC.  (*See* Ford Decl. Ex. 1 at 70-71, 73-76).  During that time, the government instructed him on how SureTrader would

---

[3] SureTrader's website was explicit that it was *not* registered with the SEC.  *See, e.g.,* Ford Decl. Ex. 1 at 87-88.

operate. (*Id.*).  Gentile resigned from SureTrader in late 2015 when he was negotiating an

agreement to conclude his cooperation with the government and did not return to the firm until

2017. (*Id.* at 71-72).  Except for the first nine months, Gentile was not involved in SureTrader's

day-to-day operations, and his involvement further diminished following his return in 2017.

(Ford Decl. Ex. 2 at 124-26; *see also* Ex. 1 at 81-83).  SureTrader ceased operations in

November 2019.  *See* Motion at 15.

II.    **Regulators Bring Enforcement Actions Against Gentile and SureTrader**

SureTrader and Gentile were the subject of a litany of unsuccessful enforcement actions

leading up to this case, including:

- On June 25, 2012, the DOJ charged Gentile by way of a sealed complaint.  *United States v. Gentile*, 235 F. Supp. 3d 649, 650 (D.N.J. 2017).  He was subsequently indicted on March 23, 2016, but the court dismissed the indictment.  *Id.* at 653, 656.

- On November 12, 2013, the Financial Industry Regulatory Authority ("FINRA") provided notice of a potential action for an alleged failure to register as a broker-dealer based on the same facts in this case; after Gentile provided the FINRA (and the SEC) with a Wells Submission, FINRA declined to pursue an enforcement action against Gentile.  (Ford Decl. Exs. 3, 4, 5).

- On March 23, 2016, the SEC commenced an enforcement action in the U.S. District Court for the District of New Jersey.  (Complaint, March 23, 2016, ECF No. 1, *SEC v. Gentile*, 2:16-cv-1619 (D.N.J.)).  After the Court dismissed the SEC's complaint multiple times, the SEC "inform[ed] the Court that it will not file a further amended complaint in this matter."  (Letter, October 19, 2020, ECF No. 113, *SEC v. Gentile*, 2:16-cv-1619 (D.N.J.))

The SEC then repackaged its New Jersey complaint and commenced this action on

March 22, 2021.  (Complaint, ECF No. 1).  The SEC later filed many requests for extensions of

pretrial deadlines and of trial itself, some of which Gentile actively opposed hoping to thwart the

SEC's regulatory extortion designed to devastate Gentile through costly and protracted litigation.

(*See, e.g.*, Motions filed under ECF Nos. 169, 179, 191, 198, and 202.)  The Court granted these

requests, ultimately extending the case from March 22, 2021 to June 12, 2024.  (*See, e.g.*, Orders filed under ECF Nos. 171, 182, 192, 199 and 203).

Trial was held between June 12 and July 1, 2024. (Trial Transcript at ECF Nos. 345-354.) On July 2, 2024, the jury entered a verdict (the "Verdict") in favor of the SEC on liability. (Verdict Form, ECF No. 313).  But the jury did not make any findings as to remedies.

## ARGUMENT

As explained in more detail below, each of the SEC's requests is meritless and should be denied.  The SEC is not entitled to disgorgement.  And were the Court to award any penalties, the penalties may not exceed $11,524.  Further, no "obey the law" injunction is appropriate.

### I.    The SEC Bears the Burden on its Motion

The Motion avoids the fundamental issue of which party bears the burden of proof here. Although the jury made its finding as to liability, the Verdict made no findings as to damages, and issues of fact remain unresolved.  Since the SEC is moving for relief as to damages separate from the trial, it is in effect bifurcating its case into two pieces: one for liability and one for damages.  That does not lessen the standard.  The Court should clarify that the Rule 56 standard applies here and that the SEC retains the same burden, which the SEC cannot satisfy here.[4]

### II.   The Request for "Disgorgement" Should Be Rejected as an Improper Penalty

"In civil actions, the SEC can seek civil penalties and equitable relief." *Liu v. SEC*, 591 U.S. 71, 75 (2020) (internal quotation marks omitted). On one hand, "penalties, which go beyond compensation, are intended to punish, and label defendants wrongdoers." *Gabelli v. SEC*, 568 U.S. 442, 451–52 (2013). On the other hand, equitable relief involves "strip[ping]

---

[4] SureTrader's default does not lessen the SEC's burden even against SureTrader, let alone Gentile. Even on default judgment the plaintiff bears the burden of establishing damages. *See, e.g., Robbie's of Key W. v. M/V Komedy III*, 470 F. Supp. 3d 1264, 1271-72 (S.D. Fla. 2020).

wrongdoers of their ill-gotten gains," but "to avoid transforming an equitable remedy into a punitive sanction, courts restrict[] the remedy to an individual wrongdoer's net profits to be awarded for victims." *Liu*, 591 U.S. at 79.[5]

