UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-21079-BLOOM/Torres

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

MINTBROKER INTERNATIONAL, LTD.
and GUY GENTILE,

    Defendants.
_____/

## ORDER ON MOTION FOR REMEDIES

**THIS CAUSE** is before the Court upon the SEC's Motion for Remedies Against Defendants ("Motion"), ECF No. [359], filed on October 18, 2024. Defendant Guy Gentile filed a Response, ECF No. [371], to which the SEC filed a Reply. ECF No. [376]. The Motion was referred to the Honorable Magistrate Judge Edwin G. Torres for a Report and Recommendation (R&R). ECF No. [377]. On July 21, 2025, Judge Torres issued an R&R, recommending that the Motion be granted in part. ECF No. [381]. Judge Torres informed the parties that they have fourteen days from service of the R&R to file written objections with the District Judge. *Id.* at 28. Gentile filed Objections, ECF No. [384], to which the SEC filed a Response. ECF No. [387]. The Court has reviewed the Motion, all opposing and supporting submissions, the record in the case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the R&R is adopted in part and rejected in part.

    **I.**    **BACKGROUND**

The SEC brought the present action against Defendants MintBroker International Ltd., f/k/a Swiss America Securities Ltd. and d/b/a SureTrader ("SureTrader") and Gentile, the "founder

owner, and chief executive officer" of SureTrader. ECF No. [1] at 1, 19-20. The SEC alleged SureTrader violated Section 15(a)(1) of the Securities Exchange Act of 1934 by acting as an unregistered securities broker-dealer and that Gentile was liable for SureTrader's violations "as a control person under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), and for violating Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1), through or by means of SureTrader in violation of Section 20(b) of the Exchange Act, 15 U.S.C. § 78t(b)." *Id.* at 1-2.

The SEC filed the instant Motion seeking the entry of final judgment and the following remedies: (1) "a permanent injunction against Gentile enjoining him from future violations of the federal securities laws that the jury found he violated"; (2) "disgorgement against SureTrader and Gentile, on a joint and several basis" of $13,129,809, plus $3,547,617 in prejudgment interest, for a total of $16,677,426; (3) $1,083,750, in "additional disgorgement against Gentile" plus $502,278 in prejudgment interest, for a total of $1,586,028; and (4) "a civil money penalty against Gentile in the amount of $1,887,378." ECF No. [359] at 2.

In his R&R, Judge Torres recommended that (1) Gentile be "permanently enjoined from committing further violations of the Exchange Act Section 15(a)(1)," as proposed by the SEC; (2) SureTrader and Gentile, jointly and severally, be ordered to disgorge "$13,129,809, plus prejudgment interest on the disgorged amount between December 1, 2019 and July 2, 2024; (3) Gentile be ordered to disgorge "$520,200, plus prejudgment interest on the disgorged amount between December 31, 2016 and July 2, 2024"; (4) "a first-tier penalty of $1,887,378" be imposed against Gentile." ECF No. [381] at 27-28.

Gentile filed seven objections to the R&R. First, Gentile argues the imposition of over $13 million in disgorgement is not equitable because it is untethered to any money received by Gentile or pecuniary harm suffered by SureTrader's clients; the disgorgement includes a purported fee that the SEC failed to show Gentile ever received; disgorgement may not be imposed on a joint and

several basis; and the disgorgement amount does not deduct legitimate expenses. ECF No. [384] at 8-16. Second, Gentile argues that the $1,877,378 penalty is an impermissible request for a joint and several penalty in disguise. *Id.* at 17. And "[t]he only appropriate relief is a penalty of $11,524[.]" *Id.* at 25. Third, the SEC failed to show that SureTrader profited from registering as a broker-dealer with the Securities Commission of the Bahamas ("SCB") rather than the SEC. *Id.* at 17-20. Fourth, the proposed injunction is punitive, not equitable. *Id.* at 20-23. Fifth, because disgorgement is not appropriate, the Court should not award prejudgment interest. *Id.* at 23. Sixth, the R&R failed to consider the SEC's delay in bringing this action in its prejudgment interest calculation. *Id.* at 23-24. Seventh, the Motion is a disguised motion for summary judgment and, therefore, the R&R should have applied the summary judgment standard. *Id.* at 24.