One of the differences between a penalty and equitable relief in the securities context is in the relationship between the wrong and the remedy.  Penalties are tied to gains from a violation – specifically the greater of a statutory penalty or "the gross amount of pecuniary gain to such defendant as a result of the violation."  *See* 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B)(i)-(iii).  That is, Congress has authorized the SEC to seek and the Court to award penalties by reference to the financial gain to the wrongdoer, but penalties do not need to be tied to investor losses or even paid to victims.[6]

Equitable relief sought by the SEC, however, must comport with traditional notions of equity, which require a more precise connection between the securities violation and the relief sought.  *See SEC v. Govil*, 86 F.4th 89, 103 (2d Cir. 2023).  In addition to the separate power to seek injunctive relief, Congress authorized the SEC to seek "equitable relief," including disgorgement, but only if such relief solely equitable. *See* 15 U.S.C. § 78u(3), (5), and (7); *Kokesh v. SEC*, 581 U.S. 455, 467 (2017) ("A civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or

---

[5] *See also id.* at 77 ("[E]quity never lends its aid to enforce a forfeiture or penalty.") (internal quotation marks omitted).
[6] Instead, penalties may be sent to: (1) the U.S. Treasury, 15 U.S.C. § 77t(d)(3); (2) whistleblowers, 15 U.S.C. § 78u-6(b); or (3) to a "fair fund" under 15 U.S.C. § 7246(a), which provides that when " the Commission obtains a civil penalty … the amount of such civil penalty shall … be added to and become part of a disgorgement fund" or other fund for victims.

deterrent purposes, is punishment, as we have come to understand the term.") (emphasis original).[7]

Thus, Congress has restricted the SEC's ability to seek and the Court's power to award disgorgement unless it is "solely" equitable. The Court may <u>not</u> award disgorgement that "goes beyond" compensation, such as for the purpose of paying whistleblowers (including their attorneys), granting a windfall to an investor by awarding her disgorgement in an amount exceeding the amount she lost as a result of the violation, depositing money in the U.S. Treasury, or depositing money in its "fair fund." *Liu*, 591 U.S. at 80; *Govil*, 86 F.4th at 103; *SEC v. Ahmed*, 72 F.4th at 395. The SEC must identify the amount an investor lost as a result of the violation before a Court may disgorge money to that investor.[8]

In *Liu*, the Supreme Court delineated the boundaries between equitable relief and "a penalty outside … equitable powers," correcting nearly 50 years of erroneous jurisprudence. *Liu*, 591 U.S. at 82. When used to deprive a wrongdoer of net profits from unlawful activity, equitable relief—whether called restitution, accounting, or disgorgement—is bounded by the "equitable principle that the wrongdoer should not be punished by paying more than a fair compensation to the person wronged." *Id.* at 80 (internal quotation marks and alterations

---

[7] Congress subsequently authorized the SEC to seek disgorgement under Sections 78u(d)(3)(a)(ii) and 78u(d)(7), but rather than expanding the SEC's remedial power, these provisions' express authorization of disgorgement is "a 'belt and suspenders' clarification that *equitable disgorgement* is available" within the bounds of "traditional equitable limitations as recognized in *Liu*." *SEC v. Ahmed*, 72 F.4th 379, 396 (2d Cir. 2023) (emphasis added).

[8] *See, e.g., U.S. Sec. & Exch. Comm'n v. Janus Spectrum LLC*, 811 F. App'x 432, 434 (9th Cir. 2020) (remanding disgorgement award for failure to find that award was for the benefit of investors and otherwise equitable); *Sec. & Exch. Comm'n v. Bevil*, No. 2:19-CV-0590-RFB-DJA, 2020 WL 7048263, at *2 (D. Nev. Nov. 30, 2020) (rejecting SEC's request for disgorgement when SEC "does not identify whether the disgorgement award would be for 'the benefit of investors'") (quoting *Liu*, 591 U.S. at 90). If the SEC cannot identify the amount an investor lost, it may only seek a penalty, which may go into the SEC's fair fund for distribution as the SEC sees fit without equitable constraints. 15 U.S.C. § 7246(a).

omitted). That is, equity requires: (1) any disgorgement amount may not exceed the pecuniary gain obtained by the wrongdoer; (2) any disgorgement amount awarded to a victim may not exceed the pecuniary harm suffered by that victim; and (3) both the pecuniary gain obtained by the wrongdoer and the pecuniary loss suffered by the victim must have resulted from the securities law violation. *See Liu*, 591 U.S. at 80; *Govil*, 86 F.4th at 103; *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20 CIV. 10832 (AT), 2024 WL 3730403, at \*5 (S.D.N.Y. Aug. 7, 2024).