In Response, the SEC first argues that the disgorgement amount is proper because: under binding Eleventh Circuit precedent, disgorgement is measured by a defendant's gain, not investor losses; the SEC provided evidence that Gentile received the consulting fee and he failed to rebut this evidence; joint and several liability is appropriate pursuant to the express terms of Section 20(a) and caselaw interpreting the Section; and the disgorgement amount included the deduction of business expenses. ECF No. [387] at 1-9. Second, it did not request that the $1,877,378 penalty be imposed jointly and severally and the Court has discretion as to the amount of the penalty imposed. *Id.* at 9-11. Third, Gentile's argument that the SEC failed to show SureTrader profited from registering as a broker-dealer with the SCB rather than the SEC was not raised with Judge Torres and, therefore, the Court may decline to consider the argument. *Id.* at 11-12. Even if the Court were to consider the new argument, it would not change the Court's analysis. *Id.* at 12-13. Fourth, the injunctive relief is not punitive and there is evidentiary support for the imposition of an injunction. *Id.* at 13-14. In the alternative, the Court has the discretion to add greater detail to the injunctive language. *Id.* Fifth, because disgorgement is appropriate, so is prejudgment interest.

3

*Id.* at 15. Sixth, the SEC could not control how long obtaining discovery would take and Gentile's prior dealings with the SEC, DOJ, and FBI are irrelevant because the Relevant Period does not go back until 2012. *Id.* Seventh, the present Motion is not a motion for summary judgment. *Id.* at 15-16.

## II. LEGAL STANDARD

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)) (alterations omitted). The objections must also present "supporting legal authority." S.D. Fla. L. Mag. J.R. 4(b). The portions of the R&R to which an objection is made are reviewed *de novo* only if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). If a party fails to object to any portion of the magistrate judge's report, those portions are reviewed for clear error. *Macort*, 208 F. App'x at 784; *see also Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001).

"It is improper for an objecting party to . . . [submit] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R." *Marlite, Inc. v. Eckenrod*, No. 10-cv-23641, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012) (quoting *Camardo v. Gen. Motors-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)). A court, in its discretion, need not consider arguments that were not, in the first instance, presented to the magistrate judge. *Williams*

4

*v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009). A district court may accept, reject, or modify a magistrate judge's R&R. 28 U.S.C. § 636(b)(1).

### III. DISCUSSION

#### A. Disgorgement

Gentile's first objection raises four arguments as to why the imposition of $13,129,809 in joint and several disgorgement is improper. He states the recommended disgorgement (1) is untethered to any money received by Gentile or pecuniary harm suffered by SureTrader's clients; (2) includes a purported fee that the SEC failed to show Gentile received; (3) is impermissibly imposed on a joint and several basis; and (4) fails to deduct legitimate expenses. ECF No. [384] at 5-14. The Court addresses each argument in turn.

In the R&R, Judge Torres pointed out that "disgorgement is ultimately measured by a defendant's profits, not the losses of their investors." ECF No. [381] at 16. Gentile argues that this was "a misstatement of law" which "led to an inflated and punitive award that transgresses equity" because "the SEC has failed to show that *any* of SureTrader's clients (who engaged only in self-directed daytrading) suffered any pecuniary harm attributable to SureTrader registering with the SCB instead of the SEC." ECF No. [384] at 10.

As an initial matter, Gentile attempts to shift the focus on the inquiry by suggesting that the SEC must show that "SureTrader's registration with the SCB rather than the SEC played any role in these daytraders' decisions to buy, sell, or retain the securities they chose." *Id.* at 11. The fact that SureTrader was registered with the *SCB* is irrelevant for purposes of determining the appropriate disgorgement for SureTrader's failure to register with the *SEC*, which is the violation for which the SEC seeks disgorgement. ECF No. [359] at 11 ("Gentile violated Section 20(b) by knowingly engaging in unregistered broker activity in violation of Section 15(a)(1) and should be ordered to disgorge his ill-gotten gains.").

5

Additionally, Gentile's argument that SureTrader's clients losses "are only relevant if they are the result of SureTrader registering with the SCB, not the SEC[,]" ECF No. [384] at 10, is unavailing. In *Liu v. SEC*, the Supreme Court held that "a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under § 78u(d)(5)." 591 U.S. 71, 74 (2020). Both elements are satisfied here. As the Eleventh Circuit recognized in *SEC v. Keener*, Gentile's argument that "there is no causal connection between [his] profits and his failure to register" is foreclosed by its prior decision in *SEC v. Almagarby*. 102 F.4th 1328, 1337 (11th Cir. 2024) (citing *SEC v. Almagarby*, 92 F.4th 1306, 1319-20 (11th Cir. 2024)).