### A. The SEC's Requested Disgorgement is an Improper Penalty Because the SEC Cannot Show Any Investor Losses Attributable to the Violation

To be equitable, an award of disgorgement must have resulted from the violation, since "[a]n investor who suffered no pecuniary harm as a result of the fraud is not a victim." *Govil*, 86 F.4th at 98; *see also Liu*, 591 U.S. at 80; *Ripple Labs, Inc.*, 2024 WL 3730403, at \*5-6 (no harm, and thus no disgorgement, when defendant sold securities at undisclosed selective discounts).

The SEC violates this limitation by seeking disgorgement despite not showing that *any* investor losses resulted from the violation, let alone enough to warrant the exorbitant award here. The SEC asserts that "U.S. customers lost $29.69 million trading with SureTrader," Motion at 5, but fails to make any showing that these losses were the result of SureTrader's lack of registration with the SEC. This is not a case where a broker-dealer defrauded investors by making misrepresentations and material omissions to induce them to enter into trades that they otherwise would not have entered into. All SureTrader accounts were self-directed and SureTrader charged *significantly lower* commissions than US registered broker-dealers, including, Schwab, Fidelity, and TD Ameritrade. *See, e.g.*, Ford Decl. Ex. 2 at 21-22.[9]

---

[9] Notably, the SEC does not and cannot claim that SureTrader misled any investors as to whether it was registered with the SEC, as it plainly advertised itself as not registered with the SEC. *See, e.g.,* Ford Decl. Ex. 1 at 87-88. And SureTrader was registered with the Securities Commission of the Bahamas. (*See id.* at 36-37). The only "harm" resulting from the violation here would be

**B.  The SEC's Requested Disgorgement is an Improper Penalty Because it Exceeds Gentile's Pecuniary Gain**

The Supreme Court is clear that since the congressional authorization of disgorgement is bounded by equitable limits, "Congress prohibited the SEC from seeking an equitable remedy in excess of a defendant's net profits from wrongdoing." *Liu*, 591 U.S. at 85.

The SEC violates these limits by seeking "disgorgement" of almost $15 million from Gentile despite presenting no evidence that Gentile ever received this amount.  The SEC's proposed disgorgement amount also includes a purported $1,083,750 consultancy fee (the "Purported Fee") that the SEC has *no* evidence of Gentile ever receiving.  Despite investigating Gentile for over a decade,[10] and commencing this action nearly four years ago, the SEC has *no* evidence of a wire transfer or other documentation showing that he ever received the Purported Fee.  Instead, the SEC offers a declaration by its own accountant speculating that an *irrevocable* trust (the Swiss America Asset Trust, or the "Trust") for Gentile's children may have had access to the Purported Fee.[11]  Even if this speculation were accurate, it at most shows that Gentile's children, not Gentile, obtained the Purported Fee.

_____

to defeat a potential idiosyncratic preference by investors that they conduct business with a broker-dealer that does not claim to be SEC-registered but registered with the SEC anyway.  At a minimum, defeating this preference is not "pecuniary harm."

[10] The SEC began investigating Gentile in 2011. (*See* Ford Decl. ¶ 3).

[11] Specifically, the SEC relies on a series of increasingly attenuated inferences showing Gentile's purported receipt of the funds:  (a) according to the SEC's account, SureTrader's financial statements show that it paid $1,300,500 in a consulting fee to Swiss America Group ("SAG") because of a decrease in the payable amount in SureTrader's financial statements; (b) the Trust owns all shares in SAG; and (c) Gentile is involved in the Trust.  Motion at 14-15; Motion Ex. D, Declaration of Tonya Tullis ¶ 7 (ECF No. 359-4); Motion Ex. E (stock certificate) (ECF No. 359-5); Motion Ex. F (Irrevocable Discretionary Settlement, or "Trust Agreement") (ECF No. 359-6)).  But the SEC has adduced no evidence that the Trust actually accessed the Purported Fee.  At most, owning all of the shares in the company means the Trust *could* have accessed its funds, not that it actually did.  The SEC also misses the critical fact that Gentile is a party to the Trust as *settlor* and that the Trust was irrevocably held for his children, not Gentile himself.  (*See* ECF No. 359-6 (Trust Agreement) at 22)).  Thus, even crediting the SEC's speculation, there is

The SEC also seeks disgorgement of the percentage of SureTrader's commissions derived from U.S. residents and customers:  $13,129,809 (the "SureTrader Commission"). Motion at 12-13.  Even were this amount subject to disgorgement from SureTrader, it cannot be "disgorged" from Gentile since the SEC presents no evidence that Gentile ever received it.