"Section 15(a) prohibits unregistered dealers from using interstate commerce 'to effect any transactions in ... any security.'" *Almagarby*, 92 F.4th at 1321 (quoting 15 U.S.C. § 78o(a)(1)). Because Gentile "was altogether prohibited from making transactions as an unregistered dealer . . . *any* profits generated from his prohibited transactions were causally linked to his failure to register." *Id.* The R&R also noted that the SEC "has identified investors who have suffered pecuniary harm" and, therefore, the disgorgement "satisfies the requirement that disgorgement be 'for the benefit of investors.'" ECF No. [381] at 17-18 (quoting *Almagarby*, 92 F.4th at 1320). Gentile argues that the investors who the SEC identified as having suffered pecuniary harm were not harmed by Gentile's violation, because "SureTrader's daytrader clients could have made the exact same trades in a cash brokerage account with an SEC-registered US broker-dealer[.]" ECF No. [384] at 12. However, the SEC correctly pointed out that,

> [u]nlike in more conventional failure to register cases, such as *Keener*, where an investor could arguably purchase the same security from a registered broker or dealer, Gentile and SureTrader's conduct was more egregious because they created a vehicle for U.S. customers to pattern day trade when they otherwise would not have been able to with a registered broker because said broker would have been bound by U.S. Pattern Day Trading Rules, including minimum $25,000 equity and leverage limitations. In fact, 97% of "United States" accounts that traded had

6

opening deposit amounts of $5,000 or less, and 43% of "United States" accounts that traded had opening deposit amounts of $1,000 or less. Lefferts Dec. at ¶¶ 25-26.

ECF No. [359] at 17.

As such, the Court rejects Gentile's argument that *Almagarby* is distinguishable from the present case. *See* ECF No. [384] at 11.

Second, Gentile argues "the SEC adduced no evidence that Gentile received any of this [$1,300,500 consulting] fee[.]" *Id.* at 13. "In order to be entitled to disgorgement, the SEC needs to produce only a reasonable approximation of the defendant's ill-gotten gains, and '[e]xactitude is not a requirement.'" *SEC v. Monterosso*, 756 F.3d 1326, 1337 (11th Cir. 2014) (quoting *SEC v. ETS Payphones, Inc.,* 408 F.3d 727, 735 (11th Cir. 2005) (per curiam)). However, the R&R cites ample evidence that Gentile was paid a consultancy fee. ECF No. [381] at 19-21. For context, Gentile and members of his family are beneficiaries of Swiss America Asset Trust ("SAAT"), which owns 1,000 shares of Swiss America Group ("SAG"). *Id.* at 19 (citing ECF No. [359-5] at 2); *see also* ECF No. [359-6] at 25 (listing Gentile as a beneficiary and settlor of SAAT). The R&R cited to SureTrader's consolidated financial statements, dated December 31, 2016, which stated that it entered into a service agreement with SAG wherein SAG "will provide consultancy to the Group" and "[a]s at year-end, the Group has a payable of $3,499,500 related to outstanding consultancy fees." ECF No. [381] at 20 (quoting ECF No. [322-3] at 29). The financial statements also noted that "SAG is considered a related party by virtue of common beneficial ownership." ECF No. [322-3] at 29. Because SureTrader's financial statements also "reflect a $4,800,000 consultancy fee under the 'Operating Expenses' section of its P/L statement . . . this indicates that $1,300,500 was paid to SAG in 2016." ECF No. [381] at 20 (quoting ECF No. [359] at 14). Therefore, the R&R properly concluded "[a]ll this . . . would inherently mean that $1,300,500 of a consultancy fee was paid to SAG[.]" *Id.*

7

Gentile's objection that, even if SAAT received the benefit of the consultancy fee, "the Trust is an *irrevocable* trust for Gentile's children, not Gentile," ECF No. [384] at 13, is belied by the fact that Gentile is *also* listed as a beneficiary of the trust. ECF No. [359-6] at 25. The SAAT permits the Trustees to "pay or apply the whole or any part or parts of the capital of the Trust Fund to or for the benefit of all or such one or more of the Beneficiaries . . . as the Trustees, in their absolute discretion, think fit[.]" *Id.* at 8. The SAAT also permits the settlor—Gentile—to "by deed remove any Trustee and may by deed appoint any other person or persons to be a trustee or trustees in the place of such first mentioned Trustee[.]" *Id.* at 11. Therefore, the consultancy fee "would be effectively available to Gentile by virtue of common ownership and/or benefit." ECF No. [381] at 21.