The SEC does not contend otherwise.  Instead, its purported basis for disgorging the SureTrader Commission is merely that SureTrader received this amount and Gentile was its control person.  *Id.* at 14.  The SEC thereby conflates control (which is irrelevant) with benefit. *See Liu*, 591 U.S. at 85, 90-91. Nothing about the jury's finding that Gentile was a control person suggests that Gentile ever accessed any of SureTrader's funds, let alone SureTrader Commission revenue specifically.  Instead, the jury instructions and Verdict were clear that the jury's finding that Gentile was SureTrader's "control person" did not involve any finding that Gentile received SureTrader's funds, but rather focused on Gentile's supposed involvement in SureTrader's policies and "business affairs."  (Jury instructions, ECF No. 314 at 8; Verdict).

### C.  No Award for Joint and Several Liability Disgorgement is Permissible Here

For years, courts at times stretched disgorgement beyond its equitable limits by imposing this remedy on a joint and several basis.  *See, e.g., SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1996).  The problem was that previously, "[u]nlike the civil penalty, there [was] no statutory requirement that a disgorgement award be measured as to each individual defendant." *SEC v. Pentagon Cap. Mgmt. PLC*, 725 F.3d 279, 288 (2d Cir. 2013).  Specifically, the authorization for penalties "requires that such awards be based on the 'gross amount of pecuniary gain *to such defendant*.'"  *Id.* (quoting 15 U.S.C. § 77t(d)(2) (emphasis added)).  By contrast, 15

---

at most evidence that Gentile's children have an eventual legal right to receive the Purported Fee. Neither the Trust nor Gentile's children were named here as relief defendants.

U.S.C. § 78u previously lacked comparable language, so courts imposed joint and several disgorgement under 15 U.S.C. § 78t(a), which allows control persons to be "liable jointly and severally with … such controlled person." *First Jersey Sec., Inc.*, 101 F.3d at 1475.  But liability is distinct from remedies; with § 78t(a), Congress authorized a control person to be held liable through the actions of the controlled entity, but did not enable joint and several disgorgement as a remedy.

The Supreme Court and Congress intervened to bring disgorgement in line with equity. In *Liu*, the Supreme Court interpreted 15 U.S.C. § 78u(d)(5)'s authorization of "equitable relief" as enabling disgorgement as a remedy, but explained that equity courts exercised equitable "profits-based remedies against individuals or partners engaged in concerted wrongdoing, [but] not against multiple wrongdoers under a joint-and-several liability theory." 591 U.S. at 82-83.[12] "The rule against joint-and-several liability for profits that have accrued to another appears throughout equity cases awarding profits." *Id.* at 83 (collecting cases as early as 1795).[13]

---

[12] Justice Thomas further explained that the majority's reference to "partners" here is a reference to a legal partnership, not just anyone engaged in concerted wrongdoing. *Liu*, 591 U.S. at 101 (Thomas, J., dissenting). As Justice Thomas explained, the Supreme Court "has rejected joint and several liability in actions for an accounting," which is another profit-based equitable remedy that the Supreme Court explicitly analogized to disgorgement. *Id.* Here, Gentile and SureTrader were not in any kind of legal partnership. SureTrader was a corporation.

[13] The Supreme Court admonished courts for "imposing joint-and-several disgorgement liability" since "[t]he SEC's disgorgement remedy in such incarnations is in considerable tension with equity practices" and "could transform any equitable profits-focused remedy into a penalty." *Id.* at 85, 90.  The Supreme Court disavowed a trio of cases that condoned disgorgement when a defendant was forced to disgorge profits "that he channeled to friends, family, or clients," *S.E.C. v. Contorinis*, 743 F.3d 296, 302 (2d Cir. 2014), when a tipper was forced to disgorge his tippee's profits, *S.E.C. v. Clark*, 915 F.2d 439, 454 (9th Cir. 1990), and when a close relationship between the defendants and collaboration in executing the wrongdoing was found sufficient to impose joint and several disgorgement, *S.E.C. v. Whittemore*, 659 F.3d 1, 10 (D.C. Cir. 2011). *Liu*, 591 U.S. at 90 (finding this trio "at odds with the common-law rule requiring individual liability for wrongful profits").  Each of these disavowed cases features a closer connection among those held jointly and severally liable than that between Gentile and SureTrader.

Congress then codified *Liu*'s central holding—that disgorgement must be equitable—a year later by amending the statute, specifying the permissibility of disgorgement "of *any unjust enrichment by the person who received such unjust enrichment* as a result of such violation.*"* 15 U.S.C. § 78u(d)(3)(a)(ii) (emphasis added); *SEC v. Ahmed*, 72 F.4th 379, 392 (2d Cir. 2023) ("[t]he express addition of 'disgorgement' as a remedy specified under 78u(d)(7) is … a 'belt and suspenders' clarification that equitable disgorgement is available"). The terminology here parallels that of the penalty statute by permitting remedies on an individual-by-individual basis. *Compare* 15 U.S.C. § 78u(d)(3)(A)(ii) (permitting disgorgement "by the person who received such unjust enrichment") *with* 15 U.S.C. § 78u(d)(3)(B)(iii) (permitting penalties measured by gain "to such defendant"). This 2021 amendment thus abrogates prior cases, including those relied on by the SEC, which apply disgorgement on a joint and several basis.