"Once the SEC has produced a reasonable approximation of the defendant's unlawfully acquired assets, the burden shifts to the defendant to demonstrate the SEC's estimate is not reasonable." *Monterosso*, 756 F.3d at 1337. Although Gentile casts aspersions on the SEC's reasonable approximation of his unlawfully acquired assets, he has not met the burden that now shifts to him to demonstrate that the SEC's estimate was unreasonable.

Third, Gentile argues that the Court may not impose joint and several disgorgement "in light of the 2021 amendments to § 78u(d) limiting disgorgement to 'the person' who received it and . . . the Supreme Court's rejection in *Liu* of disgorgement 'against multiple wrongdoers under a joint-and-several liability theory.'" ECF No. [384] at 14 (quoting *Liu*, 591 U.S. at 82-83). However, as the SEC notes, "the jury specifically found that Gentile was a controlling person under Section 20(a)." ECF No. [387] at 6-7. And Section 20(a) states "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person . . ." 15 U.S.C. § 78t(a). Gentile argues that *Liu* rejected "disgorgement 'against

8

Case 1:21-cv-21079-BB   Document 388   Entered on FLSD Docket 09/18/2025   Page 9 of 19

Case No. 21-cv-21079-BLOOM/Torres

multiple wrongdoers under a joint-and-several liability theory.'" ECF No. [384] at 14 (quoting *Liu*, 591 U.S. at 82-83). That reading disregards the full context of *Liu*'s statement that "[e]quity courts also generally awarded profits-based remedies against *individuals or partners engaged in concerted wrongdoing*, not against multiple wrongdoers under a joint-and-several liability theory." *Liu*, 591 U.S. at 82-83. Indeed, "courts since *Liu* have found joint and several liability appropriate when there is a finding of control person liability." ECF No. [387] at 7-8 (citing *SEC v. Johnson*, 43 F.4th 382, 386 (4th Cir. 2022) and *SEC v. Westport Capital Markets*, 547 F. Supp. 3d 157 (D. Conn. 2021)); *see also Sec. & Exch. Comm'n v. Collector's Coffee, Inc.*, No. 19-cv-4355, 2025 WL 752221, at *13 (S.D.N.Y. Mar. 10, 2025) ("Courts in this Circuit have imposed disgorgement awards jointly and severally on defendants, including individuals and corporate entities where the individual defendant was 'primarily liable for the fraud that created the profits, was intimately involved in the perpetration of the fraud, and was a controlling person of the company.'").

Gentile also argues that 15 U.S.C. § 78u prohibits the imposition of disgorgement on a joint and several basis. However, the case he cites in support of his argument undermines it. ECF No. [384] at 14. Although the Second Circuit in *SEC v. Pentagon Capital Management PLC* "reverse[d] the district court's decision to impose joint and several liability for the amount of the *civil penalty* as an error of law[,]" it "affirmed the district court's decision to impose the *disgorgement award* jointly and severally on all defendants[,]" stating that "[u]nlike the civil penalty, *there is no statutory requirement that a disgorgement award be measured as to each individual defendant.*" 725 F.3d 279, 287-88 (2d Cir. 2013) (emphases added). The Court finds that the disgorgement award may be imposed jointly and severally.

Fourth, Gentile argues the R&R failed to deduct legitimate expenses because SureTrader's quarterly reports demonstrate that "SureTrader's net expenses far exceeded its revenue from U.S. Commissions—by more than $22 million[.]" ECF No. [384] at 15. The Court finds that the SEC

9

conducted the proper analysis. First, the SEC determined "the percentage of SureTrader's commissions that are attributable to U.S. customers (as a percentage of total commissions from all countries) on a quarterly basis[.]" ECF No. [359] at 12. Then, the disgorgement amount for each quarter was "calculated using the percentage of commissions from U.S. customers . . . and applied to the net income reported by SureTrader[.]" *Id.* at 13. "Net income, often referred to as 'the bottom line,' represents a company's profit after all expenses—operating expenses, taxes, interest, depreciation, and other costs—have been deducted from its revenue. In simpler terms, net income is the leftover profit after all the bills are paid." Leanne Haas, U.S. Chamber of Commerce, *Net Income vs. Gross Income*, https://www.uschamber.com/co/start/strategy/net-vs-gross-income-guide (last accessed September 17, 2025). Because net income "include[s] all of the company's purported gross expenses . . . no additional expenses have been deducted, nor should they be." ECF No. [359] at 14.