Here, the SEC disregards the clear mandate from the Supreme Court and Congress by seeking to disgorge the SureTrader Commission from Gentile despite the SEC's failure to adduce any evidence that Gentile ever received any of this money. This request fails as a matter of law in light of *Liu* and of the 2021 amendments to § 78u limiting disgorgement to "the person" who received it. *Id.* The SEC's attempt to blur the boundaries between a corporation and an individual—even one found to be its "control person" for purposes of the Exchange Act—also improperly disregards the corporate form, particularly because at no point does the SEC claim, and neither the jury nor the Court have found, that Gentile received any of SureTrader's money.

The SEC's argument to the contrary is based on a combination of abrogated cases and a misreading of 15 U.S.C. § 78t(a)'s reference to joint and several *liability*. Motion at 11. The SEC appears to view this language as authorizing joint and several *remedies* between a

controlled and a controlling person, which proves too much since it would also authorize joint

and several penalties, which the SEC does not seek here and are impermissible. *S.E.C. v.*

*Pentagon Cap. Mgmt. PLC,* 725 F.3d 279, 287 (2d Cir. 2013) (reversing "decision to impose

joint and several liability for the amount of the civil penalty as an error of law").[14]

### D.  The SEC Fails to Deduct Expenses from the Request for Disgorgement

When disgorging profits, "courts consistently restricted awards to net profits from

wrongdoing after deducting legitimate expenses." *Liu*, 591 U.S. at 84.  Thus, disgorgement is

limited to "*net profits* from wrongdoing, that is, the gain made upon any business or investment,

when both the receipts and payments are taken into the account." *Id.* at 83 (collecting cases;

emphasis added; internal quotation marks and citations omitted).

The SEC violates the Supreme Court's directive in *Liu* by failing to deduct business

expenses.  The Motion neglects to mention that SureTrader incurred over $30 million in

expenses during the SEC-designated "Relevant Period" (March 2016 to November 2019).  (*See*

Gentile Decl. Ex. A).  This included *fees for registering with the Securities Commission of the*

*Bahamas* and for compliance with government fee, tax and penalty requirements. SureTrader's

expenses also included salary paid to the "nearly 75 employees" that the SEC concedes

SureTrader had, Motion at 4, in addition to rental fees for SureTrader's 8,000 square-foot office

space, software fees, trading fees, and other legitimate business expenses.  *Id.*  Thus, any

---

[14] At most, the SEC has shown that there is a potential conflict between 15 U.S.C. § 78t (last amended in 2010) and 15 U.S.C. § 78u(d)(3)(A)(ii) (last amended in 2021).  The more recent and specific provision, § 78u(d)(3)(A)(ii), must control and forbids joint and several disgorgement. *See Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 948 (11th Cir. 2001) ("if two statutes conflict, the more recent or more specific statute controls").  Imposing joint and several penalties would also be inconsistent with 15 U.S.C. § 78u(d)(3)(B)'s distinction between penalties for "natural" versus "other" persons, which would be pointless if a natural person would be held jointly and severally liable with a company for which they were a "control person."

potential award of disgorgement against SureTrader or Gentile should be subject to a deduction of approximately $30 million in business expenses. *Id.* And Gentile personally paid approximately $5.7 million in taxes in 2017-18, which is not only a legitimate expense but also demonstrates his personal commitment to complying with the law and repatriating money to the U.S. (Gentile Decl. ¶ 7; Ex.'s B, C, E, and F).

The only way the SEC can avoid deducting these legitimate expenditures from what, if any, disgorgement it obtains is if it can show that "the entire profit of a business or undertaking results from the wrongful activity." *Liu*, 591 U.S. at 84 (citation and internal quotations marks omitted). The SEC cannot meet this burden. The violation is a failure to register with the SEC, which is irrelevant to the maintenance of office space, paying taxes, compensating employees, and other legitimate expenditures. Further, as the SEC concedes, a significant portion of SureTrader's business during the relevant period did not even involve servicing accounts for U.S. clients. *See* Motion at 12-13 (detailing percentage of SureTrader commission attributable to U.S. as from 42% to 79% from 2016-Q2 to 2019-Q3). Regardless, SureTrader was registered in the Bahamas and registered with the IRS, and the SEC knew all of this in 2011.

### III.    The SEC's Request for a Penalty is An Impermissible Request for a Joint and Several Penalty in Disguise

Congress has authorized the SEC to seek three tiers of penalties for securities law violations. 15 U.S.C. §§ 77t(d)(2), 78u(d)(3). But the penalty for any tier is either a specified statutory amount (up to $5,000 for a natural person under tier one, subject to adjustment for inflation) or "the gross amount of pecuniary gain to *such defendant* as a result of the violation." 15 U.S.C. §§ 77t(d)(2), 78u(d)(3) (emphasis added). Here, the SEC seeks a tier one penalty of $11,524 against Gentile. Motion at 20. And while Gentile disputes and intends to appeal the Verdict, he does not dispute that the SEC may obtain a statutory tier one penalty of $11,524.