There is also no basis for Gentile's argument that the taxes he personally paid should be deducted from the disgorgement amount. *See SEC v. U.S. Pension Trust Corp.*, 444 F. App'x 435, 437 (11th Cir. 2011) ("We know of no authority, and the Individual Defendants cite none, requiring the court to deduct from the disgorgement figure the amount of ill-gotten gains paid to the government in income tax."); *see also SEC v. Huff*, No. 08-cv-60315, 2011 WL 1102777, at *6 (S.D. Fla. Mar. 23, 2011) ("[B]ut for the use of the improperly-obtained monies to pay the tax liability on the income, the person receiving the income would have had to have paid the taxes on the sum. In other words, it matters not how the ill-gotten gains were ultimately expended, so long as the spending of the ill-gotten gains bestowed a benefit on the person from whom the monies are to be disgorged.").

Gentile also raises a new argument that was not presented to Judge Torres: the disgorgement calculation "does not account for Gentile's own individual trades, which constituted

10

a substantial proportion of all SureTrader's U.S. client commission revenue." ECF No. [384] at 15 n.4. While the Court "has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge," *Williams*, 557 F.3d at 1292, Gentile presented no evidence to support his argument that a substantial proportion of all SureTrader's U.S. client commission revenue was based on his own trades. Because the SEC presented "a reasonable approximation of the defendant's ill-gotten gains," the burden shifts to Gentile to prove that this approximation was unreasonable. *Monterosso*, 756 F.3d at 1337. He has not met this burden. Therefore, Judge Torres's recommendation that Gentile and SureTrader, jointly and severally, be ordered to disgorge $13,129,809 was well-reasoned and correct.

**B. Penalty**

Gentile's second objection is that the SEC's request for a $1,875,854[1] civil penalty is an impermissible request for a joint and several penalty in disguise because it is based on the costs that "Gentile and SureTrader would have paid to register and maintain registration." ECF No. [384] at 17 (quoting ECF No. [381] at 27). In Response, the SEC argues that "the decision whether to impose a penalty and in what amount falls within the Court's discretion." ECF No. [387] at 9. Furthermore, "courts have utilized various methods to determine an appropriate civil penalty, several of which could be applied here." *Id.* at 10.

The purpose of a civil penalty is "to punish the individual wrongdoer and to deter him and others from future securities violations . . . The statutes leave the amount to be imposed to the discretion of the district judge." *Monterosso*, 756 F.3d at 1338. Gentile argues that "imposing [the

---

[1] Judge Torres recommended "imposing against Gentile a total civil penalty of $1,887,378—$11,524 for the first-tier penalty and $1,875,854 as the costs that Gentile and SureTrader would have paid to register and maintain registration." ECF No. [381] at 27. Gentile states "the recommended imposition of any penalty—beyond the $11,524 tier one statutory penalty—fails as a matter of law." ECF No. [384] at 17.

11

$1,875,854] penalty on Gentile for SureTrader's purported decision to register with the SCB, not the SEC, would be in effect to impose joint and several liability." ECF No. [384] at 17. However, as the SEC stated, "the jury found Gentile to be a control person of SureTrader under Section 20(a) and having violated Section 20(b) knowingly," therefore, "a penalty of $1,875,854 on Gentile . . . forces Gentile to 'pay the costs he sought to avoid by declining to register' SureTrader." ECF No. [359] at 20 (quoting *SEC v. Keener*, 644 F. Supp. 3d 1290, 1308 (S.D. Fla. Dec. 7, 2022)). Indeed, this Court previously found that a tier one penalty plus the amount of money the defendant "would have paid had he registered with the SEC throughout the Relevant Period[,]" to be an appropriate penalty that "deters individuals in [the defendant's] position because it forces [the defendant] to pay the costs that he sought to avoid by declining to register." *Keener*, 644 F. Supp. 3d at 1308. Gentile has not offered any argument as to why the Court should depart from its previous holding. Therefore, the Court finds that the total recommended penalty of $1,887,378 would properly "punish the individual wrongdoer and . . . deter him and others from future securities violations." *Monterosso*, 756 F.3d at 1338.