The SEC, nonetheless, seeks an additional $1,875,854 penalty against *Gentile* for the cost that *SureTrader* purportedly avoided by not registered with the SEC.  Motion at 18-20. But of course, since the jury found only that SureTrader, not Gentile, had to register, SureTrader would have paid the cost of registration.  The SEC thus chose the wrong target for the penalty, which (if anything) should be directed to SureTrader, not Gentile.[15]

Here, where SureTrader and Gentile are not only separate persons but also separate parties to the litigation, imposing this penalty on Gentile for SureTrader's purported failure to register would be in effect to impose a kind of joint and several liability in disguise.[16]   The congressional mandate is clear that penalties are permissible only on a defendant-by-defendant basis—joint and several liability is unavailable. 15 U.S.C. §§ 77t(d)(2) (permitting penalties equal to "pecuniary gain to *such defendant*") (emphasis added), 78u(d)(3) (same); *S.E.C. v. Pentagon Cap. Mgmt. PLC,* 725 F.3d 279, 287 (2d Cir. 2013) (reversing "decision to impose joint and several liability for the amount of the civil penalty as an error of law").[17]

---

[15] That alone distinguishes this case from *Sec. & Exch. Comm'n v. Keener*, on which the SEC relies to justify its demand for collective punishment.  102 F.4th 1328, 1331 (11th Cir. 2024).  There, the SEC brought an action against an individual (Justin Keener) who was doing business as a sole proprietorship, "JMJ Financial."  *Id.*  Unlike here, where Gentile and SureTrader are separate parties, there was just one defendant in *Keener*, "Justin W. Keener, d/b/a JMJ Financial."  *See id.*  The Court found that Keener was liable for buying and selling newly issued shares of penny stocks while failing to register as a dealer and ordered him to pay the amount he saved by not registering as a penalty.  *Sec. & Exch. Comm'n v. Keener*, 644 F. Supp. 3d 1290, 1307-08 (S.D. Fla. 2022).  Since he was just an individual, there is no dispute that he would have personally paid the registration fee had he registered himself (as "JMJ Financial").  *See id.*

[16] The SEC's proposed penalty on Gentile relative to SureTrader not being SEC-registered is even harsher than imposing joint and several liability on SureTrader and Gentile; that would at least permit Gentile to offset payment by amounts SureTrader would contribute or absorb.

[17] The SEC also insinuates that Gentile received a "benefit" from SureTrader's closure because SureTrader reportedly held certain assets in June 2019 but not in December 2019.  Motion at 18.  This is absurd.  Those assets were investor positions that SureTrader liquidated and the money was returned to those investors.  (Gentile Decl. ¶ 2)

## IV.   **The Injunctive Relief Sought Is Punitive, Not Equitable**

### A.  The "Obey the Law" Injunction Sought Here Is Punitive

Courts may issue injunctive relief, but the order must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d).[18]  The Eleventh Circuit has consistently held that "in the context of SEC enforcement actions and otherwise, 'obey-the-law' injunctions are unenforceable."  *Sec. & Exch. Comm'n v. Graham*, 823 F.3d 1357, 1362 n. 2 (11th Cir. 2016) (collecting cases).  These injunctions "lack specificity and deprive defendants of the procedural protections that would ordinarily accompany a future charge of a violation of the securities laws," violating Rule 65(d). *Id.* (internal quotation marks omitted); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999) (injunction to "obey the law" would be unenforceable and "not satisfy the specificity requirements of Rule 65(d)"); *Sec. & Exch. Comm'n v. Smyth*, 420 F.3d 1225, 1233 n.14 (11th Cir. 2005).[19] They are punishment for past wrongdoing not intended to restore the *status quo ante*. *Kokesh v. SEC*, 581 U.S. 455, 464 (2017); *Govil*, 86 F.4th at 103.

---

[18] These requirements are critical because "the collateral consequences of an injunction can be very grave." *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99 (2d Cir. 1978) (internal quotation marks omitted).  *See also Aaron v. Sec. & Exch. Comm'n*, 446 U.S. 680, 703 (1980) ("An injunction is a drastic remedy, not a mild prophylactic.") (Burger, J., concurring). Although 15 U.S.C. § 78u(d) and 15 U.S.C. § 77t(d) authorize the SEC to seek injunctive relief against securities law violations, in practice its requests for injunctive relief often "simply reference or restate the text of statutory prohibitions," which "are called 'obey-the-law' injunctions." *S.E.C. v. Gentile*, 939 F.3d 549, 554 (3d Cir. 2019). Such injunctions amplify the consequences for securities violations by permitting the SEC to litigate potential violations "by contempt rather than by the statutory route." *Id.* at 564 (3d Cir. 2019) (internal quotation mark omitted).  *See also Saad*, 873 F.3d at 305 (Kavanaugh, J., concurring).