### C. SureTrader's Profits

Third, Gentile argues the SEC failed to show that SureTrader profited from registering as a broker-dealer with the SCB rather than the SEC. ECF No. [384] at 17. The SEC's proposed figure of $1,875,854 is comprised of "three components to the registration costs SureTrader should have paid during the Relevant Period: initial registration, ongoing registration, and annual audit." ECF No. [359] at 20. Using the SEC's Final Rule on Further Definition of "As a Part of a Regular Business" in the Definition of Dealer and Government Securities Dealer in Connection with Certain Liquidity Providers, the SEC determined that "[b]ased upon the inflation adjustment formula described in the Final Rule . . . the initial cost of registration in March 2016, adjusted for inflation is $500,729, . . . . $230,335 for ongoing registration costs and $228,040 for annual

audits[,]" leading to a total "cost for SureTrader and Gentile to register and maintain registration during the Relevant Period" of $1,875,854. ECF No. [359] at 19-20 (citing Release No. 34-99477, 89 Fed. Reg. 14938 (Feb. 29, 2024)).

Gentile argues that the costs proposed by the SEC are wrong because "the SEC does not charge a registration fee for broker-dealers" and, although "the SEC requires broker-dealers to register with an SRO, the cost of registering with the largest SRO, FINRA, as applied to SureTrader (or any similar entity), would cost . . . approximately $12,500." ECF No. [384] at 18 (citing *New Membership Application Fee Calculator*, FINRA, https://www.finra.org/registration-exams-ce/classic-crd/fee-schedule (last accessed September 17, 2025)). Additionally, Securities Investor Protection Corporation membership is also required for broker-dealer registration, but "the 'assessment rate' charged to broker dealers by the SIPC is small" and "SureTrader paid significantly more than this amount to be registered with the SCB." *Id.* (citing *Member FAQs*, Securities Investor Protection Corporation, https://www.sipc.org/for-members/member-faqs (last accessed September 17, 2025). Gentile also argues that the operational expenses identified in the Final Rule "are not fees paid to the SEC (or FINRA)," but are "rough estimates on operational expenses based on estimated costs paid to employees and outside professionals to comply with SEC rules and regulations." *Id.* at 18-19.

Gentile is correct that the operational expenses identified in the Final Rule include "related legal or consulting costs that may be needed to ensure compliance with rules, including drafting policies and procedures as may be required, and an initial self-evaluation of the final rules' applicability to the affected party." 89 Fed. Reg. at 14982. However, it is unclear what bearing this has on his objection because the purpose of the civil penalty is to require Gentile to "pay the costs that he sought to avoid by declining to register." *Keener*, 644 F. Supp. 3d at 1308. In order to effectively communicate "[t]he message to dealers . . . that failing to register is never in the dealer's

financial interest[,]" the civil penalty should also include the additional costs associated with ensuring compliance with the rules. *Id.* Therefore, Gentile's argument that the registration fees associated with registering SureTrader would not have added up to the civil penalty the Court now imposes is unavailing because it fails to account for the legal and consulting costs which the SEC considered in its Final Rule.

Gentile also argues that the Final Rule acknowledges that the figures the SEC now presents are "an estimated upper bound on the range of registration costs incurred by broker-dealers; it is possible that certain affected parties—for example, smaller firms with relatively simple trading operations—could incur lower registration costs." 89 Fed. Reg. at 14982 n.504. Regardless, Gentile presents no evidence as to how much in operational expenses SureTrader would have incurred had it been properly registered. Therefore, the fact that smaller firms could incur lower registration costs than those estimated in the Final Rule does not provide a basis for the Court to depart from the Final Rule's methodology.

Lastly, Gentile argues "SureTrader did not enjoy any pecuniary gain related to its decision to register with the SCB rather than the SEC because it incurred major costs to comply with U.S. law and Bahamian law." ECF No. [384] at 20. However, the fact that SureTrader registered with the SCB has no bearing on the present analysis. Gentile and SureTrader's failure to register with the SEC—not its "choice" to register with the SCB— is the subject of the instant case.