[19] *See also Gentile*, 939 F.3d at 564 ("obey-the-law injunctions pose a risk of overbreadth, lack of fair notice, unmanageability, and noncompliance with Federal Rule of Civil Procedure 65(d)"); *SEC v. Savoy Indus., Inc.*, 665 F.2d 1310, 1318–19 (D.C. Cir. 1981) (striking down broad "obey-the-law" language in an injunction in an SEC action that "could embrace nearly any sort of violation of the securities laws" and "subject to the federal civil contempt power future acts . . . that may be completely unrelated to . . . lawbreaking in the past"); *SEC v. Tourre*, 4 F.

Here, the SEC's proposed injunction against Gentile provides little detail other than enjoining him from violating 15 U.S.C. § 78o(a)(1).[20] He is already not allowed to do that. This is an "obey-the-law" injunction in violation of Rule 65(d) and it serves as punishment, not restoring the *status quo ante. Compare Kokesh*, 581 U.S. at 464 ("Sanctions imposed for the purpose of deterring infractions of public laws are inherently punitive") *with United States v. Telluride Co.,* 146 F.3d 1241, 1248 (10th Cir. 1998) (injunction restoring wetlands not a penalty; it "relates to actual harm caused by the defendants' prior actions").

### B.  The SEC's Punitive Injunction is Not Appropriate Here

To the extent punitive injunctions are ever appropriate (including the "obey the law" injunction sought here), they are only appropriate when the SEC clears a high bar:  it must "establish a sufficient evidentiary predicate to show that [a] future violation may occur." *Aaron v. Sec. & Exch. Comm'n*, 446 U.S. 680, 701 (1980).  Accordingly, "[t]o say that past misconduct gives rise to an inference of future misconduct is not enough" to warrant an injunction. *Steadman v. S.E.C.*, 603 F.2d 1126, 1140 (5th Cir. 1979), *aff'd*, 450 U.S. 91, 101 S. Ct. 999, 67 L. Ed. 2d 69 (1981).  "The burden rests with the SEC to establish the likelihood of future violations." *S.E.C. v. Wellshire Sec., Inc.*, 773 F. Supp. 569, 576 (S.D.N.Y. 1991).[21]

The permanent "obey the law" injunction the SEC seeks is punitive, not equitable. SureTrader has not been in operation since 2019 and cannot be used as a vehicle for securities

---

Supp. 3d 579, 598 (S.D.N.Y. 2014) ("[T]he Court is skeptical of the utility of this kind of 'obey-the-law' injunction—after all, everyone is required to obey the law, the law comes with its own penalties, and merely reciting statutory provisions gives an individual little guidance on how to conform his conduct to the terms of the injunction.") (internal quotation marks omitted).

[20] A question arises as to whether Gentile could even have violated § 78o, since he is a natural person who was associated with a registered broker-dealer. *See* 15 U.S.C. § 78o.

[21] In determining the propriety of an injunction, courts consider certain factors enumerated in *S.E.C. v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004), as well as potential hardship.  *Sec. & Exch. Comm'n v. Warren*, 583 F.2d 115, 122 (3d Cir. 1978).

law violations. Thus, the injunction sought is not forward-looking: it serves only to punish for an alleged violation that the SEC and FINRA knew about and approved as early as 2011: thirteen years ago.  Tellingly, the four and a half pages of the SEC's brief devoted to supporting injunctive relief is focused almost exclusively on Gentile's *past* conduct. Motion at 5–9. The SEC must "go beyond the mere facts of past violations and demonstrate a realistic likelihood of recurrence." *Sec. & Exch. Comm'n v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 100 (2d Cir. 1978); *SEC v. Jones*, 476 F. Supp. 2d 374, 383 (S.D.N.Y. 2007) (same); *Wellshire Sec., Inc.*, 773 F. Supp. at 576 (rejecting the "SEC['s] claims that the existence of past violations provides an inference that there will be future violations"). As the SEC neglects to acknowledge, a full *five years* have passed since the "relevant period in this case," Motion at 14, and at no point has the SEC claimed that any defendant has committed any further registration violations. *C.f. SEC v. Westport Cap. Markets, LLC*, 547 F. Supp. 3d 157, 166-68 (D. Conn. 2021) (holding that several factors weigh against a permanent injunction, including because the SEC did not show violations since 2017). And Gentile has never been previously found to have violated the securities laws.