### D. Injunctive Relief

Fourth, Gentile argues the Court should not impose injunctive relief because (1) the "obey the law" injunction recommended here is punitive; and (2) the R&R failed to support imposition of a punitive injunction here. ECF No. [384] at 21-22. As Gentile notes, Judge Torres found that the permanent injunction proposed by the SEC was an "'obey the law' injunction—*i.e.*, 'it does little more than order the defendant to obey the law.'" ECF No. [381] at 5 (quoting *SEC v. Goble*,

682 F.3d 934, 949 (11th Cir. 2012)). However, Judge Torres determined that this case "is one of those times where an injunction that largely tracks the language of the statute is warranted" because the proposed injunction "satisf[ies] the specificity requirement of Rule 65(d)[.]" *Id.* at 6-7 (quoting *Goble*, 682 F.3d at 952).

Although *Goble* held that "an injunction enjoining violations of §§ 15(c)(3) and 17(a) of the Exchange Act and Rules 15c3–3 and 17a–3 may comply with Rule 65(d)," this was because the "statutory and regulatory provisions specifically describe the acts required of the person enjoined." 682 F.3d at 952. Additionally, in *Goble*, the Eleventh Circuit remanded to the district court to "draft an injunction addressing compliance with §§ 15(c)(3) and 17(a) that allows Goble to understand his obligations under the injunction." *Id.* at 953. More recently,[2] the Eleventh Circuit warned that "[r]epeatedly we have said that, in the context of SEC enforcement actions and otherwise, 'obey-the-law' injunctions are unenforceable." *SEC v. Graham*, 823 F.3d 1357, 1362 n.2 (11th Cir. 2016). The Court emphasized that "'an injunction which merely tracks the language of the securities statutes and regulations . . . will not clearly and specifically describe permissible and impermissible conduct' as required by Federal Rule of Civil Procedure 65(d)." *Id.* (quoting *Goble*, 682 F.3d at 952). Although the SEC states that "the Court has the option of adding more details to the injunctive language," the Court declines to "enter an injunction preventing Gentile from further violations" because doing so would contradict the Eleventh Circuit's explicit warning

---

[2] Although the R&R cites *Almagarby* as finding no abuse of discretion in the imposition of an injunction "prohibiting Defendants from engaging in future violations of section 15(a)(1) of the Exchange Act," *Almagarby* does not appear to have raised the argument that the proposed injunction was an improper "obey-the-law" injunction that failed to comply with Federal Rule of Civil Procedure 65(d). As such, the Eleventh Circuit did not address its previous statements that "in the context of SEC enforcement actions and otherwise, 'obey-the-law' injunctions are unenforceable." *Graham*, 823 F.3d at 1362 n.2.

that obey-the-law injunctions are unenforceable. ECF No. [387] at 14. Therefore, the Motion is denied with respect to a permanent injunction.

### E. Prejudgment Interest

Because the Court determined that disgorgement is appropriate, Gentile's argument that the Court should not award prejudgment interest without having ordered disgorgement is moot. ECF No. [384] at 23. As Judge Torres correctly noted, "[i]n the Eleventh Circuit, awards of prejudgment interest are equitable remedies, to be awarded or not awarded in the district court's sound discretion." ECF No. [381] at 21-22 (quoting *Keener*, 644 F. Supp. 3d at 1307) (internal quotations omitted). Prejudgment interest on disgorgement is appropriate here in order to "prevent[] a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity." *Keener*, 644 F. Supp. 3d at 1307. The SEC shall provide an updated prejudgment interest calculation as instructed by Judge Torres. *See* ECF No. [381] at 23.

### F. Delay

Sixth, Gentile argues that the R&R "neglect[ed] that the SEC's request for prejudgment interest should . . . be denied, or in the alternative substantially reduced, because of the SEC's 'undue delay in prosecuting the lawsuit.'" ECF No. [384] at 23 (quoting *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983)). Specifically, Gentile argues that the R&R's proposed start date of January 1, 2020[3] "would reward the SEC for nine years of delay before beginning this

---

[3] Gentile appears to misinterpret the R&R's statement "neither prejudgment interest report appears to reflect the correct starting date (1/1/2020 and 1/1/2017, respectively)." ECF No. [381] at 23. The correct start dates for the calculation of prejudgment interest are December 1, 2019 for the joint and several disgorgement and December 31, 2016 for the disgorgement solely from Gentile. *Id.* at 22. Judge Torres appears to have meant that "1/1/2020 and 1/1/2017" are incorrectly listed as the start dates on the SEC's Prejudgment Interest Report. *See* ECF No. [359-4] at 90, 100. Indeed, as part of the R&R, he states that the parties are to submit a notice that calculates prejudgment interest "for the joint and several disgorgement . . . from December 1, 2019 through July 2, 2024" and for Gentile's disgorgement "from December 31, 2016 through July 2, 2024." ECF No. [381] at 23.