The record is also replete with instances of good faith attempts to comply with the SEC's registration requirements, as outlined in Gentile's opposition to the SEC's motion for summary judgment and confirmed at trial, including repeatedly disclosing the nature of SureTrader's business to the SEC, DOJ, and FINRA over the course of 13 years and causing SureTrader to pay US taxes.  (Opposition Memorandum, ECF No. 231 at 9–12).  The SEC notes that the jury found Gentile "did not meet his burden" of showing good faith at trial, Motion at 17, but that is irrelevant here, where the SEC, not Gentile, has the burden of proof.

The SEC also claims that Gentile should be penalized because the "violations created substantial losses to SureTrader's customers" but its support is that SureTrader's US clients

"paid $25.27 million in commissions but lost $29.69 million on the trade activity."  Motion at 17.

As explained in Section II. A., there is no connection between SureTrader's lack of SEC

registration and investors' decisions to pay commission and enter into certain trades.[22]

**V.      The Court Should Not Award Prejudgment Interest**

Prejudgment interest may be awarded as a form of equitable relief; that is, prejudgment

interest may not be awarded based on a civil money penalty, and the SEC does not claim

otherwise. Motion at 15; *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d

1434, 1446 (11th Cir. 1998) ("awards of prejudgment interest are equitable

remedies"), *overruled on other grounds*, 66 F.4th 876 (11th Cir. 2023); *Osterneck v. E.T.*

*Barwick Indus., Inc.*, 825 F.2d 1521, 1536 (11th Cir. 1987) (an award of prejudgment interest

"must be tempered by an assessment of the equities") (internal quotation marks omitted), *aff'd*

*sub nom.*, 489 U.S. 169 (1989).  Because the SEC has failed to demonstrate entitlement to

disgorgement, it is only entitled to civil money penalties, not prejudgment interest.[23]

---

[22] Finally, even if injunctive relief were appropriate, it should be for a limited time, no more than 2 years, not a permanent bar. *See, e.g., S.E.C. v. Patel*, 61 F.3d 137, 142 (2d Cir. 1995) (reversing lifetime bar; holding "before imposing a permanent bar, the court should consider whether a conditional bar … and/or a bar limited in time … might be sufficient"); *S.E.C.  v. Gallison*, 2023 WL 3004882, at *4 (S.D.N.Y. Feb. 4, 2023) (rejecting SEC request for permanent bar and instead imposing five-year bar given the defendant's "lack of repeat-offender status" and collecting cases); *Sec. & Exch. Comm'n v. Johnson*, 368 F. Supp. 3d 247, 253 (D. Mass. 2019) (imposing two-year bar for first-time offender who misled investors about drug).
[23] Separately, the SEC's request for prejudgment interest should also be denied, or in the alternative substantially reduced, because of the SEC's "undue delay in prosecuting the lawsuit." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983).  The SEC is seeking prejudgment interest since SureTrader ceased operations in November 2019, Motion at 15, but that would reward the SEC for almost two and a half years of delay before bringing this action in March 2021 and filing five separate requests for extensions of deadlines, including for trial.  *See, e.g.,* ECF Nos. 169, 179, 191, 198, and 202 (Motions), *c.f. Pierce Mfg., Inc. v. E-One, Inc.*, No. 8:18-CV-617-TPB-TGW, 2022 WL 479804, at *2 (M.D. Fla. Feb. 16, 2022) ("Plaintiffs are not entitled to prejudgment interest for the period of the continuance they requested.").  Moreover, Gentile and his counsel made clear to the SEC, DOJ, and FBI that SureTrader began accepting US clients from its inception.

## <u>CONCLUSION</u>

For the foregoing reasons, the SEC's Motion should be denied.  The only appropriate relief

is a penalty of $11,524, consistent with the accompanying proposed order.


Date:   January 6, 2025
          New York, New York

                                                    Respectfully submitted,

                                                     _/s/Matthew A. Ford_____
                                                    Matthew A. Ford (admitted *pro hac
                                                    vice*)
                                                    Ford O'Brien Landy LLP
                                                    275 Madison Avenue, 24th Floor
                                                    New York, New York 10016
                                                    Telephone: (212) 858-0040
                                                    Facsimile: (212) 256-1047

                                                    Dayliset Rielo
                                                    The Rielo Law Firm, LLC
                                                    8180 N.W. 36th Street, Suite 220
                                                    Doral, FL 33166
                                                    Telephone: (786) 454-9873

                                                    *Attorneys for
                                                    Defendant Gentile*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 6, 2025, a true and correct copy of the foregoing document has been electronically served on all counsel of record via the Court's CM/ECF system.

Date: January 6, 2025
New York, New York

Respectfully submitted,

_/s/Matthew A. Ford _____
Matthew A. Ford
Ford O'Brien Landy LLP
275 Madison Avenue, 24th Floor
New York, New York 10016
Telephone: (212) 858-0040
Facsimile: (212) 256-1047

*Attorneys for*
*Defendant Gentile*