16

action in March 2021 and filing five separate requests for extensions of deadlines, including for trial." *Id.* at 23-24.

In *Devex*, the Supreme Court stated that, within the context of a claimant seeking damages for copyright infringement, the statute "leaves the court some discretion in awarding prejudgment interest. For example, it may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit." 461 U.S. at 657-58. The Court also clarified that "[t]he determination whether the plaintiff has unduly delayed prosecution of the lawsuit is committed to the discretion of the District Court and is reviewable on appeal only for abuse of discretion." *Id.* at 657 n.11. As the SEC argues, "[a]lthough Gentile is correct that the SEC sought extensions of time to finish discovery[,]" discovery was delayed "because of [Gentile's] objections and the SEC needed to seek discovery from the Joint Official Liquidators and former SureTrader employees in the Bahamas because [Gentile] failed to produce company records." ECF No. [387] at 15. Furthermore, "Gentile's arguments about his prior dealings with the SEC, DOJ, and FBI in 2012 are irrelevant [because] [t]he Relevant Period does not go back to 2012, and the SEC is not attempting to seek prejudgment interest going back to 2012." *Id.* Therefore, Gentile has not shown any undue delay on the part of the SEC in prosecuting the case and the R&R's proposed prejudgment interest calculation is appropriate.

### G. Summary Judgment Standard

Seventh, Gentile argues that the R&R should have applied a summary judgment standard to the SEC's Motion for Remedies because the Federal Rules of Civil Procedure do not recognize motions for remedies. ECF No. [384] at 24. Gentile argues that the R&R "in effect placed the burden on Gentile, the non-movant, to disprove unproven factual allegations by the SEC[,]" specifically, that Gentile received a consultancy fee. *Id.* However, the R&R applied the correct

17

legal standard for the imposition of an injunction, disgorgement, prejudgment interest, and civil penalties. ECF No. [381]. And courts regularly grant motions for remedies without applying a summary judgment standard in cases brought by the SEC. *See e.g., Keener*, 644 F. Supp. 3d at 1308-1309 (granting in part and denying in part motion for remedies); *SEC v. Spartan Sec. Grp., Ltd.*, 620 F. Supp. 3d 1207, 1230 (M.D. Fla. Aug. 10, 2022) (same); *SEC. v. Solow*, 554 F. Supp. 2d 1356, 1368 (S.D. Fla. 2008) (granting motion for remedies), *aff'd,* 308 F. App'x 364 (11th Cir. 2009). Therefore, the R&R applied the proper legal standard.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The R&R, **ECF No. [381],** is **ADOPTED IN PART** and **REJECTED IN PART.**

2. Gentile's Objections, **ECF No. [384],** are **SUSTAINED IN PART** and **OVERRULED IN PART.**

3. The SEC's Motion for Remedies Against Defendants, **ECF No. [359],** is **GRANTED IN PART** and **DENIED IN PART.**

4. Defendants SureTrader and Gentile, shall jointly and severally disgorge the amount of $13,129,809, plus prejudgment interest on the disgorged amount between December 1, 2019 and July 2, 2024.

5. Defendant Gentile shall disgorge the amount of $520,200, plus prejudgment interest on the disgorged amount between December 31, 2016 and July 2, 2024.

6. A first-tier penalty in the amount of $1,887,378 is imposed against Defendant Gentile.

7. The parties shall submit a joint notice on or before **September 29, 2025** that specifically calculates prejudgment interest as follows: (1) for the joint and several disgorgement, in the amount of $13,129,809, from December 1, 2019 through July 2,

2024; and (2) for the disgorgement from Gentile alone in the amount of $520,200, from December 31, 2016 through July 2, 2024.

**DONE AND ORDERED** in Chambers at Miami, Florida on September 17, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record